**19**

1  TODD M. SCHNEIDER (State Bar #158253)
   JOSHUA KONECKY (State Bar #182897)
2  W.H. "HANK" WILLSON (State Bar #233321)
   SCHNEIDER & WALLACE
3  180 Montgomery Street, Suite 2000
   San Francisco, California 94104
4  Tel: (415) 421-7100
   Fax: (415) 421-7105
5  TTY: (415) 421-1665
6
7  LINDA ROSS (State Bar #85563)
   LAW OFFICE OF LINDA ROSS
8  2204 Union Street
   San Francisco, California 94123
9  Tel: (415) 563-2400
10
   SCOTT KALKIN (State Bar #120791)
11 ROBOOSTOFF & KALKIN, PLC
   369 Pine Street, Suite 610
12 San Francisco, California 94104
   Tel: (415) 732-0282
13 Fax: (415) 732-0287
14
   Attorneys for Plaintiffs

15

16                    SUPERIOR COURT OF CALIFORNIA

17                        COUNTY OF ALAMEDA

18

19  MELINDA CAMPBELL, on her own behalf,      Case No. RG05221764
    and on behalf of all others similarly situated,
20                                            **PLAINTIFF'S MEMORANDUM OF**
                      Plaintiffs,             **POINTS AND AUTHORITIES IN**
21                                            **OPPOSITION TO DEFENDANT'S**
            vs.                               **DEMURRER**
22
    SUTTER HEALTH, and DOES 1 through 25,
23  inclusive,                                Date: November 16, 2005
                                              Time: 3:00 pm
24                    Defendants.             Department: 22
                                              Judge: The Honorable Ronald M. Sabraw
25

26

27

28

SCHNEIDER
& WALLACE

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S DEMURRER
Campbell v. Sutter Health, et al., Case No. RG05221764

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II. ARGUMENT........................................................................................................2

   A.  DEFENDANT'S UNLAWFUL BALANCE BILLING IS NOT PROTECTED
      BY THE LITIGATION PRIVILEGE..................................................................2

      1.  Defendant's Litigation Privilege Argument Is Inconsistent With the
         Supreme Court's Decision in *Parnell* ..............................................................2

      2.  Defendant's Assertion of Liens Was Conduct, Which Is Not Protected
         by the Litigation Privilege .............................................................................3

      3.  Defendant's Assertion of Liens Is Not Protected by the Hospital Lien
         Act, and thus Cannot Be Protected by the Litigation Privilege .............................4

      4.  Defendant's Liens Violate California's Consumer Protection Statutes,
         and Are Not Protected by the Litigation Privilege..............................................4

      5.  Public Policy Concerns Dictate that the Litigation Privilege Does Not
         Shield Defendant from Reprisal for Its Unlawful Conduct ..................................5

   B.  THE LIENS ASSERTED BY SUTTER HEALTH WERE UNLAWFUL AT
      THE TIME THEY WERE ASSERTED; SUTTER HEALTH'S DUE
      PROCESS AND MISTAKE OF LAW DEFENSES ARE INAPPLICABLE
      HERE ......................................................................................................6

      1.  Judicial Decisions Apply Retroactively in California .........................................6

      2.  *Parnell* Did Not Overturn "Settled Law" ......................................................7

      3.  Sutter Health Did Not Rely on *Swanson* When Asserting its Liens .....................8

      4.  Concerns of Justice Favor Following the General Rule of Retroactivity ...............8

      5.  Even If *Parnell* Were Not Applied Retroactively, Sutter Health
         Continued to Assert Liens After the *Parnell* Decision .....................................9

   C.  PLAINTIFF'S COMPLAINT ALLEGES UNLAWFUL AND
      ACTIONABLE CONDUCT............................................................................9

   D.  PLAINTIFF AND THE CLASS HAVE SUFFERED INJURY AND
      DAMAGE AS A RESULT OF SUTTER HEALTH'S UNLAWFUL
      ASSERTION OF LIENS .............................................................................10

   E.  PLAINTIFF SUFFICIENTLY ALLEGES CLRA CAUSES OF ACTION ..................12

   F.  PLAINTIFF'S COMPLAINT MAKES A VALID CLAIM FOR RECOVERY
      BASED ON DEFENDANT'S UNJUST ENRICHMENT ......................................13

   G.  PLAINTIFF ADEQUATELY ALLEGES THAT DEFENDANT ENGAGED
      IN CONVERSION AND/OR TRESPASS TO CHATTEL ...................................14

SCHNEIDER
& WALLACE

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S DEMURRER
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
i

H.   DEFENDANT'S UNLAWFUL ASSERTION OF LIENS CONSTITUTED FRAUD AND/OR NEGLIGENT MISREPRESENTATION .......................................14

I.   PLAINTIFF ADEQUATELY ALLEGES UCL VIOLATIONS ...................................14

III. CONCLUSION..............................................................................................................15

SCHNEIDER
& WALLACE

1

# TABLE OF AUTHORITIES

2

**Federal Cases**

3

*Grauberger v. St. Francis Hospital* (N.D.Cal. 2001) 149 F.Supp.2d 1186, 1191 .............................7

4

5

**State Cases**

6

*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638 ...............................................6, 7

7

*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94 .........................................................5, 6

8

*Brennan v. Tremco Inc.* (2001) 25 Cal.4th 310.....................................................................6, 7, 8

9

*Broughton v. Cigna Healthplans of California* (1999) 21 Cal.4th 1066........................................13

10

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163.......................................................................................................................15

11

12

*Donaldson v. Superior Court* (1983) 35 Cal.3d 24 .......................................................................7

*Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26.........................................................7, 8

13

*Drum v. Bleau, Fox & Associates* (2003) 107 Cal.App.4th 1009 ....................................................4

14

*Henn v. Henn* (1980) 26 Cal.3d 323................................................................................................7

15

*Kimmel v. Goland* (1990) 51 Cal.3d 202.........................................................................................3

16

*Kupiec v. American International Adjustment Company* (1992) 235 Cal.App.3d 1326...................3

17

*Lauriedale Associates, Ltd. v. Wilson* (1992) 7 Cal.App.4th 1439 ...............................................13

18

*Limandri v. Judkins* (1997) 52 Cal.App.4th 326.........................................................................3, 4

19

*Miranda v. Macias* (1983) 141 Cal.App.3d 188 ............................................................................6

20

*Navellier v. Sletten* (2003) 106 Cal.App.4th 763 ...........................................................................5

21

*Nishihama v. City and County of San Francisco* (2001) 93 Cal.App.4th 298 ....................... passim

22

*Olszewski v. Scripps Health* (2003) 30 Cal.4th 798 ...................................................................5, 6

23

*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118 ....................................4

24

*Parnell v. Adventist Health System/West* (2005) 35 Cal.4th 595 ........................................... passim

25

*Ribas v. Clark* (1985) 38 Cal.3d 355...............................................................................................5

26

*Rubin v. Green* (1993) 4 Cal.4th 1187 ........................................................................................4, 5

27

*Saunders v. Superior Court* (1994) 27 Cal.App.4th 832................................................................15

28

**Schneider & Wallace**

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S DEMURRER
*Campbell v. Sutter Health, et al.,* Case No. RG05221764
iii

1  *Silberg v. Anderson* (1990) 50 Cal.3d 205 ................................................................3, 4

2  *Smith v. Rae-Venter Law Group* (2002) 29 Cal.4th 345 .............................................. 8-9

3  *State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093 .........................15

4  *Susan S. v. Israels* (1997) 55 Cal.App.4th 1290............................................................3

5  *Swanson v. St. John's Regional Medical Center* (2002) 97 Cal.App.4th 245 ..............................2, 7

6  *Wellenkamp v. Bank of America* (1978) 21 Cal.3d 943 ...................................................7

7  *Yu v. Signet Bank/Virginia* (1999) 69 Cal.App.4th 1377 ..............................................5, 6

8

9  **State Statutes**

10  Cal. Civ. Code §47(b)(2) .................................................................................... 2-3, 4

11  Cal. Civ. Code §3045.1 .........................................................................................2

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHNEIDER
& WALLACE

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S DEMURRER
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
iv

## I.    INTRODUCTION

This action challenges Sutter Health's policy and practice of asserting liens against persons who do not owe Sutter Health any debt, and asserting the liens even though Sutter Health is well aware that it is not owed anything. Sutter Health's conduct is unlawful and against public policy, and Plaintiff's complaint seeks appropriate redress.

As alleged in Plaintiff's complaint, Sutter Health unlawfully engages in a policy and practice called "balance billing." Under this policy and practice, Sutter Health collects payments for medical services provided to people who are injured by a tortious act (the amount owed to Sutter Health is often agreed upon by contract between Sutter Health and the injured persons' insurance carrier), but then asserts liens against the subsequent tort recoveries of the injured persons when those recoveries—which include items such as emotional distress and lost earnings—exceed the amount owed to Sutter Health. The injured person's debt to Sutter Health could be extinguished by contract, bankruptcy, or some other means, but Sutter Health asserts these liens even though it is aware that no debt exists. The amount of the lien is generally the difference between the debt actually owed and already paid to Sutter Health, and an inapplicable "customary rate" which Sutter Health exploits in order to exact further payment.

In *Parnell v. Adventist Health System/West* (2005) 35 Cal.4th 595, the California Supreme Court held that any attempt by health care providers, such as Sutter Health, to recoup their so-called "customary" charges, absent an underlying debt, is unlawful. Defendant's demurrer attempts to deflect attention from the clear impact of *Parnell* by making misguided arguments based on the litigation privilege and due process. Despite Defendant's contentions, the litigation privilege does not apply because the complaint challenges conduct (*i.e.*, the wrongful assertion of liens when there is no underlying debt), not "communications," and because the Hospital Lien Act does *not* protect the kinds of liens at issue here. Defendant's due process argument fails because *Parnell* merely confirmed the state of the law, and because there is a presumption in favor of retroactive application of judicial decisions in any event. Furthermore, it is clear that Defendant never relied on any alleged difference between the case law prior to *Parnell* and now, as evidenced by the fact that it asserted the liens before the case that it purportedly relied on, *Swanson v. St.*

1  *John's Regional Medical Center* (2002) 97 Cal.App.4th 245, and after *Parnell*, in the same

2  unlawful manner. (Complaint at ¶¶2, 20.)

3      Sutter Health's actions violate the Consumers Legal Remedies Act (CLRA), Cal. Civ. Code

4  §1750, *et seq.*, by misrepresenting the nature of its services and their cost, and by representing that

5  the transaction conferred or involved rights, remedies or obligations it did not have or involve. (*Id.*

6  at ¶¶3, 21.) Sutter Health, by collecting on its unlawful liens, has taken the property of Plaintiff

7  and the class and has been unjustly enriched as a result. (*Id.* at ¶¶4, 22.) In addition, Sutter

8  Health's unlawful assertion of its liens interfered with the property of Plaintiff and the class such

9  that Sutter Health should be liable for conversion or trespass to the chattel of Plaintiff and the

10 class. (*Id.* at ¶¶5, 23.) Sutter Health asserted its unlawful liens despite the fact that Sutter Health

11 knew or should have known that it was owed no money by Plaintiff and class, and thus Sutter

12 Health is liable for fraud and/or negligent misrepresentation. (*Id.* at ¶6, 24.) Finally, as a result of

13 these violations and because Sutter Health's assertion of its unlawful liens constitutes an unfair

14 business practice, Sutter Health has violated the Unfair Business Practices Act (UCL), Cal. Bus.

15 and Prof. Code §§17200, *et seq.*

16 **II.   ARGUMENT**

17 **A. DEFENDANT'S UNLAWFUL BALANCE BILLING IS NOT PROTECTED BY
    THE LITIGATION PRIVILEGE**

18
19 **1. Defendant's Litigation Privilege Argument Is Inconsistent With the Supreme
    Court's Decision in *Parnell***

20      The Hospital Lien Act (HLA), Cal. Civ. Code §3045.1, *et seq.*, allows hospitals to assert

21 liens against the personal injury tort recoveries of persons to whom they provide medical services

22 for the payment of those services. Sutter Health attempts to use the HLA to justify asserting liens

23 against injured persons treated at a Sutter Health facility even when those persons do not owe a

24 debt to Sutter Health. The California Supreme Court in *Parnell* held that the assertion of liens

25 after any debt of the injured person to the hospital has been extinguished is unlawful and is not

26 permitted by the HLA. (*Parnell, supra*, 35 Cal.4th at 598.)

27      Sutter Health attempts to get around *Parnell* by asserting that the litigation privilege bars

28 Plaintiff's complaint in this action. Civil Code §47(b)(2), provides simply that "[a] privileged

SCHNEIDER
& WALLACE

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S DEMURRER
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
2

1  publication or broadcast is one made: ...In any...judicial proceeding[.]" The privilege applies

2  when a communication is made: (1) in a judicial proceeding; (2) by litigants or other participants

3  authorized by law; (3) to achieve the objects of the litigation; and (4) with some connection to the

4  action. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.) *Parnell* involved a plaintiff, like Plaintiff

5  here, who sued a hospital for unfair business practices for balance billing. Though the issue of the

6  litigation privilege was not raised in *Parnell*, the Supreme Court's ruling is seemingly inconsistent

7  with Defendant's claim that its assertion of liens is protected by the litigation privilege. Under

8  *Parnell*, liens that are not authorized by the HLA are unlawful and may be challenged.

