**32**

1  McDONOUGH HOLLAND & ALLEN PC
   Attorneys at Law
2  RICHARD E. BRANDT (44893)
   MARCIA L. AUGSBURGER (145686)
3  JOHN C.J. BARNES (216694)
   555 Capitol Mall, 9th Floor
4  Sacramento, CA 95814
   Phone: 916.444.3900
5  Fax:    916.444.8989

6  Attorneys for Defendant Sutter Health

7

8                  SUPERIOR COURT OF CALIFORNIA

9                    COUNTY OF ALAMEDA

10  MELINDA CAMPBELL, on her own behalf,        )  Case No. RG05221764
    and on behalf of all others similarly situated,  )
11                                              )  **SUTTER HEALTH'S MEMORANDUM**
                          Plaintiffs,           )  **OF POINTS AND AUTHORITIES IN**
12                                              )  **SUPPORT OF DEMURRER TO THE**
    v.                                          )  **FIRST AMENDED CLASS ACTION**
13                                              )  **COMPLAINT FOR MALICIOUS**
    SUTTER HEALTH and DOES 1 through 24,        )  **PROSECUTION, ABUSE OF PROCESS,**
14  inclusive,                                  )  **UNFAIR BUSINESS PRACTICES, AND**
                                                )  **DECLARATORY RELIEF**
15                        Defendants.           )
                                                )
16                                              )  Date:   February 9, 2006
                                                )  Time:   1:30 p.m.
17                                              )  Place:  Department 22
                                                )  Honorable Ronald M. Sabraw
18                                              )

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENTS ............................................................1

II.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR MALICIOUS
      PROSECUTION ..............................................................................................................3

      A.   The Assertion of an HLA lien is Not a "Prior Action" Sufficient to Support a
           Malicious Prosecution Claim. .................................................................................4

      B.   The Amended Complaint Fails to Allege Any Action that Terminated in
           Plaintiffs' Favor on the Merits. ...............................................................................6

      C.   Sutter Health Did Not Lack Probable Cause To Assert The Liens Because The
           *Law* Irrefutably Validated The Assertion Of HLA Liens Against Insured
           Patients. .....................................................................................................................8

           1.   Prior To *Parnell*, Sutter Health Had At Least An "Arguable" Position
                That It Could Assert HLA Liens Even Where The Patient's Debt To
                The Hospital Was Extinguished. ....................................................................9

           2.   *Parnell* Establishes That Whether A Patient's Debt To A Hospital Has
                Been Extinguished Is A Question For A Court. ............................................11

      D.   The Amended Complaint Fails To Sufficiently Allege Defendant Asserted
           HLA Liens With Malice. .........................................................................................11

III.  THE AMENDED COMPLAINT IMPROPERLY ASSERTS AN ABUSE OF
      PROCESS CLAIM .........................................................................................................12

      A.   The Court's Order Only Permitted Plaintiffs to Amend Their Complaint to
           State a Malicious Prosecution Claim. .....................................................................12

      B.   Plaintiffs' Abuse Of Process Claim is Barred by the Litigation Privilege. ..................13

IV.   PLAINTIFFS' THIRD, FOURTH, AND FIFTH CAUSES OF ACTION FOR
      "CONVERSION AND TRESPASS," FRAUD, AND UNFAIR COMPETITION
      ARE BARRED BY THE LITIGATION PRIVILEGE AND ARE NOT TETHERED
      TO A VIABLE MALICIOUS PROSECUTION CLAIM .........................................................13

      A.   Plaintiffs' Third and Fourth Cause of Action for "Conversion and Trespass"
           and "Fraud and Negligent Misrepresentation" Are Barred by the Litigation
           Privilege. ..................................................................................................................13

      B.   Plaintiffs' Fifth Cause of Action for Violation of Business and Professions
           Code Section 17200 is Barred by the Litigation Privilege and is Not Tethered
           to any Violation of Law. ..........................................................................................14

V.    PLAINTIFFS' SIXTH CAUSE OF ACTION FOR DECLARATORY RELIEF IS
      IMPROPER BECAUSE IT SEEKS A DECLARATION CONCERNING
      COMMUNICATIONS THAT OCCURRED IN THE PAST AND SEEKS AN
      ADVISORY OPINION ....................................................................................................14

VI.   CONCLUSION...............................................................................................................15

MHA

McDonough Holland & Allen PC
Attorneys at Law

# TABLE OF AUTHORITIES

Page

**Cases**

*Adams v. Superior Court*, 2 Cal. App. 4th 521, 528 (1992) ............................................... 2, 5, 6
*Andrews v. Samaritan Health System*, 201 Ariz. 379 (2003) ............................................... 11
*Baldwin v. Marina City Properties, Inc.*, 79 Cal. App. 3d 393, 407 (1978).......................... 15
*Blank v. Kirwan*, 39 Cal. 2d 311, 318 (1985) ....................................................................... 10
*Blankenbaker v Jonovich*, 205 Ariz. 383 (2003) ................................................................. 11
*Brown v. Kennard*, 94 Cal. App. 4th 40, 51 (2001) ............................................................. 13
*Cantu v. Resolution Trust Corp.*, 4 Cal. App. 4th 857, 873 (1992) ....................................... 4
*Casa Herrera v. Beydoun*, 32 Cal. 4th 336, 342 (2004) ...................................................... 6, 7
*Chauncey v. Niems*, 182 Cal. App. 3d 967, 978 (1986)....................................................... 3, 6
*CrossTalk Productions, Inc. v. Jacobson*, 65 Cal. App. 4th 631, 635 (1998) ........................ 8
*Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 498-499 (1998) ........................ 2, 3, 12
*Gibbs v. Haight, Dickson, Brown & Bensteel*, 183 Cal. App. 3d 716, 719 (1986)................... 6, 9
*Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002) ........................................ 14
*Healthcare Corp. v. Denton*, 120 Cal. App. 4th 333, 360 (2004) ....................................... 15
*Hudis v. Crawford*, 125 Cal. App. 4th 1586, 1590 (2005) ................................................ 7, 8
*Idell v. Goodman*, 224 Cal. App. 3d 262, 272 (1990)........................................................... 7
*Interstate Marina Development Co. v. County of Los Angeles*, 155 Cal. App. 3d 435, 443 (1984) .. 15
*Kuehn v. Kuehn*, 85 Cal. App. 4th 824, 834 (2000).............................................................. 13
*MacDonald v. Joslyn*, 275 Cal. App. 2d 282, 289 (1969) ..................................................... 6
*Nishihama v. City and County of San Francisco*, 93 Cal. App. 4th 298, 309 (2001)................... 4, 5, 9
*Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1132 (1990).......................... 13
*Parnell v. Adventist Health System/West*, 35 Cal. 4th 595 (2005)....................................... passim
*Pettit v. Levy*, 28 Cal. App. 3d 484, 487 (1972) .................................................................. 13
*Pollack v. University of Southern California*, 112 Cal. App. 4th 1416, 1429 (2003) .................... 13
*Rubin v. Green*, 4 Cal. 4th 1187, 1193 (1993)..................................................................... 14
*Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 872 (1989) ..................................... passim
*Sierra Club Foundation v. Graham*, 72 Cal. App. 4th 1135, 1152 (1999)................................ 2, 5
*Storemedia Inc. v. Superior Court*, 20 Cal. 4th 449, 457 (1999)......................................... 10
*Swanson v. St. James Regional Medical Center*, 97 Cal. App. 4th 245 (2002)........................... 2, 8, 9
*Tweedy v. NCO Financial Systems, Inc* ................................................................................ 10
*Wellenkamp v. Bank of America*, 21 Cal. 3d 943, 947 (1978) .............................................. 15
*Zamos v. Stroud*, 32 Cal. 4th 958, 965 (2004) .................................................................... passim

**Statutes**

Business and Professions Code §§ 17200 *et seq.* ................................................................ 1, 14
Civil Code section 47(b) ...................................................................................................... 1, 13, 15
Civil Code section 1750 et seq............................................................................................... 1
Civil Code section 3045.1 .................................................................................................. 1, 5, 6, 9
Civil Code section 3045.3 .................................................................................................. 4, 5, 6
Civil Code section 3045.4 ..................................................................................................... 9
Civil Code section 3045.5.................................................................................................... 5, 9
Code Civ. Proc. section 22.................................................................................................... 4, 5
Code Civ. Proc. section 430.10(e) ........................................................................................ 1, 3
Code Civ. Proc. section 430.10(f).......................................................................................... 1, 3
Code Civ. Proc. section 430.30............................................................................................. 10
Code Civ. Proc. section 430.50(a) .......................................................................................... 1
Code Civ. Proc. section 430.70............................................................................................. 10
Code Civ. Proc. section 1060................................................................................................ 15
Evidence Code section 452 .................................................................................................. 10
Evidence Code section 452 (d) ............................................................................................. 10
Evidence Code section 452 (h) ............................................................................................. 10
Evidence Code section 453................................................................................................... 10

I.    INTRODUCTION AND SUMMARY OF ARGUMENTS

Sutter Health demurs to the First Amended Class Action Complaint for Malicious Prosecution, Abuse of Process, Unfair Business Practices, and Declaratory Relief ("Amended Complaint" in text, cited as "Am. Comp."), and to each cause of action, pursuant to Code of Civil Procedure sections 430.10(e), 430.10(f), and 430.50(a). The Amended Complaint fails to state a cause of action for malicious prosecution, and all other causes of action are barred by the litigation privilege set forth in California Civil Code section 47(b).

This action arose when Plaintiffs filed their Class Action Complaint for Violations of the Consumers Legal Remedies Act, Civil Code §§ 1750, et seq., Unjust Enrichment, Misrepresentation, Conversion, and Business and Professions Code §§ 17200 et seq. ("Complaint"). Plaintiffs generally alleged that Sutter Health improperly asserted liens under the Hospital Lien Act, California Civil Code section 3045.1, et seq. ("HLA"). Sutter Health demurred to the Complaint. By Order dated November 16, 2003, the Court sustained Sutter Health's demurrer, with leave to amend ("Order on Dem."). The Court held that the entire Complaint was barred "because Sutter's filing of liens is protected by the litigation privilege ...." Order on Dem. p. 1. The Court granted leave "to allege a claim for malicious prosecution and/or claims for unlawful or unfair competition that borrow from or are tethered to the law of malicious prosecution." *Id.* at p. 2. Plaintiffs filed the Amended Complaint, pleading not only malicious prosecution and unfair business practices, but also abuse of process, conversion, trespass, fraud, and declaratory relief.

Despite the addition of a malicious prosecution action, Plaintiffs have utterly failed to rehabilitate their complaint. They have failed to plead facts that if proven would either state a cause of action for malicious prosecution or establish the fundamental elements of malicious prosecution necessary to demonstrate that their claims for unlawful or unfair competition are "borrowed from or tethered to the law of malicious prosecution." An action for malicious prosecution requires a showing that Sutter Health: 1) initiated a "'full-blown' ....independent, separate, adversarial action, involving the expense and trauma of preparing a response, and having a procedural life of its own" against the Plaintiffs, 2) pursued the action to a legal termination in the Plaintiffs' favor, 3) brought the action without probable cause, in that based on the facts known to Sutter Health, the institution

1    of the prior action was not "legally tenable," and 4) brought the action with malice in that Sutter

2    Health prosecuted the prior action out of "actual hostility, ill will, or with a subjective intent to

3    deliberately misuse the legal system for personal gain or satisfaction at the expense of the

4    wrongfully sued defendant." *Zamos v. Stroud*, 32 Cal. 4th 958, 965 (2004); *Adams v. Superior*

5    *Court*, 2 Cal. App. 4th 521, 528 (1992); *Sierra Club Foundation v. Graham*, 72 Cal. App. 4th 1135,

6    1152 (1999); *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 872 (1989); *Downey Venture v.*

7    *LMI Ins. Co.*, 66 Cal. App. 4th 478, 498-499 (1998). These elements are not, and cannot be met.

8        Plaintiffs have pleaded none of these prerequisites to a malicious prosecution action. First, as

9    discussed in part II.A. below, the assertion of an HLA lien is not a "'full-blown' ....independent,

10   separate, adversarial action [against Plaintiffs], involving the expense and trauma of preparing a

11   response, and having a procedural life of its own." *Sierra Club Foundation*, 72 Cal. App. 4th at

12   1152. Second, as discussed in part II.B. below, Plaintiffs have not alleged that members of the

13   putative class have pursued liens to legal termination in their favor. Third, as discussed in part II.C.

14   and D., while Plaintiffs allege that Sutter Health asserted the HLA liens without probable cause and

15   with malice, these assertions are bald legal conclusions unsupported by pleaded facts. Moreover,

16   without an adversarial action in which a court determined that Sutter Health's liens were illegal,

17   Sutter Health could not know that a court would determine them to be illegal. Plaintiffs allege no

18   facts showing any court made such a determination. Thus, Plaintiffs cannot allege that Sutter Health

19   deliberately misused the legal system by asserting the liens.

20       On the contrary, Sutter Health had probable cause to assert the liens because they were at

21   least arguably valid even where asserted against insured patients. *Sheldon Appel Co., 47 Cal.3d at*

22   *885.* Until the decision in *Parnell v. Adventist Health System/West*, 35 Cal. 4th 595 (2005), became

23   final on April 4, 2005, *Swanson v. St. James Regional Medical Center*, 97 Cal. App. 4th 245 (2002),

24   was the established law in California. *Swanson*, as *Parnell* acknowledges, stood for the proposition

25   that an underlying debt was **not** required for the assertion and enforcement of an HLA lien.

26   *Swanson*, 97 Cal. App. 4th at 249. As discussed in parts C. and D. below, Sutter Health still had

27   arguably valid lien rights but in any event Plaintiffs do not allege that Sutter Health enforced any

28   lien by pursuing a lien to judgment after *Parnell* became final.

