**34**

1 | McDONOUGH HOLLAND & ALLEN PC
Attorneys at Law
2 | RICHARD E. BRANDT (44893)
MARCIA L. AUGSBURGER (145686)
3 | JOHN C.J. BARNES (216694)
555 Capitol Mall, 9th Floor
4 | Sacramento, CA 95814
Phone: 916.444.3900
5 | Fax:    916.444.8989

6 | Attorneys for Defendant Sutter Health

ALAMEDA COUNTY
FILED.
2006 JAN 13 PH 4: 31
CLERK OF THE SUPERIOR COURT
BY_____
DEPUTY

7

8 | SUPERIOR COURT OF CALIFORNIA

9 | COUNTY OF ALAMEDA

10 | MELINDA CAMPBELL, on her own behalf, and on behalf of all others similarly situated,

11 | Plaintiffs,

12 | v.

13 | SUTTER HEALTH and DOES 1 through 24, inclusive,

14 |

15 | Defendants.

16 |

17

Case No. RG05221764

**SUTTER HEALTH'S SUBMISSION OF NON-CALIFORNIA AUTHORITY IN SUPPORT OF DEMURRER TO AMENDED COMPLAINT**

[Cal. Rules of Court 313(h)]

Date:  February 9, 2006
Time:  1:30 p.m.
Place:  Department 22
Judge: Honorable Ronald M. Sabraw

18 | Pursuant to California Rules of Court 313(h), Sutter Health hereby submits copies of the

19 | following non-California authorities for the Court's consideration:

20 | **Exhibit A:** *Andrews v. Samaritan Health System*, 201 Ariz. 379 (2001).

21 | **Exhibit B:** *Blankenbaker v. Jonovich*, 205 Ariz. 383 (2003).

22 | Respectfully submitted,

23 | DATED: January 13, 2006

24 | McDONOUGH HOLLAND & ALLEN PC
Attorneys at Law

25

26 | By: _____

27 | JOHN C.J. BARNES

28 | Attorneys for Defendant Sutter Health

1

# Exhibit A

## Arizona Case Law

ANDREWS v. SAMARITAN HEALTH SYSTEM, *201 Ariz. 379* (App. 2001)

*36 P.3d 57, 362 Ariz. Adv. Rep. 3*

LINDA ANDREWS; SHIRLEY S. BARRELLS; LINDA A. KRYSTEK;
KRISTINA J. MARKLAND; NANCY MCCARTNEY-MERGELE (nka NANCY
MCCARTNEY-BRATCHER); WILLIAM O. PARKS, III; CHRISTOPHER PORTER;
MICHAEL ROBERT) SMITH; and CHARLES JOSEPH WEIRICK, on behalf of
themselves and other natural persons similarly situated,
Plaintiffs-Appellants, v. SAMARITAN HEALTH SYSTEM, an Arizona
corporation; BANNER HEALTH SYSTEMS, a North Dakota corporation,

Defendants-Appellees.

1 CA-CV 00-0386.

Court of Appeals of Arizona, Division One,

Department E.

Filed December 11, 2001.

Appeal from the Superior Court of Maricopa County, Cause No. CV
99-011634, The Honorable MICHAEL A. YARNELL, Judge.

AFFIRMED
Page 380

[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN
OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.]
Page 381

Hagen, Bohm, Boyle & Jones, P.C. Phoenix by Tom J. Hagen, Attorneys
for Plaintiffs-Appellants.

Gammage & Burnham, P.L.C., Phoenix, by Richard B. Burnham and
Cameron C. Artigue, Attorneys for Defendant-Appellee.

OPINION

THOMPSON, Judge

¶ 1 Plaintiffs in this class action appeal from the entry of summary
judgment in favor of Samaritan Health System and Banner Health Systems
(the hospitals). The trial court found that the hospitals may validly
enforce medical liens pursuant to Arizona Revised Statutes (A.R.S.) §
33-931 (2000) against plaintiffs for the balance of the hospitals'
customary charges not paid by plaintiffs' health insurers (insurers)
pursuant to the provider contracts with the hospitals. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Plaintiffs[fn1] were all injured by the negligence of
third-parties and as a result became patients at the hospitals. The
services the hospitals provided plaintiffs were covered by plaintiffs'
various health insurance plans. Six of the nine plaintiffs were covered
under a type of health care service organization (HCSO); the other three
were covered under a preferred provider organization (PPO) or another
managed care organization (MCO).

¶ 3 Pursuant to the provider contracts between the hospitals and the
insurers, the hospitals received payment from the insurers in an amount
less than the full charges for their services. Each provider contract,
except Markland's, contained language reserving to the hospitals the
right to recourse against third-party payors and most specifically
referenced the medical lien statute. All of the contracts had some type
of language indicating that the insurers' discounted payments were
"payment in full" for treatment.[fn2]

¶ 4 Eventually all of the plaintiffs filed personal injury lawsuits
against the third-party tortfeasors who caused their injuries. In their
various personal injury suits, plaintiffs all quantified their damages by
including the hospitals' full charges for medical services, rather than
the discounted amount paid by their insurers.

¶ 5 The hospitals filed medical liens, also known as "recapture
liens," against all of the plaintiffs except Parks to recover the unpaid
portion of plaintiffs' treatment. It is undisputed that the medical liens
were all untimely recorded under A.R.S. § 33-932, the lien perfection
statute.

¶ 6 Plaintiffs brought this declaratory judgment action to prevent the
hospitals
Page 382
from enforcing medical liens against judgments plaintiffs obtained in
tort actions against the third-parties or the third-parties' liability
insurers. See A.R.S. § 33-931. The parties filed cross motions for
summary judgment.

¶ 7 The trial court granted summary judgment in favor of the
hospitals, finding that the medical liens were valid, that the hospitals
could assert liens for amounts under $250, and that voluntary payments
made by plaintiffs were not subject to reimbursement for conversion. The
trial court also found that the untimely recording of the medical liens
did not affect their validity. Plaintiffs timely appealed. This court has
jurisdiction pursuant to A.R.S. § 12-2101(B) (1994).

ISSUES

1. If the plaintiffs' insurers paid a contracted
discount rate as "payment in full" for treatment, can
the hospital still assert recapture liens pursuant to
A.R.S. § 33-931 against plaintiffs' tort recoveries
for the unpaid customary cost of services?

2. May the hospitals assert recapture liens against
enrollees of Health Care Services Organizations given the
protections of A.R.S. § 20-1072?

3. Is the reservation of a recapture lien in the provider contracts an unenforceable assignment of plaintiffs' personal injury claims?

4. May the hospitals assert recapture liens in amounts less than $250?

5. Are the hospitals' recapture liens invalid because they were not recorded timely under the medical lien perfection statute, A.R.S. § 33-932?

6. Are voluntary payments made by Smith and Weirick subject to reimbursement as funds converted by the hospitals?

## STANDARD OF REVIEW

¶ 8 "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Orme Sch. v. Reeves, 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990). We review both the propriety of summary judgment and issues of statutory interpretation de novo. Arizona Health Care Cost Containment Sys. v. Bentley, 187 Ariz. 229, 231, 928 P.2d 653, 655 (App. 1996) (citation omitted).

## DISCUSSION

### I. THE VALIDITY OF THE HOSPITALS' MEDICAL LIENS

¶ 9 Plaintiffs argue that, under the hospitals' contracts with their insurers, their care was paid in full leaving no debt upon which the hospitals could base medical liens. The hospitals respond that the balance of the customary charges, after payment by the insurers, constitutes the "debt" supporting the medical liens. We agree with the hospitals.[fn3]

¶ 10 In Arizona, a lien "is a charge or encumbrance upon property to secure the payment or performance of a debt, duty, or other obligation. . . . In the absence of an obligation to be secured there can be no lien." Matlow v. Matlow, 89 Ariz. 293, 3 Our ruling presumes a factual discrepancy exists between the hospitals' full charges, customary charges and the discounted amounts paid by various insurers. The parties did not raise this issue on appeal and we will not resolve this evidentiary issue here. 297-98, 361 P.2d 648, 651 (1961) (citations omitted). Section 33-931(A) provides Every [health care provider] is entitled to a lien for the customary charges for care and treatment or transportation of an injured person, on all claims of liability or indemnity except health insurance for damages accruing to the person to whom the services are rendered, or to that person's legal representative, on account of the injuries that gave rise to the claims and that required the services.

¶ 11 These facts present an issue of first impression in Arizona. Plaintiffs cite several cases from other jurisdictions to support a claim that when a health care provider accepts an insurer's payment as "payment in full," the debt is extinguished and there is no basis for asserting a medical lien. See Satsky
Page 383
v. United States, 993 F. Supp. 1027, 1029 (S.D.Tex. 1998); N.C. ex rel.

L.C. v. A.W. ex rel. R.W., 713 N.E.2d 775, 776 (Ill.App. 1999); Dorr v. Sacred Heart Hosp., 597 N.W.2d 462, 468, 471-72 (Wis.App. 1999); Wright v. First Nat'l Bank in Albuquerque, 941 P.2d 498, 500-02 (N.M. 1997). While each of the above cases found that no debt existed to support a lien because the provider accepted the insurer's payment as "payment in full," those cases are distinguishable in two ways.

¶ 12 First, the contracts in each of the above cases failed to reserve the providers' right to recapture the difference between the contract payments and the customary charges. See id. Conversely, the instant contracts each contained language stating that the hospitals accepted the plaintiffs' insurer's payment as "payment in full," and all but Markland's expressly reserved the right to recapture the difference between any payments made by the insurer and the providers' customary charges. Unlike the contracts in the cases from other jurisdictions, this reservation clearly qualifies the "payment in full" language and sets forth the hospitals' expectation to recover their customary charges when possible.

¶ 13 Second, and more importantly, by virtue of A.R.S. § 33-931, medical liens automatically arise following treatment. The statute states that a provider "is entitled to a lien for the customary charges for care and treatment . . . of an injured person" without specifying further action by the hospitals. A.R.S. § 33-931(A). This conclusion is evidenced in the perfection statute, which states, "[i]n order to perfect a lien granted by A.R.S. § 33-931. . . ." This holding is in accord with those in other jurisdictions with medical lien statutes similar to Arizona's. See Macon-Bibb County Hosp. Auth. v. Nat'l Union Fire Ins. Co., 793 F. Supp. 321, 323 (M.D.Ga. 1992) (the lien exists automatically after treatment); Guin v. Carraway Methodist Med. Ctr., 583 So.2d 1317, 1319 (Ala. 1991); see also Pub. Health Trust of Dade County v. Carroll, 509 So.2d 1232, 1234 (App. Fl. 1987) ("lien attaches at the moment an injured person is admitted").

¶ 14 We hold that a medical lien is automatically granted by A.R.S. § 33-931 upon the care and treatment of a person injured by the negligence of a third party. Of course, this is non-recourse debt, rather than personal debt. A hospital may enforce statutory liens even where there is no personal recourse available directly against a patient. LaBombard v. Samaritan Health Sys., 195 Ariz. 543, 991 P.2d 246 (App. 1998) (liens against tort recovery of AHCCCS members enforceable even when there is "no right to recover directly" from patient). The fact that the hospitals have no personal recourse against plaintiffs, by virtue of their insurance coverage, does not alter the fact that a debt remains between the hospitals' customary charges and the amounts paid by plaintiffs' insurers. See Provident Nat'l Assurance Co. v. Sbrocca, 180 Ariz. 464, 467, 885 P.2d 152, 155 (App. 1994).

¶ 15 We find that not only do all but one of the provider contracts create an obligation for payment of the customary charges, but that our legislature has provided the hospitals with a means to secure that obligation through an automatic lien. See A.R.S. § 33-931. Providers may collect this "debt" pursuant to the medical lien statute. Id. This is true even though the hospitals here were compensated according to the bargained-for terms in the provider contracts. Thus, the hospitals may assert liens against all plaintiffs' tort recoveries including Markland's.

¶ 16 This result is supported by the cases that involve coordination of benefits. For example, in Nahom v. Blue Cross & Blue Shield,

180 Ariz. 548, 554-55, 885 P.2d 1113, 1119-1120 (App. 1994), this court
held that when a patient had two insurance policies and the first had an
unconditional "payment in full" clause, the hospital was still entitled
to collect from the second policy under the coordination of benefits
language. There, like here, a "payment in full" clause did not totally
extinguish the debt. See id.

