Exhibit G

# AMENDED AND RESTATED BYLAWS

## OF

## *MEMORIAL HOSPITAL LOS BANOS*

A nonprofit, public benefit
corporation organized under
the laws of the
State of California

*Includes Revisions through February 2, 2004*

TABLE OF CONTENTS

I.   NAME .................................................................................................................. 1

II.  PURPOSES ......................................................................................................... 1

III. MEMBERSHIP ................................................................................................... 2
     Section 3-1. - General Member. ......................................................................... 2
     Section 3-2. - Transfer of Membership. ............................................................. 2
     Section 3-3. - Exercise of Membership Rights. ................................................. 2
     Section 3-4. - Liabilities and Assessments. ....................................................... 2

IV.  SYSTEM AFFILIATION ..................................................................................... 2
     Section 4-1. - Affiliated Status. ......................................................................... 2
     Section 4-2. - Participation in Activities of the General Member. ................... 3
     Section 4-3. - Cash Concentration. ................................................................... 3
     Section 4-4. - Equity Cash Transfer Policy ...................................................... 3
     Section 4-5. - Payment of Allocation Fee. ........................................................ 3
     Section 4-6. - Cost of Capital Allocation Policy. .............................................. 3
     Section 4-7. - Representation on the Board of Directors. ................................. 3
     Section 4-8. - Effect of Policies. ....................................................................... 3
     Section 4-9. - Policies Required of Affiliated Entities ...................................... 4
     Section 4-10. - Compliance Program ................................................................ 4

V.   DIRECTORS ....................................................................................................... 4
     Section 5-1. - Number, Qualification, Selection. .............................................. 4
     Section 5-2. - Powers and Responsibilities. ...................................................... 5
     Section 5-3. - Compensation. ............................................................................ 6
     Section 5-4. - Conflict of Interest ..................................................................... 7

VI.  MEETINGS ......................................................................................................... 7
     Section 6-1. - Regular Meetings. ....................................................................... 7
     Section 6-2. - Special Meetings. ........................................................................ 7
     Section 6-3. - Annual Organizational Meeting. ................................................ 7
     Section 6-4. - Place of Meetings. ...................................................................... 7
     Section 6-5. - Notice. ......................................................................................... 7
     Section 6-6. - Quorum ....................................................................................... 8
     Section 6-7. - Manner of Acting. ....................................................................... 8
     Section 6-8. - Presiding Officer. ........................................................................ 8
     Section 6-9. - Action in Lieu of Meeting. .......................................................... 8
     Section 6-10. - Telephonic Meetings. ................................................................ 8

Subp 00238

VII.  OFFICERS............................................................................................................9
    Section 7-1. - General. ..................................................................................9
    Section 7-2. - Qualification, Election and Term of Office.............................9
    Section 7-3. - Subordinate Officers, Etc. ....................................................9
    Section 7-4. - Resignation..............................................................................9
    Section 7-5. - Vacancies.................................................................................9
    Section 7-6. - Chair.........................................................................................9
    Section 7-7. - Vice-Chair .............................................................................10
    Section 7-8. - Chief Executive Officer.........................................................10
    Section 7-9. - Treasurer. ...............................................................................11
    Section 7-10. - Secretary. .............................................................................11
VIII.  COMMITTEES .....................................................................................................11
    Section 8-1. - General. .................................................................................11
    Section 8-2. - Executive Committee. ...........................................................12
    Section 8-3. - Finance Committee ...............................................................12
    Section 8-4. - Nominating Committee ..........................................................14
    Section 8-5. - Joint Conference Committee. ................................................14
    Section 8-6. - Ad Hoc Committees. .............................................................15
    Section 8-7. - Hospital Foundation. .............................................................15

IX.  PROVISION OF MEDICAL, DENTAL, AND PODIATRIC CARE.....................18
    Section 9-1. - Responsibility for Medical Care............................................18
    Section 9-2. - Medical Staff Organization. ..................................................20
    Section 9-3. - Medical Staff Bylaws. ...........................................................22
    Section 9-4. - Hearing and Appeals. ............................................................22
    Section 9-5. - Professional Liability Insurance. ...........................................23
X.  RECORDS, REPORTS AND INSPECTION RIGHTS .......................................23
    Section 10-1. - Maintenance of Articles and Bylaws....................................23
    Section 10-2. - Maintenance of Other Corporation Records. .......................23
    Section 10-3. - Inspection by Directors or General Member. .......................23
XI.  EXECUTION OF DOCUMENTS.................................................................................24
XII.  TRANSACTIONS REQUIRING APPROVAL OF THE GENERAL MEMBER .............24
    Section 12-1. - Matters Requiring Approval.................................................25
    Section 12-2. - Other Major Activities. ........................................................25
    Section 12-3. - Approvals. ............................................................................26

Subp 00239

Section 12-4. - Other Actions Requiring Approval of the General Member. ...................26

XIII.  AUXILIARIES AND RELATED GROUPS .................................................................26
      Section 13-1. - Establishment. .............................................................................27
      Section 13-2. - Board Approval. ..........................................................................27

XIV.  BONDING AND INDEMNIFICATION ...........................................................................27
      Section 14-1. - Bonding. .......................................................................................27
      Section 14-2. - Indemnification. ...........................................................................27

XV.  AMENDMENTS...................................................................................................................27

EXHIBIT 4.3 - CASH CONCENTRATION AND CONTROLLED DISBURSEMENTS POLICY

EXHIBIT 4.4 - EQUITY CASH TRANSFER POLICY

Subp 00240

AMENDED AND RESTATED

BYLAWS

MEMORIAL HOSPITAL LOS BANOS

## I. NAME

The name of the Corporation shall be as listed in the Restated Articles of Incorporation, namely, Memorial Hospital Los Banos, a nonprofit public benefit corporation, organized under the laws of the State of California. References in these Bylaws to "Corporation" shall mean Memorial Hospital Los Banos unless otherwise specified.

The principal office of the Corporation shall be located in Merced County, California and the principal place of business shall be located in or near Los Banos, California.

## II. PURPOSES

This Corporation was formed for the purposes set forth in its Restated Articles of Incorporation, which are as follows:

A.   To establish, equip and maintain one or more nonprofit hospitals, medical centers, institutions or other places for the reception and care of the sick, injured, and disabled, with permanent facilities that include inpatient beds and medical services ("hospital"); to provide diagnosis and treatment for patients; and to provide associated services, outpatient care and home care in furtherance of this corporation's charitable purposes;

B.   To promote and carry on educational activities related to the care of the sick, injured, and disabled, or to the promotion of health;

C.   To promote and carry out scientific research related to the care of the sick, injured, and disabled;

D.   To promote or carry out such other activities as may be deemed advisable for the betterment of the general health of the community served; and

E.   To contribute to the growth, development, and financial strength of Sutter Health.

Subp 00241

## III.  MEMBERSHIP

Section 3-1. - General Member.

There shall be one member of this Corporation who shall be Memorial Hospitals Association ("General Member").  The General Member, and only the General Member, shall be entitled to exercise fully all rights and privileges of members of nonprofit corporations under the California Nonprofit Public Benefit Corporation Law, and all other applicable laws.  The rights and powers of the General Member shall also include, without limitation, the following:  the limitation on liabilities described in Section 3-4 of these Bylaws, the rights and powers to appoint (and remove) the appointed members of the Board of Directors, subject to Section 12-4 of these Bylaws; and exercise of all of the rights and powers set forth in Article XII of these Bylaws.  The General Member may not be expelled or suspended as the General Member without its consent.

Section 3-2. - Transfer of Membership.

The General Member may not transfer its membership or any rights arising therefrom.

Section 3-3. - Exercise of Membership Rights.

The General Member of this Corporation shall exercise its membership rights through its own Board of Directors.  Subject to the provisions of the General Member's bylaws, the Board of Directors of the General Member may, by resolution, authorize a person or committee of persons to exercise its vote on any matter to come before the membership of this Corporation.  In addition, the General Member may exercise its membership rights at any regular or special meeting of the Board of Directors of the General Member.  The functions required by law or these Bylaws to be performed at the annual membership meeting or any regular or special meeting of the members of this Corporation may be performed at any regular or special meeting of the General Member's Board of Directors.

Section 3-4. - Liabilities and Assessments.

The General Member shall not be liable for the debts of this Corporation.  The Board of Directors shall have no power to levy and collect assessments upon the General Member.  The provisions of this paragraph cannot be amended in any manner.

## IV.  SYSTEM AFFILIATION

Section 4-1. - Affiliated Status.

This Corporation became an affiliate of Memorial Hospitals Association, a California nonprofit public benefit corporation (the "General Member"), on June 30, 1994.  Memorial Hospitals Association subsequently affiliated with Sutter Health, a California nonprofit public benefit corporation, on May 1, 1996.  This Corporation is one of several affiliated corporations that comprise a multi-institutional health care system ("System").

Subp 00242

Section 4-2. - Participation in Activities of the General Member.

The Board of Directors shall submit nominees to the General Member in order to enable the General Member to appoint members of this Corporation's Board to serve on the General Member's corporate Board of Directors and/or its Board committees.

Section 4-3. - Cash Concentration.

Subject to the provisions of Section 4-8 of these Bylaws, the Corporation shall participate in the Cash Concentration and Controlled Disbursements Program prescribed by Sutter Health and in effect from time to time. A copy of the program in effect at the time of the adoption of these Bylaws is attached as Exhibit 4.3.

Section 4-4. - Equity Cash Transfer Policy.

Subject to the provisions of Section 4-8 of these Bylaws, the terms of the Equity Cash Transfer Policy contained in Exhibit 4.4 to these Bylaws are incorporated into and made part of these Bylaws. Neither donor originated funds nor the earnings therefrom shall be subject to the Equity Cash Transfer Policy.

Section 4-5. - Payment of Allocation Fee.

Subject to the provisions of Section 4-8 of these Bylaws, this Corporation shall pay the allocation fees necessary to maintain the operation of Sutter Health.

Section 4-6. - Cost of Capital Allocation Policy.

Subject to the provisions of Section 4-8 of these Bylaws, the Corporation shall participate in the Cost of Capital Allocation Policy prescribed by Sutter Health and in effect from time to time.

Section 4-7. - Representation on the Board of Directors.

The President and CEO of the General Member may attend any Board meeting.

Section 4-8. - Effect of Policies.

This Corporation's obligations under Sections 4-3 through 4-6 and the policies described therein shall be subject to all agreements with and obligations to third parties (including without limitation bond indentures) to which this Corporation is a party or is bound at the time these Restated Bylaws are adopted or which are otherwise approved by the General Member after the adoption of these Restated Bylaws.

Subp 00243

Section 4-9. - Policies Required of Affiliated Entities.

Except for tax-exempt entities which are primarily fundraising foundations, this Corporation shall prescribe the policies described in Sections 4-3 through 4-6 to the tax-exempt entities which this Corporation owns or controls or which this Corporation is a member. As to those owned, controlled, or membership entities, the policies shall be subject to all agreements with and obligations to third parties, Healthcare Districts and any other member of the affiliated entity (including without limitation bond indentures) to which the entity is a party or is bound at the time these Restated Bylaws are adopted or which are otherwise approved by the General Member after the adoption of these Restated Bylaws.

Section 4-10.  Compliance Program.

Corporation shall adopt a Compliance Program consistent with Sutter Health Compliance Program Plan which shall include the following:

A.   All Board Members shall receive Compliance training consistent with Sutter Health Compliance Program Plan.

B.   The Board shall have oversight of and ultimate responsibility for an effective Compliance Program including adoption of related compliance policies.

C.   The Board or a Committee of the Board shall receive and review routine and special Compliance reports on a regular basis.

D.   The Board shall delegate to Corporation's chief executive officer responsibility to implement Compliance Program in accordance with Sutter Health Compliance Program Plan.

## V.  DIRECTORS

Section 5-1. - Number, Qualification, Selection.

A.   The Board of Directors (hereafter sometimes referred to as the "Board") shall consist of a minimum of seven (7) and a maximum of eleven (11) Directors.

B.   A majority of the members of the Board of Directors shall be residents of Merced County, California.  All members shall be appointed as herein set forth.

C.   Not more than 49% of the persons serving as members of the Board of Directors at any time may be interested persons.  An interested person is:

i.   Any person being compensated by the Corporation for services rendered to it within the previous 12 months, whether as a full-time or part-time

DEC/MHLB/Bylaws/2-04.doc                    4
MHLB/Bylaws

employee, independent contractor or otherwise, excluding any reasonable compensation paid to a Director as Director.

    ii.    Any brother, sister, ancestor, descendant, spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law, or father-in-law of any such person.

However, any violation of the provisions of this paragraph shall not affect the validity or enforceability of any transaction entered into by the Corporation.

D.    The General Member's Chief Executive Officer and or his/her designee, the Chief Executive Officer of this Corporation, the Chief of the Medical Staff of this Corporation, the immediate past Chief of Staff of the Medical Staff of this Corporation, and a representative of the General Member who is designated as such by the Chief Executive Officer of the General Member shall be *ex officio* members with full voting rights, of the Board of Directors. All other members shall be elected or appointed as herein set forth.

E.    Appointed members of the Board of Directors shall be chosen for their willingness and ability to effectively contribute to and support the objectives of the hospital. Membership on the Board should reflect a breadth of diversity of community interests that is in keeping with the broad role of the hospital in the community.

F.    The General Member shall appoint replacements for members of the Board of this Corporation whose terms will expire prior to the next annual meeting of the General Member. Directors shall be selected by the General Member from a slate of nominees selected as described in Section 12-4 of these Bylaws. Directors shall serve at the discretion of the General Member.

G.    The terms of all elected Directors shall be for three years, and appointments shall be staggered. No appointed Director may serve for more than nine consecutive years. As soon as feasible after adoption of these Bylaws, and by a method to be determined by the General Member, approximately one-third of the Directors shall be selected to serve an initial three-year term, another one-third shall be selected for a two-year term, and the remaining one-third shall be selected for a one-year term. Notwithstanding the above limitation on time of service, each Director shall hold office until his/her successor is appointed. None of these temporal provisions apply to *ex officio* Directors.

Section 5-2. - Powers and Responsibilities.

A.    Except as otherwise provided by the Articles of Incorporation or by these Bylaws, the powers of the Corporation shall be exercised, its property controlled and its affairs conducted by or under the direction of the Board of Directors.

Subp 00245

B.   Except as to those powers herein expressly reserved to the General Member by Article XII, and subject to any System wide policies adopted by Sutter Health, the General Powers of the Board of Directors shall include, but not be limited to, the following:

    i.   subject to the provisions of Sections 7-2 and 7-5, below, to select and remove officers, agents and employees of the Corporation; to prescribe powers and duties for them; to fix their compensation; and require from them security for faithful service;

    ii.   to develop annual one-year operating and three-year capital budgets, in accordance with guidelines established by the General Members;

    iii.   to approve capital expenditures outside of approved capital budgets, to a limit specified by the General Member;

    iv.   to develop and recommend corporate objectives;

    v.   to select and appoint a qualified Medical Staff and maintain a liaison therewith;

    vi.   to supervise the hospital's quality assurance activities, including all aspects of patient care evaluation, in accordance with guidelines established by the Sutter Health's Systemwide Quality Review Committee;

    vii.   to monitor and evaluate performance of the Chief Executive Officer;

    viii.   to recommend local hospital service area residents for appointment by the General Member to the Board; and

    ix.   to arrange for periodic review of its own performance.

Section 5-3. - Compensation.

Directors who are not part of the full-time management of the Corporation shall serve without compensation except for reimbursement for reasonable expenses. In keeping with the nonprofit status of the Corporation, no Director shall benefit financially from his/her position as a Board member.

Directors may be reimbursed for all out-of-pocket expenses incurred in attending meetings and carrying out duties and functions directly related to the Corporation's business.

Section 5-4. - Conflict of Interest.

The Board shall promulgate written policies regarding conflict of interest related to its own members, salaried persons in the hospital and members of the Medical Staff. Such policies shall not be inconsistent with the standards of conduct set forth in Sections 5230 through 5238 of the California Corporations Code or with the General Member's conflict of interest policies or guidelines. Such policies shall ensure full disclosure of financial interests and transactions where conflict of interest is a possibility, and shall ensure the avoidance of potential conflict of interest in choosing new Board members. Such policies shall impose upon each Board member the responsibility to be alert to possible conflicts of interest of himself or herself or of other Board members, and shall require that each Director declare his or her absence of conflict of interest on a declaration form provided for that purpose and disqualify himself or herself from making a decision where he or she has a conflict of interest.

## VI.  MEETINGS

Section 6-1. - Regular Meetings.

Regular meetings of the Board of Directors shall be held at such frequency, time, and place as the Board shall from time to time determine.

Section 6-2. - Special Meetings.

Special meetings of the Board of Directors may be called at any time on the order of the Chair, on the order of a majority of the Directors presently serving, or by the General Member.

Section 6-3. - Annual Organizational Meeting.

Annually, not later than 30 days following each annual meeting of the General Member, the Board shall meet for the purpose of electing the officers, and approving two Board members to serve on this Corporation's Nominating Committee and the members and chairpersons of Board's committees. Nominees shall be selected by this Corporation's Nominating Committee, as described in Section 8-4 of these Bylaws.

Section 6-4. - Place of Meetings.

All regular meetings of the Board of Directors, except as herein otherwise provided, shall be held at the place of business of the Corporation or such other place within the State of California as the Chair or the Directors requesting such a meeting may designate.

Section 6-5. - Notice.

Special meetings of the Board of Directors shall be held upon four days' notice to each Director by first-class mail or 48 hours' notice to each Director delivered personally or by

Subp 00247

telephone or facsimile transmission. The attendance of a Director at any meeting shall constitute a waiver of notice of the meeting, except where a Director attends a meeting only for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened.

Section 6-6. - Quorum.

A majority of the whole number of Directors presently serving and empowered to vote shall constitute a quorum for the transaction of business. However, a majority of those present at the time and place of any meeting, although less than a quorum, may adjourn the same from time to time or from day to day, without further notice, until a quorum shall attend, and when a quorum shall attend, any business may be transacted which might have been transacted at the meeting had the same been held on the day on which the same was originally appointed or called.

Section 6-7. - Manner of Acting.

The act of a majority of Directors empowered to vote and present at a meeting at which a quorum is present shall be the act of the Board of Directors, unless the act of a greater number is required by law or by these Bylaws.

Section 6-8. - Presiding Officer.

The Chair, or in his or her absence, the Vice-Chair, or in the absence of both, the Past-Chair, or in the absence of all three, a chairperson selected by the Directors present, shall call the meeting to order and shall preside.

Section 6-9. - Action in Lieu of Meeting.

Any action required or permitted to be taken by the Board of Directors may be taken without a meeting, if all members of the Board shall individually or collectively consent in writing to such action. Such written consent or consents shall be filed with the minutes of proceedings of the Board. Such action by written consent shall have the same force and effect as the unanimous vote of the Directors.

Section 6-10. - Telephonic Meetings.

Members of the Board may participate in a meeting through use of a conference telephone or similar communications equipment, so long as all Directors participating in such meeting can hear one another. Participation in a meeting, pursuant to this paragraph, constitutes presence in person at the meeting.

Subp 00248

## VII.  OFFICERS

Section 7-1. - General.

The officers of the Corporation shall be a Chair of the Board, a Vice-Chair of the Board, a Treasurer, a Chief Executive Officer, and a Secretary. Offices may be held by the same person except that neither the Treasurer nor the Secretary may serve concurrently as Chair of the Board or as the Chief Executive Officer.

Section 7-2. - Qualification, Election and Term of Office.

The Chair of the Board, Vice-Chair of the Board, Treasurer and Secretary shall be elected by the Board from among its own membership at the Annual Organizational Meeting. These officers shall serve for one-year terms or until successors have been elected, but must be elected each year. The election of the Chair is effective upon approval of the General Member. Only elected members who live in the local hospital's primary service area shall be eligible to be Chair. Officers, other than the Chair, serve at the pleasure of the Board and may be removed as an officer without cause by a majority vote of the Directors. The Chair may be removed as an officer without cause by a majority vote of the Directors and the approval of the General Member. Such removal shall not affect the officer's status as a Director.

Section 7-3. - Subordinate Officers, Etc.

The Board may appoint such other officers as the business of the Corporation may require, each of whom shall hold office for such period, have such authority and perform such duties as are required in these Bylaws or as the Board may from time to time determine.

Section 7-4. - Resignation.

Any officer may resign at any time by giving written notice to the Board, subject to the rights, if any, of the Corporation under any contract to which the officer is a party. Any such resignation shall take effect at the date of the receipt of such notice or at any later time specified therein; and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Section 7-5. - Vacancies.

