Exhibit J

# AMENDED AND RESTATED

# BYLAWS

## OF

## *NOVATO COMMUNITY HOSPITAL*

a nonprofit, public benefit
corporation organized under
the laws of the
State of California

*Includes revisions through December 18, 2001*

TABLE OF CONTENTS

I.      NAME....................................................................................................................1

II.     PURPOSES..........................................................................................................1

III.    MEMBERSHIP.....................................................................................................2
        Section 3-1. – General Member...........................................................................2
        Section 3-2. – Transfer of Membership................................................................2
        Section 3-3. – Exercise of Membership Rights ....................................................2
        Section 3-4. – Liabilities and Assessments..........................................................2

IV.     SYSTEM AFFILIATION .......................................................................................3
        Section 4-1. – Affiliated Status............................................................................3
        Section 4-2. – Participation in Activities of Sutter Health ....................................3
        Section 4-3. – Cash Concentration .....................................................................3
        Section 4-4. – Equity Cash Transfer Policy.........................................................3
        Section 4-5. – Payment of Allocation Fee ...........................................................3
        Section 4-6. – Cost of Capital Allocation Policy..................................................3
        Section 4-7. – Representation on Board of Directors ...........................................4
        Section 4-8. – Effect of Policies .........................................................................4
        Section 4-9. – Policies Required of Affiliated Entities .........................................4
        Section 4-10. – Compliance Program..................................................................4

V.      DIRECTORS .......................................................................................................5
        Section 5-1. – Number, Qualification, Selection...................................................5
        Section 5-2. – Powers and Responsibilities..........................................................6
        Section 5-3. – Compensation..............................................................................7
        Section 5-4. – Conflict of Interest.......................................................................7
        Section 5-5. – Nominations ................................................................................7

VI.     MEETINGS .........................................................................................................8
        Section 6-1. – Regular Meetings .........................................................................8
        Section 6-2. – Special Meetings .........................................................................8
        Section 6-3. – Annual Organizational Meeting ....................................................8
        Section 6-4. – Place of Meeting..........................................................................8
        Section 6-5. – Notice .........................................................................................8
        Section 6-6. – Quorum........................................................................................8
        Section 6-7. – Manner of Acting .........................................................................9
        Section 6-8. – Presiding Officer .........................................................................9
        Section 6-9. – Action in Lieu of Meeting.............................................................9

Subp 00317

VII.     OFFICERS ....................................................................................9
         Section 7-1. - General .........................................................................9
         Section 7-2. - Qualification, Election and Term of Office.........................9
         Section 7-3. - Chairperson ................................................................10
         Section 7-4. - Vice Chairperson.........................................................10
         Section 7-5. - Chief Executive Officer................................................10
         Section 7-6. - Chief Administrative Officer..........................................11
         Section 7-7. - Chief Financial Officer.................................................11
         Section 7-8. - Secretary ...................................................................11
VIII.    COMMITTEES...............................................................................12
         Section 8-1. - General .......................................................................12
         Section 8-2. - Executive Committee ..................................................12
         Section 8-3. - Finance Committee .....................................................13
         Section 8-4. - Medical Policy Committee ...........................................14
         Section 8-5. - Nominating Committee ................................................17
         Section 8-6. - Ad Hoc Committees ....................................................17
IX.      PROVISION OF MEDICAL, DENTAL AND PODIATRIC CARE ...................18
         Section 9-1. - Responsibility for Medical Care.....................................18
         Section 9-2. - Medical Staff Organization ...........................................20
         Section 9-3. - Medical Staff Bylaws ..................................................21
         Section 9-4. - Hearing and Appeals ...................................................22
         Section 9-5. - Professional Liability Insurance ....................................22
X.       RECORDS, REPORTS AND INSPECTION RIGHTS .............................23
         Section 10-1. - Maintenance of Articles and Bylaws.............................23
         Section 10-2. - Maintenance of Other Corporation Records ...................23
         Section 10-3. - Inspection by Directors or Member..............................23
XI.      EXECUTION OF DOCUMENTS.......................................................23
XII.     TRANSACTIONS REQUIRING APPROVAL OF THE GENERAL MEMBER 24
         Section 12-1. - Matters Requiring Approval.........................................24
         Section 12-2. - Other Major Activities ................................................25
         Section 12-3. - Approvals .................................................................25
         Section 12-4. - Other Action Requiring Approval of General Member .............25
         Section 12-5. - Exercise of Authority .................................................26
XIII.    AUXILIARIES AND RELATED GROUPS ........................................26
         Section 13-1. - Establishment ...........................................................26
         Section 13-2. - Board Approval .........................................................26
XIV.     BONDING AND INDEMNIFICATION ..............................................26
         Section 14-1. - Bonding ...................................................................26
         Section 14-2. - Indemnification .........................................................26
XV.      AMENDMENTS ............................................................................27

Exhibit 1 - Equity Cash Transfer Policy

Subp 00318

AMENDED AND RESTATED

BYLAWS

NOVATO COMMUNITY HOSPITAL

## I. NAME

The name of the Corporation shall be as listed in the Articles of Incorporation, namely, Novato Community Hospital, a nonprofit, public benefit corporation organized under the laws of the State of California. The Corporation shall not change its name under which the Corporation does business from Novato Community Hospital, a Sutter Health Affiliate, to any new name that does not include Novato as the first or second word. Neither the General Member nor Sutter Health shall approve a name which does not meet this requirement.

The principal office of the Corporation shall be located in or near Novato, Marin County, California, and the principal place of business shall be located in or near Novato, California.

## II. PURPOSES

This Corporation was formed for the purposes set forth in its Articles of Incorporation:

A.    To establish, equip and maintain one or more nonprofit hospitals, medical centers, institutions or other places for the reception and care of the sick, injured, and disabled, with permanent facilities that include inpatient beds and medical services; to provide diagnosis and treatment for patients; and to provide associated services, outpatient care and home care in furtherance of this Corporation's charitable purposes;

B.    To promote and carry on educational activities related to the care of the sick, injured, and disabled, or to the promotion of health;

C.    To promote and carry out scientific research related to the care of the sick, injured, and disabled;

D.    To promote or carry out such other activities as may be deemed advisable for the betterment of the general health of the community served; and

E.    To contribute to the growth, development and financial strength of Sutter Health.

Subp 00319

## III. MEMBERSHIP

### Section 3-1. - General Member

There shall be one member of this Corporation who shall be Marin Community Health, a California nonprofit public benefit corporation (the "General Member"). The General Member, and only the General Member, shall be entitled to exercise fully all rights and privileges of members of nonprofit corporations under the California Nonprofit Public Benefit Corporation Law, and all other applicable laws. The rights and powers of the General Member shall also include, without limitation, the following: the limitation on liabilities described in Section 3-4 of these Bylaws; the rights and powers to appoint (and remove) the appointed members of the Board of this Corporation, subject to Section 12-4 of these Bylaws; and the exercise of all of the rights and powers set forth in Article XII of these Bylaws. The General Member may not be expelled or suspended as the General Member without its consent. Any reference in these Bylaws to the "member," "Member," "general member," "General Member," "corporate member," or "Corporate Member" of this Corporation, or any similar such reference, shall mean Marin Community Health, a California nonprofit public benefit corporation.

### Section 3-2. - Transfer of Membership

The General Member may not transfer its membership or any rights arising therefrom.

### Section 3-3. - Exercise of Membership Rights

The General Member of this Corporation shall exercise its membership rights through its own Board of Directors. Subject to the provisions of the General Member's own bylaws, and except as otherwise provided in these Bylaws where a super-majority vote of the Board of Directors of the General Member is required, the Board of Directors of the General Member may, by resolution, authorize a person or committee of persons to exercise its vote on any matter to come before the membership of this Corporation. In addition- the General Member may exercise its membership rights at any regular or special meeting of the Board of Directors of the General Member. The functions required by law or these Bylaws to be performed at the annual membership meeting or any regular or special meeting of the members of this Corporation may be performed at any regular or special meeting of the General Member's own Board of Directors.

### Section 3-4. - Liabilities and Assessments

The General Member, as such, shall not be liable for the debts of this Corporation. The Board of this Corporation shall have no power to levy and collect assessments on the General Member. The provisions of this paragraph cannot be amended in any manner.

Subp 00320

## IV. SYSTEM AFFILIATION

### Section 4-1. - Affiliated Status

This Corporation is one of several corporations affiliated with Sutter Health, a nonprofit public benefit corporation that comprise a multi-institutional health care system ("System"). Sutter Health is responsible to oversee and coordinate the activities of the affiliates that comprise the System, and to provide support services upon request of the affiliates.

### Section 4-2. - Participation in Activities of Sutter Health

The Board of this Corporation shall submit nominees to Sutter Health to appoint members of this Corporation's Board or officers of this Corporation to serve on Sutter Health's corporate Board of Directors and/or its Board committees as appropriate to ensure Sutter Health's continued qualification as a supporting organization under Section 509 of the Internal Revenue Code of 1986, as amended from time to time, or successor provisions of the Internal Revenue Code.

### Section 4-3. - Cash Concentration

Subject to the provisions of Section 4-8 of these Bylaws, the Corporation shall participate in the Cash Concentration and Controlled Disbursement Program prescribed by Sutter Health and in effect from time to time.

### Section 4-4. - Equity Cash Transfer Policy

Subject to the provisions of Section 4-8 of these Bylaws, the terms of the Equity Cash Transfer Policy contained in Exhibit 1 to these Bylaws are incorporated into and made part of these Bylaws. Neither donor originated funds nor the earnings therefrom shall be subject to the Equity Cash Transfer Policy.

### Section 4-5. - Payment of Allocation Fee

Subject to the provisions of Section 4-8 of these Bylaws, this Corporation shall pay the allocation fees necessary to maintain the operation of Sutter Health.

### Section 4-6. - Cost of Capital Allocation Policy

Subject to the provisions of Section 4-8 of these Bylaws, the Corporation shall participate in the Cost of Capital Allocation Policy prescribed by Sutter Health and in effect from time to time.

Subp 00321

### Section 4-7. - Representation on the Board of Directors

The President and CEO of Sutter Health may designate, by written notice to the Secretary of this Corporation, up to two (2) voting members of the Board. Any residency requirement applicable to directors shall not apply to the voting directors described in this Section 4-7. The President and CEO of Sutter Health may revoke any such designation effective upon delivery of written notice thereof to the Secretary of this Corporation. The President and CEO of Sutter Health may attend any Board meeting. This Section 4-7 supersedes any other provision in these Bylaws relating to the participation of the President and CEO and/or the Chair of Sutter Health as voting or non-voting directors of this Corporation.

### Section 4-8. - Effect of Policies.

This Corporation's obligations under Sections 4-3 through 4-6 and the policies described therein shall be subject to all agreements with and obligations to third parties (including without limitation bond indentures) to which this Corporation is a party or is bound at the time these Bylaws are adopted or which are otherwise approved by Sutter Health after the adoption of these Bylaws.

### Section 4-9. Policies Required of Affiliated Entities.

Except for tax-exempt entities which are primarily fundraising foundations, this Corporation shall prescribe the policies described in Sections 4-3 through 4-6 to the tax-exempt entities which this Corporation owns or controls or of which this Corporation is a member. As to those entities, the policies shall be subject to all agreements with and obligations to third parties, Healthcare Districts and any other member of the affiliated entity (including without limitation bond indentures) to which the entity is a party or is bound at the time these Bylaws are adopted or which are otherwise approved by Sutter Health after the adoption of these Bylaws.

### Section 4-10. Compliance Program

This Corporation shall adopt a Compliance Program consistent with Sutter Health Compliance Program Plan which shall include the following:

A.    All Board Members shall receive Compliance training consistent with Sutter Health Compliance Program Plan.

B.    The Board shall have oversight of and ultimate responsibility for an effective Compliance Program including adoption of related compliance policies.

C.    The Board or a Committee of the Board shall receive and review routine and special Compliance reports on a regular basis.

Subp 00322

D.    The Board shall delegate to Corporation's chief executive officer responsibility to implement Compliance Program in accordance with Sutter Health Compliance Program Plan.

## V. DIRECTORS

### Section 5-1. - Number, Qualification, Selection

A.    The Board of Directors shall consist of no fewer than seven nor more than 15 Directors. To the extent necessary, the authorized number of directors of this Corporation shall be increased by up to two (2) persons so that Section 4-7 can be implemented without the removal or resignation of any current director of this Corporation. The exact number of Directors, within these limits, shall be set by the General Member. All Directors shall be eligible to vote.

B.    A majority of the members of the Board of Directors shall live within the City limits of Novato or within Novato's Urban Service Area. Neither the General Member nor Sutter Health shall approve any modification which directly or indirectly attempts to eliminate this residency requirement.

C.    Not more than 49% of the persons serving as members of the Board of Directors at any time may be interested persons. An interested person is:

    i.    Any person being compensated by the Corporation for services rendered to it within the previous 12 months, whether as a full-time or part-time employee, independent contractor or otherwise, excluding any reasonable compensation paid to a Director as Director.

    ii.    Any brother, sister, ancestor, descendant, spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law or father-in-law of any such person.

However, any violation of the provisions of this paragraph shall not affect the validity or enforceability of any transaction entered into by the Corporation.

D.    Up to two representatives of Sutter Health as provided in Section 4-7; the Chief Executive Officer of this Corporation, as provided in Section 7-5; and the Chief of the Medical Staff shall each be *ex officio* members, with full voting rights, of the Board of Directors. All other members shall be elected or appointed as herein set forth.

E.    Elected or appointed members of the Board of Directors shall be chosen for their willingness and ability to effectively contribute to and support the objectives of the hospital. Membership on the Board should reflect a

Subp 00323

breadth of diversity of community interests that is in keeping with the broad role of the hospital in the community.

F.    At the annual membership meeting, in addition to whatever other business that may be conducted, the General Member shall elect replacements for members of the Board of Directors of this Corporation whose terms will expire prior to the next annual meeting of the membership. Directors shall be elected by vote of the General Member from a slate of nominees selected as described at Section 5-5 of these Bylaws. Directors shall serve at the discretion of the General Member.

G.    The terms of all elected Directors shall be for three years, and appointments shall be staggered. No elected Director may serve for more than nine consecutive years. Notwithstanding the above limitation on time of service, each Director shall hold office until his or her successor is appointed. None of these temporal provisions apply to *ex officio* Directors.

Section 5-2. - Powers and Responsibilities

A.    Except as otherwise provided by the Articles of Incorporation or these Bylaws, the powers of the Corporation shall be exercised, its property controlled and its affairs conducted by or under the direction of the Board of Directors.

B.    Except as to those powers herein expressly reserved to the General Member by Article XII, and subject to any Systemwide policies adopted by Sutter Health, the general powers of the Board of Directors shall include, but not be limited to, the following:

    i.    to select and remove officers, agents and employees of the Corporation, other than as described herein; to prescribe powers and duties for them; to fix their compensation; and require from them security for faithful service;

    ii.    to develop annual one-year operating and three-year capital budgets in accordance with guidelines established by Sutter Health's Finance-Planning Committee;

    iii.    to approve capital expenditures outside of approved capital budgets, to a limit specified by the General Member;

    iv.    to develop and recommend corporate objectives;

    v.    to select and appoint a qualified Medical Staff and maintain a liaison therewith;

Subp 00324

vi.   to supervise the hospital's quality assurance activities, including all aspects of patient care evaluation in accordance with guidelines established Sutter Health's Systemwide Quality Review Committee;

vii.  to monitor and evaluate performance of the Chief Executive Officer;

viii. to recommend Marin County residents for election by the General Member to the Board; and

ix.   to arrange for periodic review of its own performance.

Section 5-3. - Compensation

Directors who are not part of the full-time management of the Corporation shall serve without compensation except for reimbursement for reasonable expenses. In keeping with the nonprofit status of the Corporation, no Director shall benefit financially from his or her position as a Board member.

Directors may be reimbursed for all out-of-pocket expenses incurred in attending meetings and carrying out duties and functions directly related to hospital business.

Section 5-4. - Conflict of Interest

The Board shall promulgate written policies regarding conflict of interest related to its own members, salaried persons in the hospital and members of the hospital's Medical Staff. Such policies shall not be inconsistent with the standards of conduct set forth in Sections 5230 through 5238 of the California Corporations Code. Such policies shall ensure full disclosure of financial interests and transactions where conflict of interest is a possibility, and shall ensure the avoidance of potential conflict of interest in choosing new Board members. Such policies shall impose upon each Board member the responsibility to be alert to possible conflicts of interest of himself or herself or of other Board members, and shall require that each Director declare his or her absence of conflict of interest on a declaration form provided for that purpose and disqualify himself or herself from making a decision where he or she has a conflict of interest.

Section 5-5. - Nominations

Nominations of Directors, including but not limited to nominations for full terms, and nominations to fill vacancies created by resignation, removal, or death occurring during a term shall be proposed by the Nominating Committee of this Corporation. The slate of nominees shall then be presented for approval by the Board and by the Nominating Committee of the General Member, and for election by the Board of Directors of the General Member.

Subp 00325

## VI. MEETINGS

### Section 6-1. - Regular Meetings

Regular meetings of the Board of Directors shall be held at such frequency, time, and place as the Board shall from time to time determine.

### Section 6-2. - Special Meetings

Special meetings of the Board of Directors may be called at any time on the order of the Chairperson, on the order of three Directors, or by the General Member.

### Section 6-3. - Annual Organizational Meeting

Annually, within 30 days following each annual meeting of the membership, the Board shall meet for the purpose of electing the officers of the Corporation and for the purpose of electing committee members, as required.

### Section 6-4. - Place of Meeting

All regular meetings of the Board of Directors, except as herein otherwise provided, shall be held at the place of business of the Corporation or such other place within the State of California as the Chairperson or the Directors requesting such a meeting may designate.

### Section 6-5. - Notice

Special meetings of the Board of Directors shall be held upon four days' notice to each Director by first-class mail or 48 hours' notice to each Director delivered personally or by telephone or telegraph. The attendance of a Director at any meeting shall constitute a waiver of notice of the meeting, except where a Director attends a meeting only for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened.

### Section 6-6. - Quorum

A majority of the whole number of Directors presently serving and empowered to vote shall constitute a quorum for the transaction of business. However, a majority of those present at the time and place of any meeting, although less than a quorum, may adjourn the same from time to time or from day to day, without further notice, until a quorum shall attend, and when a quorum shall attend, any business may be transacted which might have been transacted at the meeting had the same been held on the day on which the same was originally appointed or called. A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of Directors, if any action is approved by at least a majority of the required quorum for such meeting, or such greater number as is required by the California Corporations Code, the Articles of Incorporation or these Bylaws. (For example, assume that eight voting

Subp 00326

members is the minimum necessary for a quorum at a Board meeting and that a particular action may be taken by a majority of the voting Directors present at a meeting at which a quorum is present. If eight voting Board members are present at the beginning of a Board meeting, but subsequently up to three voting Board members withdraw, the remaining members may continue to meet and transact business, provided that any action is approved by at least five voting Board members.)

Section 6-7. - Manner of Acting

The act of a majority of Directors empowered to vote and present at a meeting at which a quorum is present shall be the act of the Board of Directors, unless the act of a greater number is required by law or by these Bylaws.

Section 6-8. - Presiding Officer

The Chairperson, or in his or her absence, the Vice Chairperson, or in the absence of both, a chairperson selected by the Directors present, shall call the meeting to order and shall preside.

Section 6-9. - Action in Lieu of Meeting

Any action required or permitted to be taken by the Board of Directors may be taken without a meeting, if all members of the Board shall individually or collectively consent in writing to such action. Such written consent or consents shall be filed with the minutes of proceedings of the Board. Such action by written consent shall have the same force and effect as the unanimous vote of the Directors.

## VII. OFFICERS

Section 7-1. - General

The officers of the Corporation shall be a Chairperson, a Vice Chairperson, a Chief Executive Officer, a Chief Administrative Officer, a Chief Financial Officer and a Secretary. Offices may be held by the same person except that neither the Chief Financial Officer nor the Secretary may serve concurrently as Chairperson or as Chief Executive Officer.

Section 7-2. - Qualification, Election and Term of Office

The Chairperson, Vice Chairperson, and Secretary shall be elected by the Board at the Annual Organizational Meeting. These officers shall serve for one year terms or until successors have been elected, but must be elected each year. An individual may not serve more than two consecutive years in one of these officer positions. The election of the Chairperson is effective upon approval of the General Member. Only elected members who live in Marin County shall be eligible to be Chairperson. These officers, other than the Chairperson, serve at the pleasure of the Board and may be removed as an officer without cause by a majority vote of the Directors. The Chairperson may be removed as an officer without cause by a majority vote of the Directors and approval of the General

Subp 00327

Member. Such removal shall not affect the officer's status as a Director. The Chief Executive Officer of this corporation shall appoint a Chief Administrative Officer and a Chief Financial Officer, subject to the pleasure of the Board. The Chief Administrative Officer and Chief Financial Officer may be removed by the Chief Executive Officer, subject to the pleasure of the Board.

Section 7-3. - Chairperson

The Chairperson shall preside at all meetings of the Board of Directors. The Chairperson shall exercise and perform such other powers and duties as may be prescribed by the Board of Directors from time to time. The Chairperson may delegate any of his or her powers to the Vice Chairperson of the Corporation. The Chairperson shall be an *ex officio* non-voting member of all committees.

Section 7-4. - Vice Chairperson

The Vice Chairperson, in the absence, inability, or refusal of the Chairperson to act, shall have the same powers and duties as the Chairperson and shall have in addition any powers and duties that the Chairperson from time to time delegates to him or her. He or she shall have such other powers and perform such other duties as may be assigned to him or her by the Board of Directors.

Section 7-5. - Chief Executive Officer

A. Appointment, Compensation and Removal

The Chief Executive Officer of this Corporation shall be Chief Executive Officer of the General Member. The hiring of the Chief Executive Officer shall be approved by the Board of this Corporation. The Chief Executive Officer shall be an employee of Sutter Health. The Chief Executive Officer shall serve at the pleasure of Sutter Health, acting through its President and CEO, and the Board of the General Member, each of which, with the approval of the other, may terminate the services of the Chief Executive Officer of this Corporation.

B. Responsibilities and Authority

The Chief Executive Officer shall be the general manager, administrator and Chief Executive Officer of this Corporation. The Chief Executive Officer shall be given the necessary authority and responsibility to operate this Corporation in all of its activities, including without limitation, quality of services, cost effectiveness and economic performance and implementation of System strategies, subject to the following: With respect to policy development, program planning, employee and community relations, the Chief Executive Officer shall be subject to such policies as may be adopted and such orders as may be issued by the Board of this Corporation or by any of its committees to which the Board has delegated the power for such action; with respect to program execution and overall management performance, the Chief Executive Officer shall be subject to the authority of and

Subp 00328

shall report to the Board; with respect to strategies of the local delivery system operated by this Corporation and overall operations of that system, the Chief Executive Officer shall be responsible to the President and Chief Executive Officer of Sutter Health. The Chief Executive Officer shall also periodically report to the President and CEO of Sutter Health or his/her designee on the affairs of this Corporation. The Chief Executive Officer shall act as the duly authorized representative of the Board of this Corporation in all matters in which the Board has not formally designated some other person to so act.

C. *Ex Officio* Board Membership

The Chief Executive Officer shall be an *ex officio* voting member of the Board of this Corporation.

## Section 7-6. - Chief Administrative Officer

In the absence or disability of the Chief Executive Officer, the Chief Administrative Officer shall perform all duties of the Chief Executive Officer. When so acting, the Chief Administrative Officer shall have all powers of and be subject to all restrictions on the Chief Executive Officer; provided, however, that the Chief Administrative Officer shall not serve as a director of this corporation by virtue of such absence or disability. The Chief Administrative Officer shall receive notice of and attend all meetings of the Board, together with other senior staff as appropriate. At the request of the Board, the Chief Administrative Officer shall represent the Board at management/planning meetings, conferences, retreats and symposia. The Chief Administrative Officer shall have such other powers and perform such other duties as the Board and the Chief Executive Officer may prescribe.

