Exhibit S

# AMENDED AND RESTATED

# BYLAWS

# SUTTER LAKESIDE HOSPITAL

*A nonprofit, public benefit corporation*
*organized under the laws of the State of California*

*Includes Revisions through March 13, 2003*

Subp 00669

## TABLE OF CONTENTS

I NAME......................................................................................................1

II PURPOSES .............................................................................................1

III MEMBERSHIP ........................................................................................2

    Section 3-1. - Member ...............................................................2

    Section 3-2. - Transfer of Membership......................................2

    Section 3-3. - Exercise of Membership Rights .........................2

    Section 3-4. - Liabilities and Assessments................................2

IV SYSTEM AFFILIATION .........................................................................3

    Section 4-1. - Affiliated Status       ...........................................3

    Section 4-2. - Participation in Activities of the Member ...........3

    Section 4-3. - Cash Concentration ...........................................3

    Section 4-4. - Equity Cash Transfer Policy...............................3

    Section 4-5. - Payment of Allocation Fee.................................3

    Section 4-6. - Cost of Capital Allocation Policy.......................3

    Section 4-7. - Representation on the Board of Trustees ............4

    Section 4-8. - Effect of Policies       ...........................................4

    Section 4-9. - Policies Required of Affiliated Entities .............4

    Section 4-10. - Compliance Program ........................................4

V TRUSTEES ..............................................................................................5

    Section 5-1. - Number, Qualification, Selection........................5

    Section 5-2. - Powers and Responsibilities...............................6

    Section 5-3. - Compensation.....................................................7

    Section 5-4. - Conflict of Interest ............................................7

    Section 5-5. - Nominations ......................................................8

VI MEETINGS .............................................................................................8

    Section 6-1. - Regular Meetings  .............................................8

    Section 6-2. - Special Meetings   .............................................8

    Section 6-3. - Annual Organizational Meeting ........................8

    Section 6-4. - Place of Meetings  .............................................8

    Section 6-5. - Notice .................................................................8

    Section 6-6. - Quorum...............................................................9

    Section 6-7. - Manner of Acting  .............................................9

Subp 00670

Section 6-8. - Presiding Officer ........................................................................9
Section 6-9. - Action in Lieu of Meeting ..........................................................9
Section 6-10. - Telephonic Meetings ...............................................................9

VII  OFFICERS ....................................................................................................9
Section 7-1. - General ....................................................................................9
Section 7-2. - Qualification, Election and Term of Office....................................10
Section 7-3. - Chairperson ............................................................................10
Section 7-4. - Vice Chairperson ....................................................................10
Section 7-5. - Chief Executive Officer.............................................................10
Section 7-6. - Chief Financial Officer..............................................................11
Section 7-7. - Secretary.................................................................................12

VIII  COMMITTEES...............................................................................................12
Section 8-1. - General ...................................................................................12
Section 8-2. - Executive Committee .................................................................12
    A.    Composition.................................................................................12
    B.    Responsibilities and Authority.........................................................13
    C.    Accountability...............................................................................13
Section 8-3. - Corporate Resources Committee..................................................13
    A.    Composition.................................................................................13
    B.    Responsibilities and Authority.........................................................13
    C.    Accountability...............................................................................14
Section 8-4. - Medical Policy Committee...........................................................15
    A.    Purposes.....................................................................................15
    B.    Composition.................................................................................15
    C.    Responsibilities.............................................................................15
    D.    Authority.....................................................................................16
    E.    Accountability...............................................................................17
Section 8-5. - Governance Committee................................................................17
    A.    Composition.................................................................................17
    B.    Responsibility and Authority ...........................................................18
    C.    Accountability and Frequency of Meeting...........................................18
Section 8-6. - Joint Conference Committee........................................................18
    A.    Composition.................................................................................18

Subp 00671

B.   Responsibilities and Authority.................................................18

C.   Accountability.........................................................................18

Section 8-7. - Ad Hoc Committees .................................................................19

A.   Composition............................................................................19

B.   Responsibilities and Authority.................................................19

C.   Accountability.........................................................................19

Section 8-8. – Lakeside Wellness Foundation.................................................19

A.   Number and Selection of Lakeside Wellness Foundation Board .....................................................................................19

B.   Duties and Authority of Foundation Board..............................20

C.   Advisory Role .........................................................................20

D.   Organization............................................................................21

E.   Compensation of Foundation Board Members .........................21

F.   Foundation Committees ..........................................................21

G.   Executive Director ..................................................................22

IX PROVISION OF MEDICAL, DENTAL AND PODIATRIC CARE.....................23

Section 9-1. – Responsibility for Medical Care................................................23

Section 9-2. - Medical Staff Organization ......................................................25

A.   Purposes ................................................................................25

B.   Functions................................................................................25

C.   Officials..................................................................................25

Section 9-3. - Medical Staff Bylaws ...............................................................26

A.   Purpose of Bylaws ..................................................................26

B.   Writing of Bylaws ..................................................................27

C.   Approval of Bylaws ...............................................................27

Section 9-4. - Hearing and Appeals ...............................................................27

Section 9-5. - Professional Liability Insurance ...............................................27

X RECORDS, REPORTS AND INSPECTION RIGHTS .............................................28

Section 10-1. - Maintenance of Articles and Bylaws........................................28

Section 10-2. - Maintenance of Other Corporation Records ..............................28

Section 10-3. - Inspection by Trustees or Member ...........................................28

XI EXECUTION OF DOCUMENTS.........................................................................28

Subp 00672

XII  TRANSACTIONS REQUIRING APPROVAL OF THE MEMBER.....................28

    Section 12-1. - Matters Requiring Approval......................................................28

    Section 12-2. - Other Major Activities ...............................................................30

    Section 12-3. - Approvals  ...............................................................................30

    Section 12-4. - Other Actions Requiring Approval of the General Member .......31

    Section 12-5. - Exercise of Authority .................................................................31


XIII  AUXILIARIES AND RELATED GROUPS ........................................................31

    Section 13-1. - Establishment    .........................................................................31

    Section 13-2. - Board Involvement ....................................................................31


XIV  BONDING AND INDEMNIFICATION ...............................................................32

    Section 14-1. - Bonding    ...................................................................................32

    Section 14-2. - Indemnification    ........................................................................32


XV  AMENDMENTS.......................................................................................................32

Exhibit 1 - Equity Cash Transfer Policy

Exhibit A - Sutter Health - Executive Search Program

Subp 00673

AMENDED AND RESTATED
BYLAWS
SUTTER LAKESIDE HOSPITAL

## I NAME

The name of the Corporation shall be as listed in the Restated Articles of Incorporation, namely, Sutter Lakeside Hospital, a nonprofit public benefit corporation organized under the laws of the State of California.

The principal office of the Corporation shall be located in Lakeport, California, and the principal place of business shall be located in or near Lakeport, California.

## II PURPOSES

This Corporation was formed for the purposes set forth in its Articles of Incorporation:

A.  To establish, equip and maintain one or more nonprofit hospitals, medical centers, institutions or other places for the reception and care of the sick, injured, and disabled, with permanent facilities that include inpatient beds and medical services; to provide diagnosis and treatment for patients; and to provide associated services, outpatient care and home care in furtherance of this corporation's charitable purposes;

B.  To promote and carry on educational activities related to the care of the sick, injured, and disabled, or to the promotion of health;

C.  To promote and carry out scientific research related to the care of the sick, injured, and disabled;

D.  To promote or carry out such other activities as may be deemed advisable for the betterment of the general health of the community served; and

E.  To contribute to the growth, development and financial strength of Sutter Health.

Subp 00674

## III MEMBERSHIP

Section 3-1.   Member

There shall be one member of this Corporation who shall be Sutter Health, a California nonprofit public benefit corporation ("Member" or "General Member"). The Member, and only the Member, shall be entitled to exercise fully all rights and privileges of members of nonprofit corporations under the California Nonprofit Public Benefit Corporation Law, and all other applicable laws. The rights and powers of the Member shall also include, without limitation, the following: the limitation on liabilities described in Section 3-4 of these Bylaws, the rights and powers to appoint (and remove) the appointed members of the Board of Trustees, subject to Section 12-4 of these Bylaws; and exercise of all of the rights and powers set forth in Article XII of these Bylaws. The Member may not be expelled or suspended as the Member without its consent. Any reference in these Bylaws to the "member," "Member," "general member," "General Member," "corporate member," or "Corporate Member" of this Corporation, or any similar such reference, shall mean Sutter Health, a California nonprofit public benefit corporation.

Section 3-2.   Transfer of Membership

The Member may not transfer its membership or any rights arising therefrom.

Section 3-3.   Exercise of Membership Rights

The Member of this Corporation shall exercise its membership rights through its own Board of Directors. Subject to the provisions of the Member's bylaws, and except as otherwise provided in these Bylaws where a super-majority vote of the Board of Directors of the Member is required, the Board of Directors of the Member may, by resolution, authorize a person or committee of persons to exercise its vote on any matter to come before the membership of this Corporation. In addition, the Member may exercise its membership rights at any regular or special meeting of the Board of Directors of the Member. The functions required by law or these Bylaws to be performed at the annual membership meeting or any regular or special meeting of the members of this Corporation may be performed at any regular or special meeting of the Member's Board of Directors.

Section 3-4.   Liabilities and Assessments

The Member, as such, shall not be liable for the debts of this Corporation. The Board of Trustees shall have no power to levy and collect assessments on the Member. The provisions of this paragraph cannot be amended in any manner.

Subp 00675

IV SYSTEM AFFILIATION

Section 4-1.    Affiliated Status

This Corporation is one of several affiliated corporations that comprise a an integrated health care system ("System").

Section 4-2.    Participation in Activities of the Member

The Board shall submit nominees to the Member in order to enable the Member to appoint members of this Corporation's Board or officers of this Corporation to serve on the Member's corporate Board of Directors and/or its Board committees as appropriate to ensure the Member's continued qualification as a "supporting organization" under Section 509 of the Internal Revenue Code of 1986, as amended from time to time, or successor provisions.

Section 4-3.    Cash Concentration

Subject to the provisions of Section 4-8 of these Bylaws, the Corporation shall participate in the Cash Concentration and Controlled Disbursement Program prescribed by the General Member and in effect from time to time.

Section 4-4.    Equity Cash Transfer Policy

Subject to the provisions of Section 4-8 of these Bylaws, the terms of the Equity Cash Transfer Policy contained in Exhibit 1 to these Bylaws to the Bylaws of this Corporation are incorporated into and made part of these Bylaws. Neither donor originated funds nor the earnings therefrom shall be subject to the Equity Cash Transfer Policy.

Section 4-5.    Payment of Allocation Fee

Subject to the provisions of Section 4-8 of these Bylaws, this Corporation shall pay the allocation fees necessary to maintain the operation of the General Member.

Section 4-6.    Cost of Capital Allocation Policy

Subject to the provisions of Section 4-8 of these Bylaws, the Corporation shall participate in the Cost of Capital Allocation Policy prescribed by the General Member and in effect from time to time.

DEC_SLH_Bylaws_3-03                    3
SLH Corp Bylaws

Subp 00676

Section 4-7.    Representation on the Board of Trustees

The President and CEO of the General Member may designate, by written notice to the Secretary of this Corporation, up to two (2) voting members of the Board. Any residency requirement applicable to Trustees shall not apply to the voting Trustees described in this Section 4-7. The President and CEO of the General Member may revoke any such designation effective upon delivery of written notice thereof to the Secretary of this Corporation. The President and CEO of the General Member and the Vice Chair of the General Member may each attend any Board meeting. This Section 4-7 supersedes any other provision in these Bylaws relating to the participation of the President and CEO and/or the Chair of the General Member as voting or non-voting Trustees of this Corporation. To the extent necessary, the authorized number of Trustees of this Corporation shall be increased by up to two (2) persons so that this Section 4-7 can be implemented without the removal or resignation of any current director of this Corporation.

Section 4-8.    Effect of Policies

This Corporation's obligations under Sections 4-3 through 4-6 and the policies described therein shall be subject to all agreements with and obligations to third parties (including without limitation bond indentures) to which this Corporation is a party or is bound at the time this provision is adopted or which are otherwise approved by the General Member after the adoption of this provision.

Section 4-9.    Policies Required of Affiliated Entities

Except for tax-exempt entities which are primarily fundraising foundations, this Corporation shall prescribe the policies described in Sections 4-3 through 4-6 to the tax-exempt entities which this Corporation owns or controls or which this Corporation is a member. As to those entities, the policies shall be subject to all agreements with and obligations to third parties, Healthcare Districts and any other member of the affiliated entity (including without limitation bond indentures) to which the entity is a party or is bound at the time this provision is adopted or which are otherwise approved by the General Member after the adoption of this provision.

Section 4-10.    Compliance Program

Corporation shall adopt a Compliance Program consistent with Sutter Health Compliance Program Plan which shall include the following:

A.    All Board Members shall receive Compliance training consistent with Sutter Health Compliance Program Plan.

B.    The Board shall have oversight of and ultimate responsibility for an effective Compliance Program including adoption of related compliance policies.

Subp 00677

C.    The Board or a Committee of the Board shall receive and review routine and special Compliance reports on a regular basis.

D.    The Board shall delegate to Corporation's chief executive officer responsibility to implement Compliance Program in accordance with Sutter Health Compliance Program Plan.

## V TRUSTEES

Section 5-1.    Number, Qualification, Selection

A.    The Board shall consist of no fewer than nine nor more than 15 Trustees including *ex officio* Trustees.  The exact number of Trustees, within these limits, shall be set by the Member based upon the recommendations of the Board.  All Trustees shall be eligible to vote.

B.    Excluding those persons appointed pursuant to Paragraph D below, at least 66-2/3% of the appointed Trustees shall reside or have their primary place of business within the Corporation's service area.

C.    Not more than 49% of the persons serving as Trustees at any time may be interested persons.  An interested person is:

   i.    Any person being compensated by the Corporation for services rendered to it within the previous 12 months, whether as a full-time or part-time employee, independent contractor or otherwise, excluding any reasonable compensation paid to a Trustee as Trustee; or

   ii.    Any brother, sister, ancestor, descendant, spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law or father-in-law of any such person.

   However, any violation of the provisions of this paragraph shall not affect the validity or enforceability of any transaction entered into by the Corporation.

D.    Two representatives of the Member, as provided under Section 4-7, the Chief Executive Officer of this Corporation, as provided under Section 7-5 C, the President of the Medical Staff and the Chief of Staff-Elect of the Sutter Lakeside Hospital Medical Staff shall be *ex officio* trustees, with full voting rights, on the Board.  All other trustees shall be appointed as herein set forth.

DEC_SLH_Bylaws_3-03                                    5
SLH Corp Bylaws

E.  Appointed Trustees shall be chosen for their willingness and ability to effectively contribute to and support the objectives of the Corporation. Membership on the Board should reflect a breadth of diversity of community interests that is in keeping with the broad role of the Corporation in the community.

F.  The Member shall appoint replacements for Trustees of this Corporation whose terms will expire prior to the next annual meeting of the Member. Trustees shall be selected by the Member from a slate of nominees selected as described in Section 5-7 of these Bylaws. Trustees shall serve at the discretion of the Member.

G.  The terms of all appointed Trustees shall be for three years, and appointments shall be staggered. No appointed Trustee may serve for more than eleven consecutive years. (An individual who is not eligible to serve the entire three year term due to the eleven consecutive year term limitation may not be nominated.) Notwithstanding the above limitation on time of service, each Trustee shall hold office until his or her successor is appointed. None of these temporal provisions apply to *ex officio* Trustees.

Section 5-2.  Powers and Responsibilities

A.  Except as otherwise provided by the Articles of Incorporation or these Bylaws, the powers of the Corporation shall be exercised, its property controlled and its affairs conducted by or under the direction of the Board.

B.  Except as to those powers herein expressly reserved to the Member by Article XII, the general powers of the Board shall include, but not be limited to, the power:

i.  Subject to the provisions of Sections 7-2 and 7-5, below, to select and remove officers, agents and employees of the Corporation; to prescribe powers and duties for them; to fix their compensation; and require from them security for faithful service;

ii.  To develop annual one-year operating and capital budgets, in accordance with guidelines established by the Member's Resource Planning Committee;

iii.  To approve capital expenditures outside of approved capital budgets, to a limit specified by the Member's Resource Planning Committee;

iv.  To develop and recommend corporate objectives;

Subp 00679

> v.    To select and appoint a qualified Medical Staff and maintain a liaison therewith;
>
> vi.   To supervise the Corporation's quality review activities, including all aspects of patient care evaluation, in accordance with guidelines established by the Member's Systemwide Quality Review Committee;
>
> vii.  To monitor and evaluate performance of the Chief Executive Officer;
>
> viii. To recommend local service area residents for appointment by the Member to the Board; and
>
> ix.   To arrange for periodic review of its own performance.

