Exhibit U

AMENDED AND RESTATED
BYLAWS

OF

SUTTER MEDICAL CENTER OF SANTA ROSA,
a California nonprofit
public benefit corporation

*(Includes Revisions through April 3, 2006)*

# TABLE OF CONTENTS

Page

ARTICLE I — NAME AND PRINCIPAL OFFICE ...................................................1
    Section 1-1. -    Name .........................................................................1
    Section 1-2. -    Principal Office and Place of Business ...............................1

ARTICLE II — PURPOSES .................................................................................1
    Section 2-1. -    Primary Purposes .............................................................1

ARTICLE III — MEMBERSHIP ...........................................................................2
    Section 3-1. -    Member ...........................................................................2
    Section 3-2. -    Transfer of Membership..................................................2
    Section 3-3. -    Exercise of Membership Rights.......................................2
    Section 3-4. -    Liabilities and Assessments ............................................2

ARTICLE IV — SYSTEM AFFILIATION ...............................................................3
    Section 4-1. -    Facilities Operated by Corporation ..................................3
    Section 4-2. -    Affiliated Status ..............................................................3
    Section 4-3. -    Participation in Activities of the General Member...........3
    Section 4-4. -    Cash Concentration.........................................................3
    Section 4-5. -    Equity Cash Transfer Policy ............................................3
    Section 4-6. -    Payment of Allocation Fee...............................................3
    Section 4-7. -    Cost of Capital Allocation Policy .....................................3
    Section 4-8. -    Representation on the Board of Trustees ........................4
    Section 4-9. -    Effect of Policies.............................................................4
    Section 4-10. -    Policies Required of Affiliated Entities ...........................4
    Section 4-11. -    Compliance Program .......................................................4

ARTICLE V — TRUSTEES ..................................................................................5
    Section 5-1. -    Number, Qualification, Selection ....................................5
    Section 5-2. -    Powers and Responsibilities ............................................6
    Section 5-3. -    Compensation .................................................................6
    Section 5-4. -    Conflict of Interest .........................................................6
    Section 5-5. -    Nominations....................................................................7

ARTICLE VI — MEETINGS OF THE BOARD........................................................7
    Section 6-1. -    Regular Meetings of the Board ........................................7
    Section 6-2. -    Special Meetings of the Board .........................................7
    Section 6-3. -    Annual Organizational Meetings of the Board .................7
    Section 6-4. -    Place of Meetings of the Board........................................7
    Section 6-5. -    Notice.............................................................................7

Subp 00761

Section 6-6. -    Quorum ...........................................................................8
Section 6-7. -    Manner of Acting ...........................................................8
Section 6-8. -    Presiding Officer ............................................................8
Section 6-9. -    Telephonic Meetings ......................................................8
Section 6-10. -   Action in Lieu of Meeting of the Board ........................8

ARTICLE VII — OFFICERS .......................................................................8
Section 7-1. -    General ...........................................................................8
Section 7-2. -    Qualification, Election, Term of Office and Removal ....9
Section 7-3. -    Subordinate Officers, Etc. ..............................................9
Section 7-4. -    Resignation ....................................................................9
Section 7-5. -    Vacancies .......................................................................9
Section 7-6. -    Chair ...............................................................................9
Section 7-7. -    Vice Chair ......................................................................9
Section 7-8. -    Chief Executive Officer ................................................10
                  A.  Appointment, Compensation and Removal ...........10
                  B.  Responsibilities and Authority .............................10
                  C.  Ex-Officio Board Membership .............................10
Section 7-9. -    Chief Financial Officer .................................................10
Section 7-10. -   Secretary ......................................................................11
Section 7-11. -   Assistant Secretary ......................................................11

ARTICLE VIII — COMMITTEES ............................................................11
Section 8-1. -    General .........................................................................11
Section 8-2. -    Executive Committee ...................................................12
                  A.  Composition ........................................................12
                  B.  Responsibilities and Authority .............................12
                  C.  Accountability ....................................................12
Section 8-3. -    Corporate Resources Committee ..................................12
                  A.  Composition ........................................................12
                  B.  Responsibilities and Authority .............................12
                  C.  Accountability ....................................................13
Section 8-4. -    Quality Review Committee ...........................................14
                  A.  Composition ........................................................14
                  B.  Responsibilities ..................................................14
                  C.  Authority ............................................................15
                  D.  Accountability ....................................................16
Section 8-5. -    Ad Hoc Committees ......................................................16
                  A.  Composition ........................................................16
                  B.  Responsibilities and Authority .............................16
                  C.  Accountability ....................................................16
Section 8-6. -    Sutter Medical Center of Santa Rosa Foundation ........16
                  A.  Number and Selection of Sutter Medical Center of Santa
                      Rosa Foundation Board ....................................16
                  B.  Term ...................................................................17
                  C.  Vacancies ...........................................................17
                  D.  Duties and Authority of Foundation Board ..........17

Subp 00762

E. Advisory Role .................................................................17
F. Organization ..................................................................18
G. Compensation of the Foundation Board Members .................18
H. Committees ...................................................................18
I. Executive Director ..........................................................19

ARTICLE IX — PROVISION OF MEDICAL CARE.................................20
Section 9-1. -    Responsibility for Medical Care .......................20
                 A. Responsibility for Care .................................20
                 B. Nondiscrimination ........................................20
                 C. Discharge of Medical Staff Functions...............21
                 D. Chief of Staff Authority ................................21
                 E. Cooperation ...............................................21
                 F. Board Responsibilities..................................21
                 G. Parent Interests .........................................21
                 H. Required Systems........................................21
                 I. Board Authority ..........................................21
                 J. Standard Setting .........................................21
Section 9-2. -    Medical Staff Organization..............................22
                 A. Purpose...................................................22
                 B. Officials...................................................22
Section 9-3. -    Medical Staff Bylaws .....................................22
                 A. Purpose of Medical Staff Bylaws.....................22
                 B. Drafting of Medical Staff Bylaws ....................23
                 C. Approval of Medical Staff Bylaws ...................23
Section 9-4. -    Hearing and Appeals.......................................23
Section 9-5. -    Professional Liability Insurance..........................23

ARTICLE X — RECORDS, REPORTS AND INSPECTION RIGHTS...................23
Section 10-1. -   Maintenance of Articles and Bylaws ..................23
Section 10-2. -   Maintenance of Other Corporation Records ..........23
Section 10-3. -   Inspection by Trustees or General Member ...........24
Section 10-4. -   Annual Report...............................................24
                 A. Assets and Liabilities ..................................24
                 B. Change in Assets ........................................24
                 C. Revenue ...................................................24
                 D. Expenses..................................................24
                 E. Interested Persons ......................................24
                 F. Audit Report ..............................................24

ARTICLE XI — EXECUTION OF DOCUMENTS ...................................24

Subp 00763

ARTICLE XII — TRANSACTIONS REQUIRING APPROVAL OF GENERAL MEMBER .25
    Section 12-1. -   Matters Requiring Approval ................................................................25
                  A. Corporate Transaction...............................................25
                  B. Amendment of Corporate Documents............................25
                  C. Operating Budgets................................................25
                  D. Capital Budgets ..................................................25
                  E. Expenditures.....................................................25
                  F. Material Agreements..............................................25
                  G. Independent Auditors .............................................25
                  H. Affiliate Entities.................................................25
                  I. Management Contracts .............................................25
                  J. Major Programs....................................................26
                  K. Strategic Plans...................................................26
                  L. Performance Improvement ..........................................26
                  M. Interested Party Transactions.....................................26
    Section 12-2. -   Other Major Activities ......................................................26
                  A. Major Activities .................................................26
                  B. Definition .......................................................26
    Section 12-3. -   Approvals..................................................................26
    Section 12-4. -   Other Actions Requiring Approval of the General Member.............26
                  A. Vacancy..........................................................26
                  B. Removal ..........................................................27
                  C. Nominations......................................................27
    Section 12-5. -   Exercise of Authority ......................................................27

ARTICLE XIII — AUXILIARIES AND RELATED GROUPS....................................27
    Section 13-1. -   Establishment...............................................................27
    Section 13-2. -   Board Approval..............................................................27

ARTICLE XIV — BONDING AND INDEMNIFICATION .......................................28
    Section 14-1. -   Bonding....................................................................28
    Section 14-2. -   Indemnification ............................................................28

ARTICLE XV — AMENDMENTS
    Section 15-1. -   Amendments ................................................................28

EXHIBIT 1 - EQUITY CASH TRANSFER POLICY

Subp 00764

AMENDED AND RESTATED
BYLAWS
OF
SUTTER MEDICAL CENTER OF SANTA ROSA

### ARTICLE I — NAME AND PRINCIPAL OFFICE

Section 1-1. -    Name

The name of the Corporation shall be Sutter Medical Center of Santa Rosa. This Corporation is a nonprofit public benefit corporation organized under the California Nonprofit Public Benefit Corporation Law. References in these Bylaws to "Corporation" shall mean Sutter Medical Center of Santa Rosa unless otherwise specified.