9  ### 2. Defendant's Assertion of Liens Was Conduct, Which Is Not Protected by the Litigation Privilege

10

11  The Supreme Court has emphasized that the litigation privilege applies only to

12  communications, not to conduct. (*Kimmel v. Goland* (1990) 51 Cal.3d 202, 205.) Although the

13  privilege is now recognized as applying to a broad range of torts, its primary purpose remains to

14  promote "utmost freedom of access to the courts" by encouraging "open channels of

15  *communication* and the presentation of evidence in judicial proceedings." (*Silberg, supra*, 50

16  Cal.3d at 213 [internal quotes omitted] [emphasis added].) As the Supreme Court noted in its

17  unanimous decision in *Kimmel*, an extension of the litigation privilege to apply to unlawful

18  conduct "would lead to unacceptable consequences." (*Kimmel, supra*, 51 Cal.3d at 212; *see also*

19  *Limandri v. Judkins* (1997) 52 Cal.App.4th 326, 345; *Susan S. v. Israels* (1997) 55 Cal.App.4th

20  1290, 1299.) Thus, under the Supreme Court's long-standing interpretations of the privilege,

21  "[t]he key in determining whether section 47, subdivision (b)(2), applie[s] is whether the *harm*

22  *alleged* was the result of a communicative act or a course of conduct." (*Kupiec v. American*

23  *International Adjustment Company* (1992) 235 Cal.App.3d 1326, 1331 [emphasis added].)

24  Defendant's Demurrer appears to assert that Sutter Health's practice of asserting liens is

25  protected by the litigation privilege simply because the use of liens was involved. However,

26  Defendant ignores the fact that a lien functions by operation of law to lay claim to property, and if

27  used improperly may result in wrongful seizures. In this case, the harm alleged by Plaintiff flows

28  not from any communications in the liens, but rather from Sutter Health's wrongful *conduct* of

SCHNEIDER
& WALLACE

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S DEMURRER
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
3

1  asserting and collecting on the liens to seize funds to which it not only was not entitled, but is

2  forbidden by law to collect. (*See Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50

3  Cal.3d 1118, 1132 n. 12 [the privilege does not apply when "the gravamen of the complaint was

4  not a communication but a course of conduct"]; *Limandri, supra,* 52 Cal.App.4th at 345 [the filing

5  of an improper lien was conduct, not a protected communication].) Because Plaintiff's complaint

6  alleges unlawful conduct on the part of Defendant, Defendant cannot invoke the litigation privilege

7  as a shield for its actions.

### 3. Defendant's Assertion of Liens Is Not Protected by the Hospital Lien Act, and thus Cannot Be Protected by the Litigation Privilege

9      Defendant's Demurrer states that "the assertion of liens as authorized by validly enacted

10  California statutes is shielded by the litigation privilege." (Defendant's Memorandum of Points

11  and Authorities in Support of Demurrer ("D's MPA") at 3 [quoting *Olszewski v. Scripps Health*

12  (2003) 30 Cal.4th 798, 832].) Thus, Defendant admits that liens *not* authorized by the HLA are *not*

13  protected by the litigation privilege. In fact, the Supreme Court in *Olszewski* specifically stated

14  that the litigation privilege only applies to "liens filed *pursuant* to a validly enacted statute."

15  (*Olszewski, supra,* 30 Cal.4th at 832 [emphasis added].)

16      In essence, Defendant's litigation privilege argument simply restates the fundamental issue

17  of this case: whether or not the liens that Defendant advances *after* the debts upon which those

18  liens are premised have been extinguished are permitted by the HLA. Plaintiff's complaint alleges

19  that the liens advanced by Defendant are not authorized or permitted by the HLA, and are

20  unlawful. The Supreme Court, in *Parnell*, agrees. (*Parnell, supra,* 35 Cal.4th at 607-608.) As a

21  result, the litigation privilege does not apply to the liens at issue here.

### 4. Defendant's Liens Violate California's Consumer Protection Statutes, and Are Not Protected by the Litigation Privilege

24      The litigation privilege provides litigants protection only from all *tort actions* except

25  malicious prosecution. (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1193; *see also Drum v. Bleau, Fox*

26  *& Associates* (2003) 107 Cal.App.4th 1009, 1023; *Silberg, supra,* 50 Cal.3d at 212; Cal. Civ. Code

27  §47(b)(2) [appears in the section of the Code relating to defamation].) As such, Plaintiff's

28  consumer protection claims under the CLRA and the UCL, which are not tort claims at all, are

SCHNEIDER
& WALLACE

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S DEMURRER
*Campbell v. Sutter Health, et al.,* Case No. RG05221764
4

1   unaffected by the litigation privilege. (*See, e.g., Navellier v. Sletten* (2003) 106 Cal.App.4th 763,

2   773 [holding that litigation privilege precludes only "liability in tort, not liability for breach of

3   contract"].) In addition, it is well-settled that the strategic use of litigation in a damaging way can

4   be an unfair business practice. (*See Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94,

5   108-109; *Yu v. Signet Bank/Virginia* (1999) 69 Cal.App.4th 1377, 1389.) Here, Defendant asserts

6   liens against injured persons, including Plaintiff and the class, despite the fact that it knows the

7   liens are not based upon an underlying debt. This constitutes an unfair business practice.

8         Defendant provides no authority whatsoever that consumer protection claims are barred by

9   the litigation privilege. Defendant misleadingly cites *Ribas v. Clark* (1985) 38 Cal.3d 355 for the

10  proposition that the "privilege applies to statutory causes of action [such as the CLRA] as well as

11  virtually all others." (D's MPA at 3.) In fact, *Ribas* merely stands for the proposition that the

12  litigation privilege applies to all *tort* causes of action, "with the exception of an action for

13  malicious prosecution," and nowhere in the opinion is the CLRA even mentioned. (*Id.* at 364.)[1]

14  Similarly, Defendant cites *Rubin* for the point that UCL claims are affected by the litigation

15  privilege. (D's MPA at 3-4.) In fact, however, *Rubin* merely stands for the proposition, as stated

16  above, that the litigation privilege applies to *tort actions*, and that a UCL claim predicated on a tort

17  claim would be similarly affected. (*Rubin, supra*, 1 Cal.4th at 1193.)[2]

### 5. Public Policy Concerns Dictate that the Litigation Privilege Does Not Shield Defendant from Reprisal for Its Unlawful Conduct

18

19        Defendant asserts that its conduct is protected by the litigation privilege despite the fact that

20  the conduct has been found to be unlawful by the Supreme Court of this state. Here, unlike in

21

22

23  [1] Defendant's confusing claim that Plaintiff seeks only declaratory relief under the CLRA is
    incorrect. (D's MPA at 4, n. 3.) Plaintiff seeks much more than declaratory relief for Defendant's

24  violations of the CLRA. Plaintiff's complaint seeks actual damages, injunctive relief, restitution,
    punitive damages, and any other relief this Court deems just and proper for Defendant's CLRA

25  violations. (Complaint at ¶38.) As such, Defendant's cases that merely discuss declaratory relief
    under the CLRA, and say nothing about the litigation privilege, are inapposite.

26  [2] Again, Defendant's arguments completely ignore the fact that, if true, they would render the
    Supreme Court's decision in *Parnell* untenable. If the litigation privilege were a bar to all causes

27  of action arising from the assertion of a lien, then the *Parnell* Court's holding that these liens are
    unlawful would be fundamentally inconsistent with the privilege.

28

SCHNEIDER
& WALLACE

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S DEMURRER
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
5

1  *Olszewski*, where the plaintiff conceded that the liens at issue were authorized by statute

2  (*Olszewksi, supra*, 30 Cal.4th at 831), Defendant's invocation of the litigation privilege would

3  pervert the judicial process and place the courts in the unfortunate position of shielding, rather than

4  addressing, wrongful conduct. California courts have recognized in the past that the improper use

5  of the judicial system is wrongful and may be challenged as either a tort or as an unlawful or unfair

6  business practice. In *Barquis*, the Supreme Court held that a collector's practice of filing actions in

7  the wrong venue constituted an abuse of process and an unlawful and unfair business practice.

8  (*Barquis, supra*, 7 Cal.3d at 113.) In *Yu*, the court held that the defendant's practice of filing

9  collection actions in Virginia against California consumers constituted an abuse of process and

10  unlawful business practice. (*Yu, supra*, 69 Cal.App.4th at 1389.) Even though the practices of the

11  defendants in those actions involved various "communications" through the judicial system, the

12  courts correctly recognized that their wrongful *conduct* was subject to challenge.

13  According to Defendant, the use of a judicial procedure with any connection to possible

14  litigation (*e.g.*, a lien, levy, or writ of execution) would be shielded by the litigation privilege. Had

15  that reasoning been applied in *Barquis* and *Yu*, the defendants' conduct would have been declared

16  "privileged" and insulated from the plaintiffs' claims, a result not only contrary to sound judicial

17  policy. This Court should uphold the important distinction between communications and conduct,

18  and hold that the improper use of a lien involves conduct not shielded by the privilege.

19  ## B. THE LIENS ASSERTED BY SUTTER HEALTH WERE UNLAWFUL AT THE TIME THEY WERE ASSERTED; SUTTER HEALTH'S DUE PROCESS AND

20  MISTAKE OF LAW DEFENSES ARE INAPPLICABLE HERE

21  ### 1. Judicial Decisions Apply Retroactively in California

22  "The general rule that judicial decisions are given retroactive effect is basic in our legal

23  tradition." (*Brennan v. Tremco Inc.* (2001) 25 Cal.4th 310, 318 [quoting *Newman v. Emerson

24  Radio Corp.* (1989) 48 Cal.3d 973, 978]; *Abramson v. Juniper Networks, Inc.* (2004) 115

25  Cal.App.4th 638, 660.) Due process issues do not arise with the retroactive application of judicial

26  decisions, because the decisions merely articulate the law as it already stands—there is no change

27  in the law as with a statute. Here, Sutter Health attempts to raise the due process issue by ignoring

28  California law in favor of the retroactive application of the *Parnell* decision. Sutter Health also re-

SCHNEIDER
& WALLACE

1     fashions its due process argument as a "mistake of law" argument. (*See* D's MPA at 7.) Because

2     the two arguments rest on the same assertions, they are addressed together.

3         Furthermore: "It is the general rule that a decision of [the Supreme Court], even when

4     overruling a settled rule of law, is fully retroactive in application." (*Henn v. Henn* (1980) 26

5     Cal.3d 323, 328-329; *see also Miranda v. Macias* (1983) 141 Cal.App.3d 188, 191; *Wellenkamp v.*

6     *Bank of America* (1978) 21 Cal.3d 943.) Here, *Parnell* is a Supreme Court decision, while the

7     decision that Sutter Health purports to have relied upon, *Swanson*, comes from the appellate courts.

8     Sutter Health utterly fails to show why this general rule should be ignored in this situation.

9         **2. *Parnell* Did Not Overturn "Settled Law"**

10        Even in the inapplicable case of appellate court decisions, courts make an exception to the

11    general rule of retroactivity only "when the decision changed a settled rule on which the parties

12    had relied." (*Brennan, supra*, 25 Cal.4th at 318; *Abramson, supra*, 115 Cal.App.4th at 660.) A

13    decision overrules a settled rule of law "when it disapproves of a long-standing and widespread

14    practice expressly approved by a near-unanimous body of lower court authorities." (*Droeger v.*

15    *Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 45; *Donaldson v. Superior Court* (1983) 35 Cal.3d

16    24, 37.) Thus, this exception would not apply even if *Parnell* were not a Supreme Court case.

17        First, the decision of the Court of Appeal for the Second District in *Swanson* was decidedly

18    not "near-unanimous" prior to *Parnell*. Defendant's Demurrer ignores the plain language of

19    *Nishihama v. City and County of San Francisco* (2001) 93 Cal.App.4th 298, in which the First

20    District held that a hospital is not entitled to assert a lien against an injured person on a debt that

21    has been extinguished: "We find that CPMC's [the hosptial's] lien rights do not extend beyond the

22    amount it agreed to receive from Blue Cross as payment in full for services provided to plaintiff.

23    As CPMC has been paid that amount, it has no lien rights in the damages awarded to plaintiff[.]"

24    (*Id.* at 307.) The Court continued: "the debt owed by plaintiff to the Hospital is the foundation for

25    the Hospital's lien right." (*Id.* at 308 [quoting *Grauberger v. St. Francis Hospital* (N.D.Cal. 2001)

26    149 F.Supp.2d 1186, 1191].) Thus, in 2001, at least one California Court of Appeal took the same

27    view that the Supreme Court later upheld in *Parnell*.