**MHA**
*Brunough Dolland & Allin Pc*
*Attorneys at Law*

1    For these reasons, nothing in the Amended Complaint alleges facts that support a conclusion

2  that Sutter Health lacked probable cause to assert liens. For the same reasons, no facts support the

3  proposition that Sutter Health acted out of "actual hostility, ill will, or with a subjective intent to

4  deliberately misuse the legal system for personal gain or satisfaction at the expense of the

5  wrongfully sued defendant." *Downey Venture*, 66 Cal. App. 4th at 498-499. Accordingly, Plaintiffs'

6  malicious prosecution claim fails.

7    Plaintiffs' other claims, including their unfair competition claim, fail because Plaintiffs do not

8  plead facts showing the liens were resolved in their favor and that Sutter Health filed liens without

9  probable cause and based on malicious motives. Thus, Plaintiffs cannot contend that their claims for

10  unlawful or unfair competition are "borrowed from or tethered to the law of malicious prosecution."

11  They are barred for the same reasons the Court ruled the Complaint must be dismissed; the litigation

12  privilege applies. Order on Dem. p. 1.

13    The law demands that Plaintiffs allege specific facts that support a cause of action. Cal.

14  Code Civ. Proc. § 430.10(e). The Plaintiffs have alleged nothing but conclusions. This demurrer to

15  the Plaintiffs' Amended Complaint must be sustained both because the complaint fails to allege facts

16  sufficient to state a cause of action and because the complaint is uncertain as to why Sutter Health is

17  responsible to compensate Plaintiffs. *Id.*; Cal. Code Civ. Proc. §.430.10(f).

18  **II.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR
        MALICIOUS PROSECUTION**

19

20    To initiate a malicious prosecution claim, Plaintiffs must allege that (1) there was a prior

21  action (2) the prior action was pursued to a legal termination in Plaintiffs' favor on the merits; (3) the

22  prior action was brought without probable cause; and (4) the prior action was initiated with malice.

23  *Zamos*, 32 Cal. 4th at 965. The Amended Complaint does not allege a prior action, that such action

24  terminated by judgment or dismissal, or that such judgment or dismissal was in Plaintiffs' favor.

25  Further, Plaintiffs fail to allege facts sufficient to show Sutter Health lacked legally tenable claims,

26  or that Sutter Health asserted claims with malice. Malicious prosecution is a disfavored action,

27  "which means that the courts impose strict standards upon claims to extend liability based on this

28  theory." *Chauncey v. Niems*, 182 Cal. App. 3d 967, 978 (1986). "Calculation of how much

   exposure to liability the institution of [complaints] could create would tend to have a 'chilling effect'

**MHA**

*Sutter Health's Ps & As to Demurrer to First Amended Complaint*        3        88836v2 0950400502

1  upon meritorious complaints." *Id.* at 978. Thus, pleading requirements for malicious prosecution

2  are strict and must be narrowly drawn. *See Sheldon Appel Co.,* 47 Cal. 3d at 872; *Cantu v.*

3  *Resolution Trust Corp.,* 4 Cal. App. 4th 857, 873 (1992). Accordingly, Plaintiffs' failure to meet the

4  strict pleading requirements for malicious prosecution must result in dismissal of the Amended

5  Complaint.

6          **A.    The Assertion of an HLA lien is Not a "Prior Action" Sufficient to**
                   **Support a Malicious Prosecution Claim.**
7

8          The Amended Complaint fails to allege the first element of a malicious prosecution claim,

9  namely, that a prior action gave rise to the claim. *See, e.g., Zamos,* 32 Cal. 4th at 965. Code of Civil

10 Procedure section 22 defines an "action" as follows:

11         Action Defined. An action is an ordinary proceeding **in a court** of justice by which
           one party prosecutes another for the declaration, enforcement, or protection of a right,
12         the redress or prevention of a wrong, or the punishment of a public offense.

13 (Emphasis added.) The Amended Complaint does not allege that Sutter Health **filed any action to**

14 **enforce HLA liens.** Plaintiffs allege only that Sutter Health asserted **lien rights** against Plaintiffs'

15 tort recoveries. Am. Comp. ¶¶ 2, 5, 7, 21-25, 28, 33.

16         The assertion of a lien is not an "action" by which the lienor prosecutes a party for the

17 declaration, enforcement, or protection of a right, as defined in Code of Civil Procedure section 22.

18 *Parnell,* 35 Cal. 4th at 602-02 ("The lien compensates a hospital for providing medical services to an

19 injured person by giving the hospital a direct right to a certain percentage of specific property, i.e., a

20 judgment, compromise, or settlement, otherwise accruing to that person."). Under the HLA, liens

21 are not asserted or filed in court. Cal. Civ. Code § 3045.3; *Nishihama v. City and County of San*

22 *Francisco,* 93 Cal. App. 4th 298, 309 (2001). HLA liens are simply served on injured patients'

23 tortfeasors and related parties. Cal. Civ. Code § 3045.3. The liens are effective when "a written

24 notice containing the name and address of the injured person [and other information about the

25 injured parties' liability to the hospital] is delivered or is mailed by registered mail, return receipt

26 requested, postage prepaid, to each person, firm or corporation known to the hospital and alleged to

27 be liable to the injured person for the injuries sustained prior to the payment of any moneys to the

28 injured person, his attorney, or legal representative as compensation for the injuries." *Id. See also*

MHA
*Morborough Holland & Allen PC*
*Attorneys at Law*

4

1  *Nishihama*, 93 Cal. App. 4th at 309. In *Nishihama*, the court noted that the hospital's lien rights

2  were not adjudicable in the action between the patient and the tortfeasor. The court stated:

3      "It is true, as plaintiff points out, that because CPMC is not a party to this action it is
        not bound to any ruling made concerning its lien rights. The HLA places the burden
4       of satisfying the hospital's lien on the defendant tortfeasor, not on the plaintiff. If,
        therefore, a ruling is wrong, and the defendant therefore fails to pay the hospital the
5       proper amount at the time of judgment, Civil Code sections 3045.4 and 3045.5 permit
        the hospital to seek recourse against the tortfeasor …."
6
7  *Nishihama*, 93 Cal. App. 4th at 309. Civil Code section 3045.5 specifies that the hospital may

8  "enforce its lien by filing an **action** at law against the person, firm, or corporation making the

9  payment and to whom such notice was given as herein provided." (Emphasis added.) For a

10 declaration, enforcement, or protection of the right the lien affords, the hospital would need to file an

11 action after service of the lien. *See, e.g., Nishihama* 93 Cal. App. 4th at 309; Cal. Civ. Code

12 § 3045.5. The Amended Complaint does not allege that Sutter Health filed an action at law to

13 enforce the liens against the tortfeasors Plaintiffs sued, or anyone else, after service of the liens.

14 Nor does the Amended Complaint allege that Plaintiffs challenged the liens in an "ordinary

15 proceeding in a court of justice… ." Cal. Civ. Code § 22; *Zamos*, 32 Cal.4th at 965. Thus, as a

16 matter of law, Plaintiffs' Amended Complaint does not support a malicious prosecution claim. *See,*

17 *e.g., Parnell*, 35 Cal. 4th at 602-03; *Adams*, 2 Cal. App. 4th at 528; Cal. Civ. Code § 22; Cal. Civ.

18 Code § 3045.1 – 3045.5.

19      Even if the Amended Complaint could be construed to allege assertion of the liens within

20 Plaintiffs' lawsuits against their tortfeasors, at most the assertion of the liens would be subsidiary

21 procedural actions. *See, e.g., Parnell*, 35 Cal. 4th at 602-03 (2005); Cal. Civ. Code § 3045.1 –

22 3045.3; *Adams*, 2 Cal. App. 4th at 528. To determine whether a particular action will support a

23 claim for malicious prosecution, courts look to whether the action was an "independent, separate,

24 adversarial action, involving the expense and trauma of preparing a response, and having a

25 procedural life of its own[.] If it is, it will support a later tort claim for malicious prosecution; if

26 instead it is a subsidiary or purely defensive proceeding, it will not." *Sierra Club Foundation*, 72

27 Cal. App. 4th at 1152. Here, the Amended Complaint alleges no independent, separate, adversarial

28 action whatsoever. Accordingly, the assertion of an HLA lien is not an "action" for purposes of

   malicious prosecution.

1         **Indeed, as a matter of law, a lien is a subsidiary procedural action that will not support**

2    **a claim of malicious prosecution.** *Adams*, 2 Cal. App. 4th at 528. In *Adams*, the court explained:

3    > The tort of malicious prosecution requires the initiation of a **full-blown action** as well
> as its favorable termination for the malicious prosecution plaintiff; **subsidiary**

4    > **procedural actions** within a lawsuit such as an application for a restraining order **or**
> **for a lien will not support a claim** of malicious prosecution.

5    *Id.* (emphasis added). An HLA lien has "the same characteristics as a typical lien." *See, e.g.,*

6    *Parnell*, 35 Cal. 4th at 602-03. An HLA lien is merely security for the performance of an act,

7    namely, payment of medical expenses contingent upon the injured party obtaining "specific

8    property, *i.e.*, a judgment, compromise, or settlement," in the action. *Parnell*, 35 Cal. 4th at 602;

9    Cal. Civ. Code § 3045.1 – 3045.3. The assertion of such a security interest is not an "action" for

10   purposes of a malicious prosecution claim. *Adams*, 2 Cal. App. 4th at 528.

11        Plaintiffs here have failed to meet the strict pleading requirements for malicious prosecution.

12   *Sheldon Appel Co.*, 47 Cal.3d at 872. They do not allege a prior action having an "'independent

13   existence' not dependent upon other proceedings for prosecution," or one having the "earmarks of an

14   adversarial proceeding (such as the right to a jury trial)." *Chauncy*, 182 Cal. App. 3d at 974. They

15   allege only that Sutter Health asserted lien rights. Am. Comp. ¶¶ 2-5, 7, 21-25, 28, 33.

16   Accordingly, the Amended Complaint must be dismissed with prejudice.

17

18       **B.   The Amended Complaint Fails to Allege Any Action that Terminated in**
          **Plaintiffs' Favor on the Merits.**

19        As noted above, Plaintiffs must plead that a prior civil action or proceeding terminated in

20   their favor. *Zamos*, 32 Cal. 4th at 528. "Terminations" sufficient to support a malicious prosecution

21   claim include entry of judgment (*Gibbs v. Haight, Dickson, Brown & Bensteel*, 183 Cal. App. 3d

22   716, 719 (1986)), voluntary dismissal (*MacDonald v. Joslyn*, 275 Cal. App. 2d 282, 289 (1969)), and

23   entry of summary judgment (*Casa Herrera v. Beydoun*, 32 Cal. 4th 336, 342 (2004)). The

24   **Amended Complaint fails to allege that Plaintiffs even challenged the HLA liens in a prior civil**

25   **action, let alone that such challenges resulted in a judgment or dismissal in Plaintiffs' favor.**[1]

26

27   ─────────────────

[1] The Court invited Plaintiffs to allege they had done so in its Order on the first demurrer, when it stated "Plaintiff might,

28   however, be able to pursue a claim asserting the filing of HLA liens in now-closed cases was in the nature of malicious
prosecution and seek relief based on that conduct." Order on Dem. p. 2.

MHA
Borough Holland & Allen PC
Attorneys at Law

1    Additionally, to support a malicious prosecution action, a "favorable termination" must

2  "reflect the merits of the action and the Plaintiffs' innocence of the misconduct alleged in the

3  lawsuit." *Hudis v. Crawford*, 125 Cal. App. 4th 1586, 1590 (2005) (citing *Casa Herrera*, 32 Cal. 4th

4  at 341-342.). The Amended Complaint does not allege a controversy on the merits of an action on

5  the lien or even on the validity of a lien, let alone a termination favorable to Plaintiffs on the merits.

6  Instead, Plaintiffs allege the HLA liens at issue were void *ab initio*:

> Because all debts between Sutter Health and Plaintiff or other members of the Class
> had been extinguished when Sutter Health asserted its liens (or the debts were
> extinguished and Sutter Health continued to assert its liens after that time), the liens
> were null and void, and, thus, were terminated in favor of Plaintiff or other members
> of the Class.

10  Am. Comp. ¶ 24. Thus, the Amended Complaint assumes that this Court will deem HLA liens "null

11  and void" without a prior independent action in which this determination was made in Plaintiffs'

12  favor.

13    However, in a malicious prosecution action, courts determine whether there was termination

14  on the merits by examining the underlying judgment, not by trying the case for the first time. *Hudis,*

15  125 Cal. App. 4th at 1590. Malicious prosecution must be based on a prior separate proceeding that

16  has an "independent existence." *Idell v. Goodman*, 224 Cal. App. 3d 262, 272 (1990). Without a

17  prior adjudication independent from this lawsuit that the HLA liens at issue were "null and void," the

18  Court in this case would need to adjudicate, for each lien, (1) whether the hospital agreed to accept

19  payment from the patient's health insurer as payment in full; and (2) whether the hospital received

20  the payment it agreed to accept as payment in full. *Parnell,* 35 Cal. 4th at 609. The Court may need

21  to hear and evaluate evidence relevant to these inquires, such as whether a hospital bill sent to the

22  patient noted that the difference between the amount owed under the insurance contract and the

23  hospital's customary charges would be "written off" thereby extinguishing the patient's obligations to

24  the hospital. *Id.* Without this adjudication for each lien, proceeding with a malicious prosecution

25  action would presume Plaintiffs would prevail in these factual determinations. This is not proper.

26  *Hudis*, 125 Cal. App. 4th at 1590.

27    Plaintiffs fail to allege that any court has entered judgment on their behalf or dismissed any

28  action against them to enforce an HLA lien. They do not allege that Sutter Health filed such

1    enforcement actions or that Plaintiffs challenged the liens by motion to expunge and prevailed.

2    Plaintiffs allege nothing more than conclusions about what the outcome of such actions would or

3    could have been. These conclusions of fact and law cannot be treated as admitted on demurrer.