¶ 17 This result is also in alignment with the statutes applicable to
Arizona Health Care Cost Containment System (AHCCCS) and Medicare
patients. Under Arizona law, hospitals may not impose personal liability
on AHCCCS patients; however, hospitals may
Page 384
assert medical liens against tort proceeds for the balance of the charges
not paid by AHCCCS. See A.R.S. §§ 36-2903.01(J)(4), 36-2903.01(N) (Supp.
2000); A.R.S. § 11-291(F) (allowing county providers to recover from
indigent tort recoveries); see also 42 U.S.C. § 1395w-22(a)(4),
1395mm(e)(4) (Supp. 2000) (hospitals treating Medicare patients may
enforce liens as provided under their contracts); 42 C.F.R. § 417.528(b);
422.108(d) (2000) (Medicare HMOs and Medicare +Choice organizations may
charge or authorize a provider to charge any other applicable insurance,
including liability insurance, for services or charge the enrollee to the
extent he or she was paid for covered medical expenses). Although these
statutes preclude a hospital from attempting to collect directly from an
AHCCCS member or eligible person, see A.R.S. § 36-2903.01(N), the Arizona
legislature authorized providers to "collect any unpaid portion of its
bill from other third party payors or in situations covered by [A.R.S. §
33-931]." A.R.S. § 36-2903.01(J)(4).

¶ 18 Accordingly, the hospitals were entitled to assert medical liens
to recover the unpaid balance of their customary charges against
plaintiffs' tort recoveries. We affirm.

II. SECTION 20-1072 DOES NOT SHIELD HCSO ENROLLEES

FROM MEDICAL LIENS

¶ 19 Six of the nine plaintiffs also argue that, as enrollees of
HCSOs, they are entitled to protection from medical liens under A.R.S. §
20-1072. Section 20-1072 protects HCSO enrollees from liability for any
amount the insurer owes the provider or hospital for covered services.
See A.R.S. § 20-1072(A) — (C). Another section provides that

[n]o provider or hospital may charge an enrollee of a
[HCSO] more than the amount the provider or hospital
contracted to charge the enrollee pursuant to the
provider's contract or hospital's contract with the
[HCSO].

A.R.S. § 20-1072(F). Finally, under A.R.S. § 20-1072(D), health care
providers are prohibited from maintaining a legal action against or
otherwise collecting from enrollees except for copayments, the cost of
uncovered services, and the cost of services rendered after termination
of the provider contract. A.R.S. § 20-1072(D). No mention is made of
medical liens. Plaintiffs assert that these recapture liens violate
A.R.S. § 20-1072 as to HCSO enrollees. We disagree.

¶ 20 The medical lien statute, A.R.S. § 33-931 is written broadly
enough to allow the hospitals to file medical liens against insured
patients as well as non-insured patients and against HCSO enrollees as

well as AHCCCS enrollees. Plaintiffs ask us to impose an exclusion on the medical lien statute for HCSO enrollees that the legislature did not include. "Whenever possible, we will interpret two apparently conflicting statutes in a way that harmonizes them and gives rational meaning to both." Calik v. Superior Court, 194 Ariz. 188, 191, 979 P.2d 1, 4 (App. 1998) (citation omitted), vacated on other grounds, 195 Ariz. 496, 990 P.2d 1055 (1999).

¶ 21 Just as a medical lien is not a personal debt, lien enforcement is not the same as billing or collecting from the enrollee. The hospitals are not billing or bringing legal action against the HCSO enrollees, as prohibited by A.R.S. § 20-1072, by asserting recapture liens; they are asserting a statutory lien against the enrollee's tort claim. These are two different actions.

¶ 22 Under this holding, medical liens are allowed under A.R.S. § 33-931 and HCSO enrollees are still protected from personal liability for covered services owed by the insurer. Our interpretation gives full effect to both statutes without harming either. To hold otherwise would result in the nonsensical result that HCSO enrollees are subject to a different application of the medical lien statute than are AHCCCS members or PPO/MCO members.

¶ 23 We hold that A.R.S. § 20-1072 does not preclude the hospitals' medical liens against HCSO enrollees.

### III. ASSIGNMENT OF PERSONAL INJURY CLAIMS

¶ 24 Plaintiffs next argue that any reservation of a medical lien in the provider
Page 385
contracts is an unenforceable assignment of plaintiffs' personal injury claims. See Lingel v. Olbin, 198 Ariz. 249, 252, ¶ 6, 8 P.3d 1163, 1166 (App. 2000) (assignment of cause of action for personal injuries is void and unenforceable). We disagree.

¶ 25 The legislature, in limited circumstances, may abrogate the rule against assigning tort claims. See Talley v. Indus. Comm'n, 137 Ariz. 343, 346, 670 P.2d 741, 744 (App. 1983). The medical lien statute represents the legislature's abrogation of that rule. The abrogation effected by the medical lien statute serves to ease the financial burden on providers and to encourage hospitals to render emergency care to patients without regard to ability to pay. See LaBombard, 195 Ariz. at 548, ¶ 18, 991 P.2d at 251; Gartin v. St. Joseph's Hosp. & Med. Ctr., 156 Ariz. 32, 35, 749 P.2d 941, 944 (App. 1998). Here, the plaintiffs' insurers did not assign any rights to the hospitals. Rather, the right to the medical liens springs from A.R.S. § 33-931. We see no reason to invalidate the medical lien statute as written by the legislature given its obvious value and purpose.

¶ 26 Accordingly, we hold that the contracts setting forth the providers' right to assert a statutory medical lien are not an illegal assignment of plaintiffs' personal injury claims.

### IV. MEDICAL LIENS UNDER $250

¶ 27 Plaintiffs claim that, under A.R.S. § 33-931(C), the hospitals may not assert their liens for less than $250 against Park and Weirick. Section 33-931(C) provides, in part, that

medical liens are applicable to all customary charges by
hospitals or ambulances of political subdivisions but are
restricted to customary charges in excess of [$250] by
all other providers and privately owned ambulance
companies. . . .

The hospitals argue that the statute entitles hospitals to liens for all
customary charges, but limits other providers and privately owned
ambulance companies to liens in excess of $250. We agree.

¶ 28 In LaBombard, this court stated that "the phrase `all customary
charges,' in subsection (B) indicates that even nonpublic hospitals are
entitled to assert a lien for `all customary charges . . . in excess of
[$250].'" 195 Ariz. at 548, ¶ 19, 991 P.2d at 251. However, in LaBombard
the amount of the medical lien was not at issue and it was well in excess
of $250. See id. We are not obligated to follow dicta and, thus, proceed
to an analysis of whether liens can be asserted by privately owned
hospitals for amounts under $250. See Arizona Dep't of Econ. Sec. v.
Superior Court, 181 Ariz. 469, 472, 891 P.2d 936, 939 (App. 1994).

¶ 29 We find that the meaning of A.R.S. § 33-931(C) is not readily
clear. When statutory language is subject to different interpretations,
we will adopt an interpretation "that is most harmonious with statutory
scheme and legislative purpose." Saenz v. State Fund Workers' Comp.
Ins., 189 Ariz. 471, 474, 943 P.2d 831, 834 (App. 1997) (citation
omitted). We consider "the statute's context; its language, subject
matter and historical background, its effects and consequences; and its
spirit and purpose." City of Tucson v. Pima County, 190 Ariz. 385, 386,
949 P.2d 38, 39 (App. 1997) (citation omitted). The purpose of the
medical lien statute is to "lessen the burden on hospitals and other
medical providers imposed by non-paying accident cases." LaBombard, 195
Ariz. at 548, ¶ 18, 991 P.2d at 251 (quoting In re Guardianship of
Bloomquist, 523 N.W.2d 352, 356 (Neb. 1994)). Providing hospitals a means
of recovery induces hospitals to render emergency care to patients
without regard to ability to pay. See Gartin, 156 Ariz. at 35, 749 P.2d
at 944 (citation omitted).

¶ 30 The statutory language grants liens to "hospitals or ambulances
of political subdivisions" without regard to amount. A.R.S. § 33-931(C).
Plaintiffs contend that the phrase "of political subdivisions" modifies
both hospitals and ambulances. However, the legislature's subsequent use
of the term "privately owned ambulance companies" indicates an intent to
distinguish only the types of ambulance companies. This is supported by
the "last antecedent rule" as applied in Arizona; where there is a
qualifying phrase we will apply the phrase only "to the word or
Page 386
phrase immediately preceding as long as there is no contrary intent
indicated." See Phoenix Control Sys., Inc. v. Ins. Co. of N. Am.,
165 Ariz. 31, 34, 796 P.2d 463, 466 (1990). We find no contrary intent
and apply the last antecedent rule to allow the hospitals' liens for all
customary charges and to limit other providers and privately owned
ambulance companies to liens in excess of $250.

¶ 31 Both the language and the legislative history of A.R.S. § 33-931
suggest a legislative intent to allow hospitals to assert medical liens
regardless of the amount. In fact, the medical lien statute originally
gave liens only to hospitals and without limitation on the amount. See
1988 Ariz. Sess. Laws, ch. 280 § 2. When the legislature later amended

the statute, it expanded lien rights to all private and governmental health care providers and private and governmental ambulance companies. Id. There is no indication that the legislature intended to limit liens by hospitals and, in fact, perfected hospital liens are given priority for payment over all other medical liens. See A.R.S. § 33-931(C).

¶ 32 For the above stated reasons, we decline to adopt an interpretation that reduces the lien rights the hospitals have always enjoyed under the lien statute and we hold that private hospitals are entitled to assert medical liens for "all customary charges" without regard to amount.

## V. UNTIMELY RECORDING OF MEDICAL LIENS

¶ 33 Plaintiffs contend that the hospitals' medical liens were not perfected in a timely manner and are unenforceable and invalid. The medical lien is automatically granted by A.R.S. § 33-931 upon the care and treatment of a person injured by the negligence of a third party. To perfect a medical lien, a provider must file the lien within thirty days of the patient's discharge. A.R.S. § 33-932. The filing of a lien is constructive notice of the claim. Id. The purpose of A.R.S. § 33-932 is to give notice of medical lien rights and to determine priority among medical liens.

¶ 34 "Although Arizona lien statutes are remedial and are to be liberally construed, their provisions must be strictly followed." Nationwide Mut. Ins. Co. v. Arizona Health Care Cost Containment Sys., 166 Ariz. 514, 517, 803 P.2d 925, 928 (App. 1990). There is no Arizona case construing the medical lien recording statute. Plaintiffs urge us to adopt a rule of strict compliance as to the thirty-day deadline of the lien perfection statute and, to that end, cite cases requiring strict compliance with recording requirements to enforce medical liens. See, e.g., In re Woodward, 234 B.R. 519, 523-24 (N.D. Ok. 1999); In re Harris, 50 B.R. 157, 160-61 (E.D.Wis. 1985); Duke Univ. Med. Ctr. v. Hardy, 367 S.E.2d 6, 7 (N.C. App. 1988).

¶ 35 We decline to require strict compliance with A.R.S. § 33-932, the medical lien perfection statute, when the purpose of the statute is adequately served under the facts at issue. We agree with the proposition that [s]tatutes giving hospitals a lien against a patient's recovery from a tortfeasor causing the patient's injuries for which the hospital has rendered its services contain various requirements with respect to the time for filing liens and various notices of lien . . . such requirements should not be technically applied so as to defeat just hospital claims, and that such statutes are to be liberally construed in this respect. Public Health Trust, 509 So.2d at 1233 (quoting 25 A.L.R.3rd 874, Section 5(b)). This court has previously found that, in some situations, substantial compliance with a lien statute will suffice. See Lewis v. Midway Lumber, Inc., 114 Ariz. 426, 431 P.2d 750, 755 (App. 1977) (addressing a mechanics lien). Lewis held that where the defect in recording "is material to the perfection of a lien, it is beyond the remedial scope of equity . . . to protect the lien claimant against the untoward consequences of what may be and probably was his own neglect." 114 Ariz. at 432, 561 P.2d at 756. Following Lewis, our next consideration is whether the untimely recording is material to the perfection of these liens.

¶ 36 If we were determining priority among multiple lienholders, timeliness would, of course, be material. Here, there are no

Page 387

other potential creditors. The money at issue is either going to the
plaintiffs or to the hospitals. The hospitals assert that timeliness is
not material here because plaintiffs had actual notice of the full
charges of their treatments, as was evidenced by the personal injury
lawsuits filed seeking recovery of those amounts.

¶ 37 We agree that if a patient has actual notice of the full charges
of treatment, he or she is not prejudiced by the untimely filing of the
lien. One who has "actual notice is not prejudiced by and may not
complain of the failure to receive statutory notice." In the Matter of
the Estate of Ivester, 168 Ariz. 323, 327, 812 P.2d 1141, 1145 (App.
1991). Thus, as to the patient with actual notice of the hospital's
lien, the purpose of the recording statute is not frustrated by the
untimely recording of the medical lien. See Macon-Bibb, 793 F. Supp. at
323 (where medical lien was untimely pursuant to the perfection statute,
hospital could assert lien where patient had actual notice before
settlement); Guin, 583 So.2d at 1319 (citations omitted) (declining to
defeat hospital's lien under perfection statute where there were no
competing creditors to be prejudiced by the late filing because the
perfection statute is for the benefit of third-parties, not the patient);
Pub. Health Trust, 509 So.2d at 1234. It is undisputed that plaintiffs
here had actual notice of the full charges.