A vacancy in any office because of death, resignation, removal, disqualification or any other cause shall be filled in the manner prescribed in these Bylaws for regular appointments to such office.

Section 7-6. - Chair.

The Chair shall preside at all meetings of the Board of Directors. The Chair shall exercise and perform such other powers and duties as may be prescribed by the Board of

DEC/MHLB/Bylaws/2-04.doc                             9
MHLB/Bylaws

Subp 00249

Directors from time to time. The Chair shall be an *ex officio* member of all committees. The Chair may delegate any of his or her powers to the Vice-Chair of the Corporation.

Section 7-7. - Vice-Chair.

The Vice-Chair, in the absence, inability, or refusal of the Chair to act, shall have the same powers and duties as the Chair and shall have in addition any powers and duties that the Chair from time to time delegates to him or her. He or she shall have such other powers and perform such other duties as may be assigned to him or her by the Board of Directors.

Section 7-8. - Chief Executive Officer.

A.  Appointment, Compensation and Removal. The President and CEO of the General Member shall screen candidates when the Chief Executive Officer is to be hired and shall present finalists to the Board of this Corporation for selection. The Chief Executive Officer shall be an employee of the General Member. The Executive Committee of the Board of this Corporation shall meet with and provide an evaluation of the Chief Executive Officer and shall make compensation recommendations, based on an agreed upon salary system and survey process, to the President and CEO of the General Member, or his or her designee, who shall make the final determination. The Chief Executive Officer shall serve at the pleasure of the General Member, acting through its President and CEO, and the Board of this Corporation, each of which, with the approval of the other, may terminate the services of the Chief Executive Officer.

B.  Responsibilities and Authority The Chief Executive Officer shall be the general manager, chief executive officer and Administrator of this Corporation. The Chief Executive Officer shall be given the necessary authority and responsibility to operate this Corporation in all of its activities, including without limitation, quality of services, cost effectiveness and economic performance and implementation of System strategies, subject to the following: With respect to policy development, program planning, employee and community relations, the Chief Executive Officer shall be subject to such policies as may be adopted and such orders as may be issued by the Board of this Corporation or by any of its committees to which the Board has delegated the power for such action; with respect to program execution and overall management performance, the Chief Executive Officer shall be subject to the authority of and shall report to the Board; with respect to strategies of the local delivery system operated by this Corporation and overall operations of that system, the Chief Executive Officer shall be responsible to the President and CEO of the General Member. The Chief Executive Officer shall also periodically report to the President and CEO of the General Member or his/her designee on the affairs of this Corporation. The Chief Executive Officer shall act as the duly authorized representative of the Board of this Corporation in all matters in which the Board has not formally designated some other person to so act.

Subp 00250

C.    Ex-Officio Board Membership.  The Chief Executive Officer shall be an *ex-officio* voting member of the Board of this Corporation.

## Section 7-9. - Treasurer.

The Treasurer, acting with the CEO, shall ensure that a true and accurate accounting of the financial transactions of the hospital is made, that reports of such transactions are presented to the Executive Committee or the Board and that all accounts payable are presented to such representatives as the Executive Committee may designate for authorization of payment.  The books of account shall at all times be open to inspection by any member of the Board and by the General Member.  When requested by the Chair, the Treasurer shall render an account of the financial condition of the Corporation and shall perform all other duties required of him or her by the Chair, Directors, and committees pertaining to his or her office or incident to the position of Treasurer.

## Section 7-10. - Secretary.

The Secretary shall cause appropriate notices and agendas to be prepared and sent for all meetings of the Board of Directors; shall act as custodian of all records and reports; shall be responsible for the keeping and reporting of adequate records of all meetings of the Board of Directors; and shall certify to the correctness of any corporate bylaws or resolutions.  The Board may appoint such Assistant Secretaries as deemed appropriate, each of whom shall have authority to sign documents on behalf of and in the absence or unavailability of the Secretary.

## VIII.   COMMITTEES

## Section 8-1. - General.

Except as specified in these Bylaws or in any resolution creating an additional committee, the members and chair of each committee shall be elected by the Board of Directors at the Annual Organizational Meeting of the Board.  The chair and all other members of each committee shall hold office for one year, or until their successors are elected.  Except as specified for the Executive Committee, the Chair of the Board shall have the power to fill any vacancies that occur on committees for the remainder of the year.

Except for the Executive Committee, persons may be appointed to committees who are not members of the Board or employees of the Corporation.  Such persons may serve as officers of their committees.  The Chair of the Board, or his or her designee, shall be an advisory and consulting member of each committee and all committees deliberating on issues affecting the discharge of Medical Staff responsibilities shall include, in at least an advisory and consulting capacity, a physician member of the Medical Staff.

The provisions of Sections 6-5, 6-6, 6-7, and 6-9 of these Bylaws, regarding notice, quorum, manner of acting, and action in lieu of a meeting, shall apply to committees of the Board.

Subp 00251

All committees of the Board shall keep minutes of their meetings, which shall be filed with the Secretary of the Board.

Section 8-2. - Executive Committee.

    A.    Composition.

        The Executive Committee shall consist of the Chair of the Board who shall serve as Chair of the committee, the Vice-Chair, the Secretary, the President and CEO of the General Member or his/her designee, the Treasurer, and the Chief Executive Officer.

    B.    Responsibilities and Authority.

        The affairs and management of the Corporation shall be supervised by the Executive Committee which shall have power to transact all regular business of the Corporation during the period between meetings of the Board, subject to any prior limitations imposed by the Board and subject to the limitations of Section 5212(a) of the California Corporations Code, or any successor provision. Additionally, the Executive Committee shall review the corporate Bylaws and recommend revisions as necessary (and at least every two years) to ensure compliance with applicable statutes, regulations, and accreditation requirements. Additionally, the Executive Committee shall be responsible for handling all employment matters regarding the Chief Executive Officer, including hiring, termination and periodic performance evaluation.

    C.    Accountability.

        The Executive Committee shall report to each regular Board meeting the results of actions that it has taken within the authority delegated to it, so that the Board maintains accountability from the Executive Committee for its actions.

Section 8-3. - Finance Committee.

    A.    Composition.

        The Finance Committee shall consist of at least three members of the Board, the Treasurer, and one representative of the Medical Staff. The Treasurer shall serve as Chair of the Committee.

    B.    Responsibilities and Authority.

        This committee shall be responsible for the following financial and planning matters:

Subp 00252

i.  This committee shall be responsible for supervising the management of the pension funds, and for overseeing the management of the Corporation's assets and ensuring that financial records are maintained in accordance with Generally Accepted Accounting Principles. It shall see that an annual operating budget covering a one-year period and an annual capital budget covering a three-year period are prepared and submitted to the Board of Directors in accordance with the schedules established in the Systemwide Annual Budget Calendar. The Finance Committee shall examine the monthly financial reports and require explanations from the Chief Executive Officer of variations from the budget. The committee shall also supervise and review the results of all outside audits, and recommend action thereon, if any, to the Board.

ii.  The committee shall also:

    a.  Consider and recommend plans for securing capital and operating funds for the Corporation;

    b.  Assist in the preparation and modification of long-range and short-range development plans to assure that the total health care program is attuned to meeting the health needs of the community served by the Corporation, including periodic reexamination of the Corporation's purposes, goals, policies and current programs for delivery of health services;

    c.  Review the financial feasibility of, and availability of resources for, corporate projects, acts, and undertakings referred to it by the Board of Directors and make recommendations thereon to the Board; and

    d.  Perform such other duties related to fiscal and planning matters as may be assigned to it by the Board or its Chair.

The committee shall exercise its responsibilities and authority in a manner consistent with any guidelines or policies established by the General Member's Corporate Resources Committee or by Sutter Health's Finance and Planning Committee.

C.  Accountability.

This committee shall report monthly or as often as necessary, at regular meetings of the Board or the Executive Committee, its findings on monthly reports of the fiscal operation. It shall present annually to the Board a report reflecting anticipated operating and capital expenditures and receipts for the ensuing year,

Subp 00253

and such other budgets and planning reports as requested by the Board.

Section 8-4. - Nominating Committee.

    A.    Composition.

        The Nominating Committee shall consist of the Chair of the Board, the Chief Executive Officer, and two other members of the Board to be elected at each Annual Organizational Meeting of the Board. The Chair of the Board shall serve as Chair of this committee.

    B.    Responsibilities and Authority.

        The Nominating Committee shall recommend to the Board nominees for membership on the Board of this Corporation (including nominees to fill vacancies created by expiration of a term as well as by resignation, removal, or death); shall recommend nominees for the officers of this Corporation, two members of the Nominating Committee, and the members and chairs of the committees to be elected at the Annual Organizational Meeting, as described at Section 6-3 of these Bylaws. The Committee shall arrange for periodic review and evaluation of the Board members' performance, and of the Board as a whole. The Committee shall meet as often as necessary, and in sufficient time to ensure that this Corporation's nominees are timely submitted to the General Member for its action.

    C.    Accountability.

        The Nominating Committee shall report to the Board as often as necessary, but at least annually.

Section 8-5. - Joint Conference Committee.

    A.    Composition.

        The Joint Conference Committee shall consist of the Chief of the Medical Staff, immediate Past-Chief of the Medical Staff, and one other member of the Medical Staff appointed by the Chief of the Medical Staff, and approved by the Medical Staff's Executive Committee, and four (4) Directors elected by the Board. The Chief Executive Officer shall be an ex-officio member of this committee. During their respective terms on the committee, each of the Officers and members of the Joint Conference Committee shall hold office at the pleasure of the Board until his or her successor shall have been appointed and approved. One of the four Directors elected by the Board shall be designated by the Board to serve as Chair of this committee.

Subp 00254

B.    Responsibilities and Authority.

The Joint Conference Committee shall conduct itself as a forum for the discussion of hospital operations and effective patient care, and shall provide medico-administrative liaison with the Board and the Chief Executive Officer. The function of this Committee shall not be to make policy, but to recommend on particular matters to the Board and the Medical Staff when considered appropriate on matters which concern both the Board and the Medical Staff. The Joint Conference Committee shall meet as needed as considered necessary by the Chief of the Medical Staff or the Chair of the Board and the Chief Executive Officer.

C.    Accountability.

The Joint Conference Committee shall submit written reports of its activities to the Board and to the Medical Staff as often as necessary.

Section 8-6. - Ad Hoc Committees.

A.    Composition.

Ad hoc committees may be appointed by the Board for such special purposes as circumstances warrant. Individuals not on the Board but having special knowledge or background may be appointed to serve on such committees.

B.    Responsibilities and Authority.

Activities of such a committee shall be limited to the accomplishment of those tasks for which it was appointed. The committee shall have no powers except those specifically conferred by the Board of Directors. As with all committees, management and staff shall provide the resources for ad hoc committees.

C.    Accountability.

All ad hoc committees shall report directly to the Board of Directors. Upon completion of the stated purpose for which it was formed, the committee shall be discharged.

Section 8-7. - Hospital Foundation.

A.    Number and Selection of Foundation Board.

There shall be 10-15 members of the Memorial Hospital Los Banos Foundation Board ("Foundation Board"), all of whom shall be selected by the Memorial Hospital Los Banos Board of Trustees.

Subp 00255

In addition, The Chief Executive Officer, Chief Financial Officer, Director of Development and Development Coordinator for Memorial Hospital Los Banos shall be *ex officio* voting members of the Foundation Board. All *ex officio* Foundation Board members serve by reason of official capacity, and the resignation or removal of any such person from office shall automatically terminate such person's membership on the Foundation Board.

The remaining members of the Foundation Board shall consist of the following: at least one physician from the medical staff of Memorial Hospital Los Banos; one "at-large" member of the Board of Trustees, who shall be appointed by the Chairperson of the Board of Trustees; eight to thirteen members who broadly represent Memorial Hospital Los Banos and who are experienced in organizational and community activities, to be nominated by the Foundation Board and approved by the Memorial Hospital Los Banos Board of Trustees.

Not more than forty-nine percent (49%) of the Foundation Board members shall be persons currently compensated by Memorial Hospital Los Banos (excluding any reasonable compensation paid such person as a director) or any close relative of such person.

  i.    Term. Each Foundation Board member (other than *ex officio* members) shall hold office for a term of (3) three years, or until his or her successor has been elected or appointed, and thereafter qualified. A Foundation Board member may not serve more than three (3) consecutive terms. No more than forty-nine percent (49%) of current Foundation Board members shall vacate their term at one time.

  ii.   Vacancies. A vacancy on the Foundation Board, whether by death, resignation or removal may be filled by the Board of Trustees at a regular or special meeting of the Board. The Nominating Committee of the Board of Trustees shall nominate persons to fill such vacancies as they occur. A Foundation Member appointed to fill a vacancy shall be appointed in accordance with the qualifications set forth in this Section and shall be appointed for the unexpired term of his or her predecessor.

B.   Duties and Authority of Foundation Board.

Except to the extent that such duties are exercised by the Board of Trustees, the Foundation Board shall have the following duties and powers:

  i.    To identify and be attentive to the needs of Memorial Hospital Los Banos by communicating with staff, physicians, volunteers, patients and community members;

Subp 00256

ii.    Convey the not-for-profit message of Memorial Hospital Los Banos through community education and involvement;

iii.    Develop resources, funding and support for the benefit of Memorial Hospital Los Banos and the health services it provides;

iv.    To solicit, receive and maintain gifts of money and property and to distribute money and property to Memorial Hospital Los Banos; and

v.    To engage in and conduct charitable and educational activities related to Memorial Hospital Los Banos and the health services it provides.

C.    <u>Advisory Role.</u>

The Foundation Board shall advise the Board of Trustees with respect to charitable and educational activities. Such advice may include, but is not limited to, all matters and decisions that are related to the Foundation Board's purposes as stated above in Section B.

D.    <u>Organization.</u>

The Foundation Board shall establish and by resolution, rule, or regulation provide for its organization, policies and procedures pertinent to all activities assigned to it by these Bylaws, or as may be delegated to it from time to time by the Board of Trustees. Such organization may include, but is not limited to, the times, places and occasions of regular and special meetings of the Foundation Board (including telephonic meetings), actions by the written consent of its members in lieu of a meeting, the quorum required for the conduct of its business, the title and function of the officers of the Foundation Board.

The Chairperson of the Board of Trustees shall have the right to receive notice of, and attend (without vote) meetings of the Foundation Board.

Written minutes of the Foundation Board meetings shall be provided to the Board of Trustees.

E.    <u>Meetings.</u>

i.    <u>Regular Meetings.</u> Regular meetings of the Foundation Board shall be held at such frequency, time and place as the Foundation Board shall from time to time determine.

ii.    <u>Special Meetings.</u> Special meetings of the Foundation Board may be called at any time on the order of the Chair or on the order of three (3) Trustees.

Subp 00257

iii.   Annual Organizational Meetings.  Annually, within thirty (30) days following each annual organizational meeting of the Board of Trustees, the Foundation Board shall meet for the purpose of electing officers, appointing committee members and conducting such other organizational business as required.

iv.   Location:  All regular meetings of the Foundation Board shall be held at Memorial Hospital Los Banos or other such place within the State of California as the Foundation Chair or Foundation Board Members requested such meeting may designate.

v.   Notice of Meetings.  Notice of a time and place of any organizational meeting, regular meeting or special meeting shall be delivered personally, communicated by telephone, facsimile machine, or electronic mail or sent to each Foundation Member by first-class mail.

vi.   Quorum.  A majority of the Foundation Board members shall constitute a quorum at any meeting of the Foundation Board.  The act of the majority of the voting power present at any meeting at which a quorum is present shall be considered the act of the Foundation Board.

A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of Foundation Members, if any action is approved by at least a majority of the required quorum for such meeting, or such greater number as is required by these bylaws.

F.   Compensation of the Foundation Board Members.

Members of the Foundation Board shall serve without compensation.

## IX.  PROVISION OF MEDICAL, DENTAL, AND PODIATRIC CARE

### Section 9-1. - Responsibility for Medical Care.

A.   The Board of Directors is responsible for the quality of medical, dental, podiatric, and clinical psychological care rendered in the hospital.  It shall discharge that responsibility by assuring that the organized Medical Staff carries out the specific quality control functions in accordance with guidelines established by Sutter Health's Systemwide Quality Review Committee and subject to Section 9-11 below, including, without limitations, the following:

i.   Reviewing, analyzing, and evaluating clinical practice to determine the quality of medical care;

Subp 00258

ii.   Making recommendations to management and the Board for the establishment, maintenance, continuing improvement, and enforcement of professional standards;

iii.  Reporting regularly on the quality of medical care in terms of professional standards;

iv.   Recommending the appointment and reappointment of physicians, dentists, podiatrists, and clinical psychologists to the Medical Staff and the delineation of their clinical privileges;

v.    Supervising and ensuring:

    a.   Compliance with the bylaws, rules and regulations for the Medical Staff; and

    b.   Carrying out the policies of the hospital concerning the functions outlined in those Medical Staff bylaws;

vi.   Disciplining the members of the Medical Staff for violations of policies of the hospital and the Medical Staff bylaws, rules and regulations, within the limitations of the authority delegated by the Board of Directors;

vii.  Assisting in identifying community health needs and setting appropriate institutional goals to meet those needs; and

viii. Conducting formally structured ongoing programs of continuing medical education designed to meet the highest professional standards of care.

B.   The Chief of the Medical Staff of this Corporation shall be responsible for the effective discharge of functions to be carried out by the Medical Staff.

C.   The Chief of the Medical Staff of this Corporation shall have the authority necessary to carry out his or her responsibilities and it shall be defined in the bylaws for the Medical Staff.

D.   The Chief of the Medical Staff of this Corporation shall be accountable to the Chief Executive Officer.

E.   The Board of Directors shall be responsible for:

    i.   Making all appointments and reappointments to the Medical Staff and alterations of staff status;

Subp 00259

    ii.    Granting clinical privileges;

    iii.    Disciplinary actions; and

    iv.    All matters relating to Medical Staff professional competence.

F.    In discharging these responsibilities, the Board of Directors shall:

    i.    Assure that the safety and interest of the patients takes precedence over all other concerns; and

    ii.    Always request, but not be bound by, recommendations from the Medical Staff officials and the Executive Committee of the Medical Staff.

G.    The Board of Directors shall, through the Medical Staff organization and the functions assigned to it, maintain systems for:

    i.    The establishment of professional standards and criteria by which to evaluate medical care;

    ii.    The continuing surveillance of professional practice and Medical Staff functions in order to determine the degree to which those professional standards and criteria are being met; and

    iii.    Gaining compliance with the predetermined standards and criteria when the systems of surveillance indicate they are not being met.

H.    No delegation to the Medical Staff shall preclude the Board of Directors from exercising the authority required to meet its responsibilities under these Bylaws.

I.    Nothing is these Bylaws or the General Member's guidelines or policies shall prevent this Corporation from adopting and implementing higher standards than those established by the Systemwide Quality Review Committee.

## Section 9-2. - Medical Staff Organization.

A.    <u>Purposes.</u>

The Board of Directors shall organize, or cause to be organized, a Medical Staff, comprised of physicians, dentists, and podiatrists for the following purposes:

    i.    To serve as the primary means for accountability to the Board for the appropriateness of the professional performance and ethical conduct of its members and affiliates;

Subp 00260

ii.    To discharge specific quality control functions designated to ensure the continual upgrading of the quality of medical, dental, and podiatric care rendered by the Medical Staff while at the same time assuring that the safety and interest of the patients shall take precedence over all other concerns; and

iii.   To provide a structure whereby the Medical Staff members can become an integral part of the total hospital organization and participate in the institution's planning, policy setting, and decision making processes.

B.    <u>Functions</u>.

In fulfilling the purposes of the Medical Staff organization, the functions as stated in Section 9-1A of these Bylaws shall be carried out.

C.    <u>Officials</u>.

i.    <u>Medical Staff and Department Officers</u>.

The Medical Staff bylaws shall provide for the selection of Medical Staff and department officers.

ii.   <u>Medico-Administrative Officers</u>.

A medico-administrative officer is a practitioner engaged by the hospital on a full or part-time basis for both administrative and clinical duties. Clinical responsibilities are defined as those involving professional capability as a practitioner, such as to require the exercise of clinical judgment with respect to patient care, and may include supervision of professional activities of other practitioners.

A practitioner engaged in a purely administrative capacity with no clinical duties or privileges is subject to the regular personnel policies of the hospital and to the specific terms of his or her contract or other conditions of engagement, and need not be a member of the Medical Staff. A medico-administrative officer, however, must be a member of the Medical Staff, with clinical privileges delineated in accordance with the Medical Staff bylaws. His or her Medical Staff membership and clinical privileges shall not depend upon continued occupation as a medico-administrative officer, unless otherwise provided by contract or other agreement.

iii.  <u>Tenure</u>.