## Section 7-7. - Chief Financial Officer

The Chief Financial Officer, acting with the Executive and Finance Committees, shall ensure that a true and accurate accounting of the financial transactions of the hospital are made, that reports of such transactions of the hospital are made, that reports of such transactions are presented to the Executive Committee or the Board and that all accounts payable are presented to such representatives as the Executive Committee may designate for authorization of payment. The books of account shall at all times be open to inspection by any member of the Board and by the General Member.

## Section 7-8. - Secretary

The Secretary shall cause appropriate notices and agendas to be prepared and sent for all meetings of the Board of Directors; shall act as custodian of all records and reports; shall be responsible to cause the keeping and reporting of adequate records of all meetings of the Board of Directors; and shall certify to the correctness of any corporate bylaws or resolutions. The Board may appoint such Assistant Secretaries as deemed appropriate, each of whom shall have authority to sign documents on behalf of and in the absence or unavailability of the Secretary.

Subp 00329

## VIII. COMMITTEES

Section 8-1. - General

      Except as specified in these Bylaws or in any resolution creating an additional committee, the members and chairperson of each committee shall be elected by the Board of Directors at the Annual Organizational Meeting of the Board. The chairperson and all other members of each committee shall hold office for one year or until their successors are elected. Except as specified for the Executive Committee, the Chairperson of the Board shall have the power to fill any vacancies that occur on committees for the remainder of the year.

      Except for the Executive Committee, the Medical Policy Committee, and the Nominating Committee, persons may be appointed to committees who are not members of the Board or employees of the Corporation. Such persons may serve as officers of their committees. The Chairperson of the Board, or his or her designee, shall be an *ex officio* non-voting member of all committees.

      The provisions of Sections 6-5, 6-6, 6-7, and 6-9 of these Bylaws, regarding notice, quorum, manner of acting and action in lieu of a meeting, shall apply to committees of the Board.

      All committees of the Board shall keep minutes of their meetings, which shall be filed with the Secretary of the Board.

Section 8-2. - Executive Committee

    A.    Composition

        The Executive Committee shall consist of the Chairperson of the Board who shall serve as Chairperson of the committee, the Vice Chairperson, the Secretary, one of the members of the Board who was designated by Sutter Health pursuant to Section 4-7 of these bylaws or his or her designee, the Chairperson of the Finance Committee, and the Chief Executive Officer.

    B.    Responsibilities and Authority

        The affairs and management of the hospital shall be supervised by the Executive Committee which shall have power to transact all regular business of the hospital during the period between meetings of the Board, subject to any prior limitations imposed by the Board and subject to the limitations of California Corporations Code section 5212. Additionally the Executive Committee shall review the corporate bylaws and recommend revisions as necessary (and at least every two years) to ensure compliance with applicable statutes, regulations, and accreditation requirements.

Subp 00330

C.    Accountability

The Executive Committee shall report to each regular Board meeting the results of actions that it has taken within the authority delegated to it, so that the Board maintains accountability from the Executive Committee for its actions. Minutes of all meetings of the Executive Committee shall be distributed to all Board of Director members for information and any necessary actions.

Section 8-3. – Finance Committee

A.    Composition

The Finance Committee shall consist of three members of the Board, the Chief Financial Officer, and one representative from the Medical Staff, who may also be a member of the Board.

B.    Responsibilities and Authority

This committee shall be responsible for the following financial and planning matters:

i.    This committee shall be responsible for overseeing the management of the hospital's assets and ensuring that financial records are maintained in accordance with Generally Accepted Accounting Principles. It shall see that an annual operating budget covering a one-year period and an annual capital budget covering a three-year period are prepared and submitted to the Board of Directors in accordance with schedules established in the Systemwide Annual Budget Calendar. The Finance Committee shall examine the monthly financial reports and require explanations from the Chief Executive Officer of variations from the budget. The committee shall also supervise and review the results of all outside audits, and recommend action thereon to the Board.

ii.    The committee shall also:

a.    Consider and recommend plans for securing capital and operating funds for the Corporation;

b.    Assist in the preparation and modification of long-range and short-range development plans to assure that the total hospital program is attuned to meeting the health needs of the community served by the hospital, including periodic

Subp 00331

re-examination of the hospital's purposes, goals, policies and current programs for delivery of health services;

c.     Review the financial feasibility of, and availability of resources for, corporate projects, acts, and undertakings referred to it by the Board of Directors and make recommendations thereon to the Board; and

d.     Perform such other duties related to fiscal and planning matters as may be assigned to it by the Board or its Chairperson.

The committee shall exercise its responsibilities and authority in a manner consistent with any guidelines or policies established by Sutter Health's Finance and Planning Committee.

C.     Accountability

This committee shall report monthly or as often as necessary, at regular meetings of the Board or the Executive Committee, its findings on monthly reports of the fiscal operation. It shall present annually to the Board a report reflecting anticipated operating and capital expenditures and receipts for the ensuing year, and such other budgets and planning reports as requested by the Board.

Section 8-4. - Medical Policy Committee

A.     Purposes

The purposes of this Committee are:

i.     To assist the Board to discharge its corporate responsibility for the quality of medical care by establishing, maintaining, and improving means of holding the Medical Staff accountable for all its activities within the hospital. ·

ii.     To give support, guidance, and counsel to the Chief Executive Officer and Medical Staff officials in carrying out their supervisory roles with respect to Medical Staff functions and activities.

B.     Composition

This committee shall consist of up to five voting members of the Board, none of whom shall be members of the Medical Staff. The Chief Administrative Officer, Chairperson of the Board (or his or her designee) and Chief of Staff shall serve as ex officio members, without vote.

Subp 00332

A member of the hospital's management team shall be named by the Chief Executive Officer to serve as administrative staff person to this committee.

C.    Responsibilities

The committee shall:

i.    Advise and make recommendations to the Board on all Medical Staff matters.

ii.    See that appropriate standards for the screening of all applications to the Medical Staff are established, maintained, and improved as necessary, and ensure compliance with those standards.

iii.    Review and recommend to the Board on all applications for appointment and reappointment to the Medical Staff, including privileges to be granted (except applications for temporary appointments and privileges which have been granted by the Chief Executive Officer).

iv.    Review and recommend to the Board on all recommendations from the Executive Committee of the Medical Staff.

v.    Receive and review specific reports needed to ascertain if Medical Staff functions are being properly discharged.

vi.    Hold Medical Staff officials accountable for carrying out the Medical Staff functions of reviewing, analyzing and evaluating clinical work, and for making appropriate recommendations in accordance with the findings therefrom.

vii.    Hold Medical Staff officials accountable for seeing that all members of the Medical Staff comply with Medical Staff bylaws, rules, and regulations and all hospital promulgated policies.

viii.    Determine the extent of compliance with the J.C.A.H.O. standards and recommendations on medical matters, and make recommendations accordingly.

ix.    Meet at regular intervals and maintain a record of its proceedings.

D.    Authority

This committee shall have the authority to:

Subp 00333

i.    Grant temporary appointments and privileges to Medical Staff applicants, when appropriate and necessary (such authority is also vested with the Chief Executive Officer);

ii.    Determine and request whatever studies, investigative reports, or statistics concerning Medical Staff activities and functions it deems essential to discharging its responsibilities;

iii.    Reject any reports from the Medical Staff or its officials not considered complete;

iv.    Require any member of the Medical Staff, after conference with the Chief Executive Officer and the Chief of Staff, to appear before it for any reason considered necessary; and

v.    Summarily suspend, after conference with the Chief Executive Officer, the Chief of Staff, and the respective Department Chief, any member of the Medical Staff for any sufficient reason, as specified in the Medical Staff bylaws.

The authority delegated to this committee shall be exercised in a manner consistent with any provisions for fair procedure, if applicable, afforded each member of the Medical Staff as outlined in the Medical Staff bylaws, and with any guidelines or policies established by Sutter Health's Systemwide Quality Review Committee.

E.    Accountability

This committee shall at all times be accountable to the Board of Directors and shall fulfill that accountability by:

i.    Submitting quarterly a brief written report, and recommendations where appropriate, to the Board regarding:

a.    Applications to the Medical Staff;

b.    Studies pertaining to medical care appraisal; and

c.    Any matters considered in need of Board deliberation;

ii.    Submitting status reports describing studies and reports in progress pertaining to the effectiveness of the Medical Staff in carrying out its required surveillance functions;

iii.    Reporting to the Executive Committee of the Board whenever so requested by the Chairperson of the Board;

Subp 00334

iv.   Submitting a report on any aspect of its activities whenever so requested by the Board; and

v.   Establishing a mechanism whereby the committee's effectiveness shall be evaluated.

## Section 8-5. - Nominating Committee

A.   Composition

The Nominating Committee shall consist of the immediate past Chairperson of the Board, (if currently serving), or if not currently serving, the current Chairperson, one of the members of the Board who was designated by Sutter Health pursuant to Section 4-7 of these bylaws (or his/her designee), the Chief Executive Officer, and two other members of the Board to be elected at each Annual Organizational Meeting of the Board.

B.   Responsibilities and Authority

This committee shall recommend to the Board nominees for membership on the Board of this Corporation (including but not limited to nominees to fill vacancies created by expiration of a term as well as by resignation, removal, or death); shall recommend nominees to serve as officers of this Corporation; and shall arrange for periodic review and evaluation of the Board member's performance. The committee shall meet as often as necessary, and in sufficient time to ensure that this Corporation's nominees are timely submitted to the General Member for its action.

C.   Accountability

The committee shall report to the Board as often as necessary, but at least annually.

## Section 8-6. - Ad Hoc Committees

A.   Composition

Ad hoc committees may be appointed by the Board for such special purposes as circumstances warrant (for example, to convene a Joint Conference Committee in order to resolve conflicts between Board, management and Medical Staff). Individuals not on the Board but having special knowledge or background may be appointed to serve on such committees.

B.   Responsibilities and Authority

Subp 00335

Activities of such a committee shall be limited to the accomplishment of those tasks for which it was appointed. The committee shall have no powers except those specifically conferred by the Board of Directors. As with all committees, management and staff shall provide the resources for ad hoc committees.

C.     Accountability

All ad hoc committees shall report directly to the Board of Directors. Upon completion of the stated purpose for which it was formed, the committee shall be discharged.

## IX. PROVISION OF MEDICAL, DENTAL AND PODIATRIC CARE

### Section 9-1. - Responsibility for Medical Care

A.     The Board of Directors is responsible for the quality of medical, dental, and podiatric care rendered in the hospital. It shall discharge that responsibility by assuring that the organized Medical Staff carries out the specific quality control functions in accordance with guidelines established by Sutter Health's Systemwide Quality Review Committee including, without limitation, the following:

   i.     Reviewing, analyzing, and evaluating clinical practice to determine the quality of medical care;

   ii.    Making recommendations to management and the Board for the establishment, maintenance, continuing improvement, and enforcement of professional standards;

   iii.   Reporting regularly as required by the Medical Policy Committee in Section 8-4 of these Bylaws, on the quality of medical care in terms of professional standards;

   iv.    Recommending the appointment and reappointment of physicians, dentists, and podiatrists to the Medical Staff and the delineation of their clinical privileges;

   v.     Supervising and ensuring:

      a.     Compliance with the bylaws, rules, and regulations for the Medical Staff; and

      b.     Carrying out the policies of the hospital concerning the functions outlined in those Medical Staff bylaws;

Subp 00336

      vi.    Disciplining the members of the Medical Staff for violations of policies of the hospital and the Medical Staff bylaws, rules, and regulations, within the limitations of the authority delegated by the Board of Directors;

      vii.   Assisting in identifying community health needs and setting appropriate institutional goals to meet those needs; and

      viii.  Conducting formally structured ongoing programs of continuing medical education designed to meet the highest professional standards of care.

B.    The Chief of Staff shall be responsible for the effective discharge of functions to be carried out by the Medical Staff.

C.    The Chief of Staff shall have the authority necessary to carry out his or her responsibilities and it shall be defined in the bylaws for the Medical Staff.

D.    The Chief of Staff shall be accountable to the Chief Executive Officer.

E.    The Board of Directors shall be responsible for:

      i.     Making all appointments and reappointments to the Medical Staff and alterations on staff status;

      ii.    Granting clinical privileges;

      iii.   Disciplinary actions; and

      iv.   All matters relating to Medical Staff professional competence.

F.    In discharging these responsibilities, the Board of Directors shall:

      i.     Assure that the safety and interest of the patients takes precedence over all other concerns; and

      ii.    Always request, but not be bound by, recommendations from the Medical Staff officials and the Executive Committee of the Medical Staff.

G.    The Board of Directors shall, through the Medical Staff organization and the functions assigned to it, maintain systems for:

      i.     The establishment of professional standards and criteria by which to evaluate medical care;

Subp 00337

      ii.    The continuing surveillance of professional practice and Medical
Staff functions in order to determine the degree to which those
professional standards and criteria are being met; and

      iii.   Gaining compliance with the predetermined standards and criteria
when the systems of surveillance indicate they are not being met.

H.    No delegation to the Medical Staff shall preclude the Board of Directors
from exercising the authority required to meet its responsibilities under
these Bylaws.

## Section 9-2. - Medical Staff Organization

A.    Purposes

The Board of Directors shall organize, or cause to be organized, a Medical
Staff, comprised of physicians, dentists, and podiatrists, for the following
purposes:

      i.     To serve as the primary means for accountability to the Board for
the appropriateness of the professional performance and ethical
conduct of its members and affiliates;

      ii.    To discharge specific quality control functions designed to ensure
the continual upgrading of the quality of medical, dental, and
podiatric care rendered by the Medical Staff while at the same time
assuring that the safety and interest of the patients shall take
precedence over all other concerns; and

      iii.   To provide a structure whereby the Medical Staff members can
become an integral part of the total hospital organization and
participate in the institution's planning, policy setting, and decision
making process.

B.    Functions

In fulfilling the purposes of the Medical Staff organization, the functions
as stated in Section 9-1A of these Bylaws shall be carried out.

C.    Officials

      i.     Medical Staff and Department Officers

           The Medical Staff bylaws shall provide for the selection of
Medical Staff and department officers.

      ii.    Medico-Administrative Officers

Subp 00338

A medico-administrative officer is a practitioner engaged by the hospital on a full or part-time basis for both administrative and clinical duties. Clinical responsibilities are defined as those involving professional capability as a practitioner, such as to require the exercise of clinical judgment with respect to patient care, and may include supervision of professional activities of other practitioners.

A practitioner engaged in a purely administrative capacity with no clinical duties or privileges is subject to the regular personnel policies of the hospital and to the specific terms of his or her contract or other conditions of engagement, and need not be a member of the Medical Staff. A medico-administrative officer, however, must be a member of the Medical Staff, with clinical privileges delineated in accordance with the Medical Staff bylaws. His or her Medical Staff membership and clinical privileges shall not depend upon continued occupation as a medico-administrative officer, unless otherwise provided by contract or other agreement.

iii.   Tenure

The Chief of Staff shall hold office for a one-year term, and may serve two consecutive terms in that office. Each medico-administrative officer shall serve for such term as provided by contract or other agreement.

## Section 9-3. - Medical Staff Bylaws

A.    Purpose of Bylaws

There shall be bylaws for the Medical Staff. The bylaws shall state the purpose and functions of the Medical Staff organization and they shall be in consonance with the purposes and functions of the Medical Staff organization stated herein. The bylaws for the Medical Staff shall provide an organizational framework necessary for the implementation of appropriate quality control programs as dictated by the prescribed functions of the Medical Staff organization. The bylaws shall define relationships, responsibilities, authority and methods of accountability for each Medical Staff official, department and committee.

The bylaws will specifically assure that only a member of the Medical Staff with admitting privileges shall admit patients to the hospital; that only an appropriately licensed practitioner with clinical privileges shall be directly responsible for a patient's diagnosis and treatment within the area of his or her privileges; that each patient's general medical condition shall be the responsibility of a physician member of the Medical Staff; that each

Subp 00339

patient admitted to the hospital shall receive a baseline history and physical examination by a physician who is either a member of or approved by the Medical Staff; and that other direct medical care of patients provided by allied health professionals, residents, and medical students shall be under the appropriate degree of supervision by a licensed practitioner with clinical privileges.

B.     Writing of Bylaws

The Medical Staff, through its officials and appropriate committees, shall be required to submit bylaws, rules and regulations for the Medical Staff organization in accordance with the requirements as set forth in this Article.

The Medical Staff shall periodically review and, as necessary, submit revisions to its bylaws, rules and regulations.

C.     Approval of Bylaws

All such bylaws, rules and regulations for the Medical Staff shall be approved by the Board whose approval shall not be unreasonably withheld before becoming effective.

Section 9-4. - Hearing and Appeals

The Board of Directors shall assure that each member of the Medical Staff shall be afforded fair procedure with respect to all appointment and reappointment procedures and the granting, revocation, rescinding, reduction, removal, or denial of Medical Staff privileges. The steps for affording such fair procedure to each member of the Medical Staff shall be carefully defined in the bylaws for the Medical Staff, and shall provide in detail for hearing and appeal procedures, and for notice to the aggrieved practitioner of his or her access to those procedures. The bylaws for the Medical Staff shall specifically address the role of the Medical Policy Committee of the Board of Directors in the hearing and appeals process.

Section 9-5. - Professional Liability Insurance

The Board of Directors shall ensure that each practitioner granted clinical privileges in the hospital shall maintain professional liability insurance in not less than the minimum amounts as from time to time may be determined by the Board, based upon the recommendation of the Medical Staff Executive Committee. Subject to the approval of the Board, the Chief Executive Officer may, for good cause shown by a practitioner, temporarily waive this requirement with regard to such practitioner; provided that any such waiver is not granted or withheld on an arbitrary, discriminatory, or capricious basis. For purposes of this section, "good cause" shall be related to a practitioner's inability to reasonably obtain the required coverage due to arbitrary action of an insurer, and shall include consideration of the practitioner's ability to demonstrate alternative means of

DEC/Novato Bylaws/12-01.doc                    22
NCH/Bylaws

satisfying financial responsibilities in the event of professional negligence. The minimum amount of required coverage established pursuant to this provision shall not exceed the amount of professional liability insurance carried by the hospital.

## X. RECORDS, REPORTS AND INSPECTION RIGHTS

### Section 10-1. - Maintenance of Articles and Bylaws

The Corporation shall keep at its principal office the original or a copy of the Articles of Incorporation and Bylaws as amended to date.

### Section 10-2. - Maintenance of Other Corporation Records

The accounting books, records and minutes of proceedings of the Board of Directors and any committee(s) of the Board of Directors shall be kept at such place or places designated by the Board of Directors, or, in the absence of such designation, at the principal executive office of the Corporation. The minutes shall be kept in written or typed form, and the accounting books and records shall be kept in either written or typed form, or in any other form capable of being converted into written, typed or printed form.

### Section 10-3. - Inspection by Directors or Member

Except as otherwise limited by law, every Director and the General Member shall have the absolute right at any reasonable time to inspect all books, records, and documents of every kind and the physical properties of the Corporation. This inspection by a Director or the General Member may be made in person or by an agent or attorney, and the right of inspection includes the right to copy and make extracts of documents.

## XI. EXECUTION OF DOCUMENTS

The following persons shall be authorized to execute any deeds, mortgages, bonds, contracts, or other instruments which the Board has authorized to be executed:

A.  Any officer or other person duly authorized by resolution of the Board to execute documents; or

B.  In the absence of express authorization by Board resolution, the chairperson or vice chairperson, and the secretary or any assistant secretary (all subject to such limitations as may be imposed by resolution of the Board).

DEC/Novato Bylaws/12-01.doc
NCH/Bylaws

Subp 00341

## XII. TRANSACTIONS REQUIRING APPROVAL OF THE GENERAL MEMBER

### Section 12-1. - Matters Requiring Approval.

Notwithstanding anything in these Bylaws to the contrary, neither the Board nor any officer or employee of this Corporation may take any of the following actions, or approve an affiliate taking any of the following actions, without the prior approval of the General Member:

A.    Merger, consolidation, reorganization, or dissolution of this Corporation or any subsidiary or affiliate entity.

B.    Amendment or restatement of the Articles of Incorporation or the Bylaws of this Corporation or any subsidiary or affiliate entity;

C.    Adoption of operating budgets of this Corporation or any subsidiary or affiliate entity, including consolidated or combined budgets of this Corporation and all subsidiary organizations of the Corporation;

D.    Adoption of capital budgets (although the Board is empowered to develop its own budget within the guidelines and objectives set by the General Member) of this Corporation or any subsidiary or affiliate entity;

E.    Aggregate operating or capital expenditures on an annual basis that exceed approved operating or capital budgets by a specified dollar amount to be determined from time to time by the General Member;

F.    Long-term or material agreements including, but not limited to, borrowings, equity financings, capitalized leases and installment contracts; and purchase, sale, lease, disposition, hypothecation, exchange, gift, pledge, or encumbrance of any asset, real or personal, with a fair market value in excess of a dollar amount to be determined from time to time by the Directors of the General Member, which shall not be less than 10% of the total annual capital budget of this Corporation;

G.    Appointment of an independent auditor and hiring of independent counsel except in conflict situations between the General Member and this Corporation or any subsidiary or affiliate entity;

H.    The creation or acquisition of any subsidiary or affiliate entity;

I.    Contracting with an unrelated third party for all or substantially all of the management of the assets or operations of this Corporation or any subsidiary or affiliate entity;

Subp 00342

J.     Approval of major new programs and clinical services of this Corporation or any subsidiary or affiliate entity.  The General Member shall from time to time define the term "major" in this context;

K.     Approval of strategic plans of this Corporation or any subsidiary or affiliate entity;

L.     Adoption of quality assurance policies not in conformity with policies established or adopted by the General Member;

M.     Any transaction between this Corporation, a subsidiary or affiliate and a director of this Corporation or an affiliate of such director;

<u>Section 12-2. - Other Major Activities</u>

A.     In addition, the General Member shall have the authority, except as otherwise provided by the General Member and after consultation with this Corporation, to require the prior review and approval of those activities of this Corporation or any subsidiary or affiliate entity which the General Member determines to be major activities.

B.     "Major activities" shall be those which the General Member by a vote of not less than two-thirds (2/3) of its Board of Directors has declared major, by written notice to this Corporation, delivered personally or transmitted by registered or certified mail, return receipt requested.  Such notice shall specifically identify the matter or matters requiring approval of the General Member, and shall refer to this bylaw provision granting such approval rights to the General Member. Notices received pursuant to this section shall be recorded in the minutes of this Corporation and shall be filed with the minutes of this Corporation.

<u>Section 12-3. - Approvals</u>

The General Member's approval or disapproval of matters described in Section 12-1 or 12-2 above, shall be recorded in or filed with the minutes of this Corporation.

<u>Section 12-4. - Other Actions Requiring Approval of the General Member</u>

A.     <u>Vacancy.</u>  Any vacancy occurring on the Board of this Corporation shall be filled by an appointee of the General Member from nominees selected in accordance with the nomination provisions of these Bylaws.

B.     <u>Removal.</u>  Any non-*ex officio* Director or Director of this Corporation's Board may be removed from office by the General Member; provided, however, the General Member shall notify this Corporation's Board, and give it an opportunity to respond in the manner and subject to the terms and conditions described herein, prior to any such proposed removal.

Subp 00343

## Section 12-5. - Exercise of Authority

Notwithstanding any provision in these Bylaws to the contrary, and except as otherwise provided in subsection (B) of Section 12-2 of these Bylaws (regarding definition of "major activities"), this Corporation shall not prescribe the manner by which the General Member exercises its authority under these Bylaws, and no present or future provision of these Bylaws shall have such effect. Without limiting the generality of the foregoing, no present or future provision of these Bylaws or other action of this Corporation shall prescribe the required vote of the Board of Directors of the General Member for the exercise of its authority herein, nor shall the approval of the General Member to be inferred from its failure affirmatively to disapprove of a proposed action of this Corporation within a specified time period.

## XIII. AUXILIARIES AND RELATED GROUPS

### Section 13-1. - Establishment

Subject to the provisions of Section 12-1 of these Bylaws, the Board of Directors may establish or support the establishment of auxiliaries and/or related organizations wishing to support the objectives of the hospital or work in complementary ways with the hospital. Bylaws, other rules and regulations of the auxiliary and any amendments thereto, and all major projects must be approved by the Board of Directors.