Section 5-3.    Compensation

Trustees who are not part of the full-time management of the Corporation shall serve without compensation except for reimbursement for reasonable expenses. In keeping with the nonprofit status of the Corporation, no Trustee shall benefit financially from his or her position as a Trustee.

Trustees may be reimbursed for all out-of-pocket expenses incurred in attending meetings and carrying out duties and functions directly related to the Corporation's business.

Section 5-4.    Conflict of Interest

The Board shall promulgate written policies regarding conflict of interest related to its own members, salaried persons and members of the Medical Staff. Such policies shall not be inconsistent with the standards of conduct set forth in Sections 5230 through 5238 of the California Corporations Code or with the Member's conflict of interest policies or guidelines. Such policies shall ensure full disclosure of financial interests and transactions where conflict of interest is a possibility, and shall ensure the avoidance of potential conflict of interest in choosing new Trustees, including *ex officio* Trustees. Such policies shall impose upon each Trustee the responsibility to be alert to possible conflicts of interest of himself or herself or of other Trustees, and shall require that each Trustee declare his or her absence of conflict of interest on a declaration form provided for that purpose and disqualify himself or herself from making or influencing a decision where he or she has a conflict of interest.

DEC_SLH_Bylaws_3-03                    7
SLH Corp Bylaws

Subp 00680

Section 5-5.    Nominations

Nominations for Trustees, including but not limited to nominations for full terms, and nominations to fill vacancies created by resignation, removal, or death occurring during a term, shall be proposed by the Governance Committee of this Corporation. The nominees shall be approved by the Board, upon recommendation of this Corporation's Governance Committee, as further described in Section 8-5 of these Bylaws. The Member may accept any candidate proposed by the Board, reject any and all candidates with instructions to reconsider, or propose its own candidate. In the event the Member proposes its own candidate, it shall give the Board 30 days to accept or reject the Member's proposed candidate. In the event the Board does not act within 30 days, the Member's selection shall become effective. If the Board rejects the Member's proposed candidate, the disagreement shall be mediated by an independent mediator acceptable to both parties. If the disagreement is not resolved within 60 days after submission to the mediator to the satisfaction of both parties, the Member's appointee shall take office.

## VI MEETINGS

Section 6-1.    Regular Meetings

Regular meetings of the Board shall be held at such frequency, time, and place as the Board shall from time to time determine.

Section 6-2.    Special Meetings

Special meetings of the Board may be called at any time on the order of the Chairperson, on the order of three Trustees, or by the Member.

Section 6-3.    Annual Organizational Meeting

Annually, no later than 30 days following each annual meeting of the Member, the Board shall meet for the purpose of electing the officers. Nominees shall be selected by this Corporation's Governance Committee, as described in Section 8-5 of these Bylaws.

Section 6-4.    Place of Meetings

All regular meetings of the Board, except as herein otherwise provided, shall be held at the place of business of the Corporation or such other place as the Chairperson or the Trustees requesting such a meeting may designate.

Section 6-5.    Notice

Special meetings of the Board shall be held upon four days' notice to each Trustee by first-class mail or forty-eight hours' notice to each Trustee delivered personally or by telephone or facsimile transmission. The attendance of a Trustee at any meeting shall constitute a waiver of notice of the meetings, except where a Trustee attends a meeting

DEC_SLH_Bylaws_3-03
SLH Corp Bylaws

8

only for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened.

Section 6-6.    Quorum

A majority of the number of Trustees presently serving and empowered to vote shall constitute a quorum for the transaction of business. However, a majority of those present at the time and place of any meeting, although less than a quorum, may adjourn the same from time to time or from day to day, without further notice, until a quorum shall attend, and when a quorum shall attend, any business may be transacted which might have been transacted at the meeting had the same been held on the day on which the same was originally appointed or called.

Section 6-7.    Manner of Acting

The act of a majority of Trustees empowered to vote and present at a meeting at which a quorum is present shall be the act of the Board, unless the act of a greater number is required by law or by these Bylaws.

Section 6-8.    Presiding Officer

The Chairperson, or in his/her absence, the Vice Chairperson, or in the absence of both, a chairperson selected by the Trustees present, shall call the meeting to order and shall preside.

Section 6-9.    Action in Lieu of Meeting

Any action required or permitted to be taken by the Board may be taken without a meeting, if all members of the Board shall individually or collectively consent in writing to such action. Such written consent or consents shall be filed with the minutes of proceedings of the Board. Such action by written consent shall have the same force and effect as the unanimous vote of the Trustees.

Section 6-10.    Telephonic Meetings

Trustees may participate in a meeting through use of a conference telephone or similar communications equipment, so long as all Trustees participating in such meeting can hear one another. Participation in a meeting, pursuant to this paragraph, constitutes presence in person at the meeting.

## VII OFFICERS

Section 7-1.    General

The officers of the Corporation shall be a Chairperson, a Vice Chairperson, an Chief Executive Officer, a Chief Financial Officer and a Secretary. Offices may be held

DEC_SLH_Bylaws_3-03                    9
SLH Corp Bylaws

Subp 00682

by the same person except that neither the Chief Financial Officer nor the Secretary may serve concurrently as Chairperson or as Chief Executive Officer.

Section 7-2.    Qualification, Election and Term of Office

The Chairperson, Vice Chairperson, and Secretary shall be elected by the Board from among its own membership at the Annual Organizational Meeting. These officers shall serve for one-year terms or until successors have been elected, but must be elected each year. The Chairperson may serve no more than three consecutive one-year terms. The election of the Chairperson is effective upon approval of the Member. Only appointed Trustees who live or who have their primary place of business in the service area shall be eligible to be Chairperson. The Vice Chairperson and Secretary serve at the pleasure of the Board and may be removed as an officer without cause by a majority vote of the Trustees. The Chairperson may be removed as an officer without cause by a majority vote of the Trustees and the approval of the Member. Removal under this Section shall not affect the officer's status as a Trustee.

Section 7-3.    Chairperson

The Chairperson shall preside at all meetings of the Board. The Chairperson shall exercise and perform such other powers and duties as may be prescribed by the Board from time to time. The Chairperson may delegate any of his/her powers to the Vice Chairperson of the Corporation.

Section 7-4.    Vice Chairperson

The Vice Chairperson, in the absence, inability, or refusal of the Chairperson to act, shall have the same powers and duties as the Chairperson and shall have, in addition, any powers and duties that the Chairperson from time to time delegates to him/her. He/she shall have such other powers and perform such other duties as may be assigned to him/her by the Board.

Section 7-5.    Chief Executive Officer

A.    Appointment, Compensation and Removal

The President and CEO of the General Member shall screen candidates when the chief executive officer (hereinafter, the "Chief Executive Officer") is to be hired and shall present finalists to the Board of this Corporation for selection. The Chief Executive Officer shall be an employee of the General Member and shall meet the criteria set forth in the job description maintained by this Corporation and amended from time to time. The compensation committee of the Board of this Corporation shall meet with and provide an evaluation of the Chief Executive Officer and shall make compensation recommendations, based on an agreed upon salary system and survey process, to the President and CEO of the General

Subp 00683

Member, or his or her designee, who shall make the final determination. The Chief Executive Officer shall serve at the pleasure of the General Member, acting through its President and CEO, and the Board of this Corporation, each of which, with the approval of the other, may terminate the services of the Chief Executive Officer.

B.    Responsibilities and Authority

The Chief Executive Officer shall be the general manager and chief executive officer of this Corporation. The Chief Executive Officer shall be given the necessary authority and responsibility to operate this Corporation in all of its activities, including without limitation, quality of services, cost effectiveness and economic performance and implementation of System strategies, subject to the following: With respect to policy development, program planning, employee and community relations, the Chief Executive Officer shall be subject to such policies as may be adopted and such orders as may be issued by the Board of this Corporation or by any of its committees to which the Board has delegated the power for such action; with respect to program execution and overall management performance, the Chief Executive Officer shall be subject to the authority of and shall report to the Board; with respect to strategies of the local delivery system operated by this Corporation and overall operations of that system, the Chief Executive Officer shall be responsible to the President of the General Member. The Chief Executive Officer shall also periodically report to the President and CEO of the Member or his/her designee on the affairs of this Corporation. The Chief Executive Officer shall act as the duly authorized representative of the Board of this Corporation in all matters in which the Board has not formally designated some other person to so act. The Chief Executive Officer is responsible for maintaining the Hospital's compliance with applicable laws and regulations, and for reviewing and promptly responding to reports and recommendations from planning, regulatory and inspecting agencies.

C.    Ex-Officio Board Membership

The Chief Executive Officer shall be an *ex officio* voting member of the Board of this Corporation.

Section 7-6.    Chief Financial Officer

The Chief Financial Officer, who shall be selected by the Chief Executive Officer, acting with the Corporate Resources Committee, shall cause a true and accurate accounting of the financial transactions of the Corporation to be made, and shall assure that reports of such transactions are presented to the Board and that all accounts payable are presented to such representatives as the Board may designate for authorization of payment. The books of account shall at all times be open to inspection by any Trustee and by the Member.

Subp 00684

Section 7-7.    Secretary

The Secretary shall cause appropriate notices and agendas to be prepared and sent for all meetings of the Board; shall act as custodian of all records and reports; shall be responsible for the keeping and reporting of adequate records of all meetings of the Board; and shall certify to the correctness of any corporate bylaws, minutes or resolutions. The Board may appoint such Assistant Secretaries as deemed appropriate, each of whom shall have authority to sign documents on behalf of and in the absence or unavailability of the Secretary.

## VIII  COMMITTEES

Section 8-1.    General

Except as specified in these Bylaws or in any resolution creating an additional committee, the members and chairperson of each committee shall be selected by the chairperson of the Board at or immediately following the Annual Organizational Meeting of the Board and shall be approved by the Board. The chairperson and all other members of each committee shall hold office for one year or until their successors are elected. Except as specified for the Executive Committee, the Chairperson of the Board shall have the power to fill any vacancies that occur on committees for the remainder of the year.

Except for the Executive Committee and Medical Policy Committee, persons may be appointed to committees who are not Trustees or employees of the Corporation. Such persons may not chair a committee. If not a committee member, the Chairperson of the Board, or his/her designee, shall be an *ex officio* advisory and consulting member of each committee. All committees deliberating on issues affecting the discharge of Medical Staff responsibilities shall include, in at least an advisory and consulting capacity, a physician member of the Medical Staff.

The provisions of Sections 6-5, 6-6, 6-7, 6-9 and 6-10 of these Bylaws, regarding notice, quorum, manner of acting, action in lieu of a meeting, and telephone meetings shall apply to committees of the Board.

All committees of the Board shall keep minutes of their meetings, which shall be filed with the Secretary of the Board.

Section 8-2.    Executive Committee

A.    Composition

The Executive Committee shall consist of the Chairperson of the Board who shall serve as Chairperson of the committee, the Vice Chairperson, the Secretary, the senior Sutter Health representative on the Board or his/her designee, the Chairman of the Corporate Resources Committee, and the Chief Executive Officer.

Subp 00685

B.    Responsibilities and Authority

The Executive Committee shall have power to transact all regular business of the Corporation during the period between meetings of the Board, subject to any prior limitations imposed by the Board and subject to the limitations of California Corporations Code Section 5212.

C.    Accountability

The Executive Committee shall report to each regular Board meeting the results of actions that it has taken within the authority delegated to it, so that the Board maintains accountability from the Executive Committee for its actions. Minutes of all meetings of the Executive Committee shall be available to all Board of Trustee members for information and any necessary actions.

Section 8-3.    Corporate Resources Committee

A.    Composition

The Corporate Resources Committee shall consist of five to eight members, including at least one member of the Medical Staff, one member of the nursing staff, and the Chief Executive Officer. The remaining members of this committee may be appointed from other disciplines within the hospital as deemed appropriate from time to time. The members of this committee need not be Trustees.

B.    Responsibilities and Authority

This committee shall be responsible for the following financial and planning matters:

i.    This committee shall be responsible for supervising the management of the pension funds, and for overseeing the management of the Corporation's assets and ensuring that financial records are maintained in accordance with Generally Accepted Accounting Principles. It shall see that an annual operating budget and an annual capital budget are prepared and submitted to the Board in a timely fashion. The committee shall examine periodic financial reports and receive explanations from the Chief Executive Officer regarding variations from the budget. The committee shall also supervise and review the results of all outside audits, and recommend action thereon, if any, to the Board.

DEC_SLH_Bylaws_3-03
SLH Corp Bylaws

13

ii.    The committee shall also:

    a.    Consider and recommend plans for securing capital and operating funds for the Corporation;

    b.    Assist, with input from nursing and other caregivers, in the preparation and modification of long-range and short-range development plans to assure that the total health care program is attuned to meeting the health needs of the community served by the Corporation, including periodic reexamination of the Corporation's purposes, goals, policies and current programs for delivery of health services;

    c.    Review the financial feasibility of, and availability of resources for, corporate projects, acts, and undertakings referred to it by the Board and make recommendations thereon to the Board;

    d.    Perform such other duties related to fiscal and planning matters as may be assigned to it by the Board or its Chairperson; and

    e.    Periodically review and comment on long-range and short-range development plans to assure that the Corporation's health care program is attuned to the meeting the health needs of the community, including periodic reexamination of the Corporation's purposes, goals, policies and current programs for delivery of heath services.

The committee shall exercise its responsibilities and authority in a manner consistent with any guidelines or policies established by the Member.

C.    <u>Accountability</u>

This committee shall report at regular meetings of the Board or the Executive Committee, its findings on periodic reports of the fiscal operation. It shall present annually to the Board a report reflecting anticipated operating and capital expenditures and receipts for the ensuing year, and such other budgets and planning reports as requested by the Board.

Subp 00687

Section 8-4.    Medical Policy Committee

A.    Purposes

The purposes of this Committee are:

i.     To assist the Board to discharge its corporate responsibility for the quality of the medical care by establishing, maintaining, and improving means of holding the Medical Staff accountable for all its activities within the Corporation's facilities; and

ii.    To give support, guidance, and counsel to the Chief Executive Officer and Medical Staff in their respective functions and activities.

B.    Composition

This committee shall consist of four members: three members of the Board including the Chairperson of the Board (or his/her designee), none of whom shall be *ex officio* members of the Board; and the Director of Nursing (or his/her designee), who need not be a Board member. The Chief Executive Officer and the Chief of Staff or the Chief of Staff-Elect shall serve as *ex officio* members of the Committee, without vote.

A member of the Corporation's management team shall be named by the Chief Executive Officer to serve as administrative staff person to this committee.

C.    Responsibilities

The Committee shall:

i.     Except as otherwise provided in the Medical Staff bylaws, advise and make recommendations to the Board on all Medical Staff matters;

ii.    See that appropriate standards for the screening of all applications to the Medical Staff are established, maintained, and improved as necessary, and ensure compliance with those standards;

iii.   Except as otherwise provided in the Medical Staff bylaws, review and recommend to the Board on all applications for appointment and reappointment to the Medical Staff, including privileges to be granted (except applications for temporary

Subp 00688

appointments and privileges which have been granted by the Chief Executive Officer);

iv. Review and recommend to the Board on all recommendations from the Executive Committee of the Medical Staff;

v. Receive and review specific reports needed to ascertain if Medical Staff functions are being properly discharged;

vi. Hold Medical Staff officials accountable for carrying out the Medical Staff functions of reviewing, analyzing and evaluating clinical work, and for making appropriate recommendations in accordance with the findings therefrom;

vii. Hold Medical Staff officials accountable for seeing that all members of the Medical Staff comply with Medical Staff bylaws, rules, and regulations and all Board promulgated policies;

viii. Determine the extent of compliance with the JCAHO standards and recommendations on medical matters, and make recommendations accordingly;

ix. Meet at regular intervals and maintain a record of its proceedings; and

x. Cause review of Medical Staff bylaws and rules and regulations at least annually.

xi. Review Medical Staff policies and recommend approval of such policies to the Board for final approval.

D.    Authority

This committee shall have the authority to:

i. Determine and request whatever studies, investigative reports, or statistics concerning Medical Staff activities and functions it deems essential to discharging its responsibilities;

ii. Reject any reports from the Medical Staff or its officials not considered complete; and

iii. Invite any officer of the Medical Staff, including Department Chiefs, to meet and confer with the Committee.