Section 1-2. -    Principal Office and Place of Business

The principal office of the Corporation shall be located in or near the City of Santa Rosa, California, or the City of Sacramento, California, as may be set by resolution of the Board of Trustees from time to time. The principal place of business of the Corporation shall be in or near the City of Santa Rosa.

### ARTICLE II — PURPOSES

Section 2-1. -    Primary Purposes

This Corporation was formed for purposes set forth in its Articles of Incorporation:

A.    To establish, equip and maintain one or more nonprofit hospitals, medical centers, institutions or other places for the reception and care of the sick, injured, and disabled, with permanent facilities that include inpatient beds and medical services; to provide diagnosis and treatment for patients; and to provide associated services, outpatient care and home care in furtherance of this corporation's charitable purposes;

B.    To promote and carry on educational activities related to the care of the sick, injured and disabled, or to the promotion of health;

C.    To promote and carry out scientific research related to the care of the sick, injured, and disabled;

D.    To promote or carry out such other activities as may be deemed advisable for the betterment of the general health of the community served; and

E.    To contribute to the growth, development and financial strength of Sutter Health and all its affiliated corporations that comprise a multi-institutional health care system.

1

DEC_SMCSR_4-06.doc
SMCSR_Bylaws

In the event of any inconsistency between these Bylaws and the Corporation's Articles of Incorporation, the Articles of Incorporation shall control.

## ARTICLE III — MEMBERSHIP

### Section 3-1. -    Member

There shall be one member of this Corporation who shall be Sutter Health, a California nonprofit public benefit corporation ("Member" or "General Member"). The General Member, and only the General Member, shall be entitled to exercise fully all rights and privileges of members of nonprofit corporations under the California Nonprofit Public Benefit Corporation Law, and all other applicable laws. The rights and powers of the General Member shall also include, without limitation, the following: the limitation on liabilities described in Section 3-4 of these Bylaws; the rights and powers to appoint (and remove) the appointed members of the Board of Trustees ("Board of Trustees," "Board" or "Trustees" or an individual member of the Board may be referred to as "Trustee"), subject to Section 12-4 of these Bylaws; and exercise of all of the rights and powers set forth in Article 12 of these Bylaws. The General Member may not be expelled or suspended as the General Member without its consent. Any reference in these Bylaws to the "member," "Member," "general member," "General Member," "corporate member," or "Corporate Member" of this Corporation, or any similar such reference, shall mean Sutter Health, a California nonprofit public benefit corporation.

### Section 3-2. -    Transfer of Membership

The General Member may not transfer its membership or any rights arising therefrom.

### Section 3-3. -    Exercise of Membership Rights

The General Member of this Corporation shall exercise its membership rights through its own Board of Directors. Subject to the provisions of the General Member's Bylaws, and except as otherwise provided in these Bylaws where a super-majority vote of the Board of Directors of the General Member is required, the Board of Directors of the General Member may, by resolution, authorize a person or committee of persons to exercise its vote on any matter to come before the membership of this Corporation. In addition, the General Member may exercise its membership rights at any regular or special meeting of the Board of Directors of the General Member. The functions required by law or these Bylaws to be performed at the annual membership meeting or any regular or special meeting of the members of this Corporation may be performed at any regular or special meeting of the General Member's own Board of Directors.

### Section 3-4. -    Liabilities and Assessments

The General Member, as such, shall not be liable for the debts of this Corporation. The Board of Trustees shall have no power to levy and collect assessments on the General Member. The provisions of this paragraph cannot be amended in any manner.

Subp 00766

## ARTICLE IV — SYSTEM AFFILIATION

Section 4-1. -    Facilities Operated by Corporation

This Corporation, through these Bylaws, may own, in whole or in part, or operate licensed general acute care hospital(s) and other healthcare facilities and services from time to time, as the Board of Trustees deems appropriate.

Section 4-2. -    Affiliated Status

This Corporation is one of several affiliated corporations that comprise an integrated healthcare system ("System").

Section 4-3. -    Participation in Activities of the General Member

The Board of Trustees shall submit nominees to the General Member in order to enable the General Member to appoint members of this Corporation's Board or officers of this Corporation to serve on the General Member's corporate Board of Directors and/or its Board committees as appropriate to ensure the General Member's continued qualification as a supporting organization under Section 509 of the Internal Revenue Code of 1986, as amended from time to time, or successor provisions.

Section 4-4. -    Cash Concentration

Subject to the provisions of Section 4-9 of these Bylaws, the Corporation shall participate in the Cash Concentration and Controlled Disbursement Program prescribed by the General Member and in effect from time to time.

Section 4-5. -    Equity Cash Transfer Policy

Subject to the provisions of Section 4-9 of these Bylaws, the terms of the Equity Cash Transfer Policy contained in Exhibit 1 to the Bylaws of this Corporation are incorporated into and made part of these Bylaws, as such terms are modified by the General Member from time to time. Neither donor originated funds nor the earnings therefrom shall be subject to the Equity Cash Transfer Policy.

Section 4-6. -    Payment of Allocation Fee

Subject to the provisions of Section 4-9 of these Bylaws, this Corporation shall pay the allocation fees necessary to maintain the operation of the General Member.

Section 4-7. -    Cost of Capital Allocation Policy

Subject to the provisions of Section 4-9 of these Bylaws, the Corporation shall participate in the Cost of Capital Allocation Policy prescribed by the General Member and in effect from time to time.

Subp 00767

Section 4-8. -    Representation on the Board of Trustees

The President and Chief Executive Officer of the General Member may designate, by written notice to the Secretary of this Corporation, up to two (2) voting members of the Board. The President and Chief Executive Officer of the General Member may revoke any such designation effective upon delivery of written notice thereof to the Secretary of this Corporation. The President and Chief Executive Officer of the General Member may attend any Board meeting. This Section 4-8 supersedes any other provision in these Bylaws relating to the participation of the President and Chief Executive Officer and/or the Chair of the General Member as voting or non-voting Trustees of this Corporation.

Section 4-9. -    Effect of Policies

This Corporation's obligations under Sections 4-4 through 4-6 and the policies described therein shall be subject to all agreements with and obligations to third parties and any other member of the Corporation (including without limitation bond indentures) to which this Corporation is a party or is bound at the time this provision is adopted or which are otherwise approved by the General Member after the adoption of this provision.

Section 4-10. -    Policies Required of Affiliated Entities

Except for tax-exempt entities which are primarily fundraising foundations, this Corporation shall prescribe the policies described in Sections 4-4 through 4-7 to the tax-exempt entities which this Corporation owns or in which it has a controlling interest. As to those entities, the policies shall be subject to all agreements with and obligations to third parties and any other member of the affiliated entity (including without limitation bond indentures) to which the entity is a party or is bound at the time this provision is adopted or which are otherwise approved by the General Member after the adoption of this provision.

Section 4-11. -    Compliance Program

Corporation shall adopt a Compliance Program consistent with Sutter Health Compliance Program Plan which shall include the following:

A.    Compliance Training. All Board Members shall receive Compliance training consistent with Sutter Health Compliance Program Plan.

B.    Oversight of Compliance Program. The Board shall have oversight of and ultimate responsibility for an effective Compliance Program including adoption of related compliance policies.

C.    Compliance Reports. The Board or a Committee of the Board shall receive and review routine and special Compliance reports on a regular basis.

Subp 00768

D. **Delegation.** The Board shall delegate to Corporation's Chief Executive Officer responsibility to implement Compliance Program in accordance with Sutter Health Compliance Program Plan.

## ARTICLE V — TRUSTEES

Section 5-1. -    Number, Qualification, Selection

A. **Authorized Number.** The authorized number of members of the Board shall be no fewer than six (6) nor more than sixteen (16). The exact number of Trustees, within these limits, shall be set by the General Member based upon the recommendations of the Board.