28

SCHNEIDER
& WALLACE

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S DEMURRER
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
7

1    Second, *Swanson* was decided only in 2002, which hardly makes it long-standing. For

2    example, the Supreme Court in *Droeger* held that an 11-year old decision was "fairly recent" and

3    was not long-standing. (*Droeger, supra,* 54 Cal.3d at 45.) Because *Parnell* was a Supreme Court

4    case, it would apply retroactively no matter if it overruled settled law. Even if *Parnell* were an

5    appellate court case, it did not overrule settled law. Thus, *Parnell*, like nearly all judicial

6    decisions, should be given retroactive effect.

7    ### 3.  Sutter Health Did Not Rely on *Swanson* When Asserting its Liens

8    Perhaps most importantly, Sutter Health ignores that exceptions to the retroactivity of

9    judicial decisions are made only "when the decision changed a settled rule *on which the parties*

10   *had relied.*" (*Brennan, supra,* 25 Cal.4th at 318 [emphasis added].) Sutter Health rests its due

11   process argument solely on the *Swanson* decision. However, it is clear that Sutter Health did not

12   rely on *Swanson* when asserting the unlawful liens challenged here, because it asserted the liens

13   before the *Swanson* decision and has continued to assert the liens after the *Parnell* decision. This

14   is especially pertinent in light of the fact that Sutter Health asserts that *Parnell* overruled *Swanson*.

15   (*See* D's MPA at 8.) If Sutter Health were truly relying on *Swanson*, why did it continue to assert

16   the liens even after, in its view, *Swanson* was overruled? Sutter Health has been asserting these

17   liens regardless of *Swanson*, rendering the reliance exception to the general rule of the retroactive

18   application inapplicable here.[3]

19   ### 4.  Concerns of Justice Favor Following the General Rule of Retroactivity

20   Concerns of "retroactivity's effect on the administration of justice, and the purposes to be

21   served by the new rule" weigh heavily in favor of retroactivity in this case. (*Smith v. Rae-Venter*

22

23   [3] While Defendant's Demurrer asserts that Plaintiff's case is barred by due process concerns, it
     also claims that *Parnell* is limited to its specific facts. (*See* D's MPA at 7.) Defendant cannot be
24   allowed to have it both ways: the due process argument relies wholly on the assertion that *Parnell*
     overruled *Swanson*; of course, that would not be the case if *Parnell* was limited to its facts.
25   Defendant is not arguing in the alternative, but attempting to paint the *Parnell* case in different
     lights whenever it suits Defendant's arguments. In any event, the facts of *Parnell* are equivalent to
26   the facts here. In *Parnell*, as here, a hospital attempted to assert a lien against the tort recovery of
     an injured person, despite the fact that there was not an underlying debt from the injured person to
27   the hospital. The Supreme Court held that the assertion of such a lien was not permitted by the
     HLA, and that a hospital "may not" assert a lien in that circumstance. (*Parnell, supra,* 35 Cal.4th at
28   598.) Defendant's attempt to limit the holding of *Parnell* therefore fails on its face.

SCHNEIDER
& WALLACE

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S DEMURRER
*Campbell v. Sutter Health, et al.,* Case No. RG05221764
8

1    *Law Group* (2002) 29 Cal.4th 345, 372.) As stated above, Sutter Health never relied on *Swanson*

2    in the first place, so considerations of justice are not affected here. In addition, Sutter Health has

3    been seeking payment for debts that had already been extinguished. Sutter Health's policy and

4    practice has forced numerous people to expend time, money and energy to defend themselves

5    against Sutter Health's unjustified liens. For those liens that Sutter Health actually collected on, it

6    would undoubtedly be a miscarriage of justice to allow Sutter Health to keep money it has acquired

7    for debts that did not exist in the first place. Plaintiff's complaint seeks to make whole those who

8    have been damaged by Sutter Health's policies. The *Parnell* case released those who recover for

9    their injuries from being pursued by Sutter Health for debts that do not exist; this lawsuit merely

10   seeks to enforce the *Parnell* decision. As such, the administration of justice and the purposes of

11   the *Parnell* decision are best served by a retroactive application of the *Parnell* decision.

12       ### 5. Even If *Parnell* Were Not Applied Retroactively, Sutter Health Continued to Assert Liens After the *Parnell* Decision

13

14       Finally, even if the general rule were ignored and *Parnell* were not retroactively applied, the

15   holding of *Parnell* certainly applies to any liens that were asserted or continued to be asserted by

16   Sutter Health after the *Parnell* decision. Sutter Health does not claim that it has ceased asserting

17   these unlawful liens, but merely claims that the validity of the liens after *Parnell* "is not

18   knowable[.]" (D's MPA at 7.) Sutter Health provides no response to *Parnell's* unequivocal

19   language, however: "a lien under the HLA is based on a debt owed by the patient to the

20   hospital...Thus, absent an underlying debt, the hospital *may not* recover on the lien[.]" (*Parnell, supra*, 35 Cal.4th at 607-608 [emphasis added].) Plaintiff's complaint alleges that Sutter Health

21
22   asserts liens against persons who owe Sutter Health no debt. Under the plain language of *Parnell*,

23   Sutter Health's assertion of those liens is unlawful.

24       ### C. PLAINTIFF'S COMPLAINT ALLEGES UNLAWFUL AND ACTIONABLE CONDUCT

25       Defendant's Demurrer asserts that Plaintiff has not alleged unlawful or actionable conduct

26   on the part of Sutter Health. On the contrary: Plaintiff's complaint alleges that Defendant engaged

27   in the very conduct that the Supreme Court in *Parnell* found to be impermissible. The mere

28   assertion of a lien by Sutter Health, where any debt between Sutter Health and a member of the

SCHNEIDER
& WALLACE

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S DEMURRER
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
9

1  class has been extinguished, causes injury and damage to that person by forcing him to expend

2  time, energy, and resources to oppose the lien. Contained within Plaintiff's complaint are

3  allegations that Sutter Health's actual collection on any of its unlawful liens is impermissible, and

4  any collection damaged the injured person further. (*See* Complaint at ¶¶5, 8, 22-23.)

5  Defendant attempts to reiterate its litigation privilege argument by claiming that the mere

6  assertion of liens is not actionable conduct. This argument is addressed above. In addition,

7  Defendant mischaracterizes the holding of *Parnell* for Defendant's conclusion that Plaintiff is only

8  entitled to declaratory relief. (D's MPA at 6.) Nowhere in *Parnell* does the Supreme Court limit

9  the remedies that might be obtained by a person who has been injured by a hospital's unlawful

10  assertion of liens. In fact, the *Parnell* Court stated that it would "leave the sorting out of the causes

11  of action and types of relief to which [Parnell] may be entitled to the proceedings on remand."

12  (*Parnell, supra*, 35 Cal.4th at 611, n. 15 [internal quotes omitted].) The *Parnell* Court held that the

13  conduct which Plaintiff here challenges on the part of Sutter Health is unlawful. Sutter Health

14  does not dispute that it continues to engage in this unlawful conduct. Plaintiff and the class have

15  been damaged by Sutter Health's attempt to bully them into paying on debts which do not exist.

16  ## D. PLAINTIFF AND THE CLASS HAVE SUFFERED INJURY AND DAMAGE AS A RESULT OF SUTTER HEALTH'S UNLAWFUL ASSERTION OF LIENS

17  Defendant's Demurrer makes the dubious claim that Plaintiff and the class suffered no

18  injury or damage as a result of Sutter Health's unlawful assertion of liens against them. This

19  argument is wrong on its face: injury is obvious where persons have been forced to pay on liens

20  that were asserted even after any debt to Sutter Health had been extinguished; even in cases where

21  payment on the lien was not or has not been made, the time, energy, and resources inherent in

22  disputing a lien against one's property has certainly damaged Plaintiff and the class.

23  Defendant's Demurrer is filled with disingenuous and outright incorrect statements on this

24  last point. First, Defendant claims that "if the tortfeasors paid more than the insurance payments in

25  Plaintiffs' settlements with them or judgments against them, the Plaintiffs were never entitled to

26  that money—the medical providers were." (D's MPA at 9.) This is simply untrue; Defendant

27  quotes *Nishihama*, but strategically omits the part of that opinion which directly contradicts this

28

SCHNEIDER
& WALLACE

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S DEMURRER
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
10

1   claim: "We find that CPMC's lien rights do not extend beyond the amount it agreed to receive

2   from Blue Cross as payment in full for services provided to plaintiff. As CPMC has been paid that

3   amount, it has no lien rights in the damages awarded to plaintiff[.]" (*Nishihama, supra*, 93

4   Cal.App.4[th] at 307.) Thus, Sutter Health is most assuredly *not* entitled to any amount of a

5   judgment which exceeds the injured person's underlying debt to the hospital.

6        Second, Defendant claims that Plaintiff and the class "never had the right to recover more

7   than their insuring health plans paid the hospitals." (D's MPA at 10.) This argument simply does

8   not make sense. A personal injury tort recovery is bound to include an amount in excess of the

9   cost of medical services, for various things such as emotional distress, loss of income, pain and

10  suffering, and many others. Defendant cannot be allowed to claim that such recoveries are a

11  "windfall," or that Sutter Health should be entitled to any part of those recoveries.

12       Furthermore, Defendant attempts to insinuate that the injured person is not affected by

13  Sutter Health's assertion of a lien against his or her tort recovery. (D's MPA at 9.) This ignores

14  the fact that without the time, effort and resources expended by Plaintiff and the class in their tort

15  actions against the tortfeasor, there would be no recovery upon which Sutter Health could assert a

16  lien. "[A]ny claim by a health care provider is not independent of, *but derives from*, the claim of

17  the injured person." (*Nishihama, supra*, 93 Cal.App.4[th] at 308 [emphasis added].)

18       In addition, even if Sutter Health were asserting its liens against the tortfeasor, and not the

19  injured person, the specter of Sutter Health's assertion of a lien has a great effect on injured

20  persons' settlement negotiations with tortfeasors in the underlying personal injury actions.

21  Because standard settlement agreements call for the injured person to indemnify and defend the

22  tortfeasor against actions by third parties, injured persons bear much more risk in settling with the

23  tortfeasor as a result of Sutter Health's liens. This costs the injured person time and energy, and

24  stands as an impediment to the efficient and economical settlement of underlying injury claims.

25       Sutter Health has asserted and continues to assert liens on the recoveries of injured persons

26  despite the fact that any debt between the injured person and Sutter Health has been extinguished.

27  *Nishihama* recognized that hospitals who are owed no debt are not entitled to assert liens to

28  recover more money for their services. (*Id.* at 307.) In this context, it is apparent that if Sutter

SCHNEIDER
& WALLACE

1  Health were to recover anything on liens it asserts despite the absence of an underlying debt, Sutter

2  Health, and not Plaintiff and the class, would be the recipient of a windfall. Any contrary

3  assertions in Defendant's Demurrer ignore the plain facts and law.

4  **E. PLAINTIFF SUFFICIENTLY ALLEGES CLRA CAUSES OF ACTION**

5  Plaintiff's complaint alleges that Sutter Health's balance billing violates the CLRA, Civil

6  Code §1770(a)(5), because it misrepresents the cost of its services by demanding payment for its

7  services after the debt for those services has been extinguished. It also violates the CLRA, Civil

8  Code §1770(a)(14), because, by demanding payment for services despite the fact that the debt has

9  been extinguished, Sutter Health represents that the provision of services involved obligations for

10  Plaintiff and the Class which they did not in fact involve. (Complaint at ¶¶5, 21, 28-35.)

11  Defendant states that because it asserts the liens after the services are rendered, they are not

12  part of the sale of the services. However, the assertion of liens is simply one part of the process of

13  Defendant's sale of medical services. For example, the CLRA would most certainly govern when

14  a hospital told a patient that a service would cost $500, and then billed the patient for $1000.

15  Simply because the bill, or in this case the assertion of the lien, came after the services were

16  rendered does not mean that the issuance of the bill, or the assertion of the lien, is not part of the

17  sale of the service or that the CLRA does not apply.

18  Defendant also claims that the liens Sutter Health has asserted were not asserted against

19  Plaintiff and the class, but against the tortfeasors. This is misleading, especially in light of the fact

20  that "any claim by a health care provider is not independent of, but derives from, the claim of the

21  injured person." (*Nishihama, supra*, 93 Cal.App.4[th] at 308.) In other words, Sutter Health's lien

22  would not exist but for the time and effort of the injured person to procure the recovery from the

23  tortfeasor. As the Supreme Court stated in *Parnell*, a lien against the recovery of an injured person

24  "giv[es] the hospital a direct right to a certain percentage of *specific property*, i.e., a judgment,

25  compromise, or settlement, *otherwise accruing to that person*." (*Parnell, supra*, 35 Cal.4[th] at 602

26  [emphasis added].) That is, Sutter Health is laying claim to the property of the Plaintiff and the

27  class in order to recoup its own expenses.