4    *CrossTalk Productions, Inc. v. Jacobson,* 65 Cal. App. 4th 631, 635 (1998). At best, Plaintiffs allege

5    a technical or procedural termination of Sutter Health's lien rights. A technical or procedural

6    termination, as distinguished from a substantive termination, cannot be the basis for a malicious

7    prosecution action. *Hudis,* 125 Cal. App. 4th at 1590.

8        **C.    Sutter Health Did Not Lack Probable Cause To Assert The Liens Because**
         **The *Law* Irrefutably Validated The Assertion Of HLA Liens Against**
9        **Insured Patients.**

10       To plead malicious prosecution, Plaintiffs must plead that Sutter Health lacked probable

11   cause to assert the liens. *Zamos,* 32 Cal.4th at 528. Whether Defendant had probable cause to assert

12   HLA liens is a question of law for this Court. *Sheldon Appel,* 47 Cal.3d at 875. To determine

13   whether there was probable cause, the Court makes an objective determination of the reasonableness

14   of the malicious prosecution defendant's conduct, *i.e.* the Court determines whether, on the basis of

15   the facts known to the defendant, the institution of the prior action was "legally tenable." *Id.* at 878.

16   **If Sutter Health had at least an "arguable" position, Sutter Health had probable cause.** *Id.* at

17   885.

18       As a matter of law, Sutter Health had probable cause to assert HLA liens against an insured

19   patient's recovery or where the patient's debt to the hospital was "extinguished," according to both

20   case law and statute. Prior to *Parnell,* a reasonable attorney could look at the state of law and

21   conclude that a hospital was entitled to assert HLA liens against an insured patient's recovery

22   regardless of whether a debt existed between the hospital and the patient. *See, e.g., Swanson v. St.*

23   *John's Regional Medical Center,* 97 Cal. App. 4th 245 (2002). Since *Parnell,* it would be "legally

24   tenable" to assert HLA liens in all third party tort cases because the Supreme Court has stated that

25   whether the patient owed a debt is a factual question. *Parnell,* 35 Cal.4th at 609-11.

26   ///

27   ///

28   ///

1.    **Prior To *Parnell*, Sutter Health Had At Least An "Arguable"
Position That It Could Assert HLA Liens Even Where The
Patient's Debt To The Hospital Was Extinguished.**

Sutter Health had probable cause to assert HLA liens prior to *Parnell* based on statute and case law. First, Civil Code section 3045.1 states that hospitals are entitled to assert liens against patients' recoveries from third-party tortfeasors, and does not distinguish between insured and uninsured patients -- a fact acknowledged by the *Parnell* court. *Parnell*, 35 Cal.4th at 603. *Parnell* stated: "On the other hand, the HLA does not distinguish between insured and uninsured patients. Moreover, several of its provisions are directed at the third party tortfeasor, not at the patient. ... By focusing on the tortfeasor – and not on the patient – **the HLA arguably does not make the patient's debt to the hospital the basis for the hospital's lien right.**" *Id.* (emphasis added). At a minimum the statutory language is sufficiently ambiguous to permit a construction that would allow hospitals to assert liens without regard to whether the HLA requires an underlying debt owed by the patient to the hospital. *See. id.* at 603 (observing that the statutory language of the HLA is "ambiguous" and for that reason, stating "we look to the legislative history for guidance.").

Second, prior to *Parnell*, the court in *Swanson* **rejected the argument that hospitals were not entitled to assert HLA liens against insured patients.** *Swanson*, 97 Cal. App. 4th at 249. The *Swanson* court affirmed the hospital's demurrer to the plaintiff's complaint, holding that an HLA lien is a statutory lien and does not require that the patient owe the hospital a debt. *Id.* The Supreme Court did not disapprove *Swanson's* 2002 ruling on this point for three years,[2] until the *Parnell* decision in 2005. *Parnell*, 35 Cal. 4th at 609.

Even before *Swanson*, cases did not alert hospitals that their lien rights under the HLA derived from debts owed by patients. For example, in *Nishihama v. City and County of San Francisco*, 93 Cal. App. 4th 298, 309 (2001), the court stated that "the burden of satisfying the hospital's lien [was] on the defendant tortfeasor, not on the [patient,]" and instructed that the defendant tortfeasor "fails to pay the hospital the proper amount at the time of judgment, Civil Code sections 3045.4 and 3045.5 permit the hospital to seek recourse against the tortfeasor...." *Id.*

---

[2] The statute of limitations for malicious prosecution actions precludes Plaintiffs from alleging a malicious prosecution action based on facts predating *Swanson*. *Gibbs v. Haight, Dickson, Brown & Bonesteel*, 183 Cal. App. 3d 716, 719 (1986).

MHA·

1    Third, trial courts held it legally tenable to assert an HLA lien even where the patient's debt

2    was extinguished. For example, the trial court in *Parnell* "held that '[t]he Hospital's lien rights

3    provided by Civil Code Section 3045.1 to assert a lien against a patient's recovery from a third party

4    tortfeasor to the extent of reasonable and necessary charges of the hospital, ... is not constrained by

5    the hospital's negotiated discount with a health insurance carrier.'" *Parnell*, 35 Cal. 4th at 600.

6    As another example, in *Tweedy v. NCO Financial Systems, Inc.* [as assignee of a Sutter

7    Health hospital], Sac. Sup. Ct. Case No. 03AS03039 ("*Tweedy*"),[3] a trial court decision established

8    that it was legally tenable for Sutter Health to assert a lien against an insured patient or one who

9    owed no debt to the hospital. A copy of this decision is attached to Sutter Health's Request for

10   Judicial Notice filed herewith ("RJN") and incorporated by this reference. Based on the pleadings

11   and order on file in the Sacramento Superior Court attached to Sutter Health's RJN, **it is**

12   **indisputable that counsel made a legally tenable argument that a Sutter hospital properly**

13   **asserted HLA liens even where there was no underlying debt.** RJN Ex. A (Complaint), ¶s 1, 8-9,

14   12-15, RJN Ex. B (Points and Authorities in Support Of Demurrer), 2:19-3:16, 5:3-8:7. **This is**

15   **indisputable because the court agreed and Sutter Health prevailed.** Specifically, the *Tweedy*

16   complaint alleged that the plaintiffs' insurer paid the hospital a portion of the billed charges, which

17   "represented payment in full" according to the "agreed upon rate structure" in Health Net's

18   agreement with the Sutter hospital. RJN Ex. A ¶ 13. On the hospital's behalf, NCO argued that

19   *Swanson* and other cases supported assertion of HLA liens even when the debt was paid in full. RJN

20   Ex. B, 2:19-3:16, 5:3-8:7. The Sacramento Superior court agreed with the hospital's arguments and

21   the demurrer was granted without leave to amend. RJN Ex. C.

22   Thus, prior to *Parnell* it was at least arguable that a HLA lien asserted against an insured

23   patient was valid. Accordingly, Sutter Health had probable cause to assert the HLA liens and

24   Plaintiffs cannot state a cause of action against this defendant.

25

26   ---
       [3] A demurrer may challenge defects that appear from matters outside the pleading that are judicially noticeable pursuant
27   to Evidence Code section 452 or 453. Cal. Code Civ. Proc. §§ 430.30, 430.70; *Storemedia Inc. v. Superior Court*, 20
       Cal. 4th 449, 457 (1999); *Blank v. Kirwan*, 39 Cal. 2d 311, 318 (1985). Evidence Code section 452 (d) permits the Court
28   to take judicial notice of the records of any court of record. Evidence Code section 452 (h) permits the Court to take
       judicial notice of facts that are not reasonably subject to dispute.



2.    ***Parnell* Establishes That Whether A Patient's Debt To A Hospital Has Been Extinguished Is A Question For A Court.**

Even since *Parnell,* it is clear that a lien is not automatically invalid if the patient is insured -- if an HLA lien is challenged the court must adjudicate whether the hospital agreed to accept payment from the insurer as "payment in full." *Parnell,* 35 Cal. 4th at 609. This question is replete with factual and legal issues for a court. For example, the issues require contractual interpretation. *Parnell* stated that "[i]f hospitals wish to preserve their right to recover the difference between the usual and customary charges and the negotiated rate through a lien under the HLA, they are free to contract for this right. Our decision today does not preclude them from doing so." *Id.* at 611. The Court pointed out that one way hospitals could preserve this right is by reserving a "right of recapture" to the difference between the contract payments from the insurer and the hospital's charges. *Id.* at 610 (citing *Andrews v. Samaritan Health System,* 201 Ariz. 379 (2003) [disapproved on other grounds in *Blankenbaker v Jonovich,* 205 Ariz. 383 (2003)]).[4] If the hospital has reserved a right of recapture, it may pursue liens against insured patients' recoveries even if the patients owe no debt to the hospital. *Id.* at 611. A court must decide whether a hospital has reserved this right of recapture before a lien may be held invalid.

A court must also decide whether under the contract and factual circumstances the patient owed a debt. *Parnell,* 35 Cal.4th at 609. The court may also consider whether the hospital advised the patient, as Community Hospital advised Parnell, that the difference between its usual and customary charges and the amount owed under the insurance contract would "be 'written off' by the hospital," thereby extinguishing the patient's debt. *Id.* at 609.

These are matters that can always be presented and argued before the court. Therefore, the Amended Complaint fails to adequately plead that Sutter Health lacked probable cause when it asserted HLA liens. *Sheldon Appel,* 47 Cal.3d at 875.

**D.    The Amended Complaint Fails To Sufficiently Allege Defendant Asserted HLA Liens With Malice.**

Plaintiffs do not plead facts sufficient to support the malice element of a malicious prosecution claim. The malice element requires the Plaintiffs to demonstrate that the underlying

---

[4] *See* Sutter Health's Submission of Non-California Authority, Exhibit A &B, filed herewith.



1   action was prosecuted out of **actual hostility, ill will, or with a subjective intent to deliberately**

2   **misuse the legal system for personal gain or satisfaction at the expense of the wrongfully sued**

3   **defendant.** *Downey Venture*, 66 Cal. App. 4th at 498-499. Plaintiffs do not allege actual hostility or

4   ill will. Instead, they apparently rely solely on the third prong, that Defendant had the subjective

5   intent to deliberately misuse the legal system at the expense of the Plaintiffs:

6          When Sutter Health asserted its impermissible liens, Sutter Health acted without
           probable cause and with malice because it lacked, or **should have lacked,** a
7          reasonable belief in the validity of the liens, and knew, or **should have known,** that
           the liens were not based on a legally enforceable underlying debt.
8
9   (Emphasis added.) Am. Comp. ¶ 23. These are the same facts that support Plaintiffs' claim that

10  Sutter Health lacked probable cause. However, these allegations do not support an inference that

11  Sutter Health deliberately misued the legal system. It is not enough if Sutter Health "should have

12  lacked a reasonable belief" or "should have known." Plaintiffs must allege that Sutter actually

13  knew, which, as described in part C. above, they cannot allege. In any event, even facts supporting a

14  lack of probable cause, by themselves, are not sufficient to support the malice element. To show

15  malice, Plaintiffs must show something <u>more</u> than a lack of probable cause:

16         Merely because the prior action lacked legal tenability, as measured objectively (i.e.
           by the standard of whether any reasonable attorney would have thought the claim
17         tenable [citation omitted], *without more*, would not logically or reasonably permit the
           inference that such lack of probable cause was accompanied by the actor's subjective
18         malicious state of mind. **In other words, the presence of malice must be
           established by other, additional evidence.** [bold emphasis added]

19  *Downey Venture*, 66 Cal. App. 4th at 498. Plaintiffs do not state any facts in support of its malice

20  claim that are distinct from those that allegedly support its assertion of a lack of probable cause. As

21  discussed in section C.1. above, Sutter Health had no reason to believe that prior to *Parnell* the

22  assertion of HLA liens was unlawful. As discussed in section C.2., even after *Parnell*, hospitals may

23  argue about whether a patient's debt was in fact extinguished. Thus, Plaintiffs fail to assert facts that

24  show malice. *See, e.g. Sheldon Appel*, 47 Cal.3d at 875.

25  **III.    THE AMENDED COMPLAINT IMPROPERLY ASSERTS AN ABUSE OF
           PROCESS CLAIM**
26
27          **A.    The Court's Order Only Permitted Plaintiffs to Amend Their Complaint
                    to State a Malicious Prosecution Claim.**

28          In sustaining Sutter Health's demurrer to Plaintiffs' preliminary Complaint, the Court

1  specified that Plaintiffs were limited to amending their complaint to allege malicious prosecution:

2     Plaintiff is granted leave to allege a claim for malicious prosecution and/or claims for
      unlawful or unfair competition that borrow from or are tethered to the law of
3     malicious prosecution.  The Court expresses no opinion about whether the facts
      alleged in the current complaint would support such claims.

4  Order on Dem. p. 2. The Court did not grant Plaintiffs permission to allege abuse of process, or any

5  other cause of action not previously alleged.  Thus, Plaintiffs' inclusion of an allegation of abuse of

6  process violates this Court's order and should be stricken.

7     **B.    Plaintiffs' Abuse Of Process Claim is Barred by the Litigation Privilege.**

8     The Amended Complaint alleges that Sutter Health's assertion of HLA liens was an abuse of

9  the judicial process for an improper purpose.  Am. Comp. ¶ 42. The litigation privilege of Civil

10 Code section 47(b) bars claims for abuse of process. *Pacific Gas & Electric Co. v. Bear Stearns &*

11 *Co.*, 50 Cal. 3d 1118, 1132 (1990); *Pollack v. University of Southern California*, 112 Cal. App. 4th

12 1416, 1429 (2003); *Brown v. Kennard*, 94 Cal. App. 4th 40, 51 (2001).  This Court has already

13 determined that the assertion of HLA liens is protected litigation activity.  Order on Dem. p. 1, ¶ 4.