¶ 38 Arizona's medical lien statute requires timely filing only to
"perfect" the lien. A.R.S. § 33-932. The perfection, however, does not
alter the existence of the lien which arises under a different statute.
See A.R.S. § 33-931.

¶ 39 We will not apply the terms of the statute so strictly as to
defeat the hospitals' liens where plaintiffs had actual notice of the
liens and, thus, were not prejudiced by an untimely filing. In such cases
the purpose of the recording statute is served. We affirm the grant of
summary judgment in favor of the hospitals on this issue.

### VI. RESTITUTION AND VOLUNTARY PAYMENTS

¶ 40 The hospitals argue that Weirick's and Smith's claims for
conversion and unjust enrichment are barred by the voluntary payment
rule. The trial court did not address this issue because it found the
liens were enforceable and, therefore, found there was no conversion or
unjust enrichment. Because we, likewise, hold that the liens were valid
and enforceable we need not address this issue.

### VII. ATTORNEYS' FEES ON APPEAL

¶ 41 Plaintiffs request attorneys' fees on appeal pursuant to A.R.S.
§§ 12-341.01, 33-934, and 33-936. Plaintiffs' claims against the
hospitals are based on statutory medical liens and do not arise out of
contract. Therefore, plaintiffs are not entitled to attorneys' fees under
A.R.S. § 12-341.01(A). Section 33-934 authorizes attorneys' fees only for
lien claimants who successfully enforce medical liens; A.R.S. § 33-936
does not authorize an award of attorneys' fees at all. Accordingly,
plaintiffs have no basis for an award of fees and we deny the request. The
hospitals did not request fees.

### CONCLUSION

¶ 42 We affirm the judgment in favor of the hospitals. We deny

plaintiffs' request for attorneys' fees on appeal.

[fn1] The named plaintiffs are Linda Andrews, Shirley S. Barrells, Linda A. Krystek, Kristina J. Markland, Nancy McCartney-Mergele (nka Nancy McCartney-Bratcher), William O. Parks, III, Christopher Porter, Michael Robert Smith, and Charles Joseph Weirick. As necessary, we will use the last name to refer to an individual plaintiff.

[fn2] For convenience we will use the term "payment in full" in our analysis, although the various contracts used different terminology to express that the insurer is responsible only for the contracted discount amount. We address only the plaintiffs' strongest case scenario, the "payment in full" language, in our analysis.

[fn3] Our ruling presumes a factual discrepancy exists between the hospitals' full charges, customary charges and the discounted amounts paid by various insurers. The parties did not raise this issue on appeal and we will not resolve this evidentiary issue here.

CONCURRING:

_____

ANN A. SCOTT TIMMER, Presiding Judge

_____

EDWARD C. VOSS, Judge

Copyright © 2006 Loislaw.com, Inc. All Rights Reserved

Exhibit B

## Arizona Case Law

BLANKENBAKER v. JONOVICH, *205 Ariz. 383* (2003)

*415 Ariz. Adv. Rep. 29*, 71 P.3d 910

THOMAS E. BLANKENBAKER, D.C., dba VAX-D MEDICAL CENTERS, an

Arizona sole proprietorship, Plaintiff-Counterdefendant, Appellant,

v. TOMMY JONOVICH, an individual, Defendant-Counterclaimant, Appellee.

Arizona Supreme Court No. CV-02-0340-PR.

Court of Appeals Division One No. 1 CA-CV 01-0379.

Maricopa County Superior Court No. CV 01-090180.

Supreme Court of Arizona.

Filed July 2, 2003

Appeal from the Superior Court of Maricopa County, The Honorable Robert D. Myers, Judge, AFFIRMED IN PART, REVERSED IN PART, REMANDED,

Opinion of the Court of Appeals, Division One, 203 Ariz. 226, 52 P.2d 795, VACATED.

Sanders & Parks, P.C., Phoenix, By Rick N. Bryson, Brett M. Hager, Attorneys for Defendant-Counterclaimant, Appellee,

Thomas E. Blankenbaker, D.C., Mesa, In propria persona, Plaintiff-Counterdefendant, Appellant

Law Offices of Raymond J. Slomski, P.C., Phoenix, By Amy G. Langerman, Attorneys for Amicus Curiae Arizona Trial Lawyers Association, Humphrey Law Firm, P.C., Tucson, By Andrew J. Peterson, Marshall Humphrey, III, Ryan S. Andrus, Attorneys for Amicus Curiae Arizona Association of Defense Counsel.

The Cavanagh Law Firm, Phoenix, By Joel DeCiancio, Christopher Robbins, Attorneys for Amicus Curiae State Farm Mutual Automobile Insurance Company.

OPINION

HURWITZ, Justice

¶ 1 We granted review to determine whether the failure to perfect a health care
Page 384
provider lien pursuant to Arizona Revised Statutes ("A.R.S.") section 33-932 (2000) bars an action to enforce the lien against a patient who has notice of the provider's claim. The court of appeals held that the failure to follow the statutory perfection procedures did not affect the enforceability of a health care provider lien against a patient,

but rather was relevant only to priority among multiple lienholders. We today hold that A.R.S. § 33-934 (2000) allows an action to enforce a health care provider lien only against those liable to an injured person, not against the injured person. We further hold that A.R.S. § 33-934 requires, as a prerequisite to such an enforcement action, that the lien be perfected in accordance with A.R.S. § 33-932.

I.

¶ 2 Petitioner Tommy Jonovich was injured in an automobile accident. In August 1998, he was referred to Thomas E. Blankenbaker, D.C., by a chiropractor who had previously treated him unsuccessfully for injuries arising out of the accident.

¶ 3 Shortly after being referred to Dr. Blankenbaker, Jonovich and the attorney representing him in the automobile accident claim signed a form provided by Dr. Blankenbaker entitled "Medical Records and Doctor's Lien" (hereafter referred to as the "Agreement").[fn1] In the Agreement, Jonovich directed his attorney to pay Dr. Blankenbaker "such sums as may be due and owing him for medical service rendered me . . . and to withhold such sums. from any settlement, judgment, or verdict as may be necessary and adequate to protect said doctor." The attorney in turn agreed to "withhold such sums form [sic] any settlement, judgment, or verdict as may be necessary to adequately protect" Dr. Blankenbaker. Jonovich also agreed to "give a lien on my case to said doctor against any and all proceeds of my settlement." The Agreement acknowledged that Jonovich was "directly and fully responsible to said doctor for all medical bills submitted by him for services rendered to me and that this agreement is made solely for said doctor's additional protection and in consideration of his awaiting payment" and that "such payment is not contingent on any settlement, judgment, or verdict by which I may eventually recover said fee."

¶ 4 After Jonovich settled his tort claim, Dr. Blankenbaker demanded payment of $4,161.82. Jonovich disputed both the debt and the claimed amount. Dr. Blankenbaker then filed a complaint in justice court. The one-sentence statement of the claim in the complaint was simply that Jonovich "has failed to pay his medical bills"; the complaint sought judgment in the claimed amount. Jonovich answered, denying any liability, and also filed a counterclaim seeking a declaratory judgment that the Agreement was unenforceable because Dr. Blankenbaker had not complied with the perfection provisions of the health care provider lien statutes, A.R.S. §§ 33-931 to -936 (2000). Lacking jurisdiction to issue declaratory judgments, the justice court transferred the action to superior court.
Page 385

¶ 5 Jonovich moved for partial summary judgment in the superior court as to the validity of the Agreement. In response, Dr. Blankenbaker contended that the Agreement was not intended to be a statutory health care provider lien, but rather only an "attorney guarantee contract," under which he could recover his medical fees in an action against his patient.

¶ 6 The superior court granted Jonovich's motion and entered judgment pursuant to Arizona Rule of Civil Procedure 54(b) declaring that the "Medical Records and Doctor's Lien dated September 1, 1998 and September 8, 1998 is invalid, of no effect, and unenforceable as a matter of law." The superior court also awarded attorneys' fees to Jonovich

under A.R.S. § 12-341.01(A) (Supp. 2001).[fn2] The court of appeals
reversed, holding that an unperfected health care provider lien is valid
against a patient who has actual notice of the lien's existence and
amount. *Blankenbaker v. Jonovich*, 203 Ariz. 226, 227 ¶ 1, 52 P.3d 795,
796 (App. 2002).

¶ 7 We granted the petition for review because the proper
interpretation of the health care provider lien statutes is a matter of
statewide importance.[fn3] We have jurisdiction pursuant to Article 6,
Section 5(3) of the Arizona Constitution, Arizona Rule of Civil Appellate
Procedure 23, and A.R.S. § 12-120.24 (2003). Because this case turns
on the interpretation of a statute, we review the court of appeals'
decision de novo. *See Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*,
177 Ariz. 526, 529, 869 P.2d 500, 503 (1994).

II.

¶ 8 Arizona's statutory scheme for health care provider liens
is set forth in A.R.S. §§ 33-931 through -936. The starting point
is A.R.S. § 33-931(A), which provides, in relevant part, that

[e]very individual . . . maintaining and operating a
health care institution or providing health care
services in this state . . . is entitled to a lien for
the customary charges for care and treatment or
transportation of an injured person, on all claims of
liability or indemnity . . . accruing to the person to
whom the services are rendered, or to that person's
legal representative, on account of the injuries that
gave rise to the claims and that required the
services.

¶ 9 Arizona Revised Statutes § 33-932 governs perfection of
the lien and requires that "[i]n order to perfect a lien granted by
§ 33-931," the health care provider must record a verified statement
with the county recorder in the county where the provider is located.
A.R.S. § 33-932. This statement must detail, inter alia, the dates of
services received, the amounts claimed for those services, and the names
and addresses of all persons or insurers claimed to be liable for the
injuries necessitating the health care. *Id*. The filing must occur within
thirty days after the patient has received the services, and must be
served on all persons and insurers named in the statement. If the
statement indicates that the patient's treatment will be continued,
"[b]ills incurred during the continued period are also subject to the
lien." *Id*.

¶ 10 It is uncontested in this case that Dr. Blankenbaker never
recorded the required statement in the office of the Maricopa County
Recorder. The issues before us are whether that failure to record affects
the existence of a statutory lien and, if such a lien exists, whether
Dr. Blankenbaker may enforce the lien against Jonovich.

III.

¶ 11 The court of appeals concluded that an unperfected health
care provider lien is valid and enforceable against a patient with
Page 386
actual notice of the lien. In so holding, the court relied
heavily on its prior opinion in *Andrews v. Samaritan Health*

*System*, <u>201 Ariz. 379</u>, <u>36 P.3d 57</u>
(App. 2001).

¶ 12 In Andrews, patients who had received treatment at various
hospitals brought a class action against the hospitals for a declaratory
judgment that the medical liens asserted against their claims were
invalid because the hospitals failed to perfect the liens in the
thirty-day period set forth in A.R.S. § <u>33-932</u>. The court of appeals
affirmed a summary judgment in favor of the hospitals. Its opinion relied
primarily on A.R.S. § <u>33-931</u>(A), which states that a health care
provider "is entitled to a lien," and § <u>33-932</u>, which refers to the
"lien granted by § <u>33-931</u>." *See Andrews*, 201 Ariz. at 383 ¶ 13,
36 P.3d at 61. This language led the court of appeals to conclude that
once the relevant care is provided, no further action by the health care
provider is necessary to create the lien. *Id.* at 383 ¶ 14, 36 P.3d at
61 ("We hold that a medical lien is automatically granted by A.R.S.
§ <u>33-931</u> upon the care and treatment of a person injured by the
negligence of a third party.").

¶ 13 Andrews further concluded that any delay by the hospitals in
recording the liens did not affect the hospitals' rights to enforce the
liens against the patients. Rather, *Andrews* held that the recording
provisions of A.R.S. § <u>33-932</u> were designed "to give notice of medical
lien rights and to determine priority among medical liens." *Andrews*, 201
Ariz. at 386 ¶ 33, 36 P.3d at 65. Because there were no competing
creditors in *Andrews*, and any recovery from the patients' personal injury
claims would therefore either go "to the plaintiffs or the hospitals,"
the court of appeals concluded that the patients, who had actual notice
of the hospitals' charges, were not prejudiced by the untimely
perfection. *Id.* at 386-87 ¶¶ 36-37, 36 P.3d at 65-66.