The Chief of the Medical Staff of this Corporation shall hold office for a one year term and may serve up to two consecutive terms in that office if

Subp 00261

re-elected by the Medical Staff.  Each medico-administrative officer shall serve for such term as provided by contract or other agreement.

## Section 9-3. - Medical Staff Bylaws.

A.    Purpose of Bylaws.

There shall be bylaws for the Medical Staff.  The bylaws shall state the purpose and functions of the Medical Staff organization and they shall be in consonance with the purposes and functions of the Medical Staff organization stated herein. The bylaws for the Medical Staff shall provide an organizational framework necessary for the implementation of appropriate quality control programs as dictated by the prescribed functions of the Medical Staff organization.  The bylaws shall define relationships, responsibilities, authority and methods of accountability for each Medical Staff official, department and committee.  The bylaws will specifically assure that only a member of the Medical Staff with admitting privileges shall admit patients to the hospital; that only an appropriately licensed practitioner with clinical privileges shall be directly responsible for a patient's diagnosis and treatment within the area of his or her privileges; that each patient's general medical condition shall be the responsibility of a physician member of the Medical Staff; that each patient admitted to the hospital shall receive a baseline history and physical examination by a physician who is either a member of or approved by the Medical Staff; and that other direct medical care of patients provided by allied health professionals, residents, and medical students shall be under the appropriate degree of supervision by a licensed practitioner with clinical privileges.

B.    Writing of Medical Staff Bylaws.

The Medical Staff, through its officials and appropriate committees, shall be required to submit bylaws, rules and regulations for the Medical Staff organization in accordance with the requirements as set forth in this Article.

The Medical Staff shall periodically review and, as necessary, submit revisions to its bylaws, rules and regulations.

C.    Approval of Bylaws.

All such bylaws, rules and regulations for the Medical Staff shall be approved by the Board whose approval shall not be unreasonably withheld before becoming effective.

## Section 9-4. - Hearing and Appeals.

The Board of Directors shall assure that each member of the Medical Staff shall be

Subp 00262

afforded fair procedure with respect to all appointment and reappointment procedures and the granting, revocation, rescinding, reduction, removal, or denial of Medical Staff privileges. The steps for affording such fair procedure to each member of the Medical Staff shall be carefully defined in the bylaws for the Medical Staff, and shall provide in detail for hearing and appeal procedures, and for notice to the aggrieved practitioner of his or her access to those procedures.

Section 9-5. - Professional Liability Insurance.

The Board of Directors shall ensure that each practitioner granted clinical privileges in the Hospital shall maintain professional liability insurance in not less than the minimum amounts as from time to time may be determined by the Board, based upon the recommendation of the Medical Staff Executive Committee. Subject to the approval of the Board, the Chief Executive Officer may, for good cause shown by a practitioner, temporarily waive this requirement with regard to such practitioner; provided that any such waiver is not granted or withheld on an arbitrary, discriminatory, or capricious basis. For purposes of this section, "good cause" shall be related to a practitioner's inability to reasonably obtain the required coverage due to arbitrary action of an insurer, and shall include consideration of the practitioner's ability to demonstrate alternative means of satisfying financial responsibilities in the event of professional negligence. The minimum amount of required coverage established pursuant to this provision shall not exceed the amount of professional liability insurance carried by the Hospital.

## X.  RECORDS, REPORTS AND INSPECTION RIGHTS

Section 10-1. - Maintenance of Articles and Bylaws.

The Corporation shall keep at its principal office the original or a copy of the Articles of Incorporation and of the Bylaws as amended to date.

Section 10-2. - Maintenance of Other Corporation Records.

The accounting books, records and minutes of proceedings of the Board of Directors and any committee(s) of the Board of Directors shall be kept at such place or places designated by the Board of Directors, or, in the absence of such designation, at the principal executive office of the Corporation. The minutes shall be kept in written or typed form, and the accounting books and records shall be kept in either written or typed form, or in any other form capable of being converted into written, typed or printed form.

Section 10-3. - Inspection by Directors or General Member.

Except as otherwise limited by law, every Director and the General Member shall have the absolute right at any reasonable time to inspect all books, records, and documents of every kind and the physical properties of the Corporation. This inspection by a Director or the General Member may be made in person or by an agent or attorney, and the right of inspection includes the right to copy and make extracts of documents.

Subp 00263

## XI. EXECUTION OF DOCUMENTS

The following persons shall be authorized to execute any deeds, mortgages, bonds, contracts, or other instruments which the Board has authorized to be executed:

A.    Any officer or other person duly authorized by resolution of the Board to execute documents; or

B.    In the absence of express authorization by Board resolution, the Chair or Vice-Chair, and the Secretary or any Assistant Secretary (all subject to such limitations as may be imposed by resolution of the Board).

## XII. TRANSACTIONS REQUIRING APPROVAL OF THE GENERAL MEMBER

Section 12-1. - Matters Requiring Approval.

Neither the Board nor any officer or employee of the Corporation, which is an affiliated institution of the General Member, may take any of the following actions without the prior approval of the General Member:

A.    Merger, consolidation, reorganization, or dissolution of this Corporation or any subsidiary or affiliate entity.

B.    Amendment or restatement of the Articles of Incorporation or the Bylaws of this Corporation or any subsidiary or affiliate entity;

C.    Adoption of operating budgets of this Corporation or any subsidiary or affiliate entity, including consolidated or combined budgets of this Corporation and all subsidiary organizations of the Corporation;

D.    Adoption of capital budgets of this Corporation or any subsidiary or affiliate entity;

E.    Aggregate operating or capital expenditures on an annual basis that exceed approved operating or capital budgets by a specified dollar amount to be determined from time to time by the General Member;

F.    Long-term or material agreements including, but not limited to, borrowings, equity financings, capitalized leases and installment contracts; and purchase, sale, lease, disposition, hypothecation, exchange, gift, pledge, or encumbrance of any asset, real or personal, with a fair market value in excess of a dollar amount to be determined from time to time by the Directors of General Member, which shall not be less than 10% of the total annual capital budget of the corporation;

Subp 00264

G.   Appointment of an independent auditor and approval of independent counsel except in conflict situations between General Member and an affiliate;

H.   The creation or acquisition of any subsidiary or affiliate entity;

I.   Contracting with an unrelated third party for all or substantially all of the management of the assets or operations of this Corporation or any subsidiary or affiliate entity;

J.   Approval of major new programs and clinical services of this Corporation or any subsidiary or affiliate entity.  General Member shall from time to time define the term "major" in this context;

K.   Approval of strategic plans of this Corporation or any subsidiary or affiliate entity;

L.   Adoption of quality assurance policies not in conformity with policies established by the General Member;

M.   Any transaction between the this Corporation, a subsidiary or affiliate and a director of this Corporation or an affiliate of such director;

## Section 12-2. - Other Major Activities.

A.   In addition, the General Member shall have the authority, except as otherwise provided by the General Member and after consultation with this Corporation, to require the prior review and approval of those activities of this Corporation or any subsidiary or affiliate entity which the General Member determines to be major activities.

B    "Major activities" shall be those which the General Member by a vote of not less than two-thirds (2/3) of its Board of Directors has declared major, by written notice to this Corporation, delivered personally or deposited by registered or certified mail, return receipt requested.  Such notice shall specifically identify the matter or matters requiring approval of the General Member, and shall refer to this bylaw provision granting such approval rights to the General Member.  Notices received pursuant to this section shall be recorded in the minutes of this Corporation and shall be filed with the minutes of this Corporation.

## Section 12-3. - Approvals.

The General Member's approval or disapproval of matters described in Section 12-1 or 12-2 above, shall be recorded in or filed with the minutes of this Corporation.  The approval of the General Member of any action of this Corporation for which General Member approval is required under these Bylaws shall not be inferred from the General Member's failure affirmatively to disapprove of a proposed action of this Corporation within a specified time period.

DEC/MHLB/Bylaws/2-04.doc                 25
MHLB/Bylaws

Section 12-4. - Other Actions Requiring Approval of the General Member.

A.   Vacancy. Any vacancy occurring on the Board of this Corporation shall be filled
     by an appointee of the General Member from nominees selected as described in
     subsection C of this Section 12-4 of these Bylaws.

B.   Removal. Any non-*ex-officio* Director or Director of this Corporation's Board
     may be removed from office by the General Member; provided, however, the
     General Member shall notify this Corporation's Board, and give it an opportunity
     to respond in the manner and subject to the terms and conditions described herein,
     prior to any such proposed removal.

C.   Nominations. Nominations of Directors for the Board of this Corporation,
     including but not limited to nominations for full terms, and nominations to fill
     vacancies created by resignation, removal, or death occurring during a term, shall
     be made by the Board of this Corporation to the General Member. The Board of
     this Corporation shall consider the recommendations of the Nominating
     Committee when the Board presents its nominees to the General Member. The
     General Member may accept any candidate proposed by the Board, reject any and
     all candidates with instructions to reconsider, or propose its own candidate. In the
     event the General Member proposes its own candidate, it shall give the Board
     thirty (30) days to accept or reject the General Member's proposed candidate. In
     the event the Board does not act within thirty (30) days, the General Member's
     selection shall become effective. If the Board rejects the General Member's
     proposed candidate, the disagreement shall be mediated by an independent
     mediator acceptable to both parties. Both this Corporation and the General
     Member shall participate in good faith in such mediation. Notwithstanding any
     other provision of these bylaws, if the disagreement is not resolved within the
     sixty (60) days after Board's rejection of the General Member's proposed
     candidate to the satisfaction of both parties, the General Member's appointee shall
     take office.


## XIII.   AUXILIARIES AND RELATED GROUPS

Section 13-1. - Establishment

Subject to the provisions of Section 12-1 of these Bylaws, the Board of Directors may
establish or support the establishment of auxiliaries and/or related organizations wishing to
support the objectives of the hospital or work in complementary ways with the hospital. Bylaws,
other thereto, and all major projects must be approved by the Board of Directors.

Subp 00266

Section 13-2. - Board Approval.

The Board of Directors reserves the right to channel any such funds as may be donated by such bodies to uses or objectives consistent with the purposes stated in Article II of these Bylaws, and for liaison purposes only, a member of the Board of Directors shall be appointed to attend executive committee meetings of the auxiliary, and from time to time, but not less than annually, the Board of Directors shall receive a report, for information only, from the auxiliary as to the operations of that organization.

## XIV.  BONDING AND INDEMNIFICATION

Section 14-1. - Bonding.

All officers and employees handling funds shall be properly bonded.

Section 14-2. - Indemnification.

The Corporation shall have the right to indemnify any person who was or is a party or is threatened to be made a party to any civil, criminal, administrative, or investigative proceeding by reason of the fact that such person is or was a Director, officer, employee, or otherwise an agent of the Corporation, against expenses, judgments, fines, settlements and other amounts actually and reasonably incurred in connection with such proceeding, provided that all of the requirements of the California Corporations Code section 5238 for such indemnification are met.

## XV.  AMENDMENTS

These Bylaws may be amended or new Bylaws may be adopted by action of the Board at any regular meeting of the Board or at any special meeting called for that purpose.  Amendments shall not be effective unless and until approved by the General Member.  Alternatively, amendments which are necessary for the tax-exempt status, accreditation or licensing of the General Member or this Corporation, its affiliated entities, or of the facilities of this Corporation or affiliated entities, may be adopted by the General Member at any regular or special meeting of the Board of Directors of the General Member called for that purpose.  However, prior to amending unilaterally these Bylaws, the General Member shall notify the Board of the proposed changes, explain the reasons for them, and allow the Board to comment.  Following that process the General Member may request that the Board adopt such amendments at its next regularly scheduled meeting.

Subp 00267

EXHIBIT 4.3

SUTTER HEALTH'S
CASH CONCENTRATION
AND CONTROLLED DISBURSEMENTS PROGRAM

DEC/MHLB/Bylaws/2-04.doc
MHLB/Bylaws

Subp 00268

| Sutter Health and Affiliates<br>Finance Policies and Procedures | |
|---|---|
| **CASH CONCENTRATION & CONTROLLED DISBURSEMENTS** | |
| Policy Number  200 | Origination Date:  06/93<br>Last Revised Date: 04/99<br>Next Review Date: 09/00 |
| Approved by: Robert D. Reed, Chief Financial Officer | |

## POLICY

Sutter Health Finance - Treasury (Treasury) shall establish and maintain a Cash Concentration and Controlled Disbursement Program for all non-profit affiliates.  The program will:

A.    Establish the cash management and depository bank(s) for use by each affiliate.

C.    Link the depository accounts of participating non-profit affiliates to a Sutter Health Concentration (bank) Account and an account in the Operating Cash Investment Pool.

D.    Provide each affiliate's linked depository account with a zero balance account (ZBA), or similar feature, enabling each affiliate to minimize its bank account balance.

E.    Provide each affiliate a controlled disbursement (checking) account.  This account will be funded daily, for the exact amount of that day's clearings, from the affiliate's account in the Operating Cash Investment Pool via the Sutter Health Concentration Account. This process enables the Sutter Health System to minimize bank account balances, thus maximizing daily investment interest income.

Any other banking relationships must be approved by the Sutter Health Chief Financial Officer  or Sutter Health Vice President of Finance/Assistant Treasurer.

## PURPOSE

The purpose of this policy is to:

A.    Minimize idle bank account balances and maximizes daily interest income on a systemwide basis.

B.    Provide specialized treasury management expertise by operating a centralized cash management function.

C.    Enhance internal controls by providing for the review of checks that are scheduled to clear the bank each day.

## AUTHORIZATION

The Sutter Health Chief Financial Officer is authorized to develop and maintain the Program and execute transactions pursuant thereto.

Subp 00269

**PROCEDURES**

1. Sutter Health, through a selected third party trustee, shall provide participants with periodic (not less than monthly) reports detailing affiliates' transactions relative to the operation of the program.

2. Accounting treatment and reconciliation for Cash Concentration and Controlled Disbursements is under development.

Subp 00270

EXHIBIT 4.4

SUTTER HEALTH'S
EQUITY CASH TRANSFER POLICY

DEC/MHLB/Bylaws/2-04.doc
MHLB/Bylaws

| Sutter Health and Affiliates<br>Finance Policies and Procedures | |
|---|---|
| **EQUITY CASH TRANSFER** | |
| Policy Number 207 | Origination Date: 1/96<br>Last Revised Date: 7/98<br>Next Review Date: 9/99 |
| Approved by: Robert D. Reed, Chief Financial Officer | |

## POLICY

Sutter Health shall ensure that operating funds are available to affiliated entities sufficient to fund their approved operating and capital budgets. Transfers from Sutter Health to affiliates may be made where such transfers are determined to be in the best interests of the Sutter Health system, the affiliate has adopted this policy, or otherwise incorporated this policy into its bylaws, and the transfer is not otherwise prohibited by pre-existing contractual obligations. Alternatively, excess operating cash may be transferred from the affiliate to Sutter Health.

Sutter Health shall ensure that each affiliate's Funded Depreciation (including seismic funds) shall be used to fund that affiliate's routine and non-routine capital acquisitions, and will ensure that trusteed funds will be used for their authorized purposes.

Donor-originated funds are specifically excluded from this policy.

## PURPOSE

The purpose of this policy is to enable Sutter Health to optimize the strategic value of available capital resources for the benefit of the system and of individual affiliated entities. Each non-profit Sutter Health affiliated entity shall adopt this policy, thus providing the system with maximum flexibility to redeploy cash resources to meet approved system strategic objectives.

## AUTHORIZATION

The Sutter Health Chief Financial Officer may authorize transactions and establish routine practices in accordance with this policy. Sutter Health will provide periodic reports to each affiliated entity reflecting transactions executed in accordance with this policy.

## PROCEDURES

**Definitions**

Excess Operating Cash

Operating cash generated by each affiliated entity, over and above its target. (See Figure 1 for example of calculation).

Subp 00272

Target

Each affiliated entity's operating cash target shall consist of: Fourteen days of budgeted operating expenses, excluding depreciation expense.

Donor-originated Funds

Cash received by or due to, an affiliated entity or associated charitable foundation, which has not been spent.

**Accounting Treatment**

For transfers to Sutter Health, the following entry would be recorded:

|                              | Dr. | Cr. |
|------------------------------|-----|-----|
| Equity Transfer – SH         | XXX |     |
| Cash – Operating Pool        |     | XXX |

For transfers received from Sutter Health, the following entry would be recorded:

|                              | Dr. | Cr. |
|------------------------------|-----|-----|
| Cash – Operating Pool        | XXX |     |
| Equity Transfer – SH         |     | XXX |

Subp 00273

## SUTTER HEALTH

### Equity Cash Transfer Calculation (000)

| | | Sample Affiliate |
|---|---|---|
| Month:    May 31, 1998 | | (Affiliate Name) |
| | | |
| | | |
| April 30, 1998  End Operating Pool Balance | + | $           9,000 |
| B of A Balance (& other balances, if any) | + | 500 |
| Outstanding Checks | - | (800) |
| Special Provisions (if any) | - | 0 |
| Adjusted Operating Pool Balance | = | $           8,700 |
| Target Balance (see note 1) | - | (3,260) |
| *Equity Cash Transfer Available* | = | $           5,440 |
| | | |
| *(Transaction value dated 5/1/98)* | | |
| | | |
| | | |
| | | |
| *Note 1:* | | |
| Target Calculation: | | |
| | | |
| Annual Operating Expense Budget | + | $         100,000 |
| Depreciation/Amortization | - | (15,000) |
| Adjusted Annual Operating Expense Budget | = | $           85,000 |
| 14 day Target Factor | X | 14/365 |
| Target Balance | = | $           3,260 |
| | | |
| | | |
| | | |

Subp 00274

## SECRETARY'S CERTIFICATE

The amendments contained in these Amended and Restated bylaws were approved by the Board of Directors of Memorial Hospital Los Banos on December 10, 2003, by the Board of Memorial Hospitals Association as the General Member on December 15, 2003, and by Sutter Health on February 2, 2004, respectively.