### Section 13-2. - Board Approval

The Board of Directors reserves the right to channel any such funds as may be donated by such bodies to uses or objectives consistent with the purposes stated in Article II, and for liaison purposes only, a member of the Board of Directors shall be appointed to attend executive committee meetings of the auxiliary, and from time to time, but not less than annually, the Board of Directors shall receive a report, for information only, from the auxiliary as to the operations of that organization.

## XIV. BONDING AND INDEMNIFICATION

### Section 14-1. - Bonding

All officers and employees handling funds shall be properly bonded.

### Section 14-2. - Indemnification

The Corporation shall have the right to indemnify any person who was or is a party or is threatened to be made a party to any civil, criminal, administrative, or investigative proceeding by reason of the fact that such person is or was a Director, officer, employee, or otherwise an agent of the Corporation, against expenses, judgments, fines, settlements and other amounts actually and reasonable incurred in connection with such proceeding, provided that all of the requirements of California Corporations Code section 5238 for such indemnification are met.

Subp 00344

## XV. AMENDMENTS

Section 15-1. - Amendments

These Bylaws may be amended or new Bylaws may be adopted by action of the Board at any regular meeting of the Board or at any special meeting called for that purpose. Amendments shall not be effective unless and until approved by the General Member. Alternatively, amendments may be adopted by the General Member, other than amendments which reduce the powers of the Board, at any regular or special meeting of the Board of Directors of the General Member called for that purpose. However, prior to amending unilaterally these Bylaws, the General Member shall notify the Board of the proposed changes, explain the reasons for them, and allow the Board to comment. Following that process the General Member may request that the Board adopt such amendments at its next regularly scheduled meeting.

Subp 00345

EXHIBIT 1

EQUITY CASH TRANSFER POLICY

DEC/Novato Bylaws/12-01.doc
NCH/Bylaws

| Sutter Health and Affiliates<br>Finance Policies and Procedures | |
|---|---|
| **EQUITY CASH TRANSFER** | |
| Policy Number 207 | Origination Date: 1/96<br>Last Revised Date: 7/98<br>Next Review Date: 9/99 |
| Approved by: Bob Reed, Chief Financial Officer | |

## POLICY

Sutter Health shall ensure that operating funds are available to affiliated entities sufficient to fund their approved operating and capital budgets. Transfers from Sutter Health to affiliates may be made where such transfers are determined to be in the best interests of the Sutter Health system, the affiliate has adopted this policy, or otherwise incorporated this policy into its bylaws, and the transfer is not otherwise prohibited by pre-existing contractual obligations. Alternatively, excess operating cash may be transferred from the affiliate to Sutter Health.

Sutter Health shall ensure that each affiliate's Funded Depreciation (including seismic funds) shall be used to fund that affiliate's routine and non-routine capital acquisitions, and will ensure that trusteed funds will be used for their authorized purposes.

Donor-originated funds are specifically excluded from this policy.

## PURPOSE

The purpose of this policy is to enable Sutter Health to optimize the strategic value of available capital resources for the benefit of the system and of individual affiliated entities. Each non-profit Sutter Health affiliated entity shall adopt this policy, thus providing the system with maximum flexibility to redeploy cash resources to meet approved system strategic objectives.

## AUTHORIZATION

The Sutter Health Chief Financial Officer may authorize transactions and establish routine practices in accordance with this policy. Sutter Health will provide periodic reports to each affiliated entity reflecting transactions executed in accordance with this policy.

## PROCEDURES

**Definitions**

Excess Operating Cash

Operating cash generated by each affiliated entity, over and above its target. (See Figure 1 for example of calculation).

Subp 00347

<u>Target</u>

Each affiliated entity's operating cash target shall consist of: Fourteen days of budgeted operating expenses, excluding depreciation expense.

<u>Donor-originated Funds</u>

Cash received by or due to, an affiliated entity or associated charitable foundation, which has not been spent.

**Accounting Treatment**

For transfers to Sutter Health, the following entry would be recorded:

|  | Dr. | Cr. |
|---|---|---|
| Equity Transfer – SH | XXX | |
| Cash – Operating Pool | | XXX |

For transfers received from Sutter Health, the following entry would be recorded:

|  | Dr. | Cr. |
|---|---|---|
| Cash – Operating Pool | XXX | |
| Equity Transfer – SH | | XXX |

Subp 00348

## SUTTER HEALTH

### Equity Cash Transfer Calculation (000)

| | | Sample Affiliate |
|---|---|---|
| **Month:    May 31, 1998** | | *(Affiliate Name)* |
| | | |
| | | |
| April 30, 1998  End Operating Pool Balance | + | $      9,000 |
| B of A Balance (& other balances, if any) | + | 500 |
| Outstanding Checks | - | (800) |
| Special Provisions (if any) | - | 0 |
| Adjusted Operating Pool Balance | = | $      8,700 |
| Target Balance (see note 1) | - | (3,260) |
| *Equity Cash Transfer Available* | = | *$      5,440* |
| | | |
| *(Transaction value dated 5/1/98)* | | |
| | | |
| | | |
| | | |
| **Note 1:** | | |
| **Target Calculation:** | | |
| | | |
| Annual Operating Expense Budget | + | $    100,000 |
| Depreciation/Amortization | - | (15,000) |
| Adjusted Annual Operating Expense Budget | = | $     85,000 |
| 14 day Target Factor | X | 14/365 |
| Target Balance | = | $      3,260 |

Subp 00349

## SECRETARY'S CERTIFICATE

I certify that I am the acting Secretary of Novato Community Hospital, a California nonprofit public benefit corporation, and that the attached Amended and Restated Bylaws of Novato Community Hospital are the current bylaws of this Corporation containing all the amendments as adopted by the Board of Directors of Novato Community Hospital on October 2, 2001 and December 4, 2001; by Sutter Health on December 17, 2001; and by Marin Community Health, the General Member, on December 18, 2001; respectively.

_Michael W. Little_
Secretary

DEC/Novato Bylaws/12-01.doc
NCH/Bylaws

Subp 00350

Exhibit K

# AMENDED AND

# RESTATED BYLAWS

# OF

# SUTTER HEALTH
# SACRAMENTO SIERRA REGION

A nonprofit, public benefit
corporation organized under
the laws of the
State of California

*Includes Revisions through August 11, 2004*

Subp 00428

# TABLE OF CONTENTS

Page

I. NAME AND PRINCIPAL OFFICE ...................................................................1

II. PURPOSES ...................................................................................................1

III. MEMBERSHIP ...............................................................................................2
    Section 3-1. - General Member ....................................................................2
    Section 3-2. - Transfer of Membership .......................................................2
    Section 3-3. - Exercise of Membership Rights ............................................2
    Section 3-4. - Liabilities and Assessments..................................................2

IV. SYSTEM AFFILIATION ...................................................................................2
    Section 4-1. - Facilities Operated by Corporation ......................................2
    Section 4-2. - Affiliated Status.....................................................................3
    Section 4-3. - Participation in Activities of the General Member ................3
    Section 4-4. - Cash Concentration .............................................................3
    Section 4-5. - Equity Cash Transfer Policy.................................................3
    Section 4-6. - Payment of Allocation Fee ...................................................4
    Section 4-7. - Cost of Capital Allocation Policy..........................................4
    Section 4-8. - Effect of Policies ..................................................................4
    Section 4-9. - Policies Required of Affiliated Entities .................................4
    Section 4-10. - Compliance Program..........................................................4

V. TRUSTEES....................................................................................................5
    Section 5-1. - Membership...........................................................................5
    Section 5-2. - Powers and Responsibilities.................................................6
    Section 5-3. - Compensation.......................................................................8
    Section 5-4. - Conflict of Interest ................................................................8
    Section 5-5. - Nominations ..........................................................................8

VI. MEETINGS OF THE BOARD .........................................................................9
    Section 6-1. - Regular Meetings ..................................................................9
    Section 6-2. - Special Meetings ...................................................................9
    Section 6-3. - Annual Organizational Meeting .............................................9
    Section 6-4. - Place of Meetings .................................................................9
    Section 6-5. - Notice ....................................................................................9
    Section 6-6. - Quorum..................................................................................9
    Section 6-7. - Manner of Acting .................................................................10
    Section 6-8. - Presiding Officer .................................................................10
    Section 6-9. - Action in Lieu of Meeting ....................................................10
    Section 6-10. - Telephonic Meetings .........................................................10

VII. OFFICERS/ADMINISTRATORS ...................................................................10
    Section 7-1. - General ...............................................................................10
    Section 7-2. - Qualification, Election and Term of Office...........................10

Subp 00429

Section 7-3. - Chair .................................................................................................. 11
Section 7-4. - Vice Chair ......................................................................................... 11
Section 7-5. - Chief Executive Officer .................................................................... 11
    A.    Appointment, Compensation and Removal .......................................... 11
    B.    Responsibilities and Authority ............................................................. 11
Section 7-6. - Chief Financial Officer ..................................................................... 12
Section 7-7. - Secretary ........................................................................................... 12
Section 7-8. - Administrators ................................................................................... 12

VIII.  COMMITTEES AND ADVISORY BOARDS ....................................................... 13
Section 8-1. - General .............................................................................................. 13
Section 8-2. - Executive Committee ........................................................................ 13
    A.    Composition .......................................................................................... 13
    B.    Responsibilities and Authority ............................................................. 13
    C.    Accountability ...................................................................................... 14
Section 8-3. - Planning and Finance Committee ...................................................... 14
    A.    Composition .......................................................................................... 14
    B.    Responsibilities and Authority ............................................................. 14
    C.    Accountability ...................................................................................... 15
Section 8-4. - Medical Policy Committee ................................................................ 16
    A.    Composition .......................................................................................... 16
    B.    Responsibilities and Authority ............................................................. 16
    C.    Accountability ...................................................................................... 16
Section 8-5 - Medical Affairs Committees .............................................................. 17
    A.    Purposes ................................................................................................ 17
    B.    Composition .......................................................................................... 17
    C.    Responsibilities .................................................................................... 18
    D.    Authority ............................................................................................... 19
    E.    Accountability ...................................................................................... 19
Section 8-6. - Physician Strategy Committee .......................................................... 20
    A.    Composition .......................................................................................... 20
    B.    Responsibilities and Authority ............................................................. 20
    C.    Accountability ...................................................................................... 21
Section 8-7. - Governance/Nominating Committee .................................................. 21
    A.    Composition .......................................................................................... 21
    B.    Responsibilities and Authority ............................................................. 21
    C.    Accountability ...................................................................................... 22
Section 8-8. - Community Advisory Boards ............................................................. 22
    A.    Purpose ................................................................................................. 22
    B.    Composition .......................................................................................... 23
    C.    Responsibilities and Authority ............................................................. 23
Section 8-9. - Adult Day Health Center ("ADHC") Advisory Board ...................... 24
    A.    Purposes ................................................................................................ 24
    B.    Composition .......................................................................................... 24
    C.    Responsibilities and Authorities .......................................................... 24

Subp 00430

      D.    Accountability ................................................................................24
   Section 8-10. - Ad Hoc Committees ..........................................................25
      A.    Composition ................................................................................25
      B.    Responsibilities and Authority ...................................................25
      C.    Accountability ............................................................................25

IX.  PROVISION OF MEDICAL, DENTAL AND PODIATRIC CARE .....................25
   Section 9-1. - Responsibility for Medical Care ...........................................25
   Section 9-2. - Medical Staff Organization ..................................................27
      A.    Purposes ...................................................................................27
      B.    Functions ..................................................................................27
      C.    Officials ....................................................................................27
   Section 9-3. - Bylaws for the Medical Staff .................................................28
      A.    Purpose of Bylaws ...................................................................28
      B.    Writing of Bylaws ....................................................................28
      C.    Approval of Bylaws ..................................................................28
   Section 9-4. - Hearing and Appeals ...........................................................29

X.  RECORDS, REPORTS, AND INSPECTION RIGHTS ...............................29
   Section 10-1. - Maintenance of Articles and Bylaws ..................................29
   Section 10-2. - Maintenance of Other Corporation Records ......................29
   Section 10-3. - Inspection ..........................................................................29
   Section 10-4. - Annual Report ...................................................................29

XI.  EXECUTION OF DOCUMENTS ............................................................30

XII.  TRANSACTIONS AND ACTIVITIES REQUIRING APPROVAL OF THE
     GENERAL MEMBER ...........................................................................30
   Section 12-1. - Matters Requiring Approval ...............................................30
   Section 12-2. - Other Major Activities .......................................................31
   Section 12-3. - Approvals ...........................................................................32
   Section 12-4. - Other Actions Requiring Approval of the General Member ....32
   Section 12-5. - Exercise of Authority .........................................................32

XIII.  AUXILIARIES AND FUNDRAISING FOUNDATIONS .............................32
   Section 13-1. - Establishment ....................................................................32
   Section 13-2. - Board Approval ..................................................................33

XIV.  INDEMNIFICATION ............................................................................33

XV.  AMENDMENTS ...................................................................................33

Exhibit 1 - Equity Cash Transfer Policy

Subp 00431

BYLAWS OF
SUTTER HEALTH SACRAMENTO SIERRA REGION

## I. NAME AND PRINCIPAL OFFICE

The name of the corporation shall be as listed in the Articles of Incorporation, namely, Sutter Health Sacramento Sierra Region, a nonprofit public benefit corporation organized under the laws of the State of California.

The principal office and place of business of the corporation shall be located in or near the City of Sacramento, Sacramento County, California.

## II. PURPOSES

The purposes of this Corporation are:

A.    To establish and maintain an institution or institutions with permanent facilities that include inpatient beds and medical services to provide diagnosis and treatment for patients and associated services, (such as, but not limited to, outpatient care) in a manner which assures high quality and at the same time assures that the safety and interests of patients take precedence over all other concerns.

B.    To carry out any educational activities related to rendering care to the sick and injured, or to the promotion of health, that in the opinion of the Board of Trustees may be justified by the facilities, personnel, funds or other requirements that are or can be made available.

C.    To participate, so far as circumstances may warrant, in any activity directed toward the promotion and maintenance of health and the prevention of illness, and to continually seek innovative means to improve the delivery of health care to the community served.

D.    To promote and carry out scientific research related to the care of the sick and injured insofar as, in the opinion of the Board of Trustees, such research can be carried on with available resources in, or in connection with, the hospital or other healthcare activities.

E.    To contribute to the growth, development and financial strength of Sutter Health.

Subp 00432

## III.  MEMBERSHIP

### Section 3-1. - General Member.

There shall be one general member of this Corporation who shall be Sutter Health, a California nonprofit public benefit corporation (the "General Member").  The General Member, and only the General Member, shall be entitled to exercise fully all rights and privileges of members of nonprofit corporations under the California Nonprofit Public Benefit Corporation Law, and all other applicable laws.  The rights and powers of the General Member shall also include, without limitation, the following:  the limitation on liabilities described in Section 3-4 of these Bylaws; the rights and powers to appoint (and remove) the appointed members of the Board of this Corporation, subject to Section 12-4 of these Bylaws; and the exercise of all of the rights and powers set forth in Article XII of these Bylaws.  The General Member may not be expelled or suspended as the General Member without its consent.

### Section 3-2. - Transfer of Membership.

The General Member may not transfer its membership or any rights arising therefrom.

### Section 3-3. - Exercise of Membership Rights.

The General Member of this Corporation shall exercise its membership rights through its own Board of Directors.  Subject to the provisions of the General Member's own bylaws, and except as otherwise provided in these Bylaws where a super-majority vote of the Board of Directors of the General Member is required, the Board of Directors of the General Member may, by resolution, authorize a person or committee of persons to exercise its vote on any matter to come before the membership of this Corporation.  In addition, the General Member may exercise its membership rights at any regular or special meeting of the Board of Directors of the General Member.  The functions required by law or these Bylaws to be performed at the annual membership meeting or any regular or special meeting of the members of this Corporation may be performed at any regular or special meeting of the General Member's own Board of Directors.

### Section 3-4. - Liabilities and Assessments.

The General Member, as such, shall not be liable for the debts of this Corporation.  The Board of this Corporation shall have no power to levy and collect assessments on the General Member.  The provisions of this paragraph cannot be amended in any manner.

## IV.  SYSTEM AFFILIATION

### Section 4-1. - Facilities Operated by Corporation.

This Corporation, through these Bylaws, shall operate the following health facilities: Sutter General Hospital (currently located at 28th & L Streets, Sacramento), Sutter Memorial Hospital (currently located at 52nd & F Streets, Sacramento), Sutter Center for Psychiatry

Subp 00433

(currently located at 7700 Folsom Boulevard, Sacramento), Sutter Auburn Faith Hospital (currently located at 11815 Education Street, Auburn), Sutter Davis Hospital (currently located at 2000 Sutter Place, Davis), Sutter Roseville Medical Center (currently located at One Medical Plaza, Roseville), Sutter Oaks Nursing Center – Midtown (currently located at 2600 L Street, Sacramento), and Sutter SeniorCare (currently located at both 1234 U Street and 7000 Franklin Boulevard, Sacramento).

Unless otherwise specifically stated, references throughout these Bylaws to a "hospital" or "hospitals" shall mean Sutter General and Sutter Memorial Hospital, Sutter Center for Psychiatry, Sutter Auburn Faith Hospital, Sutter Davis Hospital, Sutter Roseville Medical Center and any other facility licensed as an acute care hospital and operated by the Corporation. References to the "Medical Staffs" shall mean the medical staffs at Sutter General Hospital and Sutter Memorial Hospital, and Sutter Center for Psychiatry (known collectively as the Sutter Medical Center, Sacramento Medical Staff), Sutter Auburn Faith Hospital, Sutter Davis Hospital, Sutter Roseville Medical Center and any other facility licensed as an acute care hospital and operated by the Corporation. In addition to operating the hospitals and facilities listed above, the Corporation may own, in whole or in part, or operate other healthcare facilities and services from time to time, as the Board of Trustees deems appropriate. Unless otherwise specifically stated, references throughout these Bylaws to "facilities" shall mean the hospitals and such other facilities then owned and operated by the Corporation.

Section 4-2. - Affiliated Status.

This Corporation is one of several affiliated corporations that comprise an integrated healthcare system ("System").

Section 4-3. - Participation in Activities of the General Member.

The Board of this Corporation shall submit nominees to the General Member in order to enable the General Member to appoint members of this Corporation's Board or officers of this Corporation to serve on the General Member's corporate Board of Trustees and/or its Board committees as appropriate to ensure the General Member's continued qualification as a supporting organization under Section 509 of the Internal Revenue Code of 1986, as amended from time to time, or successor provisions.

Section 4-4. - Cash Concentration.

Subject to the provisions of Section 4-8 of these Bylaws, the Corporation shall participate in the Cash Concentration and Controlled Disbursement Program prescribed by the General Member and in effect from time to time.

Section 4-5. - Equity Cash Transfer Policy.

Subject to the provisions of Section 4-8 of these Bylaws, the terms of the Equity Cash Transfer Policy contained in Exhibit 1 to the Bylaws of this Corporation are incorporated into and made part of these Bylaws. Neither donor originated funds nor the earnings therefrom shall be subject to the Equity Cash Transfer Policy.

Subp 00434

Section 4-6. - Payment of Allocation Fee.

Subject to the provisions of Section 4-8 of these Bylaws, this Corporation shall pay the allocation fees necessary to maintain the operation of the General Member.

Section 4-7. - Cost of Capital Allocation Policy.

Subject to the provisions of Section 4-8 of these Bylaws, the Corporation shall participate in the Cost of Capital Allocation Policy prescribed by the General Member and in effect from time to time.

Section 4-8. - Effect of Policies.

This Corporation's obligations under Sections 4-4 through 4-7 and the policies described therein shall be subject to all agreements with and obligations to third parties (including without limitation bond indentures) to which this Corporation is a party or is bound at the time this provision is adopted or which are otherwise approved by the General Member after the adoption of this provision.

Section 4-9. - Policies Required of Affiliated Entities.

Except for tax-exempt entities which are primarily fundraising foundations, this Corporation shall prescribe the policies described in Sections 4-4 through 4-7 to the tax-exempt entities which this Corporation owns or controls or which this Corporation is a member. As to those entities, the policies shall be subject to all agreements with and obligations to third parties, Healthcare Districts and any other member of the affiliated entity (including without limitation bond indentures) to which the entity is a party or is bound at the time this provision is adopted or which are otherwise approved by the General Member after the adoption of this provision.

Section 4-10.  Compliance Program.

Corporation shall adopt a Compliance Program consistent with the Sutter Health Compliance Program Plan which shall include the following:

A.    All Board Members shall receive Compliance training consistent with the Sutter Health Compliance Program Plan.

B.    The Board shall have oversight of and ultimate responsibility for an effective Compliance Program including adoption of related compliance policies.

C.    The Board or a Committee of the Board shall receive and review routine and special Compliance reports on a regular basis.

D.    The Board shall delegate to Corporation's Chief Executive Officer responsibility to implement Compliance Program in accordance with Sutter Health Compliance Program Plan.

DEC_SHSSR_Bylaws_8-04.doc          -4-

Subp 00435

## V. TRUSTEES

<u>Section 5-1. - Membership.</u>

A.   The Board of Trustees (hereinafter sometimes referred to as "Board") shall consist of between 13 and 17 voting members. Individual Board Members may satisfy more than one of the composition categories, below. The composition of the Board of Trustees shall be as follows:

    i.   Three physicians, one of whom serves as the Chief of the Medical Staff at one of the hospitals at the time of appointment (each a "Physician Trustee"). The Physician Trustee who is a Chief of Staff may serve only as long as he/she is a Chief of Staff and will be replaced upon the end of the term as Chief of Staff. (The Chiefs of the Medical Staffs of the remaining hospitals may attend Board meetings as participating guests who may submit issues for consideration.)

    ii.   Four community representatives, each of which has a residence in one of the following hospitals' service areas: (a) Sutter Davis Hospital, (b) Sutter Auburn Faith Hospital, (c) Sutter Roseville Medical Center, and (d) Sutter General and Sutter Memorial Hospitals ("Community Representatives").

    iii.   Seven individuals who shall have the breadth of experience, appropriateness of skills, and the willingness and ability to participate effectively in fulfilling the Board's responsibilities. Membership on the Board should reflect a diversity of community interest and the communities served, which is in keeping with the broad purposes of the Corporation.

    iv.   Two representatives of Sutter Health.

    v.   The Chief Executive Officer of the Corporation.

B.   Not more than 49 percent of the persons serving as voting members of the Board of Trustees at any time may be interested persons. An interested person is (1) any person being compensated by the Corporation for services rendered to it within the previous 12 months, whether as a full-time or part-time employee, independent contractor, or otherwise, excluding any reasonable compensation paid to a Trustee as Trustee; and (2) any brother, sister, ancestor, descendant, spouse, brother-in-law, mother-in-law, or father-in-law of any such person. However, any violation of the provisions of this paragraph shall not affect the validity or enforceability of any transaction entered into by the Corporation.

C.   The Chief Executive Officer of the Corporation shall serve as an *ex officio* voting member. All other members shall be elected or appointed as hereafter set forth.

Subp 00436

The President and Chief Executive Officer of the General Member may attend any Board meeting.

D.     Elected or appointed members of the Board of Trustees shall be chosen for their ability to contribute to and support the objectives of the Corporation. Membership on the Board should reflect a breadth of diversity of community interests that is in keeping with the broad role of the Corporation and its facilities in the community.

E.     At the annual membership meeting, in addition to whatever other business may be conducted, the General Member shall elect replacements for members of the Board of Trustees of this Corporation whose terms will expire prior to the next annual meeting of the membership. Trustees shall be elected by vote of the General Member from a slate of nominees selected as described at Section 5-5 of these Bylaws.

F.     When a Trustee is elected for the first time to the Board of Trustees, (including appointments to fill a vacancy), that Trustee shall hold office for an initial one-year term. Prior to submitting the slate of Trustee candidates for the succeeding year, the Governance/Nominating Committee shall confer with the Trustee nearing the end of such initial term and evaluate the Board's and the Trustee's desire to continue the appointment for the remaining two years of the three-year term. Except as otherwise provided herein, a Trustee shall hold office for a term of three years or until his/her successor has been elected or appointed. Trustees other than *ex officio* Trustees may not serve more than three consecutive three-year terms on the board. Notwithstanding the above limitation on time of service, each Trustee may hold office until his/her successor is appointed.