Subp 00689

The authority delegated to this committee shall be exercised in a manner consistent with any provisions for fair procedure, if applicable, afforded each member of the Medical Staff as outlined in the Medical Staff bylaws, and with any guidelines or policies established by the Member's Systemwide Quality Assessment Committee; provided, however, nothing in these bylaws or the Member's guidelines or policies shall prevent this Corporation from adopting and implementing higher standards than those established by the Systemwide Quality Assessment Committee.

E.    Accountability

This committee shall at all times be accountable to the Board and shall fulfill that accountability by:

i.    Submitting quarterly a brief written report, and recommendations where appropriate, to the Board regarding:

a.    Applications to the Medical Staff;

b.    Studies pertaining to medical care appraisal; and

c.    Any matters considered in need of Board deliberation.

ii.    Submitting status reports describing studies and reports in progress pertaining to the effectiveness of the Medical Staff in carrying out its required surveillance functions;

iii.    Reporting to the Executive Committee of the Board whenever so requested by the Chairperson of the Board;

iv.    Submitting a report on any aspect of its activities whenever so requested by the Board; and

v.    Establishing a mechanism whereby the Committee's effectiveness shall be evaluated.

Section 8-5.    Governance Committee

A.    Composition

The Governance Committee shall consist of the current Chairperson of the Board, President of Medical Staff (or his/her designee), the senior Sutter Health representative on the Board (or his/her designee), the Chief Executive Officer, and two Trustees to be selected by the Board.

Subp 00690

B.    Responsibility and Authority

The Governance Committee shall review and make recommendations
to the Board with respect to the recruitment, nomination and selection
of Trustees and Board officers, orientation, education and
development of Trustees; the composition, powers and duties of the
committees of the Board; the annual self evaluation of all trustees the
annual solicitation and review of trustee conflict of interest
statements; all matters pertaining to trustee discipline; all changes to
the Articles of Incorporation and Bylaws. The Governance
Committee shall also exercise such other powers as may be
specifically delegated to it by the Board of Trustees, and act upon such
matters as may be referred to it from time to time for study and
recommendation by the Board of Trustees or by the Board
Chairperson.

C.    Accountability and Frequency of Meeting

The Governance Committee shall report to the Board as often as
necessary, but at least annually.

Section 8-6.    Joint Conference Committee

A.    Composition

The Joint Conference Committee shall consist of the Chief Executive
Officer, three Trustees appointed by the Chairperson, and four members
of the Medical Staff consisting of the Medical Staff officers and
immediate past Chief of Staff.

B.    Responsibilities and Authority

This committee shall serve as a vehicle for furthering an understanding
of the roles, relationships, and responsibilities of the Board,
management, and Medical Staff. It shall also serve as a forum for
discussion of any facility matters regarding the provision of patient care
as well as conflict resolution between Board, management and Medical
Staff. The committee shall meet as often as necessary. A committee
meeting may be called by any member of the committee.

C.    Accountability

The Joint Conference Committee is directly accountable to the Board. It
shall also report, through the Chief of Staff or his/her designee, its
activities to the Medical Executive Committee.

DEC_SLH_Bylaws_3-03                    18
SLH Corp Bylaws

Section 8-7.    Ad Hoc Committees

A.    Composition

Ad hoc committees may be appointed by the Board for such special purposes as circumstances warrant. Individuals not on the Board but having special knowledge or background may be appointed to serve on such committees.

B.    Responsibilities and Authority

Activities of such a committee shall be limited to the accomplishment of those tasks for which it was appointed. The committee shall have no powers except those specifically conferred by the Board. As with all committees, management and staff shall provide the resources for ad hoc committees.

C.    Accountability

Except as otherwise specified by the Board, all ad hoc committees shall report directly to the Board. Upon completion of the stated purpose for which it was formed, the committee shall be discharged.

Section 8-8.    Lakeside Wellness Foundation

A.    Number and Selection of Lakeside Wellness Foundation Board

There shall be 5 - 12 members of the Lakeside Wellness Foundation Board ("Foundation Board"), all of whom shall be approved by the Hospital Corporation's Board of Trustees ("Corporation Board").

The Chair of the Corporation Board, or his/her designee, the Chief Executive Officer of Sutter Lakeside Hospital, or his/her designee, and the Executive Director of the Lakeside Wellness Foundation shall be *ex officio* voting members of the Foundation Board. All *ex officio* Foundation Board members serve by reason of official capacity, and the resignation or removal of any such person from office shall automatically terminate such person's membership on the Foundation Board.

The remaining members of the Foundation Board shall consist of the following: one physician from the medical staff of Sutter Lakeside Hospital, who shall be chosen by the Corporation Board; one "at-large" member of the Corporation Board, who shall be appointed by the Chair of the Corporation Board; seven members who broadly represent the Hospital community of Lake County and who are experienced in

DEC_SLH_Bylaws_3-03                          19
SLH Corp Bylaws

organizational and community activities, to be nominated by the Foundation Board and approved by the Corporation Board.

Not more than forty-nine percent (49%) of the Foundation Board members shall be persons currently compensated by this Corporation (excluding any reasonable compensation paid such person as a director) or any close relative of such person.

  i.   Term. Each Foundation Board member (other than *ex officio* members) shall hold office for a term of (3) three years, or until his or her successor has been elected or appointed, and thereafter qualified. A Foundation Board member may not serve more than three (3) consecutive terms.

  ii.  Vacancies. A vacancy on the Foundation Board, whether by death, resignation or removal may be filled by the Corporation Board at a regular or special meeting of the Corporation Board. The Foundation Board shall nominate persons to fill such vacancies as they occur. A Foundation Board Member appointed to fill a vacancy shall be appointed in accordance with the qualifications set forth in Section A, above, and shall be appointed for the unexpired term of his or her predecessor.

B.  Duties and Authority of Foundation Board

Except to the extent that such duties are exercised by the Corporation Board, the Foundation Board shall have the following duties and powers:

  i.   To develop resources, funding and community support for the benefit of Corporation and the communities it serves;

  ii.  To solicit, receive and maintain gifts of money and property and to distribute money and property to Corporation and the communities it serves; and

  iii. To engage in and conduct charitable activities related to Corporation and the communities it serves.

C.  Advisory Role

The Foundation Board shall, in the discretion of the Corporation Board, advise the Corporation Board with respect to charitable, educational and scientific activities.

Subp 00693

Such advice may include, but is not limited to, all matters and decisions that are related to the Foundation Board's purposes as stated in Section B, above.

D.    Organization

The Foundation Board shall establish and by resolution, rule or regulation, for its organization, policies and procedures pertinent to all activities assigned to it by these Bylaws, or as may be delegated to it from time to time by the Corporation Board. Such organization may include, but is not limited to, the times, places and occasions of regular and special meetings of the Foundation Board (including telephonic meetings), actions by the written consent of its members in lieu of a meeting, the quorum required for the conduct of its business.

The provisions of ARTICLE VI, Sections 6-5, 6-6, 6-7, and 6-9, of these Bylaws, regarding notice, quorum, manner of acting, and action in lieu of a meeting, shall apply to Foundation Board Meetings.

Written minutes of the Foundation Board Meetings shall be provided to the Corporation's Board.

E.    Compensation of Foundation Board Members

Members of the Foundation Board shall serve without compensation.

F.    Foundation Committees

i.    General. Committees of the Foundation Board shall be shall be standing or special. Each committee shall exercise such power and carry out such functions as are designated by the Corporation Board or Foundation Board from time to time. Each committee shall be subject to the control of the Corporation Board and Foundation Board, and shall be accountable to both Boards through regular reports by the committee chairperson.

ii.    Standing. The standing committees of the Foundation Board shall be the Foundation Board Development Committee and Annual Gifts Committee. Chairpersons of the Foundation Standing Committees shall be appointed by the Foundation Board and shall be members of the Foundation Board.

a.    Foundation Board Development Committee. The Foundation Board Development Committee is responsible for recruiting and nominating prospective Foundation Board members to the Foundation Board, for developing a program for the orientation

DEC_SLH_Bylaws_3-03
SLH Corp Bylaws

21

Subp 00694

and education of the Foundation Board, and other matters related to the governance of the Foundation Board. The Committee shall meet as required.

    b.    <u>Annual Gifts Committee.</u> The Annual Gifts Committee is responsible for Annual Gifts to Sutter Lakeside Hospital. Fundraising programs include direct mail, gift clubs, telemarketing, annual Board, employee and physician campaigns, donor recognition and memorial/tribute programs. The Committee shall meet as required.

  iii.  <u>Foundation Special Committees.</u> Foundation Special Committees may be established by the Foundation Board or the Foundation Executive Committee. Members of such committees shall be selected by appointment of the Foundation Board. Foundation Special Committee Chairpersons may be invited periodically to attend and report to the Corporation Board and/or the Foundation Board on their activities.

  iv.  <u>Committee Membership.</u> Members appointed to Standing (with the exception of the Foundation Executive Committee) or Special Committees of the Foundation (other than the Committee Chairpersons) need not be Members of the Foundation Board, but may include any citizen interested in the objectives and programs of the Foundation. Foundation Board Members are expected to serve on a minimum of one Foundation Standing Committee each year.

G.    <u>Executive Director</u>

  i.  <u>Selection and Retention</u>. Subject to the advice and consent of the Corporation Board, Sutter Lakeside Hospital Chief Executive Officer shall select and appoint an Executive Director who shall be the chief operating officer of the Foundation and shall be the Foundation Board's direct executive representative in the management of the Foundation. The Sutter Lakeside Hospital Chief Executive Officer shall have sole power to terminate the services of the Executive Director.

  ii.  <u>Responsibilities.</u> Subject to oversight and direct reporting to the Corporation's Chief Executive Officer, the Executive Director shall be given the necessary authority and responsibility to manage Foundation activities, subject to the following: with respect to policy development, program planning, employee and community relations, he or she shall be subject to such policies as may be adopted and such orders as may be issued by the Corporation Board or by any of its committees; and with respect to program execution and overall

Subp 00695

management performance, he or she shall be subject to the authority of and shall report to the Sutter Lakeside Hospital Chief Executive Officer, or his or her designee. He or she shall act as the duly authorized representative of the Foundation Board in all matters in which the board has not formally designated some other person to so act.

## IX  PROVISION OF MEDICAL, DENTAL AND PODIATRIC CARE

Section 9-1.     Responsibility for Medical Care

A.     The Board is responsible for the quality of medical, dental, and podiatric care rendered in the hospital. It shall discharge that responsibility by assuring that the organized Medical Staff carries out the specific quality control functions in accordance with guidelines established by the Member's Systemwide Quality Assessment Committee and subject to Section 9-1.I, below, including, without limitation, the following:

    i.     Reviewing, analyzing, and evaluating clinical practice to determine the quality of medical care;

    ii.     Making recommendations to management and the Board for the establishment, maintenance, continuing improvement, and enforcement of professional standards;

    iii.     Reporting regularly as required by the Medical Policy Committee in Section 8-4 of these Bylaws, on the quality of medical care in terms of professional standards;

    iv.     Recommending the appointment and reappointment of physicians, dentists, and podiatrists to the Medical Staff and the delineation of clinical privileges for Medical Staff applicant, members, and allied health professionals;

    v.     Supervising and ensuring:

        a.     Compliance with the bylaws, rules and regulations for the Medical Staff; and

        b.     Carrying out the policies of the hospital concerning the functions outlined in those Medical Staff bylaws;

    vi.     Disciplining the members of the Medical Staff for violations of policies of the hospital and the Medical Staff bylaws, rules, and regulations, within the limitations of the authority delegated by the Board;

Subp 00696

vii.    Assisting in identifying community health needs and setting appropriate institutional goals to meet those needs; and

viii.   Conducting formally structured ongoing programs of continuing medical education designed to meet the highest professional standards of care.

B.    The Chief of Staff shall be responsible for the effective discharge of functions to be carried out by the Medical Staff.

C.    The Chief of Staff shall have the authority necessary to carry out his/her responsibilities and they are defined in the bylaws for the Medical Staff.

D.    The Chief of Staff shall work with the Chief Executive Officer.

E.    The Board shall be responsible for:

i.     Making all appointments and reappointments to the Medical Staff and alterations of staff status;

ii.    Granting clinical privileges;

iii.   Disciplinary actions; and

iv.    All matters relating to Medical Staff professional competence.

F.    In discharging these responsibilities, the Board shall:

i.     Assure that the safety and interest of the patients takes precedence over all other concerns; and

ii.    Always request, but not be bound by, recommendations from the Medical Staff officials and the Executive Committee of the Medical Staff.

G.    The Board shall, through the Medical Staff organization and the functions assigned to it, maintain systems for:

i.     The establishment of professional standards and criteria by which to evaluate medical care;

ii.    The continuing surveillance of professional practice and Medical Staff functions in order to determine the degree to which those professional standards and criteria are being met; and

Subp 00697

iii.    Gaining compliance with the predetermined standards and criteria when the systems of surveillance indicate they are not being met.

H.    No delegation to the Medical Staff shall preclude the Board from exercising the authority required to meet its responsibilities under these Bylaws.

I.    Nothing in these Bylaws or the Member's guidelines or policies shall prevent this Corporation from adopting and implementing higher standards than those established by the Systemwide Quality Assessment Committee.

Section 9-2.    Medical Staff Organization

A.    Purposes

The Board shall organize, or cause to be organized, a Medical Staff, comprised of physicians, dentists, and podiatrists, for the following purposes:

i.    To serve as the primary means for accountability to the Board for the appropriateness of the professional performance and ethical conduct of its members and affiliates;

ii.    To discharge specific quality control functions designed to ensure the continual upgrading of the quality of medical, dental, and podiatric care rendered by the Medical Staff and allied health professionals while at the same time assuring that the safety and interest of the patients shall take precedence over all other concerns; and

iii.    To provide a structure whereby the Medical Staff members can become an integral part of the total hospital organization and participate in the institution's planning, policy setting, and decision making process.

B.    Functions

In fulfilling the purposes of the Medical Staff organization, the functions as stated in Section 9-1.A of these Bylaws shall be carried out.

C.    Officials

i.    Medical Staff Officers

Subp 00698

The Medical Staff bylaws shall provide for the selection of Medical Staff Officers.

ii.    Medico-Administrative Officers

A medico-administrative officer is a practitioner engaged by the hospital on a full or part-time basis for both administrative and clinical duties. Clinical responsibilities are defined as those involving professional capability as a practitioner, such as to require the exercise of clinical judgment with respect to patient care, and may include supervision of professional activities of other practitioners.

A practitioner engaged in a purely administrative capacity with no clinical duties or privileges is subject to the regular personnel policies of the hospital and to the specific terms of his/her contract or other conditions of engagement, and need not be a member of the Medical Staff. A medico-administrative officer, however, must be a member of the Medical Staff, with clinical privileges delineated in accordance with the Medical Staff bylaws. His/her Medical Staff membership and clinical privileges shall not depend upon continued occupation as a medico-administrative officer, unless otherwise provided by contract or other agreement.

iii.    Tenure

The Chief of Staff shall hold office for a one-year term. Each medico-administrative officer shall serve for such term as provided by contract or other agreement.

Section 9-3.    Medical Staff Bylaws

A.    Purpose of Bylaws

There shall be bylaws for the Medical Staff. The bylaws shall state the purpose and functions of the Medical Staff organization and they shall be in consonance with the purposes and functions of the Medical Staff organization stated herein. The bylaws for the Medical Staff shall provide an organizational framework necessary for the implementation of appropriate quality control programs as dictated by the prescribed functions of the Medical Staff organization. The bylaws shall define relationships, responsibilities, authority and methods of accountability for each Medical Staff official, service and committee. The bylaws will specifically assure that only a member of the Medical Staff with

Subp 00699

admitting privileges shall admit patients to the hospital; that only an appropriately licensed practitioner with clinical privileges shall be directly responsible for a patient's diagnosis and treatment within the area of his/her privileges; that each patient's general medical condition shall be the responsibility of a physician member of the Medical Staff; that each patient admitted to the hospital shall receive a baseline history and physical examination by a physician who is either a member of or approved by the Medical Staff and that other direct medical care of patients provided by allied health professionals, residents, and medical students shall be under the appropriate degree of supervision by a licensed practitioner with clinical privileges.

B.    Writing of Bylaws

The Medical Staff, through its officials and appropriate committees, shall be required to submit bylaws, rules and regulations for the Medical Staff organization in accordance with the requirements as set forth in this Article.

The Medical Staff shall periodically review and, as necessary, submit revisions to its bylaws, rules and regulations.