No decrease in the number of Trustees shall have the effect of shortening the term of office on any incumbent Trustee. All Trustees shall be eligible to vote.

B. **Sonoma County Residents.** Excluding those persons appointed pursuant to Section 5.1D below, at least sixty percent (60%) of the appointed Trustees shall reside within Sonoma County.

C. **Interested Persons.** Not more than forty-nine percent (49%) of the persons serving as Trustees at any time may be interested persons. An interested person is:

(i) Any person being compensated by the Corporation for services rendered to it within the previous 12 months, whether as a full-time or part-time employee, independent contractor or otherwise, excluding any reasonable compensation paid to a Trustee as Trustee; or

(ii) Any brother, sister, ancestor, descendant, spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law or father-in-law of any such person.

However, any violation of the provisions of this Section 5-1C shall not affect the validity or enforceability of any transaction entered into by the Corporation.

D. **Ex Officio Trustees.** The Chief Executive Officer of this Corporation, the Chief of the Medical Staff, the Chief-Elect of the Medical Staff, and the Immediate-Past Chief of the Medical Staff shall be ex-officio Trustees with full voting rights on the Board, subject to removal powers granted to the General Member pursuant to California Nonprofit Public Benefit Corporation Law and, with respect to the Chief Executive Officer, subject to the requirements of Section 7-2 below. The Chief-Elect of the Medical Staff shall serve as a Trustee only for the second year of his/her term in office, and the Immediate-Past Chief of the Medical Staff shall serve as a Trustee only for one year following his/her incumbency as Chief of Staff. All *ex officio* Board members serve by reason of official capacity, and the resignation or removal of any such person from office shall automatically terminate such person's membership on the Board.

Subp 00769

E.    Elected Trustees.  All other Trustees shall be elected by the General Member as herein set forth ("Elected Trustees").  Elected Trustees shall be chosen for their willingness and ability to effectively contribute to and support the objectives of the Corporation.  Composition of the Board should reflect a breadth of diversity of community interests that is in keeping with the broad role of the Corporation in the community.

F.    Election.  At the annual membership meeting, in addition to whatever other business that may be conducted, the General Member shall elect replacements for Trustees whose terms will expire prior to the next annual meeting of the membership.  Except for the Trustees designated by the General Member under Section 4-8, Trustees shall be elected by vote of the General Member from a slate of nominees selected as described at Section 5-5 of these Bylaws.

G.    Terms.  The terms of all Elected Trustees shall be for three years, and appointments shall be staggered.  No Elected Trustee may serve for more than three consecutive three-year terms.  (A partial term shall not be counted as a term for this limitation.)  A Trustee shall hold office until the earlier of:  (1) the expiration of the term for which such Trustee was elected and either such Trustee's successor is elected and qualified or the Board declares such Trustee's position to be vacant; or (2) the death, resignation or removal of the Trustee.  None of the foregoing provisions apply to ex-officio Trustees.

Section 5-2. -    Powers and Responsibilities

Except as otherwise provided by the Articles of Incorporation or these Bylaws, the powers of the Corporation shall be exercised, its property controlled and its affairs conducted by or under the direction of the Board.  The Board shall promulgate policies consistent with any systemwide policies adopted by the System.

Section 5-3. -    Compensation

Trustees shall serve without compensation except for reimbursement for reasonable expenses and as otherwise specifically provided by a resolution of the Board.  In keeping with the nonprofit status of the Corporation, no Trustee shall benefit financially from his/her position as a Trustee.

Trustees may be reimbursed for all out-of-pocket expenses incurred in attending meetings and carrying out duties and functions directly related to the Corporation's business.

Section 5-4. -    Conflict of Interest

The Board shall promulgate written policies regarding conflict of interest related to Trustees, salaried persons of the Corporation and members of the Medical Staff.  Such policies shall not be inconsistent with the standards of conduct set forth in Sections 5230 through 5239 of

6

DEC_SMCSR_4-06.doc
SMCSR_Bylaws

the California Corporations Code, or successor provisions. Such policies shall ensure full disclosure of financial interests and transactions where conflict of interest is a possibility, and shall ensure the avoidance of potential conflict of interest in choosing new Trustees. Such policies shall impose upon each Trustee the responsibility to be alert to possible conflicts of interest of himself/herself or of other Trustees, and shall require that each Trustee declare his/her absence of conflict of interest on a declaration form provided for that purpose and disqualify himself/herself from making a decision where he/she has a conflict of interest.

Section 5-5. -    Nominations

Persons nominated for Trustees, including but not limited to, nominations for full terms and nominations to fill vacancies created by resignation, removal or death occurring during a term, shall be proposed by the Executive Committee. The slate of nominees shall be selected by the Board and shall include, but need not be limited to, the nominees proposed by the Executive Committee. The General Member may also propose its own candidate(s) to add to the nominees proposed by the Board.

## ARTICLE VI — MEETINGS OF THE BOARD

Section 6-1. -    Regular Meetings of the Board

Regular meetings of the Board shall be held at least quarterly at such time and place as the Board shall from time to time determine.

Section 6-2. -    Special Meetings of the Board

Special meetings of the Board may be called at any time by the Chair of the Board, any three Trustees or the General Member.

Section 6-3. -    Annual Organizational Meetings of the Board

Annually, no later than 30 days following each annual membership meeting, the Board shall meet for the purpose of electing the officers, and the members and chairs of committees.

Section 6-4. -    Place of Meetings of the Board

All regular meetings of the Board, except as herein otherwise provided, shall be held at the principal office of the Corporation or such other place within the State of California as the Chair of the Board or the Trustees requesting such a meeting may designate.

Section 6-5. -    Notice

Special meetings of the Board shall be held upon no less than four days' notice to each Trustee by first-class mail or 48 hours' notice to each Trustee delivered personally or by telephone, telegraph or facsimile transmission. The attendance of a Trustee at any meeting shall constitute a waiver of notice of the meeting, except where a Trustee attends a meeting only for

7

Subp 00771

the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened.

Section 6-6. -    Quorum

A majority of the whole number of Trustees presently serving and empowered to vote shall constitute a quorum for the transaction of business. However, a majority of those present at the time and place of any meeting, although less than a quorum, may adjourn the same from time to time or from day to day, without further notice, until a quorum shall attend, and when a quorum shall attend, any business may be transacted which might have been transacted at the meeting had the same been held on the day on which the same was originally appointed or called.

Section 6-7. -    Manner of Acting

The act of a majority of Trustees empowered to vote and present at a meeting at which a quorum is present shall be the act of the Board, unless the act of a greater number is required by law or these Bylaws.

Section 6-8. -    Presiding Officer

The Chair of the Board, or in his/her absence, the Vice Chair, or in the absence of both, a chair selected by the Trustees present, shall call the meeting to order and shall preside.

Section 6-9. -    Telephonic Meetings

Trustees may participate in a regular or special meeting of the Board through use of conference telephone or similar communications equipment, so long as all Trustees participating in such meeting can hear one another. Participation in a meeting pursuant to this Section 6-9 constitutes presence in person at such meeting.

Section 6-10. -    Action in Lieu of Meeting of the Board

Any action required or permitted to be taken by the Board may be taken without a meeting, if all Trustees shall individually or collectively consent in writing to such action. Such written consent or consents shall be filed with the minutes of proceedings of the Board. Such action by written consent shall have the same force and effect as the unanimous vote of the Trustees.

ARTICLE VII — OFFICERS

Section 7-1. -    General

The officers of the Corporation shall be a Chair, a Chief Executive Officer, a Chief Financial Officer and a Secretary. The Corporation may also have, at the discretion of the Board, one or more Assistant Secretaries and such other officers as may be appointed in accordance with the provisions of Section 7-3. Offices may be held by the same person except that neither the

DEC_SMCSR_4-06.doc
SMCSR_Bylaws

8

Chief Financial Officer nor the Secretary may serve concurrently as Chair of the Board or as the Chief Executive Officer.