28

SCHNEIDER
& WALLACE

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S DEMURRER
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
12

1    Defendant's arguments regarding the technicalities of a CLRA claim are attempts to distract

2  from the real issues highlighted by Plaintiff's complaint. Defendant makes no claim that it has

3  been harmed; indeed, it cannot, since Defendant has now had far longer than 30 days' notice of

4  this action and has continued to assert its unlawful liens against Plaintiff and the class. The

5  requirement cited by Sutter Health is primarily aimed at remedying individual wrongs and is

6  unwieldy in the class action context. (*See Broughton v. Cigna Healthplans of California* (1999) 21

7  Cal.4th 1066, 1085.) In addition, Defendant does not dispute that this County is the proper venue

8  for this action, and Plaintiff's complaint specifically explained why this County is the proper venue

9  for this action. (Complaint at ¶19.) Defendant's distracting technical arguments have no bearing

10  on the merits of this action and should be disregarded. At the very least, Plaintiff should be

11  granted leave to amend her complaint to meet any technical requirements of the CLRA.

12  ## F. PLAINTIFF'S COMPLAINT MAKES A VALID CLAIM FOR RECOVERY BASED ON DEFENDANT'S UNJUST ENRICHMENT

13

14    While Defendant's Demurrer rests on the semantic argument that "unjust enrichment" is not

15  a cause of action, the theory behind Plaintiff's claims, and unjust enrichment generally, is a valid

16  claim for restitution, which can be decided on and awarded by a court. (*Lauriedale Associates,*

17  *Ltd. v. Wilson* (1992) 7 Cal.App.4th 1439, 1448.) Here, Plaintiff's complaint more than adequately

18  alleges that Sutter Health has been unjustly enriched whenever it has collected on its unlawful

19  liens, because it has collected for debts which never existed. (*See* Complaint at ¶¶4, 22, 36-40.)

20  Plaintiff seeks to return this money to its rightful owners.

21    In this case, it would be unjust for Sutter Health to retain the money which it obtained by

22  collecting on its unlawful liens. Again, Defendant quotes from *Nishihama* to support its point

23  while ignoring the language that specifically forbids Sutter Health from to asserting and collecting

24  on liens which would allow it to collect more money that it is owed. (*See Nishihama, supra*, 93

25  Cal.App.4th at 307.) Because Defendant is not entitled to recover for debts which have been

26  extinguished, equity mandates that those members of the class who have lost money as a result of

27  Defendant's unlawful liens should have that money restored to them.

28

SCHNEIDER
& WALLACE

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S DEMURRER
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
13

### G. PLAINTIFF ADEQUATELY ALLEGES THAT DEFENDANT ENGAGED IN CONVERSION AND/OR TRESPASS TO CHATTEL

Plaintiff's complaint alleges that because the monetary recoveries obtained by Plaintiff and the class were their property, Defendant's meddling with that property through the assertion of liens on it amounts to conversion or trespass to chattels. (*See* Complaint at ¶¶5, 23, 41-45.) This theory is supported by the plain language of *Parnell*, which calls these recoveries "specific property... accruing to [the injured] person." (*Parnell, supra,* 35 Cal.4th at 602.) Defendant did in fact interfere with the use and enjoyment of this property by Plaintiff and the class, by asserting and collecting on its unlawful liens. Therefore, Defendant's Demurrer to Plaintiff's cause of action for conversion and/or trespass to chattels should be dismissed.

### H. DEFENDANT'S UNLAWFUL ASSERTION OF LIENS CONSTITUTED FRAUD AND/OR NEGLIGENT MISREPRESENTATION

Through the unlawful assertion of liens, Defendant engaged in fraud and/or negligent misrepresentation because it knew or had reason to know that it was not owed a debt, yet asserted the liens nonetheless. (*See* Complaint at ¶¶6, 24, 46-51.) Defendant's Demurrer merely rehashes its litigation privilege and mistake of law arguments in response to Plaintiff's allegations; these arguments are meritless, as shown above. Defendant asserted the liens in question despite the fact that Defendant was aware that the liens were not based on an underlying debt. As such, Defendant's claim to money from Plaintiff and the class, when it knew or should have known that no money was actually owed, is sufficient for a finding of fraud or negligent misrepresentation.

### I. PLAINTIFF ADEQUATELY ALLEGES UCL VIOLATIONS

Plaintiff alleges that by asserting its unlawful liens, Defendant engaged in unfair, unlawful and fraudulent business practices in violation of the UCL. (Complaint at ¶¶7, 25, 52-64.) According to the complaint, Plaintiff's UCL claims are based on, among other things, Defendant's violations of the CLRA, Cal. Civ. Code §§1770(a)(5) and (14); unjust enrichment; unlawful conversion; unlawful trespass to chattel; fraud in violation of Civil Code §§1709-1710; and negligent misrepresentation in violation of Civil Code §§1709-1710. (Complaint at ¶55.) In light of these allegations, Defendant's assertion that "they have not alleged that Sutter violated any discrete federal or state law" is mystifying. (D's MPA at 14.)

SCHNEIDER & WALLACE

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S DEMURRER
*Campbell v. Sutter Health, et al.,* Case No. RG05221764
14

1    In any event: "The statutory language [of the UCL] makes clear that a practice may be

2 deemed unfair even if not specifically proscribed by some other law." (*Cel-Tech Communications,*

3 *Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4[th] 163, 180.) To determine if a business

4 practice is unfair in the consumer context, "the court must weigh the utility of the defendant's

5 conduct against the gravity of the harm to the alleged victim." (*State Farm Fire & Casualty Co. v.*

6 *Superior Court* (1996) 45 Cal.App.4th 1093, 1104; *see also Saunders v. Superior Court* (1994) 27

7 Cal.App.4[th] 832, 839.)[4] Here, Sutter Health's acts of asserting and collecting on its unlawful liens

8 causes the loss of money, time and energy, and emotional distress to Plaintiff and the class, all

9 while Sutter Health is perfectly aware that it is not owed any debts. The harm to Plaintiff and the

10 class thus outweighs any benefit to Sutter Health. More importantly, any benefit to Sutter Health

11 would be to collect on an impermissible lien that is not based on any debt, in violation of

12 *Nishihama* and *Parnell*, and would unjustly enrich Sutter Health.

13    Defendant's claims about a "safe harbor" under the HLA make no sense in light the

14 Supreme Court's decision in *Parnell* that the challenged liens are unlawful. The very point of

15 Plaintiff's complaint is that the liens asserted by Sutter Health fall outside the HLA and thus are

16 not authorized or protected by the HLA. As shown above, Defendant's due process and mistake of

17 law arguments fail here. Based on Defendant's violations of the other laws as alleged in Plaintiff's

18 complaint, and based on the fact that Defendant's assertion of its unlawful liens creates much harm

19 to Plaintiff and the class and would result only in ill-gotten gains for Defendant, Plaintiff has

20 adequately alleged a cause of action for Defendant's violation of the UCL.

21 **III.    CONCLUSION**

22    For the foregoing reasons, Plaintiff respectfully requests that this Court overrule

23 Defendant's Demurrer. In the alternative, if the Court sustains some or all of the Demurrer,

24 Plaintiff respectfully requests that this Court grant Plaintiff leave to amend her complaint.

25

26

27 [4] The more limiting standard for "unfair" business practices proposed by the Court in *Cel-Tech*

28 was specifically limited by that Court to the context of suits between business competitors, and not suits by consumers. (*Cel-Tech, supra,* 20 Cal. 4th at 187.)

SCHNEIDER
& WALLACE

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S DEMURRER
*Campbell v. Sutter Health, et al.,* Case No. RG05221764
15

1 | Respectfully Submitted,

2 | Date: November 2, 2005

SCHNEIDER & WALLACE

Hank Willson
Counsel for Plaintiff

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S DEMURRER
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
16

SCHNEIDER
& WALLACE

**20**

TODD M. SCHNEIDER (State Bar #158253)
JOSHUA KONECKY (State Bar #182897)
W.H. "HANK" WILLSON (State Bar #233321)
SCHNEIDER & WALLACE
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Tel: (415) 421-7100
Fax: (415) 421-7105
TTY: (415) 421-1665

LINDA ROSS (State Bar #85563)
LAW OFFICE OF LINDA ROSS
2204 Union Street
San Francisco, California 94123
Tel: (415) 563-2400

SCOTT KALKIN (State Bar #120791)
ROBOOSTOFF & KALKIN, PLC
369 Pine Street, Suite 610
San Francisco, California 94104
Tel: (415) 732-0282
Fax: (415) 732-0287

Attorneys for Plaintiffs

### SUPERIOR COURT OF CALIFORNIA

### COUNTY OF ALAMEDA

| | |
|---|---|
| MELINDA CAMPBELL, on her own behalf, and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>     vs.<br><br>SUTTER HEALTH, and DOES 1 through 25, inclusive,<br><br>         Defendants. | Case No. RG05221764<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S REQUEST FOR JUDICIAL NOTICE**<br><br>Date: November 16, 2005<br>Time: 3:00 pm<br>Department: 22<br>Judge: The Honorable Ronald M. Sabraw |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S REQUEST FOR JUDICIAL NOTICE
*Campbell v. Sutter Health, et al.*, Case No. RG05221764

SCHNEIDER
& WALLACE

1     Plaintiff opposes Defendant's Request for Judicial Notice, and respectfully requests that this

2   Court not take judicial notice of the unpublished decision of which Defendant seeks notice.

3   California Rule of Court (CRC) 977 states: "an opinion...that is not certified for publication or

4   ordered published *must not* be cited or relied on by a court or a party in any other action."

5   (Emphasis added.) Because the opinion in *Tweedy v. NCO Financial Systems, Inc.* is unpublished,

6   it must not be cited or relied upon.

7     In addition, the opinion in *Tweedy* was decided before the California Supreme Court's

8   opinion in *Parnell v. Adventist Health System/West* (2005) 35 Cal.4th 595, which confirmed that

9   Defendant's balance billing practices are unlawful. *Tweedy* merely tracks the reasoning of the

10   court in *Swanson v. St. John's Regional Medical Center* (2002) 97 Cal.App.4th 245, which, as

11   shown in Plaintiff's Opposition to Defendant's Demurrer, is inapplicable to this case.

12

13   Respectfully Submitted,

14   Date: November 2, 2005                    SCHNEIDER & WALLACE

15

16

17                                            Hank Willson
                                             Counsel for Plaintiff

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S REQUEST FOR JUDICIAL NOTICE
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
1

**21**

1   TODD M. SCHNEIDER (State Bar #158253)
    JOSHUA KONECKY (State Bar #182897)
2   W.H. "HANK" WILLSON (State Bar #233321)
    SCHNEIDER & WALLACE
3   180 Montgomery Street, Suite 2000
    San Francisco, California 94104
4   Tel: (415) 421-7100
    Fax: (415) 421-7105
5   TTY: (415) 421-1665
6
    LINDA ROSS (State Bar #85563)
7   LAW OFFICE OF LINDA ROSS
    2204 Union Street
8   San Francisco, California 94123
9   Tel: (415) 563-2400
10
    SCOTT KALKIN (State Bar #120791)
11  ROBOOSTOFF & KALKIN, PLC
    369 Pine Street, Suite 610
12  San Francisco, California 94104
    Tel: (415) 732-0282
13  Fax: (415) 732-0287
14
    Attorneys for Plaintiffs
15
16              **SUPERIOR COURT OF CALIFORNIA**
17                  **COUNTY OF ALAMEDA**
18
19  MELINDA CAMPBELL, on her own behalf,    Case No. RG05221764
    and on behalf of all others similarly situated,
20                                          **PROOF OF SERVICE**
            Plaintiffs,
21
        vs.
22
    SUTTER HEALTH, and DOES 1 through 25,
23  inclusive,
24          Defendants.
25
26
27
28

SCHNEIDER
& WALLACE

## PROOF OF SERVICE

### Sections 1013(a), 2015.5 C.C.P.

*Campbel et al. v. Sutter Health,*
*Alameda Superior Court Case No.: RG04190588*

I am a citizen of the United States and am employed in the County of San Francisco. I am over the age of eighteen years and not a party to the within entitled action. My business address is 180 Montgomery Street, Suite 2000, San Francisco, CA 94104.

On November 2, 2005, I served the following:

1. **Plaintiff's Opposition to Defendant's Request for Judicial Notice, and**

2. **Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Demurrer**

on the parties by placing true copies thereof for facsimile transmission to the number listed below and in a sealed envelope, postage fully prepaid, for deposit in the United States Mail at San Francisco, California, addressed as follows:

> Marcia Augsburger
> McDonough Holland & Allen PC
> 555 Capitol Mall, 9th Floor
> Sacramento, CA  94814-4692
> Facsimile: (916) 444-8334

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration is executed on November 2, 2005, at San Francisco, California.