14 The protected communication alleged to support Plaintiffs' abuse of process cause of action -- the

15 assertion of HLA liens -- is identical to the alleged communications supporting the dismissed causes

16 of action alleged in Plaintiffs' initial Complaint.  Accordingly, for the reasons set forth in the Court's

17 Order on Demurrer, Plaintiffs' abuse of process claim is barred by the litigation privilege and must

18 be dismissed without leave to amend.

19 **IV.   PLAINTIFFS' THIRD, FOURTH, AND FIFTH CAUSES OF ACTION FOR**
20 **"CONVERSION AND TRESPASS," FRAUD, AND UNFAIR COMPETITION**
   **ARE BARRED BY THE LITIGATION PRIVILEGE AND ARE NOT**
21 **TETHERED TO A VIABLE MALICIOUS PROSECUTION CLAIM**

22    **A.    Plaintiffs' Third and Fourth Cause of Action for "Conversion and**
      **Trespass" and "Fraud and Negligent Misrepresentation" Are Barred by**
23    **the Litigation Privilege.**

24    The litigation privilege bars Plaintiffs' claims for conversion, fraud, and negligent

25 misrepresentation. *Kuehn v. Kuehn*, 85 Cal. App. 4th 824, 834 (2000); *Pettit v. Levy*, 28 Cal. App.

26 3d 484, 487 (1972).  This is fully addressed in section II.A. of Defendant's opening brief to its first

27 demurrer, all of which is incorporated herein by this reference.  This Court has already ruled that

28



13

1   these claims are barred: Order on Dem. p. 2 ("Because all of the claims as plead are barre

2   litigation privilege, the Court does not need to reach the merits of the individual causes of action.").

3          Plaintiffs apparently believe they can avoid the Court's order by including allegations of

4   malicious prosecution and abuse of process in their other barred causes of action.   There is no

5   authority that such allegations can circumvent the litigation privilege.  In any event, the Complaint

6   does not state claims for malicious prosecution or abuse of process, as discussed in sections II and

7   III, above.  Accordingly, the third and fourth causes of action must be dismissed.

8          **B.     Plaintiffs' Fifth Cause of Action for Violation of Business and Professions**
           **Code Section 17200 is Barred by the Litigation Privilege and is Not**
9          **Tethered to any Violation of Law.**

10         Claims under Business and Professions Code section 17200 are subject to the litigation

11  privilege. *Rubin v. Green*, 4 Cal. 4th 1187, 1193 (1993).  The Court suggested Plaintiffs might avoid

12  the privilege by asserting a malicious prosecution claim.  Order on Dem. p. 2.  However, as set forth

13  above, the Amended Complaint fails to state a claim for malicious prosecution, and thus fails to

14  allege the violation of a specific constitutional, statutory, or regulatory provision sufficient to

15  support a claim under Business and Professions Code section 17200.  *Gregory v. Albertson's, Inc.*,

16  104 Cal. App. 4th 845, 854 (2002).  The fifth cause of action must therefore be dismissed.

17  **V.    PLAINTIFFS' SIXTH CAUSE OF ACTION FOR DECLARATORY RELIEF**
        **IS IMPROPER BECAUSE IT SEEKS A DECLARATION CONCERNING**
18      **COMMUNICATIONS THAT OCCURRED IN THE PAST AND SEEKS AN**
        **ADVISORY OPINION**
19
20         The Court did not grant Plaintiffs leave to add a claim for declaratory relief.  Nonetheless,

    Plaintiffs seek a declaration apparently designed to avoid the result of the Court's order sustaining
21
    Sutter Health's demurrer.  As in their dismissed Complaint, Plaintiffs allege that HLA liens that
22
    Sutter Health asserted in the past are null and void:
23
24          Sutter Health asserted liens, and interest thereon, on the recoveries of Plaintiff and the
            Class...despite the fact that the debts of Plaintiff and the Class to Sutter Health had
25          been extinguished.
            ***
26          As a result, Plaintiff seeks declaratory relief declaring Sutter health's liens, and any
            interest asserted thereon, against Plaintiff and the Class are null and void.
27  Am. Comp. ¶¶ 72, 74.  There is no legal basis for declaratory relief where a complaint seeks

28  guidance on parties' present respective rights when only past wrongs are alleged.  *Baldwin v. Marina*

**MHA**
Minneapolis Holland & Allen PC
Attorney at Law

14

1  *City Properties, Inc.*, 79 Cal. App. 3d 393, 407 (1978). The purpose of declaratory relief is to

2  eliminate uncertainties and controversies that may result in the future.    *Interstate Marina*

3  *Development Co. v. County of Los Angeles*, 155 Cal. App. 3d 435, 443 (1984). Plaintiffs do not seek

4  a declaration concerning a controversy that may result in the future.

5     Furthermore, it appears that Plaintiffs seek a declaration that HLA liens that were based on

6  extinguished debts are null and void. This is an improper request for an advisory opinion, as *Parnell*

7  has already answered the question definitively. *Parnell*, 35 Cal. 4th at 609. In a declaratory relief

8  claim, a party must seek definitive and conclusive relief by judgment, not an advisory opinion.

9  *Healthcare Corp. v. Denton*, 120 Cal. App. 4th 333, 360 (2004).

10     Finally, the Amended Complaint does not allege an actual controversy. A declaratory relief

11  cause of action must seek resolution of an actual controversy between the parties as to their legal

12  rights and duties. *Wellenkamp v. Bank of America*, 21 Cal. 3d 943, 947 (1978); Cal. Code Civ. Proc.

13  § 1060. Here, the Amended Complaint essentially asks the Court to declare that Sutter Health must

14  follow *Parnell*. There is no actual controversy on this; it is the law.

15     In any event, Civil Code section 47(b) precludes Plaintiffs from pursuing their cause of

16  action for declaratory relief. Plaintiffs do not allege any conduct or communication different from

17  that alleged in support of their other barred causes of action. Plaintiffs cannot save their allegations

18  for otherwise privileged conduct by casting their claim as one for declaratory relief. Thus, their

19  declaratory relief claim must fail.

20  **VI.    CONCLUSION**

21     For the reasons stated herein, Sutter Health respectfully requests the Court sustain its

22  demurrer without leave to amend.

23  DATED: January 13, 2006         McDONOUGH HOLLAND & ALLEN PC
                                    Attorneys at Law
24

25                                  By: _____
                                         JOHN C.J. BARNES
26                                       Attorneys for Defendant Sutter Health

27

28

**MHA**
McDonough Holland & Allen PC
Attorneys at Law

1     CASE TITLE:        Melinda Campbell, et al. v. Sutter Health, et al.

2     COURT/CASE NO:     Alameda County Superior Court No. RG05221764

3 **PROOF OF SERVICE**

4     I am employed in the County of Sacramento; my business address is 555 Capitol Mall, 9th Floor, Sacramento, California 95814. I am over the age of eighteen years and not a party to the

5 foregoing action.

6     I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so

7 collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

8

9     On January 13, 2006, I served the within:

10     (1)    Sutter Health's Request for Judicial Notice in Support of Demurrer to Amended Complaint; Notice of Hearing on Demurrer by Defendant Sutter Health to

11           Plaintiffs' First Amended Class Action Complaint for Malicious Prosecution, Abuse of Process, Unfair Business Practices, and Declaratory Relief; Demurrer

12           by Defendant Sutter Health to Plaintiffs' First Amended Complaint for Malicious Prosecution, Abuse of Process, Unfair Business Practices, and

13           Declaratory Relief; Sutter Health's Memorandum of Points and Authorities in Support of Demurrer to the First Amended Class Action Complaint for

14           Malicious Prosecution, Abuse of Process, Unfair Business Practices, and

15           Declaratory Relief; Sutter Health's Submission of Non-California Authority in Support of Demurrer to Amended Complaint

16

17 ☐    **by mail** on the following party(ies) in said action, in accordance with Code of Civil Procedure § 1013a(3), by placing a true copy thereof enclosed in a sealed envelope in a

18     designated area for outgoing mail, addressed as set forth below. At McDonough Holland & Allen PC, mail placed in that designated area is given the correct amount of

19     postage and is deposited that same day, in the ordinary course of business, in a United States mailbox in the City of Sacramento, California.

20 ☐    **by personally delivering** a true copy thereof, in accordance with Code of Civil

21     Procedure § 1011, to the person(s) and at the address(es) set forth below.

22 ☒    **by overnight delivery** on the following party(ies) in said action, in accordance with Code of Civil Procedure § 1013(c), by placing a true copy thereof enclosed in a sealed

23     envelope, with delivery fees paid or provided for, and delivering that envelope to an

24     overnight express service carrier as defined in Code of Civil Procedure § 1013(c)..

25 ☐    **by facsimile transmission**, in accordance with Code of Civil Procedure § 1013(e), to the following party(ies) at the facsimile number(s) indicated:

26

27

28

**MHA**
McDonough Holland & Allen PC
Attorneys at Law

1

Proof of Service                                                       889827v1 09504/0502

Todd M. Schneider                                           Counsel for Plaintiffs
Joshua Konecky
W.H. "Hank" Wilson
SCHNEIDER & WALLACE
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

*Courtesy Copy to:*                                         Co-counsel for Plaintiffs

Linda Ross
LAW OFFICE OF LINDA ROSS
2204 Union Street
San Francisco, CA 94123
Telephone: (415) 563-2400
Facsimile: (415) 931-9981

Scott Kalkin
ROBOOSTOFF & KALKIN, PLC
369 Pine Street, Suite 610
San Francisco, CA 94104
Telephone: (415) 732-0282
Facsimile: (415) 732-0287

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this document was executed on January 13, 2006.

_____
                                                RENEE REEVE

**33**

1  McDONOUGH HOLLAND & ALLEN PC
   Attorneys at Law
2  RICHARD E. BRANDT (44893)
   MARCIA L. AUGSBURGER (145686)
3  JOHN C.J. BARNES (216694)
   555 Capitol Mall, 9th Floor
4  Sacramento, CA  95814
   Phone: 916.444.3900
5  Fax:    916.444.8989

6  Attorneys for Defendant Sutter Health

7

8                  SUPERIOR COURT OF CALIFORNIA

9                       COUNTY OF ALAMEDA

10  MELINDA CAMPBELL, on her own behalf,  )   Case No. RG05221764
    and on behalf of all others similarly situated,  )
11                                          )   **SUTTER HEALTH'S REQUEST**
                                            )   **FOR JUDICIAL NOTICE IN SUPPORT**
                            Plaintiffs,     )   **OF DEMURRER TO AMENDED**
12                                          )   **COMPLAINT**
13  v.                                      )
                                            )
    SUTTER HEALTH and DOES 1 through 24,    )   Date:  February 9, 2006
14  inclusive,                              )   Time:  1:30 p.m.
                                            )   Place:  Department 22
15                          Defendants.     )   Judge: Honorable Ronald M. Sabraw
                                            )
16

17         Pursuant to California Evidence Code section 452(d)(1), Defendant Sutter Health requests

18  that the Court take judicial notice of the following records attached hereto, all of which were filed in

19  the Superior Court of California, County of Sacramento, Case No. 03AS03039, *Arnold Tweedy, et*

20  *al., v. NCO Financial Systems, Inc., et al.*:

21         **Exhibit A:**   Plaintiff Tweedy's Second Amended Complaint for Fraid; Unfair Business

22  Practices (Pursuant to Bus. & Prof. Code § 17200 Et Seq.); Declaratory Relief; and

23  Misrepresentation.

24         **Exhibit B:**   NCO's Memorandum of Points and Authorities in Support of Demurrer to

25  Second Amended Complaint.

26  ///

27  ///

28

**MHA**
McDonough Holland & Allen PC
Attorneys at Law

                                            1

1      **Exhibit C:**     Order After Hearing on NCO's Demurrer to First Amended Complaint, issued

2    by the Honorable Loren E. McMaster, and filed on October 2, 2003.

3    Respectfully Submitted,

4    DATED:  January 13, 2006

5                                                              McDONOUGH HOLLAND & ALLEN PC
                                                               Attorneys at Law
6

7
                                                               By: _____
8                                                                     JOHN C.J. BARNES

9                                                              Attorneys for Defendant Sutter Health

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MHA**

McDonough Holland & Allen PC
Attorneys at Law

**Sutter Health's Request for Judicial Notice in**

Exhibit A



ENDORSED

... –9 ...

By    S. BROWN
Deputy Clerk

1  **LAW OFFFICES OF**
2  **STEPHEN J. DOUGAN**
   *The Wells Fargo Center*
3  400 Capitol Mall, Suite, 900
   Sacramento, CA 95814
4  Telephone: (916) 448-3970
   California State Bar No. 137656
5

6  **Attorney for Plaintiffs**
   **ARNOLD & JUNE TWEEDY**
7

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9             IN AND FOR THE COUNTY OF SACRAMENTO

10

11  ARNOLD TWEEDY & JUNE TWEEDY,          CASE NO. 03AS03039

12            Plaintiffs,

13                                        PLAINTIFF TWEEDYS' SECOND
                                          AMENDED COMPLAINT FOR FRAUD;
14       v.                               UNFAIR BUSINESS PRACTICES
                                          (PURSUANT TO BUS. & PROF. CODE §
15  NCO FINANCIAL SYSTEMS, INC.;          17200 ET SEQ.); DECLARATORY
    SUTTER ROSEVILLE MEDICAL              RELIEF; and MISREPRESENTATION
16  CENTER; SUTTER HEALTH and DOES 1-
    50, INCLUSIVE
17

18            Defendants.

19

20

21

22

23

24

25

26

27                                -1-
28              **PLAINTIFFS' SECOND COMPLAINT FOR DAMAGES**

1    1.Plaintiffs, Arnold & June Tweedy (collectively referred to in the male singular as

2    "TWEEDY") is, and at all times herein mentioned was, a citizen of the State of California in the

3    County of Sacramento.

4    2. Defendant NCO Financial Systems, Inc. is, and at all times herein mentioned was, a

5    corporation duly organized and existing under and by virtue of the laws of the State of California

6    and, authorized to transact and transacting business in the County of Sacramento.