¶ 14 The holding in *Andrews* that a medical lien arises when
treatment is provided is consistent with the language of A.R.S. §§
<u>33-931</u> and -932 and with decisions in other jurisdictions interpreting
similar health care provider lien statutes. *See Andrews*, 201 Ariz. at 383
¶ 13, 36 P.3d at 61 (citing cases); see also A.R.S. § <u>33-934</u>
(referring to a lien "given by § <u>33-931</u>"). But even if §§ <u>33-931</u>
and -932 dictate when the lien arises, they do not address what is
required to enforce the lien. Nor do these two statutory provisions
determine *against whom* a lien may be enforced.

¶ 15 These issues are addressed, however, in another portion of
the health care provider lien statutes, A.R.S. § <u>33-934</u>. Section
<u>33-934</u>, which was not discussed either in *Andrews* or the opinion
below, provides, in relevant part, that

[i]f any amount has been or is to be collected by the
injured person or that person's legal representative
from or on account of the person, firm or corporation
liable for damages by reason of a judgment, settlement
or compromise, the claimant or assignee of the lien or
assignment may enforce the lien or assignment by
action *against the person, firm, or corporation liable
for damages*. This action shall be commenced and tried
in the *county in which the lien or assignment is
filed*, unless ordered by the court to be removed to
another county for cause.

(Emphasis added.)

¶ 16 The section heading to A.R.S. § 33-934 indicates that the
statute governs an "action to enforce [a health care provider] lien." *See*
*Florez v. Sargeant*, 185 Ariz. 521, 524, 917 P.2d 250, 253 (1996) (while
section headings are not law, they may be of use in interpreting
statute). Consistent with its title, § 33-934 sets forth the
requirements for an enforcement action. It provides expressly that such
an action must be brought "*in the county in which the lien or assignment
is filed.*" A.R.S. § 33-934 (emphasis added). Implicit in this
condition is a requirement that the lien be filed with a county recorder
pursuant to the perfection provisions of A.R.S. § 33-932. Any other
interpretation of § 33-934 would effectively read the relevant
language out of the statute. *See Champlin v. Sargeant in and for County
of Maricopa*, 192 Ariz. 371, 374 ¶ 16, 965 P.2d 763, 766 (1998)
(interpreting statutory language requires that the court give meaning "to
each word, phrase, clause, and sentence within a statute so that no part
will be superfluous,
Page 387
void, contradictory or insignificant"); *see also* 53 C.J.S.
Liens § 31 (1987) (when a statutory remedy is pursued, all of
the provisions of the statute must be strictly complied with as to the
form, time, and manner of the lien's enforcement) (citing cases).[fn4]

¶ 17 Moreover, § 33-934 expressly delineates the parties
against whom an enforcement action may be brought: "the claimant or
assignee of the lien or assignment may enforce the lien or assignment by
action *against the person, firm, or corporation liable for damages.*"
(Emphasis added.) The legislature thus did not make the lien enforceable
against an "injured person" (a term used elsewhere in § 33-934), but
rather only against those "liable for damages" on the patient's
underlying damages claim.[fn5] *See Hosp. Auth. of the City of Augusta v.
Boyd*, 101 S.E.2d 207, 210 (Ga.Ct.App. 1957) (holding that a medical lien
statute providing that the lienholder "may enforce said lien by an action
against the person, firm, or corporation liable for such damages," gave
no right of action to proceed against the patient to whom services were
rendered "but only against those liable to pay the patient damages").

¶ 18 In short, the statute governing enforcement of the lien
provides for an action only against those "liable for damages," and only
after the lien is "filed" in the county where suit is to be brought. In
the case at hand, Dr. Blankenbaker brought suit only against the "injured
person" — Jonovich — not against those liable for Jonovich's
claimed damages. And since Dr. Blankenbaker never filed the statement of
claim required by A.R.S. § 33-932, the suit was plainly not brought
in the county in which a lien was "filed."[fn6] It therefore follows that
the court of appeals erred in concluding that Dr. Blankenbaker could
enforce a health care provider lien against Jonovich in this action.[fn7]
When, as here, a statute "creates a right and also provides a complete
and valid remedy for the right created, the remedy thereby given is
exclusive." *See Valley Drive-In Theatre Corp. v. Superior Court*,
79 Ariz. 396, 400, 291 P.2d 213, 215 (1955); *see also Nationwide Mut.
Ins. Co. v. Arizona Health Care Cost Containment Sys.*, 166 Ariz. 514,
517, 803 P.2d 925, 928 (App. 1990) ("Although Arizona lien statutes are
remedial and are to be liberally construed, their provisions must be
strictly followed."); *HCZ Constr., Inc. v. First Franklin Fin. Corp.*,
199 Ariz. 361, 18 P.3d 155 (App. 2001) (mechanics' lien statutes, which
create a right not existing at common law, must be strictly complied
with).

IV.

¶ 19 While we base our decision today on the language of A.R.S. § 33-934, we also note that our holding is quite consistent with the underlying purpose of the health care provider lien statutes, which are designed to "lessen the burden on hospitals and other medical providers imposed by non-paying accident cases." *LaBombard v. Samaritan Health Servs.*, 195 Ariz. 543, 548 ¶ 18, 991 P.2d 246, 251 (App. 1998) (internal citation omitted). The statutes do this by affording providers a remedy not available in the

Page 388

common law — a lien against "all claims of liability or indemnity." The provider can always proceed, even in the absence of a lien, against the patient for the value of the services rendered. *See Johnson v. Health Care Auth. of the City of Huntsville*, 660 So.2d 1017, 1019 (Ala. Ct. Civ. App. 1995) (hospital may sue for recovery of medical fees in a direct contract action against patient in absence of valid statutory medical lien); *cf. Palmer v. Apperson*, 70 Ariz. 35, 40, 215 P.2d 1020, 1023 (1950) (materialman may pursue property owner in contract action notwithstanding lack of statutory lien). Thus, there was no pressing need for the legislature to provide for a statutory lien to be enforced against the patient.[fn8]

¶ 20 Moreover, as a practical matter, the remedy bestowed on a provider under our statutes makes unnecessary any extension of the lien to the patient. Under A.R.S. § 33-934, the lien extends to any amount that "has been or is to be collected by the injured person." Thus, as long as a lien has been appropriately recorded, the "person, firm or corporation liable for damages by reason of judgment, settlement or compromise" can be pursued for the charges, even if the liable person has already transferred funds to the injured person in derogation of the lien. A.R.S. § 33-934. Those liable to the injured person are protected by the recording requirements of A.R.S. § 33-932; under that statute, they will either have actual notice of a lien because they have been mailed a copy of the statement of claim, or constructive notice by virtue of the filing in the office of the county recorder. *See* A.R.S. § 33-932 (requiring for all providers other than hospitals that a copy of the statement of claim be sent by certified mail to all those "claimed by the injured person . . . to be liable for damages," and providing that a recording of a lien by a hospital "shall be notice to all . . . liable for damages, whether or not they are named in the claim or lien").

V.

¶ 21 The superior court therefore correctly held that the Agreement at issue in this case did not create a statutory health care provider lien enforceable against Jonovich. However, the judgment of the superior court also broadly declared that the "Medical Records and Doctor's Lien dated September 1, 1998 and September 8, 1998 is invalid, of no effect, and unenforceable as a matter of law." To the extent that this declaratory judgment held the Agreement invalid as a contract between Dr. Blankenbaker, Jonovich, and Jonovich's attorney, we find no support for such a conclusion in the health care provider lien statutes.

¶ 22 As we have emphasized above, the lien statutes extend to health care providers a remedy not available under the common law — the ability to enforce a lien against those liable to the patient for damages in order to secure the providers' customary charges for care

and treatment of an injured person. But nothing in the statutes suggests
that the legislature thereby intended to restrict any remedy that the
provider might have directly against the patient. *See generally Marana
Unified Sch. Dist. No. 6 v. Aetna Cas. & Sur. Co.*, 144 Ariz. 159,
162, 696 P.2d 711, 714 (App. 1984) (long-standing common law remedies are
not abrogated by statutes unless legislature expresses clear intention to
do so). Nor is there anything in the lien statutes suggesting that the
legislature thereby intended to restrict a provider's ability to enter
into contracts with a patient under which either the patient or someone
other than those "liable for damages" — such as a lawyer
representing the patient — provides for guarantees or other
security with respect to payment of the providers' claims. To the extent
that the declaratory judgment in the superior court held that the
Agreement here was invalid simply because it did not create a statutory
lien, that judgment was in error.[fn9]
Page 389

## VI.

¶ 23 For the foregoing reasons, we vacate the opinion of the court
of appeals. We affirm the judgment of the superior court insofar as it
declared that Dr. Blankenbaker does not have an enforceable statutory
health care provider lien against Jonovich. We reverse the judgment of
the superior court to the extent that it held the Agreement invalid and
unenforceable on other grounds, and to the extent that it awarded
attorneys' fees and costs to Jonovich. Because Jonovich is not the
prevailing party in this Court, we deny his request for attorneys' fees.
This case is remanded to the superior court for further proceedings
consistent with this opinion.

[fn1] The Agreement provides, in relevant part:

I do hereby authorize Thomas E. Blankenbaker, D.C. to
furnish you, my attorney, with a full report of his
examination, diagnosis, treatment, prognosis, etc., of
myself in regard to the accident in which I was
involved.

I hereby authorize and direct you, my attorney, to pay
directly to said doctor such sums as may be due and
owing him for medical service rendered me. both by
reason of this office and to withhold such sums from
any settlement, judgment, or verdict as may be
necessary to adequately protect said doctor. And I
hereby further give a lien on my case to said doctor
against any and all proceeds of my settlement,
judgment or verdict which may be paid to you, my
attorney, or myself as the result of the injuries for
therewith.

I fully understand that I am directly and fully
responsible to said doctor for all medical bills
submitted by him for services rendered to me and that
this agreement is made solely for said doctor's
additional protection and in consideration of his
awaiting payment. And I further understand that such
payment is not contingent on any settlement,
judgment, or verdict by which I may eventually recover
said fee.

Dated:_____ Patient Signature _____

The undersigned being attorney of record for the above and agrees to withhold such sums form [sic] any settlement, judgment, or verdict as may be necessary to adequately protect said doctor named above.

Dated:_____ Attorney Signature _____

[fn2] The superior court also awarded double costs to Jonovich under Arizona Rule of Civil Procedure 68(d), despite the fact that its partial summary judgment did not entirely dispose of Dr. Blankenbaker's claim against Jonovich.

[fn3] We have received briefs *amicus curiae* from the Arizona Trial Lawyers Association, the Arizona Association of Defense Counsel, and State Farm Mutual Automobile Insurance Company, urging reversal of the court of appeals' opinion. Each *amicus* argues that the issue presented by this case, and the proper interpretation of the health care provider lien statutes in general, has important implications for the settlement of personal injury cases and the disbursement of the resultant proceeds.

[fn4] While it is possible at first blush to read the relevant language in A.R.S. § 33-934 as simply a venue provision, such an interpretation would lead to an anomalous result. The venue provision would apply only to those who followed the statutory perfection requirement of § 33-932; those who failed to do so would not be limited to the county of recording in filing their suit. *See Mail Boxes, etc., U.S.A. v. Indus. Comm'n of Ariz.,* 181 Ariz. 119, 122, 888 P.2d 777, 780 (1995) (courts should interpret statutes so as to avoid absurd results).

[fn5] Of course, a health care provider must establish the patient's underlying obligation in order to collect on its lien. *See Matlow v. Matlow,* 89 Ariz. 293, 298, 361 P.2d 648, 651 (1961) ("In the absence of an obligation to be secured there can be no lien."). Thus, in those cases in which the patient disputes his obligation to pay the provider, one seeking to foreclose a lien may also have to proceed against the patient to establish the existence and amount of any obligation.

[fn6] Because Dr. Blankenbaker never recorded a lien, we do not today face the issue of whether "substantial compliance" with the perfection statute is sufficient to allow enforcement of a health care provider's lien. *See Andrews,* 201 Ariz. at 386 ¶ 35, 36 P.3d at 64.

[fn7] We also disapprove of *Andrews* to the extent that it holds that a health care provider may enforce its lien directly against the injured patient.

[fn8] Our legislature did not provide that the lien is against either the proceeds of the patient's claim or against the "recovery," but rather simply against the "claim" itself. Compare A.R.S. § 33-931(A) with, e.g., Iowa Code § 582.1 (1992) (lien on "any recovery or sum had or collected or to be collected by . . . patient"), and Okla. Stat. tit. 42, § 43 (2001) (lien on "any recovery or sum had or collected or to be collected by . . . patient").

[fn9] Jonovich does not argue that the Agreement or any of its provisions are invalid or unenforceable for any other reason. Neither did Dr. Blankenbaker's complaint seek to enforce the Agreement against Jonovich's attorney, nor seek to enforce a lien or security interest against the proceeds of the settlement in the hands of the attorney or Jonovich.