_____

Secretary

DEC/MHLB/Bylaws/2-04.doc
MHLB/Bylaws

Exhibit H

ELEVENTH

RESTATEMENT OF BYLAWS

OF

MILLS-PENINSULA HEALTH SERVICES

a nonprofit, public benefit
corporation organized under
the laws of the
State of California

*Includes revisions through October 4, 2004*

Subp 00280

## TABLE OF CONTENTS

ARTICLE I  NAME AND PURPOSE ............................................................................... 1

ARTICLE II  SYSTEM AFFILIATION .......................................................................... 1
    1.    Affiliated Status ............................................................................... 1
    2.    Participation in Activities of the General Member ............................. 1
    3.    Cash Concentration ......................................................................... 1
    4.    Equity Cash Transfer Policy ............................................................. 1
    5.    Payment of Allocation Fee .............................................................. 1
    6.    Cost of Capital Allocation ............................................................... 2
    7.    Compliance ..................................................................................... 2

ARTICLE III  MEMBERSHIP ........................................................................................ 2
    1.    Qualifications ................................................................................. 2
    2.    Transfer of Membership .................................................................. 2
    3.    Proxy Voting .................................................................................. 2
    4.    Exercise of Membership Rights ....................................................... 2
    5.    Liabilities and Assessments ............................................................. 3
    6.    Annual Meeting .............................................................................. 3
    7.    Special Meeting .............................................................................. 3
    8.    Notice of Meetings ......................................................................... 3
    9.    Request of Special Meeting ............................................................. 3
    10.    Action of Written Ballot ................................................................. 3

ARTICLE IV  BOARD OF DIRECTORS ....................................................................... 4
    1.    Responsibility ................................................................................. 4
    2.    Number .......................................................................................... 4
    3.    Representation of the General Member on the
            Board of Directors .......................................................................... 4
    4.    *Ex Officio* Directors ...................................................................... 4
    5.    Qualifications and Selection of Directors-at-Large .......................... 4
    6.    Term .............................................................................................. 5
    7.    Staggered Terms ............................................................................. 5
    8.    Vacancies ....................................................................................... 5
    9.    Removal ......................................................................................... 5
    10.    Voting Rights ................................................................................. 5
    11.    Organizational Meetings ................................................................. 5
    12.    Regular Meetings ........................................................................... 5
    13.    Special Meetings ............................................................................. 6
    14.    Notice of Meetings ......................................................................... 6
    15.    Quorum .......................................................................................... 6
    16.    Place .............................................................................................. 6
    17.    Validation of Transactions ............................................................. 6
    18.    Action Without Meeting ................................................................. 6

Subp 00281

| | | |
|---|---|---|
| 19. | Quorum Initially Present | 6 |
| 20. | Telephonic Meetings | 7 |
| 21. | Conflict of Interest | 7 |

ARTICLE V  OFFICERS .......................................................................... 7

| | | |
|---|---|---|
| 1. | Officers Elected by the Board of Directors | 7 |
| 2. | Appointment, Compensation, and Removal of the Chief Executive Officer | 7 |
| 3. | *Ex officio* Officer | 8 |
| 4. | Officers Appointed by the Chief Executive Officer of this Corporation | 8 |
| 5. | Resignation or Removal | 8 |
| 6. | Chair | 8 |
| 7. | Chief Executive Officer | 8 |
| 8. | Chief Financial Officer | 8 |
| 9. | Secretary | 9 |

ARTICLE VI  QUALIFICATIONS, AUTHORITY, AND RESPONSIBILITIES OF THE CHIEF EXECUTIVE OFFICER .................................... 9

| | | |
|---|---|---|
| 1. | Qualifications and Authority | 9 |
| 2. | Responsibilities | 9 |

ARTICLE VII  COMMITTEES ................................................................ 10

| | | |
|---|---|---|
| 1. | Committees Generally | 10 |
| 2. | Standing Committees | 10 |
| 3. | Special Committees | 10 |
| 4. | Membership; Appointment | 10 |
| 5. | Quorum; Meetings | 11 |
| 6. | Vacancies | 11 |
| 7. | Expenditures | 11 |
| 8. | Finance and Planning Committee | 11 |
| 9. | Audit and Compliance Committee | 12 |
| 10. | Building Committee | 12 |
| 11. | Governance Committee | 13 |
| 12. | Quality Committee | 14 |
| 13. | Community Benefit Committee | 16 |

ARTICLE VIII  PROFESSIONAL STAFF .............................................. 17

| | | |
|---|---|---|
| 1. | Board of Directors Powers | 17 |
| 2. | Organization of the Professional Staff | 17 |
| 3. | Quality of Care | 18 |
| 4. | Appointments to the Professional Staff | 18 |
| 5. | Medicoadministrative Officers | 19 |
| 6. | Allied Health Professionals | 19 |
| 7. | Conflicts With Professional Staff Bylaws | 20 |
| 8. | Conflict Resolution | 20 |

Subp 00282

ARTICLE IX HOSPITAL AUXILIARY ................................................................. 20

ARTICLE X TRANSACTIONS REQUIRING APPROVAL OF THE GENERAL MEMBER    20
    1.    Approval Requirement ....................................................................... 20
    2.    Record of Approval or Disapproval ................................................ 22
    3.    Requirement of Reasonableness and Consistency ....................... 22
    4.    Lessor Approval ................................................................................. 22
    5.    Actions Affecting General Members Authority ........................... 22

ARTICLE XI GENERAL PROVISIONS .............................................................. 22
    1.    Offices ................................................................................................. 22
    2.    Bonding .............................................................................................. 22
    3.    Compensation of Board Members ................................................. 22
    4.    Self-Dealing ....................................................................................... 23
    5.    Indemnification ................................................................................ 23
    6.    Fiscal Year ......................................................................................... 23
    7.    Construction and Definitions ......................................................... 23

ARTICLE XII ANNUAL REPORT ...................................................................... 23

ARTICLE XIII AMENDMENTS ........................................................................... 23

EXHIBIT 1 -- EQUITY CASH TRANSFER POLICY

Subp 00283

# ELEVENTH
# RESTATEMENT OF BYLAWS

## OF

## MILLS-PENINSULA HEALTH SERVICES

### ARTICLE I
### NAME AND PURPOSE

The name of this Corporation and the purposes for which this corporation is formed shall be as provided in its Articles of Incorporation. The purposes of this Corporation shall include to contribute to the growth, development, and financial strength of Sutter Health.

### ARTICLE II
### SYSTEM AFFILIATION

1.    Affiliated Status. This Corporation is one of several affiliated corporations that comprise an integrated health care system ("System").

2.    Participation in Activities of the General Member. The Board of this Corporation shall submit nominees to the General Member in order to enable the General Member to appoint members of this Corporation's Board or officers of this Corporation to serve on the General Member's corporate Board of Directors and/or its Board committees as appropriate to ensure the General Member's continued qualification as a supporting organization under Section 509 of the Internal Revenue Code of 1986, as amended from time to time, or successor provisions.

3.    Cash Concentration. Subject to the constraints in any contract in effect at the time these Eleventh Restated Bylaws become effective and to which this Corporation is a party or is bound, this Corporation shall participate in the Cash Concentration and Controlled Disbursement Program prescribed by the General Member and in effect from time to time.

4.    Equity Cash Transfer Policy. Subject to the constraints in any contract in effect at the time these Eleventh Restated Bylaws become effective and to which this Corporation is a party or is bound, the terms of the Equity Cash Transfer Policy contained in Exhibit 1 to the Bylaws of this Corporation are incorporated into and made part of these Bylaws. Neither donor originated funds nor the earnings therefrom shall be subject to the Equity Cash Transfer Policy.

5.    Payment of Allocation Fee. This Corporation shall pay the allocation fees necessary to maintain the operation of the General Member.

Subp 00284

6.     Cost of Capital Allocation. Subject to the constraints in any contract to which this Corporation is a party, this Corporation shall participate in the Cost of Capital Allocation Program prescribed by the General Member and in effect from time to time.

7.     Compliance Program. This Corporation shall adopt a Compliance Program consistent with Sutter Health Compliance Program Plan which shall include the following:

a.     All Board Members shall receive Compliance training consistent with Sutter Health Compliance Program Plan.

b.     The Board shall have oversight of and ultimate responsibility for an effective Compliance Program including adoption of related compliance policies.

c.     The Board or a Committee of the Board shall receive and review routine and special Compliance reports on a regular basis.

d.     The Board shall delegate to the Corporation's chief executive officer responsibility to implement Compliance Program in accordance with Sutter Health Compliance Program Plan.

ARTICLE III
MEMBERSHIP

1.     Qualifications. There shall be one (1) general member of this Corporation: Sutter Health, a California nonprofit public benefit corporation (the "General Member"). The General Member, and only the General Member, shall be entitled to exercise fully all rights and privileges of members of nonprofit corporations under the California Nonprofit Public Benefit Corporation Law and all other applicable laws. The rights and powers of the General Member shall also include, without limitation, the following: the limitation on liabilities described in Section 5 of this Article; the rights and powers to appoint (and remove) the appointed members of the Board of this Corporation, subject to Article IV, Sections 5.2 and 9, of these Bylaws; and the exercise of all of the rights and powers set forth in Article X of these Bylaws. The General Member may not be expelled or suspended as the General Member without its consent. Any reference in these Bylaws to the "member," "Member," "general member," "General Member," "corporate member," or "Corporate Member" of this Corporation, or any similar such reference, shall mean Sutter Health, a California nonprofit public benefit corporation.

2.     Transfer of Membership. The General Member may not transfer its membership or any rights arising therefrom.

3.     Proxy Voting. There shall be no voting by proxy.

4.     Exercise of Membership Rights. The General Member of this Corporation shall exercise its membership rights through its Board of Directors. Subject to the provisions of the General Member's own bylaws, and except as otherwise provided in these Bylaws where a super-majority vote of the Board of Directors of the General Member is required, the Board of

Subp 00285

Directors of the General Member may, by resolution, authorize a person or committee of persons to exercise its vote on any matter to come before the membership of this Corporation. In addition, the General Member may exercise its membership rights at any regular or special meeting of the Board of Directors of the General Member. The functions required by law or these Bylaws to be performed at the annual membership meeting or any regular or special meeting of the members of this Corporation may be performed at any regular or special meeting of the General Member's own Board of Directors.

5.    Liabilities and Assessments.    The General Member, as such, shall not be liable for the debts of this Corporation. The Board of this Corporation shall have no power to levy and collect assessments on the General Member. The provisions of this section cannot be amended in any manner.

6.    Annual Meeting.    The annual meeting of the General Member of this Corporation shall be held in the fourth calendar quarter of each year at such day, hour and place as may be designated by the Board of Directors.

7.    Special Meeting.    Special meetings of the General Member for any purpose or purposes shall be called by the Secretary of this Corporation upon request of the Chair of the Board of this Corporation, the chief executive officer of this Corporation, the Board of this Corporation, or the General Member.

8.    Notice of Meetings.    Notice of the time and place for an annual or special meeting shall be delivered personally to the General Member or sent by first-class, registered, or certified mail to the address on this Corporation's records, or if no address is given, at the place where the principal office of this Corporation is located, not less than ten (10) nor more than ninety (90) days before the date of the meeting. Such notice shall state the general nature of the business to be transacted. The notice of any meeting at which directors are to be elected shall include the names of all those who are nominees at the time the notice is delivered or mailed.

9.    Request for Special Meeting.    Upon request in writing to the Secretary of this Corporation by any person entitled to request a special meeting of the General Member, notice, in accordance with Section 8, shall be given to the General Member that a meeting will be held at a time fixed by the Board which is not less than thirty-five (35) nor more than ninety (90) days after receipt of the request.

10.    Action by Written Ballot.    Any action which may be taken at any regular or special meeting of the General Member may be taken without a meeting if a written ballot is distributed to the General Member, setting forth the proposed action, providing an opportunity for the General Member to specify approval or disapproval of any proposal, and, with respect to election of directors, to withhold its vote, and providing a reasonable period of time within which to return the ballot to this Corporation. The written ballot shall be filed with the Secretary of this Corporation and maintained in the corporate records. Directors may be elected by written ballot as provided hereinabove.

Subp 00286

## ARTICLE IV
## BOARD OF DIRECTORS

    1.   Responsibility.  Except as otherwise provided by the Articles of Incorporation or by these Bylaws, the management of the affairs of this Corporation shall be vested in a Board of Directors, hereinafter referred to as the "Board".

    2.   Number.  The Board of Directors shall consist of twenty-two (22) voting directors. That number includes two (2) designees of the President and Chief Executive Officer of the General Member as specified in Section 3 of this Article and five (5) *ex officio* directors as specified in Section 4 of this Article.

    3.   Representation of the General Member on the Board of Directors.  The President and Chief Executive Officer of the General Member may designate, by written notice to the Secretary of this Corporation, up to two (2) voting members of the Board. Any residency requirement applicable to directors shall not apply to the voting directors described in this Section 3. The President and Chief Executive Officer of the General Member may revoke any such designation effective upon delivery of written notice thereof to the Secretary of this Corporation. The President and Chief Executive Officer of the General Member and the Vice Chair of the General Member may each attend any Board meeting. This Section 3 supersedes any other provision in these Bylaws relating to the participation of the President and Chief Executive Officer and/or the Vice Chair of the General Member as voting or non-voting directors of this Corporation.

    4.   *Ex Officio* Directors.  There shall be five (5) *ex officio* voting members of the Board, consisting of the following: (a) the chief executive officer of this Corporation; (b) the Chief of Staff of Mills-Peninsula Health Services; (c) the President and Chief Executive Officer of the Mills-Peninsula Medical Group; (d) the Chair of Mills-Peninsula Hospital Foundation, and (e) the Chair of Mills-Peninsula Senior Focus. All *ex officio* Board members serve by reason of official capacity, and the resignation or removal of any such person from office shall automatically terminate any such person's membership on the Board. No person may hold more than one directorship by reason of official capacity or any other reason.

    5.   Qualifications and Selection of Directors-at-Large.

    5.1   The remaining fifteen (15) directors shall be directors-at-large selected by the General Member at the annual meeting of the General Member. Of the directors-at-large, five (5) shall be physicians and the remaining ten (10) shall be persons from the community who are not physicians or employees of this Corporation or any affiliate corporation and who are individuals who are broadly representative of the community served by this Corporation and who meet the requirements for director as set forth in this Section. Not more than forty-nine percent (49%) of the Board shall be persons currently compensated by this Corporation (excluding any reasonable compensation paid such person as a director) or any close relative of such person. Directors shall be selected on the basis of breadth of experience, appropriateness of skills, and willingness and ability to participate effectively in fulfilling the Board's responsibilities.

Subp 00287

5.2    Nominations of the directors-at-large of this Corporation, including, but not limited to, nominations for full terms, and nominations to fill vacancies created by resignation, removal, or death occurring during a term, shall be made by the Board of this Corporation to the General Member, except that the Board shall consider the recommendations of the Governance Committee when the Board presents its nominees to the General Member. This Corporation shall mail the names of its nominees to the General Member at least twenty (20) days prior to the annual meeting.

5.3    The General Member may accept any candidate proposed by the Board or reject any or all candidates with instructions to reconsider.

6.    Term. Each director (other than *ex officio* directors) shall hold office for a term of three (3) years or until his or her successor has been elected or appointed, and thereafter qualified. Directors may be re-elected to office. No director-at-large shall serve more than three (3) three-year terms without at least a one-year interruption. For the purposes of computing the foregoing limitation, a director who is appointed to the Board shall be deemed to have served one (1) full term if the term to which he or she is appointed exceeds two (2) years.

7.    Staggered Terms. The terms of office of the directors (other than *ex officio* directors) shall be established in such a manner that approximately one-third (1/3) of such directors' terms expire in any one (1) each year. In the event of a change in the number of directors, the staggering of terms shall be preserved.

8.    Vacancies. Whenever any at-large-director position on the Board becomes vacant, whether by death, resignation, removal, or increase in the authorized number of at-large-directors, the position shall be filled as set forth in Section 5 of this Article. A director appointed to fill a vacancy shall be appointed for the unexpired term of his or her predecessor in office.

9.    Removal. Any director-at-large may be removed from office by vote of the General Member of this Corporation at any meeting of the General Member; provided, however, that the General Member shall notify this Corporation's Board and give it an opportunity to respond in the manner and subject to the terms and conditions described herein, prior to any such proposed removal. The resulting vacancy shall be filled as set forth in Section 8 of this Article.

10.    Voting Rights. Each director shall be entitled to one vote on each matter before the Board. There shall be no voting by proxy.

11.    Organizational Meetings. The Board of Directors shall hold an organizational meeting during the fourth calendar quarter of each year at such day, hour, and place as may be designated by the Board. Such meeting shall be held for purposes of organizing the Board, the election of officers, as appropriate, and the transaction of such other business as may come before the meeting.

12.    Regular Meetings. Regular meetings of the Board shall be held at such frequency, time, and place as the Board shall from time to time determine.

Subp 00288

13.     Special Meetings. Special meetings of the Board of Directors for any purpose or purposes shall be called by the Secretary upon the request of the Chair, the chief executive officer, or any five (5) or more directors.

14.     Notice of Meetings. Notice of the time and place of any meeting shall be delivered personally, communicated by telephone or telegraph, or sent to each director by first-class mail, charges prepaid, addressed to the director either at his or her address as it is shown on the records of this Corporation, or, if it is not so shown on such records or is not readily ascertainable, to the place where the principal office of this Corporation is located. If personally delivered or communicated by telephone or telegraph, such notice shall be delivered at least forty-eight (48) hours prior to the meeting. If sent by mail, such notice shall be mailed at least four (4) days prior to the meeting. The Chair of the Board of Directors of the General Member and the President and Chief Executive Officer of the General Member shall each receive notice of all meetings of the Board.

15.     Quorum. The attendance of a majority of the members of the Board then serving shall constitute a quorum at any meeting of the Board. The act of the majority of the voting power present at any meeting at which a quorum is present shall be considered the act of the Board, except as otherwise specified by the California Corporations Code, the Articles of Incorporation, or these Bylaws.

16.     Place. The Board shall hold its meetings at the principal office of this Corporation or such other place as the Chair or the majority of the directors may designate.

17.     Validation of Transactions. The transactions of the Board occurring at any meeting, however called or noticed, or wherever held, shall be as valid as though such meeting were duly held after regular call and notice if a quorum be present and if, either before or after the meeting, each Board member entitled to vote at the meeting for that purpose not present signs a written waiver of notice, a consent to the holding of such meeting, or an approval of the minutes thereof. All such waivers, consents, or approvals shall be filed with the corporate records and made a part of the minutes of the meeting.

18.     Action Without Meeting. Any action required or permitted to be taken by the Board under the provisions of the California Corporations Code, the Articles of Incorporation, or these Bylaws may be taken without a meeting, if all members of the Board shall individually or collectively consent in writing to such action. Such written consent or consents shall be filed with the minutes of the proceedings of the Board. Such action by written consent shall have the same force and effect as a unanimous vote of such Board members. Any certificate or other document filed on behalf of this Corporation relating to an action taken by the Board without a meeting shall state that the action was taken by a unanimous written consent of the Board without a meeting and that the Bylaws of this Corporation authorize its directors so to act.

19.     Quorum Initially Present. A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of directors if any action is approved by at least a majority of the required quorum for such meeting, or such greater number

Subp 00289

as is required by the California Corporations Code, the Articles of Incorporation, or these Bylaws.

20.    Telephonic Meetings. Members of the Board may participate in a meeting through use of a conference telephone or similar communications equipment so long as each director participating in such meeting can simultaneously hear all other directors so participating. Participation in a meeting pursuant to this Section constitutes presence in person at such meeting.

21.    Conflict of Interest. The Board shall promulgate written policies regarding conflict of interest related to its own members, salaried persons and members of the Medical Staff. Such policies shall not be inconsistent with the standards of conduct set forth in Sections 5230 through 5238 of the California Corporations Code or with the Member's conflict of interest policies or guidelines. Such policies shall ensure full disclosure of financial interests and transactions where conflict of interest is a possibility, and shall ensure the avoidance of potential conflict of interest in choosing new Directors, including *ex officio* Directors. Such policies shall impose upon each Director the responsibility to be alert to possible conflicts of interest of himself or herself or of other Directors, and shall require that each Director declare his or her absence of conflict of interest on a declaration form provided for that purpose and disqualify himself or herself from making or influencing a decision where he or she has a conflict of interest.

## ARTICLE V
## OFFICERS

1.    Officers Elected by the Board of Directors. The officers of this Corporation elected by the Board of Directors shall be a Chair of the Board, chief executive officer, and Secretary, the selection of the chief executive officer being subject further to the provisions of Section 2 of this Article. A regular election of such officers shall be held at the Board's annual organizational meeting for such officers whose terms have expired. The Chair and Secretary shall each serve for a term of two (2) years or until their respective successors shall be elected and qualified. The chief executive officer shall serve for such term as shall be prescribed by the Board and subject further to the provisions of Section 2 of this Article. The Board may elect such other officers for such period and with such powers and duties as the Board may from time to time authorize.

2.    Appointment, Compensation, and Removal of the Chief Executive Officer. The Board of this Corporation shall select the chief executive officer subject to the following: The President and Chief Executive Officer of the General Member or his or her designee shall screen candidates when the chief executive officer is to be hired and shall present finalists to the Board of this Corporation for selection. The chief executive officer shall be an employee of the General Member. The Audit and Compliance Committee of the Board of this Corporation shall meet with and provide an evaluation of the chief executive officer and shall make compensation recommendations, based on an agreed upon salary system and survey process, to the President and Chief Executive Officer of the General Member, or his or her designee, who shall make the final determination as to compensation. The chief executive

Subp 00290

officer shall serve at the pleasure of the General Member, acting through its President and Chief Executive Officer, and of the Board of this Corporation, each of which, with the approval of the other, may terminate the services of the chief executive officer of this Corporation.

3. *Ex officio Officer.* The President of Mills Peninsula Medical Group shall be an *ex officio* officer of the Board with that same title and shall serve by reason of official capacity. The resignation or removal of such person as President of Mills Peninsula Medical Group shall automatically terminate such person's position as an officer of the Board.

4. Officers Appointed by the Chief Executive Officer of this Corporation.

4.1 The chief executive officer shall select and appoint a Chief Financial Officer subject to the pleasure of the Board of Directors.

4.2 The Board of Directors may also establish such other positions as it may desire, to be filled by the chief executive officer subject to the pleasure of the Board of Directors.

5. Resignation or Removal. Any appointed or elected officer may resign at any time or be removed, subject to any rights under any contract of employment, as follows: (a) the chief executive officer may be removed as set forth in Section 2 of this Article; (b) any other officer elected by the Board may be removed by the majority vote of the Board at any regular or special meeting of the Board; and (c) any officer appointed by the chief executive officer pursuant to Section 3 may be removed by the chief executive officer , subject to the pleasure of the Board of Directors. In the event of the resignation or removal of the chief executive officer, a successor shall be selected following the procedure set forth in Section 2 of this Article. In the event of the resignation or removal of any other officer elected by the Board, the Board may elect a successor to serve for the balance of that officer's unexpired term. In the event of the resignation or removal of an officer appointed by the chief executive officer, the chief executive officer may appoint a successor to serve, subject to the pleasure of the Board of Directors.