G.     Trustees' terms of office shall be staggered so that approximately one-third of the Trustees' terms expire each year.

H.     The Board of Trustees shall have authority to appoint honorary Trustees who shall serve without vote, which appointments shall be limited to those individuals who have rendered outstanding service to the Corporation. Honorary Trustees may attend Board meetings by invitation, but shall not be eligible for compensation.

I.     Vacancies may be created by resignation, removal, death or disability of a Trustee. Removal may be effected by the General Member pursuant to Section 12-4. Vacancies shall be filled in accordance with Section 12-4 by the nomination and election procedure described in Section 5-5.

Section 5-2. - Powers and Responsibilities.

A.     Except as otherwise provided in these Bylaws, the Board of Trustees, acting as a Board, shall have the full authority for the operation, functions, business and governance of the Corporation in accordance with the articles of incorporation and shall have the power and authority to do and perform, or cause to have performed,

Subp 00437

all acts within the limits of the law and not inconsistent with the articles of incorporation, these Bylaws, and any Systemwide policies adopted by the General Member. The authority of the Board shall be exercised only through Board action or any official delegation expressly prescribed by the Board. The right to rescind any delegation at any time is retained by the Board.

B.   Trustees shall promulgate policies, including but not limited to the following policies, whereby:

    i.   criteria for the selection of Trustees are prepared and adopted;

    ii.   formal programs for the orientation and continuing education of Trustees are prepared and implemented;

    iii.   conflict of interest policies are prepared as required by Section 5-4.

All such policies shall be consistent with any Systemwide policies adopted by the General Member.

C.   Other specific responsibilities of the Trustees shall be to:

    i.   conduct the business of the Corporation;

    ii.   annually develop operating and capital budgets in accordance with guidelines established by the General Member;

    iii.   develop a strategic plan, including prioritizing facility initiatives, in accordance with guidelines established by the General Member;

    iv.   approve capital expenditures outside of approved capital budgets, to a limit specified by the General Member;

    v.   develop and recommend corporate objectives;

    vi.   develop and implement a regional community benefit plan;

    vii.   develop major operational and program plans for the facilities;

    viii.   select and appoint qualified medical staffs and maintain a liaison therewith;

    ix.   carry out quality assessment of healthcare activities including all aspects of patient care evaluation in accordance with guidelines established by the General Member's Systemwide Quality Review Committee;

Subp 00438

x.    approve (as the Board in its discretion determines necessary) medical staff decisions delegated to the Medical Policy Committee and the Medical Affairs Committees;

xi.   along with the President and Chief Executive Officer of the General Member, monitor the performance of the Chief Executive Officer of this Corporation;

xii.  oversee philanthropic efforts of auxiliaries, fundraising foundations and related organizations; and

xiii. arrange for periodic review of the Board's own performance.

Section 5-3. - Compensation.

The Board may provide for reasonable compensation of Trustees. In addition, Trustees shall be reimbursed for all reasonable out-of-pocket expenses incurred in attending meetings and carrying out duties and functions directly related to Corporation business. Trustee compensation and expense reimbursement shall be made in accordance with the policies of the General Member or otherwise approved by the General Member.

Section 5-4. - Conflict of Interest.

The Board shall promulgate written policies regarding conflict of interest related to its own members, salaried persons, and members of Medical Staffs. Such policies shall not be inconsistent with the standards of conduct set forth in Sections 5230 through 5239 of the California Corporations Code, or successor provisions. Such policies shall ensure full disclosure of financial interests and transactions where conflict of interest is a possibility, and shall ensure the avoidance of potential conflict of interest in choosing new Trustees. Such policies shall impose upon each Trustee the responsibility to be alert to possible conflict of interest of himself/herself or of other Trustees, and shall require that each Trustee declare his/her absence of conflict of interest on a declaration form provided for that purpose and disqualify himself/herself from making a decision where he/she has a conflict of interest.

Section 5-5. - Nominations.

Nominations of Trustees, including but not limited to nominations for full terms, and nominations to fill vacancies created by resignation, removal, or death occurring during a term shall be approved by the General Member. The slate of nominees shall include, but need not be limited to, the nominees proposed by this Corporation. This Corporation's nominees shall be selected by the Board, upon recommendation of this Corporation's Governance/Nominating Committee, as described at Section 8-7 of these Bylaws.

Subp 00439

## VI. MEETINGS OF THE BOARD

Section 6-1. - Regular Meetings.

Regular meetings of the Board of Trustees shall be held at least quarterly at times and dates which the Board shall determine.

Section 6-2. - Special Meetings.

Special Meetings of the Board of Trustees may be called at any time on the order of the Chair, on the order of five Trustees, or by the General Member.

Section 6-3. - Annual Organizational Meeting.

Annually, in December of each year, the Board shall hold an Annual Organizational Meeting for the purpose of selecting the officers of the Corporation, two members of the Governance/Nominating Committee, and the members and chairs of committees. Nominees shall be selected by this Corporation's Governance/Nominating Committee, as described at Section 8-7 of these Bylaws.

Section 6-4. - Place of Meetings.

All regular meetings of the Board of Trustees, except as herein provided otherwise, shall be held at the place of business of the Corporation or such other place as the Chair or the Trustees requesting such a meeting may designate.

Section 6-5. - Notice.

Special meetings of the Board of Trustees shall be held upon four days' notice to each Trustee by first-class mail or 48 hours' notice to each Trustee delivered personally or by telephone or facsimile transmission. The attendance of a Trustee at any meeting shall constitute a waiver of notice of the meeting, except where a Trustee attends a meeting only for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened.

Section 6-6. - Quorum.

A majority of the whole number of Trustees presently serving and empowered to vote shall constitute a quorum for the transaction of business. However, a majority of those present at the time and place of any meeting, although less than a quorum, may adjourn to the same from time to time or from day to day, without further notice, until a quorum shall attend, and when a quorum shall attend, any business shall be transacted which might have been transacted at the meeting had the same been held on the day on which the same was originally appointed or called.

Subp 00440

Section 6-7. - Manner of Acting.

The act of a majority of Trustees empowered to vote and present at a meeting at which a quorum is present shall be the act of the Board of Trustees, unless the act of a greater number is required by law or by these Bylaws.

Section 6-8. - Presiding Officer.

The Chair, or in his/her absence, the Vice Chair, or in the absence of both, a chair selected by the Trustees present, shall call the meeting to order and shall preside.

Section 6-9. - Action in Lieu of Meeting.

Any action required or permitted to be taken by the Board of Trustees may be taken without a meeting, if all Trustees shall individually or collectively consent in writing to such action. Such written consent or consents shall be filed with the minutes of proceedings of the Board. Such action by written consent shall have the same force and effect as the unanimous vote of the Trustees.

Section 6-10. - Telephonic Meetings.

Trustees may participate in a meeting through use of a conference telephone or similar communications equipment, so long as all Trustees participating in such meeting can hear one another. Participation in a meeting pursuant to this paragraph constitutes presence in person at such meeting.


## VII. OFFICERS/ADMINISTRATORS

Section 7-1. - General.

The officers of the Corporation shall be a Chair, a Vice Chair, a Chief Executive Officer, a Chief Financial Officer, a Secretary, and such other officers as the Board of Trustees may authorize. Offices may be held by the same person except that neither the Chief Financial Officer nor the Secretary may serve concurrently as Chair or as Chief Executive Officer.

Section 7-2. - Qualification, Election and Term of Office.

A.    The Chair, Vice Chair, and Secretary shall be elected by the Board from among its own membership at the Annual Organizational Meeting of the Board. These officers shall serve for one-year terms or until successors have been elected, but must be elected each year. The Chair may serve no more than three consecutive one-year terms. Officers serve at the pleasure of the Board and any officer may be removed as an officer without cause by a majority vote of the Trustees. Such removal shall not affect the officer's status as a Trustee.

Subp 00441

B.   The Chief Executive Officer shall be chosen by the Board of Trustees, in accordance with Section 7-5A of these Bylaws.

C.   The Chief Financial Officer shall be selected by the Chief Executive Officer.

Section 7-3. - Chair.

The Chair shall preside at all meetings of the Board of Trustees and shall be an *ex officio* member of all standing committees, with vote. He/she shall perform such duties as shall be assigned to him/her from time to time by the Board of Trustees. He/she may delegate any of his/her powers to the Vice Chair of the Corporation.

Section 7-4. - Vice Chair.

The Vice Chair, in the absence or inability of the Chair to act, shall have the same powers and duties as the Chair and shall have in addition any powers and duties that the Chair from time to time delegates to him/her. He/she shall have such other powers and perform such other duties as may be assigned to him/her by the Board of Trustees. The person chosen for Vice Chair should be chosen for his/her potential to serve as Chair, although no such progression is implied. ·

Section 7-5. - Chief Executive Officer.

A.   Appointment, Compensation and Removal.

The President and Chief Executive Officer of the General Member shall screen candidates when the Chief Executive Officer of this Corporation is to be hired and shall present finalists to the Board of this Corporation. The Chief Executive Officer of this Corporation shall be an employee of the General Member. The Executive Committee functioning as the compensation committee shall meet with and provide an evaluation of the Chief Executive Officer and shall make compensation recommendations, based on an agreed upon salary system and survey process, to the President and Chief Executive Officer of the General Member, or his or her designee, who shall make the final determination. The Board of this Corporation shall also periodically provide an evaluation of the Chief Executive Officer to the President and Chief Executive Officer of the General Member. The Chief Executive Officer shall serve at the pleasure of the General Member, acting through its President and Chief Executive Officer, and the Board of this Corporation, each of which, with the approval of the other, may terminate the services of the Chief Executive Officer.

B.   Responsibilities and Authority.

The Chief Executive Officer shall be the general manager of this Corporation. The Chief Executive Officer shall be given the necessary authority and responsibility to operate this Corporation in all of its activities, including without limitation, quality of services, cost effectiveness and economic performance and implementation of System strategies, subject to the following:  With respect to

Subp 00442

policy development, program planning and community relations, the Chief Executive Officer shall be subject to such policies as may be adopted and such orders as may be issued by the Board of this Corporation or by any of its committees to which the Board has delegated the power for such action; with respect to program execution and overall management performance, the Chief Executive Officer shall be subject to the authority of and shall report to the Board; with respect to strategies of the local delivery system operated by this Corporation and overall operations of that system, the Chief Executive Officer shall be responsible to the President and Chief Executive Officer of the General Member. The Chief Executive Officer shall also periodically report to the President and Chief Executive Officer of the General Member or his/her designee on the affairs of this Corporation. The Chief Executive Officer shall act as the duly authorized representative of the Board of this Corporation in all matters in which the Board has not formally designated some other person to so act.

Section 7-6. - Chief Financial Officer.

The Chief Financial Officer, acting with the Executive and Planning and Finance Committees, shall ensure that a true and accurate accounting of the financial transactions of the Corporation is made, that reports of such transactions are presented to the Board or an appropriate committee of the Board, and that all accounts payable are processed in such manner as the Board (or appropriate committee) may designate.

Section 7-7. - Secretary.

The Secretary shall be responsible to cause appropriate notices and agendas to be prepared and sent for all meetings of the Board of Trustees, shall act as custodian of all records and reports, shall be responsible to cause the keeping and reporting of adequate records of all meetings of the Board of Trustees, and shall certify to the correctness of any corporate bylaws or resolutions. The Board may appoint such Assistant Secretaries as deemed appropriate, each of whom shall have authority to sign documents on behalf of and in the absence or unavailability of the Secretary, subject to such limitations as are imposed by the Board.

Section 7-8. - Administrators.

The Chief Executive Officer of the Corporation (or his or her designee) shall select and appoint the Administrators. Each Administrator shall be qualified both by education and experience, and shall support the objectives of the Corporation.

Each Administrator shall be the chief administrative officer of his/her respective operation and shall be its direct operating representative in the management of that operation. Each Administrator shall be given the necessary authority and responsibility subject to the following: With respect to policy development, program planning and community relations, the Administrator shall be subject to such policies as may be adopted and such orders as may be issued by the General Member, the Board of Trustees or by any of its committees to which the Board has delegated the power for such action; and with respect to program execution and overall management performance, the Administrator shall be subject to the authority of and shall

Subp 00443

report to the Chief Executive Officer of the Corporation or his/her designee. Notwithstanding the foregoing, all decisions regarding the non-exempt (non supervisory) employees' wages, hours and conditions of employment (except for Systemwide employee benefit plans or policies) for an operation shall be made by that operation's Administrator. He/she shall act as the duly authorized representative of the Board of Trustees in all matters regarding his/her respective operation in which the Board has not formally designated some other person to so act.

## VIII. COMMITTEES AND ADVISORY BOARDS

### Section 8-1. - General.

Except as specified in these Bylaws or in any resolution creating an additional committee, the members and chair of each committee shall be elected by the Board of Trustees at the Annual Organizational Meeting of the Board. The chair and all other members of each committee shall hold office for one year, but in any event until their successors are elected. Except as specified for the Executive Committee, the Chair of the Board shall have the power to fill any vacancies that occur on the committees for the remainder of the year.

Except for the Executive Committee, persons may be appointed to committees who are not Trustees or employees or the Corporation. Such persons may serve as officers of their committees. All committees deliberating on issues affecting the discharge of Medical Staff responsibilities shall include, in at least an advisory and consulting capacity, a physician member of the Medical Staff.

The Chief Executive Officer of the Corporation shall be a voting, *ex officio* member of each committee.

The provisions of Sections 6-5, 6-6, 6-7 and 6-9 of these Bylaws, regarding notice, quorum, manner of acting, and action in lieu of a meeting, shall apply to committees of the Board.

All committees of the Board shall keep minutes of their meetings, which shall be filed with the Secretary of the Board.

### Section 8-2. - Executive Committee.

A.  Composition.

The Executive Committee shall consist of the Chair of the Board who shall serve as chair of the committee, the Vice Chair, the Secretary, the Chair of the Planning and Finance Committee, and the Chief Executive Officer of the Corporation.

B.  Responsibilities and Authority.

The Executive Committee shall have power to transact all regular business of the Corporation during the period between meetings of the Board, subject to any prior

DEC_SHSSR_Bylaws_8-04.doc                    -13-

Subp 00444

limitations imposed by the Board and subject to the limitations of Section 5212(a) of the California Corporations Code, or any successor provision. The committee shall meet as often as necessary, upon the call of the Chair.

C.    Accountability.

The Executive Committee shall report to each regular Board meeting the results of actions that it has taken within the authority delegated to it, so that the Board maintains accountability from the Executive Committee for its actions. Minutes of all meetings of the Executive Committee shall be distributed to all Trustees for information and any necessary actions.

Section 8-3. - Planning and Finance Committee.

A.    Composition.

The Planning and Finance Committee shall consist of at least seven members. The Chair of the Planning and Finance Committee shall be a Trustee selected by the Board. There shall be between one and four members who are physicians, at least one of whom shall be a Trustee. There shall be four or more members who are Community Representatives, at least one of whom shall be a Trustee. These committee members shall be appointed by the Board in consultation with the Planning and Finance Committee Chair. The Chief Executive Officer shall be an *ex officio*, voting member of the Committee. There shall be one member who is a nursing executive who is selected by the Chief Executive Officer. At its discretion, the committee may allow guests to attend its meetings, on either a standing or ad hoc basis. Guests shall have no participatory or other rights of the members.

B.    Responsibilities and Authority.

i.    Financial Responsibilities.

This committee shall be responsible for overseeing the management of the Corporation's assets and ensuring that financial records are maintained in accordance with Generally Accepted Accounting Principles. It shall annually see that operating and capital budgets are prepared and submitted to the Board and the General Member in a timely fashion. The Planning and Finance Committee shall examine the period financial reports and receive explanations regarding variations from the Budget. The committee shall also review the results of all outside audits and recommend action thereon to the Board.

Subp 00445

ii.    Planning Responsibilities.

The committee's duties shall additionally be to:

a.    Assist in the preparation and modification of long-range and short-range development plans developed with participation of administration, the Community Advisory Boards, the Medical Staffs, and nursing and other departments, to assure that the Corporation's health care program is attuned to meeting the health needs of the community, including periodic reexamination of the Corporation's purposes, goals, policies and current programs for delivery of health services;

b.    Solicit and receive input from the general public to:

(1)    Identify areas of health care service needs within the service areas of the Corporation's respective facilities.

(2)    Propose ways in which the Corporation might respond to those needs.

c.    Review the feasibility of, and availability of resources for, corporate projects, acts and undertakings referred to it by the Board of Trustees and make recommendations thereon to the Board; and

d.    Receive and evaluate reports from the Community Advisory Boards and ensure compliance applicable California and federal laws.

iii.    This Committee shall perform such other duties related to fiscal and planning matters as may be assigned to it by the Board or its Chair.

The committee shall exercise its responsibilities and authority in a manner consistent with any policies or guidelines established by the General Member.

The committee shall meet as often as necessary, but at least quarterly.

C.    Accountability.

This committee shall report at regular meetings of the Board or the Executive Committee its findings on reports of the fiscal operation. It shall present annually to the Board a report on the budgets and such other reports as required by law.

Subp 00446

Section 8-4. - Medical Policy Committee.

For purposes of this Section, Sutter General and Sutter Memorial Hospitals and Sutter Center for Psychiatry shall be treated as one "hospital."

A.    Composition.

The Medical Policy Committee shall be chaired by a Trustee and consist of at least thirteen voting members and non-voting members as designated by the Board, including: (1) at least four voting Trustees, each of whom shall be a member of a Medical Affairs Committee, (2) the four Chiefs of Staff of the hospitals, (3) the Medical Director of the Sutter aligned network, (4) four nursing executives (who shall be selected by the Chief Executive Officer), and (5) the Chief Executive Officer of the Corporation or his/her designee, as an *ex officio* member.

B.    Responsibilities and Authority.

This Committee shall be responsible for:

i.    Overseeing the development of the Corporation policy for Quality Management, Continuous Quality Improvement and medical staff credentialing (including a policy for resolving credentialing decision discrepancies between hospitals).

ii.    Overseeing the development of quality protocols for the Corporation for final approval by the Board.

iii.    Overseeing the development of a program for credentialing, medical staff privileges, Quality Management and profiling that extends beyond the acute-care hospital setting to such areas as ambulatory and continuing care, for final approval by the Board.

iv.    Assisting in creating and maintaining a formal channel of communication between the Board and the Medical Staffs and other care providers.

v.    Directing and participating in the activities of each hospital's Medical Affairs Committee.

vi.    Reviewing medical staff policies, bylaws and credentialing issues for the hospitals, and having input into these issues when necessary.

vii.    The oversight of all research conducted at the Corporation's facilities or approved by Sutter Institute for Medical Research or the Institutional Review Committee for the Sutter Health Sacramento Sierra Region Market Service Area.

Subp 00447

The Committee shall meet at a minimum at least six (6) times a year.

C.    Accountability.

This Committee shall at all times be accountable to the Board of Trustees and shall fulfill that accountability by:

i.    Submitting periodically a written report and recommendations, where appropriate, to the Board regarding:

    a.    Proposed medical staff actions to be approved by the Board;

    b.    Proposed policies and protocols to be approved by the Board;

    c.    Any other matters considered in need of Board deliberation.

ii.    Reporting to the Board or the Executive Committee whenever requested by the Board.

Section 8-5 - Medical Affairs Committees.

Each hospital (treating Sutter General and Sutter Memorial Hospital and the Sutter Center for Psychiatry as one "hospital" for purposes of this Section) shall have a Medical Affairs Committee.

A.    Purposes.

The purposes of these committees are:

i.    To assist the Board and Medical Policy Committee to discharge its corporate responsibility for the quality of medical care by establishing, maintaining, and improving means of holding the Medical Staffs accountable for all their activities within the Corporation's facilities at which members of the Medical Staffs hold privileges from the Corporation.

ii.    To give support, guidance, and counsel to the Chief Executive Officer and Medical Staff officials in carrying out their supervisory roles with respect to Medical Staff functions and activities.

B.    Composition.

The Chair of each committee shall be selected by the Board. If the Chair is a non-Trustee, then a Trustee from the committee shall be selected to serve as the Medical Affairs Committee's representative on the Medical Policy Committee. At least two voting members of the Committee shall be physicians and, in addition, at least one voting member shall be a Trustee. The number and

DEC_SHSSR_Bylaws_8-04.doc        -17-

Subp 00448

composition of each Medical Affairs Committee shall otherwise be determined by the Board after consultation with each hospital's Chief of Staff and Administrator. Additional suggested members of each committee include: (1) each hospital's Chief of Staff, (2) a nurse executive from each hospital, and (3) a member of the Community Advisory Board of the applicable Community for a particular hospital, where feasible and appropriate.

C.    Responsibilities.

Each committee shall, with respect to its hospital:

i.      Advise and make recommendations to the Medical Policy Committee on all Medical Staff matters.

ii.     See that appropriate standards for the screening of all applications to the Medical Staff are established, maintained, and improved as necessary, and monitor compliance with those standards.

iii.    Review and recommend to the Board all applications for appointment and reappointment to the Medical Staff, including privileges to be granted (except applications for temporary appointments and privileges which have been granted by the Administrator or his/her designee).

iv.     Review and recommend to the Medical Policy Committee on all recommendations from the executive committee of the Medical Staff.

v.      Review the recommendations of the Medical Staff fair hearing committees and, based upon the record, make recommendations to the Board of Trustees in accordance with the standards set forth in the Medical Staff Bylaws.

vi.     Conduct Medical Staff appeals in accordance with the Medical Staff Bylaws.

vii.    Receive and review specific reports needed to ascertain if Medical Staff functions are being properly discharged.

viii.   Hold Medical Staff officials accountable for the carrying out of Medical Staff functions of reviewing, analyzing, and evaluating clinical work, and the making of appropriate recommendations in accordance with the findings thereon.

ix.     Hold Medical Staff officials accountable for seeing that all members of the Medical Staff comply with the Medical Staff bylaws, rules and regulations, and all hospital-promulgated policies.

Subp 00449

x.     Determine the extent that the standards and recommendations of the J.C.A.H.O. on medical matters are complied with and make recommendations accordingly.

xi.    Meet on a regular basis and maintain a record of its proceedings.

xii.   Initiate review of Medical Staff Bylaws and Rules and Regulations.

xiii.  Maintain appropriate confidentiality of Medical Staff peer review and Quality Improvement matters.

D.   Authority.

This committee shall have the authority to:

i.     Grant temporary appointments and privileges to Medical Staff applicants, when appropriate and necessary. (Such authority is also vested with the Administrator or his/her designee.)

ii.    Determine and request whatever studies, investigative reports, or statistics concerning Medical Staff activities and functions it deems essential to discharging its responsibilities.

iii.   Reject any reports from the Medical Staff or its officials not considered complete.

iv.    Invite any officer of the Medical Staff, including Department or Service Chiefs, to meet and confer with the Committee.

v.     Approve all documents which the Medical Staff submits to the Medical Policy Committee or the Board for approval.

The authority delegated to these committees shall be exercised in a manner consistent with any provisions for fair procedure, if applicable, afforded each member of the relevant Medical Staff as outlined in the relevant Medical Staff bylaws, and with any guidelines or policies established by the General Member's Systemwide Quality Review Committee.

E.   Accountability.

Each committee shall be at all times accountable to the Board of Trustees and shall fulfill that accountability by:

i.     Submitting regularly a written report and recommendations, where appropriate, to the Medical Policy Committee and/or the Board regarding:

a.     applications to the Medical Staff;

Subp 00450

       b.     studies pertaining to medical care appraisal;

       c.     any matters considered in need of Medical Policy Committee or Board deliberation.

ii.     Submitting status reports describing studies and reports in progress pertaining to the effectiveness of the applicable Medical Staff carrying out its required surveillance functions.

iii.     Reporting to the Executive Committee of the Board whenever so requested by the Chair of the Board.

iv.     Submitting a report on any aspect of its activities whenever so requested by the Board.

v.     Establishing a mechanism whereby the committee's effectiveness shall be evaluated.

## Section 8-6. - Physician Strategy Committee.

A.    Composition.

The Physician Strategy Committee shall consist of at least five and no more than 11 voting members, including at least: (i) two Trustees (to be selected by the Board); (ii) one physician member; (iii) the Corporation's Vice President for Clinical Integration; and (iv) the Chief Executive Officer of the Corporation or his/her designee, as *ex officio* members.   In addition, the Chair of the Physician Strategy Committee shall be a Trustee selected by the Board.