C.    Approval of Bylaws

All such bylaws, rules and regulations for the Medical Staff must be approved by the Board whose approval shall not be unreasonably withheld before becoming effective.

Section 9-4.    Hearing and Appeals

The Board shall assure that each member of the Medical Staff shall be afforded fair procedure with respect to all appointment and reappointment procedures and the granting, revocation, rescinding, reduction, removal, or denial of Medical Staff privileges. The steps for affording such fair procedure to each member of the Medical Staff shall be carefully defined in the bylaws for the Medical Staff, and shall provide in detail for hearing and appeal procedures, and for notice to the aggrieved practitioner of his/her access to those procedures.

Section 9-5.    Professional Liability Insurance

The Board shall ensure that each practitioner granted clinical privileges in the Corporation's facilities shall maintain professional liability insurance in not less than the minimum amounts as from time to time may be mutually agreed to by the Board and the Medical Staff Executive Committee, or as required by Corporation's professional liability insurance carrier. The minimum amount of required coverage established pursuant to this

Subp 00700

provision shall not exceed the amount of professional liability insurance carried by the Corporation.

## X RECORDS, REPORTS AND INSPECTION RIGHTS

**Section 10-1.**    Maintenance of Articles and Bylaws

The Corporation shall keep at its principal office the original or a copy of the Articles of Incorporation and Bylaws as amended to date.

**Section 10-2.**    Maintenance of Other Corporation Records

The accounting books, records and minutes of proceedings of the Board and any committee(s) of the Board shall be kept at such place or places designated by the Board, or in the absence of such designation, at the principal executive office of the Corporation. The minutes shall be kept in written or typed form, or in any other form capable of being converted into written, typed or printed form.

**Section 10-3.**    Inspection by Trustees or Member

Except as otherwise limited by law, every Trustee and the Member shall have the absolute right at any reasonable time to inspect all books, records, and documents of every kind and the physical properties of the Corporation.  This inspection by a Trustee or a Member may be made in person or by an agent or attorney, and the right of inspection includes the right to copy and make extracts of documents.

## XI EXECUTION OF DOCUMENTS

The following persons shall be authorized to execute any deeds, mortgages, bonds, contracts, or other instruments which the Board has authorized to be executed:

A.    Any officer or other person duly authorized by resolution of the Board to execute documents; or

B.    In the absence of express authorization by Board resolution, the Chairperson or Vice Chairperson, and the Secretary or any Assistant Secretary (all subject to such limitations as may be imposed by resolution of the Board).

## XII TRANSACTIONS REQUIRING APPROVAL OF THE MEMBER

**Section 12-1.**    Matters Requiring Approval

DEC_SLH_Bylaws_3-03                    28
SLH Corp Bylaws

**Subp 00701**

Notwithstanding anything in these Bylaws to the contrary, neither the Board nor any officer or employee of the Corporation may take any of the following actions, or approve an affiliate taking any of the following actions, without the prior approval of the General Member:

A.    Merger, consolidation, reorganization, or dissolution of this Corporation or any subsidiary or affiliate entity;

B.    Amendment or restatement of the Articles of Incorporation or the Bylaws of this Corporation or any subsidiary or affiliate entity;

C.    Adoption of operating budgets of this Corporation or any subsidiary or affiliate entity, including consolidated or combined budgets of this Corporation and all subsidiary organizations of the Corporation;

D.    Adoption of capital budgets of this Corporation or any subsidiary or affiliate entity;

E.    Aggregate operating or capital expenditures on an annual basis that exceed approved operating or capital budgets by a specified dollar amount to be determined from time to time by the General Member;

F.    Long-term or material agreements including, but not limited to, borrowings, equity financings, capitalized leases and installment contracts; and purchase, sale, lease, disposition, hypothecation, exchange, gift, pledge, or encumbrance of any asset, real or personal, with a fair market value in excess of a dollar amount to be determined from time to time by the Trustees of the General Member, which shall not be less than 10% of the total annual capital budget of this Corporation;

G.    Appointment of an independent auditor and hiring of independent counsel except in conflict situations between the General Member and this Corporation or any subsidiary or affiliate entity;

H.    The creation or acquisition of any subsidiary or affiliate entity;

I.    Contracting with an unrelated third party for all or substantially all of the management of the assets or operations of this Corporation or any subsidiary or affiliate entity;

J.    Approval of major new programs and clinical services of this Corporation or any subsidiary or affiliate entity. The General Member shall from time to time define the term "major" in this context;

K.    Approval of strategic plans of this Corporation or any subsidiary or affiliate entity;

DEC_SLH_Bylaws_3-03                    29
SLH Corp Bylaws

Subp 00702

L.    Adoption of quality assurance policies not in conformity with policies established by the General Member;

M.    Any transaction between this Corporation, a subsidiary or affiliate and a director of this Corporation or an affiliate of such director;

Section 12-2.    Other Major Activities

A.    In addition, the General Member shall have the authority, except as otherwise provided by the General Member and after consultation with this Corporation, to require the prior review and approval of those activities of this Corporation or any subsidiary or affiliate entity which the General Member determines to be major activities.

B.    "Major activities" shall be those which the General Member by a vote of not less than two-thirds (2/3) of its Board of Trustees has declared major, by Corporation, delivered personally or transmitted by registered or certified mail return receipt requested. Such notice shall specifically identify the matter or matters requiring approval of the General Member, and shall refer to this bylaw provision granting such approval rights to the General Member. Notices received pursuant to this section shall be recorded in the minutes of this Corporation and shall be filed with the minutes of this Corporation.

Section 12-3.    Approvals

A.    In addition, the General Member shall have the authority, except as otherwise provided by the General Member and after consultation with this Corporation, to require the prior review and approval of those activities of this Corporation or any subsidiary or affiliate entity which the General Member determines to be major activities.

B.    "Major activities" shall be those which the General Member by a vote of not less than two-thirds (2/3) of its Board of Trustees has declared major, by written notice to this Corporation, delivered personally or transmitted by registered or certified mail return receipt requested. Such notice shall specifically identify the matter or matters requiring approval of the General Member, and shall refer to this bylaw provision granting such approval rights to the General Member. Notices received pursuant to this section shall be recorded in the minutes of this Corporation and shall be filed with the minutes of this Corporation.

Subp 00703

Section 12-4.    Other Actions Requiring Approval of the General Member

A.    Vacancy.  Any vacancy occurring on the Board of this Corporation shall be filled by an appointee of the General Member from nominees selected as described in the nomination provisions of these Bylaws.

B.    Removal.  Any non-*ex-officio* Trustee or Director of this Corporation's Board may be removed from office by the General Member; provided, however, the General Member shall notify this Corporation's Board, and give it an opportunity to respond in the manner and subject to the terms and conditions described herein, prior to any such proposed removal.

Section 12-5.  Exercise of Authority

Notwithstanding any provision in these Bylaws to the contrary, and except as otherwise provided in subsection B of Section 12-2 of these Bylaws to the Bylaws (regarding definition of "major activities"), this Corporation shall not prescribe the manner by which the General Member exercises its authority under these Bylaws, and no present or future provision of these Bylaws shall have such effect.  Without limiting the generality of the foregoing, no present or future provision of these Bylaws or other action of this Corporation shall prescribe the required vote of the Board of Trustees of the General Member for the exercise of its authority herein, nor shall the approval of the General Member to be inferred from its failure affirmatively to disapprove of a proposed action of this Corporation within specified time period.

## XIII  AUXILIARIES AND RELATED GROUPS

Section 13-1.    Establishment

Subject to the provisions of Section 12-1 of these Bylaws, the Board may establish or support the establishment of auxiliaries and/or related organizations, including the auxiliary and hospice, wishing to support the objectives of the Corporation or work in complementary ways with the Corporation.  Bylaws, other rules and regulations of the auxiliary or related organization and any amendments thereto, and all major projects must be approved by the Board.

Section 13-2.    Board Involvement

The Board reserves the right to channel any such funds as may be donated by such bodies to uses or objectives consistent with the purposes stated in Article II of these Bylaws, and for liaison purposes only, a member of the Board shall be appointed to attend executive committee meetings of the auxiliary, and from time to time, but not less than annually, the Board shall receive a report, for information only, from the auxiliary as to the operations of that organization.

Subp 00704

## XIV  BONDING AND INDEMNIFICATION

<u>Section 14-1.</u>   <u>Bonding</u>

All officers and employees handling funds shall be properly bonded.

<u>Section 14-2.</u>   <u>Indemnification</u>

The Corporation shall have the right to indemnify any person who was or is a party or is threatened to be made a party to any civil, criminal, administrative, or investigative proceeding by reason of the fact that such person is or was a Trustee, officer, employee, or otherwise an agent of the Corporation, against expenses, judgments, fines, settlements and other amounts actually and reasonably incurred in connection with such proceeding provided that all the requirements of California Corporations Code Section 5238 for such indemnification are met.

## XV  AMENDMENTS

These Bylaws may be amended or new Bylaws may be adopted by action of the Board at any regular meeting of the Board or at any special meeting called for that purpose. Amendments shall not be effective unless and until approved by the General Member. Alternatively, amendments may be adopted by the General Member, other than amendments which reduce the powers of the Board, at any regular or special meeting of the Board of Directors of the General Member called for that purpose. However, prior to amending unilaterally these Bylaws, the General Member shall notify the Board of the proposed changes, explain the reasons for them, and allow the Board to comment. Following this process the General Member may request that the Board adopt such amendments at its next regularly scheduled meeting.

Subp 00705

## EXHIBIT 1

### EQUITY CASH TRANSFER POLICY

DEC_SLH_Bylaws_3-03
SLH Corp Bylaws

| Sutter Health and Affiliates Finance Policies and Procedures |  |
|---|---|
| **EQUITY CASH TRANSFER** |  |
| Policy Number 207 | Origination Date: 1/96<br>Last Revised Date: 7/98<br>Next Review Date: 9/99 |
| Approved by: Robert D. Reed, Chief Financial Officer |  |

## POLICY

Sutter Health shall ensure that operating funds are available to affiliated entities sufficient to fund their approved operating and capital budgets. Transfers from Sutter Health to affiliates may be made where such transfers are determined to be in the best interests of the Sutter Health system, the affiliate has adopted this policy, or otherwise incorporated this policy into its bylaws, and the transfer is not otherwise prohibited by pre-existing contractual obligations. Alternatively, excess operating cash may be transferred from the affiliate to Sutter Health.

Sutter Health shall ensure that each affiliate's Funded Depreciation (including seismic funds) shall be used to fund that affiliate's routine and non-routine capital acquisitions, and will ensure that trusteed funds will be used for their authorized purposes.

Donor-originated funds are specifically excluded from this policy.

## PURPOSE

The purpose of this policy is to enable Sutter Health to optimize the strategic value of available capital resources for the benefit of the system and of individual affiliated entities. Each non-profit Sutter Health affiliated entity shall adopt this policy, thus providing the system with maximum flexibility to redeploy cash resources to meet approved system strategic objectives.

## AUTHORIZATION

The Sutter Health Chief Financial Officer may authorize transactions and establish routine practices in accordance with this policy. Sutter Health will provide periodic reports to each affiliated entity reflecting transactions executed in accordance with this policy.

## PROCEDURES

**Definitions**

Excess Operating Cash

Operating cash generated by each affiliated entity, over and above its target. (See Figure 1 for example of calculation).

Subp 00707

Target

Each affiliated entity's operating cash target shall consist of: Fourteen days of budgeted operating expenses, excluding depreciation expense.

Donor-originated Funds

Cash received by or due to, an affiliated entity or associated charitable foundation, which has not been spent.

**Accounting Treatment**

For transfers to Sutter Health, the following entry would be recorded:

|  | Dr. | Cr. |
|---|---|---|
| Equity Transfer – SH | XXX |  |
| Cash – Operating Pool |  | XXX |

For transfers received from Sutter Health, the following entry would be recorded:

|  | Dr. | Cr. |
|---|---|---|
| Cash – Operating Pool | XXX |  |
| Equity Transfer – SH |  | XXX |

Subp 00708

## SUTTER HEALTH

### Equity Cash Transfer Calculation (000)

| | | Sample Affiliate |
|---|---|---|
| Month:     May 31, 1998 | | *(Affiliate Name)* |
| | | |
| April 30, 1998  End Operating Pool Balance | + | $        9,000 |
| B of A Balance (& other balances, if any) | + | 500 |
| Outstanding Checks | - | (800) |
| Special Provisions (if any) | - | 0 |
| Adjusted Operating Pool Balance | = | $        8,700 |
| Target Balance (see note 1) | - | (3,260) |
| *Equity Cash Transfer Available* | = | *$        5,440* |
| | | |
| *(Transaction value dated 5/1/98)* | | |
| | | |
| | | |
| | | |
| *Note 1:* | | |
|             Target Calculation: | | |
| | | |
| Annual Operating Expense Budget | + | $      100,000 |
| Depreciation/Amortization | - | (15,000) |
| Adjusted Annual Operating Expense Budget | = | $      85,000 |
| 14 day Target Factor | X | 14/365 |
| Target Balance | = | $        3,260 |

Subp 00709

<u>EXHIBIT A</u>

SUTTER HEALTH

EXECUTIVE SEARCH PROGRAM

The procedure outlined on the following pages has been used very successfully over the past several years. Using this methodology, Sutter-affiliated organizations have successfully placed numerous key managerial positions. These positions range from Hospital Chief Executive Officers and Nursing Executives to highly specialized managerial positions in laboratory and cardiovascular services. Candidates have been successfully recruited from all over the United States (when a national search was deemed appropriate), including Illinois, Minnesota, Kansas, Tennessee, Utah, New Mexico, Arizona and throughout California.

Recruiting is a time-consuming process that requires a working knowledge not only of employment law and practices, but also the health care industry as a whole. As with any discipline, there are effective and ineffective ways to find qualified candidates.

The final decision on any Chief Executive Officer candidate will be a collaborative effort with both the local hospital and Sutter Health. Sutter Health will assist the Board leadership in organizing this process to assure a coordinated effort that provides the hospital with the best available candidates from which the selection will be made.

DEC_SLH_Bylaws_3-03
SLH Corp Bylaws

Exhibit A-1

## EXECUTIVE SEARCH PROGRAM - PROCEDURE

Step 1:  Develop Position Specifications and Candidate Profile

The primary purpose is to establish an in-depth understanding of the hospital's goals, challenges, operating environment and the Board's expectations of the position(s) being recruited. This process also includes identification of the purpose, scope and accountabilities of the position. Further review and initial consultation concerning compensation can be achieved at this time.

Step 2:  Assist in Organizing Search Committee

This phase provides assistance to the governing board in structuring itself to complete the process. This will include the development of a proposed timetable and an estimation of the time requirement by each of the Search Committee members. Those best qualified to interview candidates will be identified at this time.

Step 3:  Organize and Direct the Recruitment Process

Based upon the Board's direction, recruitment initiatives can include a variety of sources. Sources can include professional and academic associations and contacts, regional sources, confidential sources of Sutter, and advertisement. In Step 3, the desire to have an "open" versus "closed" recruitment process needs to be decided by the Board. The advantages and disadvantages will be explained to the Search Committee, and an action plan will be developed based upon its decision.

Step 4:  Develop Essential Information Required from All Applicants

Step 4 assures that all candidates are providing the hospital Board with the essential elements of information needed to make this important decision. Much of this information can be provided by the candidate, if so instructed. Other pieces of information may need to be sought out confidentially by Sutter Health.

DEC_SLH_Bylaws_3-03                     Exhibit A-2
SLH Corp Bylaws

Step 5:  <u>Organize and Direct the Screening Process</u>

Here the number of recruited candidates will be screened to an agreed upon number for the Search Committee to review. Preliminary screening interviews will be conducted by Sutter Health to assess experience, education, salary expectations, career goals and management philosophy and style. References will be checked to verify experience and professional qualifications. Only those candidates who most closely match the general and specific position specifications will be referred for comprehensive interviews with the Search Committee.

Step 6:  <u>Assist Search Committee in Interview Process</u>

There are many details that need to be coordinated in preparing for the visit of the candidate to the hospital and community. Interviewing schedules and question guidelines will be developed for this visit. A well-planned interview process assures maximum effectiveness of the visit and input from those participating in the decision.

Step 7:  <u>Consultation on Final Selection</u>

Results of all interviews will be tabulated and prepared for use by the Search Committee. A variety of different techniques can be used in final evaluation. These techniques will be discussed with the Search Committee.