## Section 7-2. -     Qualification, Election, Term of Office and Removal

The President and Chief Executive Officer of the General Member shall select and appoint the Chief Executive Officer, subject to the approval of the Board. The Chief Executive Officer shall select the Chief Financial Officer. All other officers of the Corporation shall be chosen by the Board, and shall serve at the pleasure of the Board, subject to the rights, if any, of an officer under any contract of employment. The Chair, Vice Chair and Secretary shall be selected from persons who are Trustees. The Chair, Vice Chair and Secretary shall serve for one-year terms or until successors have been elected, but must be elected each year. Except as set forth in Section 7-8, any officer may be removed as an officer with or without cause by a majority of the whole number of Trustees presently serving and empowered to vote. Any removal as an officer shall not affect the officer's status as a Trustee, unless the officer is serving as a Trustee in an *ex officio* capacity.

## Section 7-3. -     Subordinate Officers, Etc.

The Board may appoint such other officers as the business of the Corporation may require, each of whom shall hold office for such period, have such authority and perform such duties as are required in these Bylaws or as the Board may from time to time determine.

## Section 7-4. -     Resignation

Any officer may resign at any time by giving written notice to the Board, subject to the rights, if any, of the Corporation under any contract to which the officer is a party. Any such resignation shall take effect at the date of the receipt of such notice or at any later time specified therein; and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

## Section 7-5. -     Vacancies

A vacancy in any office because of death, resignation, removal, disqualification or any other cause shall be filled in the manner prescribed in these Bylaws for regular appointments to such office.

## Section 7-6. -     Chair

The Chair shall preside at all meetings of the Board. The Chair shall exercise and perform such other powers and duties as may be prescribed by the Board from time to time. The Chair shall be an ex-officio voting member of all committees.

## Section 7-7. -     Vice Chair

The Vice Chair, in the absence, inability or refusal of the Chair of the Board to act, shall have the same powers and duties as the Chair and shall have, in addition, any powers and duties

9

Subp 00773

that the Chair from time to time delegates to him/her. The Vice Chair shall have such other powers and perform such other duties as may be assigned to him/her by the Board or these Bylaws.

## Section 7-8. -    Chief Executive Officer

A.    Appointment, Compensation and Removal. The President and Chief Executive Officer of the General Member shall screen candidates when the Chief Executive Officer is to be hired and shall present finalists to the Board of this Corporation for selection. The Chief Executive Officer shall be an employee of the General Member. The Executive Committee of the Board of this Corporation shall meet with and provide an evaluation of the Chief Executive Officer and shall make compensation recommendations, based on an agreed upon salary system and survey process, to the President and Chief Executive Officer of the General Member, or his or her designee, who shall make the final determination, subject to compensation policies and procedures of the General Member. The Chief Executive Officer shall serve at the pleasure of the General Member, acting through its President and Chief Executive Officer, and the Board of this Corporation, each of which, with the approval of the other, may terminate the services of the Chief Executive Officer.

B.    Responsibilities and Authority. The Chief Executive Officer shall be the general manager of this Corporation. The Chief Executive Officer shall be given the necessary authority and responsibility to operate this Corporation in all of its activities, including without limitation, quality of services, cost effectiveness and economic performance and implementation of System strategies, subject to the following: With respect to policy development, program planning, employee and community relations, the Chief Executive Officer shall be subject to such policies as may be adopted and such orders as may be issued by the Board of this Corporation or by any of its committees to which the Board has delegated the power for such action; with respect to program execution and overall management performance, the Chief Executive Officer shall be subject to the authority of and shall report to the Board; with respect to strategies of the local delivery system operated by this Corporation and overall operations of that system, the Chief Executive Officer shall be responsible to the President and Chief Executive Officer of the General Member or his/her designee. The Chief Executive Officer shall act as the duly authorized representative of the Board of this Corporation in all matters in which the Board has not formally designated some other person to so act.

C.    Ex-Officio Board Membership. The Chief Executive Officer shall be an *ex-officio* voting member of the Board of this Corporation.

## Section 7-9. -    Chief Financial Officer

The Chief Financial Officer, acting with the Executive and Corporate Resources Committees, shall keep and maintain, or cause to be kept and maintained, adequate and correct

DEC_SMCSR_4-06.doc
SMCSR_Bylaws

10

Subp 00774

books and records of account in written form or any other form capable of being converted into written form. The Chief Financial Officer shall deposit all monies and other valuables in the name and to the credit of the Corporation with such depositories as may be designated by the Board. The Chief Financial Officer shall reimburse all funds of the Corporation as may be ordered by the Board. The books of account shall at all times be open to inspection by the Chief Executive Officer, any Trustee and the General Member. The Chief Financial Officer shall have such other powers and perform such other duties as may be prescribed by the Board or these Bylaws.

## Section 7-10. - Secretary

The Secretary shall keep, or cause to be kept, a book of minutes in written form of the proceedings of the Board and committees of the Board. Such minutes shall include all waivers of notice, consents to the holding of meetings or approvals of the minutes of meetings executed pursuant to these Bylaws or the California Nonprofit Public Benefit Corporation Law. The Secretary shall give, or cause to be given, notice of all meetings of the Board required by these Bylaws or the California Nonprofit Public Benefit Corporation Law to be given. The Secretary shall have such other powers and perform such other duties as may be prescribed by the Board or these Bylaws.

## Section 7-11. - Assistant Secretary

The Assistant Secretary, if there shall be such an officer, shall have all the powers and perform all the duties of the Secretary in the absence or inability of the Secretary to act. The Assistant Secretary shall have such other powers and perform such other duties as may be prescribed by the Board or these Bylaws.

## ARTICLE VIII — COMMITTEES

## Section 8-1. -    General

Except as specified in these Bylaws or in any resolution creating an additional committee, the members and chair of each committee shall be selected by the Board at the annual organizational meeting of the Board. The chair and all other members of each committee shall hold office for one year or until their successors are elected. Except as specified for the Executive Committee, the Chair of the Board shall have the power to fill any vacancies that occur on committees for the remainder of the year.

Except as otherwise set forth in Section 8-2.A, persons may be appointed to committees who are not Trustees of the Corporation; however, such persons may not be a chair of the committee. The Chair of the Board shall be an ex-officio voting member of each committee, and all committees deliberating on issues affecting the discharge of Medical Staff responsibilities shall include, in at least an advisory and consulting capacity, a physician member of the Medical Staff.

11

DEC_SMCSR_4-06.doc
SMCSR_Bylaws

The provisions of Sections 6-5, 6-6, 6-7, 6-9 and 6-10 of these Bylaws, regarding notice, quorum, manner of acting, telephone meetings and action in lieu of a meeting shall apply to committees of the Board, applying the standards for Trustees set forth in such sections to committee members (e.g., under Section 6-6, a majority of the whole number of committee members presently serving and empowered to vote shall constitute a quorum for the transaction of business). All committees of the Board shall keep minutes of their meetings, which shall be filed with the Secretary of the Board.

Section 8-2. -    Executive Committee

    A.    Composition. The Executive Committee shall consist of the Chair of the Board who shall serve as chair of the committee, the Vice Chair, the Secretary, the senior Sutter Health employee on the Board or his/her designee and the Chief Executive Officer.

    B.    Responsibilities and Authority. The affairs and management of the Corporation shall be supervised by the Executive Committee which shall have power to transact all regular business of the Corporation during the period between meetings of the Board, subject to any prior limitations imposed by the Board and subject to the limitations of California Corporations Code Section 5212, or successor provisions. Additionally, the Executive Committee shall review, at least every two years, the corporate Bylaws and recommend revisions as necessary to ensure compliance with applicable statutes, regulations, licensing and accreditation requirements. The Executive Committee shall also recommend to the Board nominees for Trustees (including nominees to fill vacancies created by expiration of a term as well as by resignation, removal or death); and may recommend nominees for the officers of this Corporation.

    C.    Accountability. The Executive Committee shall meet only as necessary. If the Executive Committee takes action, it shall report at the next regular Board meeting the results of actions that it has taken within the authority delegated to it, so that the Board maintains accountability from the Executive Committee for its actions. Minutes of all meetings of the Executive Committee shall be distributed to all Board members for information and any necessary actions.

Section 8-3. -    Corporate Resources Committee

    A.    Composition. The Corporate Resources Committee shall consist of no fewer than three Trustees, including at least one physician Board member, and the Chief Executive Officer.