SALLY MENDEZ

SCHNEIDER
& WALLACE

- 2 -

**22**



1   McDONOUGH HOLLAND & ALLEN PC
    Attorneys at Law
2   RICHARD E. BRANDT (44893)
    MARCIA L. AUGSBURGER (145686)
3   JOHN C.J. BARNES (216694)
    555 Capitol Mall, 9th Floor
4   Sacramento, CA  95814
    Phone: 916.444.3900
5   Fax:    916.444.8989

6   Attorneys for Defendant Sutter Health

7

8                       SUPERIOR COURT OF CALIFORNIA

9                          COUNTY OF ALAMEDA

10

11   MELINDA CAMPBELL, on her own behalf,        )   Case No. R605221764
     and on behalf of all others similarly situated,  )
12                                                )
                                                  )
13                        Plaintiffs,             )
                                                  )   Date:   September 27, 2005
14   v.                                           )   Time:   2:00 p.m.
                                                  )   Place:  Department 31
15   SUTTER HEALTH and DOES 1 through 24,         )
     inclusive,                                   )
16                                                )
                          Defendants.             )
17                                                )

18

19                       **SUTTER HEALTH'S REPLY**

20                   **IN SUPPORT OF DEMURRER**

21

22

23

24

25

26

27

28

**MHA**
McDonough Holland & Allen PC
Attorneys at Law

---

Sutter Health's Reply in Support of Demurrer                                    872408v2 09504/0502

I.    **INTRODUCTION AND SUMMARY OF ARGUMENTS ON REPLY**

Plaintiffs' opposition to the demurrer of Sutter Health ("Opp.") is based primarily on a misinterpretation of the *Parnell* decision. *See, e.g.,* Opp. 1:17-19. In *Parnell v. Adventist Health System/West*, 35 Cal. 4th 595 (2005), the California Supreme Court held, based on its analysis of legislative history, that a Health Lien Act ("HLA") lien requires the existence of an underlying debt owed by the patient to the hospital and that, absent such a debt, no such lien may attach.[1] *Parnell*, 35 Cal. 4th at 609. *Parnell* did not recognize or create a cause of action for damages or "Unjust Enrichment." *Parnell* provides a patient, at most, a right to defend a lien claim, or to seek declaratory relief, on the ground that a claimed hospital lien does not attach to his or her recovery or settlement. Plaintiffs' arguments to the contrary ignore the Supreme Court decision in *Olszewski v. Scripps Health*, 30 Cal. 4th 798 (2003), and other authorities that hold that the filing of a hospital lien notice is a communicative act in a judicial proceeding and therefore privileged under Civil Code section 47(b) from challenge by a tort or statutory action.

Plaintiffs' arguments regarding the retroactive application of *Parnell* similarly miss the issue. The issue is not whether *Parnell* should be applied in pending cases. The Complaint does not allege that after the *Parnell* decision became final Sutter Health collected HLA liens against the recoveries of Plaintiffs that were not supported either by a patient debt or the agreement of an insurance company/payor. The issue—as framed by Plaintiffs' Complaint—is whether **past cases** must be reopened to determine whether their resolution complied with the principles of *Parnell*. Neither *Parnell* nor any other authority permits the reopening of cases previously resolved by judgment or settlement.

II.    **EACH CAUSE OF ACTION ALLEGED IN THE COMPLAINT IS ABSOLUTELY BARRED BY CALIFORNIA CIVIL CODE SECTION 47(b), THE LITIGATION PRIVILEGE.**

Plaintiffs argue that Sutter Health's assertion of the litigation privilege is "inconsistent with" *Parnell* because *Parnell* held that the assertion of liens may be unlawful. Opp. 2:18-3:8. *Parnell* does not hold that the assertion of liens may be unlawful; it holds that a lien may not "attach" or be effective if not supported by a patient debt or payor agreement. *Parnell*, 35 Cal. 4th at 609, 611. Moreover, the litigation privilege exists for the purpose of protecting participants in the legal system even when their communications are unlawful.[2]    Indeed, the *Parnell*

---

[1] Notably, the *Parnell* Court went on to hold that the hospital and the patient's insurance company or other payor could contract to permit the hospital to recover on liens. *Parnell*, 35 Cal. 4th at 611.

[2] *See, e.g., Olszewski v. Scripps Health*, 30 Cal. 4th at 831-32; *Silberg v. Anderson*, 50 Cal. 3d 205, 218 (1990); *Brown v. Kennard*, 94 Cal. App. 4th 40, 46-51 (2001); *O'Keefe v. Kompa*, 84 Cal. App. 4th 130, 133-34 (2001); *Merlet v. Rizzo*, 64 Cal. App. 4th 53, 64-66 (1998); *Wilton v. Mountain Wood Homeowners Assoc., Inc.*, 18 Cal. App. 4th 565, 569 (1993).

1  Court confirmed that the litigation privilege may apply, and is not "inconsistent" with its opinion, stating: "Like the

2  Court of Appeal, we also decline to address 'the issue of litigation immunity for filing notices of liens' and leave the

3  sorting out of 'the causes of action and types of relief to which [Parnell] may be entitled' to the proceedings on

4  remand." *Parnell*, 35 Cal. 4th at 611-612, fn. 16.

5        Plaintiffs' argument ignores the Supreme Court's application of § 47(b) to hospital lien notices in

6  *Olszewski*, 30 Cal. 4th at 831-32 (holding that hospital liens asserted under section 14121.791 were preempted by

7  federal Medicaid law, but that § 47(b) immunized the hospital from all tort liability). Plaintiffs also fail to

8  acknowledge the existing rule of law articulated in *Swanson v. St. John's Regional Medical Center*, 97 Cal. App.

9  4th 245, 249 (2002) (*disapproved on other grounds in Parnell*, 35 Cal. 4th at 609), which held that hospital lien

10  notices are protected by the litigation privilege as a matter of law. *Swanson's* application of the litigation privilege

11  to hospital lien notices governs this lawsuit.

12        These cases also rebut Plaintiffs' argument that the filing of hospital lien notices is conduct, as contrasted

13  with a communication. *See, e.g., Olszewski*, 30 Cal. 4th at 831-32; *Rubin v. Green*, 4 Cal. 4th 1187, 1193 (1993).

14  In fact, this argument was specifically rejected by the Supreme Court in *Olszewski*:

15        [W]e reject plaintiff's contention that defendant's practice of using these statutorily authorized liens
16        "to seize funds" in violation of federal law is noncommunicative conduct falling outside the
        litigation privilege. The only tortious acts alleged by plaintiff were defendant's assertion of liens
17        pursuant to [the Medi-Cal lien section]. Plaintiff did not allege that defendant committed any acts
        not authorized by [the Medi-Cal lien sections].

18  *Olszewski*, 30 Cal. 4th at 831. The privilege applies even if the assertion is considered conduct because it was

19  necessary to the communication of the lien. *See, e.g. Rubin*, 4 Cal. 4th at 1195-1196 (fact that defendant's

20  communication "necessarily involved related acts" does not destroy privilege); *O'Keefe*, 84 Cal. App. 4th at 134

21  (scope of publication or broadcast includes noncommunicative conduct).

22        Plaintiffs cite *Limandri v. Jenkins*, 52 Cal. App. 4th 326 (1997), for the proposition that "the filing of an

23  improper lien was conduct, not a protected communication." Opp. 4:4-5. However, *Limandri* stated that "the

24  isolated act of filing [defendant's] notice of lien was **communicative.** . . ." *Id.* at 345 (emphasis added). The

25  *Limandri* court held that the privilege applicable to the filing of a lien notice did not apply to wrongful conduct that

26  was distinct from the filing of the lien notice. *Id*[3] No wrongful conduct separate from filing of hospital lien

27

28  [3] In *Limandri*, an attorney entered into a fee agreement with his client that gave the attorney a percentage of the client's
recovery in an environmental contamination case. *Id.* at 334. The defendant then allegedly interfered with this
agreement by seeking and obtaining a security interest in the same recovery. *Id.* at 345. The defendant then filed a

MHA

1  notices is alleged in this case. The *Limandri* court also found the privilege inapplicable because the filing of the

2  notice of lien was only incidental to the defendant's offending conduct, which was the creation of a security interest.

3  *Id.* at 342, 346. Here, the assertion of hospital liens are not alleged to be incidental to Sutter Health's conduct, but to

4  be precisely the conduct allegedly wrongful. In *Limandri*, the offending conduct was the creation of the security

5  interest, which arose when the lender executed the agreement, not when the notice of lien was filed. *Id.* at 342,

6  346. In contrast, liens asserted under the HLA are "not effective" until the hospital serves the lien notice on the

7  third-party tortfeasor and their insurance carrier. Cal. Civ. Code § 3045.3.[4] Thus, the filing of lien notices is the

8  allegedly wrongful conduct and is therefore absolutely privileged under *Limandri. Id.*[5] Any doubt as to whether

9  the privilege applies must be resolved in favor of applying it. *Obos v. Scripps Psychological Associates*, 59 Cal.

10  App. 4th 103, 108 (1997).

11  Plaintiffs' argument in part A.3. of the opposition that the filing of lien notices is not privileged if they

12  were not authorized by the HLA is a species of their argument in A.1. that the privilege does not apply to unlawful

13  liens. As addressed above, this is wrong; the litigation privilege applies even when the communication constitutes

14  an outright violation of law and regardless of equity, malice, or intent to harm. *See* Footnote 2, *supra*. In part A.4.,

15  Plaintiffs assert, without authority, that the litigation privilege does not apply to Plaintiffs' consumer protection

16  claims under the CLRA and the UCL because they "are not tort claims at all . . . ." Opp. 4:24-5:17. However,

17  § 47 applies to the CLRA claim because, if not a tort, it is a statutory cause of action, *Ribas v. Clark*, 38 Cal. 3d

18  355, 364-365 (1985),[6] and applies to the UCL claim because it is a tort action. *Mileikowsky v. Tenet Healthsystem*,

19  notice of lien, which "merely gave notice that Security was asserting the lien" but did not create the competing lien. *Id.* at

20  342, 346.

[4] The *Limandri* court goes on to discuss whether the defendants were litigants or participants in litigation for purposes of

21  the litigation privilege. *Id.* at 346-48. The court held that the defendants were not participants because their claim of
superior lien rights had no connection to the issues in the environmental contamination case. *Id.* In contrast, HLA liens

22  arise from medical services directly in issue in the personal injury lawsuits (Cal. Civ. Code § 3045.1); arise only if an
action against the tortfeasor is pending (*id.*); attach only to "moneys due under any final judgment, compromise or

23  settlement agreement," (*id.*, §§ 3045.4, 3045.2); and are statutory prerequisites to the pursuit of a judicial remedy for
default (Cal. Civ. Code §§ 3045.4, 3045.5). Under these circumstances, section 47 applies, as discussed in *Limandri* by

24  reference to numerous cases. *Id.* at 347 (surveying cases including *Koudmani v. Ogle Enterprises, Inc.*, 47 Cal. App. 4th
1650, 1656 (1996)).

25  [5] Plaintiffs also cite *Kimmel v. Goland*, 51 Cal. 3d 202, 205 (1990), *Silberg*, 50 Cal. 3d at 212, *Susan S. v.
Israels*, 55 Cal. App. 4th 1290, 1299 (1997), *Kupiec v. American international Adjustment Company*, 235 Cal. App. 3d

26  1326, 1331 (1992), and *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1132 n. 12 (1990) for the
proposition that the litigation privilege only applies to "communications," not to "conduct." However, these cases do not

27  say this. They acknowledge that the privilege may apply to communicative acts. In any event, as described above, the
assertion of hospital liens is communicative. *Rubin*, 4 Cal.4th at 1195-1196; *O'Keefe*, 84 Cal.App.4th at 134; *Limandri*,

28  52 Cal.App.4th at 345.

[6] The *Ribas* Court found statutory claims are subject to Section 47: "It appears no case has ever considered the
applicability of Civil Code section 47 to statutory causes of action. However, the purpose of the judicial proceedings

MHA
Joseph Holland & Allen PC
Attorneys at Law

1  128 Cal. App. 4th 262, 265 (2005) ("The amended petition also added tort claims under Business and Professions

2  Code section 17200."). Plaintiffs may not avoid the bar of § 47(b) by re-casting their claims as ones under the

3  UCL. *Rubin*, 4 Cal. 4th at 1204.

4      Plaintiffs' reliance on *Barquis v. Merchants Collection Assn.*, 7 Cal. 3d 94 (1972), and *Yu v. Signet*

5  *Bank/Virginia*, 69 Cal. App. 4th 1377 (1999), highlights the difference between the type of conduct that is outside

6  the litigation privilege (and therefore subject to consumer protection statutes) and the type of conduct (the filing of

7  HLA lien notices) within the protection of the litigation privilege. *Barquis* involved a collection agency pattern and

8  practice of commencing suits in a county where venue was not proper, with knowledge that the venue was

9  improper, for the purpose of impairing defendants' ability to present a defense, and securing default judgments and

10  favorable settlements that a collection agency would not otherwise secure. *Barquis*, 7 Cal. 3d at 100. *Yu* involved

11  a similar practice by a credit card company that improperly filed collection actions in Virginia against

12  cardholder/debtors located in California who were not subject to the personal jurisdiction of the Virginia courts.