7    3.Sutter Roseville Medical Center and Sutter Health are, and at all times herein mentioned

8    were, corporations providing medical services duly organized and existing under any by virtue of

9    the laws of the State of California and, authorized to transact and transacting business in the

10   County of Sacramento.

11   4.The true names or capacities, whether individual, corporate, associate, or otherwise, of

12   Does 1-50, inclusive, are unknown to TWEEDY, who therefore sues said defendants by such

13   fictitious names.  TWEEDY is informed and believes and on such information and belief, alleges

14   that each of the defendants sued herein as a Doe is legally responsible in some manner for the

15   events and happenings referred to herein, and will ask leave of this court to amend his cross-

16   complaint to insert their names and capacities in place and instead of the fictional names when the

17   same becomes known to TWEEDY.

18   5.At all relevant times, defendants and each of them, were the agents and employees of

19   each of the remaining defendants, and were at all times acting within the purpose and scope of

20   said agency and employment, and each defendant has ratified and approved said agency and

21   employment, and each defendant has ratified and approved the acts of his agent.

22   6.This court has jurisdiction over this matter because all of the defendants conduct

23   business in the State of California, and conduct business in the County of Sacramento.

24   7.Venue is proper in the County of Sacramento because TWEEDY suffered injury and

25   damage due to the DEFENDANTS' conduct in the County of Sacramento.

26   8.The amount in controversy exceeds the jurisdictional minimum of this Court.

27

28

-2-
**PLAINTIFFS' SECOND COMPLAINT FOR DAMAGES**

I.

## GENERAL ALLEGATIONS

a) **TWEEDY is injured in an automobile accident**

9. On March 27, 2001, TWEEDY, through no fault of his own, was involved in an automobile accident in which he suffered bodily injury.

10. As a result of the injuries TWEEDY suffered he was taken to Sutter Roseville Medical Center. At SUTTER, TWEEDY provided his Health Net insurance card. At all relevant times mentioned herein, TWEEDY was a Member in good standing with Health Net.

11. TWEEDY does not have any complaints as to the <u>quality of medical care</u> received from SUTTER. TWEEDY's complaints herein against SUTTER deal with how SUTTER engages in the improper handling of its patients billings (such as allowing bills/liens to be issued to its Medicare patients even after June 2, 2003, and the <u>Olszewski v. Scripps Health</u> ((2003) 30 Cal.4[th] 798) wherein the California Supreme Court determined that the Medicare laws preempted the field and precluded any state based hospital liens), the unreasonable amount of its medical charges, and its intentional or negligent involvement and/or oversight of NCO.

b) **SUTTER's Provider Agreement with Health Net**

12. At all relevant times mentioned herein, SUTTER had entered into a Provider Agreement with Health Net wherein SUTTER made certain contractual promises.

### *i. Arnold TWEEDY*

13. SUTTER sent to Health Net bills in the amount of $9,681.00 for the medical services it provided to Arnold TWEEDY. Pursuant to its Provider Agreement and the agreed upon rate structure with the Provider Agreement, Health Net paid SUTTER $4,627.26 *which represented payment in full.*

14. TWEEDY is informed and believes, and on that basis alleges, that the Provider Agreement between SUTTER and Health Net contained an express provision prohibiting SUTTER from billing Health Net Members any sums except co-payments, deductibles, or

-3-

1   uncovered services.

2       15. Moreover, SUTTER is required to comply with all Federal laws and Regulations

3   which preempt any Medical Provider from seeking any additional funds from any liable third

4   party tortfeasor.

5       *ii. June TWEEDY*

6       16. SUTTER sent to Health Net bills in the amount of $9,426.00 for the medical services

7   it provided to June TWEEDY.  Pursuant to its Provider Agreement and the agreed upon rate

8   structure with the Provider Agreement, Health Net paid SUTTER $5,013.32 *which represented*

9   *payment in full.*

10      17. TWEEDY is informed and believes, and on that basis alleges, that the Provider

11  Agreement between SUTTER and Health Net contained an express provision prohibiting

12  SUTTER from billing Health Net Members any sums except co-payments, deductibles, or

13  uncovered services.

14      18. Moreover, SUTTER is required to comply with all Federal laws and Regulations

15  which preempt any Medical Provider from seeking any additional funds from any liable third

16  party tortfeasor.

17     c) **TWEEDY files suit against the at-fault driver and the DEFENDANTS attempts its unlawful collection**

18

19      19. Due to the injuries he suffered TWEEDY retained counsel, and filed suit against the

20  at-fault driver seeking recovery.·

21      20.  SUTTER assigned any and all of its rights to NCO.  Thereafter, NCO, with

22  SUTTER's permission and knowledge, attempted to collect unreasonable and inflated medical

23  charges from TWEEDY.

24

25      21. Moreover, NCO, with SUTTER's permission and knowledge, attempted to collect

26  funds which were no longer allowed under Olszewski v. Scripps Health (2003) 30 Cal.4th 798.

27

28

22. Pursuant to <u>Olszewski</u>, NCO and SUTTER could no longer seek to collect lien payments from Medicare patients because the Medicare statutes preempted the field. Yet, NCO and SUTTER have not withdrawn the liens issued against Medicare patients including TWEEDY, and still attempt to unlawfully collect money from these patients even after the <u>Olszewski</u> was published and it was made clear by the California Supreme Court that such conduct was improper. Motivated solely by profit, and ignoring the legal prohibitions, the DEFENDANTS continued in their unlawful attempts of seeking funds to which they are not entitled.

23. In accordance with their business practices, the DEFENDANTS continued to make false representations that TWEEDY owed certain sums even though the sums sought were: 1) not reasonable and necessary charges, and 2) was sought from a Medicare patient even though the DEFENDANTS have no legal recourse against Medicare patients after <u>Olszewski v. Scripps Health</u> ((2003) 30 Cal.4th 798.) Since the publication by the California Supreme Court of <u>Olszewski</u> the DEFENDANTS were obligated to withdraw any and all state based lien claims that were sent to Medicare patients since the state based liens were preempted. However, the DEFENDANTS refused to review their files, failed to ascertain which state liens were being pursued against Medicare patients, failed to withdraw those improper liens, and failed to return any of the funds improperly collected from Medicare patients after <u>Olszewski.</u>

24. TWEEDY further alleges on information and belief, that the DEFENDANTS have caused injury to others by collecting its improper bills, with coercion, and intentional omissions.

25. TWEEDY is informed and believes and thereon alleges that the DEFENDANTS' improper conduct includes, but is not limited to, unfair or deceptive acts or practices when it represented that the emergency room services conferred rights to the DEFENDANTS and obligations upon TWEEDY even though these obligations were not owed. TWEEDY is informed

-5-

and believes and thereon alleges that the DEFENDANTS engaged in false or misleading

statements regarding the legal obligations of injured patients in order to collect illicit profit.

## II.

### FIRST CAUSE OF ACTION
(FRAUD AGAINST ALL DEFENDANTS AND DOES 1-50)

26. TWEEDY realleges, repeats, and incorporates by reference Paragraphs 1 through 25

of this cross-complaint as though set forth in full herein.

27. the DEFENDANTS owe a fiduciary relationship to the patients from whom payment

is sought. As a result of this fiduciary and confidential relationship, the DEFENDANTS have a

duty, *inter alia*, to make full disclosure to TWEEDY and to treat him honestly and fairly. In

addition, the DEFENDANTS have a duty not to take advantage of TWEEDY to his detriment.

28. Here, the DEFENDANTS: sought funds for medical expenses that were not

reasonable, and, after Olszewski v. Scripps Health (2003) 30 Cal.4th 798 failed and refused to

drop liens against Medicare patients based upon state hospital lien statutes, failed to reimburse

funds that were improperly obtained from Medicare patients after Olszewski. By improperly

representing to its patients that they owed money for emergency room services, the

DEFENDANTS engaged in an improper business plan. In a scheme to pick their patients'

pockets, the DEFENDANTS sought to maximize their profits and not accept the limited amount

that they could collect from Medicare/Health Net. Put simply, the DEFENDANTS sought money

in the form of unreasonable medical charges and continued to seek money from Medicare patients

even after Olszewski v. Scripps Health (2003) 30 Cal.4th 798 decision which preempted all state

based lien claims based upon preemption.

29. The DEFENDANTS' false statements include, but are not limited to, the following:

> 1) The DEFENDANTS' Notice of Lien dated August 15, 2002, prepared
>
> by Frank C. Simmons, wherein NCO falsely stated that Arnold
>
> TWEEDY owed $24,069.00 though this amount represented
>
> unreasonable medical charges;

-6-

2) The DEFENDANTS Notice of Lien dated August 15, 2002, prepared

by Frank C. Simmons, wherein NCO falsely stated that June

TWEEDY owed $9,417.00 though this amount represented

unreasonable medical charges;

3) The DEFENDANTS' continued attempts to collect money from

Medicare patients even after Olszewski v. Scripps Health (2003) 30

Cal.4[th] 798 which held that the any and all attempts to enforce third

party liens were preempted;

4) The DEFENDANTS' failure to immediately notify all Medicare

patients that they would no longer seek to enforce liens after

Olszewski v. Scripps Health (2003) 30 Cal.4[th] 798; and,

5) The DEFENDANTS' failure to reimburse Medicare patients the money

the DEFENDANTS received from the Medicare patients based upon

state based lien claims after Olszewski.

30. The DEFENDANTS' representations in correspondence that the amounts were owed was false and misleading. The DEFENDANTS' failure to drop their improper state based lien claims against Medicare patients after Olszewski was unlawful, and the DEFENDANTS' failure to reimburse Medicare patients money which they provided to the DEFENDANTS' under duress after Olszewski was unlawful.

31. TWEEDY was unaware of the falsity of the DEFENDANTS' conduct. Thus, being in a vulnerable position due to his injuries, and having no reason to disbelieve the collection agency of a hospital, and having no reason for disbelieving an attorney (Frank Simmons) who is an officer of the court. TWEEDY reasonably relied on the DEFENDANTS' statements.

32. As a result of the DEFENDANTS' conduct TWEEDY paid bills for treatment that he had absolutely no obligation to pay.

33. As a direct result of this improper conduct engaged in by the DEFENDANTS, TWEEDY suffered injury including economic loss and personal injury, including but not limited

-7-

1  to, the payment of money to which the DEFENDANTS were not entitled, and the cost of

2  additional attorney's fees in defending against the fraudulent attempts to collect against him.

3      34. TWEEDY will seek leave of court to amend this Complaint to set forth the amount of

4  said damages, according to proof at time of trial, together with interest and/or prejudgment

5  interest thereon at the legal lawful rate.

6      35. The DEFENDANTS' conduct described herein was intended by it to cause injury to

7  TWEEDY or was despicable conduct carried on by the DEFENDANTS with a willful and

8  conscious disregard of the rights of TWEEDY, or subjected TWEEDY to cruel and unjust

9  hardship in conscious disregard of TWEEDY's rights, or was an intentional misrepresentation,

10 deceit and/or concealment of a material fact known to the DEFENDANTS with the intention to

11 deprive TWEEDY of his property rights, legal rights, or to otherwise cause injury, such as to

12 constitute malice, oppression or fraud under California Civil Code section 3294, thereby entitling

13 TWEEDY to punitive damages in an amount appropriate to punish or set an example of the

14 DEFENDANTS.

15     36. The DEFENDANTS' conduct described herein was undertaken by, among others,

16 other corporate officers or managing agents, identified as Does 1-50, who are responsible for the

17 DEFENDANTS' collection efforts, supervision, operations, and/or decisions. The aforesaid

18 conduct of said managing agents and said individuals was therefore undertaken on behalf of the

19 DEFENDANTS'. Said managing corporate agents further had advance knowledge of the actions

20 and conduct of said individuals whose actions and conduct were ratified, authorized, and

21 approved by managing agents whose precise identities are unknown to TWEEDY at this time and

22 are therefore identified and designated herein as Does 1-50, inclusive.

23                                    III.

24                    SECOND CAUSE OF ACTION
   (UNFAIR BUSINESS PRACTICES: CALIFORNIA BUSINESS AND PROFESSIONS CODE
25      SECTION 17200, ET SEQ. AGAINST ALL DEFENDANTS AND DOES 1-50)

26     38. TWEEDY realleges, repeats, and incorporates by reference Paragraphs 1 through 37

27                                   -8-
28                    PLAINTIFFS' SECOND COMPLAINT FOR DAMAGES

1   of this Complaint as though set forth in full herein.

2       39. As described above, the DEFENDANTS engaged in unlawful, unfair, and fraudulent

3   business practices within the meaning and intent of §§ 17200-17208 of the California Business &

4   Professions Code and other applicable law.

5       40. TWEEDY is informed and believes and thereon alleges that the DEFENDANTS

6   routinely misrepresents the reasonable value of the medical services provided, continued to seek

7   to enforce liens from Medical patients even though after <u>Olszewski v. Scripps Health</u> (2003) 30

8   Cal.4th 798 such conduct is unlawful, and failed to send out notices withdrawing their Notices of

9   Liens based upon State lien rights.

10      41. The type of conduct described above was designed, implemented and enforced to the

11  advantage of the DEFENDANTS and to the disadvantage of SUTTER's patients such as

12  TWEEDY.

13      42. The DEFENDANTS' conduct violates California law in many respects including, but

14  not limited to, Penal Code § 550(b). Penal Code § 550(b) states, in pertinent part, the following:

15          "§ 550.  Unlawful acts related to claims.

16          * * *

17          (b) It is unlawful to do, or to knowingly assist or conspire with any
            person to do, any of the following:

18
            * * *
19
            (3) Conceal, or knowingly fail to disclose the occurrence of, an
20          event that affects any person's initial or continued right or
            entitlement to any insurance benefit or payment, or the amount of
21          any benefit or payment to which the person is entitled.