Andrew D. Hurwitz, Justice

CONCURRING:

Charles E. Jones, Chief Justice

Ruth V. McGregor, Vice Chief Justice

Rebecca White Berch, Justice

Michael D. Ryan, Justice

Copyright © 2006 Loislaw.com, Inc. All Rights Reserved

1   CASE TITLE:        Melinda Campbell, et al. v. Sutter Health, et al.

2   COURT/CASE NO:     Alameda County Superior Court No. RG05221764

3                          **PROOF OF SERVICE**

4       I am employed in the County of Sacramento; my business address is 555 Capitol Mall, 9th
    Floor, Sacramento, California 95814.  I am over the age of eighteen years and not a party to the
5   foregoing action.

6       I am readily familiar with the business practice at my place of business for collection and
    processing of correspondence for mailing with the United States Postal Service.  Correspondence so
7   collected and processed is deposited with the United States Postal Service that same day in the
    ordinary course of business.

8
        On January 13, 2006, I served the within:
9

10  (1)   Sutter Health's Request for Judicial Notice in Support of Demurrer to Amended
          Complaint; Notice of Hearing on Demurrer by Defendant Sutter Health to
11        Plaintiffs' First Amended Class Action Complaint for Malicious Prosecution,
          Abuse of Process, Unfair Business Practices, and Declaratory Relief; Demurrer
12        by Defendant Sutter Health to Plaintiffs' First Amended Complaint for
          Malicious Prosecution, Abuse of Process, Unfair Business Practices, and
13        Declaratory Relief; Sutter Health's Memorandum of Points and Authorities in
          Support of Demurrer to the First Amended Class Action Complaint for
14        Malicious Prosecution, Abuse of Process, Unfair Business Practices, and
          Declaratory Relief; Sutter Health's Submission of Non-California Authority in
15        Support of Demurrer to Amended Complaint

16  [ ]   **by mail** on the following party(ies) in said action, in accordance with Code of Civil
17        Procedure § 1013a(3), by placing a true copy thereof enclosed in a sealed envelope in a
          designated area for outgoing mail, addressed as set forth below.  At McDonough
18        Holland & Allen PC, mail placed in that designated area is given the correct amount of
          postage and is deposited that same day, in the ordinary course of business, in a United
19        States mailbox in the City of Sacramento, California.

20  [ ]   **by personally delivering** a true copy thereof, in accordance with Code of Civil
21        Procedure § 1011, to the person(s) and at the address(es) set forth below.

22  [X]   **by overnight delivery** on the following party(ies) in said action, in accordance with
          Code of Civil Procedure § 1013(c), by placing a true copy thereof enclosed in a sealed
23        envelope, with delivery fees paid or provided for, and delivering that envelope to an
          overnight express service carrier as defined in Code of Civil Procedure § 1013(c)..
24

25  [ ]   **by facsimile transmission**, in accordance with Code of Civil Procedure § 1013(e), to
          the following party(ies) at the facsimile number(s) indicated:

26

27

28

**MHA**
McDonough Holland & Allen PC
Attorneys at Law

1

Proof of Service                                                    889827v1 09504/0502

1

2   Todd M. Schneider                                    Counsel for Plaintiffs
    Joshua Konecky
3   W.H. "Hank" Wilson
    SCHNEIDER & WALLACE
4   180 Montgomery Street, Suite 2000
    San Francisco, CA  94104
5   Telephone:  (415) 421-7100
    Facsimile:   (415) 421-7105
6
    ___Courtesy Copy to:___                              Co-counsel for Plaintiffs
7
8   Linda Ross
    LAW OFFICE OF LINDA ROSS
9   2204 Union Street
    San Francisco, CA 94123
10  Telephone: (415) 563-2400
    Facsimile:  (415) 931-9981
11
    Scott Kalkin
12  ROBOOSTOFF & KALKIN, PLC
13  369 Pine Street, Suite 610
    San Francisco, CA 94104
14  Telephone: (415) 732-0282
    Facsimile:  (415) 732-0287
15

16  I declare under penalty of perjury under the laws of the State of California that the foregoing is
    true and correct and that this document was executed on January 13, 2006.
17

18                                                          _Renee Reeve_
                                                             RENEE REEVE
19

20

21

22

23

24

25

26

27

28



2

Proof of Service                                                                       889827v1 09504/0502

35

1  TODD M. SCHNEIDER (SBN 158253)
   JOSHUA KONECKY (SBN 182897)
2  W.H. "HANK" WILLSON (SBN 233321)
   SCHNEIDER & WALLACE
3  180 Montgomery Street, Suite 2000
   San Francisco, California 94104
4  Tel: (415) 421-7100
   Fax: (415) 421-7105
5  TTY: (415) 421-1665
6
7  LINDA ROSS (SBN 85563)
   LAW OFFICES OF LINDA ROSS
8  2204 Union Street
   San Francisco, California 94123
9  Tel: (415) 563-2400
   Fax: (415) 931-9981
10
11 SCOTT KALKIN (SBN 120791)
   ROBOOSTOFF & KALKIN, PLC
12 369 Pine Street, Suite 610
   San Francisco, California 94104
13 Tel: (415) 732-0282
   Fax: (415) 732-0287
14
15 Attorneys for Plaintiffs

16

17                    SUPERIOR COURT OF CALIFORNIA

18                         COUNTY OF ALAMEDA

19

20 MELINDA CAMPBELL, on her own behalf,          Case No. RG05221764
   and on behalf of all others similarly situated,
21                                                **PLAINTIFF'S MEMORANDUM OF**
              Plaintiffs,                         **POINTS AND AUTHORITIES IN**
22                                                **OPPOSITION TO DEFENDANT'S**
       vs.                                        **DEMURRER TO PLAINTIFF'S FIRST**
23                                                **AMENDED COMPLAINT**
   SUTTER HEALTH, and DOES 1 through 25,
24 inclusive,
                                                  Date: February 9, 2006
25            Defendants.                         Time: 1:30 pm
                                                  Department: 22
26                                                Judge: The Honorable Ronald M. Sabraw

27

28

   ─────────────────────────────────────────────────────────────
SCHNEIDER    P'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO D'S DEMURRER TO P'S FAC
& WALLACE            *Campbell v. Sutter Health, et al.*, Case No. RG05221764

1

**TABLE OF CONTENTS**

2    I.    INTRODUCTION ........................................................................................................1

3    II.   ARGUMENT................................................................................................................3

4          A.    PLAINTIFF ALLEGES THAT DEFENDANT HAS ENGAGED IN
                 MALICIOUS PROSECUTION OF PLAINTIFF AND THE CLASS............................3
5
6                1.   The Elements of Malicious Prosecution ...................................................3

7                2.   Defendant's Assertion of Its Unlawful Liens Constitutes Action Against
                      Plaintiff and the Class ........................................................................3

8                3.   Defendant Acted With Malice and Without Probable Cause in Asserting
9                     Its Unlawful Liens Against Plaintiff and the Class.....................................5

10                    a)   Defendant Lacks Probable Cause to Believe Its Assertion and Pursuit
                           of Improper Liens Is Permissible.................................................5

11                         1)   No Reasonable Belief in the Propriety of Defendant's Unlawful
                                Liens Could Be Maintained After the *Parnell* Decision ...........5
12
13                         2)   As this Court Held, Sutter Health Cannot Show that It Reasonably
                                Relied on the State of the Law Even Before the *Parnell* Decision ...........6

14                         3)   Defendant's Silence Regarding Its Actions with Respect to Its
                                Unlawful Liens Reveals that Defendant Has Never Paid Attention
15                              to the Case Law When Asserting the Liens ...............................7

16                    b)   Defendant Acted With Malice in Asserting Its Impermissible Liens ...............8

17               4.   Defendant's Liens Were Null and Void at Their Assertion and Are Null
                      and Void Now; Thus, They Have Terminated in Favor of Plaintiff and
18                    the Class........................................................................................8

19         B.    DEFENDANT'S UNLAWFUL BALANCE BILLING CONSTITUTES AN
                 ABUSE OF PROCESS ..............................................................................10
20
21               1.   Plaintiff's Abuse of Process Claim Is Not Barred by the Court's Order..............10

22               2.   Defendant's Unlawful Conduct Is Not Protected by the Litigation
                      Privilege......................................................................................11

23                    a)   Defendant's Assertion of Liens Was Conduct, Which Is Not
                           Protected by the Litigation Privilege ...........................................11
24
25                    b)   Defendant's Conduct Constitutes a Quintessential Case of Abuse of
                           Process; Shielding Defendant's Conduct with the Litigation Privilege
                           Would Eviscerate the Tort of Abuse of Process ...............................12
26
27                    c)   Defendant's Abuse of Process Is Not Protected by the Hospital Lien
                           Act, and thus Cannot Be Protected by the Litigation Privilege ...............13

28

d) Defendant's Claim of Privilege Is Inconsistent With the Supreme Court's Decision in *Parnell* ........................................................................13

3.  Defendant Engaged in Abuse of Process When It Asserted and Pursued Its Impermissible Liens..................................................................................14

C.  PLAINTIFF SUFFICIENTLY ALLEGES THAT DEFENDANT ENGAGED IN CONVERSION AND/OR TRESPASS TO CHATTEL; FRAUD AND/OR NEGLIGENT MISREPRESENTATION; AND UNFAIR, UNLAWFUL AND FRAUDULENT BUSINESS PRACTICES..........................................................14

D.  PLAINTIFF STATES A CLAIM FOR DECLARATORY RELIEF THAT SUTTER HEALTH'S LIENS ARE NULL AND VOID ................................................14

III. CONCLUSION..................................................................................................................15

SCHNEIDER
& WALLACE

1

## TABLE OF AUTHORITIES

2 **Cases**

3  *Adelman v. Associated Int'l Ins. Co.* (2001) 90 Cal.App.4th 352.........................................5

4  *Albertson v. Raboff* (1956) 46 Cal.2d 375.........................................................3, 5, 8

5  *Berman v. Bromberg* (1997) 56 Cal.App.4th 936 ........................................................11

6  *Bertero v. National General Corp.* (1974) 13 Cal.3d 43 .................................................3

7  *Brennan v. Tremco, Inc.* (2001) 25 Cal.4th 310.........................................................6

8  *Crowley v. Katleman* (1994) 8 Cal.4th 666..............................................................4

9  *Diamond Multimedia Sys., Inc. v. Superior Court* (1999) 19 Cal.4th 1036..........................5

10  *Donabedian v. Mercury Ins. Co.* (2004) 116 Cal.App.4th 968 ......................................5

11  *Donaldson v. Superior Court* (1983) 35 Cal.3d 24 ....................................................6

12  *Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478.........................................8

13  *Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26 ............................................6

14  *Drum v. Bleau, Fox & Associates* (2003) 107 Cal.App.4th 1009 ..................................12

15  *Grauberger v. St. Francis Hospital* (N.D.Cal. 2001) 149 F.Supp.2d 1186 ........................6

16  *Guidery v. Green* (1892) 95 Cal. 630...................................................................10

17  *Hirsa v. Superior Court* (1981) 118 Cal.App.3d 486..................................................11

18  *Kimmel v. Goland* (1990) 51 Cal.3d 202..............................................................11

19  *Kupiec v. American International Adjustment Company* (1992) 235 Cal.App.3d 1326.............11

20  *La Jolla Village Homeowners' Assn. v. Superior Court* (1989) 212 Cal.App.3d 1131 .............10

21  *Lackner v. LaCroix* (1979) 25 Cal.3d 747..............................................................9

22  *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326 .....................................................11

23  *Loomis v. Murphy* (1990) 217 Cal.App.3d 589.......................................................10

24  *Nishihama v. City and County of San Francisco* (2001) 93 Cal.App.4th 298 ..............6, 7, 14

25  *Olszewski v. Scripps Health* (2003) 30 Cal.4th 798 .................................................13

26  *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157..........................................................................................3, 12

27  *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118 ........................11

28

SCHNEIDER
& WALLACE

P'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO D'S DEMURRER TO P'S FAC
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
iii

1  *Parnell v. Adventist Health System/West* (2005) 35 Cal.4th 595 ............................................ passim

2  *Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135 ....................................................4

3  *Spellens v. Spellens* (1957) 49 Cal.2d 210 ......................................................................................10

4  *Swanson v. St. John's Regional Medical Center* (2002) 97 Cal.App.4th 245 .............................3, 13

5  *Twyford v. Twyford* (1976) 63 Cal.App.3d 916 ........................................................................4, 10

6

7  **Statutes**

8  Code of Civil Procedure §473 .........................................................................................................10

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHNEIDER
& WALLACE

P'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO D'S DEMURRER TO P'S FAC
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
iv

## I.    INTRODUCTION

This action challenges Sutter Health's policy and practice of asserting liens against persons who do not owe Sutter Health any debt, the policy of continuing to assert the liens and charge interest on those liens through malicious prosecution and the abuse of legal processes, even though Sutter Health is well aware that it is not owed anything. Sutter Health's behavior is unlawful and against public policy, and Plaintiff's complaint seeks appropriate redress.