6. Chair. The Chair of the Board shall preside at all meetings of the Board. Unless the signature of the chief executive officer is required by law, the Chair of the Board shall possess the same power as the chief executive officer to sign all certificates, contracts, or other instruments of this Corporation when he or she is so authorized by the Board. The Chair of the Board shall exercise and perform such other powers and duties as may be prescribed by the Board from time to time.

7. Chief Executive Officer. The chief executive officer shall be the chief executive officer of this Corporation. The qualifications, authority, and responsibilities of the chief executive officer shall be in accordance with Article VI of these Bylaws.

8. Chief Financial Officer. The Chief Financial Officer shall act as the chief financial officer and shall keep and maintain or cause to be kept and maintained adequate and correct accounts of the properties and business transactions of this Corporation, including accounts of its assets, liabilities, receipts, disbursements, gains, and losses. The books of account shall at all times be open to inspection by any Board member. The Chief Financial Officer shall

Subp 00291

be charged with safeguarding the assets of this Corporation in accordance with the established policies of this Corporation. He or she shall have such other powers and perform such other duties as may be prescribed by the chief executive officer or Board from time to time.

9. Secretary. The Secretary shall keep or cause to be kept, at the principal office of this Corporation or at such other place as the Board may order, a book of minutes of all meetings of the Board with the time and place of holding, whether regular or special, and if special how authorized, the notice thereof given, the name or names of those present at the Board meetings, and the proceedings thereof. The Secretary shall give or cause to be given notice of all the meetings of the Board required by these Bylaws or by law to be given, and the Secretary shall keep the seal of this Corporation in safe custody and shall have such other powers and perform such other duties as may be prescribed by the Board from time to time.

## ARTICLE VI
## QUALIFICATIONS, AUTHORITY, AND
## RESPONSIBILITIES OF THE CHIEF EXECUTIVE OFFICER

1. Qualifications and Authority. The chief executive officer shall be the general manager and administrator of this Corporation. The chief executive officer shall be qualified by education and experience that is appropriate to the fulfillment of his or her responsibilities. The chief executive officer shall be given the necessary authority and responsibility to operate this Corporation in all of its activities, including, without limitation, quality of services, cost effectiveness, economic performance, and implementation of System strategies, subject to the following: With respect to policy development, program planning, and employee and community relations, the chief executive officer shall be subject to such policies as may be adopted and such orders as may be issued by the Board or by any of its committees to which the Board has delegated the power for such action; with respect to program execution and overall management performance, the chief executive officer shall be subject to the authority of and shall report to the Board; with respect to strategies of the local delivery system operated by this Corporation and overall operations of that system, the chief executive officer shall be responsible to the President and Chief Executive Officer of the General Member.

2. Responsibilities. The chief executive officer shall also periodically report to the President and Chief Executive Officer of the General Member or his or her designee on the affairs of this Corporation. The chief executive officer shall act as the duly authorized representative of the Board in all matters in which the Board has not formally designated some other person so to act. Subject to the foregoing and subject to the policies and orders formally issued by the Board of Directors (which shall be consistent with the provisions of this Article VI), the duties and responsibilities of the chief executive officer shall be:

a. To manage this Corporation in all of its activities, including responsibility for personnel, finances, maintenance, and services;

b. To establish and enforce general operating and administrative procedures required to implement the policies and orders formally issued by the Board of Directors;

Subp 00292

c.   To meet regularly with the Board of Directors and the Professional Staff (as defined in Article VIII) to discuss hospital operations;

d.   To appoint and discharge, subject to the pleasure of the Board of Directors, persons to fill those positions established by the Board of Directors to be filled by the chief executive officer of this Corporation, as set forth in Section 4 of Article V;

e.   To designate the responsibilities and duties of the appointed officers and all other employees of this Corporation;

f.   To perform other duties that may be necessary in the best interests of this Corporation.

## ARTICLE VII
## COMMITTEES

1.   Committees Generally. Committees shall be standing or special. Each committee shall exercise such power and carry out such functions as are designated by these Bylaws or as delegated by the Board from time to time. Except as hereinafter described, each committee shall be advisory only and subject to the control of the Board. Any person appointed to a standing committee shall be a voting member of such committee.

2.   Standing Committees. Standing advisory committees shall consist of the Finance and Planning Committee, Audit and Compliance Committee, Building Committee, Governance Committee, Quality Committee, and the Community Benefit Committee and such other standing committees as the Board may authorize from time to time. Each such committee shall stand discharged when a new committee is appointed for the same task.

3.   Special Committees. Special committees may be appointed by the Chair of the Board or the chief executive officer with the approval of the Board for such special tasks as circumstances warrant. A special committee shall limit its activities to the accomplishment of the task for which it is appointed and shall have no power to act except as such is specifically conferred by action of the Board. Upon completion of the task for which appointed, such special committee shall stand discharged.

4.   Membership; Appointment.

4.1   The chair and members of each committee, except as herein provided, shall be appointed by the Chair of the Board, subject to approval by the Board.

4.2   The Building Committee and the Finance and Planning Committee shall each have at least ten (10) and no more than fourteen (14) members. The membership of the Quality Committee shall be as set forth in subsection 12.1 of Section 12 of this Article. The Governance Committee shall have seven (7) members. The Audit and Compliance Committee

Subp 00293

shall have five (5) members. The Community Benefit Committee shall have six (6) members. The chief executive officer or his or her designee shall be an *ex officio* voting member of the Building, Finance and Planning, Governance, and Community Benefit Committees and an *ex officio* non-voting member of the Quality Committee. At least two (2) members of each committee shall be members of the Board of this Corporation not otherwise specifically designated as members of the committee. A majority of the members of each committee shall be physicians except that all members of the Audit and Compliance Committee shall be Non-Interested Persons (as defined in Section 11.2 of this Article).

5.    Quorum; Meetings. A majority of the members of the committee shall constitute a quorum at any meeting of that committee. Each committee shall meet as often as is necessary to perform its duties.

6.    Vacancies. Vacancies in any committee shall be filled for the unexpired portion of the term in the same manner as provided in the case of original appointment.

7.    Expenditures. Any expenditure of corporate funds by a committee shall require prior approval of the Board.

8.    Finance and Planning Committee. The duties and responsibilities of the Finance and Planning Committee shall be:

a.    To develop and recommend financial policy to the Board.

b.    To review proposed capital and operating budgets and long-term financial forecasts as prepared by management and make recommendations thereon to the Board at its last meeting before the end of the fiscal year. The budgets shall include an annual operating budget for this Corporation.

c.    To review monthly financial reports as presented by the CEO and the CFO of this Corporation and to make appropriate recommendations to the Board thereon.

d.    To advise the Board on methods and procedures which will assure that the financial policies and budgets adopted by the Board are carried out.

e.    To review and advise the Board on financial feasibility of acts and undertakings referred to the committee by the Board.

f.    To review new business or service development plans and recommend such plans to the Board of Directors.

g.    To advise the Board on investments, securities, and similar financial undertakings; and

h.    To receive periodic reports from the Mills-Peninsula Hospital Foundation's Finance Committee related to investment performance and policies.

Subp 00294

9.    Audit and Compliance Committee.

9.1    The Audit and Compliance Committee shall consist of five (5) members (including a chair), all of whom shall be members of the Board of Directors and Non-Interested Persons.

9.2    The duties and responsibilities of the Audit and Compliance Committee shall be:

a.    To receive the System's annual audit report.

b.    To receive the Corporation's annual audit report and management letter comments and to make recommendations to the Board concerning the financial operation of the Corporation and the corporations of which this Corporation is the member.

c.    To provide input into the annual audit plan.

d.    To meet with the Sutter Health internal auditors and/or independent auditors in executive session without Management present.

e.    To provide oversight of a coordinated internal audit function and to receive independent audit reports from the Sutter Health Internal Audit Department.

f.    To ensure the integrity of the Corporation's financial statements, the financial reporting process, and the systems of internal accounting and financial controls.

g.    To serve as the oversight body for the Corporation's Compliance Program, to monitor any type of compliance activity including interested director transactions, and to receive specific compliance related audits.

h.    To serve as the oversight body and to monitor the Corporation's compliance with ethics policies, accounting policies, and compliance with legal, accounting and regulatory requirements (including those of the Sarbanes-Oxley Act as adopted by Sutter Health.

i.    To review and recommend to the Board proposals and arrangements in which any employees or directors of this Corporation or any physicians may receive an economic benefit.

j.    To be responsible for the chief executive officer's performance review.

k.    To review and recommend (to the President and Chief Executive Officer of the General Member or his or her designee) compensation arrangements for the chief executive officer and to review the compensation program for other management personnel of this Corporation as recommended by the chief executive officer. For purposes of this paragraph, the committee shall have the authority of the Board.

10.    Building Committee. The Building Committee shall be responsible for the following functions:

Subp 00295

a.    To review and recommend to the Board of Directors facility planning, building, maintenance, and construction policy.

b.    To review and recommend to the Board of Directors a long-range facility master plan.

c.    To review and recommend to the Board of Directors priorities of construction projects consistent with the master plan.

d.    To review and recommend to the Board of Directors plans and specifications for major construction contracts and oversee major construction projects.

11.    Governance Committee.

11.1    The Governance Committee shall be appointed by the Chair of the Health Services Board and shall be composed of a committee chair (who shall be a Non-Interested Person from the Health Services Board) and six (6) other persons. Of the committee members, there will be two (2) representatives from the Health Services Board, two (2) representatives from the Foundation Board of Trustees, one (1) representative from the Senior Focus Board of Directors, the Chief of Staff and the Chief Executive Officer.

11.2    For purposes of these Bylaws, a Non-Interested Person shall mean a person who is not (i) an interested person, as defined in the California Nonprofit Corporation Law, of this Corporation or any corporation of which this Corporation is the member, or (ii) an insider, as defined in the IRS Revised Hospital Audit Guidelines, of this Corporation or any corporation of which this Corporation is the member, except persons who are insiders solely because of their membership on this Board or the board of any corporation of which this Corporation is the member, or because such board member is elected or appointed as a non-employee officer of this Corporation or any corporation of which this Corporation is the member.

11.3    The duties and responsibilities of the Governance Committee shall be:

a.    To nominate, subject to Board approval, persons for membership on the Board of the Corporation meeting the qualifications set forth in these Bylaws. The Governance Committee shall present its slate of nominees to the Board for its recommendation to the General Member for election. The Committee shall afford all nominees an opportunity to communicate their qualifications and the reasons for their candidacy to all directors and to solicit their votes.

b.    In accordance with the bylaws of the corporations of which this Corporation is the member, except as otherwise provided, nominate persons for membership on the boards of directors of those corporations meeting the qualifications set forth in the bylaws of the applicable corporation including Mills-Peninsula Senior Focus, Mills-Peninsula Hospital Foundation, and any other subsidiaries of the Corporation.

c.    To nominate persons to fill vacancies on the boards described in

Subp 00296

subparagraphs a. and b. above following the same procedures as set forth therein.

        d.    To review and make recommendations regarding the size of the boards described in subparagraphs a. and b. above.

        e.    To plan for the succession of the board members described in subparagraphs a. and b. above.

        f.    To conduct an annual review of the Board's performance for the year and a review of the performance of the Board Members.

        g.    To review the Corporation's Bylaws and those of any subsidiary entities, and recommend revisions as necessary (and at least every two (2) years) to ensure compliance with applicable statues, regulations, and accreditation requirements.

        h.    To plan and implement appropriate education programs for the Board.

    12.    Quality Committee. The Quality Committee shall be responsible to review policy relating to patient care mattes including quality indicators and patient satisfaction, the performance of the Professional Staff, shall serve as a forum for discussion of mutual concerns of the Board of Directors, the Management, and the Professional Staff, and shall also have the duties set forth in subsections 12.2 through 12.4 below.

    12.1    The Quality Committee shall consist of at least three (3) directors-at-large, including the Chair of the Board (or his or her designee). The chief executive officer and the Chief of Staff shall serve as *ex officio* members of the Quality Committee, without vote. At the request of the Quality Committee, a member of the Corporation's management team shall be named by the chief executive officer to serve as administrative staff person to the Quality Committee.

    12.2    The Quality Committee shall assist the Board in discharging its corporate responsibility for the quality of the medical care rendered in its facilities. The Quality Committee shall give support, guidance, and counsel to the chief executive officer and to the Chief of Staff in their respective functions and activities. The Quality Committee shall:

        a.    Advise and make recommendations to the Board on all Professional Staff matters, subject to the last paragraph of Section 12.3 hereof;

        b.    Review the screening standards applied to applications to the Professional Staff;

        c.    Review, evaluate and render a decision for appointment, reappointment, resignation, renewal, or modification of clinical privileges for Professional Staff pursuant to JCAHO Standard MS 4.20 and MS 4.30 (except applications for temporary appointments and privileges which have been granted by the chief executive officer); and to report positive decisions to the Board for ratification.

Subp 00297

A positive decision by the Committee for practitioners eligible for expedited review results in the status of privileges requested. Negative decisions of the Committee shall be referred back to the Professional Executive Committee for further evaluation. The Committee shall have the authority to approve appointments when the Board of Directors does not have a regular meeting scheduled;

      d.     Review and recommend to the Board on all recommendations from the executive committee of the Professional Staff or the Professional Staff committee which performs similar functions;

      e.     Receive and review specific reports needed to ascertain if Professional Staff functions are being properly discharged;

      f.     Insure that Professional Staff officials are accountable for carrying out the Professional Staff functions of reviewing, analyzing, evaluating, and trending clinical work, and make appropriate recommendations in accordance with the findings therefrom;

      g.     Insure that Professional Staff officials are accountable for implementing appropriate procedures for insuring the compliance of all members of the Professional Staff with Professional Staff bylaws, rules, and regulations and all Corporation promulgated policies;

      h.     Review compliance with the JCAHO standards and recommendations on medical matters, and make recommendations accordingly;

      i.     Meet at regular intervals and maintain a record of its proceedings;

      j.     Cause review of Professional Staff bylaws and rules and regulations;

      k.     Provide a forum for resolving potential disputes between the Professional Staff and Management;

      l.     Review and monitor hospital programs from a quality of care standpoint, including adequacy of staffing, equipment, facilities and other factors;

      m.     Evaluate and monitor performance improvement activities as they relate to the quality of care; and

      n.     Review and report to the Board on the integration among multidisciplinary processes as they relate to quality of care.

      12.3    The Quality Committee shall have the further authority to:

      a.     Request those studies, reports, statistics, and other information concerning the Professional Staff which the Committee deems appropriate; and

      b.     Invite any officer of the Professional Staff to meet and confer with the Quality Committee.

Subp 00298

The authority delegated to the Quality Committee shall be exercised in a manner consistent with any provisions for fair procedure, if applicable, afforded each member of the Professional Staff as outlined in the Professional Staff bylaws and by California law, and with any guidelines or policies established by the Sutter Health Quality Review Committee; provided, however, that nothing in these bylaws or the guidelines or policies of Sutter Health shall prevent this Corporation from adopting and implementing higher standards than those established by the Sutter Health Quality Review Committee.

12.4    The Quality Committee shall at all times be accountable to the Board and shall fulfill that accountability by:

a.    Submitting periodic written reports, and recommendations where appropriate, to the Board regarding:

i.    Applications to the Professional Staff;

ii.    Studies pertaining to medical care appraisal, quality improvement, and patient/customer satisfaction; and

iii.    Any matters relating to Professional Staff matters considered in need of Board deliberation.

b.    Submitting status reports to the Board or to the Executive Committee of the Board describing studies and reports in progress pertaining to the Professional Staff.

c.    Establishing a mechanism whereby the Quality Committee's effectiveness shall be evaluated.

12.5    The Quality Committee shall receive the Risk Management Report and the Professional Staff Quality Assurance Report on a quarterly basis.

13.    Community Benefit Committee.

13.1    The members of the Community Benefit Committee shall include:  six (6) local physicians, four (4) "non interested" directors, and the Chief Executive Officer for Mills-Peninsula Health Services.  The Chair may invite key physicians or others involved in a specific service being reviewed for presentation and discussion. The Committee shall meet quarterly or at the request of the Chair of the Committee, the Board Chair or the Chief Executive Officer.

13.2    The duties and responsibilities of the Committee shall be:

a.    To advise the Corporation's Board on health care needs of the community including policy recommendations with regard to community benefit and outreach activities.

b.    To monitor ongoing efficacy of the services provided and marketing

Subp 00299

strategies to meet the mission of the Corporation.

      c.     To oversee the diversity initiative for the Corporation and the community.

## ARTICLE VIII
## PROFESSIONAL STAFF

1.    Board of Directors Powers. The Board of Directors shall be responsible for (a) appointing, reappointing, suspending, and dismissing Professional Staff members, (b) granting the privileges of any practitioner at any hospital or other facility operated by this Corporation, and (c) restricting privileges of any practitioner at any hospital or other facility operated by this Corporation. No practitioner shall be entitled to membership on the Professional Staff or to the enjoyment of particular privileges merely by virtue of the fact that the practitioner is duly licensed to practice in this or any other state, or that the practitioner has in the past, or presently has, such privileges at some hospital. The burden shall be on the practitioner to establish that the practitioner is professionally competent and worthy in character and professional ethics and has the general competency, qualification, reputation, character, health, and temperament suitable for staff hospital practice.

2.    Organization of the Professional Staff.

      2.1    The Board shall organize the physicians, dentists, podiatrists, and other health professionals expressly granted practice privileges in Mills Health Center and Peninsula Medical Center (collectively referred to as the "Hospitals") into one Professional Staff under one set of Professional Staff bylaws approved by the Board. The Professional Staff shall have the initial responsibility to formulate and recommend to the Board a set of bylaws, revisions, and amendments to those bylaws, together with appended rules and regulations, such documents to be consistent with applicable law, corporate policy, and the Articles of Incorporation and Bylaws of this Corporation and, to the extent practicable, with accreditation standards. The process for adoption and revision shall be as provided in the Professional Staff bylaws.

      2.2    The Professional Staff bylaws and rules and regulations shall state the purposes, functions, and organizations assigned to the Professional Staff by the Board. Subject to the provisions of Sections 3 and 4 of this Article, the Professional Staff bylaws shall contain:

      a.    Procedures for appointment, the granting of privileges, and reappointment to the Professional Staff for all Professional Staff members;

      b.    Provisions specifying qualifications for Professional Staff membership;

      c.    Provisions specifying categories of Professional Staff membership;

      d.    Procedures for reviewing the quality of care of members of the Professional Staff;

Subp 00300

e.    Procedures for disciplinary action when appropriate;

f.    Procedures for a hearing, together with an appeal to the Board, in those instances specified in the Professional Staff bylaws;

g.    Provisions regarding the organization into departments and services; and

h.    Procedures specifying the manner of selection of officers (which may be by election from the Professional Staff), including provisions relating to the removal of elected officers.

2.3    The Professional Staff shall be organized into such committees as are specified in the Professional Staff bylaws, under the leadership of the Professional Staff Executive Committee. The selection of physicians on the Professional Staff Executive Committee and on other committees of the Professional Staff shall be as specified in the Professional Staff bylaws and in these Bylaws; provided that the chief executive officer or his or her designee shall at all times be permitted to attend all committee meetings of the Professional Staff, including departmental meetings and executive session meetings, in order to assure continued communication among the Professional Staff, Management, and Board.

2.4    Under procedures specified in the Professional Staff rules and regulations, the Professional Staff shall recommend to the Board rules and regulations, including any amendments thereto, relating to the care of patients in the Hospitals. Such rules, regulations, and amendments shall be deemed effective when approved by the Board, whose approval shall not be unreasonably withheld.

3.    Quality of Care. The Board, in the exercise of its overall responsibility and authority, shall delegate to the Professional Staff initial responsibility for assuring appropriate professional care of Hospitals' patients by members of the Professional Staff, subject to the Board's ultimate authority to review, accept, or reject any actions or recommendations taken by the Professional Staff in furtherance of such responsibilities. The Professional Staff shall discharge this responsibility through procedures designed to assure an ongoing review of the quality of care of members of the Professional Staff and an appropriate response to findings, which procedures may include regular and special audits of members of the Professional Staff by the appropriate committees and departments. Such review activities shall be regularly reported, together with their results and recommended responses, to the Board.