The CEO of the Sutter Medical Foundation/Sutter Physicians Alliance (SMF/SPA), the Medical Director of SMF/SPA, and the CFO of the (SMF/SPA) shall serve as non-voting staff members to the Committee.  The Presidents of the aligned physician organizations shall attend as non-voting members.  Additional voting members of the committee can be appointed by the Board.

B.    Responsibilities and Authority.

This Committee shall be responsible for:

i.     Overseeing the activities of Sutter Medical Foundation, Sutter Physicians Alliance, Sutter Specialty Services Network and other strategic physician initiatives throughout the area served by Sutter Health Sacramento Sierra Region.

ii.     Ensuring the proper coordination of all business activities of the Corporation related to the aligned physician organizations by reviewing,

Subp 00451

recommending and approving operating and capital budgets, business plans and management accountabilities.

   iii.   Reviewing physician recruitment strategies, including requests for funding/loan guarantees for final approval by the Board.

   iv.   Reviewing monthly performance reports from Sutter Medical Foundation/Sutter Physicians Alliance.

   v.   Participating in systemwide initiatives related to independent physician organizations by (a) identifying areas of health care service needs; and (b) developing integrated concepts to improve operating and fiscal capabilities for the purpose of making Sutter Health the healthcare system of choice.

   vi.   The Committee shall meet at least quarterly.

C.   Accountability.

This Committee shall at all times be accountable to the Board of Trustees.

In addition, this Committee shall report to the Board or the Executive Committee whenever requested by the Board.

Section 8-7. - Governance/Nominating Committee.

A.   Composition.

The Governance/Nominating Committee shall consist of five members. The membership shall include the current Chair, Vice Chair, and two other Trustees (one of whom shall be a Physician Trustee). In addition, the Chief Executive Officer of the Corporation shall serve as a voting, *ex officio* member of the committee. The Chair or Vice-Chair shall be the chair of this committee.

B.   Responsibilities and Authority.

The duties and responsibilities of the Governance/Nominating Committee shall be:

   i.   Recommend to the Board nominees for membership on the Board of this Corporation (including nominees to fill vacancies created by expiration of a term as well as by resignation, removal, or death);

   ii.   Recommend nominees for the officers of this Corporation, two members of the Governance/Nominating Committee, and the members and chair of the committees to be elected at the Annual Organizational Meeting, as described at Section 6-3 of these Bylaws.

Subp 00452

iii.   Confer with the Trustees nearing the end of an initial one-year term in order to evaluate the Board's and Trustee's desire to continue the appointment for the remaining two years of the three-year term.

iv.   Develop Board orientation/educational programs, ensures trustee development and governance leadership opportunities.

v.   Report to the board the results of the annual board self evaluations with recommendations of specific goals and actions as appropriate.

vi.   Monitor the Trustees' involvement in community relations and strengthens the links to the community.

vii.   Review the bylaws at least every two years and recommends revisions as necessary to ensure compliance with applicable statutes, regulations, and accreditation requirements.

viii.   Monitor legislative/public affairs activities on a local, state, and national level, and promotes activities of organization and individual trustees in public affairs, as appropriate.

ix.   Serve as the Corporation's ethics committee and in such capacity monitor the performance of the Corporation's Compliance Program.

C.   <u>Accountability.</u>

The Governance/Nominating Committee shall report to the Board as often as necessary, but at least annually.

<u>Section 8-8. - Community Advisory Boards.</u>

Community Advisory Boards where appropriate shall be created for each county in which the Corporation operates. For Sacramento County, the Sutter Medical Center Foundation's Community Advisory Committee shall perform the functions of the Community Advisory Board. For Yolo County, the Sutter Davis Hospital Foundation's Community Advisory Committee shall perform the functions of the Community Advisory Board.

A.   <u>Purpose.</u>

The purpose of the Community Advisory Boards is to ensure that the Corporation's facilities, caregivers, resource allocation and process of care are responsive to the care delivery and health status needs of the communities served by the Corporation. The Community Advisory Boards shall not have any rights as a Board of Trustees of the Corporation, but shall serve as an advisory committee to the Board.

Subp 00453

B.    <u>Composition</u>.

Each Community Advisory Board shall have no more than sixteen members. Suggested members for each Community Advisory Board include:

    i.    A nonphysician member of a Medical Affairs Committee of an applicable hospital.

    ii.    A Trustee of the Corporation.

    iii.    Trustees of the charitable foundation(s) supporting the applicable hospital(s).

    iv.    Initially, individuals who were members of the Boards of Trustees of the Merging Corporations.

    v.    The Administrator(s) in the particular county.

    vi.    Community representatives, including but not limited to local physicians, insurers, major employers in the applicable county, city and county officials, and public health, housing and volunteer organizations.

    vii.    Representatives knowledgeable about continuing care issues.

    viii.    "Expert" representatives whose knowledge of community outreach and local healthcare issues makes them valuable members of the Community Advisory Board.

The composition of each Community Advisory Board shall be determined by that Community Advisory Board in consultation with the appropriate Administrator(s), and the nominees shall be subject to the final approval of the Corporation's Board. The Chief Executive Officer shall be invited to and have the option of attending all meetings.

Initially, the members for a particular Community Advisory Board shall be nominated by a task force appointed by the boards of Trustees of the applicable Merging Corporations in consultation with the appropriate hospital Administrator. The slate of nominees shall be approved by the Corporation's Board.

C.    <u>Responsibilities and Authority</u>.

Each Community Advisory Board shall:

    i.    Develop Community Benefit Plans for the Corporation, as may be required by law.

Subp 00454

ii.      Report quarterly to the Planning and Finance Committee regarding health status measures within that Community Advisory Board's community, and report urgent related concerns on an ad hoc basis.

iii.     Represent the Corporation in any ongoing efforts within the Community Advisory Board's community to measure and improve the community's health status, and initiate such efforts where appropriate.

iv.     Provide community input into the regional planning process and strategic planning.

The Community Advisory Boards shall each meet at least quarterly.

Section 8-9. - Adult Day Health Center ("ADHC") Advisory Board.

A.    Purposes.

The purpose of the ADHC Advisory Board is to comply with Section 78405 of Title 22 of the California Code of Regulations that require the Corporation to establish a special board to which it delegates primary responsibility for supervision of its adult day health care centers.

B.    Composition.

The members of the ADHC Advisory Board shall be selected by the Board of Trustees and shall consist of at least four or more persons, at least fifty percent of whom shall be (1) recipients of the services of the ADHC operated by the Corporation, (2) relatives of such recipients, or (3) representatives of community organizations with particular interest in programs for the elderly.

C.    Responsibilities and Authorities.

The ADHC Advisory Board shall have primary responsibility for supervision of the Corporation's adult day health care centers. The ADHC Advisory Board shall review and recommend to the Board the budget, personnel and subcontractors of the adult day health care centers.

D.    Accountability.

The ADHC Advisory Board shall periodically submit a report to the Board through the Planning and Finance Committee containing the results of actions it has taken within the authority delegated to it and shall report any findings and recommendations. The ADHC Advisory Board shall present annually to the Board a report on the operational and fiscal conduct of the adult day health care centers operated by the Corporation.

Subp 00455

Section 8-10. - Ad Hoc Committees.

    A.    Composition.

        Ad hoc committees may be appointed by the Board for such special purposes as circumstances warrant (for example, to convene a Joint Conference Committee in order to resolve conflicts between the Board, management and Medical Staff). Individuals not on the Board, but having special knowledge or background may be appointed to serve on such committees.

    B.    Responsibilities and Authority.

        Activities of such a committee shall be limited to the accomplishment of those tasks for which it was appointed. The committee shall have no powers except those specifically conferred by the Board of Trustees. As with all committees, management and staff shall provide the resources for ad hoc committees.

    C.    Accountability.

        All ad hoc committees shall report directly to the Executive Committee and to the Board of Trustees. Upon completion of the stated purpose for which it was formed, the committee shall be discharged.

## IX.  PROVISION OF MEDICAL, DENTAL AND PODIATRIC CARE

Section 9-1. - Responsibility for Medical Care.

    A.    The Board of Trustees is responsible for the quality of medical, dental, and podiatric care rendered by the Corporation. It shall discharge that responsibility by assuring that the organized Medical Staffs and other practitioners carry out the specific quality control functions in accordance with guidelines established by the General Member, including, without limitation, the following:

        i.    Reviewing, analyzing, and evaluating clinical practice to determine the quality of medical care.

        ii.    Making recommendations to management and the Board for the establishment, maintenance, and continuing improvement and enforcement of professional standards.

        iii.    Reporting regularly as required by the applicable Medical Affairs Committee in Section 8-5 of these Bylaws, on the quality of medical care in terms of professional standards.

        iv.    Recommending the appointment and reappointment of physicians, dentists, and podiatrists to the Medical Staffs and the delineation of their

Subp 00456

clinical privileges. Other categories of practitioners eligible for Medical Staff membership shall be as set forth in the applicable Medical Staff Bylaws.

    v.    Supervising and ensuring:

        a.    compliance with the bylaws, rules, and regulations for the Medical Staffs, and

        b.    carrying out the policies of the hospitals and other facilities concerning medical care.

    vi.    Disciplining the members of the applicable Medical Staff or other practitioners for violations of policies of the Corporation, the facilities or the applicable Medical Staff bylaws and rules and regulations, within the limitations of the authority delegated by the Board of Trustees.

    vii.    Assisting in identifying community health needs and setting appropriate institutional goals to meet those needs.

    viii.    Conducting formally structured ongoing programs of continuing medical education designed to meet the highest professional standards of care.

B.    The Chiefs of Staff of hospitals shall: (i) be responsible for the effective discharge of functions to be carried out by the applicable Medical Staffs; (ii) have the required authority necessary to carry out their responsibilities and it shall be defined in the bylaws for the applicable Medical Staff; and (iii) be accountable, through the Administrator or his/her designee, to the Board of Trustees, and shall report regularly to the Medical Affairs Committee, the Medical Policy Committee and the Board on the activities of the Medical Executive Committee.

C.    The Board of Trustees shall be responsible for:

    i.    making all appointments and reappointments to the Medical Staff and alterations of staff status,

    ii.    granting of clinical privileges,

    iii.    disciplinary actions, and

    iv.    all matters relating to Medical Staff professional competence.

D.    In discharging the aforementioned responsibilities, the Board of Trustees shall:

    i.    assure that the safety and interest of the patients take precedence over all other concerns, and

Subp 00457

    ii.     always request and give great weight to (but not be bound by) recommendations from the Medical Staff officials and the executive committees of the Medical Staffs.

E.     The Board of Trustees shall, through the Medical Staff organizations, and the functions assigned to them, maintain systems for:

    i.     the establishment of professional standards and criteria by which to evaluate medical care,

    ii.     the continuing surveillance of professional practice and Medical Staff functions in order to determine the degree to which these professional standards and criteria are being met, and

    iii.     gaining compliance with the predetermined standards and criteria when the systems of surveillance indicate they are not being met.

F.     No delegation to the Medical Staffs shall preclude the Board of Trustees from exercising the authority required to meet its responsibilities under these Bylaws.

Section 9-2. - Medical Staff Organization.

A.     Purposes.

The Board of Trustees shall organize, or cause to be organized, Medical Staffs for each hospital comprised of physicians, dentists and podiatrists (and such other categories as may be permitted under the applicable Medical Staff Bylaws) for the following purposes:

    i.     To serve as the primary means for accountability to the Board for the appropriateness of the professional performance and ethical conduct of its members and affiliates;

    ii.     To discharge specific quality control functions designed to ensure the continual upgrading of the quality of medical, dental and podiatric care rendered by the Medical Staffs while at the same time assuring that the safety and interest of the patients shall take precedence over all other concerns;

    iii.     To provide a structure whereby the Medical Staff members can become an integral part of the total organization and participate in the institution's planning, policy setting, and decision making processes.

B.     Functions.

In fulfilling the purposes of the Medical Staff organization, the functions as stated in Section 9-1A of these Bylaws shall be carried out.

DEC_SHSSR_Bylaws_8-04.doc         -27-

Subp 00458

C.     Officials.

Each Medical Staff bylaws shall provide for selection of its officers.

Section 9-3. - Bylaws for the Medical Staff.

A.     Purpose of Bylaws.

There shall be bylaws for each Medical Staff. The bylaws shall state the purpose and responsibilities of each hospital's Medical Staff organization and they shall be in consonance with the purposes and functions of each Medical Staff organization stated herein. The bylaws for each Medical Staff shall provide an organizational framework necessary for the implementation of appropriate quality control programs as dictated by the prescribed responsibilities of the Medical Staff organization. The bylaws shall define relationships, responsibilities, authority, and methods of accountability for each Medical Staff official, department, and committee. The bylaws shall specifically assure that only a member of the Medical Staff with admitting privileges shall admit patients to that facility; that only an appropriately licensed practitioner with clinical privileges shall be directly responsible for a patient's diagnosis and treatment within the area of his/her privileges; that each patient's general medical condition shall be the responsibility of a physician member of the Medical Staff; that each patient admitted to that hospital shall receive a baseline history and physical examination by a physician who is either a member of or approved by the Medical Staff; and that other direct medical care of patients provided by allied health professionals, residents, and medical students shall be under the appropriate degree of supervision by a licensed practitioner with clinical privileges.

B.     Writing of Bylaws.

Each Medical Staff, through its officials and appropriate committees, shall be required to submit bylaws, rules and regulations for the Medical Staff organization in accordance with the requirements for said bylaws as set forth in this Article. The Medical Staff shall periodically review and, as necessary, submit revisions to its bylaws, rules and regulations.

C.     Approval of Bylaws.

All such bylaws, rules and regulations for each Medical Staff shall be approved by the Medical Affairs Committee, as well as the Medical Policy Committee and Board of this Corporation all whose approval shall not be unreasonably withheld before becoming effective. The Board shall not repeal, amend or adopt bylaws for the organization and functioning of each Medical Staff without that Medical Staff's adoption and approval unless failure to do so would be a violation of the law.

Subp 00459

Section 9-4. - Hearing and Appeals.

      The Board of Trustees shall assure that each member of each Medical Staff shall be afforded fair procedure with respect to all appointment and reappointment procedures and the granting, revoking, reducing, or denying Medical Staff privileges. The conditions and steps for affording such fair procedure to the Medical Staff shall be carefully defined in the bylaws for each Medical Staff, and shall include, when appropriate, detailed provisions for hearing and appellate procedures and for notice to the aggrieved practitioner of his/her access to those procedures.

## X.  RECORDS, REPORTS, AND INSPECTION RIGHTS

Section 10-1. - Maintenance of Articles and Bylaws.

      The Corporation shall keep at its principal office the original or a copy of the Articles of Incorporation and Bylaws as amended to date.

Section 10-2. - Maintenance of Other Corporation Records.

      The accounting books, records, and minutes of proceedings of the Board of Trustees and any committee(s) of the Board of Trustees shall be kept at such place or places designated by the Board of Trustees, or, in the absence of such designation, at the principal executive office of the Corporation. The minutes shall be kept in written or typed form, and the accounting books and records shall be kept in either written or typed form, or in any other form capable of being converted into written, typed, or printed form.

Section 10-3. - Inspection.

      Except as otherwise limited by law, every Trustee and the General Member shall have the absolute right at any reasonable time to inspect all books, records, and documents of every kind and the physical properties of the Corporation. This inspection by a Trustee or the General Member may be made in person or by an agent or attorney, and the right of inspection includes the right to copy and make extracts of documents.

Section 10-4. - Annual Report.

      The fiscal year of this Corporation shall end on the 31st day of December of each year. The Corporation shall provide to the Trustees, within 120 days after the close of its fiscal year, a report containing the following information in reasonable detail:

    A.     The assets and liabilities, including the trust funds, of the Corporation as of the end of the fiscal year.

    B.     The principal changes in assets and liabilities, including trust funds, during the fiscal year.

Subp 00460

C.   The revenue or receipts of the Corporation, both unrestricted and restricted to particular purposes, for the fiscal year.

D.   The expenses or disbursements of the Corporation, for both general and restricted purposes, during the fiscal year.

E.   Any information required by California Corporations Code Section 6322, or successor provisions, regarding transactions with interested persons and indemnification's.

F.   The report shall be accompanied by any report by independent accountants, or, if there is no such independent report, a certificate to the effect that the report was prepared without audit.

## XI. EXECUTION OF DOCUMENTS

The following persons shall be authorized to execute any deeds, mortgages, bonds, contracts, or other instruments which the Board has authorized to be executed:

A.   Any officer or other person duly authorized by resolution of the Board to executed documents; or

B.   In the absence of express authorization by Board resolution, the Chair, Chief Executive Officer, or Vice Chair, and the Secretary or any Assistant Secretary (all subject to such limitations as may be imposed by resolution of the Board).

## XII. TRANSACTIONS AND ACTIVITIES REQUIRING APPROVAL OF THE GENERAL MEMBER

### Section 12-1. - Matters Requiring Approval.

Notwithstanding anything in these Bylaws to the contrary, neither the Board nor any officer or employee of this Corporation may take any of the following actions, or approve an affiliate taking any of the following actions, without the prior approval of the General Member:

A.   Merger, consolidation, reorganization, or dissolution of this Corporation or any subsidiary or affiliate entity;

B.   Amendment or restatement of the Articles of Incorporation or the Bylaws of this Corporation or any subsidiary or affiliate entity;

C.   Adoption of operating budgets of this Corporation or any subsidiary or affiliate entity, including consolidated or combined budgets of this Corporation and all subsidiary organizations of the Corporation;

Subp 00461

D.   Adoption of capital budgets of this Corporation or any subsidiary or affiliate entity;

E.   Aggregate operating or capital expenditures on an annual basis that exceed approved operating or capital budgets by a specified dollar amount to be determined from time to time by the General Member;

F.   Long-term or material agreements including, but not limited to, borrowings, equity financings, capitalized leases and installment contracts; and purchase, sale, lease, disposition, hypothecation, exchange, gift, pledge, or encumbrance of any asset, real or personal, with a fair market value in excess of a dollar amount to be determined from time to time by the Directors of the General Member, which shall not be less than 10 percent of the total annual capital budget of this Corporation;

G.   Appointment of an independent auditor and hiring of independent counsel except in conflict situations between the General Member and this Corporation or any subsidiary or affiliate entity;

H.   The creation or acquisition of any subsidiary or affiliate entity;

I.   Contracting with an unrelated third party for all or substantially all of the management of the assets or operations of this Corporation or any subsidiary or affiliate entity;

J.   Approval of major new programs and clinical services of this Corporation or any subsidiary or affiliate entity. The General Member shall from time to time define the term "major" in this context;

K.   Approval of strategic plans of this Corporation or any subsidiary or affiliate entity;

L.   Adoption of quality assurance policies not in conformity with policies established by the General Member;

M.   Any transaction between this Corporation, a subsidiary or affiliate and a Trustee of this Corporation or an affiliate of such Trustee.

Section 12-2. - Other Major Activities.

A.   In addition, the General Member shall have the authority, except as otherwise provided by the General Member and after consultation with this Corporation, to require the prior review and approval of those activities of this Corporation or any subsidiary or affiliate entity which the General Member determines to be major activities.

B.   "Major activities" shall be those which the General Member by a vote of not less than two-thirds of its Board of Directors (then in office) has declared major, by

Subp 00462

written notice to this Corporation, delivered personally or transmitted by registered or certified mail, return receipt requested. Such notice shall specifically identify the matter or matters requiring approval of the General Member, and shall refer to this bylaw provision granting such approval rights to the General Member. Notices received pursuant to this section shall be recorded in the minutes of this Corporation and shall be filed with the minutes of this Corporation.

Section 12-3. - Approvals.

The General Member's approval or disapproval of matters described in Section 12-1 or 12-2 above, shall be recorded in or filed with the minutes of this Corporation.

Section 12-4. - Other Actions Requiring Approval of the General Member.

A.     Any vacancy occurring on the Board of this Corporation shall be filled by an appointee of the General Member from nominees selected as described in the nomination provision of these Bylaws.

B.     Any non-*ex officio* Trustee or Trustee of this Corporation's Board may be removed from office by the General Member; provided, however, the General Member shall notify this Corporation's Board, and give it an opportunity to respond in the manner and subject to the terms and conditions described herein, prior to any such proposed removal.

Section 12-5. - Exercise of Authority.

Notwithstanding any provision in these Bylaws to the contrary, and except as otherwise provided in subsection (B) of Section 12-2 of the Bylaws (regarding definition of "major activities"), this Corporation shall not prescribe the manner by which the General Member exercises its authority under these Bylaws, and no present or future provision of these Bylaws shall have such effect. Without limiting the generality of the foregoing, no present or future provision of these Bylaws or other action of this Corporation shall prescribe the required vote of the Board of Trustees of the General Member for the exercise of its authority herein, nor shall the approval of the General Member to be inferred from its failure affirmatively to disapprove of a proposed action of this Corporation within a specified time period.

## XIII.  AUXILIARIES AND FUNDRAISING FOUNDATIONS

Section 13-1. - Establishment.

Subject to the provisions of Section 12-1 of these Bylaws, the Board of Trustees may establish or support the establishment of auxiliaries and fundraising foundations and/or related organizations wishing to support the objectives of the Corporation or work in complementary ways to the Corporation.

Subp 00463

Section 13-2. - Board Approval.

The Board of Trustees reserves the right to channel any such funds as may be donated by such bodies to uses or objectives consistent with the purposes stated in Article II of these Bylaws, and for liaison purposes only, a member of the Corporation's Board of Trustees shall be appointed to attend meetings of the auxiliaries or fundraising foundations, and from time to time, but not less than annually, the Corporation's Board of Trustees shall receive a report, for information only, from the auxiliaries or fundraising foundations as to the operations of that organization.

## XIV. INDEMNIFICATION

The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any civil, criminal, administrative or investigative proceeding by reason of the fact that such person is or was a Trustee, officer, employee, or otherwise an agent of the Corporation, against expenses, judgments, fines, settlements and other amounts actually and reasonably incurred in connection with such proceeding, provided that all of the requirements of Section 5238 of the California Corporations Code, or any successor provisions, for such indemnification are met.

Expenses, including attorneys' fees, incurred in defending any proceeding shall be advanced by the Corporation prior to the final disposition of such proceeding upon receipt of an undertaking by or on behalf of the agent to repay such amount unless it shall be determined ultimately that the agent is entitled to be indemnified as authorized in section 5238 of the California Corporations Code.

## XV. AMENDMENTS

These Bylaws may be amended or new Bylaws may be adopted by action of the Board at any regular meeting of the Board or at any special meeting called for that purpose. Amendments shall not be effective unless and until approved by the General Member. Alternatively, amendments may be adopted by the General Member, other than amendments which reduce the powers of the Board, at any regular or special meeting of the Board of Trustees of the General Member called for that purpose. However, prior to amending unilaterally these Bylaws, the General Member shall notify the Board of the proposed changes, explain the reasons for them, and allow the Board to comment. Following that process the General Member may request that the Board adopt such amendments at its next regularly scheduled meeting.

Subp 00464

# EXHIBIT 1

## SUTTER HEALTH
## EQUITY CASH TRANSFER POLICY

Subp 00465

| | |
|---|---|
| **Sutter Health and Affiliates**<br>**Finance Policies and Procedures** | |
| **EQUITY CASH TRANSFER** | |
| Policy Number 207 | Origination Date: 1/96<br>Last Revised Date: 7/98<br>Next Review Date: 9/99 |
| Approved by: Bob Reed, Chief Financial Officer | |

## POLICY

Sutter Health shall ensure that operating funds are available to affiliated entities sufficient to fund their approved operating and capital budgets. Transfers from Sutter Health to affiliates may be made where such transfers are determined to be in the best interests of the Sutter Health system, the affiliate has adopted this policy, or otherwise incorporated this policy into its bylaws, and the transfer is not otherwise prohibited by pre-existing contractual obligations. Alternatively, excess operating cash may be transferred from the affiliate to Sutter Health.