Step 8:  <u>Consultation on Position Description, Employment Agreement and Compensation Package</u>

Here the Search Committee will be assisted in making final arrangements so as to extend a firm offer to the candidate. Final reference checks must be made and position expectations fully clarified. Normally, the candidate will be called back for another visit to discuss these matters. This is also a time when issues concerning relocation and a final compensation package should be agreed upon. Again, Sutter Health can provide consultation on such arrangements.

Exhibit T

AMENDED AND RESTATED
BYLAWS
SUTTER MATERNITY AND SURGERY CENTER OF SANTA CRUZ,

a California nonprofit public benefit corporation

*Includes revisions through September 13, 2002*

Subp 00718

# TABLE OF CONTENTS

Page

ARTICLE I — NAME AND PRINCIPAL OFFICE ................................................................1
 Section 1-1. - Name...................................................................1
 Section 1-2. - Principal Office and Place of Business ......................................1

ARTICLE II — PURPOSES ....................................................................................1
 Section 2-1. - Primary Purposes...........................................................1
 Section 2-2. - General Purposes...........................................................2

ARTICLE III — MEMBERSHIP ................................................................................2
 Section 3-1. - General Member............................................................2
 Section 3-2. - Transfer of Membership .....................................................2
 Section 3-3. - Exercise of Membership Rights ...............................................2
 Section 3-4. - Liabilities and Assessments...................................................3

ARTICLE IV — SYSTEM AFFILIATION ......................................................................3
 Section 4-1. - Affiliated Status.............................................................3
 Section 4-2. - Participation in Activities of the General Member ...............................3
 Section 4-3. - Cash Concentration .........................................................3
 Section 4-4. - Equity Cash Transfer Policy...................................................3
 Section 4-5. - Payment for Allocation Fee...................................................3
 Section 4-6. - Cost of Capital Allocation Policy..............................................4
 Section 4-7. - Representation on the Board of Trustees ........................................4
 Section 4-8. - Effect of Policies ...........................................................4
 Section 4-9. - Policies Required of Affiliated Entities ........................................4
 Section 4-10. - Compliance Program........................................................4

ARTICLE V — TRUSTEES ....................................................................................5
 Section 5-1. - Number, Qualification, Selection..............................................5
 Section 5-2. - Powers and Responsibilities...................................................6
 Section 5-3. - Compensation...............................................................6
 Section 5-4. - Conflict of Interest..........................................................6
 Section 5-5. - Nominations ...............................................................7

ARTICLE VI — MEETINGS OF THE BOARD..................................................................7
 Section 6-1. - Regular Meetings of the Board................................................7
 Section 6-2. - Special Meetings of the Board ................................................7
 Section 6-3. - Annual Organizational Meetings of the Board....................................7
 Section 6-4. - Place of Meetings of the Board ...............................................7
 Section 6-5. - Notice.....................................................................7
 Section 6-6. - Quorum....................................................................7
 Section 6-7. - Manner of Acting ...........................................................8

Subp 00719

Section 6-8. - Presiding Officer ................................................................8
Section 6-9. - Telephonic Meetings .........................................................8
Section 6-10. - Action in Lieu of Meeting of the Board .............................8

ARTICLE VII — OFFICERS ...........................................................................8
Section 7-1. - General.................................................................................8
Section 7-2. - Qualification, Election, Term of Office and Removal ............8
Section 7-3. - Subordinate Officers, Etc. ...................................................9
Section 7-4. - Resignation ..........................................................................9
Section 7-5. - Vacancies.............................................................................9
Section 7-6. - Chairperson of the Board .....................................................9
Section 7-7. - Vice Chairperson..................................................................9
Section 7-8. - Administrator .......................................................................10
Section 7-9. - Chief Financial Officer .........................................................10
Section 7-10. - Secretary ............................................................................11
Section 7-11. - Assistant Secretary ............................................................11
Section 7-12. - Compensation .....................................................................11

ARTICLE VIII — COMMITTEES ....................................................................11
Section 8-1. - General. ................................................................................11
Section 8-2. - Executive Committee ............................................................12
Section 8-3. - Corporate Resources Committee...........................................12
Section 8-4. - Medical Policy Committee ....................................................14
Section 8-5. - Ad Hoc Committees...............................................................16
Section 8-6. - Professional Advisory Board.................................................16
Section 8-7. - Hospital Development Foundation.........................................17

ARTICLE IX — PROVISION OF MEDICAL CARE..........................................21
Section 9-1. - Responsibility for Medical Care.............................................21
Section 9-2. - Medical Staff Organization ...................................................23
Section 9-3. - Medical Staff Bylaws ...........................................................23
Section 9-4. - Hearing and Appeals ............................................................24
Section 9-5. - Professional Liability Insurance ............................................24

ARTICLE X — RECORDS, REPORTS AND INSPECTION RIGHTS....................24
Section 10-1. - Maintenance of Articles and Bylaws....................................24
Section 10-2. - Maintenance of Other Corporation Records .........................25
Section 10-3. - Inspection by Trustees or General Member ..........................25
Section 10-4. - Annual Report .....................................................................25

ARTICLE XI — EXECUTION OF DOCUMENTS................................................25

Subp 00720

ARTICLE XII — TRANSACTIONS REQUIRING APPROVAL OF
        THE GENERAL MEMBER...................................................................26
    Section 12-1. - Matters Requiring Approval.................................................26
    Section 12-2. - Other Major Activities .......................................................27
    Section 12-3. - Approvals ...........................................................................27
    Section 12-4. - Other Actions Requiring Approval of the General Member .................27
    Section 12-5. - Exercise of Authority ........................................................28

ARTICLE XIII — AUXILIARIES AND RELATED GROUPS.
    Section 13-1. - Establishment ....................................................................28
    Section 13-2. - Board Approval .................................................................28

ARTICLE XIV — BONDING AND INDEMNIFICATION ...................................................28
    Section 14-1. - Bonding .............................................................................28
    Section 14-2. - Indemnification .................................................................28

ARTICLE XV — AMENDMENTS.................................................................................29

EXHIBIT 1 -- EQUITY CASH TRANSFER POLICY

Subp 00721

AMENDED AND RESTATED

BYLAWS

OF

SUTTER MATERNITY AND SURGERY CENTER OF SANTA CRUZ


ARTICLE I — NAME AND PRINCIPAL OFFICE

Section 1-1. - Name

The name of the Corporation shall be Sutter Maternity and Surgery Center of Santa Cruz. This Corporation is a nonprofit public benefit corporation organized under the California Nonprofit Public Benefit Corporation Law.  References in these Bylaws to "Corporation" shall mean Sutter Maternity and Surgery Center of Santa Cruz unless otherwise specified.

Section 1-2. - Principal Office and Place of Business

The principal office of the Corporation shall be located in or near the City of Santa Cruz, California, or the City of Sacramento, California, as may be set by resolution of the Board of Trustees from time to time.  The principal place of business of the Corporation shall be in or near the City of Santa Cruz.


ARTICLE II — PURPOSES

Section 2-1. - Primary Purposes

This Corporation was formed for the following primary purposes as set forth in its Articles of Incorporation to:

A. Own, establish, equip and operate a nonprofit short stay hospital for the reception and care of the sick, injured and disabled, with permanent facilities that include in-patient beds and medical service; to provide diagnosis and treatment for patients, specifically for obstetric, outpatient and short stay surgery procedures; and to provide associated services, including, without limitation, diagnostic imaging, clinical laboratory and pharmacy;

B. Establish, operate and maintain one or more nonprofit home health agencies, for the care of the sick, injured and disabled, and to provide associated services, and hospice care in furtherance of this Corporation's charitable purposes;

DEC_Bylaws_SMSCSC_9-02.doc                    1
SMSCSC_Bylaws

C.   Promote and carry on educational activities related to the care of the sick, injured and disabled, or to the promotion of health;

D.   Promote and carry out scientific and medical research related to the care of the sick, injured and disabled;

E.   Promote or carry out such other activities as may be deemed advisable for the betterment of the general health of the community served; and

F.   Contribute to the growth, development and financial strength of Sutter Health, a California nonprofit public benefit corporation.

### Section 2-2. - General Purposes

The general purpose of this Corporation is to have and exercise all rights and powers conferred on nonprofit public benefit corporations under the laws of the State of California.

### ARTICLE III - MEMBERSHIP

### Section 3-1. General Membership

There shall be one member of this Corporation who shall be Palo Alto Medical Foundation for Healthcare, Education and Research, a California nonprofit public benefit corporation (the "General Member" or "Palo Alto Medical Foundation"). The General Member, and only the General Member, shall be entitled to exercise fully all rights and privileges of members of nonprofit corporations under the California Nonprofit Public Benefit Corporation Law, and all other applicable laws. The rights and powers of the General Member shall also include, without limitation, the following: the limitation on liabilities described in Section 3-4 of these Bylaws; the rights and powers to appoint (and remove) the appointed members of the Board of this Corporation, subject to Section 5-4 of these Bylaws; and the exercise of all of the rights and powers set forth in Article XII of these Bylaws. The General Member may not be expelled or suspended as the General Member without its consent. Any reference in these Bylaws to the "member," "Member," "general member," "General Member," "corporate member," or "Corporate Member" of this Corporation, or any similar such reference, shall mean Palo Alto Medical Foundation for Healthcare, Education and Research, California nonprofit public benefit corporation.

### Section 3-2. - Transfer of Membership

The General Member may not transfer its membership or any rights arising therefrom.

### Section 3-3. - Exercise of Membership Rights

The General Member of this Corporation shall exercise its membership rights through its own Board of Directors. Subject to the provisions of the General Member's own bylaws, and except as otherwise provided in these Bylaws where a super-majority vote of the Board of Directors of the General Member is required, the Board of Directors of the General Member may,

Subp 00723

by resolution, authorize a person or committee of persons to exercise its vote on any matter to come before the membership of this Corporation. In addition, the General Member may exercise its membership rights at any regular or special meeting of the Board of Directors of the General Member. The functions required by law or these Bylaws to be performed at the annual membership meeting or any regular or special meeting of the members of this Corporation may be performed at any regular or special meeting of the General Member's own Board of Directors.

Section 3-4. - Liabilities and Assessments

The General Member, as such, shall not be liable for the debts of this Corporation. The Board of this Corporation shall have no power to levy and collect assessments on the General Member. The provisions of this paragraph cannot be amended in any manner.

## ARTICLE IV — SYSTEM AFFILIATION

Section 4-1. - Affiliated Status

This Corporation is one of several affiliated corporations that comprise a multi-institutional health care system (the "System").

Section 4-2. - Participation in Activities of the General Member

The Board of this Corporation shall submit nominees to the General Member in order to enable the General Member to appoint members of this Corporation's Board or officers of this Corporation to serve on the General Member's corporate Board of Directors and/or its committees as appropriate to ensure the General Member's continued qualification as a "supporting organization" under section 509(a)(3) of the Internal Revenue Code of 1986, as amended from time to time, or successor provisions.

Section 4-3. - Cash Concentration

Subject to the provisions of Section 4-8 of these Bylaws, the Corporation shall participate in the Cash Concentration and Controlled Disbursement Program prescribed by the General Member and in effect from time to time.

Section 4-4. - Equity Cash Transfer Policy

Subject to the provisions of Section 4-8 of these Bylaws, the terms of the Equity Cash Transfer Policy contained in Exhibit 1 to these Bylaws are incorporated into and made part of these Bylaws. Neither donor originated funds nor the earnings therefrom shall be subject to the Equity Cash Transfer Policy.

Section 4-5. - Payment of Allocation Fee

Subject to the provisions of Section 4-8 of these Bylaws, this Corporation shall pay the allocation fees necessary to maintain the operation of the General Member.

Subp 00724

Section 4-6. - Cost of Capital Allocation Policy

Subject to the provisions of Section 4-8 of these Bylaws, the Corporation shall participate in the Cost of Capital Allocation Policy prescribed by the General Member and in effect from time to time.

Section 4-7. - Representation on the Board of Directors

The President and CEO of the General Member may designate, by written notice to the Secretary of this Corporation, up to two (2) voting members of the Board.. Any residency requirement applicable to directors shall not apply to the voting directors described in this Section 4-7. The President and CEO of the General Member may revoke any such designation effective upon delivery of written notice thereof to the Secretary of this Corporation. The President and CEO of the General Member and the Vice Chair of the General Member may each attend any Board meeting. This Section 4-7 supersedes any other provision in these Bylaws relating to the participation of the President and CEO and/or the Chair of the General Member as voting or non-voting directors of this Corporation. To the extent necessary, the authorized number of directors of this Corporation shall be increased by up to two (2) persons so that this Section 4-7 can be implemented without the removal or resignation of any current director of this Corporation.

Section 4-8. - Effect of Policies

This Corporation's obligations under Sections 4-3 through 4-6 and the policies described therein shall be subject to all agreements with and obligations to third parties (including without limitation bond indentures) to which this Corporation is a party or is bound at the time this Section 4-8 is adopted or which are otherwise approved by the General Member after the adoption of this Section 4-8.

Section 4-9. Policies Required of Affiliated Entities

Except for tax-exempt entities which are primarily fundraising foundations, this Corporation shall prescribe the policies described in Sections 4-3 through 4-6 to the tax-exempt entities which this Corporation owns or controls or which this Corporation is a member. As to those entities, the policies shall be subject to all agreements with and obligations to third parties, Healthcare Districts and any other member of the affiliated entity (including without limitation bond indentures) to which the entity is a party or is bound at the time this Section 4-9 is adopted or which are otherwise approved by the General Member after the adoption of this Section 4-9.

Section 4-10. Compliance Program

This Corporation shall adopt a Compliance Program consistent with Sutter Health Compliance Program Plan which shall include the following:

A.    All Board Members shall receive Compliance training consistent with Sutter Health Compliance Program Plan.

Subp 00725

B.  The Board shall have oversight of and ultimate responsibility for an effective Compliance Program including adoption of related compliance policies.

C.  The Board or a Committee of the Board shall receive and review routine and special Compliance reports on a regular basis.

D.  The Board shall delegate to Corporation's Chief Executive Officer responsibility to implement Compliance Program in accordance with Sutter Health Compliance Program Plan.

## ARTICLE V — TRUSTEES

### Section 5-1. - Number, Qualification, Selection

A.  The authorized number of members of the Board shall be no fewer than six (6) nor more than fifteen (15) including *ex officio* board members. The exact number of Trustees, within these limits, shall be set by the General Member based upon the recommendations of the Board. All Trustees shall be eligible to vote.

B.  Not more than forty-nine percent (49%) of the persons serving as Trustees at any time may be interested persons. An interested person is:

    1.  Any person being compensated by the Corporation for services rendered to it within the previous 12 months, whether as a full-time or part-time employee, independent contractor or otherwise, excluding any reasonable compensation paid to a Trustee as Trustee; or

    2.  Any brother, sister, ancestor, descendant, spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law or father-in-law of any such person.

However, any violation of the provisions of this Section 5-1B shall not affect the validity or enforceability of any transaction entered into by the Corporation.

C.  The Administrator of this the Hospital; the Chief of the Medical Staff; the Chief Executive Officer, Sutter Santa Cruz; the Executive Director of the VNA; and two representatives of the General Member as provided in Section 4-7 above shall each be *ex officio* Trustees with full voting rights on the Board. All other Trustees shall be elected by the General Member as herein set forth.

D.  Elected Trustees shall be chosen for their willingness and ability to effectively contribute to and support the objectives of the Corporation. Composition of the Board should reflect a breadth of diversity of community interests that is in keeping with the broad role of the Corporation in the community.

Subp 00726

E.    At the annual membership meeting, in addition to whatever other business that may be conducted, the General Member shall elect replacements for Trustees whose terms will expire prior to the next annual meeting of the membership. Trustees shall be elected by vote of the General Member from a slate of nominees selected as described at Section 5-5 of these Bylaws.

F.    The terms of all Elected Trustees shall be for three years, and appointments shall be staggered. In order to effect staggered terms, the initial directors may have shorter terms than three years. No Elected Trustee may serve for more than three consecutive three-year terms. (A partial term shall not be counted as a term for this limitation.) A Trustee shall hold office until the earlier of: (1) the expiration of the term for which such Trustee was elected and either such Trustee's successor is elected and qualified or the Board declares such Trustee's position to be vacant; or (2) the death, resignation or removal of the Trustee. None of the foregoing provisions apply to ex officio Trustees.

## Section 5-2. - Powers and Responsibilities

Except as otherwise provided by the Articles of Incorporation or these Bylaws, the powers of the Corporation shall be exercised, its property controlled and its affairs conducted by or under the direction of the Board. The Board shall promulgate policies consistent with any systemwide policies adopted by the System.