    B.    Responsibilities and Authority. This committee shall be responsible for the following financial and planning matters:

        (i)    This committee shall be responsible for overseeing the management of the Corporation's assets and ensuring that financial records are maintained in

12

Subp 00776

accordance with Generally Accepted Accounting Principles. It shall see that an annual operating budget and an annual capital budget are prepared and submitted to the Board in a timely fashion. The committee shall examine periodic financial reports and receive explanations from the Chief Executive Officer regarding variations from the budget. The committee shall also receive the Corporation's annual audit report and management letter comments and make recommendations to the Board concerning the financial operation of the Corporation and the corporations of which this Corporation is the member; provide input into the annual audit plan; meet with the General Member's internal auditors and/or independent auditors in executive session without management present; provide oversight of a coordinated internal audit function and to receive independent audit reports from the General Member's Internal Audit Department; ensure the integrity of Corporation's financial statements, the financial reporting process, and the systems of internal accounting and financial control; and, with respect to all of the foregoing duties, recommend action thereon, if any, to the Board.

(ii)    The committee shall also:

    a.    Consider and recommend plans for securing capital and operating funds for the Corporation;

    b.    Assist in the preparation and modification of long-range and short-range development plans to assure that the health care activities are attuned to meeting the health needs of the community served by the Corporation, including periodic reexamination of the Corporation's purposes, goals, policies and current programs for delivery of health services consistent with System policies and procedures;

    c.    Review the financial feasibility of, and availability of resources for, corporate projects, acts and undertakings referred to it by the Board and make recommendations thereon to the Board; and

    d.    Perform such other duties related to fiscal and planning matters as may be assigned to it by the Board or its Chair.

The committee shall exercise its responsibilities and authority in a manner consistent with any guidelines or policies established by the General Member.

C.    Accountability. This committee shall report at regular or special meetings of the Board or the Executive Committee, its findings on periodic reports of the fiscal operation. It shall present annually to the Board a report reflecting anticipated operating and capital expenditures and receipts for the ensuing year, and such other budgets and planning reports as requested by the Board.

13

Subp 00777

Section 8-4. -    Quality Review Committee

A.    Composition. The Quality Review Committee shall consist of no fewer than three Trustees. At least a majority of the members of the Quality Review Committee shall be non-physician Trustees and community members. The Chief Executive Officer and the Chief of Staff shall serve as ex-officio members of the Quality Review Committee, without vote. At the request of the Quality Review Committee, a member of the Corporation's management team shall be named by the Chief Executive Officer to serve as administrative staff person to the Quality Review Committee.

B.    Responsibilities. The Quality Review Committee shall assist the Board in discharging its corporate responsibility for the quality of the care rendered in its facilities. The Quality Review Committee is responsible and accountable for the organization-wide performance management program. The Quality Review Committee shall give support, guidance, and counsel to Chief Executive Officer and to the Chief of Staff in their respective functions and activities. The Committee shall meet as often as is necessary as determined by its chair. The Quality Review Committee shall (either directly or indirectly, as delegated to the Medical Executive Committee, which may work with the full Board):

(i)    Advise and make recommendations to the Board on all Medical Staff matters, subject to the last paragraph of Section C hereof;

(ii)    Review the credentialing standards applied to applicants to the Medical Staff;

(iii)    Review and recommend to the Board all applicants for appointment and reappointment to the Medical Staff, including privileges to be granted (except applicants for temporary appointments and privileges which have been granted by the Chief Executive Officer upon recommendation by a Medical Staff department chair or the Chief of Staff). Where the committee's decision is adverse to an applicant, the matter will be referred back to the Medical Staff Executive Committee for further evaluation;

(iv)    Review and recommend to the Board all recommendations from the Medical Staff Executive Committee or the Medical Staff committees which perform similar functions;

(v)    Receive and review specific reports needed to ascertain if Medical Staff functions are being properly discharged;

(vi)    Ensure that Medical Staff officials are accountable for carrying out the Medical Staff functions of reviewing, analyzing, evaluating, and trending clinical work, and for making appropriate recommendations in accordance with the findings therefrom;

14

(vii)   Ensure that Medical Staff officials are accountable for implementing appropriate procedures for ensuring the compliance of all members of the Medical Staff with Medical Staff Bylaws, rules, and regulations and all Corporation promulgated policies;

(viii)  Review compliance with the JCAHO standards and recommendations on medical matters, and make recommendations accordingly;

(ix)    Meet at regular intervals and maintain a record of its proceedings;

(x)     Cause review of the Medical Staff Bylaws and rules and regulations; and

(xi)    Provide a forum for resolving potential disputes between the Medical Staff and Management.

(xii)   Render credentialing decisions on behalf of the Board in an expedited process for appointments, reappointments or when granting privileges, when criteria for that process are met but only in those months when the Board does not meet. The foregoing expedited credentialing process will NOT be available if:

   a.   The applicant submits an incomplete application;
   b.   The Medical Executive Committee's recommendation is adverse to the applicant;
   c.   There is a current challenge or a previous successful challenge to the applicant's licensure or registration;
   d.   The applicant has received an involuntary termination of medical staff membership or some or all clinical privileges at another organization; or
   e.   There has been a final judgment adverse to the applicant in a professional liability action.

C.   Authority. The Quality Review Committee shall have the authority to:

(i)     Request those studies, reports, statistics, and other information concerning the Medical Staff which the Committee deems appropriate; and

(ii)    Invite any officer of the Medical Staff to meet and confer with the Quality Review Committee.

The authority delegated to the Quality Review Committee shall be exercised in a manner consistent with any provisions for fair procedure, if applicable, afforded each member of the Medical Staff as outlined in the Medical Staff Bylaws and by California law, and with any guidelines or policies established by the Sutter Health Systemwide Quality Review Committee; provided, however, that nothing in these Bylaws or the guidelines or policies of Sutter Health shall prevent this Corporation from adopting and

15

Subp 00779

implementing higher standards than those established by the Sutter Health Quality Review Committee.

D.  Accountability. The Quality Review Committee shall at all times be accountable to the Board and shall fulfill that accountability by:

(i)  Submitting periodic written reports, and recommendations where appropriate, to the Board regarding:

a.  Applicants to the Medical Staff;

b.  Studies and policies pertaining to medical care appraisal, performance improvement, and patient/customer satisfaction; and

c.  Any matters relating to Medical Staff matters considered in need of Board deliberation.

(ii)  Submitting status reports to the Board or to the Executive Committee of the board describing studies and reports in progress pertaining to the Medical Staff.

(iii)  Establishing a mechanism whereby the Quality Review Committee's effectiveness shall be evaluated.

Section 8-5. - Ad Hoc Committees

A.  Composition. Ad hoc committees may be appointed by the Board for such special purposes as circumstances warrant. Individuals not on the Board but having special knowledge or background may be appointed to serve on such committees.

B.  Responsibilities and Authority. Activities of an ad hoc committee shall be limited to the accomplishment of those tasks for which it was appointed. The committee shall have no powers except those specifically conferred by the Board.

C.  Accountability. All ad hoc committees shall report directly to the Board. Upon completion of the stated purpose for which it was formed, the committee shall be discharged.

Section 8-6. - Sutter Medical Center of Santa Rosa Foundation

A.  Number and Selection of Sutter Medical Center of Santa Rosa Foundation Board

There shall be 5 - 20 members of the Sutter Medical Center of Santa Rosa Foundation Board ("Foundation Board"), all of whom shall be approved by the Sutter Medical Center of Santa Rosa Board of Trustees ("Corporation Board").

16

Subp 00780

The Chair of the Corporation Board, or his/her designee, the Chief Executive Officer of Sutter Medical Center of Santa Rosa, or his/her designee, and the Executive Director of the Sutter Medical Center of Santa Rosa Foundation shall be *ex officio* voting members of the Foundation Board. All *ex officio* Foundation Board members serve by reason of official capacity, and the resignation or removal of any such person from office shall automatically terminate such person's membership on the Foundation Board.

The remaining members of the Foundation Board shall consist of the following: one "at-large" member of the Corporation Board, who shall be appointed by the Chair of the Corporation Board; and other members who broadly represent the community of Sonoma County and who are experienced in organizational and community activities, to be nominated by the Foundation Board and approved by the Corporation Board.

Not more than forty-nine percent (49%) of the Foundation Board members shall be persons currently compensated by this Corporation (excluding any reasonable compensation paid such person as a director) or any close relative of such person.

B.    Term.  Each Foundation Board member (other than *ex officio* members) shall hold office for a term of (3) three years, or until his or her successor has been elected or appointed, and thereafter qualified.  A Foundation Board member may not serve more than three (3) consecutive full terms.