13  *Yu*, 69 Cal. App. 4th at 1386-1387.

14      The distinctions between the conduct of the *Barquis* and *Yu* defendants and the filing of hospital lien

15  notices are obvious. The *Barquis* and *Yu* plaintiffs took action to initiate lawsuits; hospital lien notices are

16  documents filed in pending cases to protect the rights of a hospital that is not a party to the litigation. The actions of

17  the *Barquis* and *Yu* plaintiffs violated express statutory mandates; the filing of hospital lien notices is expressly

18  authorized by statute. The purpose and effect of the actions of the *Barquis* and *Yu* defendants were to deprive

19  alleged debtors of their ability to defend their interests; the filing of a hospital lien notice has no such effect—

20  patients and alleged tortfeasors in personal injury actions are represented by counsel who can defend against a

21  claimed lien.

22      The litigation privilege of Civil Code § 47(b) reflects a paramount public policy of allowing parties free

23  access to the courts to protect their interests without fear of judicial retribution for having done so. *See Silberg*, 50

24  Cal. 3d at 213-216. The filing of hospital lien notices clearly serves this purpose. Even if a conclusion is ultimately

25  reached that the full debt obligation of a patient has been paid and the hospital's contract allows no further lien

26  _____

27  privilege seems no less relevant to such claims. Underlying the privilege is the vital public policy of affording free
    access to the courts and facilitating the crucial functions of the finder of fact. [citation]
    ***

28  This policy is equally compelling in the context of common law and statutory claims for invasion of privacy; there is no
    valid basis for distinguishing between the two." *Ribas*, 38 Cal.3d 355 at 364-365 [emphasis added].

1   claims, the filing of lien notices serves the policy of the litigation privilege by preserving the hospital's actual or

2   potential rights while insurance coverage and contract reimbursement issues are being finally resolved.

3       The sole exception to the litigation privilege is actions for malicious prosecution. Both *Barquis* and *Yu*

4   involve the abuse of process to further malicious prosecutions, i.e., lawsuits maliciously brought by parties who

5   knew they had no right to prevail in the lawsuits using the procedures they did. Plaintiffs allege no facts that could

6   support a malicious prosecution case against Sutter Health.

7   **III.   JUDICIAL DECISIONS HAVE RETROACTIVE EFFECT ONLY IN PENDING**
8   **CASES, NOT TO THE FINAL AND CLOSED CASES PLAINTIFFS SEEK TO RESURRECT IN THIS LAWSUIT.**

9       Plaintiffs fundamentally misread the cases they cite. Judicial decisions have retroactive effect, but only to

10  pending cases. *Abramson v. Juniper Networks*, Inc., 115 Cal. App. 4th 638, 660 (2004). Plaintiffs take the rule of

11  retroactivity a step too far. They argue judicial decisions are retroactive not only to pending cases, but to all past

12  circumstances potentially affected by the new decision. In other words, Plaintiffs argue that every time a new

13  appellate decision is published, a new round of litigation should begin requiring long-closed matters to be re-

14  litigated, and new decisions issued consistent with the new rule. This is not the law. "A decision announcing a

15  change in a judicial rule of law is rarely, if ever, a basis for disturbing a final judgment based on the prior rule."

16  *Droeger v. Friedman, Sloan & Ross*, 54 Cal. 3d 26, 45 (1991).

17      The cases cited by Plaintiffs follow the rule that judicial opinions have retroactive effect only to pending

18  cases. *See Brennan v. Tremco Inc.*, 25 Cal. 4th 310, 318 (2001) (court permitted case decided <u>during pendency of</u>

19  <u>action</u> to have retroactive effect); *Wellencamp v. Bank of America*, 21 Cal. 3d 943, 953 (1978) (case limiting use

20  of due-on-sale clause did not apply retroactively to cases where lender had already enforced due-on-sale clause);

21  *Abramson*, 115 Cal. App. 4th at 660 (case decided after summary judgment permitted to have retroactive effect at

22  appellate level); *Miranda v. Macias*, 141 Cal. App. 3d 188, 191 (1983) (new case applied to "cases pending and

23  not yet final"). The Complaint does not seek to invalidate pending liens based on *Parnell*; it does not even allege

24  there are pending liens.

25      Plaintiffs now say that *Parnell* "did not overturn 'settled law.'" Opp. 7:9-8:6. If that is correct, it

26  underscores that Plaintiffs should have sought to invalidate the liens at issue before the cases in which they were

27  asserted were closed. To reopen those cases now is not only contrary to the law of retroactivity, it would violate

28  final judgment rules and due process. *Moss v. Superior Court*, 17 Cal. 4th 396, 429 (1988).

**MHA**
<small>Imbaugh Holland & Allen PC
Attorneys at Law</small>

**Sutter Health's Reply in Support of Demurrer**                                    872408v2 09504/0502

## IV.  PLAINTIFFS' OPPOSITION CONFIRMS THAT THE COMPLAINT FAILS TO ALLEGE ACTIONABLE CONDUCT AND DAMAGES.

Plaintiffs' opposition confirms that the Complaint alleges that the wrongdoing was "[t]he mere assertion of a lien[.]"[7] Opp. 9:27-28 (emphasis added). As Sutter Health maintained in its opening memorandum, this is not actionable, as a matter of law. *See, e.g., Louisville Title Insurance Company v. Surety Title and Guaranty Company*, 60 Cal. App. 3d 781, 801 (1976) (taking or threatening to take legal action cannot constitute duress); *Marshall v. Packard-Bell Co.*, 106 Cal. App. 2d 770, 774 (1951) (mere threat to exercise rights is not duress or coercion).

Even if some wrongdoing were alleged, "[a] wrong without damage does not constitute a cause of action for damages." *Frustruck v. City of Fairfax*, 212 Cal. App. 2d 345, 368 (1963).[8] In attempting to plead the element of damage, Plaintiffs state that the damage was collection on the liens and "forcing [plaintiffs] to expend time, energy, and resources to oppose the lien." Opp. 10:1-2. **The primary problem with this argument is that if the tortfeasors paid the liens for medical expenses that Plaintiffs did not owe, Plaintiffs are not damaged because they were never entitled to money from the tortfeasors for medical expenses they did not incur.** *Nishihama v. City and County of San Francisco*, 93 Cal. App. 4th 298, 306-08 (2001), *Hanif v. Housing Authority*, 200 Cal. App. 3d 635, 641 (1988) (plaintiffs may not recover for medical care more than the amount paid or actually incurred). This would explain why the *Parnell* Court did not indicate that Parnell was entitled to any relief whatsoever arising from the unlawful lien. *Parnell*, 35 Cal. 4th at 620.

Plaintiffs utterly mischaracterize Sutter Health's argument about *Nishihama*, 93 Cal. App. 4th at 306-08 in part D. of their opposition. In *Nishihama*, the court discussed as axiomatic the rule of law that **personal injury plaintiffs are only entitled to recover from the tortfeasor the amount paid to the hospitals.** *Id.* at 307. The Court stated: "Thus, when the evidence shows **a sum certain to have been paid or incurred for past medical care and services,** whether by the plaintiff or by an independent source, **that sum certain is the most the plaintiff may recover** for that care despite the fact that it may have been less than the prevailing market rate.'" *Id.* at 306, quoting *Hanif*, 200 Cal. App. 3d at 641 (emphasis added). Thus, in *Nishihama*, the court held that the

/////

---

[7] Complaint ¶s 30, 37, 42, 47, 57.
[8] *See also Bardis v. Oates*, 119 Cal. App. 4th 1, 10 (2004) ("Damage to the plaintiff is, of course, an essential element to recovery in both tort and contract actions." [citations omitted]).

MHA
Donough Holland & Allen PC
Attorneys at Law

1  patient plaintiff was not entitled to the amount stated in the lien ($17,168) and therefore reduced the award to the

2  amount Blue Cross paid to the hospital ($3,600). *Id* at 309.

3       If the amounts paid on the liens in this case exceeded the amounts plaintiffs' health plans paid or plaintiffs

4  actually owed, Sutter Health did not cause any diminution of Plaintiffs' personal injury recoveries;  if such

5  diminution occurred, the **payor** was responsible for it, i.e., the tortfeasor who paid the lien. *Parnell*, 35 Cal. 4th at

6  601-02 ("to assert [an HLA lien], the hospital need not provide notice of the lien to the injured person, and that

7  notice must be served on the tortfeasor . . . [who is liable] for the amount of the lien claimed in the notice which the

8  hospital was entitled to receive as payment for medical care and services rendered to the injured person."); Cal.

9  Civ. Code §§ 3045.3, 3045.4 (person making payment to injured person is liable to hospital for amount of lien),

10  3045.5 (hospital has one year after payment to enforce lien by filing action at law against person who made

11  payment without satisfying the lien). In this situation, there would be three possible reasons for the wrongful

12  payment:  (1) the tortfeasors paid Sutter Health under mistake of law; (2) the tortfeasors were compelled in a

13  lawsuit to pay the liens; (3) the tortfeasors paid the liens knowing the liens were unlawful. If Sutter Health was

14  paid under mistake of law, then the monies are not recoverable from Sutter Health even by the tortfeasors. *Draper*

15  *v. Grant*, 91 Cal. App. 2d 566, 571 (1949); *Reynolds v. City and County of San Francisco*, 53 Cal. App. 3d 99, 101

16  (1975). If the tortfeasors were compelled by a court to pay the lien, then res judicata applies. If the tortfeasors paid

17  the liens knowing they were unlawful, to Plaintiffs' detriment, then Plaintiffs' action is against them.

18       In *Parnell*, the injured party filed his action against Adventist Health System/West **before the lien was**

19  **paid**. *Parnell*, 35 Cal. 4th at 599-600. Apparently, Parnell mistakenly believed some benefit would be derived

20  from invalidating the lien, although he may have thought he could recover the hospital's customary charges from

21  the tortfeasor even if he did not actually incur those charges. Parnell was mistaken. *Nishihama*, 93 Cal. App. 4th at

22  306-08, *Hanif*, 200 Cal. App. 3d at 641. In any event, this lawsuit has not been filed to invalidate pending liens as

23  in *Parnell*. Such a remedy is certainly available to Plaintiffs in the future under *Parnell* if Sutter Health asserts an

24  invalid hospital lien. However, as discussed in the preceding paragraph, there is no cognizable theory for

25  invalidating hospital liens already paid in closed personal injury cases and giving the money to Plaintiffs, who did

26  not have a right to it in the first place.[9] Moreover, the Complaint does not plead a declaratory relief claim to

27

28

---

[9] The Complaint does not allege that Sutter Health has wrongfully asserted liens in any pending case involving any Plaintiffs.

Sutter Health's Reply in Support of Demurrer                                    872408v2 09504/0502

1    preclude Sutter Health from asserting unlawful liens in the future, nor could it, because no judiciable controversy

2    exists; there is no allegation that Sutter Health contends it does not need to follow *Parnell*.

3    **V.    ALL OF PLAINTIFFS' CAUSES OF ACTION FAIL**

4         **A.    Plaintiffs Cannot Save Their CLRA Claims**

5         Plaintiffs do not address the fundamental defect in their CLRA claim: Civil Code section 1770(a) requires

6    that the misrepresentation about services must have been "intended to result or which results in the sale or lease of

7    goods or services to any consumer . . . ." The statuate cannot and does not give rise to a cause of action for a lien

8    asserted after the services were rendered. The allegations in the Complaint simply cannot support a CLRA claim.

9         Plaintiffs argue that because the hospitals' claims "derive from" the injured persons' claims, it is

10   "misleading" for Sutter Health to contend that the liens were asserted against the tortfeasors, not the injured

11   Plaintiffs. Opp. 12:18-27. Apparently, Plaintiffs mean by this that hospital liens are asserted against the Plaintiffs'

12   property because the liens do not exist unless the injured patients sue their tortfeasors. However, injured patients

13   can recover medical expenses from tortfeasors only if the medical costs are actually owed to a medical provider.

14   *Nishihama*, 93 Cal. App. 4th at 306; *Hanif*, 200 Cal. App. 3d at 641. Otherwise, they are not awardable to an

15   injured plaintiff. *Id.* Plaintiffs do not dispute that their general damages actually **increase** if the liens overstate the

16   medical specials. Thus, the representations made in the liens about the medical expenses Plaintiffs incurred, which

17   they assert give rise to their CLRA claims, actually increased their recoveries. Accordintly, Plaintiffs are not

18   entitled to any money Sutter Health collected on hospital liens, and no CLRA claim is stated, because the hospitals

19   did not make misrepresentations to Plaintiffs to their detriment. Indeed, any liens that overstated Plaintiffs' medical

20   expenses only favored the Plaintiffs by stating to the tortfeasor that Plaintiffs owed more than they actually did.