22      43. The DEFENDANTS, by the above referenced conduct, has engaged in fraudulent,

23  unlawful or unfair practices with respect to its emergency room service billing.

24      44. TWEEDY further alleges on information and belief that the fraudulent, unlawful or

25  unfair practices alleged above are continuing in nature and are widespread practices engaged in

26  by NCO.

27      45. TWEEDY respectfully requests this court to order the DEFENDANTS to re-open and

                                    -9-
28                      **PLAINTIFFS' SECOND COMPLAINT FOR DAMAGES**

1    adjust TWEEDY's file and all other of its files wherein the DEFENDANTS sent an inflated,

2    unreasonable medical bill and wherein they continued to seek payment from Medicare patients

3    even after <u>Olszewski</u>. The DEFENDANTS should be required to reimburse the patients,

4    including TWEEDY, who have been victimized by the DEFENDANTS' scheme of corporate

5    greed. Otherwise, if restitution is not so ordered the DEFENDANTS will have wrongfully

6    obtained profits to which it is not entitled.

7        46. Further, pursuant to California Business and Professions Code § 17203, TWEEDY

8    seeks an order of this court enjoining the DEFENDANTS, from continuing its wrongful practices.

9    TWEEDY will be irreparably harmed if such an order is not granted.

10       47. Still further, pursuant to California Business and Professions Code § 17203,

11   TWEEDY seeks restitution of monies realized by the DEFENDANTS as a result of its unlawful,

12   unfair, and/or fraudulent business practices.

13       48. Finally, in order to protect the public from further harm caused by the

14   DEFENDANTS' unlawful, unfair and fraudulent business practices, TWEEDY seeks a

15   permanent injunction against the DEFENDANTS, their employees, agents, assigns, and anyone

16   acting on their behalf during the pendency of this action and thereafter, from directly or indirectly

17   doing or performing the improper acts set forth above.

18       49. This action will confer a significant benefit upon the general public by stopping the

19   DEFENDANTS from defrauding, deceiving and misleading thousands of individuals with

20   fraudulent, inflated and exaggerated bills that the patients do not owe. TWEEDY is also entitled

21   to recover his attorneys' fees and cost incurred herein pursuant to Code of Civil Procedure §

22   1021.5.

**IV.**

23

24   ### THIRD CAUSE OF ACTION
     (DECLARATORY RELIEF AGAINST THE DEFENDANTS AND DOES 50)

25

26       50. TWEEDY realleges, repeats, and incorporates by reference Paragraphs 1 through 49

27   of this cross-complaint as though set forth in full herein.

-10-

28

51. The DEFENDANTS' practice of aggressive, and fraudulent, billing normally has the intended effect of patients, or their attorneys, from paying what they do not owe.

52. TWEEDY is informed and believes and thereon alleges that the DEFENDANTS medical charges set forth within its bills are unreasonable. TWEEDY is further informed and believes that the DEFENDANTS have failed to drop all state based hospital liens against Medicare patients even after the <u>Olszewski</u> decision, and has failed to reimburse Medicare patients after it collected sums from them even after <u>Olszewski.</u>

53. These Notice of Liens, coupled with the misrepresentation by The DEFENDANTS that the amounts listed in the Notice if Lien were owed, has the intended effect. Patients and/or their attorneys are duped into believing that the amounts are owed, and usually pay the amount stated within the Notice of Lien. Thus, these Notice of Liens perform their purpose of furthering The DEFENDANTS fraudulent scheme of improper billing.

54. Moreover, when the DEFENDANTS are challenged by patients or their attorneys as to why the DEFENDANTS pursued the bills against them, the DEFENDANTS falsely stated that it was entitled to collect the full sums claimed. Having no reason to disbelieve what they were told by the DEFENDANTS, TWEEDY and other patients and/or their attorneys accepted the DEFENDANTS' representations.

55. TWEEDY is informed and believed and thereon alleges that TWEEDY has fulfilled all duties owed by him, if any.

56. The DEFENDANTS owed duties and obligations to TWEEDY as a patient of SUTTER.

57. The DEFENDANTS breached these duties and obligations by failing and refusing to comply with its obligations and to comply with existing law.

58. The DEFENDANTS improperly mailed out unreasonable medical bills, failed to withdraw its liens from Medicare patients even after the <u>Olszewski</u> decision.

59. As a result, there exists a controversy as to the rights and obligations between the DEFENDANTS and TWEEDY.

60. TWEEDY, desires a judicial determination and declaration of the DEFENDANTS obligations, rights and duties under California law.

## V.

### FOURTH CAUSE OF ACTION

(NEGLIGENT MISREPRESENTATION AGAINST NCO AND DOES 1-50)

61. TWEEDY realleges, repeats, and incorporates by reference Paragraphs 1 through 61 of this Complaint as though set forth in full herein.

62. The DEFENDANTS has made numerous representations as to a past or existing material facts that TWEEDY and various other hospital patients, who became emergency room patients, owed the DEFENDANTS various sums of money. The DEFENDANTS demanded payment in the form of unreasonable medical charges, improper Notices of Lien, and threatening letters. This information was communicated to TWEEDY and other patients and/or their attorneys who owed no obligation to pay the inflated charges to the DEFENDANTS, and who did not owe any amount to the DEFENDANTS based upon state based lien claims after the <u>Olszewski</u> decision.

63. The DEFENDANTS' representations that certain sums were owed was untrue.

64. The DEFENDANTS intentionally and/or recklessly made these representations that TWEEDY owed various sums when TWEEDY has no such obligation. The representations in the form of bills, invoices, and threatening letters was made with the intent to induce TWEEDY to pay sums which were not owed.

1    65. TWEEDY was unaware of the falsity of the DEFENDANTS representations; and

2    acted in reliance upon the truth of the representations and was damaged by making payments on

3    sums that were not owed.

### PRAYER FOR RELIEF

5    Wherefore, TWEEDY prays for judgment against NCO as follows:

### AS TO THE FIRST CAUSE OF ACTION

7    1.  Compensatory damages to be proven at trial;

8    2.  All special damages and general damages for mental and emotional distress in a sum

9    to be determined at time of trial;

10   3.  For attorneys' fees, and costs of litigation incurred by TWEEDY in an amount to be

11   determined at trial;

12   4.  Punitive and exemplary damages in an amount to punish or set an example of the

13   DEFENDANTS;

14   5.  For such other and further relief as the court deems just and proper.

### AS TO THE SECOND CAUSE OF ACTION

16   1.  An order requiring the DEFENDANTS; 1) to re-open and adjust all of its files of

17   Medical patients to make sure that the DEFENDANTS sends out a withdrawl of any state based

18   lien; 2) to re-open and to reimburse any funds that were obtained from Medicare patients or their

19   attorneys who paid the DEFENDANTS pursuant to state based liens after the Olszewski decision;

20   and 3) to re-open and adjust all of there bills that used unreasonably high medical bill rates.

21   2.  An order, pursuant to California Business and Professions Code § 17203, requiring

22   restitution of monies realized by the DEFENDANTS as a result of its unlawful, unfair, and/or

23   fraudulent business practices.

24   3.  A permanent injunction against NCO, its employees, agents, assigns, and anyone

25   acting on its behalf from directly or indirectly doing or performing the improper acts set forth

26   above.

27

28

1        4.  Reasonable attorney fees and costs pursuant to Code of Civ. Proc. § 1021.5;

2        5.  For such other and further relief as this court may deem just and proper.

3    **AS TO THE THIRD CAUSE OF ACTION**

4        1.  A declaration that plaintiff TWEEDY does not owe the DEFENDANTS any funds;

5        2.  A declaration that plaintiff TWEEDY is to be reimbursed all finds spent in defending

6    herself in fighting against the DEFENDANTS' fraud;

7        3.  A declaration that plaintiff TWEEDY is entitled to be reimbursed by defendant the

8    DEFENDANTS for all sums received by the DEFENDANTS to which it is not entitled to

9    receive;

10        4.  A declaration that the DEFENDANTS cannot send out, enforce, or collect any state

11    based liens after June 2, 2003, which is the published date of Olszewski.

12        5.  For attorney's fees and costs of suit incurred herein; and,

13        6.  For such other and further relief as the court deems just and proper.

14    **AS TO THE FOURTH CAUSE OF ACTION**

15        1.  Compensatory damages to be proven at trial;

16        2.  All special damages and general damages for mental and emotional distress in a sum

17    to be determined at time of trial;

18        3.  For attorneys' fees, and costs of litigation incurred by TWEEDY to obtain the benefits

19    due him;

20        4.  Punitive and exemplary damages in an amount to punish or set an example of the

21    DEFENDANTS;

22        5.  For such other and further relief as the court deems just and proper.

23

24

25

26

27    -14-

28    **PLAINTIFFS' SECOND COMPLAINT FOR DAMAGES**

1  Dated: October 9 , 2003

2                              LAW OFFICES OF STEPHEN J. DOUGAN

3

4                              By_____

5                                  STEPHEN J. DOUGAN
                                   Attorney for Plaintiff
6                                  ARNOLD and JUNE TWEEDY

7

8                         **DEMAND FOR JURY TRIAL**

9        TWEEDY hereby demands a trial by jury.

10 Dated: October 9 , 2003

11                             LAW OFFICES OF STEPHEN J. DOUGAN

12

13                             By_____

14                                 STEPHEN J. DOUGAN
                                   Attorney for Plaintiff
15                                 ARNOLD and JUNE TWEEDY

16

17

18

19

20

21

22

23

24

25

26

27
                                    -15-
28

1  RE:  *Arnold & June Tweedy v NCO Financial Systemms, Inc., et al.*
   <u>Sacramento County Superior Court No. 03AS03039</u>

2

3

4  ### PROOF OF SERVICE BY MAIL
   ### 1013a, 2015.5 CCP

5

6      I am a citizen of the United States.  I am over the age of eighteen and not a party to the

7  within action or proceeding.  My business address is 400 Capitol Mall, Suite 900, Sacramento,

8  California 95814.

9      On October 9, 2003, I served the following documents:

10 **PLAINTIFF TWEEDYS' SECOND AMENDED COMPLAINT FOR FRAUD; UNFAIR**
   **BUSINESS PRACTICES (PURSUANT TO BUS. & PROF. CODE §17200 ET SEQ.);**
11 **DECLARATORY RELIEF; and MISREPRESNTATION**

12 on all interested parties in said cause by placing a true copy thereof enclosed in a sealed

13 envelope, with postage thereon fully prepaid, in the United States Mail at Sacramento,

14 California, addressed as follows:

15

16 MARCIA L. AUGSBURGER, ESQ.
   DANIELA F. ALMEIDA, ESQ.
17 MCDONOUGH, HOLLAND & ALLEN PC
   555 Capitol Mall, Ninth Floor
18 Sacramento, California 95814

19

20     I declare under penalty of perjury under the laws of the State of California that the

21 foregoing is true and correct and that this declaration was executed on October 9, 2003, at

22 Sacramento, California.

23

24

25                                                  _JANIS M. POLLO_

26

27

28

Exhibit B

1  McDONOUGH HOLLAND & ALLEN PC
   Attorneys at Law
2  Marcia L. Augsburger (State Bar No. 145686)
   555 Capitol Mall, 9th Floor
3  Sacramento, California 95814
   Phone: 916.444.3900
4  Fax:    916.444.8334

5  Attorneys for NCO FINANCIAL SYSTEMS, INC.

6

7

8               SUPERIOR COURT OF CALIFORNIA

9                  COUNTY OF SACRAMENTO

10

11  ARNOLD TWEEDY and JUNE          )  No.    03AS03039
    TWEEDY,                         )
12                                  )  NCO FINANCIAL SYSTEM, INC.'S
                    Plaintiffs,     )  MEMORANDUM OF POINTS AND
13                                  )  AUTHORITIES IN SUPPORT OF
            vs.                     )  DEMURRER TO SECOND AMENDED
14                                  )  COMPLAINT
    NCO FINANCIAL SYSTEMS, INC.; et )
15  al.,                            )  Date: December 11, 2003
                                    )  Time: 2:00 p.m.
16                  Defendants.     )  Dept. 53
                                    )  Trial Date: None
17                                  )  Complaint Filed: May 29, 2003
                                    )
18

19  I.      INTRODUCTION

20          This Court has already ruled that NCO Financial Systems, Inc. ("NCO"), lawfully

21  asserted medical liens under Civil Code section 3045.1 et seq., the Hospital Lien Act

22  ("HLA"), against the tortfeasor who caused the Plaintiffs' personal injuries. Order After

23  Hearing on NCO's Demurrer to First Amended Complaint, attached hereto for the

24  Court's convenience ("Order on Demurrer"). Plaintiffs Arnold and June Tweedy (the

25  "Tweedys" or "Plaintiffs") initially sued NCO, alleging that the filing of an HLA lien

26  violated the prohibition against balance billing, which, as a matter of law, it does not.

27  Id.; Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies, 15 Cal. 4th 213, 217

28  (1997). Now, Plaintiffs allege that the HLA liens NCO asserted against the Tweedys

1    violated the law set forth in *Olszewski v. Scripps Health*, 30 Cal. 4th 798 (2003). Again, as a

2    matter of law, it does not. Plaintiffs' Second Amended complaint misstates the law and

3    fails to allege a cause of action.

4          First, as discussed more fully below, *Olszewski* considered liens under California's

5    Welfare & Institutions Code. Plaintiffs' have already conclusively alleged that the liens

6    at issue in this case were asserted under the HLA contained in the Civil Code. First

7    Amended Complaint herein, ¶ 23, and Exhibits B and C thereto.

8          Second, *Olszewski* does not address <u>Medicare</u> laws, applicable to the aged and

9    disabled. *Olszewski* dealt with <u>Medicaid</u> laws, which apply to the needy. While

10   Plaintiffs imply they were Medicare members, this is irrelevant under *Olszewski*.

11         Third, even if Plaintiffs were Medicare members and the *Olszewski* ruling could be

12   stretched to apply to Medicare, which it cannot, *Olszewski* holds that, as a matter of law,

13   a health care provider does not violate federal law by asserting liens for Medical services

14   rendered.