As alleged in Plaintiff's First Amended Complaint ("FAC"), Sutter Health unlawfully engages in "balance billing" in an attempt to collect its arbitrarily chosen "customary rates" for medical services rendered by asserting and using various legal tools to compel enforcement of improper liens against the tort recoveries of injured persons, even though the injured persons do not owe Sutter Health any debt, and even though Sutter Health *knows* it is not owed any debt. There are various reasons why the injured person's debt to Sutter Health could be extinguished, including contract, bankruptcy, or some other means, but Sutter Health continues to use judicial tools to enforce the liens even though it is aware that no debt exists. According to the California Supreme Court in *Parnell v. Adventist Health System/West* (2005) 35 Cal.4th 595, any attempt by Sutter Health to recoup its "customary" charges absent an underlying debt is unlawful. Despite *Parnell*, Sutter Health has continued unlawfully to assert and collect on its liens. (FAC at ¶¶2, 20.)

Sutter Health's continuing assertion of liens against persons who owe Sutter Health no debt constitutes malicious prosecution. Malicious prosecution requires an action taken without probable cause, with malice, which is terminated in the favor of the plaintiff. Plaintiff's allegations that Sutter Health asserts and continues to press the liens through the improper use of the judicial process, even though it knows that no debts are owed, satisfy the malice and lack of probable cause elements. In turn, the allegation that the liens were rendered null and void by the extinguishment of the underlying debt shown that they have been terminated in favor of Plaintiff and the class.

Sutter Health's assertion of liens despite the lack of any underlying debts also constitutes abuse of process. Abuse of process requires the willful use of the judicial process for an improper purpose. By asserting and using various methods to attempt to enforce its impermissible liens

SCHNEIDER
& WALLACE

P's MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO D's DEMURRER TO P's FAC
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
1

1    against Plaintiff and the Class to collect monies it is not entitled to under California law, Sutter

2    Health has made willful use of the judicial process and all of its tools for an improper purpose.

3         Defendant's Demurrer attempts to undermine the class action process and render Plaintiff

4    and the class incapable of responding to Defendant's unlawful business practices in any

5    meaningful way. If Defendant's Demurrer is to be believed, Plaintiff and the class have no redress

6    against Defendant's unlawful liens, except to bring thousands of full-fledged judicial actions to

7    expunge each and every single lien that Defendant asserts. Such piecemeal enforcement is not a

8    realistic option. Without the ability to challenge Defendant's conduct on a classwide basis,

9    Defendant can continue to harass its customers and use judicial tools to compel them to pay off the

10   liens, despite the fact that Defendant is fully aware that it is not owed any money, and despite the

11   fact that the California Supreme Court has found this practice to be unlawful. Sutter Health's

12   arguments would render *Parnell* a nullity, by allowing Sutter Health to continue to prosecute its

13   unlawful liens in the very same way that was outlawed by *Parnell*; Sutter Health is attempting to

14   use the litigation privilege as a shield from redress for its unlawful practices. However, the

15   litigation privilege applies only to communications, not a course of conduct or the practice of

16   misusing legal procedures, such as subpoenas, default judgments, and debt collection practices.

17        As shown below, Defendant's stance on the status of its unlawful liens, and the import of

18   the assertion of those liens, changes throughout Defendant's Demurrer as necessary for each

19   argument Defendant makes. The gravamen of Plaintiff's complaint is that by pursuing these liens,

20   Defendant is using the judicial process to injure Plaintiff and the class, and is doing so even though

21   there is no underlying debt between Defendant and those against whom it asserts the liens. As a

22   result, Plaintiff states causes of action for malicious prosecution and abuse of process, as well as

23   other causes of action which grow out of this wrongful conduct.

24        As a result of Sutter Health's malicious prosecution and abuse of process, Sutter Health is

25   liable for conversion and/or trespass to the chattel of Plaintiff and the class, and Sutter Health has

26   engaged in fraud and/or negligent misrepresentation regarding whether Plaintiff and the members

27   of the class owed Sutter Health any money. In addition, Sutter Health's malicious prosecution and

28

SCHNEIDER
& WALLACE

P'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO D'S DEMURRER TO P'S FAC
*Campbell v. Sutter Health, et al.*, Case No. RG05221764

2

1  abuse of process are unfair, unlawful, and fraudulent business acts and practices, in violation of the

2  California Business and Professions Code §§17200, *et seq.* ("UCL").

3  II.    **ARGUMENT**

4      A. **PLAINTIFF ALLEGES THAT DEFENDANT HAS ENGAGED IN MALICIOUS**
          **PROSECUTION OF PLAINTIFF AND THE CLASS**

5

6          As alleged in the FAC, Sutter Health has a long-standing policy and practice of asserting

7  and pursuing liens against the tort recoveries of persons whom Sutter Health knows do not owe it

8  any debt. (FAC at ¶¶1-3.) Sutter Health asserted these liens long before the case of *Swanson v. St.*

9  *John's Regional Medical Center* (2002) 97 Cal.App.4th 245, on which it claims to rely, was

10 handed down, and continues to assert these liens after *Parnell*, which ruled unequivocally that such

11 assertion is unlawful and impermissible. (*Id.* at ¶¶1-3, 21-22.) All of Sutter Health's liens against

12 persons whose debt to Sutter Health has been extinguished are null and void, and were null and

13 void when they were asserted. (*Id.*) Sutter Health knows these liens are meritless, but nonetheless

14 chooses to assert them (or refuses to disavow them). (*Id.* at ¶¶23, 35, 42.) Sutter Health is

15 asserting these liens without probable cause and with malice; the liens were null and void when

16 they were asserted and are null and void now; in addition, Plaintiff's request for declaratory relief

17 will assure that the liens are null and void, and thus terminated in favor of Plaintiff and the Class.

18 As a result, Sutter Health is liable for malicious prosecution. (*Id.* at 23, 33-35, 40-42, 72-73.)

19          1. **The Elements of Malicious Prosecution**

20          A cause of action for malicious prosecution requires an action that is made without probable

21 cause, with malice, and after the favorable termination of the action in the favor of the malicious

22 prosecution plaintiff. (*See Albertson v. Raboff* (1956) 46 Cal.2d 375, 382; *see also Bertero v.*

23 *National General Corp.* (1974) 13 Cal.3d 43, 50.) *Albertson*, authored by Justice Traynor, is the

24 "seminal" case on malicious prosecution, according to the California Supreme Court. (*Oren Royal*

25 *Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1164.)

26          2. **Defendant's Assertion of Its Unlawful Liens Constitutes Action Against Plaintiff**
               **and the Class**

27          There can be no doubt that by asserting the liens that are the subject of this suit and using

28 various judicial tools to pursue those liens, Sutter Health, to quote its own case, took an

SCHNEIDER
& WALLACE

1    "independent, separate, adversarial action, involving the expense and trauma of preparing a

2    response, and having a procedural life of its own[,]" an action that "will support a later tort claim

3    for malicious prosecution[.]" (*Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4[th] 1135,

4    1152.) Plaintiff and the members of the class were served with liens asserting a right to money

5    which the Supreme Court, in *Parnell*, has declared to be "specific property…accruing to" them.

6    (*Parnell, supra*, 35 Cal.4th at 602.) Actions that Sutter Health could take to pursue its liens would

7    include the use of such judicial tools as collecting on defaults and serving subpoenas. Many have

8    disputed these liens; many have paid them or a portion of them, despite their fraudulence, in order

9    to rest easier; and all have experienced "expense and trauma" as a result of these liens.

10    This is merely the first example where Defendant's Demurrer advances opposing arguments

11    when it serves Defendant's needs. Defendant insists that its liens are independent of "the action

12    between the patient and the tortfeasor." (Demurrer at 5.) On the very same page, however,

13    Defendant insists that its liens are "subsidiary procedural actions" "within Plaintiffs' lawsuits

14    against their tortfeasors[.]" (*Id.* at 5-6.)

15    As the Court of Appeal has explained:

16    The tort of malicious prosecution lies for the prosecution of…ancillary civil proceedings,
      such as the filing of a cross-complaint, the institution of a special insanity proceeding, or the
17    filing of a will contest in connection with the probate of an estate.

18    (*Twyford v. Twyford* (1976) 63 Cal.App.3d 916, 921-922.) In fact, a lien is an "ancillary"

19    proceeding which gives rise to a malicious prosecution action, for it is tethered to the outcome of

20    the underlying tort actions by Plaintiff and the class against the tortfeasors who injured them, and

21    not a "subsidiary procedural" action because, as Defendant points out, it is "not adjudicable" in the

22    suit between Plaintiff and the tortfeasor. In the context of a will contest, "its effect is…to infringe

23    on the interest of the will's proponent in freedom from unjustifiable and unreasonable litigation.

24    For purposes of the law of malicious prosecution, therefore, the contest satisfies the requirement of

25    a prior action… commenced by or at the direction of the defendant." (*Crowley v. Katleman* (1994)

26    8 Cal.4th 666, 692.) The Supreme Court's reasoning applies equally to Defendant's liens: the

27    effect of Defendant's assertion and prosecution of its improper liens is to infringe on the interests

28    of Plaintiff and the class, and leads to considerable vexation both in the lawsuit against the

SCHNEIDER
& WALLACE

1  tortfeasor (which is most certainly affected by the claim of another party to the judgment or

2  settlement involved), and in responding to Defendant's lien activities. Thus, Defendant's liens

3  constitute action taken against Plaintiff and the class.

### 3. Defendant Acted With Malice and Without Probable Cause in Asserting Its Unlawful Liens Against Plaintiff and the Class

#### a) Defendant Lacks Probable Cause to Believe Its Assertion and Pursuit of Improper Liens Is Permissible

##### 1) No Reasonable Belief in the Propriety of Defendant's Unlawful Liens Could Be Maintained After the *Parnell* Decision

In malicious prosecution actions, "allegations that the action was prosecuted with

knowledge of the falsity of the claim are a sufficient statement of lack of probable cause."

(*Albertson, supra*, 46 Cal.2d at 382.) There can be no dispute that after the *Parnell* decision, no

reasonable person could have probable cause to think that asserting an HLA lien against someone

who owed no debt, as Sutter Health did here, was a permissible act. *Parnell* unequivocally stated

that "a lien under the HLA requires the existence of an underlying debt by the patient to the

hospital[.]" (*Parnell, supra*, 35 Cal.4th at 609.) Hence, Defendant's claim that its assertion of liens

after *Parnell* is "legally tenable" is disingenuous. (Demurrer at 8.) Moreover, there is no

"question of fact" as to whether a debt was owed, because Defendant *did in fact know* that its

policy was to assert and pursue liens against a class of people who did not owe any debt.[1]

Defendant cannot feign ignorance in order to advance its unlawful acts beyond legal bounds.

---

[1] It is important to remember that the class Plaintiff seeks to represent only includes those persons against whom Sutter Health asserted liens despite the fact that it was owed no debt. Thus, there is no question as to whether the lien was permissible. If Sutter Health was not owed a debt, the lien was impermissible. (*Parnell, supra*, 35 Cal.4th at 609.) The class alleged, by definition, does not include anyone who may have actually owed Sutter Health a debt. So Sutter Health cannot be allowed to include those persons in its discussion of whether the assertion of the liens was done without probable cause and with malice, because they have nothing to do with this case.

In addition, a question of fact cannot be resolved on demurrer. (*Donabedian v. Mercury Ins. Co.* (2004) 116 Cal.App.4th 968, 994.) If Defendant insists on raising the fact question of whether a debt was owed between any class member and Sutter Health, Plaintiff's allegations must be taken as true and Defendant's Demurrer must be overruled. (*Diamond Multimedia Sys., Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1042, n.4; *Adelman v. Associated Int'l Ins. Co.* (2001) 90 Cal.App.4th 352, 359.)