4.    Appointments to the Professional Staff.

4.1    Ultimate responsibility and authority regarding the appointment, reappointment, and the granting of privileges to members of the Professional Staff resides with the Board. In exercising this authority, the Board shall delegate to the Professional Staff the primary responsibility to evaluate applications or reapplications for memberships and privileges, subject to the Board's authority to review, accept, or reject. The procedures for making such recommendations shall be as specified in the Professional Staff bylaws; provided that in extraordinary instances where the Professional Staff fails to act upon an application or

Subp 00301

reapplication within the time limits specified in the Professional Staff bylaws, the Board may, on its own motion, grant or deny an application or reapplication for membership or privileges. In the event that such action results in a denial which would entitle the applicant to a hearing under the Professional Staff bylaws, the Board shall provide for such a hearing under rules of procedure adopted by the Board. Such review activities shall be regularly reported, together with their results and recommended responses, to the Board.

4.2    Recommendations to the Board of Directors concerning appointments, reappointments, and other changes in staff status, granting of clinical privileges, disciplinary actions, all matters relating to professional competency, and specific matters as may be referred to it by the Board shall be recommended through the Professional Staff's Executive Committee specified in the Professional Staff bylaws.

4.3    No person applying for Professional Staff membership or privileges shall be discriminated against based on sex, race, color, religion, ancestry, or national origin. Likewise, there shall be no discrimination based on such additional criteria as may be prescribed by statute, regulation, or case law.

4.4    The Professional Staff bylaws shall provide that at least the following actions shall grant to the affected practitioner the right to a hearing which shall be consistent with the fair procedure laws of this state: failure to appoint or reappoint to the Professional Staff or failure to grant requested privileges. Consistent with these corporate Bylaws, such hearing process shall provide for an appeal before the Board or a designated committee thereof.

5.    Medicoadministrative Officers.

5.1    "Medicoadministrative officer" means a practitioner, engaged by or otherwise contracting with this Corporation on a full- or part-time basis, whose duties include certain responsibilities which may be both administrative and clinical in nature. Clinical responsibilities engage the professional capabilities of the practitioner in the exercise of clinical judgment with respect to patient care and the supervision of professional activities of other practitioners.

5.2    A practitioner engaged by this Corporation in a purely administrative capacity with no clinical responsibilities is subject to the regular personnel policies of this Corporation and to the terms of his or her contract, or other conditions of engagement, and need not be a member of the Professional Staff. Conversely, a medicoadministrative officer shall be a member of the Professional Staff with clinical privileges delineated in accordance with the Professional Staff bylaws. His or her Professional Staff membership and clinical privileges shall not be dependent upon his or her continued occupation of the medicoadministrative position, unless otherwise provided in an employment agreement, contract, or other arrangement.

6.    Allied Health Professionals. The Board shall refer to the Professional Staff, subject to the Board's ultimate authority to review, accept, or reject, the primary responsibility and authority to investigate and evaluate applications by allied health professionals for practice within the Hospitals. Allied health professionals shall consist of health professionals who are not

Subp 00302

members of the Professional Staff and are not employees of this Corporation but who desire to practice in some capacity within the Hospitals. The manner of their selection and the review of their performance shall be specified in a policy statement, reviewed by the Professional Staff and approved by the Board. In general, such policy statement shall provide that the applications of allied health professionals shall be submitted and processed in a manner analogous to that applicable to members of the Professional Staff; provided, however, that provisions of the Professional Staff bylaws governing hearings to consider approval or rejection of applications, or consideration of corrective action, shall apply to allied health professionals only to the extent expressly provided in the policy statement.

      7.    Conflicts With Professional Staff Bylaws. In the event that any of the provisions hereof are in conflict with any of the provisions of the existing Professional Staff bylaws or as they may hereafter be adopted, these Bylaws, and any amendments thereto shall be deemed to be controlling.

      8.    Conflict Resolution. In the event that a conflict between the Board, Management and Professional staff should occur, the Board Officers, the Medical Staff Officers and the Chief Executive Officer shall have a joint meeting to resolve any issues. Any Board Officer, Medical Staff Officer or the Chief Executive Officer may request such a meeting.

ARTICLE IX
HOSPITAL AUXILIARY

      The Mills-Peninsula Auxiliary shall be established to render service to Mills-Peninsula Health Services and its patients through ways approved by the chief executive officer of this Corporation or his or her designee. Auxiliary bylaws and any amendments thereto shall be adopted by the auxiliary board of directors and shall become effective when approved by the Management of this Corporation.

ARTICLE X
TRANSACTIONS REQUIRING APPROVAL OF THE GENERAL MEMBER

      1.    Approval Requirement. Notwithstanding anything in these Bylaws to the contrary, neither the Board of Directors of this Corporation nor any officer or employee thereof may take any of the following actions, or approve a subsidiary or affiliate's taking any of the following actions, without the prior approval of the General Member of this Corporation, to wit:

      a.    Merger, consolidation, reorganization, or dissolution of this Corporation or any subsidiary or affiliate entity;

      b.    Amendment or restatement of the Articles of Incorporation or Bylaws of this Corporation or any subsidiary or affiliate entity;

Subp 00303

c. Adoption of operating budgets of this Corporation or any subsidiary or affiliate entity, including consolidated or combined budgets of this Corporation and all subsidiary organizations of this Corporation; provided, however, that in responding to budgets proposed by this Corporation, the General Member shall accommodate this Corporation's obligations under its lease of hospital premises as described in Section 4 of this Article;

d. Adoption of capital budgets of this Corporation or any subsidiary or affiliate entity; provided, however, that in responding to budgets proposed by this Corporation, the General Member shall accommodate this Corporation's obligations under its lease of hospital premises as described in Section 4 of this Article;

e. Aggregate operating or capital expenditures on an annual basis that exceed approved operating or capital budgets by a specific dollar amount to be determined from time to time by the General Member;

f. Long-term or material agreements, including, but not limited to, borrowings, equity financings, capitalized leases, and installment contracts; and purchase, sale, lease, disposition, hypothecation, exchange, gift, pledge, or encumbrance of any asset, real or personal, with a fair market value in excess of a dollar amount to be determined from time to time by the Board of Directors of the General Member, which shall not be less than ten percent (10%) of the total annual capital budget of this Corporation;

g. Appointment of an independent auditor and hiring of independent counsel except in conflict situations between the General Member and this Corporation or any subsidiary or affiliate entity;

h. The creation or acquisition of any subsidiary or affiliate entity;

i. Contracting with an unrelated third party for all or substantially all of the management of the assets or operations of this Corporation or any subsidiary or affiliate entity;

j. Approval of major new programs and clinical services of this Corporation or any subsidiary or affiliate entity. The General Member shall from time to time define the term "major" in this context;

k. Approval of strategic plans of this Corporation or any subsidiary or affiliate entity; or

l. Adoption of quality assurance policies not in conformity with policies established by the General Member;

m. Any transaction between this Corporation, a subsidiary, or affiliate and a director of this Corporation or an affiliate of such director;

n. Other major activities (as hereinafter defined) of this Corporation or any subsidiary or affiliate entity, except as otherwise provided by the General Member and after

Subp 00304

consultation with this Corporation. "Major Activities" shall be those which the General Member by a vote of not less than two-thirds (2/3) of its Board of Directors has declared major, by written notice to this Corporation, delivered personally or transmitted by registered or certified mail, return receipt requested. Such notice shall specifically identify the matter or matters requiring approval of the General Member and shall refer to this Bylaw provision granting such approval rights to the General Member. Notices received pursuant to this Section shall be recorded in the minutes of this Corporation and shall be filed with the minutes of this Corporation.

2.    Record of Approval or Disapproval. The General Member's approval or disapproval of matters described in Section 1 of this Article shall be recorded in or filed with the minutes of this Corporation.

3.    Requirement of Reasonableness and Consistency. In exercising any approval rights described in Section 1 of this Article X, the General Member shall act in a reasonable and consistent fashion.

4.    Lessor Approval. Some of the items in Section 1 of this Article may also require approval of Peninsula Health Care District under the Lease between Peninsula Health Care District and this Corporation. Nothing herein shall modify or eliminate this Corporation's obligation to seek the approval of Peninsula Health Care District when so required.

5.    Actions Affecting General Member's Authority. Notwithstanding any provision in these Bylaws to the contrary, and except as otherwise provided in paragraph (n) of Section 1 of this Article (regarding definition of "major activities"), this Corporation shall not prescribe the manner by which the General Member exercises its authority under these Bylaws, and no provision of these Bylaws shall be deemed to have such effect. Without limiting the generality of the foregoing, no present or future provision of these Bylaws or other action of this Corporation shall be deemed to prescribe the required vote of the Board of Directors of the General Member for the exercise of its authority herein, nor shall the approval of the General Member be inferred from its failure affirmatively to disapprove of a proposed action of this Corporation within a specified time period.

## ARTICLE XI
## GENERAL PROVISIONS

1.    Offices. This Corporation shall have and continuously maintain in the State of California a registered office in the City of San Mateo or the City of Burlingame and may have other offices within the State of California as the Board may from time to time determine.

2.    Bonding. All directors and employees shall be properly bonded.

3.    Compensation of Board Members. The members of the Board shall receive no compensation as such; provided, however, that they may be reimbursed from time to time for reasonable expenses incurred on behalf of this Corporation.

Subp 00305

4.    Self-Dealing. In the exercise of voting rights by members of the Board, no individual shall vote on any issue, motion, or resolution which directly or indirectly inures to his or her benefit financially, except that such individual may be counted in order to qualify a quorum and, except as the Board may otherwise direct, may participate in the discussion of such an issue, motion, or resolution if he or she first discloses the nature of his or her interest.

5.    Indemnification. This Corporation shall indemnify any trustee, officer, employee, or agent of this Corporation for liability incurred by such person in the exercise of his or her duties with respect to this corporation to the extent permitted by Section 5238 of the California Corporations Code or any successor statute.

6.    Fiscal Year. The fiscal year of this Corporation shall end on the 31st day of December of each year.

7.    Construction and Definitions. Unless the context requires otherwise, the general provisions, rules of construction, and definitions in the California Nonprofit Corporation Law shall govern the construction of these Bylaws. Without limiting the generality of the preceding sentence, the masculine gender includes the feminine and neuter, the singular number includes the plural, the plural number includes the singular, and the term "person" includes both a legal entity and a natural person.

## ARTICLE XII
## ANNUAL REPORT

The Board shall cause an annual report containing the information specified in Section 6321 and 6322 of the California Corporations Code to be sent to the General Member of this Corporation within one hundred twenty (120) days after the close of this Corporation's fiscal year.

## ARTICLE XIII
## AMENDMENTS

These Bylaws may be amended or new Bylaws may be adopted by action of the Board at any regular meeting of the Board or at any special meeting called for that purpose. Amendments shall not be effective unless and until approved by the General Member. Alternatively, amendments may be adopted by the General Member, other than amendments which reduce the powers of the Board, at any regular or special meeting of the Board of Directors of the General Member called for that purpose. However, prior to unilaterally amending these Bylaws, the General Member shall notify the Board of the proposed changes, explain the reasons for them, and allow the Board to comment. Following that process, the General Member may request that the Board adopt such amendments at its next regularly scheduled meeting.

Subp 00306

# EXHIBIT 1

## EQUITY CASH TRANSFER POLICY

MPHS 11th Restatement Bylaws 10-04.doc
MPHS Bylaws

| Sutter Health and Affiliates<br>Finance Policies and Procedures<br>**EQUITY CASH TRANSFER** | |
|---|---|
| Policy Number 207 | Origination Date: 1/96<br>Last Revised Date: 7/98<br>Next Review Date: 9/99 |
| Approved by: Bob Reed, Chief Financial Officer | |

## POLICY

Sutter Health shall ensure that operating funds are available to affiliated entities sufficient to fund their approved operating and capital budgets. Transfers from Sutter Health to affiliates may be made where such transfers are determined to be in the best interests of the Sutter Health system, the affiliate has adopted this policy, or otherwise incorporated this policy into its bylaws, and the transfer is not otherwise prohibited by pre-existing contractual obligations. Alternatively, excess operating cash may be transferred from the affiliate to Sutter Health.

Sutter Health shall ensure that each affiliate's Funded Depreciation (including seismic funds) shall be used to fund that affiliate's routine and non-routine capital acquisitions, and will ensure that trusteed funds will be used for their authorized purposes.

Donor-originated funds are specifically excluded from this policy.

## PURPOSE

The purpose of this policy is to enable Sutter Health to optimize the strategic value of available capital resources for the benefit of the system and of individual affiliated entities. Each non-profit Sutter Health affiliated entity shall adopt this policy, thus providing the system with maximum flexibility to redeploy cash resources to meet approved system strategic objectives.

## AUTHORIZATION

The Sutter Health Chief Financial Officer may authorize transactions and establish routine practices in accordance with this policy. Sutter Health will provide periodic reports to each affiliated entity reflecting transactions executed in accordance with this policy.

## PROCEDURES

**Definitions**

Excess Operating Cash

Operating cash generated by each affiliated entity, over and above its target. (See Figure 1 for example of calculation).

Subp 00308

Target

Each affiliated entity's operating cash target shall consist of: Fourteen days of budgeted operating expenses, excluding depreciation expense.

Donor-originated Funds

Cash received by or due to, an affiliated entity or associated charitable foundation, which has not been spent.

**Accounting Treatment**

For transfers to Sutter Health, the following entry would be recorded:

|  | Dr. | Cr. |
|---|---|---|
| Equity Transfer – SH | XXX | |
| Cash – Operating Pool | | XXX |

For transfers received from Sutter Health, the following entry would be recorded:

|  | Dr. | Cr. |
|---|---|---|
| Cash – Operating Pool | XXX | |
| Equity Transfer – SH | | XXX |

---

Subp 00309

## SUTTER HEALTH

### Equity Cash Transfer Calculation (000)

| Month:     May 31, 1998 | | Sample Affiliate |
|---|---|---|
| | | *(Affiliate Name)* |
| April 30, 1998  End Operating Pool Balance | + | $ 9,000 |
| B of A Balance (& other balances, if any) | + | 500 |
| Outstanding Checks | - | (800) |
| Special Provisions (if any) | - | 0 |
| Adjusted Operating Pool Balance | = | $ 8,700 |
| Target Balance (see note 1) | - | (3,260) |
| **Equity Cash Transfer Available** | = | **$ 5,440** |
| *(Transaction value dated 5/1/98)* | | |
| | | |
| | | |
| ***Note 1:*** | | |
| Target Calculation: | | |
| | | |
| Annual Operating Expense Budget | + | $ 100,000 |
| Depreciation/Amortization | - | (15,000) |
| Adjusted Annual Operating Expense Budget | = | $ 85,000 |
| 14 day Target Factor | X | 14/365 |
| Target Balance | = | $ 3,260 |
| | | |
| | | |

Subp 00310

## SECRETARY'S CERTIFICATE

The amendments contained in these bylaws were approved by the Board of Directors of Mills-Peninsula Health Services, a California nonprofit public benefit corporation, on September 12, 2004 and by the General Member, Sutter Health, on October 4, 2004, respectively.

Date: _9-12-04_      _Kathryn Grinnell_
                 Asst. Secretary

MPHS 11th Restatement Bylaws 10-04.doc
MPHS Bylaws

Subp 00311

# Exhibit I

SEVENTH RESTATEMENT OF BYLAWS

OF

MARIN GENERAL HOSPITAL,

a California nonprofit public benefit corporation

*Includes Revisions through December 17, 2001*

Subp 00163

SEVENTH RESTATEMENT OF BYLAWS

OF

MARIN GENERAL HOSPITAL,
a California nonprofit public benefit corporation

ARTICLE I
NAME AND PRINCIPAL OFFICE

1.1    Name. The name of the Corporation shall be as listed in the Articles of
Incorporation, namely, Marin General Hospital, a nonprofit public benefit corporation organized
under the laws of the State of California.

1.2    Principal Office and Place of Business. This Corporation shall have and
continuously maintain a registered office in Marin County and may have other offices within the
State of California, as the Board may from time to time determine.

ARTICLE II
PURPOSES

This Corporation was formed for the purposes set forth in its Articles of Incorporation.[1]

---

[1] As of the date of the adoption of this Seventh Restatement of Bylaws, Paragraph A of Article SECOND of the articles
of incorporation provides as follows:

A.    The specific and primary purpose of this organization is:

1.    To establish, maintain, conduct and operate hospitals, sanitaria, asylums, rest or retirement
homes, maternity homes, dispensaries, clinics, places and institutions for the care and treatment of the sick, afflicted and
aged, and to furnish and supply care, treatment, hospitalization and other services therein with or without compensation
therefore, and in connection with any of the above activities to acquire, receive, and hold real and personal property of
every kind and character whatsoever by gift, endowment, devise, legacy or bequest and to perform any and all acts
necessary to realize said gifts, endowments, devises, legacies and bequests and to make the same available to the
Corporation.

Subp 00164

## ARTICLE III
## MEMBERSHIP

3.1     <u>General Member</u>.  There shall be one member of this Corporation who shall be Marin Community Health, a California nonprofit public benefit corporation (the "General Member").  The General Member, and only the General Member, shall be entitled to exercise fully all rights and privileges of members of nonprofit corporations under the California Nonprofit Public Benefit Corporation Law, and all other applicable laws.  The rights and powers of the General Member shall also include, without limitation, the following:  the limitation on liabilities described in Section 3.4 of these Bylaws; the rights and powers to appoint (and remove) the appointed members of the Board of this Corporation, subject to Sections 5.6 and 5.7 of these Bylaws; and the exercise of all of the rights and powers set forth in Article XIII of these Bylaws.  The General Member may not be expelled or suspended as the General Member without its consent.  Any reference in these Bylaws to the "member," "Member," "general member," "General Member," "corporate member," or "Corporate Member" of this Corporation, or any similar such reference, shall mean Marin Community Health, a California nonprofit public benefit corporation.

3.2     <u>Transfer of Membership</u>.  The General Member of this Corporation may not transfer its membership or any rights arising therefrom.

3.3     <u>Exercise of Membership Rights</u>.  The General Member shall exercise its membership rights through its own Board of Directors.  Subject to the provisions of the General Member's own bylaws, and except as otherwise provided in these Bylaws where a super-majority vote of the Board of Directors of the General Member is required, the Board of Directors of the General Member may, by resolution, authorize a person or committee of persons to exercise its vote on any matter to come before the membership of this Corporation.  In addition, the General Member may exercise its membership rights at any regular or special meeting of the Board of Directors of the General Member.  The functions required by law or by these Bylaws to be

---

2.      To carry on any educational activities related to rendering care to the sick and injured, or to the promotion of health.

3.      To promote and carry on scientific research related to the care of the sick and injured.

4.      To participate in any activity designated and carried on to promote the general health of the community.

5.      To act as trustee under any trust or endowment incidental to the principal objects of the Corporation, and in connection therewith to receive, hold, administer, and expend funds and real and personal property of every kind and character whatsoever subject to such trust or endowment.

6.      To contribute to the growth, development and financial strength of Sutter Health.

Subp 00165

performed at the annual membership meeting or any regular or special meeting of the members of this Corporation may be performed at any regular or special meeting of the General Member's own Board of Directors. Without limiting the foregoing sentence, references in these Bylaws to "annual meeting of the member," "annual membership meeting," or "annual meeting of the membership," unless otherwise specified by the General Member, shall mean the last regular meeting of the General Member's board of directors which is held during the fourth quarter of each calendar year.

3.4    Liabilities and Assessments. Neither Sutter Health nor the General Member, as such, shall be liable for the debts of this Corporation. The Board of this Corporation shall have no power to levy and collect assessments on Sutter Health or the General Member. The provisions of this paragraph cannot be amended in any manner.

Note Relating to Former Article III, Section 19: The provisions of Article III, Section 19 of the Marin General Hospital Bylaws in effect on November 12, 1985 (the date of the Lease Agreement with Marin Health Care District) relating to open and closed meetings are located in Section 5.19 of these Bylaws. No change in such provisions has been made since November 12, 1985.

## ARTICLE IV
## SYSTEM AFFILIATION

4.1    Affiliated Status. This Corporation is one of several corporations affiliated with Sutter Health, a nonprofit public benefit corporation that comprise a multi-institutional healthcare system ("System"). Sutter Health is responsible to oversee and coordinate the activities of the affiliates that comprise the System, and to provide support services upon request of the affiliates.

4.2    Participation in Activities of Sutter Health. The Board of this Corporation shall submit nominees to Sutter Health to appoint members of this Corporation's Board or officers of this Corporation to serve on Sutter Health's corporate Board of Directors and/or its Board committees as appropriate to ensure Sutter Health's continued qualification as a supporting organization under Section 509 of the Internal Revenue Code of 1986, as amended from time to time, or successor provisions of the Internal Revenue Code.