Sutter Health shall ensure that each affiliate's Funded Depreciation (including seismic funds) shall be used to fund that affiliate's routine and non-routine capital acquisitions, and will ensure that trusteed funds will be used for their authorized purposes.

Donor-originated funds are specifically excluded from this policy.

## PURPOSE

The purpose of this policy is to enable Sutter Health to optimize the strategic value of available capital resources for the benefit of the system and of individual affiliated entities. Each non-profit Sutter Health affiliated entity shall adopt this policy, thus providing the system with maximum flexibility to redeploy cash resources to meet approved system strategic objectives.

## AUTHORIZATION

The Sutter Health Chief Financial Officer may authorize transactions and establish routine practices in accordance with this policy. Sutter Health will provide periodic reports to each affiliated entity reflecting transactions executed in accordance with this policy.

## PROCEDURES

**Definitions**

Excess Operating Cash

Operating cash generated by each affiliated entity, over and above its target. (See Figure 1 for example of calculation).

---

Subp 00466

Target

Each affiliated entity's operating cash target shall consist of: Fourteen days of budgeted operating expenses, excluding depreciation expense.

Donor-originated Funds

Cash received by or due to, an affiliated entity or associated charitable foundation, which has not been spent.

**Accounting Treatment**

For transfers to Sutter Health, the following entry would be recorded:

|  | Dr. | Cr. |
|---|---|---|
| Equity Transfer – SH | XXX | |
| Cash – Operating Pool | | XXX |

For transfers received from Sutter Health, the following entry would be recorded:

|  | Dr. | Cr. |
|---|---|---|
| Cash – Operating Pool | XXX | |
| Equity Transfer – SH | | XXX |

Subp 00467

| SUTTER HEALTH | | |
|---|---|---|
| **Equity Cash Transfer Calculation (000)** | | |
| | | |
| **Month:    May 31, 1998** | | **Sample Affiliate** |
| | | *(Affiliate Name)* |
| | | |
| **April 30, 1998  End Operating Pool Balance** | + | $          9,000 |
| **B of A Balance (& other balances, if any)** | + | 500 |
| **Outstanding Checks** | - | (800) |
| **Special Provisions (if any)** | - | 0 |
| **Adjusted Operating Pool Balance** | = | $          8,700 |
| **Target Balance (see note 1)** | - | (3,260) |
| ***Equity Cash Transfer Available*** | = | *$          5,440* |
| | | |
| *(Transaction value dated 5/1/98)* | | |
| | | |
| | | |
| | | |
| **Note 1:** | | |
| **Target Calculation:** | | |
| | | |
| **Annual Operating Expense Budget** | + | $        100,000 |
| **Depreciation/Amortization** | - | (15,000) |
| **Adjusted Annual Operating Expense Budget** | = | $         85,000 |
| **14 day Target Factor** | X | 14/365 |
| **Target Balance** | = | $          3,260 |
| | | |
| | | |

Subp 00468

## SECRETARY'S CERTIFICATE

The amendments contained in these Amended and Restated Bylaws of Sutter Health Sacramento Sierra Region were approved by the Board of Trustees on January 8, 2004 and May 6, 2004, and by Sutter Health, the General Member, on February 2, 2004 and August 11, 2004, respectively.

Dated: *September 15, 2004*

_____
Secretary

Exhibit L

# AMENDED AND

# RESTATED BYLAWS

## OF

# SUTTER HEALTH
# SACRAMENTO SIERRA REGION

A nonprofit, public benefit
corporation organized under
the laws of the
State of California

*Includes Revisions through August 11, 2004*

Subp 00428

# TABLE OF CONTENTS

Page

I. NAME AND PRINCIPAL OFFICE ....................................................................1

II. PURPOSES ................................................................................................1

III. MEMBERSHIP .........................................................................................2
    Section 3-1. - General Member...............................................................2
    Section 3-2. - Transfer of Membership ...................................................2
    Section 3-3. - Exercise of Membership Rights .........................................2
    Section 3-4. - Liabilities and Assessments...............................................2

IV. SYSTEM AFFILIATION ............................................................................2
    Section 4-1. - Facilities Operated by Corporation ....................................2
    Section 4-2. - Affiliated Status................................................................3
    Section 4-3. - Participation in Activities of the General Member ...............3
    Section 4-4. - Cash Concentration ..........................................................3
    Section 4-5. - Equity Cash Transfer Policy...............................................3
    Section 4-6. - Payment of Allocation Fee ................................................4
    Section 4-7. - Cost of Capital Allocation Policy.......................................4
    Section 4-8. - Effect of Policies .............................................................4
    Section 4-9. - Policies Required of Affiliated Entities ..............................4
    Section 4-10. - Compliance Program.......................................................4

V. TRUSTEES................................................................................................5
    Section 5-1. - Membership......................................................................5
    Section 5-2. - Powers and Responsibilities...............................................6
    Section 5-3. - Compensation...................................................................8
    Section 5-4. - Conflict of Interest...........................................................8
    Section 5-5. - Nominations ....................................................................8

VI. MEETINGS OF THE BOARD .....................................................................9
    Section 6-1. - Regular Meetings .............................................................9
    Section 6-2. - Special Meetings...............................................................9
    Section 6-3. - Annual Organizational Meeting .........................................9
    Section 6-4. - Place of Meetings.............................................................9
    Section 6-5. - Notice .............................................................................9
    Section 6-6. - Quorum...........................................................................9
    Section 6-7. - Manner of Acting ...........................................................10
    Section 6-8. - Presiding Officer ............................................................10
    Section 6-9. - Action in Lieu of Meeting ..............................................10
    Section 6-10. - Telephonic Meetings .....................................................10

VII. OFFICERS/ADMINISTRATORS ...............................................................10
    Section 7-1. - General ..........................................................................10
    Section 7-2. - Qualification, Election and Term of Office........................10

Subp 00429

Section 7-3. - Chair ......................................................................................11
Section 7-4. - Vice Chair ...............................................................................11
Section 7-5. - Chief Executive Officer ...........................................................11
    A.   Appointment, Compensation and Removal ...............................11
    B.   Responsibilities and Authority...................................................11
Section 7-6. - Chief Financial Officer .............................................................12
Section 7-7. - Secretary .................................................................................12
Section 7-8. - Administrators ..........................................................................12

VIII.  COMMITTEES AND ADVISORY BOARDS ........................................13
Section 8-1. - General ....................................................................................13
Section 8-2. - Executive Committee ...............................................................13
    A.   Composition ...............................................................................13
    B.   Responsibilities and Authority...................................................13
    C.   Accountability ............................................................................14
Section 8-3. - Planning and Finance Committee .............................................14
    A.   Composition ...............................................................................14
    B.   Responsibilities and Authority...................................................14
    C.   Accountability ............................................................................15
Section 8-4. - Medical Policy Committee ........................................................16
    A.   Composition ...............................................................................16
    B.   Responsibilities and Authority...................................................16
    C.   Accountability ............................................................................16
Section 8-5 - Medical Affairs Committees ......................................................17
    A.   Purposes ...................................................................................17
    B.   Composition ...............................................................................17
    C.   Responsibilities .........................................................................18
    D.   Authority ....................................................................................19
    E.   Accountability ............................................................................19
Section 8-6. - Physician Strategy Committee ..................................................20
    A.   Composition ...............................................................................20
    B.   Responsibilities and Authority...................................................20
    C.   Accountability ............................................................................21
Section 8-7. - Governance/Nominating Committee ..........................................21
    A.   Composition ...............................................................................21
    B.   Responsibilities and Authority...................................................21
    C.   Accountability ............................................................................22
Section 8-8. - Community Advisory Boards......................................................22
    A.   Purpose.....................................................................................22
    B.   Composition ...............................................................................23
    C.   Responsibilities and Authority...................................................23
Section 8-9. - Adult Day Health Center ("ADHC") Advisory Board ...................24
    A.   Purposes ...................................................................................24
    B.   Composition ...............................................................................24
    C.   Responsibilities and Authorities ...............................................24

Subp 00430

        D.   Accountability.................................................................24
   Section 8-10. - Ad Hoc Committees .....................................................25
        A.   Composition...........................................................25
        B.   Responsibilities and Authority.............................25
        C.   Accountability........................................................25

IX.  PROVISION OF MEDICAL, DENTAL AND PODIATRIC CARE..................25
   Section 9-1. - Responsibility for Medical Care.......................................25
   Section 9-2. - Medical Staff Organization .............................................27
        A.   Purposes.................................................................27
        B.   Functions................................................................27
        C.   Officials..................................................................27
   Section 9-3. - Bylaws for the Medical Staff............................................28
        A.   Purpose of Bylaws .................................................28
        B.   Writing of Bylaws .................................................28
        C.   Approval of Bylaws ...............................................28
   Section 9-4. - Hearing and Appeals ......................................................29

X.  RECORDS, REPORTS, AND INSPECTION RIGHTS ............................29
   Section 10-1. - Maintenance of Articles and Bylaws..............................29
   Section 10-2. - Maintenance of Other Corporation Records ...................29
   Section 10-3. - Inspection ....................................................................29
   Section 10-4. - Annual Report ..............................................................29

XI.  EXECUTION OF DOCUMENTS............................................................30

XII.  TRANSACTIONS AND ACTIVITIES REQUIRING APPROVAL OF THE
    GENERAL MEMBER.........................................................................30
   Section 12-1. - Matters Requiring Approval...........................................30
   Section 12-2. - Other Major Activities ..................................................31
   Section 12-3. - Approvals .....................................................................32
   Section 12-4. - Other Actions Requiring Approval of the General Member....................32
   Section 12-5. - Exercise of Authority ....................................................32

XIII.  AUXILIARIES AND FUNDRAISING FOUNDATIONS .............................32
   Section 13-1. - Establishment ...............................................................32
   Section 13-2. - Board Approval .............................................................33

XIV.  INDEMNIFICATION..........................................................................33

XV.  AMENDMENTS.................................................................................33

Exhibit 1 - Equity Cash Transfer Policy

Subp 00431

BYLAWS OF
SUTTER HEALTH SACRAMENTO SIERRA REGION

## I. NAME AND PRINCIPAL OFFICE

The name of the corporation shall be as listed in the Articles of Incorporation, namely, Sutter Health Sacramento Sierra Region, a nonprofit public benefit corporation organized under the laws of the State of California.

The principal office and place of business of the corporation shall be located in or near the City of Sacramento, Sacramento County, California.

## II. PURPOSES

The purposes of this Corporation are:

A.    To establish and maintain an institution or institutions with permanent facilities that include inpatient beds and medical services to provide diagnosis and treatment for patients and associated services, (such as, but not limited to, outpatient care) in a manner which assures high quality and at the same time assures that the safety and interests of patients take precedence over all other concerns.

B.    To carry out any educational activities related to rendering care to the sick and injured, or to the promotion of health, that in the opinion of the Board of Trustees may be justified by the facilities, personnel, funds or other requirements that are or can be made available.

C.    To participate, so far as circumstances may warrant, in any activity directed toward the promotion and maintenance of health and the prevention of illness, and to continually seek innovative means to improve the delivery of health care to the community served.

D.    To promote and carry out scientific research related to the care of the sick and injured insofar as, in the opinion of the Board of Trustees, such research can be carried on with available resources in, or in connection with, the hospital or other healthcare activities.

E.    To contribute to the growth, development and financial strength of Sutter Health.

Subp 00432

## III. MEMBERSHIP

### Section 3-1. - General Member.

There shall be one general member of this Corporation who shall be Sutter Health, a California nonprofit public benefit corporation (the "General Member"). The General Member, and only the General Member, shall be entitled to exercise fully all rights and privileges of members of nonprofit corporations under the California Nonprofit Public Benefit Corporation Law, and all other applicable laws. The rights and powers of the General Member shall also include, without limitation, the following: the limitation on liabilities described in Section 3-4 of these Bylaws; the rights and powers to appoint (and remove) the appointed members of the Board of this Corporation, subject to Section 12-4 of these Bylaws; and the exercise of all of the rights and powers set forth in Article XII of these Bylaws. The General Member may not be expelled or suspended as the General Member without its consent.

### Section 3-2. - Transfer of Membership.

The General Member may not transfer its membership or any rights arising therefrom.

### Section 3-3. - Exercise of Membership Rights.

The General Member of this Corporation shall exercise its membership rights through its own Board of Directors. Subject to the provisions of the General Member's own bylaws, and except as otherwise provided in these Bylaws where a super-majority vote of the Board of Directors of the General Member is required, the Board of Directors of the General Member may, by resolution, authorize a person or committee of persons to exercise its vote on any matter to come before the membership of this Corporation. In addition, the General Member may exercise its membership rights at any regular or special meeting of the Board of Directors of the General Member. The functions required by law or these Bylaws to be performed at the annual membership meeting or any regular or special meeting of the members of this Corporation may be performed at any regular or special meeting of the General Member's own Board of Directors.

### Section 3-4. - Liabilities and Assessments.

The General Member, as such, shall not be liable for the debts of this Corporation. The Board of this Corporation shall have no power to levy and collect assessments on the General Member. The provisions of this paragraph cannot be amended in any manner.

## IV. SYSTEM AFFILIATION

### Section 4-1. - Facilities Operated by Corporation.

This Corporation, through these Bylaws, shall operate the following health facilities: Sutter General Hospital (currently located at 28th & L Streets, Sacramento), Sutter Memorial Hospital (currently located at 52nd & F Streets, Sacramento), Sutter Center for Psychiatry

Subp 00433

(currently located at 7700 Folsom Boulevard, Sacramento), Sutter Auburn Faith Hospital (currently located at 11815 Education Street, Auburn), Sutter Davis Hospital (currently located at 2000 Sutter Place, Davis), Sutter Roseville Medical Center (currently located at One Medical Plaza, Roseville), Sutter Oaks Nursing Center - Midtown (currently located at 2600 L Street, Sacramento), and Sutter SeniorCare (currently located at both 1234 U Street and 7000 Franklin Boulevard, Sacramento).

Unless otherwise specifically stated, references throughout these Bylaws to a "hospital" or "hospitals" shall mean Sutter General and Sutter Memorial Hospital, Sutter Center for Psychiatry, Sutter Auburn Faith Hospital, Sutter Davis Hospital, Sutter Roseville Medical Center and any other facility licensed as an acute care hospital and operated by the Corporation. References to the "Medical Staffs" shall mean the medical staffs at Sutter General Hospital and Sutter Memorial Hospital, and Sutter Center for Psychiatry (known collectively as the Sutter Medical Center, Sacramento Medical Staff), Sutter Auburn Faith Hospital, Sutter Davis Hospital, Sutter Roseville Medical Center and any other facility licensed as an acute care hospital and operated by the Corporation. In addition to operating the hospitals and facilities listed above, the Corporation may own, in whole or in part, or operate other healthcare facilities and services from time to time, as the Board of Trustees deems appropriate. Unless otherwise specifically stated, references throughout these Bylaws to "facilities" shall mean the hospitals and such other facilities then owned and operated by the Corporation.

## Section 4-2. - Affiliated Status.

This Corporation is one of several affiliated corporations that comprise an integrated healthcare system ("System").

## Section 4-3. - Participation in Activities of the General Member.

The Board of this Corporation shall submit nominees to the General Member in order to enable the General Member to appoint members of this Corporation's Board or officers of this Corporation to serve on the General Member's corporate Board of Trustees and/or its Board committees as appropriate to ensure the General Member's continued qualification as a supporting organization under Section 509 of the Internal Revenue Code of 1986, as amended from time to time, or successor provisions.

## Section 4-4. - Cash Concentration.

Subject to the provisions of Section 4-8 of these Bylaws, the Corporation shall participate in the Cash Concentration and Controlled Disbursement Program prescribed by the General Member and in effect from time to time.

## Section 4-5. - Equity Cash Transfer Policy.

Subject to the provisions of Section 4-8 of these Bylaws, the terms of the Equity Cash Transfer Policy contained in Exhibit 1 to the Bylaws of this Corporation are incorporated into and made part of these Bylaws. Neither donor originated funds nor the earnings therefrom shall be subject to the Equity Cash Transfer Policy.

Subp 00434

Section 4-6. - Payment of Allocation Fee.

Subject to the provisions of Section 4-8 of these Bylaws, this Corporation shall pay the allocation fees necessary to maintain the operation of the General Member.

Section 4-7. - Cost of Capital Allocation Policy.

Subject to the provisions of Section 4-8 of these Bylaws, the Corporation shall participate in the Cost of Capital Allocation Policy prescribed by the General Member and in effect from time to time.

Section 4-8. - Effect of Policies.

This Corporation's obligations under Sections 4-4 through 4-7 and the policies described therein shall be subject to all agreements with and obligations to third parties (including without limitation bond indentures) to which this Corporation is a party or is bound at the time this provision is adopted or which are otherwise approved by the General Member after the adoption of this provision.

Section 4-9. - Policies Required of Affiliated Entities.

Except for tax-exempt entities which are primarily fundraising foundations, this Corporation shall prescribe the policies described in Sections 4-4 through 4-7 to the tax-exempt entities which this Corporation owns or controls or which this Corporation is a member. As to those entities, the policies shall be subject to all agreements with and obligations to third parties, Healthcare Districts and any other member of the affiliated entity (including without limitation bond indentures) to which the entity is a party or is bound at the time this provision is adopted or which are otherwise approved by the General Member after the adoption of this provision.

Section 4-10.  Compliance Program.

Corporation shall adopt a Compliance Program consistent with the Sutter Health Compliance Program Plan which shall include the following:

A.    All Board Members shall receive Compliance training consistent with the Sutter Health Compliance Program Plan.

B.    The Board shall have oversight of and ultimate responsibility for an effective Compliance Program including adoption of related compliance policies.

C.    The Board or a Committee of the Board shall receive and review routine and special Compliance reports on a regular basis.

D.    The Board shall delegate to Corporation's Chief Executive Officer responsibility to implement Compliance Program in accordance with Sutter Health Compliance Program Plan.

Subp 00435

## V. TRUSTEES

### Section 5-1. - Membership.

A. The Board of Trustees (hereinafter sometimes referred to as "Board") shall consist of between 13 and 17 voting members. Individual Board Members may satisfy more than one of the composition categories, below. The composition of the Board of Trustees shall be as follows:

  i. Three physicians, one of whom serves as the Chief of the Medical Staff at one of the hospitals at the time of appointment (each a "Physician Trustee"). The Physician Trustee who is a Chief of Staff may serve only as long as he/she is a Chief of Staff and will be replaced upon the end of the term as Chief of Staff. (The Chiefs of the Medical Staffs of the remaining hospitals may attend Board meetings as participating guests who may submit issues for consideration.)

  ii. Four community representatives, each of which has a residence in one of the following hospitals' service areas: (a) Sutter Davis Hospital, (b) Sutter Auburn Faith Hospital, (c) Sutter Roseville Medical Center, and (d) Sutter General and Sutter Memorial Hospitals ("Community Representatives").

  iii. Seven individuals who shall have the breadth of experience, appropriateness of skills, and the willingness and ability to participate effectively in fulfilling the Board's responsibilities. Membership on the Board should reflect a diversity of community interest and the communities served, which is in keeping with the broad purposes of the Corporation.

  iv. Two representatives of Sutter Health.

  v. The Chief Executive Officer of the Corporation.

B. Not more than 49 percent of the persons serving as voting members of the Board of Trustees at any time may be interested persons. An interested person is (1) any person being compensated by the Corporation for services rendered to it within the previous 12 months, whether as a full-time or part-time employee, independent contractor, or otherwise, excluding any reasonable compensation paid to a Trustee as Trustee; and (2) any brother, sister, ancestor, descendant, spouse, brother-in-law, mother-in-law, or father-in-law of any such person. However, any violation of the provisions of this paragraph shall not affect the validity or enforceability of any transaction entered into by the Corporation.

C. The Chief Executive Officer of the Corporation shall serve as an *ex officio* voting member. All other members shall be elected or appointed as hereafter set forth.

Subp 00436

The President and Chief Executive Officer of the General Member may attend any Board meeting.

D.   Elected or appointed members of the Board of Trustees shall be chosen for their ability to contribute to and support the objectives of the Corporation. Membership on the Board should reflect a breadth of diversity of community interests that is in keeping with the broad role of the Corporation and its facilities in the community.

E.   At the annual membership meeting, in addition to whatever other business may be conducted, the General Member shall elect replacements for members of the Board of Trustees of this Corporation whose terms will expire prior to the next annual meeting of the membership. Trustees shall be elected by vote of the General Member from a slate of nominees selected as described at Section 5-5 of these Bylaws.

F.   When a Trustee is elected for the first time to the Board of Trustees, (including appointments to fill a vacancy), that Trustee shall hold office for an initial one-year term. Prior to submitting the slate of Trustee candidates for the succeeding year, the Governance/Nominating Committee shall confer with the Trustee nearing the end of such initial term and evaluate the Board's and the Trustee's desire to continue the appointment for the remaining two years of the three-year term. Except as otherwise provided herein, a Trustee shall hold office for a term of three years or until his/her successor has been elected or appointed. Trustees other than *ex officio* Trustees may not serve more than three consecutive three-year terms on the board. Notwithstanding the above limitation on time of service, each Trustee may hold office until his/her successor is appointed.

G.   Trustees' terms of office shall be staggered so that approximately one-third of the Trustees' terms expire each year.

H.   The Board of Trustees shall have authority to appoint honorary Trustees who shall serve without vote, which appointments shall be limited to those individuals who have rendered outstanding service to the Corporation. Honorary Trustees may attend Board meetings by invitation, but shall not be eligible for compensation.

I.   Vacancies may be created by resignation, removal, death or disability of a Trustee. Removal may be effected by the General Member pursuant to Section 12-4. Vacancies shall be filled in accordance with Section 12-4 by the nomination and election procedure described in Section 5-5.

Section 5-2. - Powers and Responsibilities.

A.   Except as otherwise provided in these Bylaws, the Board of Trustees, acting as a Board, shall have the full authority for the operation, functions, business and governance of the Corporation in accordance with the articles of incorporation and shall have the power and authority to do and perform, or cause to have performed,

Subp 00437

all acts within the limits of the law and not inconsistent with the articles of incorporation; these Bylaws, and any Systemwide policies adopted by the General Member. The authority of the Board shall be exercised only through Board action or any official delegation expressly prescribed by the Board. The right to rescind any delegation at any time is retained by the Board.

B.   Trustees shall promulgate policies, including but not limited to the following policies, whereby:

   i.    criteria for the selection of Trustees are prepared and adopted;

   ii.   formal programs for the orientation and continuing education of Trustees are prepared and implemented;

   iii.  conflict of interest policies are prepared as required by Section 5-4.

All such policies shall be consistent with any Systemwide policies adopted by the General Member.

C.   Other specific responsibilities of the Trustees shall be to:

   i.    conduct the business of the Corporation;

   ii.   annually develop operating and capital budgets in accordance with guidelines established by the General Member;

   iii.  develop a strategic plan, including prioritizing facility initiatives, in accordance with guidelines established by the General Member;

   iv.   approve capital expenditures outside of approved capital budgets, to a limit specified by the General Member;

   v.    develop and recommend corporate objectives;

   vi.   develop and implement a regional community benefit plan;

   vii.  develop major operational and program plans for the facilities;

   viii. select and appoint qualified medical staffs and maintain a liaison therewith;

   ix.   carry out quality assessment of healthcare activities including all aspects of patient care evaluation in accordance with guidelines established by the General Member's Systemwide Quality Review Committee;

Subp 00438

    x.    approve (as the Board in its discretion determines necessary) medical staff decisions delegated to the Medical Policy Committee and the Medical Affairs Committees;

    xi.    along with the President and Chief Executive Officer of the General Member, monitor the performance of the Chief Executive Officer of this Corporation;

    xii.    oversee philanthropic efforts of auxiliaries, fundraising foundations and related organizations; and

    xiii.    arrange for periodic review of the Board's own performance.

## Section 5-3. - Compensation.

The Board may provide for reasonable compensation of Trustees.  In addition, Trustees shall be reimbursed for all reasonable out-of-pocket expenses incurred in attending meetings and carrying out duties and functions directly related to Corporation business.  Trustee compensation and expense reimbursement shall be made in accordance with the policies of the General Member or otherwise approved by the General Member.