## Section 5-3. - Compensation

Trustees shall serve without compensation except for reimbursement for reasonable expenses and as otherwise specifically provided by a resolution of the Board. In keeping with the nonprofit status of the Corporation, no Trustee shall benefit financially from his/her position as a Trustee.

Trustees may be reimbursed for all out-of-pocket expenses incurred in attending meetings and carrying out duties and functions directly related to the Corporation's business.

## Section 5-4. - Conflict of Interest

The Board shall promulgate written policies regarding conflict of interest related to Trustees, salaried persons of the Corporation and employees of the Medical Staff. Such policies shall not be inconsistent with the standards of conduct set forth in Sections 5230 through 5239 of the California Corporations Code, or successor provisions. Such policies shall ensure full disclosure of financial interests and transactions where conflict of interest is a possibility, and shall ensure the avoidance of potential conflict of interest in choosing new Trustees. Such policies shall impose upon each Trustee the responsibility to be alert to possible conflicts of interest of himself/herself or of other Trustees, and shall require that each Trustee declare his/her absence of conflict of interest on a declaration form provided for that purpose and disqualify himself/herself from making a decision where he/she has a conflict of interest.

Subp 00727

Section 5-5. - Nominations

Persons nominated for Trustees, including but not limited to, nominations for full terms and nominations to fill vacancies created by resignation, removal or death occurring during a term, shall be proposed by the Executive Committee. The slate of nominees shall be selected by the Board and shall include, but need not be limited to, the nominees proposed by the Executive Committee. The General Member may also propose its own candidate to add to the nominees proposed by the Board.

## ARTICLE VI — MEETINGS OF THE BOARD

Section 6-1. - Regular Meetings of the Board

Regular meetings of the Board shall be held at least quarterly at such time and place as the Board shall from time to time determine.

Section 6-2. - Special Meetings of the Board

Special meetings of the Board may be called at any time by the Chairperson of the Board, any three Trustees or the General Member.

Section 6-3. - Annual Organizational Meetings of the Board

Annually, no later than 30 days following each annual membership meeting, the Board shall meet for the purpose of electing the officers, and the members and chairpersons of committees.

Section 6-4. - Place of Meetings of the Boar

All regular meetings of the Board, except as herein otherwise provided, shall be held at the principal office of the Corporation or such other place within the State of California as the Chairperson of the Board or the Trustees requesting such a meeting may designate.

Section 6-5. - Notice

Special meetings of the Board shall be held upon no less than four days' notice to each Trustee by first-class mail or 48 hours' notice to each Trustee delivered personally or by telephone, telegraph or facsimile transmission. The attendance of a Trustee at any meeting shall constitute a waiver of notice of the meeting, except where a Trustee attends a meeting only for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened.

Section 6-6. - Quorum

A majority of the whole number of Trustees presently serving and empowered to vote shall constitute a quorum for the transaction of business. However, a majority of those present at the time and place of any meeting, although less than a quorum, may adjourn the same from time

Subp 00728

to time or from day to day, without further notice, until a quorum shall attend, and when a quorum shall attend, any business may be transacted which might have been transacted at the meeting had the same been held on the day on which the same was originally appointed or called.

## Section 6-7. - Manner of Acting

The act of a majority of Trustees empowered to vote and present at a meeting at which a quorum is present shall be the act of the Board, unless the act of a greater number is required by law or these Bylaws.

## Section 6-8. - Presiding Officer

The Chairperson of the Board, or in his/her absence, the Vice Chairperson, or in the absence of both, a Chairperson selected by the Trustees present, shall call the meeting to order and shall preside.

## Section 6-9. - Telephonic Meetings

Trustees may participate in a regular or special meeting of the Board through use of conference telephone or similar communications equipment, so long as all Trustees participating in such meeting can hear one another. Participation in a meeting pursuant to this Section 6-9 constitutes presence in person at such meeting.

## Section 6-10. - Action in Lieu of Meeting of the Board

Any action required or permitted to be taken by the Board may be taken without a meeting, if all Trustees shall individually or collectively consent in writing to such action. Such written consent or consents shall be filed with the minutes of proceedings of the Board. Such action by written consent shall have the same force and effect as the unanimous vote of the Trustees.

## ARTICLE VII — OFFICERS

## Section 7-1. - General

The officers of the Corporation shall be a Chairperson of the Board, a Vice Chairperson, an Administrator, a Chief Financial Officer and a Secretary. The Corporation may also have, at the discretion of the Board, one or more Assistant Secretaries and such other officers as may be appointed in accordance with the provisions of Section 7-3. Offices may be held by the same person except that neither the Chief Financial Officer nor the Secretary may serve concurrently as Chairperson of the Board or as the Administrator.

## Section 7-2. - Qualification, Election, Term of Office and Removal

If the Corporation's business is managed pursuant to a Management Services Agreement with a third party, the Administrator shall be as provided under the Management Services

Subp 00729

Agreement. However, any Management Services Agreement shall provide that the selection of the Administrator is subject to the approval of the Board. Otherwise, the selection and appointment of the Administrator shall be in accordance with the provisions of Section 7-8 A. The Administrator shall select the Chief Financial Officer. All other officers of the Corporation shall be chosen by the Board, and shall serve at the pleasure of the Board, subject to the rights, if any, of an officer under any contract of employment. The Chairperson, Vice Chairperson and Secretary shall be selected from persons who are Trustees. However, a Trustee may not be appointed an officer until he/she has served at least one year term. The officers shall serve for one-year terms or until successors have been elected, but must be elected each year in January. The Chairperson may serve no more than three consecutive one-year terms. Except as otherwise specified in Section 7-8A of these Bylaws, regarding removal of the Administrator, any officer may be removed as an officer with or without cause by a majority of the whole number of Trustees presently serving and empowered to vote. Any removal as an officer shall not affect the officer's status as a Trustee.

Section 7-3. - Subordinate Officers, Etc.

The Board may appoint such other officers as the business of the Corporation may require, each of whom shall hold office for such period, have such authority and perform such duties as are required in these Bylaws or as the Board may from time to time determine.

Section 7-4. - Resignation

Any officer may resign at any time by giving written notice to the Board, subject to the rights, if any, of the Corporation under any contract to which the officer is a party. Any such resignation shall take effect at the date of the receipt of such notice or at any later time specified therein; and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Section 7-5. - Vacancies

A vacancy in any office because of death, resignation, removal, disqualification or any other cause shall be filled in the manner prescribed in these Bylaws for regular appointments to such office.

Section 7-6. - Chairperson of the Board

The Chairperson of the Board shall preside at all meetings of the Board. The Chairperson of the Board shall exercise and perform such other powers and duties as may be prescribed by the Board from time to time. The Chairperson of the Board shall be an ex officio member of all committees.

Section 7-7. - Vice Chairperson

The Vice Chairperson, in the absence, inability or refusal of the Chairperson of the Board to act, shall have the same powers and duties as the Chairperson of the Board and shall have, in addition, any powers and duties that the Chairperson of the Board from time to time delegates to

Subp 00730

him/her. The Vice Chairperson shall have such other powers and perform such other duties as may be assigned to him/her by the Board or these Bylaws.

## Section 7-8. - Administrator

### A.    Appointment, Compensation and Removal

The President and CEO of the General Member shall screen candidates when the chief executive officer (the "Administrator") is to be hired and shall present finalists to the Board of this Corporation for selection. The Administrator shall be an employee of the General Member. The compensation committee of the Board of this Corporation shall meet with and provide an evaluation of the Administrator and shall make compensation recommendations, based on an agreed upon salary system and survey process, to the President and CEO of the General Member, or his or her designee, who shall make the final determination. The Administrator shall serve at the pleasure of the General Member, acting through its President and CEO, and the Board of this Corporation, each of which, with the approval of the other, may terminate the services of the Administrator.

### B.    Responsibilities and Authority

The Administrator shall be the general manager, chief executive officer and administrator of this Corporation. The Administrator shall be given the necessary authority and responsibility to operate this Corporation in all of its activities, including without limitation, quality of services, cost effectiveness and economic performance and implementation of System strategies, subject to the following: With respect to policy development, program planning, employee and community relations, the Administrator shall be subject to such policies as may be adopted and such orders as may be issued by the Board of this Corporation or by any of its committees to which the Board has delegated the power for such action; with respect to program execution and overall management performance, the Administrator shall be subject to the authority of and shall report to the Board; with respect to strategies of the local delivery system operated by this Corporation and overall operations of that system, the Administrator shall be responsible to the President of the General Member. The Administrator shall also periodically report to the President and CEO of the Member or his/her designee on the affairs of this Corporation. The Administrator shall act as the duly authorized representative of the Board of this Corporation in all matters in which the Board has not formally designated some other person to so act.

### C.    Ex-Officio Board Membership

The Administrator shall be an *ex officio* voting member of the Board of this Corporation.

## Section 7-9. - Chief Financial Officer

The Chief Financial Officer, acting with the Executive and Corporate Resources Committees, shall keep and maintain, or cause to be kept and maintained, adequate and correct books and records of account in written form or any other form capable of being converted into written form. The Chief Financial Officer shall deposit all monies and other valuables in the name and to the credit of the Corporation with such depositories as may be designated by the

Subp 00731

Board. The Chief Financial Officer shall reimburse all funds of the Corporation as may be ordered by the Board. The books of account shall at all times be open to inspection by the Administrator, any Trustee and the General Member. The Chief Financial Officer shall have such other powers and perform such other duties as may be prescribed by the Board or these Bylaws.

Section 7-10. - Secretary

The Secretary shall keep, or cause to be kept, a book of minutes in written form of the proceedings of the Board and committees of the Board. Such minutes shall include all waivers of notice, consents to the holding of meetings or approvals of the minutes of meetings executed pursuant to these Bylaws or the California Nonprofit Public Benefit Corporation Law. The Secretary shall give, or cause to be given, notice of all meetings of the Board required by these Bylaws or the California Nonprofit Public Benefit Corporation Law to be given. The Secretary shall have such other powers and perform such other duties as may be prescribed by the Board or these Bylaws.

Section 7-11. - Assistant Secretary

The Assistant Secretary, if there shall be such an officer, shall have all the powers and perform all the duties of the Secretary in the absence or inability of the Secretary to act. The Assistant Secretary shall have such other powers and perform such other duties as may be prescribed by the Board or these Bylaws.

Section 7-12. - Compensation

The compensation of the Chief Financial Officer shall be fixed from time to time by the Administrator. The compensation, if any, of the other officers shall be fixed from time to time by the Board. No officer shall be prevented from receiving such compensation because the officer is also a Trustee of the Corporation.

## ARTICLE VIII — COMMITTEES

Section 8-1. - General

Except as specified in these Bylaws or in any resolution creating an additional committee, the members and chairperson of each committee shall be selected by the Board at the annual organizational meeting of the Board. The chairperson and all other members of each committee shall hold office for one year or until their successors are elected. Except as specified for the Executive Committee, the Chairperson of the Board shall have the power to fill any vacancies that occur on committees for the remainder of the year.

With the exception of the Executive Committee and the Medical Policy Committee, persons may be appointed to committees who are not Trustees of the Corporation; however, such persons may not be a chairperson of the committee. The Chairperson of the Board, or his/her designee, shall be an ex officio advisory and consulting member of each committee, and all

DEC_Bylaws_SMSCSC_9-02.doc
SMSCSC_Bylaws

11

Subp 00732

committees deliberating on issues affecting the discharge of Medical Staff responsibilities shall include, in at least an advisory and consulting capacity, a physician member of the Medical Staff.

The provisions of Sections 6-5, 6-6, 6-7, 6-9 and 6-10 of these Bylaws, regarding notice, quorum, manner of acting, telephone meetings and action in lieu of a meeting shall apply to committees of the Board. All committees of the Board shall keep minutes of their meetings, which shall be filed with the Secretary of the Board.

Section 8-2. - Executive Committee

A.    Composition. The Executive Committee shall consist of the Chairperson of the Board who shall serve as chairperson of the committee, the Vice Chairperson, the Secretary, the senior Sutter Health employee on the Board or his/her designee and the Administrator.

B.    Responsibilities and Authority. The affairs and management of the Corporation shall be supervised by the Executive Committee which shall have power to transact all regular business of the Corporation during the period between meetings of the Board, subject to any prior limitations imposed by the Board and subject to the limitations of California Corporations Code Section 5212, or successor provisions. Additionally, the Executive Committee shall review, at least every two years, the corporate Bylaws and recommend revisions as necessary to ensure compliance with applicable statutes, regulations, licensing and accreditation requirements. The Executive Committee shall also recommend to the Board nominees for Trustees (including nominees to fill vacancies created by expiration of a term as well as by resignation, removal or death); and may recommend nominees for the officers of this Corporation.

C.    Accountability. The Executive Committee shall meet only as necessary. If the Executive Committee takes action, it shall report at the next regular Board meeting the results of actions that it has taken within the authority delegated to it, so that the Board maintains accountability from the Executive Committee for its actions. Minutes of all meetings of the Executive Committee shall be distributed to all Board members for information and any necessary actions.

Section 8-3. - Corporate Resources Committee

A.    Composition. The Corporate Resources Committee shall consist of the Sutter Santa Cruz Chief Executive Officer, who shall serve as chairperson of the committee; the Sutter Santa Cruz Chief Financial Officer; the Sutter Maternity and Surgery Center's Administrator; two (2) non-physician, non-employee Trustees, one (1) of whom shall be the Board Chairperson; three (3) members of the medical staff of the Sutter Maternity and Surgery Center, including the Santa Cruz Medical Clinic Chairperson, and two (2) members of the active medical staff at the Sutter Maternity and Surgery Center chosen by the Santa Cruz Medical Clinic partnership; and one (1) member selected by Sutter Health and the Palo Alto Medical Foundation.

Subp 00733

B.    Responsibilities and Authority.  This committee shall be responsible for the following financial and planning matters:

    1.    This committee shall be responsible for supervising the management of the pension funds, and for overseeing the management of the Corporation's assets and ensuring that financial records are maintained in accordance with Generally Accepted Accounting Principles.  It shall see that an annual operating budget and an annual capital budget are prepared and submitted to the Board in a timely fashion.  The committee shall examine periodic financial reports and receive explanations from the Administrator regarding variations from the budget.  The committee shall also supervise and review the results of all outside audits, and recommend action thereon, if any, to the Board.

    2.    The committee shall also:

        a.    Consider and recommend plans for securing capital and operating funds for the Corporation;

        b.    Assist in the preparation and modification of long-range and short-range development plans to assure that the health care program is attuned to meeting the health needs of the community served by the Corporation, including periodic reexamination of the Corporation's purposes, goals, policies and current programs for delivery of health services;

        c.    Review the financial feasibility of, and availability of resources for, corporate projects, acts and undertakings referred to it by the Board and make recommendations thereon to the Board; and

        d.    Perform such other duties related to fiscal and planning matters as may be assigned to it by the Board or its Chairperson.

The committee shall exercise its responsibilities and authority in a manner consistent with any guidelines or policies established by the General Member.

C.    Accountability.  This committee shall report at regular meetings of the Board or the Executive Committee, its findings on periodic reports of the fiscal operation.  It shall present annually to the Board a report reflecting anticipated operating and capital expenditures and receipts for the ensuing year, and such other budgets and planning reports as requested by the Board.

Subp 00734

Section 8-4. - Medical Policy Committee

A.  Composition. The Medical Policy Committee shall consist of three Elected Trustees, including the Chairperson of the Board (or his/her designee), and the Director of Nursing (or his/her designee), who need not be a Board member. The Administrator and the Chief of Staff shall serve as ex officio members of the Medical Policy Committee, without vote. A member of the Corporation's management team shall be named by the Administrator to serve as administrative staff person to the Medical Policy Committee.

B.  Responsibilities. The Medical Policy Committee shall assist the Board to discharge its corporate responsibility for the quality of the medical care rendered in its facilities by establishing, maintaining and improving means of holding the Medical Staff accountable for all its activities within the Corporation's facilities. The Medical Policy Committee shall give support, guidance and counsel to the Administrator and Medical Staff in their respective functions and activities. The Medical Policy Committee shall.