C.    Vacancies.  A vacancy on the Foundation Board, whether by death, resignation or removal may be filled by the Corporation Board at a regular or special meeting of the Corporation Board.  The Foundation Board shall nominate persons to fill such vacancies as they occur.  A Foundation Board Member appointed to fill a vacancy shall be appointed in accordance with the qualifications set forth in Section A, above, and shall be appointed for the unexpired term of his or her predecessor.

D.    Duties and Authority of Foundation Board

Except to the extent that such duties are exercised by the Corporation Board, the Foundation Board shall have the following duties and powers:

(i)    To develop resources, funding and community support for the benefit of Corporation and the communities it serves;

(ii)    To solicit, receive and maintain gifts of money and property and to distribute money and property to Corporation and the communities it serves; and

(iii)    To engage in and conduct charitable activities related to Corporation and the communities it serves.

E.    Advisory Role

17

Subp 00781

The Foundation Board shall, in the discretion of the Corporation Board, advise the Corporation Board with respect to charitable, educational and scientific activities.

Such advice may include, but is not limited to, all matters and decisions that are related to the Foundation Board's purposes as stated in Section D, above.

F.    Organization

The Foundation Board shall establish, by resolution, rule or regulation, its organization, policies and procedures pertinent to all activities assigned to it by these Bylaws, or as may be delegated to it from time to time by the Corporation Board. Such organization may include, but is not limited to, the times, places and occasions of regular and special meetings of the Foundation Board (including telephonic meetings), actions by the written consent of its members in lieu of a meeting, the quorum required for the conduct of its business.

The provisions of ARTICLE VI, Sections 6-5, 6-6, 6-7, and 6-10, of these Bylaws, regarding notice, quorum, manner of acting, and action in lieu of a meeting, shall apply to Foundation Board Meetings.

Written minutes of the Foundation Board Meetings shall be provided to the Corporation's Board.

G.    Compensation of the Foundation Board Members

Members of the Foundation Board shall serve without compensation.

H.    Committees

(i)    General. Committees of the Foundation Board shall be shall be standing or special. Each committee shall exercise such power and carry out such functions as are designated by the Corporation Board or Foundation Board from time to time. Each committee shall be subject to the control of the Corporation Board and Foundation Board, and shall be accountable to both Boards through regular reports by the committee chair.

(ii)   Standing. The standing committees of the Foundation Board shall be the Foundation Board Development Committee and the Annual Gifts Committee. Chairs of the Foundation Standing Committees shall be appointed by the Foundation Board and shall be members of the Foundation Board.

a.    Foundation Board Development Committee. The Foundation Board Development Committee is responsible for recruiting and nominating prospective Foundation Board members to the Foundation Board, for developing a program for the orientation and education of the

18

Subp 00782

Foundation Board, and other matters related to the governance of the Foundation Board. The Committee shall meet as required.

    b.    <u>Annual Gifts Committee</u>. The Annual Gifts Committee is responsible for Annual Gifts to Sutter Medical Center of Santa Rosa. Fundraising programs include direct mail, gift clubs, telemarketing, annual Board, employee and physician campaigns, donor recognition and memorial/tribute programs. The Committee shall meet as required.

  (iii)  <u>Foundation Special Committees.</u> Foundation Special Committees may be established by the Foundation Board. Members of such committees shall be selected by appointment of the Foundation Board. Foundation Special Committee Chairs may be invited periodically to attend and report to the Corporation Board and/or the Foundation Board on their activities.

  (iv)  <u>Committee Membership</u>. Members appointed to Standing or Special Committees of the Foundation (other than the Committee Chairs) need not be Members of the Foundation Board, but may include any citizen interested in the objectives and programs of the Foundation. Foundation Board Members are expected to serve on at least one Foundation Standing Committee each year.

I.    <u>Executive Director</u>

  (i)  <u>Selection and Retention</u>. Subject to the advice and consent of the Corporation Board, Sutter Medical Center of Santa Rosa Chief Executive Officer shall select and appoint an Executive Director who shall be the chief operating officer of the Foundation and shall be the Foundation Board's direct executive representative in the management of the Foundation. The Sutter Medical Center of Santa Rosa Chief Executive Officer shall have sole power to terminate the services of the Executive Director.

  (ii)  <u>Responsibilities</u>. Subject to oversight and direct reporting to the Corporation's Chief Executive Officer, the Executive Director shall be given the necessary authority and responsibility to manage Foundation activities, subject to the following: with respect to policy development, program planning, employee and community relations, he or she shall be subject to such policies as may be adopted and such orders as may be issued by the Corporation Board or by any of its committees; and with respect to program execution and overall management performance, he or she shall be subject to the authority of and shall report to the Sutter Medical Center of Santa Rosa Chief Executive Officer, or his or her designee. He or she shall act as the duly authorized representative of the Foundation Board in all matters in which the board has not formally designated some other person to so act.

DEC_SMCSR_4-06.doc
SMCSR_Bylaws

Subp 00783

ARTICLE IX — PROVISION OF MEDICAL CARE

Section 9-1. -     Responsibility for Medical Care

    A.    Responsibility for Care. The Board is responsible for the quality of medical care rendered in the Corporation's facilities. It shall discharge that responsibility by assuring that the organized Medical Staff carry out the specific quality control functions in accordance with guidelines established by the System's Systemwide Quality Review Committee, including, without limitation, the following:

    (i)    Reviewing, analyzing and evaluating clinical practice to determine the quality of medical care;

    (ii)    Conducting periodic meetings to review, analyze and evaluate, at regular intervals, the Medical Staff's clinical experience to determine the quality of medical care, based on the medical records of the Corporation's patients;

    (iii)    Reporting regularly as required by the Quality Review Committee in Section 8-4, on the quality of medical care in terms of professional standards;

    (iv)    Recommending the appointment and reappointment of physicians to the Medical Staff and the delineation of their clinical privileges;

    (v)    Supervising and ensuring:

        a.    Compliance with the Bylaws, rules and regulations for the Medical Staff; and

        b.    Carrying out the policies of the Corporation concerning the functions outlined in those Medical Staff Bylaws;

    (vi)    Disciplining the members of the Medical Staff for violations of policies of the Corporation and the Medical Staff Bylaws, rules and regulations, within the limitations of the authority delegated by the Board;

    (vii)    Assisting in identifying community health needs and setting appropriate institutional goals to meet those needs; and

    (viii)    Conducting formally structured ongoing programs of continuing medical education designed to meet the highest professional standards of care.

    B.    Nondiscrimination. The Board shall ensure that all active and provisional staff members are required to accept referrals from other members of the Medical Staff regardless of the patient's financial class or ability to pay.

Subp 00784

C.  Discharge of Medical Staff Functions. The Chief of Staff shall be responsible for the effective discharge of functions to be carried out by the Medical Staff.

D.  Chief of Staff Authority. The Chief of Staff shall have the authority necessary to carry out his/her responsibilities as they are defined in the Bylaws for the Medical Staff.

E.  Cooperation. The Chief of Staff shall work with the Chief Executive Officer.

F.  Board Responsibilities. The Board shall be responsible for:

    (i)  Making all appointments and reappointments to the Medical Staff and alterations of staff status;

    (ii)  Granting clinical privileges;

    (iii)  Disciplinary actions; and

    (iv)  All matters relating to Medical Staff professional competence.

G.  Patient Interests. In discharging these responsibilities, the Board shall assure that the safety and interest of the patients take precedence over all other concerns.

H.  Required Systems. The Board shall, through the Medical Staff organization and the functions assigned to it, maintain systems for:

    (i)  The establishment of professional standards and criteria by which to evaluate medical care;

    (ii)  The continuing surveillance of professional practice and Medical Staff functions in order to determine the degree to which those professional standards and criteria are being met; and

    (iii)  Gaining compliance with the predetermined standards and criteria when the systems of surveillance indicate they are not being met.

I.  Board Authority. No delegation to the Medical Staff shall preclude the Board from exercising the authority required to meet its responsibilities under these Bylaws.

J.  Standard Setting. Nothing in these Bylaws or the System's guidelines or policies shall prevent this Corporation from adopting and implementing higher standards than those established by the System's Systemwide Quality Review Committee.