21        Finally, Plaintiffs ask this Court to ignore Civil Code sections 1782(a) & (b) and 1780(c) as

22   "technicalities." These "technicalities" are processes specifically mandated by the legislature to encourage

23   resolution of claims before litigation and for other reasons. Plaintiffs should not ask this Court to sanction their

24   failure to comply with law.

25        **B.    There Is No Cause Of Action For Unjust Enrichment.**

26        The legal principal that a plaintiff cannot state a cause of action for "unjust enrichment" is not a mere

27   "semantic argument." Opp. 13:13-14. *See, e.g. Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779,

28   793 (2003) (no cause of action in California for unjust enrichment). *See also McBride v. Boughton*, 123 Cal. App.

MHA
*iDonnogh Holland & Allen rc*
*Attorneys at Law*

8

1   4th 379, 387 (2004) (claim of unjust enrichment is restatement of prayer for relief related to other causes of action).

2   Plaintiffs imply that their claim is really for restitution. Opp. 13:13-19. However, Plaintiffs do not even purport to

3   assert facts or law entitling them to restitution, namely, an express or implied contract. *McBride*, 123 Cal. App.

4   4th at 389.

5       ·For this reason, and based on the discussion in parts II. through IV. above, this claim must be dismissed.

6   *Id.* at 389-90; *City of Hope Nat. Medical Center v. Superior Court*, 8 Cal. App. 4th 633, 637 (1992).

7         **C.**    **Plaintiffs' Opposition Does Not Support Causes of Action for Conversion, Trespass to Chattels, Fraud, or Negligent Misrepresentation.**

8

9       As described above, Plaintiffs never had a property right to the difference between what they actually

10   owed to the hospital and what the hospital collected on any alleged overstated liens, and thus have no claims for

11   "Conversion and Trespass to Chattels." *Spates v. Dameron Hospital Assn.*, 114 Cal. App. 4th 208, 221 (2003).

12   Plaintiffs mischaracterize the following language in *Parnell* in an attempt to support a property right: "The lien is

13   'nonconsensual' and 'compensates a hospital for providing medical services to an injured person by giving the

14   hospital a direct right to a certain percentage of specific property, i.e., a judgment, compromise, or settlement,

15   otherwise accruing to that person." Opp. 14:2-9, citing *Parnell*, 35 Cal. 4th at 602, citing *Mercy Hospital &*

16   *Medical Center v. Farmers Ins. Group of Companies*, 15 Cal. 4th 213, 217 (1997). At most, this statement

17   acknowledges that judgments, compromises, and settlements are property, not that Plaintiffs have a right to recover

18   money for medical expenses they never incurred.

19       For the same reasons, and those described in parts II. through IV above, the Fraud and Negligent

20   Misrepresentation claims must be dismissed. If, as the opposition asserts, Sutter Health knew or should have

21   known that the amount stated in the liens was not actually owed by the Plaintiffs, then the Plaintiffs should not

22   have represented to the tortfeasors that the medical expenses were incurred. If the tortfeasors overpaid for medical

23   expenses that were not incurred, the time to raise it was in the Plaintiffs' now-closed lawsuits against those

24   tortfeasors. Plaintiffs have no claims.

25       **D.**    **Plaintiffs' UCL Claim Is Tethered To Their Other Invalid Causes Of Action.**

26       A UCL claim must be linked to the violation of a discrete law. *Cel-Tech Communications, Inc. v. Los*

27   *Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999). As set forth above, Plaintiffs cannot save their

28   /////

**MHA**

Holland & Allen PC
Attorneys at Law

9

1    non-UCL claims because, *inter alia,* they are barred by the litigation privilege, and the law does not allow Parnell

2    to retroactively change the outcome of closed matters. Accordingly, Plaintiffs' UCL claim fails as well.

3         Plaintiffs also fail to explain why Sutter Health is any less entitled to safe harbor protection than the

4    hospital in *Olszewski,* 30 Cal. 4th 798. In that case, the statute permitting the liens was declared wholly invalid

5    because it was preempted by federal law. *Id.* at 826. Nonetheless, the Court determined the hospital was entitled

6    to safe harbor from UCL claims because "'[a]cts that the Legislature has determined to be lawful may not form the

7    basis for an action under the unfair competition law. . . .'" *Id.* at 828 (quoting *Cel-Tech,* 20 Cal.4th at p.183.).

8    Unlike court in *Olszewski,* the *Parnell* court did not invalidate the statute that provides a safe harbor from UCL

9    claims. Rather, the *Parnell* court merely limited hospitals' rights to collection on liens asserted against insured

10    patients. This does not change the fact that prior to *Parnell,* hospitals were justified in believing the statute

11    permitted them to file the subject liens because the statute "does not distinguish between insured and uninsured

12    patients." *Parnell,* 35 Cal.4th at 603. Notably, the *Swanson* court considered the application of safe harbor

13    immunity to the filing of hospital liens. *Swanson,* 97 Cal. App. 4th at 247-248. Reasoning that the HLA

14    "authorizes the very business practice that appellant claims is unlawful," the *Swanson* court held that hospitals that

15    file HLA liens are entitled to safe harbor protection from UCL claims. *Id.* *Olszewski* recognized the importance of

16    upholding this safe harbor:

17        Californians should be able to presume that statutes enacted by the Legislature are constitutional.
         Otherwise, we place our citizens in the untenable position of guessing whether their conduct may
18        subject them to penalty even when the legislature has expressly condoned it. [citations omitted]
         We therefore conclude that [the preempted lien sections] create a safe harbor protecting defendant
19        from plaintiff's claim of unfair business practices.

20    *Olszewski,* 30 Cal. 4th at 829.

21    **VI.    CONCLUSION**

22         For the reasons set forth herein, Sutter Health respectfully requests the Court sustain its demurrer to Plaintiffs'

23    Complaint, and to each and every cause of action therein, without leave to amend.

24    DATED: November 8, 2005    McDONOUGH HOLLAND & ALLEN PC
                                 Attorneys at Law
25

26                             By: _____
                                 John C. J. Barnes
27                               Attorneys for Defendant Sutter Health

28

CASE TITLE:          Melinda Campbell, et al. v. Sutter Health, et al.

COURT/CASE NO:       Alameda County Superior Court No. R605221764

### PROOF OF SERVICE

I am employed in the County of Sacramento; my business address is 555 Capitol Mall, 9th Floor, Sacramento, California 95814. I am over the age of eighteen years and not a party to the foregoing action.

I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

On November 8, 2005, I served the within:

(1)   SUTTER HEALTH'S REPLY IN SUPPORT OF DEMURRER

☐   **by mail** on the following party(ies) in said action, in accordance with Code of Civil Procedure § 1013a(3), by placing a true copy thereof enclosed in a sealed envelope in a designated area for outgoing mail, addressed as set forth below. At McDonough Holland & Allen PC, mail placed in that designated area is given the correct amount of postage and is deposited that same day, in the ordinary course of business, in a United States mailbox in the City of Sacramento, California.

☐   **by personally delivering** a true copy thereof, in accordance with Code of Civil Procedure § 1011, to the person(s) and at the address(es) set forth below.

☒   **by overnight delivery** on the following party(ies) in said action, in accordance with Code of Civil Procedure § 1013(c), by placing a true copy thereof enclosed in a sealed envelope, with delivery fees paid or provided for, and delivering that envelope to an overnight express service carrier as defined in Code of Civil Procedure § 1013(c)..

☐   **by facsimile transmission**, in accordance with Code of Civil Procedure § 1013(e), to the following party(ies) at the facsimile number(s) indicated:

Todd M. Schneider                          Counsel for Plaintiffs
Joshua Konecky
W.H. "Hank" Wilson
SCHNEIDER & WALLACE
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

Proof of Service                                                                855075v1 09504/0502

1

1    *Courtesy Copy to:*                          Co-counsel for Plaintiffs

2

3    Linda Ross
     LAW OFFICE OF LINDA ROSS
     2204 Union Street
4    San Francisco, CA 94123
     Telephone: (415) 563-2400
5    Facsimile: (415) 931-9981

6    Scott Kalkin
     ROBOOSTOFF & KALKIN, PLC
7    369 Pine Street, Suite 610
     San Francisco, CA 94104
8    Telephone: (415) 732-0282
     Facsimile: (415) 732-0287
9

10   I declare under penalty of perjury under the laws of the State of California that the foregoing is
11   true and correct and that this document was executed on November 8, 2005.

12                                              _____
                                                        EJ Kipping
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**23**

McDONOUGH HOLLAND & ALLEN PC
Attorneys at Law
RICHARD E. BRANDT (44893)
MARCIA L. AUGSBURGER (145686)
JOHN C.J. BARNES (216694)
555 Capitol Mall, 9th Floor
Sacramento, CA 95814
Phone: 916.444.3900
Fax: 916.444.8989

Attorneys for Defendant Sutter Health

RECEIVED

NOV 8 2005

ALAMEDA COUNTY SUPERIOR COURT

SUPERIOR COURT OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| MELINDA CAMPBELL, on her own behalf, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SUTTER HEALTH and DOES 1 through 24, inclusive, <br><br> Defendants. | Case No. R605221764 <br><br> **[PROPOSED] ORDER GRANTING SUTTER HEALTH'S DEMURRER TO PLAINTIFFS' COMPLAINT** <br> [Submitted pursuant to Alameda County Superior Court Local Rule 5.1] <br><br> Date: November 16, 2005 <br> Time: 3:00 p.m. <br> Place: Department 22 <br> Judge: Honorable Ronald M. Sabraw |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

Defendant Sutter Health's Demurrer to Plaintiffs' Class Action Complaint for Violations of the Consumers Legal Remedies Act, Civil Code §§ 1750, et seq., Unjust Enrichment, Misrepresentation, Conversion, and Business and Professions Code §§ 17200, et seq. ("Complaint") came on for hearing in this Department on November 16, 2005, at 3:00 p.m. The matter was argued and submitted, and good cause appearing therefor,

IT IS HEREBY ORDERED that:

Plaintiffs' Demurrer is sustained without leave to amend, on the following grounds:

1.      The Complaint and each cause of action alleged are absolutely barred by Civil Code section 47(b), the litigation privilege;

2.      The Complaint and each cause of action alleged fail to state a cause of action because they fail to allege actionable conduct;

MHA
McDonough Holland & Allen PC
Attorneys at Law

1

1      3.      The Complaint fails to state a cause of action because retroactive application of the

2 California Supreme Court's ruling in *Parnell v. Adventist Health System/West*, 35 Cal. 4th 595

3 (2005), would be contrary to law and constitute a denial of due process;

4      4.      The Complaint and each cause of action alleged fail to state a cause of action because

5 Plaintiffs suffered no injury or damage, and restitution or disgorgement is not available;

6      5.      The Complaint fails to state a cause of action under the Consumer Legal Remedies

7 Act ("CLRA"), Civil Code section 1770, *et seq.*, because (1) hospital lien notices are filed after the

8 services are rendered, and thus they cannot have been "intended to result or which results in the sale

9 or lease of goods or services to any consumer...." Civil Code section 1770(a); (2) Plaintiffs were not

10 aggrieved *as a result of* a violation of Civil Code section 1770, as required by Civil Code section

11 1780; and (3) Plaintiffs failed meet the statutory prerequisites for CLRA claims;

12      6.      The Complaint fails to state a cause of action for "unjust enrichment" because "unjust

13 enrichment" is not a cause of action and the Complaint articulates no facts or legal theory based on

14 the principle of unjust enrichment under which Plaintiffs could recover;

15      7.      The Complaint fails to state a cause of action for conversion and trespass to chattels

16 as a result of "balance billing" because Plaintiffs never had a right to the difference between what

17 their insurance companies paid and the hospital's customary charges;

18      8.      The Complaint fails to state a cause of action for "fraud and negligent

19 misrepresentation in violation of Civil Code § 1709" because (1) no facts can be alleged showing

20 willful intent to assert or collect on unlawful liens; (2) Plaintiffs suffered no damage as a result of

21 any representation by Sutter Health; and (3) at most, the Complaint pleads a threat to exercise lien

22 rights, which is not actionable;

23      9.      The Complaint fails to state a cause of action for unlawful or unfair business practices

24 because (1) the Complaint fails to allege Sutter Health violated a discrete federal or state law; and

25 (2) the communications alleged to be unlawful were authorized by the Hospital Lien Act, Civil Code

26 section 3045.1, *et seq.*, so the communications are entitled to safe harbor immunity.

27 DATED: _____       _____

28                                         Honorable Ronald M. Sabraw
                                        Judge of the Superior Court



MHA
Imoogh Holland & Allen PC
Attorneys at Law

[Proposed] Order Granting Sutter Health's Demurrer to Plaintiffs' Complaint      871128v1 09504/0502

1 | CASE TITLE:        Melinda Campbell, et al. v. Sutter Health, et al.

2 | COURT/CASE NO:     Alameda County Superior Court No. R605221764

3 | ### PROOF OF SERVICE

4 | I am employed in the County of Sacramento; my business address is 555 Capitol Mall, 9th Floor, Sacramento, California 95814. I am over the age of eighteen years and not a party to the foregoing action.