15         Fourth, as *Olszewski* highlights, NCO is protected by the litigation privilege from

16   Plaintiffs' tort claims. Relatedly, and more specifically, the HLA provides a safe harbor

17   from unlawful practices actions.

18         For these reasons, the Second Amended Complaint fails to state a cause of action

19   for unlawful conduct, misrepresentation, or fraud. Plaintiffs cannot state a cause of

20   action against NCO for exercising its lien rights under any theory. Thus, this demurrer

21   should be granted without leave to amend.

22   II.    DISCUSSION

23         This demurrer is based on California Code of Civil Procedure section 430.10(e),

24   which provides that a party against whom a complaint is filed may object by demurrer

25   to the pleading on the ground that it does not state facts sufficient to constitute a cause of

26   action. The Complaint fails to state a cause of action because each cause of

27   action—fraud, unfair business practices (Bus. & Prof. Code § 17200 et seq.), declaratory

28   relief, and misrepresentation—is based on erroneous conclusions of law and insufficient

1    factual allegations, as discussed in detail below.  When a complaint is based upon

2    conclusory statements and legal conclusions, the court disregards them.  *Hayter Trucking,*

3    *Inc. v. Shell Western E & P, Inc.,* 18 Cal. App. 4th 1, 12 (1993) ("A demurrer . . . does not

4    admit contentions, deductions, or conclusions of fact or law alleged therein.").

5    Accordingly, the demurrer is taken to the whole complaint and each cause of action

6    therein.  California Code of Civil Procedure § 430.50(a).

7
8
        **A.    The Second Amended Complaint Does Not Allege Facts Supporting
            Application of Federal Law.**

9        The Second Amended Complaint herein alleges the following:

10       &bull;  Plaintiffs were taken to Sutter Roseville Medical Center (the "hospital") for

11           injuries suffered in an automobile accident.  Plaintiffs' Second Amended

12           Complaint [herein] ("2d Complaint") ¶¶ 9-11; Order on Demurrer, p. 1.

13       &bull;  The Tweedys were members in good standing with Health Net and provided

14           their Health Net insurance cards to Sutter Roseville when they presented

15           themselves for medical treatment.  2d Complaint ¶ 10.

16       &bull;  Pursuant to the Provider Agreement between the hospital and Health Net, the

17           hospital billed Health Net for the medical services it provided to the Tweedys.

18           2d Complaint ¶¶ 13, 16; Order on Demurrer, p. 1.

19       &bull;  Pursuant to the Provider Agreement, Health Net paid the hospital

20           significantly less than the billed charges: $4,627.26 out of $9,681.00 for Arnold

21           Tweedy's medical treatment; and $5,013.22 out of $9,426.00 for June Tweedy's

22           care. 2d Complaint ¶¶ 13, 16; Order on Demurrer p. 1.

23       &bull;  Pursuant to *Olszewski v. Scripps Health,* 30 Cal. 4th 798 (2003), NCO and the

24           hospital could not seek to collect lien payments "from Medicare patients

25           including Tweedy," yet NCO and Sutter have not withdrawn the liens.  2d

26           Complaint ¶ 22.

27    The Second Amended Complaint <u>omits</u> what the First Amended Complaint established:

28    The liens, which were attached to the pleadings, were asserted under California Civil



1    Code section 3045.1, et seq., the HLA. First Amended Complaint ¶ 29 and Exhibits A

2    and B thereto; Order on Demurrer p. 2. Now, Plaintiffs allege that the liens were served

3    under some other provision of law having to do with Medicare patients. 2d Complaint

4    ¶¶ 11, 15, 18, 21-23, 28-30, 40, 45, 52, 58, 62.  However, based on Plaintiffs' prior

5    complaint and the lien notices attached thereto, this Court already affirmed that the liens

6    were served under the HLA. First Amended Complaint ¶ 29 and Exhibits A and B

7    thereto; Order on Demurrer p. 2.

8                1.    **Despite Plaintiffs' Attempt to Plead Otherwise, *Olszewski* is
                      Inapplicable Because Their First Amended Complaint**
9                     **Establishes That The Liens Were Served Under The HLA.**

10        Material factual allegations in a verified <u>or unverified</u> pleading that are omitted in

11    a subsequent amended pleading without adequate explanation will be considered by the

12    court in ruling on a demurrer to the later pleading. *Shoemaker v. Myers*, 52 Cal. 3d 1, 13

13    (1990) (applying the rule to a verified pleading); *Pierce v. Lyman* 1 Cal. App. 4th 1093,

14    1109 (1991) (extending the rule to unverified pleadings).  There is only one explanation

15    for Plaintiffs' omission to allege that the liens were asserted under the HLA:  The

16    omission is an intentional pretense to get past the pleading stage.  Their prior

17    inconsistent statements preclude Plaintiffs from stating a cause of action based on

18    contradictory allegations. *See, e.g., Del E. Webb Corp. v. Structural Materials Co.*, 123 Cal.

19    App. 3d 593, 604-05 (1981).

20                2.    **Despite Plaintiffs' Attempt to Plead Otherwise, *Olszewski* is
                      Inapposite Because Their Second Amended Complaint Alleges**
21                    **That Plaintiffs Were Health Net Patients, Not That They Were**
                      **Medicaid Patients.**
22

23        In paragraphs 10-17 of the Second Amended Complaint, Plaintiffs affirmatively

24    allege that they were insured by Health Net. This is consistent with the First Amended

25    Complaint. First Amended Complaint ¶ 9.  Nonetheless, in each cause of action,

26    Plaintiffs claim that NCO's wrongdoing was collecting lien payments "from Medicare

27    patients including Tweedy." 2d Complaint ¶¶ 11, 15, 18, 21-23, 28-30, 40, 45, 52, 58, 62.

28    <u>The Court may disregard the new allegation and assume Plaintiffs' insurance was with</u>

**MHA**

1   Health Net, not Medicare. *Shoemaker*, 52 Cal. 3d at 13; *Pierce*, 1 Cal. App. 4th at 1109; *Del*

2   *E. Webb Corp*, 123 Cal. App. 3d at 604-05.

3       In any event, the Tweedys were not <u>Medicaid</u> patients, according to either

4   complaint.  Thus, as discussed below, *Olszewski* would not provide Plaintiffs with a

5   cause of action even if they were Medicare patients.

6       **B.   *Olszewski v. Scripps Health* Did Not Address Liens Filed Under The**
        **Hospital Lien Act, California Civil Code section 3045.1, et. seq.**
7

8       Contrary to the allegations contained in the Second Amended Complaint,

9   *Olszewski* did not address Medicare laws or the HLA at all.  The *Olszewski* case held that

10  federal Medicaid laws preempted California's provider lien statutes in Welfare &

11  Institutions Code sections 14000-14198.  *Olszewski*, 30 Cal. 4th at 805-06, 808, 809, 813,

12  819-21, 826.  Medicare is different from Medicaid.  Medicare is a federal program that

13  pays for covered medical care provided to eligible <u>aged and disabled persons</u>. 42 U.S.C.

14  §§ 1395-1395ggg (2002).  The federal Medicaid program, on the other hand, provides

15  federal money to the participating state for furnishing medical care to <u>the needy</u>.  42

16  U.S.C. §§ 1396-1396v; *Olszewski*, 30 Cal. 4th at 809-10.

17      The interest of furnishing care to the needy is the basis for a policy unique to

18  Medicaid: "The Medicaid program . . . is a cooperative endeavor in which the Federal

19  Government provides financial assistance to participating States to aid them in

20  furnishing health care to needy persons."[1] *Id.*  For this reason, the Medicaid regulations

21  provide that a health care provider may only recover a nominal amount and never more

22  than the cost-sharing payment amount.  *Id.* at 819-20, citing *inter alia* 42 C.F.R. §§ 433.139

23  (c), 447.20 ; 42 U.S.C. §§ 1396a (a) (25) (C), 1396o(a) (3); 42 Code of Federal Regulations

24  part 447.15.  In fact, 42 U.S.C. section 1369o(a) (3) states: "any deduction, cost sharing or

25  similar charge imposed under the plan ... will be nominal in amount."  In contrast,

26  Health and Safety Code sections 14124.791 and 14124.74 permit a provider to recover the

27

28  [1]     In California, the state's Medicaid plan is Medi-Cal. *Id.* at 809.

1   full customary charge for its services – "an amount greater than the nominal cost-sharing

2   charges allowed under the state plan." *Id.* at 820.

3       The *Olszewski* Court held: "Because [California Welfare & Institutions Code]

4   sections 14124.791 and 14124.74 allow the provider to recover more than these cost-

5   sharing charges from the beneficiary, they cannot coexist with federal law and stand as

6   an obstacle to the accomplishment of Congress' intent." *Id.* at 820. This governs <u>state</u>

7   actions; <u>a provider does not violate federal law</u> by seeking recovery from a Medicaid

8   beneficiary. *Id.* at 828. The Court stated:

9       Federal Medicaid statutes and regulations do not impose "any obligation
        upon Medicaid providers." . . . Rather, they create "a duty which runs to
10      the State alone." . . . Because federal Medicaid law governs states – and
        not providers – defendants did not and could not violate federal law by
11      filing liens under section 14124.791.

12  *Id.* (citations omitted).

13      For the foregoing reasons, the Tweedys' assertions that *Olszewski*  is applicable to

14  Medicare patients and gives Plaintiffs a cause of action against the provider here are

15  erroneous statements of law. Accordingly, this demurrer should be sustained without

16  leave to amend, as the entire complaint is premised on these assertions. Cal. Code Civ.

17  Proc. § 430.10(e); *Hayter Trucking, Inc. v. Shell Western E & P, Inc.,* 18 Cal. App. 4th 1, 12

18  (1993).

19      C.    NCO's Assertion of Liens Was Privileged.

20      What is instructive from *Olszewski,* is this: "<u>[T]he assertion of liens as authorized</u>

21  <u>by validly enacted California statutes is shielded by the litigation privilege.</u>" *Olszewski,*

22  30 Cal. 4th at 832 (emphasis added). The HLA is, of course, validly enacted legislation.

23  Order On Demurrer p. 2, l 22 – p. 3 l. 9; citing *Swanson v. St. John's Regional Medical*

24  *Center,* 97 Cal. App. 4th 245, 246-47 (2002), *Mercy Hospital & Medical Center v Farmers Ins.*

25  *Group of Companies,* 15 Cal. 4th 213, 217 (1977); *San Francisco v. Sweet,* 12 Cal. 4th 105, 122

26  fn. 11 (1995); *Day v. Alta Bates Medical Center,* 98 Cal. App. 4th 243, 251-253 (2002); *Lovett*

27  *v Carrasco,*  63 Cal. App. 4th 48 (1998). The *Olszewski* plaintiffs alleged unlawful business

28  practices, fraud, and misrepresentation based on the filing of liens under Welfare &

**MHA**

-6-

1  Institutions Code. *Olszewski,* 30 Cal. 4th at 806. In affirming the dismissal of these tort

2  claims, the *Olszewski* Court held that "the litigation privilege shielded defendant from

3  plaintiff's tort claims." *Id.* at 830.

4  Accordingly, *Olszewski* requires that the Tweedys' claims fail as a matter of law.

5  Thus, this demurrer should be sustained without leave to amend.

6  **D.  NCO's Assertion of The Liens Did Not Constitute an Unfair Business**

7  **Practice, as a Matter of Law.**

8  In *Swanson v. St. John's Regional Medical Center,* 97 Cal. App. 4th 245, 246-47 (2002),

9  the court held that hospital liens filed pursuant to the HLA fall within the safe harbor

10 provision of the UCL and are not an unfair business practice. Therefore, the filing of

11 HLA liens are not an unfair business practice as a matter of law.

12 The *Olszewski* Court also held that: "[Welfare & Institutions Code] sections

13 14124.791 and 14124.74 create a safe harbor protecting defendant from plaintiff's claim of

14 unfair business practices." *Olszweski,* 30 Cal. 4th at 829. The *Olszewski* plaintiffs argued

15 that since the Welfare & Institutions Code lien sections were preempted by federal law,

16 those statutes could not provide a safe harbor under *Cal-Tech Communications, Inc. v. Los*

17 *Angeles Cellular Telephone Co.,* 20 Cal. 4th 163, 180 (1999). *Id.* at 827. The court rejected

18 this argument and held that the trial court properly sustained the defendant's demurrer

19 to the unfair business practices claim. *Id.* at 830.

20 Thus, *Olszewski* confirms that under the applicable law, *Swanson,* the filing of

21 HLA liens is not an unfair business practice. If Medicare is somehow implicated, as

22 Plaintiffs allege, the Tweedys' unfair business practices claim also fails under *Olszewski.*

23 Accordingly, this demurrer should be sustained without leave to amend as to the

24 Tweedys' cause of action for unfair business practices.

25 //////

26 /////

27 /////

28 /////

**MHA**
Holland & Allen PC
Attorneys at Law

III.    CONCLUSION

For the reasons set forth above, NCO respectfully requests that this demurrer be granted, without leave to amend, on each cause of action raised alleged in the Complaint. Plaintiffs cannot sue NCO for exercising its lien rights.

DATED: November 4, 2003.

McDONOUGH HOLLAND & ALLEN PC
Attorneys at Law

By: _____
        Marcia L. Augsburger

Attorneys for NCO Financial Systems, Inc.