SCHNEIDER
& WALLACE

P'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO D'S DEMURRER TO P'S FAC
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
5

1

### 2) As this Court Held, Sutter Health Cannot Show that It Reasonably Relied on the State of the Law Even Before the *Parnell* Decision

2

3     As this Court recognized in its Order regarding Defendant's first Demurrer: "The general

4     rule that judicial decisions are given retroactive effect is basic in our legal tradition." (Order of

5     November 16, 2005 ("Order"), at 2 [quoting *Brennan v. Tremco, Inc.* (2001) 25 Cal.4th 310, 318].)

6     This Court went on to find that "Sutter Health has not demonstrated that the case law interpreting

7     the Hospital Lien Act was settled or that Sutter Health had relied on a judicial interpretation of the

8     Act." (Order at 2.) Sutter Health has not done so in this Demurrer either.

9     Even in the inapplicable case of appellate court decisions, courts make an exception to the

10    rule of retroactivity only "when the decision changed a settled rule *on which the parties had*

11    *relied.*" (*Brennan, supra*, 25 Cal.4th at 318 [emphasis added].) As shown in Plaintiff's Opposition

12    to Defendant's first Demurrer (which is incorporated by this reference), it is clear that Sutter

13    Health did not rely on *Swanson* when asserting the unlawful liens challenged here, because it

14    asserted the liens before the *Swanson* decision and has continued to assert the liens after the

15    *Parnell* decision. If Sutter Health were truly relying on *Swanson*, why did it continue to assert the

16    liens even after, in its view, *Swanson* was overruled? Defendant knew that it was owed no debts

17    by Plaintiff and the class, and had no probable cause to believe that the assertion of its liens against

18    Plaintiff and the class was proper.[2]

19

20

21    [2] A decision overrules a settled rule of law "when it disapproves of a long-standing and widespread practice expressly approved by a near-unanimous body of lower court authorities." (*Droeger v.*

22    *Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 45; *Donaldson v. Superior Court* (1983) 35 Cal.3d 24, 37.) The decision of the Court of Appeal for the Second District in *Swanson* was decidedly not

23    "near-unanimous" prior to *Parnell*. Just as in Defendant's first Demurrer, Defendant's current Demurrer ignores the plain language of *Nishihama v. City and County of San Francisco* (2001) 93

24    Cal.App.4th 298, in which the First District held that a hospital is not entitled to assert a lien against an injured person on a debt that has been extinguished: "We find that CPMC's [the

25    hospital's] lien rights do not extend beyond the amount it agreed to receive from Blue Cross as payment in full for services provided to plaintiff. As CPMC has been paid that amount, it has no

26    lien rights in the damages awarded to plaintiff[.]" (*Id.* at 307.) The Court continued: "the debt owed by plaintiff to the Hospital is the foundation for the Hospital's lien right." (*Id.* at 308

27    [quoting *Grauberger v. St. Francis Hospital* (N.D.Cal. 2001) 149 F.Supp.2d 1186, 1191].) Thus, in 2001, at least one California Court of Appeal took the same view that the Supreme Court later

28    confirmed in *Parnell*.

SCHNEIDER
& WALLACE

P'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO D'S DEMURRER TO P'S FAC
*Campbell v. Sutter Health, et al.*, Case No. RG05221764

6

1    Defendant's reliance on trial court cases is misplaced, and misleading. (*See* Demurrer at

2    10.) As stated above, this Court has already found that "Sutter Health has not demonstrated that

3    the case law interpreting the Hospital Lien Act was settled or that Sutter Health had relied on a

4    judicial interpretation of the Act." (Order at 2.) Defendant cites the trial court's opinion in

5    *Parnell*, which was reviewed by appellate courts and never obtained any sort of precedential status.

6    The same reasoning applies for Defendant's reference to *Tweedy v. NCO Financial Systems, Inc.*, a

7    Sacramento Superior Court case in which Defendant was not even a party. Defendant cannot

8    claim to rely on trial court opinions while ignoring the plain language of *Nishihama*, an appellate

9    court opinion, which held that a hospital's "lien rights do not extend beyond the amount it agreed

10   to receive from [the plaintiff's insurer] as payment in full for services provided to plaintiff."

11   (*Nishihama, supra*, 93 Cal.App.4th at 307.) It is apparent that, as this Court found, and as shown

12   more fully below, Sutter Health has been prosecuting these unlawful liens regardless of the state of

13   the case law, and lacked probable cause to believe that such conduct was lawful.

14       **3) Defendant's Silence Regarding Its Actions with Respect to Its Unlawful
         Liens Reveals that Defendant Has Never Paid Attention to the Case Law**

15       **When Asserting the Liens**

16       As shown above, Sutter Health's repeated references to liens that may or may not be based

17   on an underlying debt are misplaced and misleading. The class alleged in Plaintiff's FAC includes

18   only those persons who did not in fact owe a debt to Sutter Health. Thus, any liens which may

19   have involved an underlying debt have no relevance to this case.[3]

20       Moreover, Sutter Health raises the red herring that "[a] court must decide whether a hospital

21   has reserved [a] right of recapture before a lien may be held invalid" (Demurrer at 11 [emphasis

22   omitted]), but provides no evidence, and in fact does not even *allege*, that it has in fact reserved

23   such a right. This suggests that Sutter Health is treating this issue as a theoretical exercise rather

24   than as a policy and practice that has injured Plaintiff and the numerous members of the class. If

25

26   [3] Furthermore, Defendant again admits that even if the question of whether an underlying debt
     existed were relevant to this action, that question would be "replete with factual…issues for a
27   court." (Demurrer at 11.) Thus, any decision regarding that issue, and the issue of Defendant's
     lack of probable cause, cannot be decided on Demurrer.
28

**SCHNEIDER
& WALLACE**

1   Sutter Health had changed its contracts after *Parnell*, it would have said so in its Demurrer. It

2   appears that Sutter Health has not adjusted its unlawful balance billing practices in light of *Parnell*,

3   and that those practices are the same as they were before any ruling in *Swanson*. Sutter Health is

4   interested in extorting money from Plaintiff and the class by forcing payment or settlement despite

5   the absence of an underlying debt; thus, Sutter Health is liable for malicious prosecution.

6            **b) Defendant Acted With Malice in Asserting Its Impermissible Liens**

7            Plaintiff has sufficiently alleged that Defendant acted with malice when asserting and

8   attempting to enforce its impermissible liens. The seminal case of *Albertson* states that if "the

9   existence of malice" is "expressly alleged," "the requirement of malice is…sufficiently pleaded."

10   (*Albertson, supra*, 46 Cal.2d at 863.) Malice exists "when the proceedings are instituted primarily

11   for an improper purpose." (*Id.*) Here, there can be no dispute that Plaintiff has alleged the

12   existence of malice. Defendant has asserted and pursued its liens against Plaintiff and the class

13   with an improper purpose; with knowledge that it is owed no debts by Plaintiff and the class.

14            Defendant, in disputing that it acted with malice, relies solely on the assertion that Plaintiff's

15   allegations regarding malice arise from the same facts as Plaintiff's allegations regarding

16   Defendant's lack of probable cause. (Demurrer at 12.) Of course, Defendant does not dispute that

17   facts which are sufficient to allege malice are by definition more than sufficient to allege a lack of

18   probable cause. (*See Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4[th] 478, 498.) Defendant

19   draws the wrong conclusion from the similarity of Plaintiff's probable cause and malice

20   allegations. In fact, as shown above, Plaintiff has pled facts sufficient to allege malice, which,

21   according to Defendant's own case, is more than enough to allege a lack of probable cause. (*Id.*)

22            **4. Defendant's Liens Were Null and Void at Their Assertion and Are Null and Void Now; Thus, They Have Terminated in Favor of Plaintiff and the Class**

23

24            Because Defendant's improper liens were null and void when they were asserted, and have

25   been declared null and void by the Supreme Court in *Parnell*, there can be no doubt that the liens

     have been terminated in favor of Plaintiff and the class. (*Parnell, supra*, 35 Cal.4[th] at 609.)

26   Defendant misses the point when it states that "the Court in this case would need to adjudicate" the

27   permissibility of each lien. (Demurrer at 7.) There is nothing to adjudicate here: Sutter Health

28

SCHNEIDER
& WALLACE

P'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO D'S DEMURRER TO P'S FAC
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
8

1  asserted these liens even though no debt existed between it and the persons against whom it

2  asserted the liens. Indeed, later in its Demurrer, Defendant flatly admits that, regarding whether

3  Defendant's "HLA liens that were based on extinguished debts are null and void[,]...*Parnell* has

4  already answered the question definitively." (Demurrer at 15.) On a class basis, the Parnell

5  decision itself constitutes a favorable judgment for Plaintiff and the class. In addition, there will be

6  a favorable judgment for Plaintiff and the class if and when this Court rules on Plaintiff's request

7  for classwide declaratory relief that the liens at issue are null and void. Either way, there is no

8  question that the impropriety of Sutter Health's liens has been decided and is no longer at issue.

9     However the termination comes about, it "must reflect on the merits of the underlying

10  action." (*Lackner v. LaCroix* (1979) 25 Cal.3d 747, 750 [internal citations omitted].) Defendant

11  does not dispute that its liens have no merit under *Parnell* and the reasoning contained therein.

12  Defendant asserted these liens even though it knew or should have known that Plaintiff and the

13  class owed it nothing, or it continued to assert them once it became aware that any underlying

14  debts had been extinguished. Thus, these liens have terminated in favor of Plaintiff and the class.

15     The reasoning of Defendant's Demurrer requires Plaintiff and the class to initiated

16  individual judicial proceedings against Defendant regarding Defendant's impermissible liens and

17  pursue those proceedings to their conclusion in order to allege malicious prosecution. This is just

18  the sort of excessive litigation that the class action procedure, and this class action specifically, are

19  designed to avoid. Requiring a separate adjudication of each and every lien asserted by Defendant

20  would be an utter waste, and would effectively excuse Defendant's unlawful behavior, because the

21  cost in time and resources to dispute each of Defendant's liens would quickly exceed the value of

22  the lien itself. The very purpose of this case is to aggregate these claims and to prevent Defendant

23  from continuing to assert unlawful liens against persons who owe no debt to Sutter Health.

24     It is unlikely that the Supreme Court, in *Parnell*, intended for hospitals to continue their

25  balance billing policies *exactly* as they had always done. In fact, the Court explicitly held that

26  Sutter Health's practices are illegal, and that the practice of attempting to collect on non-existent

27  debts must cease. Sutter Health, blatantly ignoring this edict, has continued to harass Plaintiff and

28  the class with its impermissible liens and its use of judicial tools to enforce those liens.

SCHNEIDER
& WALLACE

P's MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO D's DEMURRER TO P's FAC
*Campbell v. Sutter Health, et al.*, Case No. RG05221764

## B. DEFENDANT'S UNLAWFUL BALANCE BILLING CONSTITUTES AN ABUSE OF PROCESS

Defendant's unlawful assertion and pursuit of liens against Plaintiff and the class, despite the fact that Defendant knows that Plaintiff and the class owe it no debt, constitutes abuse of process. Abuse of process is a "a perversion of the judicial process to the accomplishment of an improper purpose." (*Twyford v. Twyford* (1976) 63 Cal.App.3d 916, 923 [quoting *Younger v. Solomon* (1974) 38 Cal.App.3d 289, 297].) It involves using the legal process for some "ulterior purpose" or a purpose for which the process was not designed. (*Loomis v. Murphy* (1990) 217 Cal.App.3d 589, 595; *see also Twyford, supra*, 63 Cal.App.3d at 923; *Spellens v. Spellens* (1957) 49 Cal.2d 210, 231-232.) The judicial process was not meant to be employed by Sutter Health to assert and pursue liens despite the fact that it is owed no debt.

### 1. Plaintiff's Abuse of Process Claim Is Not Barred by the Court's Order

This Court's Order on Defendant's previous Demurrer did not mention the tort of abuse of process, and did not bar Plaintiff from alleging an abuse of process cause of action in her FAC. In any event, the test for the amendment of pleadings is a liberal one. "The court may, in furtherance of justice, and on such terms as may be proper, allow a party to amend any pleading or proceeding…The court may likewise, in its discretion, after notice to the adverse party, allow, upon such terms as may be just, an amendment to any pleading or proceeding in other particulars…" Code of Civil Procedure §473(a)(1). Furthermore, "[I]t is a rare case in which a court will be justified in refusing a party leave to amend his pleadings so that he may properly present his case." (*Guidery v. Green* (1892) 95 Cal. 630, 633 [internal quotations omitted].) Denial of leave should only occur when there is a "failure of a proposed amendment to state facts sufficient to constitute a cause of action." (*La Jolla Village Homeowners' Assn. v. Superior Court* (1989) 212 Cal.App.3d 1131, 1141 [*disapproved of on other grounds by Jimenez v. Superior Court* (2002) 29 Cal.4th 473].) Plaintiff's FAC sufficiently states a cause of action for abuse of process.