4.3    Cash Concentration. Subject to the provisions of Section 4.8 of these Bylaws, the Corporation shall participate in the Cash Concentration and Controlled Disbursement Program prescribed by Sutter Health and in effect from time to time.

4.4    Equity Cash Transfer Policy. Subject to the provisions of Section 4.8, the terms of the Equity Cash Transfer Policy contained in Exhibit 1 to these Bylaws are incorporated into and made part of these Bylaws. Neither donor originated funds nor the earnings therefrom shall be subject to the Equity Cash Transfer Policy.

4.5    Payment of Allocation Fee. Subject to the provisions of Section 4.8 of these

Subp 00166

Bylaws, this Corporation shall pay the allocation fees necessary to maintain the operation of Sutter Health.

4.6    Cost of Capital Allocation Policy.  Subject to the provisions of Section 4.8 of these Bylaws, the Corporation shall participate in the Cost of Capital Allocation Policy prescribed by Sutter Health and in effect from time to time.

4.7    Representation on the Board of Directors. The President and CEO of Sutter Health may designate, by written notice to the Secretary of this Corporation, up to two (2) voting members of the Board. Any residency requirement applicable to directors shall not apply to the voting directors described in this Section 4.7. The President and CEO of Sutter Health may revoke any such designation effective upon delivery of written notice thereof to the Secretary of this Corporation. The President and CEO of Sutter Health may attend any Board meeting. This Section 4.7 supersedes any other provision in these Bylaws relating to the participation of the President and CEO and/or the Chair of Sutter Health as voting or non-voting directors of this Corporation.

4.8    Effect of Policies.  This Corporation's obligations under Sections 4.3 through 4.6 and the policies described therein shall be subject to all agreements with, and obligations to, third parties (including, without limitation, bond indentures) to which this Corporation is a party or is bound at the time these Bylaws are adopted or which are otherwise approved by Sutter Health after the adoption of these Bylaws.

4.9    Policies Required of Affiliated Entities.  Except for tax-exempt entities which are primarily fundraising foundations, this Corporation shall prescribe the policies described in Sections 4.3 through 4.6 to the tax-exempt entities which this Corporation owns or controls or of which this Corporation is a member. As to those entities, the policies shall be subject to all agreements with, and obligations to, third parties, Health Care Districts and any other member of the affiliated entity (including, without limitation, bond indentures) to which the entity is a party or is bound at the time these Bylaws are adopted or which are otherwise approved by Sutter Health after the adoption of these Bylaws.

4.10    Compliance Program.  This Corporation shall adopt a Compliance Program consistent with Sutter Health Compliance Program Plan which shall include the following:

(a) All Board Members shall receive Compliance training consistent with Sutter Health Compliance Program Plan.

(b) The Board shall have oversight of and ultimate responsibility for an effective Compliance Program including adoption of related compliance policies.

(c) The Board or a Committee of the Board shall receive and review routine and special Compliance reports on a regular basis.

Subp 00167

(d) The Board shall delegate to Corporation's Chief Executive Officer responsibility to implement Compliance Program in accordance with Sutter Health Compliance Program Plan.

## ARTICLE V
## BOARD OF DIRECTORS

5.1    Responsibility. Except as otherwise provided by the Articles of Incorporation or by these Bylaws, the management of the affairs of this Corporation shall be vested in a Board of Directors (the "Board").

5.2    Number. The Board shall, until changed by amendment to these Bylaws, consist of sixteen (16) directors, including *ex officio* directors, as specified in Sections 4.7 and 5.3.

5.3    Qualifications and Election.

5.3.1  The Chief Executive Officer of this Corporation shall be an *ex officio* voting member of the Board. The Chief of the Medical Staff, the Chair of the Volunteer Council, and the Chair of the Marin Community Health Foundation (or any other designee of the Marin Community Health Foundation Board of Directors) shall be *ex officio* non-voting members of the Board. All *ex officio* Board members serve by reason of official capacity, and the resignation or removal of any such person from office shall automatically terminate any such person's membership on the Board. No person may hold more than one directorship by reason of official capacity or any other reason. In accordance with Section 4.7, the President and CEO of Sutter Health may designate up to two (2) voting members of the Board. The remaining members of the Board shall be directors-at-large. All directors-at-large shall be elected by vote of the member at the annual meeting of the member from a slate of nominees chosen as follows:

(a) Two of the directors-at-large shall be nominated by the Marin General Hospital Medical Executive Committee subject to the approval of such nominees by the Member.

(b) The remaining directors-at-large shall be nominated by the Executive Committee of this Corporation. The slate of nominees shall then be presented for approval by the Board and by the Nominating Committee of the General Member, and for election by the Board of Directors of the General Member. The individuals who are nominated shall be broadly representative of the community served by this Corporation and meet the requirements for director as set forth in this Section.

5.3.2  Directors shall be experienced in organizational and community activities and shall be selected for their willingness and ability to participate effectively in fulfilling the Board's responsibilities. Each director shall be a resident of Marin County, other than a director designated by the President and CEO of Sutter Health.

Subp 00168

5.3.3 Not more than forty-nine percent (49%) of the persons serving as Directors at any time may be interested persons. An interested person is:

(a) Any person being compensated by the Corporation for services rendered to it within the previous 12 months, whether as a full-time or part-time employee, independent contractor or otherwise, excluding any reasonable compensation paid to a Director as Director; or

(b) Any brother, sister, ancestor, descendant, spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law or father-in-law of any such person.

However, any violation of the provisions of this Section 5.3.3 shall not affect the validity or enforceability of any transaction entered into by the Corporation.

5.4    Term. Each director (other than *ex officio* directors) shall hold office for a term of three (3) years or until his or her successor has been selected or appointed, and thereafter qualified. A director may not serve more than three (3) full consecutive terms. For purposes of computing the foregoing limitation, a director who is appointed to the Board shall be deemed to have served one full term if the term to which he or she is appointed exceeds two (2) years.

5.5    Staggered Terms. The terms of office of the directors (other than *ex officio* directors) shall be established in such a manner that no more than one-third of such directors' terms expire in any one year. In the event of a change in the number of directors, the staggering of terms shall be preserved.

5.6    Vacancies. Any vacancy occurring on the Board of this Corporation shall be filled by an appointee of the General Member from nominees selected as described in Section 5.3. A director appointed to fill a vacancy shall be appointed for the unexpired term of his or her predecessor in office.

5.7    Removal. Upon the two-thirds majority vote of the remaining members of the Board, the Board may declare vacant the office of any director-at-large who has: been declared of unsound mind by a final order of court; been convicted of a felony; been found by a final order or judgment of any court to have breached any duty of a director under these Bylaws, the Articles of Incorporation or the California Corporations Code; failed to attend three regular consecutive meetings of the Board; or, provided such removal is also approved by the member, for such other cause, including but not limited to, repeated and continuing conduct disruptive to the operation of the Board, which in the opinion of two-thirds of the remaining members of the Board renders such director unable or unfit to properly discharge his duties and responsibilities to this Corporation. The Board may not remove a director for any other reason. The member may remove a director as provided in the California Corporations Code.

5.8    Voting Rights. Each voting director shall be entitled to one vote on all matters

Subp 00169

before the Board.  There shall be no voting by proxy.

5.9     Organizational Meetings.  As soon as reasonably possible, and within thirty (30) days after the annual meeting of the member, the Board of Directors shall meet for the purposes of organizing the Board, the election of officers and the transaction of such other business as may come before the meeting.

5.10    Regular Meetings.  The Board shall hold monthly meetings at such time and place as the Board shall from time to time determine.

5.11    Special Meetings.  Special meetings of the Board for any purpose or purposes shall be called by the Secretary upon the request of the Chair, the Chief Executive Officer or any two (2) directors.

5.12    Notice of Meetings.  Notice of the time and place of any meeting shall be delivered personally, communicated by telephone or telegraph, or sent to each director by first-class mail, charges prepaid, addressed to the director either at his or her address as it is shown on the records or if it is not so shown or is not readily ascertainable, to the place where the principal office of the Corporation is located.  If sent by mail, such notice shall be mailed at least four (4) days prior to the meeting.

5.13    Quorum.  A majority of the voting members of the Board then serving shall constitute a quorum at any meeting of the Board provided that the minimum number of voting members of the Board which may constitute a quorum shall be three (3).  The act of the majority of the voting power present at any meeting at which a quorum is present shall be considered the act of the Board.

5.14    Place.  The Board shall hold its meetings at the principal office of the Corporation or such other place as the Chair or the directors requesting the meeting may designate.

5.15    Validation of Transactions.  The transactions of the Board of Directors at any meeting, however called or noticed, or wherever held, shall be as valid as though had at a meeting duly held after regular call and notice, if a quorum be present and if, either before or after the meeting, each director entitled to vote at the meeting for that purpose not present signs a written waiver of notice, a consent to the holding of such meeting, or an approval of the minutes thereof.  All such waivers, consents or approvals shall be filed with the corporate records and made a part of the minutes of the meeting.

5.16    Action Without Meeting.  Any action required or permitted to be taken by the Board under the provisions of the California Corporations Code, the Articles of Incorporation, or these Bylaws may be taken without a meeting, if all members of the Board shall individually or collectively consent in writing to such action.  Such action by written consent shall be filed with the minutes of the proceedings of the Board.  Such action by written consent shall have the same force

and effect as a unanimous vote of such directors. Any certificate or other document filed on behalf of the Corporation relating to an action taken by the Board without a meeting shall state that the action was taken by a unanimous written consent of the Board without a meeting, and that the Bylaws of this Corporation authorize its directors to so act.

5.17 Quorum Initially Present. A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of directors if any action is approved by at least a majority of the required quorum for such meeting, or such greater number as is required by the California Corporations Code, the Articles of Incorporation or these Bylaws.

5.18 Telephonic Meetings. Members of the Board may participate in a meeting through use of a conference telephone or similar communications equipment, so long as each director participating in such meeting can simultaneously hear all other directors so participating. Participation in a meeting pursuant to this Section constitutes presence in person at such meeting.

5.19 Open and Closed Meetings. Although this Corporation is not subject to any open or public meeting requirements by law or otherwise, any regular or special meeting of the Board shall be open to the public during the conduct of all business except as follows:

(a) Matters which, pursuant to the Ralph M. Brown Act (California Government Code Sections 54950 et seq.) and applicable case law, may be conducted in closed session.

(b) All agreements, contracts, business and marketing strategies, and any other competitive and strategic information, disclosure or discussion of which in an open and public meeting would, in the opinion of the Board, harm or potentially harm the Corporation's ability to compete successfully. At the conclusion of the open and public portion of each regular or special meeting, the meeting shall be closed to the public and the Board shall meet in closed session to discuss matters covered under subparagraphs (a) and/or (b) of this Section.

5.20 Directors Emeriti. All directors-at-large of this Corporation shall become Directors Emeriti upon cessation of their membership on the Board of Directors, provided that their term on the Board was at least four (4) full years and that they were not removed from the Board pursuant to Section 5.7. All former directors-at-large who meet the above requirements are hereby appointed Directors Emeriti.

(a) Appointment shall be for life, subject to the pleasure of a majority of the officers of this Corporation, provided that any Director Emeritus may resign such position at any time upon written notification to the Board.

(b) Directors Emeriti shall be invited to participate in periodic educational and informational activities of this Corporation and may be asked by the Board to provide formal or informal advice to the Board.

MGH 7th Restate Bylaws_12-01.doc          8
MGH Bylaws

(c) Directors Emeriti shall not be members of the Board of Directors of this Corporation, shall have no voting rights, and shall not otherwise participate in the governance of this Corporation.

(d) Directors Emeriti shall have the same right as any other member of the public to attend and participate in meetings of the Board and may appear before the Board in closed session when so requested by the Board to present needed information to the Board within such Director Emeritus' experience and expertise.

(e) At the Board's request, Directors Emeriti may perform activities helpful to this Corporation, consistent with their experience and expertise and with their not being part of or responsible in any way for the governance of this Corporation.

## ARTICLE VI
## OFFICERS

6.1    Officers of this Corporation.  The officers of the Corporation shall be a Chair, a Vice Chair of the Board, a Chief Executive Officer, a Secretary, and a Chief Financial Officer or a Treasurer.  The Corporation may also have, at the Board's discretion, such Vice Presidents and Assistant Secretaries as the Board deems appropriate.  Any number of offices may be held by the same person, except that neither the Secretary nor the Chief Financial Officer or Treasurer may serve concurrently as either the Chief Executive Officer or the Chair.  No *ex officio* Board member may hold any office other than that of Chief Executive Officer.

6.2    Officers Elected by the Board.  The Chair of the Board, Vice Chair of the Board and the Secretary shall be elected annually by the Board at its organizational meeting.  Each officer elected by the Board shall hold office at the pleasure of the Board and until his or her successor shall be elected and qualified to serve.  A vacancy in any office because of death, resignation, removal, disqualification or otherwise, may be filled by the Board for the unexpired term at any meeting of the Board.

6.3    Officers Appointed by the Chief Executive Officer of this Corporation.

(a) The Chief Executive Officer of this Corporation shall appoint a Chief Financial Officer or Treasurer, subject to the pleasure of the Board.

(b) If the Board determines to have Vice Presidents and Assistant Secretaries pursuant to Section 1 of this Article, the Chief Executive Officer of this Corporation shall appoint persons to fill such offices, subject to the pleasure of the Board.

6.4    Resignation or Removal.  Subject to the terms of any written employment contract, any officer, whether appointed pursuant to Sections 6.2 or 6.3, may resign at any time or be removed as follows: (a) any officer elected pursuant to Section 6.2 may be removed by the vote of

Subp 00172

the Board; and (b) any officer appointed by the Chief Executive Officer pursuant to Section 6.3 may be removed by the Chief Executive Officer, subject to the pleasure of the Board.

6.5    Vacancies in Office. A vacancy in any office because of death, resignation, removal, or any other cause shall be filled in the manner prescribed in these Bylaws for regular appointments.

6.6    Chair. The Chair of the Board shall preside at all meetings of the Board. Unless the signature of the Chief Executive Officer is required by law, the Chair of the Board shall possess the same power as the Chief Executive Officer to sign all certificates, contracts, or other instruments of this Corporation when he is so authorized by the Board. The Chair of the Board shall exercise and perform such other powers and duties as may be prescribed by the Board from time to time.

6.7    Vice Chair. In the absence of the Chair of the Board or in the event of the Chair's disability, inability, or refusal to act, the Vice Chair of the Board shall perform all of the duties of the Chair and in so acting shall have all of the powers of the Chair. The Vice Chair shall have such other powers and perform such other duties as may be prescribed from time to time by the Board or by the Chair.

6.8    Chief Executive Officer.

(a) Appointment and Removal. The Chief Executive Officer of this Corporation shall be the Chief Executive Officer of the General Member. The hiring of the Chief Executive Officer shall be approved by the Board of this Corporation. The Chief Executive Officer shall be an employee of Sutter Health. The Chief Executive Officer shall serve at the pleasure of Sutter Health, acting through its President and Chief Executive Officer, and the Board of the General Member, each of which, with the approval of the other, may terminate the services of the Chief Executive Officer of this Corporation.

(b) Responsibilities and Authority. The Chief Executive Officer shall be the general manager, administrator and Chief Executive Officer of this Corporation. The Chief Executive Officer shall be given the necessary authority and responsibility to operate this Corporation in all of its activities, including without limitation, quality of services, cost effectiveness and economic performance and implementation of System strategies, subject to the following: With respect to policy development, program planning, employee and community relations, the Chief Executive Officer shall be subject to such policies as may be adopted and such orders as may be issued by the Board of this Corporation or by any of its committees to which the Board has delegated the power for such action; with respect to program execution and overall management performance, the Chief Executive Officer shall be subject to the authority of and shall report to the Board; with respect to strategies of the local delivery system operated by this Corporation and overall operations of that system, the Chief Executive Officer shall be responsible to the President and Chief Executive Officer of Sutter Health. The Chief Executive Officer shall also periodically report to the President and Chief Executive Officer of Sutter Health or his/her

Subp 00173

designee on the affairs of this Corporation. The Chief Executive Officer shall act as the duly authorized representative of the Board of this Corporation in all matters in which the Board has not formally designated some other person to so act.

6.9    Chief Financial Officer. The Chief Financial Officer shall be the chief financial officer of this Corporation and shall keep and maintain or cause to be kept and maintained adequate and correct accounts of the properties and business transactions of the Corporation, including accounts of its assets, liabilities, receipts, disbursements, gains and losses. The books of account shall at all times be open to inspection by any Board member. The Chief Financial Officer shall be charged with safeguarding the assets of the Corporation and he or she shall sign financial documents on behalf of the Corporation in accordance with the established policies of this Corporation. He or she shall have such other powers and perform such other duties as may be prescribed by the Board from time to time.

6.10    Secretary. The Secretary shall keep or cause to be kept a book of minutes at the principal office or at such other place as the Board may order of all meetings of the Board with the time and place of holding, whether regular or special, and if special how authorized, the notice thereof given, the names of those present at the Board meetings, and the proceedings thereof. The Secretary shall give or cause to be given notice of all the meetings of the Board required by these Bylaws or by law to be given, and the Secretary shall keep the seal of this Corporation in safe custody and shall have such other powers and perform such other duties as may be prescribed by the Board from time to time.

## ARTICLE VII
## COMMITTEES

7.1    Committees Generally. Committees shall be standing or special. Standing committees may establish such subcommittees as are appropriate. Each committee shall exercise such power and carry out such functions as are designated by these Bylaws or as delegated by the Board from time to time. Except as hereinafter described, each committees shall be advisory only and subject to the control of the Board.

7.2    Standing Committees. Standing committees shall consist of the Resource Planning Committee, Finance Committee, Medical Policy Committee, and Executive Committee, and such other standing committees as the Board may authorize from time to time. Each such committee shall stand discharged when a new committee is appointed for the same task.

7.3    Special Committees. Special committees may be appointed by the Chair with the approval of the Board for such special tasks as circumstances warrant. A special committee shall limit its activities to the accomplishment of the task for which it is appointed and shall have no power to act except such as is specifically conferred by action of the Board. Upon completion of the task for which appointed, such special committee shall stand discharged.

MGH 7th Restate Bylaws_12-01.doc            11
MGH Bylaws

Subp 00174

7.4    Membership, Appointment. The chair and members of each committee, except as herein provided, shall be appointed by the Chair, subject to approval by the Board. Additionally, the Chief Executive Officer or his designee shall be an *ex officio* voting member of each committee and shall act as secretary thereof, including, at the conclusion of each meeting, the preparation of the written minutes of such meeting which shall be mailed to committee members and presented for approval at the next committee meeting.

7.5    Quorum; Meetings. A majority of the members of the committee shall constitute a quorum at any meeting of that committee. Each committee shall meet as often as is necessary to perform its duties.

7.6    Vacancies. Vacancies in any committee shall be filled for the unexpired portion of the term in the same manner as provided in the case of original appointment.

7.7    Expenditures. Any expenditure of corporate funds by a committee or any commitment by a committee to expend corporate funds shall require prior approval of the Board.

7.8    Resource Planning Committee. The Resource Planning Committee shall be responsible for the following functions:

(a) Review and recommend to the Board of Directors policy relating to the overall management and delivery of health care services by the Hospital.

(b) Review salary and wage schedules and rates for all employees as submitted by the Chief Executive Officer and recommend appropriate action thereon to the Board of Directors.

(c) Review management recommendations regarding employment and personnel policies and, when appropriate, make reports and recommendations to the Board of Directors.

(d) Review and recommend to the Board of Directors policy relating to compliance with the requirements of state and federal government and the execution of any significant contracts incidental thereto.

(e) Develop and periodically review Board policies and procedures and, when appropriate, make reports and recommendations to the Board of Directors.

(f) The Committee shall review and make recommendations to the Board of Directors in the area of planning for the adequate and timely provision for present and anticipated inpatient and outpatient services and programs. It shall also review and make recommendations concerning continuing evaluation of hospital services and programs.

7.9    Finance Committee.

(a) Composition. The Finance Committee shall consist of two at-large board

MGH 7th Restate Bylaws_12-01.doc      12
MGH Bylaws

Subp 00175

members, the Chief Executive Officer or the Chief Financial Officer in the Chief Executive Officer's absence, two members of the Marin County physician community (who may or may not be members of the board) and four other members of the Marin community with appropriate backgrounds to advise on financial matters. The chair shall be a board member.