## Section 5-4. - Conflict of Interest.

The Board shall promulgate written policies regarding conflict of interest related to its own members, salaried persons, and members of Medical Staffs.  Such policies shall not be inconsistent with the standards of conduct set forth in Sections 5230 through 5239 of the California Corporations Code, or successor provisions.  Such policies shall ensure full disclosure of financial interests and transactions where conflict of interest is a possibility, and shall ensure the avoidance of potential conflict of interest in choosing new Trustees.  Such policies shall impose upon each Trustee the responsibility to be alert to possible conflict of interest of himself/herself or of other Trustees, and shall require that each Trustee declare his/her absence of conflict of interest on a declaration form provided for that purpose and disqualify himself/herself from making a decision where he/she has a conflict of interest.

## Section 5-5. - Nominations.

Nominations of Trustees, including but not limited to nominations for full terms, and nominations to fill vacancies created by resignation, removal, or death occurring during a term shall be approved by the General Member.  The slate of nominees shall include, but need not be limited to, the nominees proposed by this Corporation.  This Corporation's nominees shall be selected by the Board, upon recommendation of this Corporation's Governance/Nominating Committee, as described at Section 8-7 of these Bylaws.

Subp 00439

## VI. MEETINGS OF THE BOARD

### Section 6-1. - Regular Meetings.

Regular meetings of the Board of Trustees shall be held at least quarterly at times and dates which the Board shall determine.

### Section 6-2. - Special Meetings.

Special Meetings of the Board of Trustees may be called at any time on the order of the Chair, on the order of five Trustees, or by the General Member.

### Section 6-3. - Annual Organizational Meeting.

Annually, in December of each year, the Board shall hold an Annual Organizational Meeting for the purpose of selecting the officers of the Corporation, two members of the Governance/Nominating Committee, and the members and chairs of committees. Nominees shall be selected by this Corporation's Governance/Nominating Committee, as described at Section 8-7 of these Bylaws.

### Section 6-4. - Place of Meetings.

All regular meetings of the Board of Trustees, except as herein provided otherwise, shall be held at the place of business of the Corporation or such other place as the Chair or the Trustees requesting such a meeting may designate.

### Section 6-5. - Notice.

Special meetings of the Board of Trustees shall be held upon four days' notice to each Trustee by first-class mail or 48 hours' notice to each Trustee delivered personally or by telephone or facsimile transmission. The attendance of a Trustee at any meeting shall constitute a waiver of notice of the meeting, except where a Trustee attends a meeting only for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened.

### Section 6-6. - Quorum.

A majority of the whole number of Trustees presently serving and empowered to vote shall constitute a quorum for the transaction of business. However, a majority of those present at the time and place of any meeting, although less than a quorum, may adjourn to the same from time to time or from day to day, without further notice, until a quorum shall attend, and when a quorum shall attend, any business shall be transacted which might have been transacted at the meeting had the same been held on the day on which the same was originally appointed or called.

Subp 00440

Section 6-7. - Manner of Acting.

The act of a majority of Trustees empowered to vote and present at a meeting at which a quorum is present shall be the act of the Board of Trustees, unless the act of a greater number is required by law or by these Bylaws.

Section 6-8. - Presiding Officer.

The Chair, or in his/her absence, the Vice Chair, or in the absence of both, a chair selected by the Trustees present, shall call the meeting to order and shall preside.

Section 6-9. - Action in Lieu of Meeting.

Any action required or permitted to be taken by the Board of Trustees may be taken without a meeting, if all Trustees shall individually or collectively consent in writing to such action. Such written consent or consents shall be filed with the minutes of proceedings of the Board. Such action by written consent shall have the same force and effect as the unanimous vote of the Trustees.

Section 6-10. - Telephonic Meetings.

Trustees may participate in a meeting through use of a conference telephone or similar communications equipment, so long as all Trustees participating in such meeting can hear one another. Participation in a meeting pursuant to this paragraph constitutes presence in person at such meeting.

## VII. OFFICERS/ADMINISTRATORS

Section 7-1. - General.

The officers of the Corporation shall be a Chair, a Vice Chair, a Chief Executive Officer, a Chief Financial Officer, a Secretary, and such other officers as the Board of Trustees may authorize. Offices may be held by the same person except that neither the Chief Financial Officer nor the Secretary may serve concurrently as Chair or as Chief Executive Officer.

Section 7-2. - Qualification, Election and Term of Office.

A.     The Chair, Vice Chair, and Secretary shall be elected by the Board from among its own membership at the Annual Organizational Meeting of the Board. These officers shall serve for one-year terms or until successors have been elected, but must be elected each year. The Chair may serve no more than three consecutive one-year terms. Officers serve at the pleasure of the Board and any officer may be removed as an officer without cause by a majority vote of the Trustees. Such removal shall not affect the officer's status as a Trustee.

Subp 00441

B.     The Chief Executive Officer shall be chosen by the Board of Trustees, in accordance with Section 7-5A of these Bylaws.

C.     The Chief Financial Officer shall be selected by the Chief Executive Officer.

## Section 7-3. - Chair.

The Chair shall preside at all meetings of the Board of Trustees and shall be an *ex officio* member of all standing committees, with vote. He/she shall perform such duties as shall be assigned to him/her from time to time by the Board of Trustees. He/she may delegate any of his/her powers to the Vice Chair of the Corporation.

## Section 7-4. - Vice Chair.

The Vice Chair, in the absence or inability of the Chair to act, shall have the same powers and duties as the Chair and shall have in addition any powers and duties that the Chair from time to time delegates to him/her. He/she shall have such other powers and perform such other duties as may be assigned to him/her by the Board of Trustees. The person chosen for Vice Chair should be chosen for his/her potential to serve as Chair, although no such progression is implied.

## Section 7-5. - Chief Executive Officer.

A.     Appointment, Compensation and Removal.

The President and Chief Executive Officer of the General Member shall screen candidates when the Chief Executive Officer of this Corporation is to be hired and shall present finalists to the Board of this Corporation. The Chief Executive Officer of this Corporation shall be an employee of the General Member. The Executive Committee functioning as the compensation committee shall meet with and provide an evaluation of the Chief Executive Officer and shall make compensation recommendations, based on an agreed upon salary system and survey process, to the President and Chief Executive Officer of the General Member, or his or her designee, who shall make the final determination. The Board of this Corporation shall also periodically provide an evaluation of the Chief Executive Officer to the President and Chief Executive Officer of the General Member. The Chief Executive Officer shall serve at the pleasure of the General Member, acting through its President and Chief Executive Officer, and the Board of this Corporation, each of which, with the approval of the other, may terminate the services of the Chief Executive Officer.

B.     Responsibilities and Authority.

The Chief Executive Officer shall be the general manager of this Corporation. The Chief Executive Officer shall be given the necessary authority and responsibility to operate this Corporation in all of its activities, including without limitation, quality of services, cost effectiveness and economic performance and implementation of System strategies, subject to the following: With respect to

Subp 00442

policy development, program planning and community relations, the Chief Executive Officer shall be subject to such policies as may be adopted and such orders as may be issued by the Board of this Corporation or by any of its committees to which the Board has delegated the power for such action; with respect to program execution and overall management performance, the Chief Executive Officer shall be subject to the authority of and shall report to the Board; with respect to strategies of the local delivery system operated by this Corporation and overall operations of that system, the Chief Executive Officer shall be responsible to the President and Chief Executive Officer of the General Member. The Chief Executive Officer shall also periodically report to the President and Chief Executive Officer of the General Member or his/her designee on the affairs of this Corporation. The Chief Executive Officer shall act as the duly authorized representative of the Board of this Corporation in all matters in which the Board has not formally designated some other person to so act.

Section 7-6. - Chief Financial Officer.

The Chief Financial Officer, acting with the Executive and Planning and Finance Committees, shall ensure that a true and accurate accounting of the financial transactions of the Corporation is made, that reports of such transactions are presented to the Board or an appropriate committee of the Board, and that all accounts payable are processed in such manner as the Board (or appropriate committee) may designate.

Section 7-7. - Secretary.

The Secretary shall be responsible to cause appropriate notices and agendas to be prepared and sent for all meetings of the Board of Trustees, shall act as custodian of all records and reports, shall be responsible to cause the keeping and reporting of adequate records of all meetings of the Board of Trustees, and shall certify to the correctness of any corporate bylaws or resolutions. The Board may appoint such Assistant Secretaries as deemed appropriate, each of whom shall have authority to sign documents on behalf of and in the absence or unavailability of the Secretary, subject to such limitations as are imposed by the Board.

Section 7-8. - Administrators.

The Chief Executive Officer of the Corporation (or his or her designee) shall select and appoint the Administrators. Each Administrator shall be qualified both by education and experience, and shall support the objectives of the Corporation.

Each Administrator shall be the chief administrative officer of his/her respective operation and shall be its direct operating representative in the management of that operation. Each Administrator shall be given the necessary authority and responsibility subject to the following: With respect to policy development, program planning and community relations, the Administrator shall be subject to such policies as may be adopted and such orders as may be issued by the General Member, the Board of Trustees or by any of its committees to which the Board has delegated the power for such action; and with respect to program execution and overall management performance, the Administrator shall be subject to the authority of and shall

Subp 00443

report to the Chief Executive Officer of the Corporation or his/her designee. Notwithstanding the foregoing, all decisions regarding the non-exempt (non supervisory) employees' wages, hours and conditions of employment (except for Systemwide employee benefit plans or policies) for an operation shall be made by that operation's Administrator. He/she shall act as the duly authorized representative of the Board of Trustees in all matters regarding his/her respective operation in which the Board has not formally designated some other person to so act.

## VIII. COMMITTEES AND ADVISORY BOARDS

### Section 8-1. - General.

Except as specified in these Bylaws or in any resolution creating an additional committee, the members and chair of each committee shall be elected by the Board of Trustees at the Annual Organizational Meeting of the Board. The chair and all other members of each committee shall hold office for one year, but in any event until their successors are elected. Except as specified for the Executive Committee, the Chair of the Board shall have the power to fill any vacancies that occur on the committees for the remainder of the year.

Except for the Executive Committee, persons may be appointed to committees who are not Trustees or employees or the Corporation. Such persons may serve as officers of their committees. All committees deliberating on issues affecting the discharge of Medical Staff responsibilities shall include, in at least an advisory and consulting capacity, a physician member of the Medical Staff.

The Chief Executive Officer of the Corporation shall be a voting, *ex officio* member of each committee.

The provisions of Sections 6-5, 6-6, 6-7 and 6-9 of these Bylaws, regarding notice, quorum, manner of acting, and action in lieu of a meeting, shall apply to committees of the Board.

All committees of the Board shall keep minutes of their meetings, which shall be filed with the Secretary of the Board.

### Section 8-2. - Executive Committee.

A.    Composition.

The Executive Committee shall consist of the Chair of the Board who shall serve as chair of the committee, the Vice Chair, the Secretary, the Chair of the Planning and Finance Committee, and the Chief Executive Officer of the Corporation.

B.    Responsibilities and Authority.

The Executive Committee shall have power to transact all regular business of the Corporation during the period between meetings of the Board, subject to any prior

DEC_SHSSR_Bylaws_8-04.doc          -13-

Subp 00444

limitations imposed by the Board and subject to the limitations of Section 5212(a) of the California Corporations Code, or any successor provision. The committee shall meet as often as necessary, upon the call of the Chair.

C.    Accountability.

The Executive Committee shall report to each regular Board meeting the results of actions that it has taken within the authority delegated to it, so that the Board maintains accountability from the Executive Committee for its actions. Minutes of all meetings of the Executive Committee shall be distributed to all Trustees for information and any necessary actions.

Section 8-3. - Planning and Finance Committee.

A.    Composition.

The Planning and Finance Committee shall consist of at least seven members. The Chair of the Planning and Finance Committee shall be a Trustee selected by the Board. There shall be between one and four members who are physicians, at least one of whom shall be a Trustee. There shall be four or more members who are Community Representatives, at least one of whom shall be a Trustee. These committee members shall be appointed by the Board in consultation with the Planning and Finance Committee Chair. The Chief Executive Officer shall be an *ex officio*, voting member of the Committee. There shall be one member who is a nursing executive who is selected by the Chief Executive Officer. At its discretion, the committee may allow guests to attend its meetings, on either a standing or ad hoc basis. Guests shall have no participatory or other rights of the members.

B.    Responsibilities and Authority.

i.    Financial Responsibilities.

This committee shall be responsible for overseeing the management of the Corporation's assets and ensuring that financial records are maintained in accordance with Generally Accepted Accounting Principles. It shall annually see that operating and capital budgets are prepared and submitted to the Board and the General Member in a timely fashion. The Planning and Finance Committee shall examine the period financial reports and receive explanations regarding variations from the Budget. The committee shall also review the results of all outside audits and recommend action thereon to the Board.

Subp 00445

ii.  <u>Planning Responsibilities</u>.

The committee's duties shall additionally be to:

a.  Assist in the preparation and modification of long-range and short-range development plans developed with participation of administration, the Community Advisory Boards, the Medical Staffs, and nursing and other departments, to assure that the Corporation's health care program is attuned to meeting the health needs of the community, including periodic reexamination of the Corporation's purposes, goals, policies and current programs for delivery of health services;

b.  Solicit and receive input from the general public to:

(1)  Identify areas of health care service needs within the service areas of the Corporation's respective facilities.

(2)  Propose ways in which the Corporation might respond to those needs.

c.  Review the feasibility of, and availability of resources for, corporate projects, acts and undertakings referred to it by the Board of Trustees and make recommendations thereon to the Board; and

d.  Receive and evaluate reports from the Community Advisory Boards and ensure compliance applicable California and federal laws.

iii.  This Committee shall perform such other duties related to fiscal and planning matters as may be assigned to it by the Board or its Chair.

The committee shall exercise its responsibilities and authority in a manner consistent with any policies or guidelines established by the General Member.

The committee shall meet as often as necessary, but at least quarterly.

C.  <u>Accountability</u>.

This committee shall report at regular meetings of the Board or the Executive Committee its findings on reports of the fiscal operation. It shall present annually to the Board a report on the budgets and such other reports as required by law.

Subp 00446

Section 8-4. - Medical Policy Committee.

For purposes of this Section, Sutter General and Sutter Memorial Hospitals and Sutter Center for Psychiatry shall be treated as one "hospital."

A.    Composition.

The Medical Policy Committee shall be chaired by a Trustee and consist of at least thirteen voting members and non-voting members as designated by the Board, including: (1) at least four voting Trustees, each of whom shall be a member of a Medical Affairs Committee, (2) the four Chiefs of Staff of the hospitals, (3) the Medical Director of the Sutter aligned network, (4) four nursing executives (who shall be selected by the Chief Executive Officer), and (5) the Chief Executive Officer of the Corporation or his/her designee, as an *ex officio* member.

B.    Responsibilities and Authority.

This Committee shall be responsible for:

i.    Overseeing the development of the Corporation policy for Quality Management, Continuous Quality Improvement and medical staff credentialing (including a policy for resolving credentialing decision discrepancies between hospitals).

ii.    Overseeing the development of quality protocols for the Corporation for final approval by the Board.

iii.    Overseeing the development of a program for credentialing, medical staff privileges, Quality Management and profiling that extends beyond the acute-care hospital setting to such areas as ambulatory and continuing care, for final approval by the Board.

iv.    Assisting in creating and maintaining a formal channel of communication between the Board and the Medical Staffs and other care providers.

v.    Directing and participating in the activities of each hospital's Medical Affairs Committee.

vi.    Reviewing medical staff policies, bylaws and credentialing issues for the hospitals, and having input into these issues when necessary.

vii.    The oversight of all research conducted at the Corporation's facilities or approved by Sutter Institute for Medical Research or the Institutional Review Committee for the Sutter Health Sacramento Sierra Region Market Service Area.

Subp 00447

The Committee shall meet at a minimum at least six (6) times a year.

C.     Accountability.

This Committee shall at all times be accountable to the Board of Trustees and shall fulfill that accountability by:

i.     Submitting periodically a written report and recommendations, where appropriate, to the Board regarding:

a.     Proposed medical staff actions to be approved by the Board;

b.     Proposed policies and protocols to be approved by the Board;

c.     Any other matters considered in need of Board deliberation.

ii.     Reporting to the Board or the Executive Committee whenever requested by the Board.

Section 8-5 - Medical Affairs Committees.

Each hospital (treating Sutter General and Sutter Memorial Hospital and the Sutter Center for Psychiatry as one "hospital" for purposes of this Section) shall have a Medical Affairs Committee.

A.     Purposes.

The purposes of these committees are:

i.     To assist the Board and Medical Policy Committee to discharge its corporate responsibility for the quality of medical care by establishing, maintaining, and improving means of holding the Medical Staffs accountable for all their activities within the Corporation's facilities at which members of the Medical Staffs hold privileges from the Corporation.

ii.     To give support, guidance, and counsel to the Chief Executive Officer and Medical Staff officials in carrying out their supervisory roles with respect to Medical Staff functions and activities.

B.     Composition.

The Chair of each committee shall be selected by the Board. If the Chair is a non-Trustee, then a Trustee from the committee shall be selected to serve as the Medical Affairs Committee's representative on the Medical Policy Committee. At least two voting members of the Committee shall be physicians and, in addition, at least one voting member shall be a Trustee. The number and

Subp 00448

composition of each Medical Affairs Committee shall otherwise be determined by the Board after consultation with each hospital's Chief of Staff and Administrator. Additional suggested members of each committee include: (1) each hospital's Chief of Staff, (2) a nurse executive from each hospital, and (3) a member of the Community Advisory Board of the applicable Community for a particular hospital, where feasible and appropriate.

C.    Responsibilities.

Each committee shall, with respect to its hospital:

i.    Advise and make recommendations to the Medical Policy Committee on all Medical Staff matters.

ii.    See that appropriate standards for the screening of all applications to the Medical Staff are established, maintained, and improved as necessary, and monitor compliance with those standards.

iii.    Review and recommend to the Board all applications for appointment and reappointment to the Medical Staff, including privileges to be granted (except applications for temporary appointments and privileges which have been granted by the Administrator or his/her designee).

iv.    Review and recommend to the Medical Policy Committee on all recommendations from the executive committee of the Medical Staff.

v.    Review the recommendations of the Medical Staff fair hearing committees and, based upon the record, make recommendations to the Board of Trustees in accordance with the standards set forth in the Medical Staff Bylaws.

vi.    Conduct Medical Staff appeals in accordance with the Medical Staff Bylaws.

vii.    Receive and review specific reports needed to ascertain if Medical Staff functions are being properly discharged.

viii.    Hold Medical Staff officials accountable for the carrying out of Medical Staff functions of reviewing, analyzing, and evaluating clinical work, and the making of appropriate recommendations in accordance with the findings thereon.

ix.    Hold Medical Staff officials accountable for seeing that all members of the Medical Staff comply with the Medical Staff bylaws, rules and regulations, and all hospital-promulgated policies.

Subp 00449

x.    Determine the extent that the standards and recommendations of the J.C.A.H.O. on medical matters are complied with and make recommendations accordingly.

xi.    Meet on a regular basis and maintain a record of its proceedings.

xii.    Initiate review of Medical Staff Bylaws and Rules and Regulations.

xiii.    Maintain appropriate confidentiality of Medical Staff peer review and Quality Improvement matters.

D.    <u>Authority.</u>

This committee shall have the authority to:

i.    Grant temporary appointments and privileges to Medical Staff applicants, when appropriate and necessary. (Such authority is also vested with the Administrator or his/her designee.)

ii.    Determine and request whatever studies, investigative reports, or statistics concerning Medical Staff activities and functions it deems essential to discharging its responsibilities.

iii.    Reject any reports from the Medical Staff or its officials not considered complete.

iv.    Invite any officer of the Medical Staff, including Department or Service Chiefs, to meet and confer with the Committee.

v.    Approve all documents which the Medical Staff submits to the Medical Policy Committee or the Board for approval.

The authority delegated to these committees shall be exercised in a manner consistent with any provisions for fair procedure, if applicable, afforded each member of the relevant Medical Staff as outlined in the relevant Medical Staff bylaws, and with any guidelines or policies established by the General Member's Systemwide Quality Review Committee.

E.    <u>Accountability.</u>

Each committee shall be at all times accountable to the Board of Trustees and shall fulfill that accountability by:

i.    Submitting regularly a written report and recommendations, where appropriate, to the Medical Policy Committee and/or the Board regarding:

a.    applications to the Medical Staff;

Subp 00450

       b.     studies pertaining to medical care appraisal;

       c.     any matters considered in need of Medical Policy Committee or Board deliberation.

  ii.    Submitting status reports describing studies and reports in progress pertaining to the effectiveness of the applicable Medical Staff carrying out its required surveillance functions.

  iii.   Reporting to the Executive Committee of the Board whenever so requested by the Chair of the Board.

  iv.   Submitting a report on any aspect of its activities whenever so requested by the Board.

  v.    Establishing a mechanism whereby the committee's effectiveness shall be evaluated.

Section 8-6. - Physician Strategy Committee.

A.   Composition.

The Physician Strategy Committee shall consist of at least five and no more than 11 voting members, including at least: (i) two Trustees (to be selected by the Board); (ii) one physician member; (iii) the Corporation's Vice President for Clinical Integration; and (iv) the Chief Executive Officer of the Corporation or his/her designee, as *ex officio* members.  In addition, the Chair of the Physician Strategy Committee shall be a Trustee selected by the Board.

The CEO of the Sutter Medical Foundation/Sutter Physicians Alliance (SMF/SPA), the Medical Director of SMF/SPA, and the CFO of the (SMF/SPA) shall serve as non-voting staff members to the Committee.  The Presidents of the aligned physician organizations shall attend as non-voting members.  Additional voting members of the committee can be appointed by the Board.

B.   Responsibilities and Authority.

This Committee shall be responsible for:

  i.    Overseeing the activities of Sutter Medical Foundation, Sutter Physicians Alliance, Sutter Specialty Services Network and other strategic physician initiatives throughout the area served by Sutter Health Sacramento Sierra Region.

  ii.   Ensuring the proper coordination of all business activities of the Corporation related to the aligned physician organizations by reviewing,

Subp 00451

recommending and approving operating and capital budgets, business plans and management accountabilities.

    iii.    Reviewing physician recruitment strategies, including requests for funding/loan guarantees for final approval by the Board.

    iv.    Reviewing monthly performance reports from Sutter Medical Foundation/Sutter Physicians Alliance.

    v.    Participating in systemwide initiatives related to independent physician organizations by (a) identifying areas of health care service needs; and (b) developing integrated concepts to improve operating and fiscal capabilities for the purpose of making Sutter Health the healthcare system of choice.

    vi.    The Committee shall meet at least quarterly.

C.    <u>Accountability</u>.

This Committee shall at all times be accountable to the Board of Trustees.

In addition, this Committee shall report to the Board or the Executive Committee whenever requested by the Board.

<u>Section 8-7. - Governance/Nominating Committee</u>.

A.    <u>Composition</u>.

The Governance/Nominating Committee shall consist of five members. The membership shall include the current Chair, Vice Chair, and two other Trustees (one of whom shall be a Physician Trustee). In addition, the Chief Executive Officer of the Corporation shall serve as a voting, *ex officio* member of the committee. The Chair or Vice-Chair shall be the chair of this committee.

B.    <u>Responsibilities and Authority</u>.

The duties and responsibilities of the Governance/Nominating Committee shall be:

    i.    Recommend to the Board nominees for membership on the Board of this Corporation (including nominees to fill vacancies created by expiration of a term as well as by resignation, removal, or death);

    ii.    Recommend nominees for the officers of this Corporation, two members of the Governance/Nominating Committee, and the members and chair of the committees to be elected at the Annual Organizational Meeting, as described at Section 6-3 of these Bylaws.

Subp 00452

iii.   Confer with the Trustees nearing the end of an initial one-year term in order to evaluate the Board's and Trustee's desire to continue the appointment for the remaining two years of the three-year term.

iv.   Develop Board orientation/educational programs, ensures trustee development and governance leadership opportunities.

v.    Report to the board the results of the annual board self evaluations with recommendations of specific goals and actions as appropriate.

vi.   Monitor the Trustees' involvement in community relations and strengthens the links to the community.

vii.  Review the bylaws at least every two years and recommends revisions as necessary to ensure compliance with applicable statutes, regulations, and accreditation requirements.

viii. Monitor legislative/public affairs activities on a local, state, and national level, and promotes activities of organization and individual trustees in public affairs, as appropriate.

ix.   Serve as the Corporation's ethics committee and in such capacity monitor the performance of the Corporation's Compliance Program.