1.  Advise and make recommendations to the Board on all Medical Staff matters;

2.  See that appropriate standards for the screening of all applications to the Medical Staff are established, maintained and improved as necessary, and ensure compliance with those standards;

3.  Review and recommend to the Board on all applications for appointment and reappointment to the Medical Staff, including privileges to be granted (except applications for temporary appointments and privileges which have been granted by the Administrator);

4.  Review and recommend to the Board on all recommendations from the executive committee of the Medical Staff;

5.  Receive and review specific reports needed to ascertain if Medical Staff functions are being properly discharged;

6.  Hold Medical Staff officials accountable for carrying out the Medical Staff functions of reviewing, analyzing, evaluating and trending clinical work, and for making appropriate recommendations in accordance with the findings therefrom;

7.  Hold Medical Staff officials accountable for seeing that all members of the Medical Staff comply with Medical Staff bylaws, rules and regulations and all Corporation promulgated policies;

Subp 00735

8. Determine the extent of compliance with the JCAHO standards and recommendations on medical matters, and make recommendations accordingly;

9. Meet at regular intervals and maintain a record of its proceedings; and

10. Cause review of Medical Staff bylaws and rules and regulations.

C. Authority. The Medical Policy Committee shall have the authority to:

1. Grant temporary appointments and privileges to Medical Staff applicants, when appropriate and necessary (such authority is also vested with the Administrator);

2. Determine and request whatever studies, investigative reports or statistics concerning Medical Staff activities and functions it deems essential to discharging its responsibilities;

3. Reject any reports from the Medical Staff or its officials not considered complete;

4. After conference with the Administrator and Chief of Staff, require any member of the Medical Staff to appear before it for any appropriate reason; and

5. Invite any officer of the Medical Staff to meet and confer with the Medical Policy Committee.

The authority delegated to the Medical Policy Committee shall be exercised in a manner consistent with any provisions for fair procedure, if applicable, afforded each member of the Medical Staff as outlined in the Medical Staff bylaws and by California law, and with any guidelines or policies established by the System's Systemwide Quality Review Committee; provided, however, nothing in these bylaws or the System's guidelines or policies shall prevent this Corporation from adopting and implementing higher standards than those established by the Systemwide Quality Review Committee.

D. Accountability. The Medical Policy Committee shall at all times be accountable to the Board and shall fulfill that accountability by:

1. Submitting quarterly a written report, and recommendations where appropriate, to the Board regarding:

a. Applications to the Medical Staff;

b. Studies pertaining to medical care appraisal; and

Subp 00736

        c.    Any matters considered in need of Board deliberation.

2.    Submitting status reports describing studies and reports in progress pertaining to the effectiveness of the Medical Staff in carrying out its required surveillance functions;

3.    Reporting to the Executive Committee of the Board whenever so requested by the Chairperson of the Board;

4.    Submitting a report on any aspect of its activities whenever so requested by the Board; and

5.    Establishing a mechanism whereby the Medical Policy Committee's effectiveness shall be evaluated.

### Section 8-5. - Ad Hoc Committees

A.    Composition. Ad hoc committees may be appointed by the Board for such special purposes as circumstances warrant (for example, to convene a Joint Conference Committee in order to resolve conflicts between Board, management and Medical Staff). Individuals not on the Board but having special knowledge or background may be appointed to serve on such committees.

B.    Responsibilities and Authority. Activities of an ad hoc committee shall be limited to the accomplishment of those tasks for which it was appointed. The committee shall have no powers except those specifically conferred by the Board.

C.    Accountability. All ad hoc committees shall report directly to the Board. Upon completion of the stated purpose for which it was formed, the committee shall be discharged.

### Section 8-6. – Professional Advisory Board.

A.    Purposes.

The purpose of the Professional Advisory Board is to comply with Medicare Conditions of Participation Section 484.16 which requires the Corporation to maintain a group of professional personnel for advising and evaluating home health agency services.

B.    Composition.

The members of the Professional Advisory Board shall be selected by the Board of Trustees, administration or the current members of the Professional Advisory Board. Nominations to the Professional Advisory Board may be made at any time. Appointments to the board are made on an annual basis for one year terms. The Professional Advisory Board shall consist of professional personnel familiar

Subp 00737

with home health agency issues, with at least one non-employee/non-owner, one physician, one registered nurse, and with appropriate representation from other professional disciplines who are qualified to evaluate programs and provide recommendations regarding the quality of care issues relevant to the community and in particular programs for home health patients.

C.    Responsibilities and Authorities.

The Professional Advisory Board shall establish and annually review the home health agency's policies governing scope of services offered, admission and discharge policies, medical supervision and plans of care, emergency care, clinical records, personnel qualifications and program evaluation.

D.    Accountability.

The Professional Advisory Board shall meet as frequently as needed to advise the Board on home health agency professional issues, to participate in evaluation of the home health agency's programs and to assist the home health agency in maintaining liaison with other health care providers in the community and in the agency's community information program. The meetings of the Professional Advisory Board shall be documented by dated minutes. The Professional Advisory Board shall also periodically submit a report to the Board through the Corporate Resources Committee containing the results of actions it has taken within the authority delegated to it and shall report any findings and recommendations. The Professional Advisory Board shall present annually to the Board a report on the operational and fiscal conduct of the home health agency operated by the Corporation.

Section 8-7. - Hospital Development Foundation

A.    Number and Selection of Hospital Development Foundation Board Members.

There shall be no fewer than 6 and no more than 21 members of the Hospital Development Foundation Board ("Foundation Board"), all of whom shall be selected by the Corporation Board.

The Chair of the Board of Trustees of the Corporation Board or his/her designee, the Development Director, the CEO of Sutter Santa Cruz, the Hospital Administrator; and the Executive Director of Visiting Nurse Association shall be *ex officio* voting members of the Foundation Board. All *ex officio* Foundation Board members serve by reason of their official capacity, and the resignation or removal of any such person from office shall automatically terminate such person's membership on the Foundation Board.

The remaining members of the Foundation Board shall consist of the following: one physician from the medical staff of Sutter Maternity and Surgery Center of Santa Cruz, who shall be chosen by the Corporation Board; one "at-large" member of the Corporation Board, who shall be appointed by the Chair of the Corporation Board;

Subp 00738

members who broadly represent the Hospital community of Santa Cruz and who are experienced in organizational and community activities, to be nominated by the Nominating Committee of the Corporation Board and approved by the Corporation Board.

Not more than forty-nine percent (49%) of the Foundation Board members shall be persons currently compensated by this Corporation (excluding any reasonable compensation paid such person as a director) or any close relative of such person.

1.   Term. Each Foundation Board member (other than *ex officio* members) shall hold office for a term of (3) three years, or until his or her successor has been elected or appointed, and thereafter qualified. A Foundation Board member may not serve more than three (3) consecutive terms.

2.   Vacancies. A vacancy on the Foundation Board, whether by death, resignation or removal may be filled by the Corporation Board at a regular or special meeting of the Corporation Board. The Nominating Committee of the Corporation Board shall nominate persons to fill such vacancies as they occur. A Foundation Board Member appointed to fill a vacancy shall be appointed in accordance with the qualifications set forth in Section 8-7 A and shall be appointed for the unexpired term of his or her predecessor.

B.   Duties and Authority of Foundation Board.

Except to the extent that such duties are exercised by the Corporation Board, the Foundation Board shall have the following duties and powers:

1.   To develop resources, funding and community support for the benefit of the entities of Sutter Santa Cruz and the communities it serves;

2.   To solicit, receive and maintain gifts of money and property and to distribute money and property to the entities of Sutter Santa Cruz and the communities it serves;

3.   To engage in and conduct charitable activities; and

4.   To promote and carry on such other activities as may be deemed advisable for the betterment of the general health of the communities it serves.

C.   Advisory Role.

The Foundation Board shall, in the discretion of the Corporation Board, advise the Corporation Board with respect to charitable, educational and scientific activities. Such advice may include, but is not limited to, all matters and decisions that are related to the Foundation Board's purposes as stated above in Section 8-7 B.

Subp 00739

D.    Organization.

The Foundation Board shall establish and by resolution, rule or regulation provide for its organization, policies and procedures pertinent to all activities assigned to it by these Bylaws, or as may be delegated to it from time to time by the Corporation Board. Such organization may include, but is not limited to, the times, places and occasions of regular and special meetings of the Foundation Board (including telephonic meetings), actions by the written consent of its members in lieu of a meeting, the quorum required for the conduct of its business, the title and function of the officers of the Foundation Board.

The provisions of Article VI Sections 1-10 of these Bylaws, regarding notice, quorum, manner of acting, and action in lieu of a meeting, shall apply to Foundation Board Meetings.

Written minutes of the Foundation Board Meetings shall be provided to the Corporation's Board.

E.    Compensation of the Foundation Board Members.

Members of the Foundation Board shall serve without compensation.

F.    Foundation Officers

1.    General.  The Officers of the Foundation shall be a Foundation Chair, a Foundation Vice Chair, a Development Director, a Foundation Treasurer and a Foundation Secretary. The Foundation Board may select such other officers, each of whom shall hold office for such period and shall have such power and duties as the Foundation Board may authorize from time to time. Offices may be held by the same person except that neither the Foundation Treasurer nor the Foundation Secretary may serve concurrently as Foundation Chair.

2.    Qualification, Election and Term of Office.  The Foundation Chair shall be chosen by the Foundation Board, subject to the approval of the Corporation Board. The Foundation Vice Chair, Foundation Treasurer and Foundation Secretary shall be elected by the Foundation Board among its own membership, taking into account the recommendations of the Corporation Board. These officers shall serve for one-year terms or until successors have been elected, but must be elected each year. The Foundation Chair may serve no more than three (3) consecutive one (1) year terms. Foundation officers serve at the pleasure of the Foundation Board and any officer may be removed without cause by a majority vote of the Foundation Board Members. A vacancy in any office may be filled for the unexpired term by a vote of the Foundation Board, provided that any replacement of the Foundation Chair shall be subject to the approval of the Corporation Board.

Subp 00740

3.     <u>Foundation Chair.</u>    The Foundation Chair shall preside at all meetings of the Foundation Board and all meetings of the general membership. The Foundation Chair shall provide advice and counsel to the Foundation and its Board, and shall exercise and perform such other powers and duties as may be prescribed by the Foundation Board from time to time. The Foundation Chair shall serve without remuneration, and shall be an *ex officio* voting member of all Foundation committees. The Foundation Chair may delegate any of his or her powers to the Foundation Vice Chair.

4.     <u>Foundation Vice Chair.</u> The Foundation Vice Chair, in the absence, inability or refusal of the Foundation Chair to act, shall have the same powers and shall perform all the duties as the Foundation Chair and shall have, in addition, any powers and duties and the Foundation Chair or the Foundation Board from time to time delegates to him or her, and shall serve without remuneration.

5.     <u>Development Director.</u> The Development Director shall be the chief operation officer of this Foundation. The appointment, qualifications, authority and responsibilities of the Development Director shall be in accordance Section 8-7 G of these Bylaws.

6.     <u>Foundation Treasurer.</u> The Foundation Treasurer shall keep and maintain or cause to be maintained adequate and correct accounts of the properties and business transactions of the Foundation, including accounts of its assets, liabilities, receipts, disbursements, gains and losses.

7.     <u>Foundation Secretary.</u> The Foundation Secretary shall be responsible to cause appropriate notices and agendas to be prepared and sent for all meetings of the Foundation Board, shall act as custodian of all records and reports, and shall be responsible to cause the keeping and reporting of adequate records of all meetings of the Foundation Board.

G.     <u>Development Director</u>

1.     <u>Selection and Retention.</u> Subject to the advice and consent of the Corporation Board, the Hospital Administrator and Visiting Nurse Association Executive Director shall select and appoint a Development Director who shall be the chief operating officer of the Foundation and shall be the Foundation Board's direct executive representative in the management of the Foundation. The Hospital Administrator and the Visiting Nurse Association Executive Director shall have the power to terminate the services of the Development Director.

2.     <u>Responsibilities.</u> The Development Director shall be given the necessary authority and responsibility to operate the Foundation in all of its activities, subject to the following; with respect to policy development,

Subp 00741

program planning, employee and community relations, he or she shall be subject to such policies as may be adopted and such orders as may be issued by the Corporation Board or by any of its committees; and with respect to program execution and overall management performance, he or she shall be subject to the authority of and shall report to the Hospital Administrator and the Visiting Nurse Association Executive Director. He or she shall act as the duly authorized representative of the Foundation Board in all matters in which the Foundation Board has not formerly designated some other person to so act.

## ARTICLE IX — PROVISION OF MEDICAL CARE

### Section 9-1. - Responsibility for Medical Care

A.    The Board is responsible for the quality of medical care rendered in the Corporation's facilities. It shall discharge that responsibility by assuring that the organized Medical Staff carries out the specific quality control functions in accordance with guidelines established by the System's Systemwide Quality Review Committee, including, without limitation, the following:

1.    Reviewing, analyzing and evaluating clinical practice to determine the quality of medical care;

2.    Making recommendations to management and the Board for the establishment, maintenance, continuing improvement and enforcement of professional standards;

3.    Reporting regularly as required by the Medical Policy Committee in Section 8-4, on the quality of medical care in terms of professional standards;

4.    Recommending the appointment and reappointment of physicians to the Medical Staff and the delineation of their clinical privileges;

5.    Supervising and ensuring:

   a.    Compliance with the bylaws, rules and regulations for the Medical Staff; and

   b.    Carrying out the policies of the hospital concerning the functions outlined in those Medical Staff bylaws;

6.    Disciplining the members of the Medical Staff for violations of policies of the hospital and the Medical Staff bylaws, rules and regulations, within the limitations of the authority delegated by the Board;

Subp 00742

7.   Assisting in identifying community health needs and setting appropriate institutional goals to meet those needs; and

8.   Conducting formally structured ongoing programs of continuing medical education designed to meet the highest professional standards of care.

B.   The Board shall ensure that all active and provisional staff members are required to accept referrals from other members of the Medical Staff regardless of the patient's financial class or ability to pay.

C.   The Chief of Staff shall be responsible for the effective discharge of functions to be carried out by the Medical Staff.

D.   The Chief of Staff shall have the authority necessary to carry out his/her responsibilities as they are defined in the bylaws for the Medical Staff.

E.   The Chief of Staff shall work with the Administrator.

F.   The Board shall be responsible for:

1.   Making all appointments and reappointments to the Medical Staff and alterations of staff status;

2.   Granting clinical privileges;

3.   Disciplinary actions; and

4.   All matters relating to Medical Staff professional competence.

G.   In discharging these responsibilities, the Board shall assure that the safety and interest of the patients take precedence over all other concerns.

H.   The Board shall, through the Medical Staff organization and the functions assigned to it, maintain systems for:

1.   The establishment of professional standards and criteria by which to evaluate medical care;

2.   The continuing surveillance of professional practice and Medical Staff functions in order to determine the degree to which those professional standards and criteria are being met; and

3.   Gaining compliance with the predetermined standards and criteria when the systems of surveillance indicate they are not being met.

I.   No delegation to the Medical Staff shall preclude the Board from exercising the authority required to meet its responsibilities under these Bylaws.

Subp 00743

J.    Nothing in these Bylaws or the System's guidelines or policies shall prevent this Corporation from adopting and implementing higher standards than those established by the System's Systemwide Quality Review Committee.

## Section 9-2. - Medical Staff Organization

A.    Purposes. The Board shall organize, or cause to be organized, a Medical Staff, comprised of physicians for the following purposes:

1.    To serve as the primary means for accountability to the Board for the appropriateness of the professional performance and ethical conduct of its members and affiliates;

2.    To discharge specific quality control functions designed to ensure the continual upgrading of the quality of medical care rendered by the Medical Staff while at the same time assuring that the safety and interest of the patients shall take precedence over all other concerns; and

3.    To provide a structure whereby the Medical Staff members can become an integral part of the total hospital organization and participate in the institution's planning, policy setting and decision making process.

B.    Officials

1.    The Medical Staff bylaws shall provide for the selection of a Chief of Staff and other Medical Staff and department officers. The selection of the Chief of Staff and other Medical Staff officers shall be subject to approval by the Board.

2.    The Chief of Staff shall hold office for a one-year term and may serve two consecutive terms in that office.

## Section 9-3. - Medical Staff Bylaws

A.    Purpose of Medical Staff Bylaws. There shall be bylaws for the Medical Staff. The Medical Staff bylaws shall state the purpose and functions of the Medical Staff organization and they shall be in consonance with the purposes of the Medical Staff organization provided in Section 9-2. The Medical Staff bylaws shall provide an organizational framework necessary for the implementation of appropriate quality control programs as dictated by the prescribed functions of the Medical Staff organization. The Medical Staff bylaws shall define relationships, responsibilities, authority and methods of accountability for each Medical Staff official, department officer and committee. The Medical Staff bylaws will specifically assure that only a member of the Medical Staff with admitting privileges shall admit patients to the hospital; that only an appropriately licensed practitioner with clinical privileges shall be directly responsible for a patient's

Subp 00744

diagnosis and treatment within the area of his/her privileges; that each patient's general medical condition shall be the responsibility of a physician member of the Medical Staff; that each patient admitted to the hospital shall receive a baseline history and physical examination by a physician who is either a member of or approved by the Medical Staff and that other direct medical care of patients provided by allied health professionals, residents and medical students shall be under the appropriate degree of supervision by a licensed practitioner with clinical privileges.