DEC_SMCSR_4-06.doc
SMCSR_Bylaws

Subp 00785

Section 9-2. - Medical Staff Organization

A.    Purposes. The Board shall organize, or cause to be organized, a Medical Staff, comprised of physicians for the following purposes:

   (i)    To serve as the primary means for accountability to the Board for the appropriateness of the professional performance and ethical conduct of its members and affiliates;

   (ii)    To discharge specific quality control functions designed to ensure the continual upgrading of the quality of medical care rendered by the Medical Staff while at the same time assuring that the safety and interest of the patients shall take precedence over all other concerns; and

   (iii)    To provide a structure whereby the Medical Staff members can become an integral part of the total hospital organization and participate in the institution's planning, policy setting and decision making process.

B.    Officials

   (i)    The Medical Staff Bylaws shall provide for the selection of a Chief of Staff and other Medical Staff and department officers.

   (ii)    The Chief of Staff shall hold office for a one-year term and may serve two consecutive terms in that office.

Section 9-3. - Medical Staff Bylaws

A.    Purpose of Medical Staff Bylaws. There shall be Bylaws for the Medical Staff. The Medical Staff Bylaws shall state the purpose and functions of the Medical Staff organization and they shall be in consonance with the purposes of the Medical Staff organization provided in Section 9-2. The Medical Staff Bylaws shall provide an organizational framework necessary for the implementation of appropriate quality control programs as dictated by the prescribed functions of the Medical Staff organization. The Medical Staff Bylaws shall define relationships, responsibilities, authority and methods of accountability for each Medical Staff official, department officer and committee. The Medical Staff Bylaws will specifically assure that only a member of the Medical Staff with admitting privileges shall admit patients to the hospital; that only an appropriately licensed practitioner with clinical privileges shall be directly responsible for a patient's diagnosis and treatment within the area of his/her privileges; that each patient's general medical condition shall be the responsibility of a physician member of the Medical Staff; that each patient admitted to the hospital shall receive a baseline history and physical examination by a physician who is either a member of or approved by the Medical Staff and that other direct medical care of patients provided by allied health professionals, residents and medical students shall be

22

Subp 00786

under the appropriate degree of supervision by a licensed practitioner with clinical privileges.

B.    Drafting of Medical Staff Bylaws. The Medical Staff, through its officials and appropriate committees, shall submit to the Board Bylaws, rules and regulations for the Medical Staff organization in accordance with the requirements as set forth in Section 9-3A. The Medical Staff shall periodically review and, as necessary, submit to the Board revisions to its Bylaws, rules and regulations.

C.    Approval of Medical Staff Bylaws. Medical Staff Bylaws and Rules and Regulations are adopted by the Medical Staff and approved by the Board of Trustees before becoming effective. Neither body may unilaterally amend the Medical Staff Bylaws or Rules and Regulations.

## Section 9-4. - Hearing and Appeals

The Board shall assure that each member of the Medical Staff shall be afforded fair procedure with respect to all appointment and reappointment procedures and the granting, revocation, rescinding, reduction, removal or denial of Medical Staff privileges. The steps for affording such fair procedure to each member of the Medical Staff shall be carefully defined in the Medical Staff Bylaws, and shall provide in detail for hearing and appeal procedures, and for notice to the aggrieved practitioner of his/her access to those procedures.

## Section 9-5. -   Professional Liability Insurance

The Board shall ensure that each practitioner granted clinical privileges in the Corporation's facilities shall maintain professional liability insurance in not less than the minimum amounts as from time to time may be determined by the Board, based upon the recommendation of the executive committee of the Medical Staff or as required by Corporation's professional liability insurance carrier. The minimum amount of required coverage established pursuant to this provision shall not exceed the amount of professional liability insurance carried by the Corporation.

## ARTICLE X — RECORDS, REPORTS AND INSPECTION RIGHTS

## Section 10-1. -   Maintenance of Articles and Bylaws

The Corporation shall keep at its principal office the original or copies of the Articles of Incorporation and the Bylaws as amended to date.

## Section 10-2. -   Maintenance of Other Corporation Records

The accounting books, records and minutes of proceedings of the Board and committees of the Board shall be kept at such place or places designated by the Board, or, in the absence of such designation, at the principal office of the Corporation. The minutes shall be kept in written

DEC_SMCSR_4-06.doc
SMCSR_Bylaws

Subp 00787

or typed form, and the accounting books and records shall be kept in either written or typed form, or in any other form capable of being converted into written, typed or printed form.

<u>Section 10-3. - Inspection by Trustees or General Member</u>

Except as otherwise limited by law, every Trustee and the General Member shall have the absolute right at any reasonable time to inspect all books, records and documents of every kind and the physical properties of the Corporation. This inspection by a Trustee or the General Member may be made in person or by an agent or attorney, and the right of inspection includes the right to copy and make extracts of documents.

<u>Section 10-4. - Annual Report</u>

The fiscal year of this Corporation shall end on the 31st day of December of each year. The Corporation shall provide to the Trustees, within 120 days after the close of its fiscal year, a report containing the following information in reasonable detail:

A.    <u>Assets and Liabilities</u>. The assets and liabilities, including the trust funds, of the Corporation as of the end of the fiscal year;

B.    <u>Change in Assets</u>. The principal changes in assets and liabilities, including trust funds, during the fiscal year;

C.    <u>Revenue.</u> The revenue or receipts of the Corporation, both unrestricted and restricted to particular purposes, for the fiscal year;

D.    <u>Expenses</u>. The expenses or disbursements of the Corporation, for both general and restricted purposes, during the fiscal year;

E.    <u>Interested Persons.</u> Any information required by the California Nonprofit Public Benefit Corporation Law regarding transactions with interested persons and indemnifications; and

F.    <u>Audit Report</u>. The report shall be accompanied by any report by independent accountants, or, if there is no such independent report, a certificate to the effect that the report was prepared without audit.

ARTICLE XI — EXECUTION OF DOCUMENTS

The following persons shall be authorized to execute any deeds, mortgages, bonds, contracts or other instruments which the Board has authorized:

Any officer or other person duly authorized by resolution of the Board to execute documents; or

24

DEC_SMCSR_4-06.doc
SMCSR_Bylaws

In the absence of express authorization by Board resolution, the Chair or Chief Executive Officer and the Secretary or any Assistant Secretary (all subject to such limitations as may be imposed by resolution of the Board).

## ARTICLE XII — TRANSACTIONS REQUIRING APPROVAL OF THE GENERAL MEMBER

### Section 12-1. -   Matters Requiring Approval

Notwithstanding anything in these Bylaws to the contrary, neither the Board nor any officer or employee of the Corporation may take any of the following actions, or approve an affiliate taking any of the following actions without the prior approval of the General Member:

A.   Corporate Transaction.  Merger, consolidation, reorganization or dissolution of this Corporation or any subsidiary or affiliate entity;

B.   Amendment of Corporate Documents.  Amendment or restatement of the Articles of Incorporation or the Bylaws of this Corporation or any subsidiary or affiliate entity;

C.   Operating Budgets.  Adoption of operating budgets of this Corporation or any subsidiary or affiliate entity, including consolidated or combined budgets of this Corporation and all subsidiary organizations of the Corporation;

D.   Capital Budgets. Adoption of capital budgets of this Corporation or any subsidiary or affiliate entity;

E.   Expenditures.  Aggregate operating or capital expenditures on an annual basis that exceed approved operating or capital budgets by a specified dollar amount to be determined from time to time by the General Member;

F.   Material Agreements.  Long-term or material agreements including, but not limited to, borrowings, equity financings, capitalized leases and installment contracts; and purchase, sale, lease, disposition, hypothecation, exchange, gift, pledge or encumbrance of any asset, real or personal, with a fair market value in excess of a dollar amount to be determined from time to time by the Directors of the General Member, which shall not be less than 10% of the total annual capital budget of this Corporation;

G.   Independent Auditors.  Appointment of an independent auditor and hiring of independent counsel except in conflict situations between the General Member and this Corporation or any subsidiary or affiliate entity;

H.   Affiliate Entities. The creation or acquisition of any subsidiary or affiliate entity;

25

Subp 00789

I.  <u>Management Contracts</u>. Contracting with an unrelated third party for all or substantially all of the management of the assets or operations of this Corporation or any subsidiary or affiliate entity;

J.  <u>Major Programs.</u> Approval of major new programs and clinical services of this Corporation or any subsidiary or affiliate entity. The General Member shall from time to time define the term "major" in this context;

K.  <u>Strategic Plans</u>. Approval of strategic plans of this Corporation or any subsidiary or affiliate entity;

L.  <u>Performance Improvement</u>. Adoption of performance improvement policies not in conformity with policies established by the General Member; and

M.  <u>Interested Party Transactions</u>. Any transaction between this Corporation, a subsidiary or affiliate and a Trustee of this Corporation or an affiliate of such Trustee.