5 |

6 | I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

7 |

8 |

9 | On November 8, 2005, I served the within:

10 | (1)    [PROPOSED] ORDER GRANTING SUTTER HEALTH'S DEMURRER TO PLAINTIFFS' COMPLAINT

11 |

12 | [ . ]    **by mail** on the following party(ies) in said action, in accordance with Code of Civil Procedure § 1013a(3), by placing a true copy thereof enclosed in a sealed envelope in a designated area for outgoing mail, addressed as set forth below.  At McDonough Holland & Allen PC, mail placed in that designated area is given the correct amount of postage and is deposited that same day, in the ordinary course of business, in a United States mailbox in the City of Sacramento, California.

13 |

14 |

15 | [   ]    **by personally delivering** a true copy thereof, in accordance with Code of Civil Procedure § 1011, to the person(s) and at the address(es) set forth below.

16 |

17 | [ X ]    **by overnight delivery** on the following party(ies) in said action, in accordance with Code of Civil Procedure § 1013(c), by placing a true copy thereof enclosed in a sealed envelope, with delivery fees paid or provided for, and delivering that envelope to an overnight express service carrier as defined in Code of Civil Procedure § 1013(c)..

18 |

19 |

20 | [   ]    **by facsimile transmission**, in accordance with Code of Civil Procedure § 1013(e), to the following party(ies) at the facsimile number(s) indicated:

21 |

22 |

23 | Todd M. Schneider                           Counsel for Plaintiffs
Joshua Konecky
W.H. "Hank" Wilson
SCHNEIDER & WALLACE
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105

24 |

25 |

26 |

27 |

28 |



1

1    *Courtesy Copy to:*                    Co-counsel for Plaintiffs

2    Linda Ross
3    LAW OFFICE OF LINDA ROSS
     2204 Union Street
4    San Francisco, CA 94123
     Telephone: (415) 563-2400
5    Facsimile: (415) 931-9981

6    Scott Kalkin
     ROBOOSTOFF & KALKIN, PLC
7    369 Pine Street, Suite 610
     San Francisco, CA 94104
8    Telephone: (415) 732-0282
9    Facsimile: (415) 732-0287

10   I declare under penalty of perjury under the laws of the State of California that the foregoing is
11   true and correct and that this document was executed on November 8, 2005.

12                                                   _____
                                                          E. Kipping
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MHA
McHugh Holland & Allen PC
Attorneys at Law

Proof of Service                                          855075v1 09504/0502

**24**

1 | McDONOUGH HOLLAND & ALLEN PC
Attorneys at Law
2 | RICHARD E. BRANDT (44893)
MARCIA L. AUGSBURGER (145686)
3 | JOHN C.J. BARNES (216694)
555 Capitol Mall, 9th Floor
4 | Sacramento, CA 95814
Phone: 916.444.3900
5 | Fax:   916.444.8989

6 | Attorneys for Defendant Sutter Health

7

8 | SUPERIOR COURT OF CALIFORNIA

9 | COUNTY OF ALAMEDA

10 | MELINDA CAMPBELL, on her own behalf, )   Case No. R605221764
and on behalf of all others similarly situated, )
11 |                                      )   **SUTTER HEALTH'S CASE**
                           Plaintiffs, )   **MANAGEMENT STATEMENT**
12 |                                        )
v.                                        )   Date:  November 16, 2005
13 |                                        )   Time:  3:00 p.m.
SUTTER HEALTH and DOES 1 through 24, )   Place:  Department 22
14 | inclusive,                                )   Judge: Honorable Ronald M. Sabraw
15 |                          Defendants. )
16 |                                            )

17 |       Pursuant to the Court's August 26, 2005, order, Defendant Sutter Health respectfully submits

18 | the following Case Management Statement.

19 |               **I.**    **STATEMENT OF ISSUES PRESENTED**

20 | **A.**    **Plaintiffs' Claims**

21 |       Plaintiff Melinda Campbell, on behalf of herself and an alleged class of aggrieved persons

22 | (hereafter collectively "Plaintiffs"), has sued Sutter Health.  Plaintiffs allege that Sutter Health

23 | improperly filed hospital lien notices against their tort recoveries from third-party tortfeasors.  *See*

24 | Class Action Complaint for Violation of the Consumer Legal Remedies Act, *et seq.* (hereafter

25 | "Complaint"), ¶ 1.  Plaintiffs allege that by engaging in this practice, Sutter Health has violated the

26 | Consumer Legal Remedies Act, Civil Code section 1750 *et seq.*; been unjustly enriched; committed

27 | conversion and trespass to chattels; committed fraud and negligent misrepresentation; and violated

28 | Business and Professions Code section 17200 *et seq.*   Complaint, ¶¶ 28-64.  Plaintiffs seek


MHA
McDonough Holland & Allen PC
Attorneys at Law

1

1  declaratory, injunctive, equitable, restitutionary, and compensatory relief, civil penalties, and

2  attorneys fees and costs. Complaint, Prayer for Relief, ¶¶ 1-11.

3       Plaintiffs' Complaint arises out of the California Supreme Court's recent ruling in *Parnell v.*

4  *Adventist Health System/West*, 35 Cal. 4th 595 (2005). The *Parnell* court ruled that a hospital may

5  not lien a patient's tort recovery if the hospital has agreed to accept payment from the patient's health

6  plan as "payment in full." *Id.* at 609. Plaintiffs seek to apply the *Parnell* ruling retroactively to liens

7  Sutter Health hospital affiliates asserted during the four years prior to the filing of the Complaint.

8  Complaint, ¶ 7.

9  **B.    Defendant's Position**

10       On August 30, 2005, Sutter Health filed a demurrer to Plaintiffs' Complaint. The demurrer is

11  set to be heard in this Department on November 16, 2005, at 3:00 p.m. The outcome of the demurrer

12  may limit or eliminate Plaintiffs' case.

13  **C.    Facts Supporting Each Position**

14       Sutter Health maintains that no facts can support a cause of action against it relating to the

15  filing of hospital lien notices under the Hospital Lien Act, Civil Code section 3045.1, et seq.

16  **D.    Status of Relevant Discovery**

17       Discovery has not yet begun.

18            **II.    THE PARTIES AND REPRESENTATION**

19       Plaintiff Melinda Campbell is allegedly a resident of San Jose, California, who received

20  healthcare services from a Sutter Health-affiliated hospital. Complaint, ¶¶ 7, 9. Ms. Campbell

21  purports to represent a class of similarly aggrieved persons. Complaint, ¶ 26. We understand that

22  Schneider & Wallace is lead counsel for Plaintiffs.

23       Defendant Sutter Health is a community-based, not-for-profit, healthcare delivery system.

24  Sutter Health serves more than 100 communities in Northern California through a system of 28

25  locally governed, not-for-profit hospitals. McDonough Holland & Allen PC will represent Sutter

26  Health in this litigation.

27           **III.    PROPOSED DEADLINES AND LIMITS ON JOINDER**

28       None at this time.



1

### IV.    CLASS DISCOVERY AND CLASS CERTIFICATION

2    Sutter Health disputes that the putative class is suitable for class treatment. Sutter Health will

3  oppose certification of the class described in the Complaint at ¶ 26.

4

### V.    PROPOSED LITIGATION SCHEDULE

5    If this case goes forward, Sutter Health proposes the following schedule:

6    ■    Class discovery:  Winter 2005- Spring 2006

7    ■    Class certification motion:  June 2006

8    ■    Discovery regarding liability and damages:  Summer 2006

9    ■    Dispositive motion(s):  Fall 2006

10    ■    Trial:  Winter 2006

11

### VI.    POTENTIAL EVIDENTIARY/CONFIDENTIALITY ISSUES

12    Sutter Health anticipates Plaintiffs will seek patient medical records during discovery.  These

13  records may be subject to state and federal privacy protections.

14

### VII.    DESCRIPTION OF PROCEDURAL POSTURE OF THE CASE

15    **(1) Unserved Parties:**

16    Defendant Sutter Health has been properly served.

17    **(2) Unserved/Unfiled Cross-Complaints**

18    None at this time.

19    **(3) Related Actions/ Potential for Coordination or Consolidation**

20    None known.

21    **(4) Possible jurisdictional or Venue Issues**

22    Dismissal of Plaintiffs' Consumer Legal Remedies Act claim is mandatory because Plaintiffs

23  failed to file an affidavit concurrently with the Complaint stating facts showing the action was

24  commenced in the proper county.  Cal. Civ. Code section 1780(c).

25    **(5) Status of Discovery**

26    Discovery has not yet begun.

27  /////

28  /////



**Sutter Health's Case Management Statement**                                                    870903v2 09504/0502

1  **(6) Unresolved Law and Motion**

2  Sutter Health's demurrer is set to be heard in this Department on November 16, 2005. If the

3  case goes forward, Sutter Health will oppose class certification and will file a dispositive motion.

4  **(7) Requests for, or Opposition to, any ADR Proceedings**

5  None at this time.

6  **(8) Severance of Issues for Trial**

7  Unknown at this time.

8  **(9) Calendar Conflicts**

9  None at this time.

10  **VIII.  STREAMLINING THE LITIGATION**

11  **(1) Master file**

12  Sutter Health believes the parties would benefit from an electronic document repository.

13  **(2) Lead counsel**

14  Sutter Health understands that Schneider & Wallace is lead counsel for Plaintiffs.

15  McDonough Holland & Allen PC is counsel for Sutter Health.

16  **(3) e-filing**

17  Sutter Health believes that all filings with the court should be e-filed, and that service

18  between the parties may be accomplished by e-mail of PDF documents.

19  **(4) Web page**

20  Sutter Health is open to the concept of a web page.

21  DATED: November **8**, 2005

22
                                        McDONOUGH HOLLAND & ALLEN PC
23                                      Attorneys at Law

24
                                        By: _____
25                                           John C. J. Barnes

26                                      Attorneys for Defendant Sutter Health

27

28



1    CASE TITLE:        Melinda Campbell, et al. v. Sutter Health, et al.

2    COURT/CASE NO:     Alameda County Superior Court No. R605221764

3                      **PROOF OF SERVICE**

4    I am employed in the County of Sacramento; my business address is 555 Capitol Mall, 9th
     Floor, Sacramento, California 95814. I am over the age of eighteen years and not a party to the
5    foregoing action.

6    I am readily familiar with the business practice at my place of business for collection and
     processing of correspondence for mailing with the United States Postal Service. Correspondence so
7    collected and processed is deposited with the United States Postal Service that same day in the
     ordinary course of business.

8

     On November 8, 2005, I served the within:
9

     (1)    SUTTER HEALTH'S CASE MANAGEMENT STATEMENT
10

11   ☐      **by mail** on the following party(ies) in said action, in accordance with Code of Civil
            Procedure § 1013a(3), by placing a true copy thereof enclosed in a sealed envelope in a
12          designated area for outgoing mail, addressed as set forth below. At McDonough
            Holland & Allen PC, mail placed in that designated area is given the correct amount of
13          postage and is deposited that same day, in the ordinary course of business, in a United
            States mailbox in the City of Sacramento, California.

14

15   ☐      **by personally delivering** a true copy thereof, in accordance with Code of Civil
            Procedure § 1011, to the person(s) and at the address(es) set forth below.

16
     ☒      **by overnight delivery** on the following party(ies) in said action, in accordance with
17          Code of Civil Procedure § 1013(c), by placing a true copy thereof enclosed in a sealed
            envelope, with delivery fees paid or provided for, and delivering that envelope to an
18          overnight express service carrier as defined in Code of Civil Procedure § 1013(c)..

19   ☐      **by facsimile transmission**, in accordance with Code of Civil Procedure § 1013(e), to
            the following party(ies) at the facsimile number(s) indicated:
20

21

22   Todd M. Schneider                      Counsel for Plaintiffs
     Joshua Konecky
23   W.H. "Hank" Wilson
     SCHNEIDER & WALLACE
24   180 Montgomery Street, Suite 2000
     San Francisco, CA 94104
25   Telephone: (415) 421-7100
     Facsimile: (415) 421-7105
26

27

28

MHA
McDonough Holland & Allen PC
Attorneys at Law

                                    1

Proof of Service                                              855075v1 09504/0502

1    *Courtesy Copy to:*   .                          Co-counsel for Plaintiffs

2    Linda Ross
3    LAW OFFICE OF LINDA ROSS
     2204 Union Street
4    San Francisco, CA 94123
     Telephone: (415) 563-2400
5    Facsimile: (415) 931-9981

6    Scott Kalkin
     ROBOOSTOFF & KALKIN, PLC
7    369 Pine Street, Suite 610
     San Francisco, CA 94104
8    Telephone: (415) 732-0282
     Facsimile: (415) 732-0287
9

10   I declare under penalty of perjury under the laws of the State of California that the foregoing is
11   true and correct and that this document was executed on November 8, 2005.

12                                                    _____
                                                          EJ Kipping
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MHA
Kaugh Holland & Allan PC
Attorneys at Law

2