1    CASE TITLE:        Tweedy v. NCO Financial Systems, Inc.

2    COURT/CASE NO:Sacramento County Superior Court Case No. 03AS03039

3                          **PROOF OF SERVICE**
                                (State)

4
          I am employed in the County of Sacramento; my business address is 555 Capitol
5    Mall, 9th Floor, Sacramento, California. I am over the age of 18 years and not a party
     to the foregoing action.

6
          I am readily familiar with the business practice at my place of business for
7    collection and processing of correspondence for mailing with the United States Postal
     Service. Correspondence so collected and processed is deposited with the United
8    States Postal Service that same day in the ordinary course of business.

9         On November 4, 2003, I served the following document(s):

10   **NCO FINANCIAL SYSTEM, INC.'S MEMORANDUM OF POINTS AND
     AUTHORITIES IN SUPPORT OF DEMURRER TO SECOND AMENDED**
11                          **COMPLAINT**

12   ☒  **by mail** on the following party(ies) in said action, in accordance with Code of
        Civil Procedure § 1013a(3), by placing a true copy thereof enclosed in a sealed
13      envelope in a designated area for outgoing mail, addressed as set forth below. At
        McDonough Holland & Allen PC, mail placed in that designated area is given the
14      correct amount of postage and is deposited that same day, in the ordinary course
        of business, in a United States mailbox in the City of Sacramento, California.

15      **by personal delivery:** by causing a true copy thereof, to be personally
16      delivered in accordance with Code of Civil Procedure § 1011, to the person(s) and
        at the address(es) set forth below.

17
     ☐  **by overnight delivery** on the following party(ies) in said action, in accordance
18      with Code of Civil Procedure § 1013(c), by placing a true copy thereof enclosed in
        a sealed envelope, with delivery fees paid or provided for, and delivering that
19      envelope to an overnight express service carrier as defined in Code of Civil
        Procedure § 1013(c).

20
     ☐  **by facsimile transmission,** in accordance with Code of Civil Procedure
21      § 1013(e), to the following party(ies) at the facsimile number(s) indicated.

22   Stephen J. Dougan                    Attorney for Plaintiffs
     The Wells Fargo Center
23   400 Capitol Mall, Suite 900
     Sacramento, CA 95814
24

25        I declare under penalty of perjury under the laws of the State of California that the
     foregoing is true and correct and that this document was executed on November 4, 2003,
26   at Sacramento, California.

27                                     _____
                                              EJ Kipping
28

**MHA**
Donough Holland & Allen PC
Attorneys at Law

Exhibit C

1   McDONOUGH HOLLAND & ALLEN PC
    Attorneys at Law
2   MARCIA L. AUGSBURGER (State Bar No. 145686)
    DANIELA F. ALMEIDA (State Bar No. 202628)
3   555 Capitol Mall, 9th Floor
    Sacramento, California 95814
4   Phone: 916.444.3900
    Fax:   916.444.8334

5
    Attorneys for NCO FINANCIAL SYSTEMS, INC.
6

7

8                    SUPERIOR COURT OF CALIFORNIA

9                      COUNTY OF SACRAMENTO

10

11  ARNOLD TWEEDY, et al.,          )  Case No. 03AS03039
    INC. a California Corporation   )
12                                  )  ORDER AFTER HEARING ON NCO'S
                        Plaintiffs, )  DEMURRER TO FIRST AMENDED
13                                  )  COMPLAINT
                                    )
14            v.                    )
                                    )  Date  :  September 22, 2003
15  NCO FINANCIAL SYSTEMS, INC.,    )  Time  :  2:00 p.m.
    et al.                          )  Dept  :  53
16                                  )  Trial Date: None Set
                        Defendants. )  Complaint Filed:  May 29, 2003
17                                  )

18        The demurrer of defendant NCO Financial Services, Inc. ("NCO") was set for

19  hearing at the above date and time, in Department 53 of the above-entitled court, the

20  Honorable Loren E. McMaster, Judge presiding.

21        After considering the moving, supporting, opposing, and responding arguments

22  filed in this matter by counsel, the Court issued its Tentative Ruling, as follows:

23        Defendant NCO's (assignee of Sutter) Demurrer to the 1st amended
          Complaint is ruled on as follows:
24
          Plaintiffs were injured in a car accident and taken to the emergency
25        room at Sutter Roseville Medical Center ("Sutter"). Sutter had a Provider
          Agreement with Health Net, plaintiffs' insurer, whereby Sutter would
26        accept agreed upon rates for certain services. Sutter billed Health Net
          approximately $9,000 for each plaintiff and Health Net paid Sutter
27        significantly less than the billed amount pursuant the agreed upon rate
          structure under the Provider Agreement.  The Provider Agreement

28

MHA

1    prohibits Sutter from billing Health Net Members any sums except co-payments, deductibles or uncovered services.

2

3    In an underlying case Plaintiffs sued the tortfeaser involved in theaccident and thereafter Sutter asserted a hospital lien purusant to CC 3045.1 in the amount of $24,069 against recovery by Arnold and in the amount of $9,417 against any recovery by June. The underlying action was dismissed by Arnold, but is still pending as to June.

4

5    Plaintiffs contend that assertion of the lien under the Hospital Lien Act ("HLA") at CC 3045.1 constitutes "balance billing," which is prohibited by the Provider Agreement, Health and Safety Code section 1379, and CCR Title 28 section 1300.67.8(d). Plaintiffs contend that CC 3045.1, which allows the hospital to place a lien for the reasonable value of its services on the damages recovered in the tort suit, only applies if a patient does not have medical insurance.

6

7

8

9    Plaintiffs also contend, assuming the lien were valid, that Sutter fraudulently claimed a lien that was far in excess of the statutory cap of 50% of the net recovery (after prior liens) pursuant to H&S code 3045.4. The only alleged groud for the lien being too high is that the attorneys fees for the underlying action should have been subtracted first from the total recovery as a "prior lien" under section 3045.4. Plaintiffs contend Sutter was only entitled to 50% of the remaining recovery after deduction of attorneys fees.

10

11

12

13

14    Plaintiffs allege four causes of action, Fraud, Unfair Business Practices, Declaratory Relief and Negligent misrepresentation. Assuming plaintiffs claims are based solely on the assertion of the Hospital Lien and inclusion of attorneys fees as a "prior lien under 3034.4, no cause of action is stated. Therefore the demurrers are sustained for failure to state a cause of action.

15

16

17

18    To the extent that the claims are based on any alleged improper assertion of a lien in excess of the fair and reasonable value of the services (e.g $24,069 lien as to Arnold) or contrary to a specific agreement in the Provider Agreement precluding assertion of the hospital lien, or to the extent NCO is alleged to be directly billing the patient apart from assertion of the lien against only the recovery from the tortfeaser, plaintiffs are given leave to amend.

19

20

21

22    A hosptial lien pursuant to Civil Code 3045.1 is a lien against recovery from a third party and is not in violation of the "balance billing" prohibition of H & S Code 1379. Under the Hospital Lien Act, NCO is not limited to the amount they were paid under the Provider Agreement. Under Swanson v St. John's Regional Medical Center (2002) 97 Cal.App.4th 245, a hospital may assert a statutory lien against a patient's recovery from a third party tortfeasor for the difference between the amount paid to the hospital by the insurer under a provider agreement and the reasonable value of the hospital's services. Hospital liens are specifically exempted by the legislature from balance billing limitations, and therefore, even though plaintiffs' HMO had paid the negotiated cost of plaintiffs' care, the hospital retains the right to assert a lien against the recovery from the third party tortfeasor. Id. at 251 An HLA lien is not a charge against the patient. Id 250. Rather, it is a

23

24

25

26

27

28

**MHA**
Donough Holland & Allen PC
Attorneys at Law

1  "statutory medical lien in favor of a hospital against third persons liable for the patient's injuries." Mercy Hospital & Medical Center v Farmers
2  Ins. Group of Companies (1997) 15 Cal. 4th 213, 217. Therefore, no cause of action is stated based on the lawful act of asserting the hospital lien
3  under Civil Code 3045.1. Plaintiff's reliance on Nishihama v City and County of San Francisco (2001) 93 Cal.App.4th 298, 307 is misplaced, as
4  that court's statements regarding limitation of the hospital lien were dicta.
5

6  No cause of action is stated arising out of NCO's attempt to assert a lien on up to 50% of plaintiff's recovery from the tortfeasor, before
7  subtracting attorneys fees. Attorneys fees are not "prior liens" under Civil Code 3045.4. Attorneys fees are not subtracted first from the gross
8  recovery because this would result in an apportionment of attorneys fees between the plaintiff and the hospital. The hospital is not liable for any
9  attorneys fees because its lien is statutory. San Francisco v Sweet (1995) 12 Cal.4th 105, 122 fn. 11; Day v Alta Bates Medical Center (2002) 98
   Cal.App.4th 243, 251-253; Lovett v Carrasco (1998) 63 Cal.App.4th 48.
10

11  The claims of June Tweedy are not premature given that NCO has asserted a lien against her recovery in the underlying action.

12  Defendant's Request for Judicial Notice is granted.

13  Plaintiffs may file and serve a 2nd Amended Complaint on or before October 10, 2003. Response to be filed and served within 15 days of
14  service of the amended complaint, 20 days if served by mail. Although not required by rule or statute, if the response is a demurrer defendant
15  shall attach a copy of the amended complaint to the moving papers.

16      Request for hearing and oral argument was made by counsel for plaintiffs,

17  pursuant to Sacramento County Local Rules, and the matter was heard on September 22,

18  2003, in Department 53 of the above-entitled court, before the Honorable Loren E.

19  McMaster, Judge. Marcia L. Augsburger, of McDonough, Holland & Allen, appeared on

20  behalf of defendant NCO; Stephen J. Dougan appeared on behalf of plaintiffs June and

21  Arnold Tweedy.

22      Having considered the moving, supporting, opposing, and responding papers,

23  and having considered the oral arguments presented at the hearing, the Court affirmed

24  its tentative ruling.

25      IT IS SO ORDERED.

26  DATED:                                    LOREN E. McMASTER
                                              _____
27                                            Hon. Loren E. McMaster
                                              Judge of the Superior Court

28

Order After Hearing on Demurrer to First Amended Complaint

1   Approved as to form:

2

3

4   Stephen J. Dougan
    Attorney for Plaintiffs
5   Arnold and June Tweedy

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Order After Hearing on Demurrer to First Amended Complaint

1    CASE TITLE:          Melinda Campbell, et al. v. Sutter Health, et al.

2    COURT/CASE NO:       Alameda County Superior Court No. RG05221764

3 ·                          **PROOF OF SERVICE**

4       I am employed in the County of Sacramento; my business address is 555 Capitol Mall, 9th Floor, Sacramento, California 95814. I am over the age of eighteen years and not a party to the

5   foregoing action.

6       I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so

7   collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

8

      On January 13, 2006, I served the within:

9

10     (1)    Sutter Health's Request for Judicial Notice in Support of Demurrer to Amended Complaint; Notice of Hearing on Demurrer by Defendant Sutter Health to

11          Plaintiffs' First Amended Class Action Complaint for Malicious Prosecution, Abuse of Process, Unfair Business Practices, and Declaratory Relief; Demurrer

12          by Defendant Sutter Health to Plaintiffs' First Amended Complaint for Malicious Prosecution, Abuse of Process, Unfair Business Practices, and

13          Declaratory Relief; Sutter Health's Memorandum of Points and Authorities in Support of Demurrer to the First Amended Class Action Complaint for

14          Malicious Prosecution, Abuse of Process, Unfair Business Practices, and Declaratory Relief; Sutter Health's Submission of Non-California Authority in

15          Support of Demurrer to Amended Complaint

16

17    ☐    **by mail** on the following party(ies) in said action, in accordance with Code of Civil Procedure § 1013a(3), by placing a true copy thereof enclosed in a sealed envelope in a

18          designated area for outgoing mail, addressed as set forth below. At McDonough Holland & Allen PC, mail placed in that designated area is given the correct amount of postage and is deposited that same day, in the ordinary course of business, in a United

19          States mailbox in the City of Sacramento, California.

20    ☐    **by personally delivering** a true copy thereof, in accordance with Code of Civil Procedure § 1011, to the person(s) and at the address(es) set forth below.

21

22    ☒    **by overnight delivery** on the following party(ies) in said action, in accordance with Code of Civil Procedure § 1013(c), by placing a true copy thereof enclosed in a sealed

23          envelope, with delivery fees paid or provided for, and delivering that envelope to an overnight express service carrier as defined in Code of Civil Procedure § 1013(c)..

24

25    ☐    **by facsimile transmission**, in accordance with Code of Civil Procedure § 1013(e), to the following party(ies) at the facsimile number(s) indicated:

26

27

28

**MHA**
McDonough Holland & Allen PC
Attorneys at Law

Proof of Service                                        889827v1 09504/0502

1

2    Todd M. Schneider                                    Counsel for Plaintiffs
     Joshua Konecky
3    W.H. "Hank" Wilson
     SCHNEIDER & WALLACE
4    180 Montgomery Street, Suite 2000
     San Francisco, CA 94104
5    Telephone: (415) 421-7100
     Facsimile:  (415) 421-7105
6
7    *Courtesy Copy to:*                                  Co-counsel for Plaintiffs

8    Linda Ross
     LAW OFFICE OF LINDA ROSS
9    2204 Union Street
     San Francisco, CA 94123
10   Telephone: (415) 563-2400
     Facsimile:  (415) 931-9981
11
     Scott Kalkin
12   ROBOOSTOFF & KALKIN, PLC
13   369 Pine Street, Suite 610
     San Francisco, CA 94104
14   Telephone: (415) 732-0282
     Facsimile:  (415) 732-0287
15

16   I declare under penalty of perjury under the laws of the State of California that the foregoing is
     true and correct and that this document was executed on January 13, 2006.
17
18                                                _____
                                                          RENEE REEVE
19

20

21

22

23

24

25

26

27

28

MHA
Denough Holland & Allen PC
Attorneys at Law

Proof of Service                                                    889827v1 09504/0502