Abuse of process and malicious prosecution are related causes of action; thus, Plaintiff's abuse of process claim is undoubtedly within the framework of what the Court suggested in its Order. To further the "fundamental policy" of California "that cases should be decided on their

SCHNEIDER & WALLACE

P'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO D'S DEMURRER TO P'S FAC
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
10

1  merits," Plaintiff's abuse of process claim should be heard. (*Hirsa v. Superior Court* (1981) 118

2  Cal.App.3d 486, 488-489; *see also Berman v. Bromberg* (1997) 56 Cal.App.4th 936, 945.)

### 2. Defendant's Unlawful Conduct Is Not Protected by the Litigation Privilege

#### a) Defendant's Assertion of Liens Was Conduct, Which Is Not Protected by the Litigation Privilege

The litigation privilege applies only to communications, not to conduct. (*Kimmel v. Goland*

(1990) 51 Cal.3d 202, 205.) "The threshold issue in determining whether the litigation privilege

applies is whether the defendant's conduct was communicative or noncommunicative." (*LiMandri

v. Judkins* (1997) 52 Cal.App.4th 326, 345 [quoting *Kimmel, supra,* 51 Cal.3d at 211].) Thus,

"[t]he key in determining whether section 47, subdivision (b)(2), applie[s] is whether the *harm

alleged* was the result of a communicative act or a course of conduct." (*Kupiec v. American

International Adjustment Company* (1992) 235 Cal.App.3d 1326, 1331 [emphasis added].)

In this class action case, the harm alleged by Plaintiff flows not from any communications in

the liens, but rather from Sutter Health's wrongful *course of conduct* of not merely asserting, but

using judicial tools to collect and seize funds which it knows it is forbidden by law to collect. (*See

Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1132 n. 12 [the privilege

does not apply when "the gravamen of the complaint was not a communication but a course of

conduct"].) Plaintiff has alleged that Defendant has engaged not merely in communication, but in

the implementation of a "policy and practice," based on affirmative acts and misuse of judicial

procedures. (*See* FAC at ¶¶21-23, 33-35, 41-42.)

This case is very similar to *LiMandri*. In that case, the plaintiff made a claim for intentional

interference with contractual relations as a result of the defendant's assertion of a lien on the

proceeds of a judgment in the plaintiff's favor. (*LiMandri, supra,* 52 Cal.App.4th at 345.) The

Court held that because the assertion of the lien was only "one act in the overall course of conduct"

alleged by Plaintiff, the litigation privilege was inapplicable. (*Id.*) The same facts exist here:

Plaintiff has alleged an entire unlawful course of conduct by Defendant: Defendant asserts these

liens despite the fact that its knows or should know that it is owed no debt. Defendant then

SCHNEIDER
& WALLACE

P'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO D'S DEMURRER TO P'S FAC
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
11

1    continues to assert, pursue, and collect on its liens despite this knowledge. Defendant's course of

2    conduct is unlawful and is not in any way limited to a communicative act.

3         Defendant's application of the litigation privilege would shield entities from redress for

4    knowingly prosecuting unlawful liens, simply because the initial act is arguably communicative.

5    *Limandri* has foreclosed this argument, however, and stated that Defendant is forbidden from

6    shielding its abusive course of conduct behind a single, arguably communicative act. Therefore,

7    the litigation privilege does not apply, and Sutter Health is liable for abuse of process.

8              **b) Defendant's Conduct Constitutes a Quintessential Case of Abuse of Process;**
                 **Shielding Defendant's Conduct With the Litigation Privilege Would**
9              **Eviscerate the Tort of Abuse of Process**

10        The California Supreme Court has recognized that the extension of the litigation privilege to

11   abuse of process claims could "largely eliminate the entire abuse of process tort." (*Oren Royal*

12   *Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1987) 42 Cal.3d 1157, 1166-1167.)

13   Because its decision on another point rendered the question moot, the *Oren* Court did not resolve

14   whether the litigation privilege could therefore properly be asserted against abuse of process

15   claims in future cases. (*Id.* at 1167, n. 6.) Nevertheless, this concern has been echoed by other

16   California courts: if conduct, and not just communication, were to be protected by the privilege, it

17   "would in all likelihood nullify the tort" of abuse of process. (*Drum v. Bleau, Fox & Associates*

18   (2003) 107 Cal.App.4th 1009, 1028.) This cannot be the law. Moreoever, as the Supreme Court in

19   *Oren* observed, "a number of past cases which have upheld the propriety of abuse of process

20   actions on the basis of unauthorized conduct in a judicial proceeding...could not have been

21   decided as they were if the absolute privilege of section 47(2) were applicable in the abuse of

22   process context." (*Oren, supra*, 42 Cal.3d 1157 at 1167, n. 6 [citing *Barquis v. Merchants*

23   *Collection Assn.* (1972) 7 Cal.3d 94 and *Spellens, supra*, 49 Cal.2d 210].)

24        Here, Defendant has used the judicial process to assert and take action to pursue liens,

25   despite the fact that it is owed no underlying debt. This is a quintessential example of an abuse of

26   process. If this sort of conduct were to be protected by the litigation privilege, the exception

27   created by the privilege would swallow the tort altogether. This is not an outcome consistent with

28   California statutes, case law, or public policy.

SCHNEIDER
& WALLACE

P'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO D'S DEMURRER TO P'S FAC
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
12

### c) Defendant's Abuse of Process Is Not Protected by the Hospital Lien Act, and thus Cannot Be Protected by the Litigation Privilege

Defendant's litigation privilege argument relies on the cases of *Swanson* and *Olszewski*, which both hold merely that the assertion of *valid* liens implicates the litigation privilege. (*Swanson, supra,* 97 Cal.App.4th at 249; *Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 832].) In fact, the Supreme Court in *Olszewski* pointed out that, in that case, the plaintiff conceded that the liens filed by the defendant were permitted by law. (*Olszewski, supra,* 30 Cal.4th at 831.) Thus, liens *not* authorized by the HLA are *not* protected by the litigation privilege. The *Olszewski* Court specifically stated that the litigation privilege only applies to "liens filed *pursuant to* a validly enacted statute." (*Olszewski, supra,* 30 Cal.4th at 832 [emphasis added].)

Of course, Plaintiff here alleges that the liens alleged by Sutter Health were *invalid*, and were *not* asserted or prosecuted pursuant to any valid statute. Plaintiff's complaint alleges that the liens advanced by Defendant are not authorized or permitted by the HLA, and are unlawful. The Supreme Court, in *Parnell*, agrees. (*Parnell, supra,* 35 Cal.4th at 607-608.) As a result, the litigation privilege does not apply to the liens at issue here.

### d) Defendant's Claim of Privilege Is Inconsistent With the Supreme Court's Decision in *Parnell*

Though this Court acknowledged that the Supreme Court in *Parnell* "declined to address" the litigation privilege issue (Order at 1), the Supreme Court's opinion in *Parnell* would be impossible if the litigation privilege were as expansive as Sutter Health claims. Sutter Health attempts to use the HLA to justify asserting and pursuing liens against injured persons treated at a Sutter Health facility even when those persons do not owe a debt to Sutter Health. The Court in *Parnell* held that the assertion of liens after any debt of the injured person to the hospital has been extinguished is unlawful and is not permitted by the HLA. (*Parnell, supra,* 35 Cal.4th at 598.) If the litigation privilege were truly an absolute protection of Defendant's conduct in this case, then the Supreme Court in *Parnell* could not have declined to address it. As the *Parnell* opinion shows, the Supreme Court believes that Sutter Health's conduct is unlawful despite the existence of the litigation privilege. Under the plain language of the *Parnell* decision, liens that are not authorized by the HLA are unlawful and may be challenged.

SCHNEIDER
& WALLACE

P'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO D'S DEMURRER TO P'S FAC
*Campbell v. Sutter Health, et al.,* Case No. RG05221764
13

### 3. Defendant Engaged in Abuse of Process When It Asserted and Pursued Its Impermissible Liens

Sutter Health does not dispute in its Demurrer that Plaintiff has adequately pled a claim for abuse of process. Sutter Health has used the judicial process for an improper purpose, in that it has asserted and pursued liens against Plaintiff and the class when Plaintiff and the class owed Sutter Health no debt. This conduct is contrary to public policy. Sutter Health was put on notice that it was not permitted assert or pursue a lien for money which it was not owed by the Court of Appeal in *Nishihama, supra*, 93 Cal.App.4th at 307. Sutter Health's conduct was unequivocally confirmed as unlawful by the Supreme Court in *Parnell*. Sutter Health is liable for abuse of process.

### C. PLAINTIFF SUFFICIENTLY ALLEGES THAT DEFENDANT ENGAGED IN CONVERSION AND/OR TRESPASS TO CHATTEL; FRAUD AND/OR NEGLIGENT MISREPRESENTATION; AND UNFAIR, UNLAWFUL AND FRAUDULENT BUSINESS PRACTICES

Plaintiff's FAC explicitly bases its conversion, trespass to chattel, fraud, negligent misrepresentation, and unfair business practices claims on Sutter Health's malicious prosecution and abuse of process in asserting and pursuing its unlawful liens. (FAC at ¶¶46-70.) As shown above, Plaintiff's malicious prosecution and abuse of process claims are not barred by the litigation privilege, and Plaintiff's FAC more than adequately states claims for malicious prosecution and abuse of process. This Court held that "Plaintiff is granted leave to amend to allege…claims for unlawful or unfair competition that borrow from or are tethered to the law of malicious prosecution." (Order at 2.) Plaintiff's FAC merely attempts to bring all controversies between the parties to bear in this action, by alleging all of the causes of action to which Sutter Health's malicious prosecution and abuse of process claims have given rise. Thus, Defendant's Demurrer to Plaintiff's cause of action for conversion and/or trespass to chattels; fraud and/or negligent misrepresentation; and unfair, unlawful, or fraudulent business practices should be overruled.

### D. PLAINTIFF STATES A CLAIM FOR DECLARATORY RELIEF THAT SUTTER HEALTH'S LIENS ARE NULL AND VOID

Plaintiff's FAC makes a valid claim for declaratory relief. The declaratory relief that Plaintiff seeks, contrary to Defendant's assertion, does not merely seek a remedy for past wrongs. It does not implicate the litigation privilege, as it merely seeks a declaration of the rights of the

SCHNEIDER & WALLACE

P'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO D'S DEMURRER TO P'S FAC
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
14

1   parties. As shown above and in the FAC, Plaintiff alleges that Defendant's assertion, pursuit, and

2   refusal to disavow these liens, despite the fact that they were null and void at their assertion and

3   have been shown to be null and void by various courts, has harmed and continues to harm Plaintiff

4   and the class. Thus, Plaintiff and the class seek from this Court a declaration of their rights and a

5   definitive termination of Defendant's liens. There can be no doubt that without such a declaration,

6   "uncertainties and controversies will result in the future" because Defendant refuses to cease

7   prosecuting its unlawful liens. (Demurrer at 15.) Sutter Health has clearly demonstrated that it has

8   no intention of abandoning or disavowing its impermissible liens, even though it is owed no debt

9   by Plaintiff and the class, and in spite of the rulings from the *Nishihama* and *Parnell* Courts.

10  Future harm to Plaintiff and the class will be the inevitable result.

11          This is yet another example where Defendant suspiciously molds its arguments to meet its

12  own needs. In the context of Plaintiff's declaratory relief action, Sutter Health argues that "*Parnell*

13  has already answered the question definitively" that the "extinguished debts are null and void."

14  (Demurrer at 15.) Furthermore, admits Defendant, "[t]here is no actual controversy on this; it is

15  the law." (*Id.*) But earlier in its Demurrer, Defendant claimed that "even since *Parnell*," whether

16  a debt has been extinguished "is replete with factual and legal issues for a court." (*Id.* at 11.)

17  Sutter Health cannot be allowed to argue out of both sides of its mouth. Plaintiff agrees that

18  *Parnell* ruled definitely that liens not based on underlying debts are null and void. Thus, Sutter

19  Health's liens were null and void at their outset, and Defendant's further attempts to pursue them

20  have been null and void, making Defendant liable for malicious prosecution. Plaintiff merely

21  seeks declaratory relief to confirm this fact, which Defendant continues to ignore despite

22  *Nishihama, Parnell*, and even its own admission that these debts are "extinguished."

23  **III.   CONCLUSION**

24          For the foregoing reasons, Plaintiff respectfully requests that this Court overrule

25  Defendant's Demurrer. In the alternative, if the Court sustains some or all of the Demurrer,

26  Plaintiff respectfully requests that this Court grant Plaintiff leave to amend her complaint.

27

28

SCHNEIDER
& WALLACE

P'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO D'S DEMURRER TO P'S FAC
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
15

1  Respectfully Submitted,

2  Date: January 27, 2006                    SCHNEIDER & WALLACE

3

4

5  Hank Willson
   Counsel for Plaintiff

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHNEIDER
& WALLACE

P'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO D'S DEMURRER TO P'S FAC
Campbell v. Sutter Health, et al., Case No. RG05221764
16