    (b) Responsibilities. This committee shall be responsible for the following financial and planning matters:

    (i) This committee shall be responsible for overseeing the conservation of the hospital's assets and ensuring that financial records are maintained in accordance with Generally Accepted Accounting Principals. It shall see that an annual operating budget covering a one-year period and a 3-year capital budget are prepared by management and submitted to the Board of Directors in accordance with schedules established in the Systemwide Annual Budget Calendar. The Finance Committee shall examine the monthly financial reports, require explanations from the Chief Executive Officer of variations from the budget and variations from other key financial performance targets, and make recommendations when appropriate. The committee shall also review the results of all outside audits and recommend action thereon to the Board.

    (ii) The committee shall also:

    a. Assist in the preparation and modification of long-range and short-range development plans to assure that the total hospital program is attuned to meeting the health needs of the community served by the hospital, including periodic re-examination of the hospital's purposes, consistent with its financial ability to meet those needs.

    b. Review the financial feasibility of, and availability of resources for, corporate projects, acts and undertakings referred to it by the Board of Directors and make recommendations thereon to the Board; and

    c. Review the performance of joint ventures and real estate holdings.

    d. Perform such other duties related as may be assigned to it by the Board or its Chairperson.

    The Committee shall exercise its responsibilities and authority in a manner consistent with any guidelines or policies established by Sutter Health, provided that such actions are consistent with the affiliation agreement.

    (c) Authority. The Committee shall act in an advisory capacity to the Board of Directors. The Committee shall review capital expenditure proposals in excess of $100,000 in cost, and operating expenditures that exceed 1% of the annual aggregate budgeted expenditures.

Subp 00176

The Committee at its discretion shall forward such proposals to the Board of Directors for approval.

(d) <u>Accountability</u>.  The Committee shall report monthly or as often as necessary, at regular meetings of the Board or the Executive Committee, its findings on monthly reports of fiscal operations. It shall present annually to the Board a report reflecting anticipated operating and capital expenditures and receipts for the ensuing year, and such other budgets and planning reports as requested by the Board.

(e) <u>Exceptions</u>.  The Committee does not have responsibility for certain areas of finance that are governed by the Finance and Planning Committee of the Sutter Health Board of Directors, although the Committee may request and review information in these areas.  Such areas include pension funds, treasury and debt financing, cash management, insurance, and establishment of system performance targets.

   7.10   <u>Medical Policy Committee</u>.

(a) <u>Composition</u>.  The Medical Policy Committee shall consist of no fewer than seven members, of whom three shall be directors-at-large from the Corporation's Board of Directors, including the Chair of the Board (or his/her designee) and two shall be persons from the community served by Marin General Hospital not currently serving on the Board of Directors. The Chief Executive Officer and the Chief of Staff (or the President of the Medical Staff) shall serve as *ex officio* members of the Medical Policy Committee with vote.  The Medical Policy Committee may also request members of the Corporation's medical staff, management and administrative teams serve on the Medical Policy Committee with vote.  Furthermore, at the request of the Medical Policy Committee, a member of the Corporation's management team shall be named by the Chief Executive Officer to serve as administrative staff person to the Medical Policy Committee.

(b) <u>Responsibilities</u>.  The Medical Policy Committee shall assist the Board in discharging its corporate responsibility for the quality of the medical care rendered in its facilities. The Medical Policy Committee shall give support, guidance, and counsel to the Chief Executive Officer and to the Chief of Staff (or President of the Medical Staff) in their respective functions and activities.  The Medical Policy Committee shall:

(i) Advise and make recommendations to the Board on all Medical Staff matters, subject to the last paragraph of Section (c) hereof;

(ii) Review the screening standards applied to applications to the Medical Staff;

(iii) Review and recommend to the Board on all applications for appointment and reappointment to the Medical Staff, including privileges to be granted (except applications for temporary appointments and privileges which have been granted by the Chief Executive Officer);

Subp 00177

(iv) Review and recommend to the Board on all recommendations from the executive committee of the Medical Staff or the Medical Staff committee which performs similar functions;

(v) Receive and review specific reports needed to ascertain if Medical Staff functions are being properly discharged;

(vi) Ensure that Medical Staff officials are accountable for carrying out the Medical Staff functions of reviewing, analyzing, evaluating, and trending clinical work, and for making appropriate recommendations in accordance with the findings therefrom;

(vii) Ensure that Medical Staff officials are accountable for implementing appropriate procedures for ensuring the compliance of all members of the Medical Staff with Medical Staff bylaws, rules, and regulations and all Corporation promulgated policies.

(viii) Review compliance with the JCAHO standards and recommendations on medical matters, and make recommendations accordingly;

(ix) Meet at regular intervals and maintain a record of its proceedings;

(x) Cause review of Medical Staff bylaws and rules and regulations;

(xi) Provide a forum for resolving potential disputes between the Professional Staff and Management;

(xii) Review and monitor hospital programs from a quality of care standpoint, including adequacy of staffing, equipment, facilities and other factors;

(xiii) Evaluate and monitor performance improvement activities as they relate to the quality of care;

(xiv) Receive and review reports from the Multidisciplinary Committees and the Safety Committee; and

(xv) Review and report to the Board on the integration among multidisciplinary processes as they relate to quality of care.

(c)    Authority.  The Medical Policy Committee shall have the authority to:

(i) Request those studies, reports, statistics, and other information concerning the Medical Staff which the Committee deems appropriate; and

Subp 00178

(ii) Invite any officer of the Medical Staff to meet and confer with the Medical Policy Committee.

The authority delegated to the Medical Policy Committee shall be exercised in a manner consistent with any provisions for fair procedure, if applicable, afforded each member of the Medical Staff as outlined in the Medical Staff bylaws and by California law, and with any guidelines or policies established by the Sutter Health Systemwide Quality Review Committee; provided, however, that nothing in these Bylaws or the guidelines or policies of Sutter Health shall prevent this Corporation from adopting and implementing higher standards than those established by the Sutter Health Quality Review Committee.

(d)    Accountability. The Medical Policy Committee shall at all times be accountable to the Board and shall fulfill that accountability by:

(i) Submitting periodic written reports, and recommendations where appropriate, to the Board regarding:

a. Applications to the Medical Staff;

b. Studies pertaining to medical care appraisal, quality improvement, and patient/customer satisfaction; and

c. Any matters relating to Medical Staff matters considered in need of Board deliberation.

(ii) Submitting status reports to the Board or to the Executive Committee of the Board describing studies and reports in progress pertaining to the Medical Staff.

(iii) Establishing a mechanism whereby the Medical Policy Committee's effectiveness shall be evaluated.

7.11    Executive Committee.

(a) The Executive Committee shall be composed of the Chair, Vice Chair, Secretary, Chief Executive Officer, the chairs of the other standing committees and the Western Division President of Sutter Health or his or her designee.

(b) The affairs and management of the Corporation shall be supervised by the Executive Committee, which shall have power to transact all regular business of the Corporation during the periods between meetings of the Board, subject to any prior limitations imposed by the Board and subject to the limitations of California Corporations Code section 5212.

(c) The Executive Committee shall also serve as the Nominating Committee and

Subp 00179

shall recommend persons for membership on the Board meeting the qualifications set forth in these Bylaws. The Committee shall present its slate of nominees to the Board of this Corporation for consideration. The Committee shall afford all nominees an opportunity to communicate their qualifications and the reasons for their candidacy to all directors of this Corporation and to solicit their votes.

## ARTICLE VIII
## MEDICAL STAFF

8.1     Organization. Physicians, dentists, podiatrists, clinical psychologists and other practitioners granted practice privileges in Marin General Hospital shall be organized into a Medical Staff under and in accordance with Staff bylaws and rules and regulations setting forth its organization and government. Proposed bylaws, rules and regulations may be recommended by the Medical Staff, but only those approved by the Board of Directors shall become effective. The Medical Staff shall be self-governing with respect to professional work performed in the Hospital. It shall be organized into departments and divisions as may be deemed necessary. Only members of the Medical Staff shall admit patients to the Hospital; except that the Chief Executive Officer, on recommendations of those officers and individuals specified in the Medical Staff bylaws, shall have authority to grant temporary privileges to a physician, dentist, podiatrist, clinical psychologist or other practitioner who is not a member of the Staff under conditions specified in Staff bylaws.

8.2     Authority Delegated to Staff. The Medical Staff shall be responsible for providing appropriate professional care to the Hospital's patients. Each member of the Medical Staff shall have appropriate authority and responsibility for the care of his or her patients, subject to such limitations as are contained in these Bylaws and in the bylaws and rules and regulations of the Medical Staff, and subject, further, to any limitations attached to his or her appointment.

8.3     Appointments. The Board of Directors, after considering recommendations of the Medical Staff, shall appoint to the Staff, in numbers consistent with the physical capacity of the Hospital's facilities, physicians, dentists, podiatrists, clinical psychologists and other practitioners who meet the qualifications for membership set forth in the bylaws of the Medical Staff. All applications for appointment to the Staff shall be in writing and addressed to the Chief Executive Officer of this Corporation. They shall contain full information concerning the applicant's education, licensure, practice, previous hospital experience, and any unfavorable history regarding his or her licensure, practice, and hospital privileges, and any other information required by the Medical Staff bylaws. Applicants shall sign an agreement to abide by the Medical Staff bylaws and rules and regulations as amended from time to time. The applicant shall be informed of the disposition of his or her application within a reasonable time after its submission. If the Medical Executive Committee makes a recommendation to the Board which is adverse to the applicant or if the Medical Executive Committee issues a favorable recommendation but the tentative final action of the Board is unfavorable, the applicant shall have grounds to request a hearing pursuant to the procedure set forth in the Medical Staff bylaws. All appointments to the Medical Staff shall be for

MGH 7th Restate Bylaws_12-01.doc                17
MGH Bylaws

a maximum of two (2) years, renewable by the Board. All procedures for the appointment and reappointment of Medical Staff shall comply with the standards of the Joint Commission on Accreditation of Healthcare Organizations.

8.4    No Discrimination. No person applying for professional staff membership or privileges shall be discriminated against based on sex, race, color, religion, ancestry or national origin. Likewise, there shall be no discrimination based on such additional criteria as may be prescribed by statute, regulation or case law.

8.5    Medical Staff Appeal to the Board. There shall be a process for appealing to the Board a decision of the Medical Staff Judicial Review Committee regarding an applicant or member of the Medical Staff. This process shall be described in the Medical Staff bylaws.

8.6    Medical Care and Its Evaluation. Members of the Medical Staff shall be responsible for the medical supervision of each hospital patient, and in the exercise of that responsibility, each shall observe all the ethical principles of his or her profession. The Medical Staff shall conduct a continuing review and appraisal of the quality of professional care rendered in the Hospital, and shall report such activities and their results to the Board. Adequate and complete medical records shall be prepared and maintained for all patients and such records shall be an indispensable part of such review and appraisal. The Chief Executive Officer shall provide the Medical Staff with necessary assistance to facilitate regular comprehensive peer analysis of the clinical practice and to facilitate utilization review activities within the Hospital.

8.7    Chief of Staff. The Chief of Staff shall be medical advisor to the Board and the Chief Executive Officer. He or she shall be responsible for the proper functioning of the clinical organization of the Hospital and shall maintain effective supervision over clinical work in all departments and divisions. The Chief of Staff shall be an *ex officio* member or a member of all Medical Staff committees and boards, and shall perform such other duties as may be required by these bylaws, the Medical Staff bylaws, or the Board.

8.8    Medical Staff Meetings. The Medical Staff shall hold periodic meetings in accordance with the minimum meeting requirements of the Joint Commission on Accreditation of Healthcare Organizations.

## ARTICLE IX
## MEMBERS OF MEDICAL STAFF ON CONTRACT

9.1    Hospital Professional Contracts. Physicians, dentists, podiatrists and clinical psychologists employed by or under contract to the Hospital, either full- or part-time, whose duties are medicoadministrative and include clinical responsibilities with the Medical Staff involving their professional capabilities as physicians, dentists, podiatrists and clinical psychologists must be and continue to be duly appointed and qualified members of the Medical Staff whose delineated privileges include those embraced in the terms of their employment.

Subp 00181

9.2    Appointment, Renewal, Termination. Medical Staff membership may not be made contingent on the continuation of a contract between a member of the Medical Staff and the Hospital; however, the exercise of clinical privileges which involve the use of Hospital equipment and facilities may be limited to holders of an exclusive contract. Procedures for the selection, renewal and termination of exclusive contracts shall be consistent with any provisions regarding such matters contained in the Medical Staff bylaws. The final decision on all matters concerning the selection, renewal and termination of members of the Medical Staff who hold contracts with the Hospital, including exclusive contracts, shall reside with the Board.

ARTICLE X
ALLIED HEALTH PROFESSIONALS

Allied health professionals are those persons who are neither members of the Medical Staff nor employees of the Hospital but who have legitimate qualifications to participate in the provision of patient care within the Hospital. The Board shall adopt policies and procedures specifying those categories of persons who may practice, the manner of their selection and the review of their performance. An Interdisciplinary Practice Committee shall make its recommendations to the Board regarding selection and evaluation of such professionals. Such a Committee shall be structured as required by Title 22 of the California Administrative Code. This Committee shall include representation from the Board, the Medical Staff, the Administration, and Nursing. The evaluation of such persons may be analogous to that provided of Medical Staff members under the Medical Staff bylaws, provided that such persons shall not be granted fair hearing rights beyond those expressly required by law or contained in the Board's policy statement for such professionals.

ARTICLE XI
THE VOLUNTEER SERVICES

11.1    Organization. Auxiliary and other hospital service organizations may be formed in Marin General Hospital. The formation, constitution, bylaws, and operating procedure of such organizations shall be subject to approval and control by the Board of Directors. Each such organization shall cooperate with the Board and Chief Executive Officer in the best interests of the Hospital and its patients. Periodic and annual reports shall be made to the Board covering its activities by each organization.

11.2    Funds and Fund Raising. No volunteer service organization may undertake any fund raising or other project in the name of or for the benefit of the Hospital which might impose a liability on the Hospital or any affiliated entity without prior approval of the Board, nor undertake any activity on Hospital premises without the approval of the Chief Executive Officer.

Funds collected or otherwise acquired on behalf of the Hospital or by any activities purporting to assist the Hospital or its patients, shall be reported to and be subject to control by the

Subp 00182

Board. No funds, other than operating funds, shall be disbursed without prior approval of the Board.

## ARTICLE XII
## RESERVED POWERS

No approvals granted and no assignment, referral, or delegation of authority by the Board of Directors to hospital management, the Medical Staff, volunteer service organizations, or anyone else shall preclude the Board from exercising the authority required to meet is responsibility for the conduct of the Hospital. The Board retains the right to rescind any such approval or delegation.

## ARTICLE XIII
## TRANSACTIONS REQUIRING MEMBERSHIP APPROVAL

13.1    Approval Requirement. Notwithstanding anything in these Bylaws to the contrary, neither the Board nor any officer or employee of this Corporation may take any of the following actions, or approve a subsidiary or an affiliate taking any of the following actions, without the prior approval of the General Member:

(a) Merger, consolidation, reorganization, or dissolution of this Corporation or any subsidiary or affiliate entity;

(b) Amendment or restatement of the Articles of Incorporation or the Bylaws of this Corporation or any subsidiary or affiliate entity;

(c) Adoption of operating budgets of this Corporation or any subsidiary or affiliate entity, including consolidated or combined budgets of this Corporation and all subsidiary organizations of this Corporation;

(d) Adoption of capital budgets of this Corporation or any subsidiary or affiliate entity;

(e) Aggregate operating or capital expenditures on an annual basis that exceed approved operating or capital budgets by a specified dollar amount to be determined from time to time by the General Member;

(f) Long-term or material agreements including, but not limited to, borrowings, equity financings, capitalized leases and installment contracts; and purchase, sale, lease, disposition, hypothecation, exchange, gift, pledge, or encumbrance of any asset, real or personal, with a fair market value in excess of a dollar amount to be determined from time to time by the Board of Directors of the General Member, which dollar amount shall not be less than ten percent (10%) of the total annual capital budget of this Corporation;

(g) Appointment of an independent auditor and hiring of independent counsel

Subp 00183

except in conflict situations occurring between the General Member and this Corporation or any subsidiary or affiliate entity;

(h) The creation or acquisition of any subsidiary or affiliate entity;

(i) Contracting with an unrelated third party for all, or substantially all, of the management of the assets or operations of this Corporation or any subsidiary or affiliate entity;

(j) Approval of major new programs and clinical services of this Corporation or any subsidiary or affiliate entity. The General Member shall from time to time define the term "major" in this context;

(k) Approval of strategic plans of this Corporation or any subsidiary or affiliate entity;

(l) Adoption of quality assurance policies not in conformity with policies established by the General Member; or

(m) Any transaction between this Corporation, a subsidiary or affiliate and a director of this Corporation or an affiliate of such director.

13.2    Other Major Activities.

(a) In addition, the General Member shall have the authority, except as otherwise provided by the General Member and after consultation with this Corporation, to require prior review and approval of those activities of this Corporation or any subsidiary or affiliate entity which the General Member determines to be major activities.

(b) "Major Activities" shall be those which the General Member by a vote of not less than two-thirds (2/3) of its Board of Directors has declared major, by written notice to this Corporation, delivered personally or transmitted by registered or certified mail, return receipt requested. Such notice shall specifically identify the matter or matters requiring approval of the General Member, and shall refer to this Bylaw provision granting such approval rights to the General Member. Notices received pursuant to this Section shall be recorded in the minutes of this Corporation and shall be filed with the minutes of this Corporation.

13.3    Record of Approval or Disapproval. The General Member's approval or disapproval of matters described in Sections 13.1 or 13.2 shall be recorded in or filed with the minutes of this Corporation.

13.4    Lessor Approval. Some of the items in Sections 13.1 or 13.2 may also require approval of Marin Health Care District under the Lease between Marin Health Care District and this Corporation. Nothing herein shall modify or eliminate this Corporation's Lease obligation to seek the approval of Marin Health Care District when so required.

Subp 00184

## ARTICLE XIV
## GENERAL PROVISIONS

14.1    <u>Bonding</u>. All directors and employees shall be properly bonded.

14.2    <u>Compensation of Board Members</u>. The members of the Board shall receive no compensation as such, except that they may be reimbursed from time to time for all expenses incurred on behalf of this Corporation.

14.3    <u>Self-Dealing</u>. In the exercise of voting rights by members of the Board, no individual shall vote on any issue, motion, or resolution which directly or indirectly inures to his or her benefit financially or with respect to which he or she has any other conflict of interest, except that such individual may be counted in order to qualify a quorum and, except as the Board may otherwise direct, may participate in the discussion of such an issue, motion, or resolution if he or she first discloses the nature of his or her interest.

14.4    <u>Indemnification</u>. This Corporation shall indemnify any director, officer, employee or agent of this Corporation for liability incurred by such person in the exercise of his or her duties with respect to this Corporation to the extent permitted by Section 5238 of the California Corporations Code or any successor statute.

14.5    <u>Fiscal Year</u>. The fiscal year of this Corporation shall end on December 31 of each year.

14.6    <u>Construction and Definitions</u>. Unless the context requires otherwise, the general provisions, rules of construction, and definitions in the California Nonprofit Corporation Law shall govern the construction of these Bylaws. Without limiting the generality of the preceding sentence, the masculine gender includes the feminine and neuter, the singular number includes the plural, the plural number includes the singular and the term "person" includes both a legal entity and a natural person.

## ARTICLE XV
## AMENDMENTS

These Bylaws may be amended or new Bylaws may be adopted by action of the Board at any regular meeting of the Board or at any special meeting called for that purpose. Amendments shall not be effective unless and until approved by the General Member. Alternatively, amendments may be adopted by the General Member, other than amendments which reduce the powers of the Board, at any regular or special meeting of the Board of Directors of the General Member called for that purpose. However, prior to amending unilaterally these Bylaws, the General Member shall notify the Board of the proposed changes, explain the reasons for them, and allow the Board to comment. Following that process the General Member may request that the Board adopt such amendments at its next regularly scheduled meeting.

Subp 00185

# EXHIBIT 1
## EQUITY CASH TRANSFER POLICY

## SECRETARY'S CERTIFICATE

I certify that I am the acting Secretary of Marin General Hospital, a California nonprofit pubic benefit corporation, and that the attached Seventh Restatement of Bylaws of Marin General Hospital are the current bylaws of this Corporation containing all the amendments as adopted by the Board of Directors of Marin General Hospital on February 1, 2001, September 6, 2001, and November 21, 2001; and by the General Member, Marin Community Health, on April 18, 2001, September 19, 2001, and December 4, 2001; and by Sutter Health on June 26, 2001, October 17, 2001, and December 17, 2001, respectively.

_____
Secretary

MGH 7th Restate Bylaws_12-01.doc
Secretary's Certificate

Subp 00187