C.   Accountability.

The Governance/Nominating Committee shall report to the Board as often as necessary, but at least annually.

Section 8-8. - Community Advisory Boards.

Community Advisory Boards where appropriate shall be created for each county in which the Corporation operates. For Sacramento County, the Sutter Medical Center Foundation's Community Advisory Committee shall perform the functions of the Community Advisory Board. For Yolo County, the Sutter Davis Hospital Foundation's Community Advisory Committee shall perform the functions of the Community Advisory Board.

A.   Purpose.

The purpose of the Community Advisory Boards is to ensure that the Corporation's facilities, caregivers, resource allocation and process of care are responsive to the care delivery and health status needs of the communities served by the Corporation. The Community Advisory Boards shall not have any rights as a Board of Trustees of the Corporation, but shall serve as an advisory committee to the Board.

Subp 00453

B.    Composition.

Each Community Advisory Board shall have no more than sixteen members.
Suggested members for each Community Advisory Board include:

i.    A nonphysician member of a Medical Affairs Committee of an applicable
hospital.

ii.    A Trustee of the Corporation.

iii.    Trustees of the charitable foundation(s) supporting the applicable
hospital(s).

iv.    Initially, individuals who were members of the Boards of Trustees of the
Merging Corporations.

v.    The Administrator(s) in the particular county.

vi.    Community representatives, including but not limited to local physicians,
insurers, major employers in the applicable county, city and county
officials, and public health, housing and volunteer organizations.

vii.    Representatives knowledgeable about continuing care issues.

viii.    "Expert" representatives whose knowledge of community outreach and
local healthcare issues makes them valuable members of the Community
Advisory Board.

The composition of each Community Advisory Board shall be determined by that
Community Advisory Board in consultation with the appropriate Administrator(s),
and the nominees shall be subject to the final approval of the Corporation's Board.
The Chief Executive Officer shall be invited to and have the option of attending
all meetings.

Initially, the members for a particular Community Advisory Board shall be
nominated by a task force appointed by the boards of Trustees of the applicable
Merging Corporations in consultation with the appropriate hospital Administrator.
The slate of nominees shall be approved by the Corporation's Board.

C.    Responsibilities and Authority.

Each Community Advisory Board shall:

i.    Develop Community Benefit Plans for the Corporation, as may be required
by law.

Subp 00454

    ii.    Report quarterly to the Planning and Finance Committee regarding health status measures within that Community Advisory Board's community, and report urgent related concerns on an ad hoc basis.

    iii.    Represent the Corporation in any ongoing efforts within the Community Advisory Board's community to measure and improve the community's health status, and initiate such efforts where appropriate.

    iv.    Provide community input into the regional planning process and strategic planning.

The Community Advisory Boards shall each meet at least quarterly.

### Section 8-9. - Adult Day Health Center ("ADHC") Advisory Board.

A.    Purposes.

The purpose of the ADHC Advisory Board is to comply with Section 78405 of Title 22 of the California Code of Regulations that require the Corporation to establish a special board to which it delegates primary responsibility for supervision of its adult day health care centers.

B.    Composition.

The members of the ADHC Advisory Board shall be selected by the Board of Trustees and shall consist of at least four or more persons, at least fifty percent of whom shall be (1) recipients of the services of the ADHC operated by the Corporation, (2) relatives of such recipients, or (3) representatives of community organizations with particular interest in programs for the elderly.

C.    Responsibilities and Authorities.

The ADHC Advisory Board shall have primary responsibility for supervision of the Corporation's adult day health care centers. The ADHC Advisory Board shall review and recommend to the Board the budget, personnel and subcontractors of the adult day health care centers.

D.    Accountability.

The ADHC Advisory Board shall periodically submit a report to the Board through the Planning and Finance Committee containing the results of actions it has taken within the authority delegated to it and shall report any findings and recommendations. The ADHC Advisory Board shall present annually to the Board a report on the operational and fiscal conduct of the adult day health care centers operated by the Corporation.

Subp 00455

Section 8-10. - Ad Hoc Committees.

    A.    Composition.

        Ad hoc committees may be appointed by the Board for such special purposes as circumstances warrant (for example, to convene a Joint Conference Committee in order to resolve conflicts between the Board, management and Medical Staff). Individuals not on the Board, but having special knowledge or background may be appointed to serve on such committees.

    B.    Responsibilities and Authority.

        Activities of such a committee shall be limited to the accomplishment of those tasks for which it was appointed. The committee shall have no powers except those specifically conferred by the Board of Trustees. As with all committees, management and staff shall provide the resources for ad hoc committees.

    C.    Accountability.

        All ad hoc committees shall report directly to the Executive Committee and to the Board of Trustees. Upon completion of the stated purpose for which it was formed, the committee shall be discharged.


## IX. PROVISION OF MEDICAL, DENTAL AND PODIATRIC CARE

Section 9-1. - Responsibility for Medical Care.

    A.    The Board of Trustees is responsible for the quality of medical, dental, and podiatric care rendered by the Corporation. It shall discharge that responsibility by assuring that the organized Medical Staffs and other practitioners carry out the specific quality control functions in accordance with guidelines established by the General Member, including, without limitation, the following:

        i.    Reviewing, analyzing, and evaluating clinical practice to determine the quality of medical care.

        ii.    Making recommendations to management and the Board for the establishment, maintenance, and continuing improvement and enforcement of professional standards.

        iii.    Reporting regularly as required by the applicable Medical Affairs Committee in Section 8-5 of these Bylaws, on the quality of medical care in terms of professional standards.

        iv.    Recommending the appointment and reappointment of physicians, dentists, and podiatrists to the Medical Staffs and the delineation of their

Subp 00456

clinical privileges.. Other categories of practitioners eligible for Medical Staff membership shall be as set forth in the applicable Medical Staff Bylaws.

v.   Supervising and ensuring:

    a.   compliance with the bylaws, rules, and regulations for the Medical Staffs, and

    b.   carrying out the policies of the hospitals and other facilities concerning medical care.

vi.   Disciplining the members of the applicable Medical Staff or other practitioners for violations of policies of the Corporation, the facilities or the applicable Medical Staff bylaws and rules and regulations, within the limitations of the authority delegated by the Board of Trustees.

vii.   Assisting in identifying community health needs and setting appropriate institutional goals to meet those needs.

viii.   Conducting formally structured ongoing programs of continuing medical education designed to meet the highest professional standards of care.

B.   The Chiefs of Staff of hospitals shall:  (i) be responsible for the effective discharge of functions to be carried out by the applicable Medical Staffs; (ii) have the required authority necessary to carry out their responsibilities and it shall be defined in the bylaws for the applicable Medical Staff; and (iii) be accountable, through the Administrator or his/her designee, to the Board of Trustees, and shall report regularly to the Medical Affairs Committee, the Medical Policy Committee and the Board on the activities of the Medical Executive Committee.

C.   The Board of Trustees shall be responsible for:

i.   making all appointments and reappointments to the Medical Staff and alterations of staff status,

ii.   granting of clinical privileges,

iii.   disciplinary actions, and

iv.   all matters relating to Medical Staff professional competence.

D.   In discharging the aforementioned responsibilities, the Board of Trustees shall:

i.   assure that the safety and interest of the patients take precedence over all other concerns, and

Subp 00457

       ii.      always request and give great weight to (but not be bound by) recommendations from the Medical Staff officials and the executive committees of the Medical Staffs.

E.     The Board of Trustees shall, through the Medical Staff organizations, and the functions assigned to them, maintain systems for:

       i.      the establishment of professional standards and criteria by which to evaluate medical care,

       ii.     the continuing surveillance of professional practice and Medical Staff functions in order to determine the degree to which these professional standards and criteria are being met, and

       iii.    gaining compliance with the predetermined standards and criteria when the systems of surveillance indicate they are not being met.

F.     No delegation to the Medical Staffs shall preclude the Board of Trustees from exercising the authority required to meet its responsibilities under these Bylaws.

**Section 9-2. - Medical Staff Organization.**

A.     <u>Purposes.</u>

The Board of Trustees shall organize, or cause to be organized, Medical Staffs for each hospital comprised of physicians, dentists and podiatrists (and such other categories as may be permitted under the applicable Medical Staff Bylaws) for the following purposes:

       i.      To serve as the primary means for accountability to the Board for the appropriateness of the professional performance and ethical conduct of its members and affiliates;

       ii.     To discharge specific quality control functions designed to ensure the continual upgrading of the quality of medical, dental and podiatric care rendered by the Medical Staffs while at the same time assuring that the safety and interest of the patients shall take precedence over all other concerns;

       iii.    To provide a structure whereby the Medical Staff members can become an integral part of the total organization and participate in the institution's planning, policy setting, and decision making processes.

B.     <u>Functions.</u>

In fulfilling the purposes of the Medical Staff organization, the functions as stated in Section 9-1A of these Bylaws shall be carried out.

Subp 00458

C.    Officials.

Each Medical Staff bylaws shall provide for selection of its officers.

Section 9-3. – Bylaws for the Medical Staff.

A.    Purpose of Bylaws.

There shall be bylaws for each Medical Staff. The bylaws shall state the purpose and responsibilities of each hospital's Medical Staff organization and they shall be in consonance with the purposes and functions of each Medical Staff organization stated herein. The bylaws for each Medical Staff shall provide an organizational framework necessary for the implementation of appropriate quality control programs as dictated by the prescribed responsibilities of the Medical Staff organization. The bylaws shall define relationships, responsibilities, authority, and methods of accountability for each Medical Staff official, department, and committee. The bylaws shall specifically assure that only a member of the Medical Staff with admitting privileges shall admit patients to that facility; that only an appropriately licensed practitioner with clinical privileges shall be directly responsible for a patient's diagnosis and treatment within the area of his/her privileges; that each patient's general medical condition shall be the responsibility of a physician member of the Medical Staff; that each patient admitted to that hospital shall receive a baseline history and physical examination by a physician who is either a member of or approved by the Medical Staff; and that other direct medical care of patients provided by allied health professionals, residents, and medical students shall be under the appropriate degree of supervision by a licensed practitioner with clinical privileges.

B.    Writing of Bylaws.

Each Medical Staff, through its officials and appropriate committees, shall be required to submit bylaws, rules and regulations for the Medical Staff organization in accordance with the requirements for said bylaws as set forth in this Article. The Medical Staff shall periodically review and, as necessary, submit revisions to its bylaws, rules and regulations.

C.    Approval of Bylaws.

All such bylaws, rules and regulations for each Medical Staff shall be approved by the Medical Affairs Committee, as well as the Medical Policy Committee and Board of this Corporation all whose approval shall not be unreasonably withheld before becoming effective. The Board shall not repeal, amend or adopt bylaws for the organization and functioning of each Medical Staff without that Medical Staff's adoption and approval unless failure to do so would be a violation of the law.

Subp 00459

## Section 9-4. - Hearing and Appeals.

The Board of Trustees shall assure that each member of each Medical Staff shall be afforded fair procedure with respect to all appointment and reappointment procedures and the granting, revoking, reducing, or denying Medical Staff privileges. The conditions and steps for affording such fair procedure to the Medical Staff shall be carefully defined in the bylaws for each Medical Staff, and shall include, when appropriate, detailed provisions for hearing and appellate procedures and for notice to the aggrieved practitioner of his/her access to those procedures.

## X. RECORDS, REPORTS, AND INSPECTION RIGHTS

### Section 10-1. - Maintenance of Articles and Bylaws.

The Corporation shall keep at its principal office the original or a copy of the Articles of Incorporation and Bylaws as amended to date.

### Section 10-2. - Maintenance of Other Corporation Records.

The accounting books, records, and minutes of proceedings of the Board of Trustees and any committee(s) of the Board of Trustees shall be kept at such place or places designated by the Board of Trustees, or, in the absence of such designation, at the principal executive office of the Corporation. The minutes shall be kept in written or typed form, and the accounting books and records shall be kept in either written or typed form, or in any other form capable of being converted into written, typed, or printed form.

### Section 10-3. - Inspection.

Except as otherwise limited by law, every Trustee and the General Member shall have the absolute right at any reasonable time to inspect all books, records, and documents of every kind and the physical properties of the Corporation. This inspection by a Trustee or the General Member may be made in person or by an agent or attorney, and the right of inspection includes the right to copy and make extracts of documents.

### Section 10-4. - Annual Report.

The fiscal year of this Corporation shall end on the 31st day of December of each year. The Corporation shall provide to the Trustees, within 120 days after the close of its fiscal year, a report containing the following information in reasonable detail:

A.    The assets and liabilities, including the trust funds, of the Corporation as of the end of the fiscal year.

B.    The principal changes in assets and liabilities, including trust funds, during the fiscal year.

Subp 00460

C.    The revenue or receipts of the Corporation, both unrestricted and restricted to particular purposes, for the fiscal year.

D.    The expenses or disbursements of the Corporation, for both general and restricted purposes, during the fiscal year.

E.    Any information required by California Corporations Code Section 6322, or successor provisions, regarding transactions with interested persons and indemnification's.

F.    The report shall be accompanied by any report by independent accountants, or, if there is no such independent report, a certificate to the effect that the report was prepared without audit.

## XI.  EXECUTION OF DOCUMENTS

The following persons shall be authorized to execute any deeds, mortgages, bonds, contracts, or other instruments which the Board has authorized to be executed:

A.    Any officer or other person duly authorized by resolution of the Board to executed documents; or

B.    In the absence of express authorization by Board resolution, the Chair, Chief Executive Officer, or Vice Chair, and the Secretary or any Assistant Secretary (all subject to such limitations as may be imposed by resolution of the Board).

## XII.  TRANSACTIONS AND ACTIVITIES REQUIRING APPROVAL OF THE GENERAL MEMBER

### Section 12-1. - Matters Requiring Approval.

Notwithstanding anything in these Bylaws to the contrary, neither the Board nor any officer or employee of this Corporation may take any of the following actions, or approve an affiliate taking any of the following actions, without the prior approval of the General Member:

A.    Merger, consolidation, reorganization, or dissolution of this Corporation or any subsidiary or affiliate entity;

B.    Amendment or restatement of the Articles of Incorporation or the Bylaws of this Corporation or any subsidiary or affiliate entity;

C.    Adoption of operating budgets of this Corporation or any subsidiary or affiliate entity, including consolidated or combined budgets of this Corporation and all subsidiary organizations of the Corporation;

Subp 00461

D.  Adoption of capital budgets of this Corporation or any subsidiary or affiliate entity;

E.  Aggregate operating or capital expenditures on an annual basis that exceed approved operating or capital budgets by a specified dollar amount to be determined from time to time by the General Member;

F.  Long-term or material agreements including, but not limited to, borrowings, equity financings, capitalized leases and installment contracts; and purchase, sale, lease, disposition, hypothecation, exchange, gift, pledge, or encumbrance of any asset, real or personal, with a fair market value in excess of a dollar amount to be determined from time to time by the Directors of the General Member, which shall not be less than 10 percent of the total annual capital budget of this Corporation;

G.  Appointment of an independent auditor and hiring of independent counsel except in conflict situations between the General Member and this Corporation or any subsidiary or affiliate entity;

H.  The creation or acquisition of any subsidiary or affiliate entity;

I.  Contracting with an unrelated third party for all or substantially all of the management of the assets or operations of this Corporation or any subsidiary or affiliate entity;

J.  Approval of major new programs and clinical services of this Corporation or any subsidiary or affiliate entity. The General Member shall from time to time define the term "major" in this context;

K.  Approval of strategic plans of this Corporation or any subsidiary or affiliate entity;

L.  Adoption of quality assurance policies not in conformity with policies established by the General Member;

M.  Any transaction between this Corporation, a subsidiary or affiliate and a Trustee of this Corporation or an affiliate of such Trustee.

Section 12-2. - Other Major Activities.

A.  In addition, the General Member shall have the authority, except as otherwise provided by the General Member and after consultation with this Corporation, to require the prior review and approval of those activities of this Corporation or any subsidiary or affiliate entity which the General Member determines to be major activities.

B.  "Major activities" shall be those which the General Member by a vote of not less than two-thirds of its Board of Directors (then in office) has declared major, by

Subp 00462

written notice to this Corporation, delivered personally or transmitted by registered or certified mail, return receipt requested. Such notice shall specifically identify the matter or matters requiring approval of the General Member, and shall refer to this bylaw provision granting such approval rights to the General Member. Notices received pursuant to this section shall be recorded in the minutes of this Corporation and shall be filed with the minutes of this Corporation.

## Section 12-3. - Approvals.

The General Member's approval or disapproval of matters described in Section 12-1 or 12-2 above, shall be recorded in or filed with the minutes of this Corporation.

## Section 12-4. - Other Actions Requiring Approval of the General Member.

A.  Any vacancy occurring on the Board of this Corporation shall be filled by an appointee of the General Member from nominees selected as described in the nomination provision of these Bylaws.

B.  Any non-*ex officio* Trustee or Trustee of this Corporation's Board may be removed from office by the General Member; provided, however, the General Member shall notify this Corporation's Board, and give it an opportunity to respond in the manner and subject to the terms and conditions described herein, prior to any such proposed removal.

## Section 12-5. - Exercise of Authority.

Notwithstanding any provision in these Bylaws to the contrary, and except as otherwise provided in subsection (B) of Section 12-2 of the Bylaws (regarding definition of "major activities"), this Corporation shall not prescribe the manner by which the General Member exercises its authority under these Bylaws, and no present or future provision of these Bylaws shall have such effect. Without limiting the generality of the foregoing, no present or future provision of these Bylaws or other action of this Corporation shall prescribe the required vote of the Board of Trustees of the General Member for the exercise of its authority herein, nor shall the approval of the General Member to be inferred from its failure affirmatively to disapprove of a proposed action of this Corporation within a specified time period.

## XIII. AUXILIARIES AND FUNDRAISING FOUNDATIONS

## Section 13-1. - Establishment.

Subject to the provisions of Section 12-1 of these Bylaws, the Board of Trustees may establish or support the establishment of auxiliaries and fundraising foundations and/or related organizations wishing to support the objectives of the Corporation or work in complementary ways to the Corporation.

Subp 00463

Section 13-2. - Board Approval.

The Board of Trustees reserves the right to channel any such funds as may be donated by such bodies to uses or objectives consistent with the purposes stated in Article II of these Bylaws, and for liaison purposes only, a member of the Corporation's Board of Trustees shall be appointed to attend meetings of the auxiliaries or fundraising foundations, and from time to time, but not less than annually, the Corporation's Board of Trustees shall receive a report, for information only, from the auxiliaries or fundraising foundations as to the operations of that organization.

## XIV. INDEMNIFICATION

The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any civil, criminal, administrative or investigative proceeding by reason of the fact that such person is or was a Trustee, officer, employee, or otherwise an agent of the Corporation, against expenses, judgments, fines, settlements and other amounts actually and reasonably incurred in connection with such proceeding, provided that all of the requirements of Section 5238 of the California Corporations Code, or any successor provisions, for such indemnification are met.

Expenses, including attorneys' fees, incurred in defending any proceeding shall be advanced by the Corporation prior to the final disposition of such proceeding upon receipt of an undertaking by or on behalf of the agent to repay such amount unless it shall be determined ultimately that the agent is entitled to be indemnified as authorized in section 5238 of the California Corporations Code.

## XV. AMENDMENTS

These Bylaws may be amended or new Bylaws may be adopted by action of the Board at any regular meeting of the Board or at any special meeting called for that purpose. Amendments shall not be effective unless and until approved by the General Member. Alternatively, amendments may be adopted by the General Member, other than amendments which reduce the powers of the Board, at any regular or special meeting of the Board of Trustees of the General Member called for that purpose. However, prior to amending unilaterally these Bylaws, the General Member shall notify the Board of the proposed changes, explain the reasons for them, and allow the Board to comment. Following that process the General Member may request that the Board adopt such amendments at its next regularly scheduled meeting.

Subp 00464

# EXHIBIT 1

## SUTTER HEALTH
## EQUITY CASH TRANSFER POLICY

| **Sutter Health and Affiliates** | |
| :---: | :---: |
| **Finance Policies and Procedures** | |
| **EQUITY CASH TRANSFER** | |
| Policy Number 207 | Origination Date: 1/96<br>Last Revised Date: 7/98<br>Next Review Date: 9/99 |
| Approved by: Bob Reed, Chief Financial Officer | |

## POLICY

Sutter Health shall ensure that operating funds are available to affiliated entities sufficient to fund their approved operating and capital budgets. Transfers from Sutter Health to affiliates may be made where such transfers are determined to be in the best interests of the Sutter Health system, the affiliate has adopted this policy, or otherwise incorporated this policy into its bylaws, and the transfer is not otherwise prohibited by pre-existing contractual obligations. Alternatively, excess operating cash may be transferred from the affiliate to Sutter Health.

Sutter Health shall ensure that each affiliate's Funded Depreciation (including seismic funds) shall be used to fund that affiliate's routine and non-routine capital acquisitions, and will ensure that trusteed funds will be used for their authorized purposes.

Donor-originated funds are specifically excluded from this policy.

## PURPOSE

The purpose of this policy is to enable Sutter Health to optimize the strategic value of available capital resources for the benefit of the system and of individual affiliated entities. Each non-profit Sutter Health affiliated entity shall adopt this policy, thus providing the system with maximum flexibility to redeploy cash resources to meet approved system strategic objectives.

## AUTHORIZATION

The Sutter Health Chief Financial Officer may authorize transactions and establish routine practices in accordance with this policy. Sutter Health will provide periodic reports to each affiliated entity reflecting transactions executed in accordance with this policy.

## PROCEDURES

**Definitions**

<u>Excess Operating Cash</u>

Operating cash generated by each affiliated entity, over and above its target. (See Figure 1 for example of calculation).

Subp 00466

Target

. Each affiliated entity's operating cash target shall consist of: Fourteen days of budgeted operating expenses, excluding depreciation expense.

Donor-originated Funds

Cash received by or due to, an affiliated entity or associated charitable foundation, which has not been spent.

**Accounting Treatment**

For transfers to Sutter Health, the following entry would be recorded:

|                              | **Dr.** | **Cr.** |
|------------------------------|---------|---------|
| Equity Transfer – SH         | XXX     |         |
| Cash – Operating Pool        |         | XXX     |

For transfers received from Sutter Health, the following entry would be recorded:

|                              | **Dr.** | **Cr.** |
|------------------------------|---------|---------|
| Cash – Operating Pool        | XXX     |         |
| Equity Transfer – SH         |         | XXX     |

Subp 00467

## SUTTER HEALTH

### Equity Cash Transfer Calculation (000)

| | | Sample Affiliate |
|---|---|---|
| **Month:    May 31, 1998** | | *(Affiliate Name)* |
| | | |
| | | |
| **April 30, 1998  End Operating Pool Balance** | + | $        9,000 |
| **B of A Balance (& other balances, if any)** | + | 500 |
| **Outstanding Checks** | - | (800) |
| **Special Provisions (if any)** | - | 0 |
| **Adjusted Operating Pool Balance** | = | $        8,700 |
| **Target Balance (see note 1)** | - | (3,260) |
| ***Equity Cash Transfer Available*** | = | $        5,440 |
| | | |
| *(Transaction value dated 5/1/98)* | | |
| | | |
| | | |
| ***Note 1:*** | | |
| **        Target Calculation:** | | |
| | | |
| **Annual Operating Expense Budget** | + | $      100,000 |
| **Depreciation/Amortization** | - | (15,000) |
| **Adjusted Annual Operating Expense Budget** | = | $       85,000 |
| **14 day Target Factor** | X | 14/365 |
| **Target Balance** | = | $        3,260 |
| | | |
| | | |

Subp 00468

## SECRETARY'S CERTIFICATE

The amendments contained in these Amended and Restated Bylaws of Sutter Health Sacramento Sierra Region were approved by the Board of Trustees on January 8, 2004 and May 6, 2004, and by Sutter Health, the General Member, on February 2, 2004 and August 11, 2004, respectively.

Dated: *September 15, 2004*

*[signature]*

Secretary