B.    Drafting of Medical Staff Bylaws. The Medical Staff, through its officials and appropriate committees, shall be required to submit bylaws, rules and regulations for the Medical Staff organization in accordance with the requirements as set forth in Section 9-3A. The Medical Staff shall periodically review and, as necessary, submit to the Board revisions to its bylaws, rules and regulations.

C.    Approval of Medical Staff Bylaws. All such Medical Staff bylaws, rules and regulations for the Medical Staff shall be approved by the Board before becoming effective. Such approval shall not be unreasonably withheld.

## Section 9-4. - Hearing and Appeals

The Board shall assure that each member of the Medical Staff shall be afforded fair procedure with respect to all appointment and reappointment procedures and the granting, revocation, rescinding, reduction, removal or denial of Medical Staff privileges. The steps for affording such fair procedure to each member of the Medical Staff shall be carefully defined in the Medical Staff bylaws, and shall provide in detail for hearing and appeal procedures, and for notice to the aggrieved practitioner of his/her access to those procedures.

## Section 9-5. - Professional Liability Insurance

The Board shall ensure that each practitioner granted clinical privileges in the Corporation's facilities shall maintain professional liability insurance in not less than the minimum amounts as from time to time may be determined by the Board, based upon the recommendation of the executive committee of the Medical Staff or as required by Corporation's professional liability insurance carrier. The minimum amount of required coverage established pursuant to this provision shall not exceed the amount of professional liability insurance carried by the Corporation.

## ARTICLE X — RECORDS, REPORTS AND INSPECTION RIGHTS

## Section 10-1. - Maintenance of Articles and Bylaws

The Corporation shall keep at its principal office the original or copies of the Articles of Incorporation and the Bylaws as amended to date.

Subp 00745

## Section 10-2. - Maintenance of Other Corporation Records

The accounting books, records and minutes of proceedings of the Board and committees of the Board shall be kept at such place or places designated by the Board, or, in the absence of such designation, at the principal office of the Corporation. The minutes shall be kept in written or typed form, and the accounting books and records shall be kept in either written or typed form, or in any other form capable of being converted into written, typed or printed form.

## Section 10-3. - Inspection by Trustees or General Member

Except as otherwise limited by law, every Trustee and the General Member shall have the absolute right at any reasonable time to inspect all books, records and documents of every kind and the physical properties of the Corporation. This inspection by a Trustee or the General Member may be made in person or by an agent or attorney, and the right of inspection includes the right to copy and make extracts of documents.

## Section 10-4. - Annual Report

The fiscal year of this Corporation shall end on the 31st day of December of each year. The Corporation shall provide to the Trustees, within 120 days after the close of its fiscal year, a report containing the following information in reasonable detail:

A.    The assets and liabilities, including the trust funds, of the Corporation as of the end of the fiscal year;

B.    The principal changes in assets and liabilities, including trust funds, during the fiscal year;

C.    The revenue or receipts of the Corporation, both unrestricted and restricted to particular purposes, for the fiscal year;

D.    The expenses or disbursements of the Corporation, for both general and restricted purposes, during the fiscal year;

E.    Any information required by the California Nonprofit Public Benefit Corporation Law regarding transactions with interested persons and indemnifications; and

F.    The report shall be accompanied by any report by independent accountants, or, if there is no such independent report, a certificate to the effect that the report was prepared without audit.

## ARTICLE XI — EXECUTION OF DOCUMENTS

The following persons shall be authorized to execute any deeds, mortgages, bonds, contracts or other instruments which the Board has authorized:

Subp 00746

A.   Any officer or other person duly authorized by resolution of the Board to execute documents; or

B.   In the absence of express authorization by Board resolution, the Chairperson of the Board or Administrator, and the Secretary or any Assistant Secretary (all subject to such limitations as may be imposed by resolution of the Board).

## ARTICLE XII — TRANSACTIONS REQUIRING APPROVAL OF THE GENERAL MEMBER

### Section 12-1. - Matters Requiring Approval

Notwithstanding anything is these Bylaws to the contrary, neither the Board nor any officer or employee of the Corporation may take any of the following actions without the prior approval of the General Member:

A.   Merger, consolidation, reorganization or dissolution of the Corporation or any subsidiary or affiliate entity;

B.   Amendment or restatement of the Articles of Incorporation or the Bylaws of the Corporation or any subsidiary or affiliate entity;

C.   Adoption of operating budgets of this Corporation or any subsidiary or affiliate entity, including consolidated or combined budgets of this Corporation and all subsidiary organizations of the Corporation;

D.   Adoption of capital budgets of this Corporation or any subsidiary or affiliate entity;

E.   Aggregate operating or capital expenditures on an annual basis that exceed approved operating or capital budgets by a specified dollar amount to be determined from time to time by the General Member;

F.   Long-term or material agreements including, but not limited to, borrowings, equity financings, capitalized leases and installment contracts; and purchase, sale, lease, disposition, hypothecation, exchange, gift, pledge, or encumbrance of any asset, real or personal, with a fair market value in excess of a dollar amount to be determined from time to time by the Directors of the General Member, which shall not be less than 10% of the total annual capital budget of this Corporation;

G.   Appointment of an independent auditor and hiring of independent counsel except in conflict situations between the General Member and this Corporation or any subsidiary or affiliate entity;

H.   The creation or acquisition of any subsidiary or affiliate entity;

Subp 00747

I.      Contracting with an unrelated third party for all or substantially all of the management of the assets or operations of this Corporation or any subsidiary or affiliate entity;

J.      Approval of major new programs and clinical services of this Corporation or any subsidiary or affiliate entity. The General Member shall from time to time define the term "major" in this context;

K.      Approval of strategic plans of this Corporation or any subsidiary or affiliate entity;

L.      Adoption of quality assurance policies not in conformity with policies established by the General Member;

M.      Any transaction between this Corporation, a subsidiary or affiliate and a director of this Corporation or an affiliate of such director;

<u>Section 12-2. - Other Major Activities</u>

A.      In addition, the General Member shall have the authority, except as otherwise provided by the General Member and after consultation with this Corporation, to require the prior review and approval of those activities of this Corporation or any subsidiary or affiliate entity which the General Member determines to be major activities.

B.      "Major activities" shall be those which the General Member by a vote of not less than two-thirds (2/3) of its Board of Directors has declared major, by written notice to this Corporation, delivered personally or transmitted by registered or certified mail, return receipt requested. Such notice shall specifically identify the matter or matters requiring approval of the General Member, and shall refer to this bylaw provision granting such approval rights to the General Member. Notices received pursuant to this Section 12-2 shall be recorded in the minutes of this Corporation and shall be filed with the minutes of this Corporation.

<u>Section 12-3. - Approvals</u>

The General Member's approval or disapproval of matters described in Section 12-1 or 12-2, above, shall be recorded in or filed with the minutes of this Corporation.

<u>Section 12-4. - Other Actions Requiring Approval of the General Member</u>

A.      <u>Vacancy.</u>  Any vacancy occurring on the Board of this Corporation shall be filled by an appointee of the General Member from nominees selected in accordance with the nomination provisions of these Bylaws.

B.      <u>Removal.</u>  Any non-*ex-officio* Trustee or Director of this Corporation's Board may be removed from office by the General Member; provided, however, the General Member shall notify this Corporation's Board, and give it an opportunity to respond in the manner and subject to the terms and conditions described herein, prior to any such proposed removal.

Subp 00748

### Section 12-5. - Exercise of Authority

Notwithstanding any provision in these Bylaws to the contrary, and except as otherwise provided in subsection (ii) of Section 12-2 of these Bylaws (regarding definition of "major activities"), this Corporation shall not prescribe the manner by which the General Member exercises its authority under these Bylaws, and no present or future provision of these Bylaws shall have such effect. Without limiting the generality of the foregoing, no present or future provision of these Bylaws or other action of this Corporation shall prescribe the required vote of the Board of Directors of the General Member for the exercise of its authority herein, nor shall the approval of the General Member be inferred from its failure affirmatively to disapprove of a proposed action of this Corporation within a specified time period.

## ARTICLE XIII — AUXILIARIES AND RELATED GROUPS

### Section 13-1. - Establishment

Subject to the provisions of Section 12-1, the Board may establish or support the establishment of auxiliaries, supporting foundations and/or related organizations, wishing to support the objectives of the Corporation or work in complementary ways with the Corporation. Bylaws, other rules and regulations of the auxiliary, supporting foundations and/or other related organizations and any amendments thereto, and all major projects must be approved by the Board.

### Section 13-2. - Board Approval

For liaison purposes only, a Trustee shall be appointed to attend executive committee meetings of the auxiliary, supporting foundation or related organization, and from time to time, but not less than annually, the Board shall receive a report, for information only, from the auxiliary or related organization as to the operations of that organization.

## ARTICLE XIV — BONDING AND INDEMNIFICATION

### Section 14-1. – Bonding

All officers and employees handling funds shall be properly bonded.

### Section 14-2. - Indemnification

The Corporation shall have the right to indemnify any person who was or is a party or is threatened to be made a party to any civil, criminal, administrative or investigative proceeding by reason of the fact that such person is or was a Trustee, officer, employee or otherwise an agent of the Corporation, against expenses, judgments, fines, settlements and other amounts actually and reasonably incurred in connection with such proceeding, provided that all of the requirements of the California Nonprofit Public Benefit Corporation Law for such indemnification are met.

Subp 00749

## ARTICLE XV — AMENDMENTS

These Bylaws may be amended or new Bylaws may be adopted by action of the Board at any regular meeting of the Board or at any special meeting called for that purpose. Amendments shall not be effective unless and until approved by the General Member. Alternatively, amendments may be adopted by the General Member, other than amendments which reduce the powers of the Board, at any regular or special meeting of the Board of Directors of the General Member called for that purpose. However, prior to unilaterally amending these Bylaws, the General Member shall notify the Board of the proposed changes, explain the reasons for them, and allow the Board to comment. Following that process the General Member may request that the Board adopt such changes at its next regularly scheduled meeting.

Subp 00750

EXHIBIT 1

SUTTER HEALTH
EQUITY CASH TRANSFER POLICY

DEC_Bylaws_SMSCSC_9-02.doc
SMSCSC_Bylaws

| Sutter Health and Affiliates<br>Finance Policies and Procedures | |
| --- | --- |
| **EQUITY CASH TRANSFER** | |
| Policy Number 207 | Origination Date: 1/96<br>Last Revised Date: 7/98<br>Next Review Date: 9/99 |
| Approved by: Bob Reed, Chief Financial Officer | |

## POLICY

Sutter Health shall ensure that operating funds are available to affiliated entities sufficient to fund their approved operating and capital budgets. Transfers from Sutter Health to affiliates may be made where such transfers are determined to be in the best interests of the Sutter Health system, the affiliate has adopted this policy, or otherwise incorporated this policy into its bylaws, and the transfer is not otherwise prohibited by pre-existing contractual obligations. Alternatively, excess operating cash may be transferred from the affiliate to Sutter Health.

Sutter Health shall ensure that each affiliate's Funded Depreciation (including seismic funds) shall be used to fund that affiliate's routine and non-routine capital acquisitions, and will ensure that trusteed funds will be used for their authorized purposes.

Donor-originated funds are specifically excluded from this policy.

## PURPOSE

The purpose of this policy is to enable Sutter Health to optimize the strategic value of available capital resources for the benefit of the system and of individual affiliated entities. Each non-profit Sutter Health affiliated entity shall adopt this policy, thus providing the system with maximum flexibility to redeploy cash resources to meet approved system strategic objectives.

## AUTHORIZATION

The Sutter Health Chief Financial Officer may authorize transactions and establish routine practices in accordance with this policy. Sutter Health will provide periodic reports to each affiliated entity reflecting transactions executed in accordance with this policy.

## PROCEDURES

**Definitions**

Excess Operating Cash

Operating cash generated by each affiliated entity, over and above its target. (See Figure 1 for example of calculation).

Subp 00752

Target

Each affiliated entity's operating cash target shall consist of: Fourteen days of budgeted operating expenses, excluding depreciation expense.

Donor-originated Funds

Cash received by or due to, an affiliated entity or associated charitable foundation, which has not been spent.

**Accounting Treatment**

For transfers to Sutter Health, the following entry would be recorded:

|                        | Dr. | Cr. |
|------------------------|-----|-----|
| Equity Transfer – SH   | XXX |     |
| Cash – Operating Pool  |     | XXX |

For transfers received from Sutter Health, the following entry would be recorded:

|                        | Dr. | Cr. |
|------------------------|-----|-----|
| Cash – Operating Pool  | XXX |     |
| Equity Transfer – SH   |     | XXX |

Subp 00753

| SUTTER HEALTH | | |
|---|---|---|
| **Equity Cash Transfer Calculation (000)** | | |
| | | **Sample Affiliate** |
| Month:     May 31, 1998 | | |
| | | *(Affiliate Name)* |
| | | |
| April 30, 1998  End Operating Pool Balance | + | $         9,000 |
| B of A Balance (& other balances, if any) | + | 500 |
| Outstanding Checks | - | (800) |
| Special Provisions (if any) | - | 0 |
| Adjusted Operating Pool Balance | = | $         8,700 |
| Target Balance (see note 1) | - | (3,260) |
| *Equity Cash Transfer Available* | = | *$         5,440* |
| | | |
| *(Transaction value dated 5/1/98)* | | |
| | | |
| | | |
| | | |
| *Note 1:* | | |
| Target Calculation: | | |
| | | |
| Annual Operating Expense Budget | + | $       100,000 |
| Depreciation/Amortization | - | (15,000) |
| Adjusted Annual Operating Expense Budget | = | $         85,000 |
| 14 day Target Factor | X | 14/365 |
| Target Balance | = | $         3,260 |
| | | |
| | | |

Subp 00754

## CERTIFICATE OF SECRETARY

The amendments contained in these Amended and Restated Bylaws of Sutter Maternity and Surgery Center of Santa Cruz, a California nonprofit public benefit corporation, were approved by the Board of Trustees of Sutter Maternity and Surgery Center of Santa Cruz on June 26, 2002, and by Sutter Health, the then current General Member, on September 13, 2002, respectively.

Dated: _10/23/02_

_____, Secretary

DEC_Bylaws_SMSCSC_12-01.doc
SMSCSC_Bylaws

AMENDMENT FORM

CORPORATION: ___ SUTTER MATERNITY AND SURGERY CENTER OF SANTA CRUZ

ARTICLES OF INC. _____ X _____ BYLAWS_____

ARTICLE AND SECTION AFFECTED: _____ Article IV _____

DATE OF APPROVAL BY THE CORPORATION: ____ September 22, 2005 _____

DATE OF APPROVAL BY THE CORPORATE MEMBER: ___ October 6, 2005 _____

SUBJECT MATTER OF AMENDMENT: Revisions to the Irrevocable Dedication Clause of the Articles of Incorporation to comply with California State Board of Equalization welfare exemption requirements changing educational to be "charitable *and* educational." _____

The following additions (indicated by underline) and /or deletions (indicated by strikeover) were adopted on the above dates:

IV

The property of this corporation is irrevocably dedicated to charitable purposes and no part of the net income or assets of this corporation shall ever inure to the benefit of any director, officer or member thereof or to the benefit of any private person. Upon the dissolution or winding up of the corporation, its assets remaining after payment or provision for payment of all debts and liabilities of this corporation shall be transferred exclusively to and shall become the property of Sutter Health, a California nonprofit public benefit corporation. If Sutter Health no longer: (a) exists; (b) qualifies as an exempt organization under section 501(c)(3) of the Code; or (c) is organized and operated exclusively for religious, charitable, hospital, scientific purposes, or charitable *and* educational purposes meeting the requirements for exemption provided by Section 214 of the Revenue and Taxation Code, then the assets of this corporation shall be transferred to and shall become the property of such nonprofit funds, foundations or corporations as are designated by the Board of Trustees of this corporation and which: (1) have established their tax-exempt status under section 501(c)(3) of the Code; and (2) are organized and operated exclusively for religious, charitable, hospital, scientific purposes, or charitable *and* educational purposes meeting the requirements for exemption provided by Section 214 of the Revenue and Taxation Code.

DEC_SMSCSC_ArtofInc_Amend Form_ Art IV.doc
Sutter_SCruz_Articles

Subp 00717