<u>Section 12-2. -  Other Major Activities</u>

A.  <u>Major Activities</u>. In addition, the General Member shall have the authority, except as otherwise provided by the General Member and after consultation with this Corporation, to require the prior review and approval of those activities of this Corporation or any subsidiary or affiliate entity which the General Member determines to be major activities.

B.  <u>Definition</u>. "Major activities" shall be those which the General Member by a vote of not less than two-thirds (2/3) of its Board of Directors has declared major, by written notice to this Corporation, delivered personally or transmitted by registered or certified mail return receipt requested. Such notice shall specifically identify the matter or matters requiring approval of the General Member, and shall refer to this Bylaw provision granting such approval rights to the General Member. Notices received pursuant to this section shall be recorded in the minutes of this Corporation and shall be filed with the minutes of this Corporation.

<u>Section 12-3. -  Approvals</u>

The General Member's approval or disapproval of matters described in Section 12-1 or 12-2, above, shall be recorded in or filed with the minutes of this Corporation.

<u>Section 12-4. -  Other Actions Requiring Approval of the General Member</u>

A.  <u>Vacancy</u>. Any vacancy occurring on the Board of this Corporation shall be filled by an appointee of the General Member from nominees selected as described in the nomination provision of these Bylaws.

26

DEC_SMCSR_4-06.doc
SMCSR_Bylaws

B.    Removal. Subject to Section 7-8A, any Trustee or Director of this Corporation's Board may be removed from office by the General Member; provided, however, the General Member shall notify this Corporation's Board, and give it an opportunity to respond in the manner and subject to the terms and conditions described herein, prior to any such proposed removal.

C.    Nominations. Nominations of non-*ex-officio* Directors or Trustees for the Board of this Corporation, including but not limited to nominations for full terms, and nominations to fill vacancies created by resignation, removal, or death occurring during a term, shall be made by the Board of this Corporation to the General Member, except that in the event these Bylaws or the Board create a nominating committee, the Board shall consider the recommendations of the nominating committee when the Board presents its nominees to the General Member. The General Member may accept any candidate proposed by the Board or reject any or all candidates with instructions to reconsider.

## Section 12-5. -  Exercise of Authority

Notwithstanding any provision in these Bylaws to the contrary, and except as otherwise provided in subsection B of Section 12-2 of these Bylaws (regarding definition of "major activities"), this Corporation shall not prescribe the manner by which the General Member exercises its authority under these Bylaws, and no present or future provision of these Bylaws shall have such effect. Without limiting the generality of the foregoing, no present or future provision of these Bylaws or other action of this Corporation shall prescribe the required vote of the Board of the General Member for the exercise of its authority herein, nor shall the approval of the General Member to be inferred from its failure affirmatively to disapprove of a proposed action of this Corporation within a specified time period.

## ARTICLE XIII — AUXILIARIES AND RELATED GROUPS

## Section 13-1. -  Establishment

Subject to the provisions of Section 12-1, the Board may establish or support the establishment of auxiliaries, supporting foundations and/or related organizations, wishing to support the objectives of the Corporation or work in complementary ways with the Corporation. Bylaws, other rules and regulations of the auxiliary, supporting foundations and/or other related organizations and any amendments thereto, and all major projects must be approved by the Board.

## Section 13-2. -  Board Approval

For liaison purposes only, a Trustee shall be appointed to attend executive committee meetings of the auxiliary, supporting foundation or related organization, and from time to time, but not less than annually, the Board shall receive a report, for information only, from the auxiliary or related organization as to the operations of that organization.

DEC_SMCSR_4-06.doc
SMCSR_Bylaws

Subp 00791

## ARTICLE XIV — BONDING AND INDEMNIFICATION

### Section 14-1. -   Bonding

All officers and employees handling funds shall be properly bonded.

### Section 14-2. -   Indemnification

The Corporation shall have the right to indemnify any person who was or is a party or is threatened to be made a party to any civil, criminal, administrative or investigative proceeding by reason of the fact that such person is or was a Trustee, officer, employee or otherwise an agent of the Corporation, against expenses, judgments, fines, settlements and other amounts actually and reasonably incurred in connection with such proceeding, provided that all of the requirements of the California Nonprofit Public Benefit Corporation Law for such indemnification are met.

## ARTICLE XV — AMENDMENTS

### Section 15-1. -   Amendments

These Bylaws may be amended or new Bylaws may be adopted by action of the Board at any regular meeting of the Board or at any special meeting called for that purpose.  Amendments shall not be effective unless and until approved by the General Member.  Alternatively, amendments may be adopted by the General Member, other than amendments which reduce the powers of the Board, at any regular or special meeting of the Board of the General Member called for that purpose.  However, prior to amending unilaterally these Bylaws, the General Member shall notify the Board of the proposed changes, explain the reasons for them, and allow the Board to comment.  Following that process the General Member may request that the Board adopt such amendments at its next regularly scheduled meeting.

DEC_SMCSR_4-06.doc
SMCSR_Bylaws

Subp 00792

EXHIBIT 1

EQUITY CASH TRANSFER POLICY
(Insert)

Subp 00793

## SUTTER HEALTH POLICIES
### Finance Policy and Procedure

### CASH AND FUND TRANSFERS

| | |
|---|---|
| Policy Number: 207 | Origination Date: 1/96 |
| | Last Revised Date: 7/98 |
| Approved by: Bob Reed, Chief Financial Officer | Next Review Date: 3/99 |

### POLICY

Sutter Health shall ensure that operating funds are available to affiliated entities sufficient to fund their approved operating and capital budgets. Transfers from Sutter Health to affiliates may be made where such transfers are determined to be in the best interests of the Sutter Health system, the affiliate has adopted this policy, or otherwise incorporated this policy into its bylaws, and the transfer is not otherwise prohibited by pre-existing contractual obligations. Alternatively, excess operating cash may be transferred from the affiliate to Sutter Health.

Sutter Health shall ensure that each affiliate's funded Depreciation (including seismic funds) shall be used to fund that affiliate's routine and non-routine capital acquisitions, and will ensure that trusteed funds will be used for their authorized purposes.

Donor originated funds are specifically excluded from this policy.

### PURPOSE

The purpose of this policy is to enable Sutter Health to optimize the strategic value of available capital resources for the benefit of the system and of individual affiliated entities. Each non-profit Sutter Health affiliated entity shall adopt this policy, thus providing the system with maximum flexibility to redeploy cash resources to meet approved system strategic objectives.

### AUTHORIZATION

The Sutter Health Chief Financial Officer may authorize transactions and establish routine practices in accordance with this policy. Sutter Health will provide periodic reports to each affiliated entity reflecting transactions executed in accordance with this policy.

### PROCEDURES

Definitions

Excess Operating Cash

Operating cash generated by each affiliated entity, over and above its target. (See Figure 1 for example of calculation).

Subp 00794

_Target:_

Each affiliated entity's operating cash target shall consist of: Fourteen days of budgeted operating expenses, excluding depreciation expense.

_Donor originated Funds:_

Cash received by or due to an affiliated entity or associated charitable foundation, which has not been spent.

_Accounting treatment:_

For transfers to Sutter Health, the following entry would be recorded:

|  | Dr | Cr |
|---|---|---|
| Equity Transfer – SH | XXX | |
| Cash – Operating Pool | | XXX |

For transfers received from Sutter Health, the following entry would be recorded:

|  | Dr | Cr |
|---|---|---|
| Cash – Operating Pool | XXX | |
| Equity Transfer – SH | | XXX |

Subp 00795

## SECRETARY'S CERTIFICATE

The amendments contained in these Amended and Restated Bylaws were approved by the Board of Trustees of Sutter Medical Center of Santa Rosa on March 31, 2006 and by Sutter Health, the General Member, on April 3, 2006, respectively.

The foregoing is a true and complete copy of the Amended and Restated Bylaws of Sutter Medical Center of Santa Rosa, and said Bylaws have not been amended, modified or rescinded and are now in full force and effect.

Dated: _5/29/06_

Cynthia Nestle

Secretary

Subp 00797