Exhibit V

# AMENDED AND RESTATED

# BYLAWS

# OF

# SUTTER SOLANO MEDICAL CENTER,

a California nonprofit public benefit corporation

*Includes revisions through December 17, 2001*

## TABLE OF CONTENTS

Page

| | | | |
|---|---|---|---|
| **ARTICLE I** | | OFFICES, PURPOSES AND POWERS | 1 |
| SECTION | 1.1 | ORGANIZATION | 1 |
| SECTION | 1.2 | PRINCIPAL OFFICE | 1 |
| SECTION | 1.3 | PURPOSES AND POWERS | 1 |
| SECTION | 1.4 | SOURCE OF FUNDS | 1 |
| SECTION | 1.5 | USE OF FUNDS | 2 |
| SECTION | 1.6 | DEDICATION OF PROPERTY | 2 |
| | | | |
| **ARTICLE II** | | MEMBERSHIP | 2 |
| SECTION | 2.1 | QUALIFICATION | 2 |
| SECTION | 2.1.1 | Corporate Member | 2 |
| SECTION | 2.1.2 | Community Members | 3 |
| SECTION | 2.2 | MEMBERSHIP NOT PROPRIETARY | 3 |
| SECTION | 2.3 | TRANSFER OF MEMBERSHIP | 4 |
| SECTION | 2.4 | NONLIABILITY OF MEMBERS | 4 |
| SECTION | 2.5 | TERMINATION OF COMMUNITY MEMBERSHIP | 4 |
| SECTION | 2.5.1 | Automatic Termination | 4 |
| SECTION | 2.5.2 | Termination for Cause Without Hearing | 4 |
| SECTION | 2.5.3 | Termination for Cause With Hearing | 5 |
| SECTION | 2.6 | MEETINGS OF COMMUNITY MEMBERS | 6 |
| SECTION | 2.6.1 | Annual Meeting | 6 |
| SECTION | 2.6.2 | Special Meetings | 6 |
| SECTION | 2.6.3 | Notice of Meetings | 6 |
| SECTION | 2.6.4 | Quorum | 6 |
| SECTION | 2.6.5 | Voting | 6 |
| SECTION | 2.6.6 | Conduct of Meetings | 7 |
| SECTION | 2.7 | RIGHTS AND POWERS OF MEMBERS | 7 |
| SECTION | 2.7.1 | Corporate Member | 7 |
| SECTION | 2.7.2 | Community Members | 7 |
| SECTION | 2.8 | TERM OF CORPORATE MEMBER | 8 |
| | | | |
| **ARTICLE III** | | SYSTEM AFFILIATION | 8 |
| SECTION | 3.1 | AFFILIATED STATUS | 8 |
| SECTION | 3.2 | PARTICIPATION IN ACTIVITIES OF THE MEMBER | 8 |
| SECTION | 3.3 | LIABILITIES AND ASSESSMENTS | 9 |
| SECTION | 3.4 | CASH CONCENTRATION | 9 |
| SECTION | 3.5 | EQUITY CASH TRANSFER POLICY | 9 |
| SECTION | 3.6 | PAYMENT OF ALLOCATION FEE | 9 |

Subp 00805

| SECTION | 3.7 | COST OF CAPITAL ALLOCATION POLICY | 9 |
| SECTION | 3.8 | REPRESENTATION ON THE BOARD OF TRUSTEES | 9 |
| SECTION | 3.9 | EFFECT OF POLICIES | 10 |
| SECTION | 3.10 | POLICIES REQUIRED OF AFFILIATED ENTITIES | 10 |
| SECTION | 3.11 | COMPLIANCE PROGRAM | 10 |
| **ARTICLE IV** | | **BOARD OF TRUSTEES** | 10 |
| SECTION | 4.1 | NUMBER AND QUALIFICATION | 10 |
| SECTION | 4.2 | ELECTION AND TENURE | 11 |
| SECTION | 4.2.1 | Election of Trustees | 11 |
| SECTION | 4.2.2 | Tenure | 12 |
| SECTION | 4.3 | RESIGNATION AND VACANCIES | 12 |
| SECTION | 4.3.1 | Resignations | 12 |
| SECTION | 4.3.2 | Vacancies | 12 |
| SECTION | 4.3.3 | Filling of Vacancies | 12 |
| SECTION | 4.3.4 | Removal | 13 |
| SECTION | 4.4 | SELF-DEALING AND CONFLICTS OF INTEREST | 13 |
| SECTION | 4.5 | POWERS | 13 |
| SECTION | 4.5.1 | Overall Power of the Board | 13 |
| SECTION | 4.5.2 | Delegation | 13 |
| SECTION | 4.5.3 | Other Limitations | 14 |
| SECTION | 4.6 | ADDITIONAL CONSULTANTS | 14 |
| SECTION | 4.7 | MEETINGS OF TRUSTEES | 15 |
| SECTION | 4.7.1 | Organizational Meeting | 15 |
| SECTION | 4.7.2 | Regular Meetings | 15 |
| SECTION | 4.7.3 | Special Meetings | 15 |
| SECTION | 4.7.4 | Adjourned Meetings | 15 |
| SECTION | 4.7.5 | Quorum | 15 |
| SECTION | 4.7.6 | Voting | 16 |
| SECTION | 4.7.7 | Manner of Action | 16 |
| SECTION | 4.7.8 | Conduct of Meetings | 16 |
| **ARTICLE V** | | **OFFICERS/CHIEF EXECUTIVE OFFICER** | 16 |
| SECTION | 5.1 | OFFICERS | 16 |
| SECTION | 5.2 | ELECTION AND TENURE | 16 |
| SECTION | 5.3 | RESIGNATION AND REMOVAL | 17 |
| SECTION | 5.4 | VACANCIES | 17 |
| SECTION | 5.5 | DUTIES OF OFFICERS | 17 |
| SECTION | 5.5.1 | Chair of the Board | 17 |
| SECTION | 5.5.2 | Vice-Chair | 17 |

Subp 00806

SECTION     5.5.3   Secretary.................................................17
SECTION     5.5.4   Vice Chair-Finance ................................18
SECTION     5.5.5   Subordinate Officers ..............................17
SECTION     5.5.6   Authority to Act .....................................18
SECTION     5.6     CHIEF EXECUTIVE OFFICER ..................18

**ARTICLE VI**     **BOARD COMMITTEES**...................................19
SECTION     6.1     STANDING BOARD COMMITTEES ...........19
SECTION     6.1.1   Executive Committee................................20
SECTION     6.1.2   Finance Committee ..................................21
SECTION     6.1.3   Governance Committee ............................21
SECTION     6.1.4   Strategic Planning Committee .................22
SECTION     6.1.5   Joint Conference Committee.....................22
SECTION     6.1.6   Medical Policy Committee........................23
SECTION     6.2     SPECIAL COMMITTEES.............................23

**ARTICLE VII**    **MEDICAL STAFF**............................................24
SECTION     7.1     ORGANIZATION ........................................24
SECTION     7.2     MEDICAL STAFF BYLAWS, RULES AND
                    REGULATIONS..........................................24
SECTION     7.3     MEDICAL STAFF MEMBERSHIP AND
                    CLINICAL PRIVILEGES............................25
SECTION     7.3.1   Delegation to the Medical Staff ................25
SECTION     7.3.2   Action by the Board .................................25
SECTION     7.3.3   Criteria for Board Action ........................25
SECTION     7.3.4   Terms and Conditions of Staff Membership
                    and Clinical Privileges .............................25
SECTION     7.3.5   Procedure .................................................25
SECTION     7.4     FAIR HEARINGS ........................................25
SECTION     7.5     ALLIED HEALTH PROFESSIONALS ..........26

**ARTICLE VIII**   **QUALITY OF PROFESSIONAL SERVICES**.....26
SECTION     8.1     BOARD RESPONSIBILITY..........................26
SECTION     8.2     ACCOUNTABILITY TO BOARD .................26
SECTION     8.3     REPORTING ................................................27

**ARTICLE IX**     **GENERAL PROVISIONS**.................................27
SECTION     9.1     ANNUAL REPORT ......................................27
SECTION     9.2     GUILD .......................................................27
SECTION     9.3     SEAL AND MEMBERSHIP CERTIFICATES .............28
SECTION     9.4     CONTRACTS, ETC. HOW EXECUTED.....................28

Subp 00807

SECTION    9.5    DEPOSITS ...................................................................28
SECTION    9.6    CHECKS, DRAFTS, ETC. ..........................................28
SECTION    9.7    COMPENSATION AND DISTRIBUTION ON
                  DISSOLUTION ....................................................28

ARTICLE X        TRANSACTIONS REQUIRING APPROVAL
                 OF THE CORPORATE MEMBER..................................29
SECTION    10.1   MATTERS REQUIRING APPROVAL ........................29
SECTION    10.2   OTHER MAJOR ACTIVITIES .....................................30
SECTION    10.3   APPROVALS .................................................................30
SECTION    10.4   OTHER ACTIONS REQUIRING APPROVAL
                  OF THE CORPORATE MEMBER..............................30
SECTION    10.4.1 Vacancy.........................................................................30
SECTION    10.4.2 Removal .........................................................................30
SECTION    10.5   EXERCISE OF AUTHORITY .......................................31


ARTICLE XI       AMENDMENT TO BYLAWS .................................................31

EXHIBIT 1 -      EQUITY CASH TRANSFER POLICY

Subp 00808

## DEFINITIONS

1.  **HOSPITAL** or **CORPORATION** means Sutter Solano Medical Center with principal office and hospital at 300 Hospital Drive, Vallejo, California 94589, and such facilities as it may own or operate.

2.  **BOARD OF TRUSTEES** or **BOARD** means the governing body of the Corporation.

3.  **BOARD COMMITTEE** means a body created by resolution of the Board whose members are elected by the Board from its own membership and which is authorized to exercise a designated portion of the authority of the Board when the Board is not in session.

4.  **CHAIR** means the individual elected by the Board to serve as the principal corporate officer of the Corporation.

5.  **CHIEF EXECUTIVE OFFICER** means the individual appointed by the President of the Corporate Member to act on behalf of the Corporation in the overall administrative management of the hospital.

6.  **MEDICAL STAFF** or **STAFF** means the formal organization of all licensed physicians, dentists, podiatrists and psychologists who are privileged to attend patients in the hospital.

7.  **MEDICAL STAFF MEMBERSHIP STATUS** or **MEMBERSHIP STATUS** means all matters relating to medical staff appointments and reappointments, to service affiliations, and staff category assignments.

8.  **CLINICAL PRIVILEGES** or **PRIVILEGES** means the permission granted to a practitioner to render specific diagnostic, therapeutic, medical, dental, podiatric or surgical services.

9.  **PHYSICIAN** means an individual with an M.D., D.O., or, in the case of psychologists, Ph.D. degree, who is fully licensed to practice medicine in all its phases.

10. **PRACTITIONER** means, unless otherwise expressly limited, any physician, dentist, podiatrist, or psychologist applying for or exercising clinical privileges in Sutter Solano Medical Center.

Subp 00809

11. **ALLIED HEALTH PROFESSIONAL** or **AHP** means an individual other than a licensed practitioner who exercises independent judgment within the areas of his/her professional competence and who is qualified to render direct or indirect medical, dental, podiatric, therapeutic, or surgical care under the supervision of a practitioner who has been accorded privilege to provide such care in the hospital. Such AHP's shall include, without limitation, nurse clinicians/ practitioners, physician assistants, and qualified therapists.

12. **EX OFFICIO** means service as a member of a body by virtue of an office or position held, and unless otherwise expressly provided, means without voting rights.

13. **THIS STATE** means the State of California, unless otherwise expressly provided.

14. **GENERAL MEMBER** or **CORPORATE MEMBER** means Sutter Health, a California non-profit public benefit Corporation.

15. **COMMUNITY MEMBERS** means all individuals who are regular or honorary members of the Corporation.

Subp 00810

# RESTATED BYLAWS

## OF THE

## SUTTER SOLANO MEDICAL CENTER

### ARTICLE I

### OFFICES, PURPOSES AND POWERS

1.1    ORGANIZATION

The Corporation is incorporated under the laws of the State of California as a nonprofit corporation which does not contemplate pecuniary gain or profit to the Members thereof.

1.2    PRINCIPAL OFFICE

The principal office of the Corporation shall be located in this State, County of Solano. The Corporation shall have and continuously maintain in this State a registered office and a registered agent whose office shall be identical with the registered office, and may have such other offices as the Board may determine from time to time.

1.3    PURPOSES AND POWERS

The Corporation shall have such purposes as are now or may hereafter be set forth in the Articles of Incorporation and shall have and exercise such powers in furtherance of its purposes as are now or may hereafter be set forth in the Articles of Incorporation. The purposes of this Corporation shall include to contribute to the growth, development and financial strength of Sutter Health.

1.4    SOURCES OF FUNDS

The Corporation shall obtain funds for the attainment of its purposes through revenues derived from the operation of hospital and guild and related functions, and from other sources including gifts, devises, and bequests.

Subp 00811

1.5    USE OF FUNDS

The funds and property of the Corporation shall be devoted solely to the attainment of the purposes specified in paragraph 1.3 without distribution of any gain, profit, or dividend to its Community Members.

1.6    DEDICATION OF PROPERTY

The dedication of the property and funds of the Corporation as set forth in paragraph 1.5 shall be perpetual and irrevocable and, in the event of dissolution of the Corporation and after all of its debts and liabilities have been paid or adequately provided for, all remaining assets shall be distributed to a fund, foundation or corporation organized and operated for the exercise of charity by the maintenance of a nonprofit hospital and/or guild and related functions.

ARTICLE II

MEMBERSHIP

2.1    QUALIFICATION

There shall be two classes of members of this Corporation; one shall be known as the Corporate Member, and the others known as the Community Members.

2.1.1    Corporate Member.

There shall be one Corporate Member of this Corporation which shall be Sutter Health, a California nonprofit public benefit corporation. The Corporate Member shall be entitled to exercise fully all rights and privileges of members of nonprofit corporations under the California Nonprofit Public Benefit Corporation Law, and all other applicable laws. The rights and powers of the Corporate Member shall also include, without limitation, the following: the limitation on liabilities described in Section 3.3 of these Bylaws; the rights and powers to appoint (and remove) the six (6) members of the Board of this Corporation, subject to Section 10.4 of these Bylaws; and the exercise of all of the rights and powers set forth in Article X of these Bylaws. The Corporate Member may not be expelled or suspended as the Corporate Member without its consent. Any reference in these Bylaws to the "general member," "General Member," "corporate member," or "Corporate Member" of this Corporation, or any similar such reference, shall mean Sutter Health, a California nonprofit public benefit corporation.

Exercise of Corporate Member Membership Rights. The Corporate Member of this Corporation shall exercise its membership rights through its own Board of Directors. Subject to the provisions of the Corporate Member's own bylaws, and except as otherwise provided in these Bylaws where a super-majority vote of the Board of Directors of the

Subp 00812

Corporate Member is required, the Board of Directors of the Corporate Member may, by resolution, authorize a person or committee of persons to exercise its vote on any matter to come before the membership of this Corporation. In addition, the Corporate Member may exercise its membership rights at any regular or special meeting of the Board of Directors of the Corporate Member. The functions required by law or these Bylaws to be performed at the annual membership meeting or any regular or special meeting of the members of this Corporation may be performed at any regular or special meeting of the Corporate Member's own Board of Directors.

### 2.1.2   Community Members.

Community Members shall consist of all individuals who are Regular or Honorary members of the Corporation.

An organization, corporation, service club, or any other group may hold only a single Community Membership, either Regular or Honorary, and may exercise its membership rights by designating one person to represent that group in corporate affairs.

All individual applicants for Community Membership shall be at least eighteen (18) years of age. There shall be two categories of Community Membership of the Corporation, Regular and Honorary members.

A.   Regular members shall consist of:

1.   All individuals who have ever donated One Hundred Dollars ($100.00) or more to the Corporation and who, in addition, make written application to the Board of Trustees for membership. In the case of husband and wife, each must qualify for membership. The Board shall review all applications and accept or reject them within one hundred (100) days after determining whether the new member will be a desirable asset to, and not in a position of conflict with the best interests of the Corporation as established under Section 4.4 herein. No new member following the effective date of these amendments shall be an employee, or a spouse or relative of an employee of the Corporation.

B.   Honorary members shall consist of:

1.   Those persons who, in the opinion of the Board of Trustees, are a desirable asset to the Corporation, and who are appointed to membership by the Board.

### 2.2   MEMBERSHIP NOT PROPRIETARY

No member shall have any proprietary rights in the assets or property of the Corporation, and a member shall be entitled to no special benefits by virtue of his/her membership. All members in good standing, including regular and honorary, shall have the right to vote at each annual and special meeting of members and otherwise to

Subp 00813

participate in such meetings. No dues or assessments shall be levied upon the members hereof.

### 2.3     TRANSFER OF MEMBERSHIP

Members may not transfer their membership or any rights arising therefrom.

### 2.4     NONLIABILITY OF MEMBERS

No member of the Corporation or committee member shall be personally liable for the acts of the Corporation or any subdivision or representative thereof.

If acting in good faith no officer or member of the Board of Trustees shall be liable for the acts of the Corporation, and the Corporation shall indemnify such officer or Trustee from any claim, loss or damage. The Board of Trustees shall determine in each instance that a Trustee or officer was acting in good faith within what he/she reasonably believed to be in the best interest of the Corporation and its members, such determination to be made by the majority vote of a quorum consisting of Trustees who are not parties to such proceedings, and approval by a majority vote of a quorum of members, with the person to be indemnified not being entitled to vote thereon.

### 2.5     TERMINATION OF COMMUNITY MEMBERSHIP

#### 2.5.1     Automatic Termination.

A membership of a Community Member is terminated by the resignation, death or incompetency of a Community Member. Incompetency is defined as a court determination that the Community Member is incapable of handling his/her own affairs for any reason.

#### 2.5.2     Termination for Cause Without Hearing.

Subject to compliance with the notice and procedural requirements of Corporations Code Section 5341, the Board of Trustees may at any time terminate a Community Member's membership without hearing, at meetings of the Board by a majority vote of the Trustees present and acting at the meeting, for the following causes:

A.     Conviction of a felony or of a misdemeanor involving moral turpitude.

B.     Failure to attend three (3) successive annual meetings of the members without reasonable cause therefor. Attendance by proxy does constitute attendance for the purposes of this paragraph.

DEC/SSMC/Bylaws/Rev 12-01.doc                    -4-
SSMC/Bylaws

C.    Persons whose membership has been terminated for failure to attend three (3) successive annual meetings or who have resigned shall be eligible to reapply for membership.

D.    The Board of Trustees shall review, or cause to be reviewed, the membership list at least sixty (60) days prior to the annual meeting, and eliminate therefrom persons who fail to comply with B above.

2.5.3    Termination for Cause With Hearing.

Subject to the compliance with the notice and procedural requirements of Corporations Code Section 5341 the Board of Trustees may at any time terminate a Community Member's membership for conduct detrimental to Sutter Solano Medical Center or the operation thereof, pursuant to the procedures hereinafter set forth.

The procedure for termination is as follows:

A.    Any Community Member may submit a written request to terminate the membership of another member to the Board of Trustees. The Board of Trustees shall refer said request to a five (5)-member grievance committee appointed by the Chair with the approval of the Board of Trustees.

B.    The grievance committee shall review the request to terminate and make its report and recommendation to the Board of Trustees at a special Board meeting duly noticed, called and held for the purpose of reviewing and acting upon said report; provided, however, that if said committee has not reported by the second meeting of Trustees following such referral, the special meeting of the Board of Trustees may be held without such report.

C.    The Board of Trustees may at said meeting terminate a membership after it determines that the member's conduct comes under the terms of this paragraph, but if, and only if, all of the following conditions have been met:

1.    Two-thirds (2/3) of the entire Board is present and acting.

2.    The accused member has been given written notice of the hearing, sent to him/her at his/her last address appearing upon the records of the Corporation, at least five (5) days prior to the hearing and setting forth the specific causes upon which it is proposed to terminate his/her membership.

3.    The member has been given the opportunity to appear and be heard at such hearing, and to have legal counsel, if he/she so desires.

4.    The vote to terminate the membership shall be by at least a two-thirds (2/3) majority of the entire Board, which vote shall be final and conclusive.

Subp 00815

2.6    MEETINGS OF COMMUNITY MEMBERS

   2.6.1    Annual Meeting.  An annual meeting of Community Members shall be held every year on the second Monday of January at a place and time designated by the Board of Trustees. The annual meetings of the Community Members shall be for the purpose of electing Trustees, reporting on the affairs of the Corporation, and transacting such other business as may properly come before the meetings.

   2.6.2    Special Meetings.    Special membership meetings of the Community Members for any purpose may be called at any time by the Chair of the Board of Trustees, by a majority of the Board, or upon the written request of at least five percent (5%) of the Community Members in good standing and entitled to vote thereat.

   2.6.3    Notice of Meetings.  Notice of each meeting of Community Members, whether regular or special, shall specify the place, the date and the hour of the meeting and shall be given by the Secretary in writing not less than ten (10) days nor more than ninety (90) days before the date of the meeting to each member entitled to vote thereat.  If notice is given by mail and the notice is not mailed by first class, registered, or certified mail, that notice shall be given not less than twenty (20) days before the meeting.

   Upon the request in writing to the Chair of the Board, Vice Chair or Secretary by any person (other than the Board) entitled to call a special meeting of Community Members, the officer shall cause notice to be given to Community Members entitled to vote that a meeting will be held at a time fixed by the Board, not less than thirty-five (35) nor more than ninety (90) days after receipt of the request.

   2.6.4    Quorum.  Twenty (20) Community Members in good standing, or twenty percent (20%) of the Community Members in good standing, including proxies, whichever is the lesser, shall constitute a quorum of the Community Members at all annual or special meetings of the Community Members, except when the meeting is called to elect Trustees, in which case fifty percent (50%) of the Community Members, including proxies, shall constitute a quorum.  In the absence of a quorum, any meeting of Community Members may be adjourned from time to time by the vote of a majority of the members present, but no other business may be transacted.  In the event less than one-third (1/3) of the voting power of the Corporation is represented at the meeting no matter, not properly noticed, may be acted upon.

   2.6.5    Voting.  Only Community Members, regular and honorary, in good standing thirty (30) days prior to an annual or special meeting of the Community Members shall be entitled to vote and each such member shall be entitled to vote on all matters.  Community Members may vote either in person or by written proxy.  Cumulative voting shall not be allowed.  If a quorum is present, the affirmative vote of the majority of those present and voting, in person or by proxy, on any matter shall be the

Subp 00816

act of the Community Members, except when the vote is to elect Trustees, in which case sixty percent (60%) of those present and voting, in person or by proxy, shall be required.

2.6.6. Conduct of Meetings. The Chair, or in his/her absence the Vice-Chair selected by him/her, or in the event the Vice-Chair is not present, a Chair chosen by a majority of the members present, shall preside at all annual or at special meetings of the Community Members. The Secretary of the Corporation shall act as secretary of the meeting, and in case the Secretary shall be absent from the meeting, the Chair may appoint any person to act as secretary of the meeting.

2.7    RIGHTS AND POWERS OF MEMBERS

The rights and powers of the two (2) classes or members shall be as follows:

2.7.1    Corporate Member.

1.    To elect (and remove) six (6) members of the Board of Trustees.

2.    To approve, subject to recommendation by the Board, of the disposition of all or substantially all of the assets of the Corporation, or a merger, reorganization, or dissolution of the Corporation.

3.    To approve changes in the Articles and Bylaws.

4.    To approve all nominees for election to the Board of Trustees by the Community Members.

5.    To approve of the removal by the Community Members of a Trustee elected to the Board by the Community Members.

6.    To exercise such other rights and powers as are set forth in Article X of these Bylaws.

7.    To exercise fully all rights and privileges of members of nonprofit corporations under the California Nonprofit Public Benefit Corporation law, and all other applicable laws.

2.7.2    Community Members.

1.    To elect (and remove) five (5) members to the Board of Trustees from the service area.

2.    To approve, subject to recommendation by the Board, of the disposition of all or substantially all of the assets of the Corporation, or a merger of the Corporation.

DEC/SSMC/Bylaws/Rev 12-01.doc                -7-
SSMC/Bylaws

3.    To approve of the dissolution of the Corporation.

4.    To approve any changes or amendments in the Articles or Bylaws which would materially and adversely affect the rights of the Community Members as to voting or transfer, the number, manner of selection, filling of vacancies and terms of office of the Board of Trustees, and quorums at membership meetings.

## 2.8    TERM OF CORPORATE MEMBER

Notwithstanding any other provision of these Bylaws, the term of the Corporate Member, and all rights arising therefrom, shall terminate upon the occurrence of an "event of termination" as defined in section 11 of the Memorandum of Understanding between this Corporation and Sutter Community Hospitals, dated June 18, 1984 and as amended from time to time, unless such event of termination is waived in accordance with section 11 of said Memorandum of Understanding. A special committee of the Board of Trustees comprised of all Trustees other than those Trustees that are elected or appointed by the Corporate Member shall be authorized to bring, prosecute and/or defend any action for declaratory relief on behalf of this Corporation as described in section 11 of the Memorandum of Understanding and to incur on behalf of this Corporation reasonable attorneys' fees and costs associated therewith. Amendment or repeal of this section shall require the approval of this same special committee of the Board.

## ARTICLE III

## SYSTEM AFFILIATION

### 3.1    AFFILIATED STATUS

This Corporation is one of several affiliated corporations that comprise an integrated healthcare system ("System").

### 3.2    PARTICIPATION IN ACTIVITIES OF THE MEMBER

The Board of this Corporation shall submit nominees to the Corporate Member in order to enable the Corporate Member to appoint members of this Corporation's Board or officers of this Corporation to serve on the Corporate Member's corporate Board of Directors and/or its Board committees as appropriate to ensure the Corporate Member's continued qualification as a supporting organization under Section 509 of the Internal Revenue Code of 1986, as amended from time to time, or successor provisions.

Subp 00818

### 3.3    LIABILITIES AND ASSESSMENTS

The Corporate Member, as such, shall not be liable for the debts of this Corporation. The Board of Trustees shall have no power to levy and collect assessments on the Corporate Member. The substance of this paragraph cannot be amended in any manner.

### 3.4    CASH CONCENTRATION

Subject to the provisions of Section 3.9 of these Bylaws, the Corporation shall participate in the Cash Concentration and Controlled Disbursement Program prescribed by the Corporate Member and in effect from time to time.

### 3.5    EQUITY CASH TRANSFER POLICY

Subject to the provisions of Section 3.9 of these Bylaws, the terms of the Equity Cash Transfer Policy contained in Exhibit 1 of these Bylaws of the Corporation are incorporated into and made part of these Bylaws. Neither donor originated funds nor the earnings therefrom shall be subject to the Equity Cash Transfer Policy.

### 3.6    PAYMENT OF ALLOCATION FEE

Subject to the provisions of Section 3.9 of these Bylaws, this Corporation shall pay the allocation fees necessary to maintain the operation of the Corporate Member.

### 3.7    COST OF CAPITAL ALLOCATION POLICY

Subject to the provisions of Section 3.9 of these Bylaws, the Corporation shall participate in the Cost of Capital Allocation Policy prescribed by the Corporate Member and in effect from time to time.

### 3.8    REPRESENTATION ON THE BOARD OF TRUSTEES

The President and CEO of the Corporate Member may designate, by written notice to the Secretary of this Corporation, up to two voting members of the Board. Any residency requirement applicable to trustees shall not apply to the voting trustees described in this Section 3.8. The President and CEO of the Corporate Member may revoke any such designation effective upon delivery of written notice thereof to the Secretary of this Corporation. The President and CEO of the Corporate Member may attend any Board meeting. This Section 3.8 supersedes any other provision in these Bylaws relating to the participation of the President and CEO and/or the Chair of the Corporate Member as voting or non-voting trustees of this Corporation.

Subp 00819

3.9    EFFECT OF POLICIES

This Corporation's obligations under Sections 3.4 through 3.7 and the policies described therein shall be subject to all agreements with and obligations to third parties (including without limitation bond indentures) to which this Corporation is a party or is bound at the time these Bylaws are adopted or which are otherwise approved by the Corporate Member after the adoption of these Bylaws.

3.10    POLICIES REQUIRED OF AFFILIATED ENTITIES

Except for tax-exempt entities which are primarily fundraising foundations, this Corporation shall prescribe the policies described in Sections 3.4 through 3.7 to the tax-exempt entities which this Corporation owns or controls or which this Corporation is a member. As to those entities, the policies shall be subject to all agreements with and obligations to third parties, Healthcare Districts and any other member of the affiliated entity (including without limitation bond indentures) to which the entity is a party or is bound at the time these Bylaws are adopted or which are otherwise approved by the Corporate Member after the adoption of these Bylaws.

3.11    COMPLIANCE PROGRAM

This Corporation shall adopt a Compliance Program consistent with Sutter Health Compliance Program Plan which shall include the following:

A.    All Board Members shall receive Compliance training consistent with Sutter Health Compliance Program Plan.

B.    The Board shall have oversight of and ultimate responsibility for an effective Compliance Program including adoption of related compliance policies.

C.    The Board or a Committee of the Board shall receive and review routine and special Compliance reports on a regular basis.

D.    The Board shall delegate to Corporation's chief executive officer responsibility to implement Compliance Program in accordance with Sutter Health Compliance Program Plan.

**ARTICLE IV**

**BOARD OF TRUSTEES**

4.1    NUMBER AND QUALIFICATION

The Board shall consist of fifteen (15) voting Trustees, no more than five (5) of whom shall be members in good standing of the Active Medical Staff of Sutter Solano

Subp 00820

Medical Center. No more than three (3) of the Trustee positions held by members of the Medical Staff may be held by "interested" physicians (i.e. physicians compensated by the Corporation or any of its affiliates). The following persons shall serve as *ex-officio* Trustees with vote: the Chief Executive Officer, the Chief of the Medical Staff, the President - Western Division of the Corporate Member; the designees of the President and CEO of the Corporate Member, as provided in Section 3.8; and the immediate past Chief of the Medical Staff (who shall serve a one-year term immediately following his/her term as Chief of the Medical Staff), or the Chief of Staff Elect of the Medical Staff (who shall serve a one-year term immediately preceding his/her term as Chief of the Medical Staff). *Ex-officio* Trustees serve by reason of their official capacity, and the resignation or removal of any such person from such office shall automatically terminate such person's membership on the Board. Trustees shall be selected for their willingness and ability to participate effectively in fulfilling the Board's responsibilities, and the Trustees' community representation, technical, and management skills and experience shall be considered.

### 4.2    ELECTION AND TENURE

#### 4.2.1    Election of Trustees

A.    During the annual meetings of the Community Members, and during the regular or special meeting of the Corporate Member in which the Corporate Member customarily elects members to its affiliates' boards, the members shall elect persons to fill the vacancies on the Board created by expiring terms of those Board seats designated for election by the Corporate and Community Members, respectively, in accordance with the distribution of election powers established under Section 2.7 herein. At least ninety (90) days prior to each such meeting, the Board of Trustees shall prepare and submit a list of proposed nominees for election by the Community Members to the Corporate and Community Members.

B.    At least forty-five (45) days prior to the annual meeting of the Community Members, the Corporate Member shall communicate in writing its approval or disapproval of such nominees. If the rejection of all or a portion of the proposed nominees requires the submission of additional proposed nominees to the Corporate Member, the Corporate Member shall communicate in writing its approval or disapproval of such additional nominees at least fifteen (15) days prior to the annual meeting of the Community Members.

C.    At least sixty (60) days prior to the annual meeting of the Community Members, the Community Members shall be permitted to submit the names of any additional proposed nominees for election to the Board, provided that the signatures of at least twenty (20), or twenty percent (20%), whichever is less, of the Community Members in good standing shall be required for such persons to be included, subject to the Corporate Member's prior written approval, as additional nominees for

Subp 00821

election to the Board of Trustees. The names of such additional proposed nominees shall be submitted to the Corporate Member which shall communicate in writing its approval or disapproval of such proposed nominees at least thirty (30) days prior to the annual meeting of the Community Members.

D.   Except as otherwise provided at 4.2.1.B, above, all Community Member nominations for the Board shall be made at least thirty (30) days prior to the annual meeting of the Community Members and no nominations shall be made after that date.

4.2.2   Tenure.  Each elected Trustee shall hold office for a term of three (3) years and until his/her successor is duly elected and qualified, unless he/she sooner resigns or is removed pursuant to applicable sections of these Bylaws. Elected Trustees may serve no more than three (3) successive full terms, but may be eligible for reelection after having been off the Board for a period of at least one (1) year.

4.3   RESIGNATION AND VACANCIES

4.3.1   Resignations.  Any Trustee of the Corporation may resign at any time by giving written notice to the Chair of the Board or to the Secretary of the Corporation or to the Board of Trustees.  Such resignation shall take effect at the time specified therein and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

4.3.2   Vacancies.  A vacancy or vacancies shall be deemed to exist in the event of:

A.   The death, resignation or removal of any Trustee.

B.   The failure or inability of any person elected to be Trustee to qualify.

C.   The failure of the members at any time to elect the full number of Trustees.

D.   The increase of the number of Trustees and the failure of the members to elect the additional Trustees so provided for.

4.3.3   Filling of Vacancies.  Vacancies in the Board of Trustees may be filled by a majority of the remaining Trustees, though less than a quorum, subject to the prior approval of the Corporate Member; provided vacancies among those Trustees elected by the Corporate Member shall be filled by the Corporate Member. Each Trustee so elected shall hold office until his/her successor is elected at an annual meeting of the members. Community Members may at any special meeting, called pursuant to the prescribed notice required and held for such purpose, elect Trustees to fill any vacancies

Subp 00822

not filled by the Board of Trustees which the Board has not announced its formal intention to fill.

No reduction of the number of Trustees shall have the effect of removing any Trustee prior to the expiration of his/her term of office.

4.3.4    Removal. The term of office of any member of the Board of Trustees elected by the Corporate or Community Members may be terminated if that member is absent from three (3) consecutive meetings of the Board of Trustees or 25% of the meetings of the Board of Trustees scheduled in any twelve (12) month period, whether regular or special, without reasonable cause, upon the recommendation of the remaining members of the Board of Trustees and by the vote of the Corporate Member (in the case of Board members elected by the Corporate Member) and the Community Members (in the case of Board members elected by the Community Members), respectively, at a regular or special meeting thereof.
The foregoing provision shall not limit the removal rights of the Corporate Member as described in Section 10.4.

4.4    SELF-DEALING AND CONFLICTS OF INTEREST

(All readers hereof are referred to California Corporation Code Section 5230 *et seq.*)

4.5    POWERS

4.5.1    Overall Power of the Board.

Except as otherwise provided by the Articles of Incorporation or by the Bylaws, the management of the affairs of this Corporation shall be vested in the Board of Trustees. The Board shall exercise its powers and responsibilities in a manner consistent with any Systemwide policies adopted by the Corporate Member.

4.5.2    Delegation.

The Board of Trustees may provide for an executive committee and may, subject to the provisions of these Bylaws regarding approval of the Corporate Member, delegate to any officer or committee or to the corporate president any general power conferred upon it by this section, but may not delegate to any individual or committee any special power conferred by any provision of any other section of these Bylaws, or the authority:

A.    To mortgage, pledge, hypothecate, sell, transfer, convey or dispose of any property of the Corporation, whether real, personal or mixed, which has a value at the time of its disposal in excess of a dollar amount to be set by the Corporate Member.

Subp 00823

B.    To appoint any physician, surgeon, or dentist as a member of the Medical Staff of the hospital as defined by the Medical Staff Bylaws. This does not restrict the granting of temporary privileges as defined in the Medical Staff Bylaws.

C.    · To incur indebtedness on behalf of the Corporation in an amount in excess of a dollar amount to be set by the Corporate Member.

D.    To adopt, amend, or repeal these Bylaws.

E.    To do any act prohibited by California Corporations Code Section 5212(a).

### 4.5.3    Other Limitations.

The Board of Trustees shall not have the power to sell, transfer or dispose of the property of the Corporation as a whole or substantially as a whole, excepting on dissolution as provided by law.   The Board of Trustees may, on behalf of the Corporation and subject to the provisions of these Bylaws regarding approval of the Corporate Member, authorize:

A.    The borrowing of any money for the proper purposes of the Corporation.

B.    The mortgaging, pledging or hypothecating of any or all of the property of the Corporation, whether real, personal or mixed.

C.    The sale, transfer or other disposition of such part or parts of the property of the Corporation as are no longer used or useful for its purpose; provided that each of the foregoing actions must be authorized by a resolution of the Board, approved by the affirmative vote of at least two-thirds (2/3) of the entire Board; provided further, that a majority of a quorum, only, shall be required to authorize the sale, transfer or other disposition of property no longer used or useful for its purpose and having a value of one hundred thousand dollars ($100,000.00) or more, at the time of its disposition.

### 4.6    ADDITIONAL CONSULTANTS

The Board or the Chair of the Board may invite additional individuals with expertise in a pertinent area to meet with and assist the Board. Such consultants shall not vote or be counted in determining the existence of a quorum and may be excluded from any executive session of the Board by a majority vote of the Trustees present.

Subp 00824

## 4.7    MEETINGS OF TRUSTEES

4.7.1    Organizational Meeting.  As soon as is reasonably possible after the annual election of Trustees, the newly-elected Trustees and those holding over shall hold an organizational meeting at such place as may be designated by the members, at which organizational meeting the Trustees shall organize by electing officers to hold office for the ensuing year and/or until the election and qualification of their successors. In addition, the Board of Trustees may elect such subordinate officers as it may deem appropriate.

4.7.2    Regular Meetings.  Regular meetings shall normally be held once each month unless canceled by vote of the Board of Trustees, at such time and place as shall be fixed from time to time by the Board of Trustees.

Notice of regular meetings need not be given, excepting that, if the time or place of the regular meeting be changed or canceled forty-eight (48) hours advance notice of such change or cancellation shall be given to all Trustees not present at the meeting at which the resolution providing for the change/cancellation was adopted.

Specifically invited to attend all regular meetings of Trustees is the appointed representative of the Sutter Solano Medical Center Guild.  Guests may be offered full rights of debate, but may not vote.

4.7.3    Special Meetings.  A special meeting of the Board of Trustees shall be held whenever called by the Chair, or if he/she is absent or is unable or refuses to act, by the Vice-Chair or any five (5) Trustees.  Special meetings shall be held at the place designated for the holding of regular meetings.  Written notice of each special meeting shall be delivered personally to the Trustees or sent to each Trustee by letter or by telegram, charges prepaid, addressed to him/her at his/her residence or usual place of business, at least forty-eight (48) hours before the day on which the meeting is to be held. If the address of a Trustee is not shown on the records and is not otherwise readily ascertainable, notice shall be given to him/her by mailing notice addressed to him/her at Vallejo, California.

4.7.4    Adjourned Meetings.  Notice of the time and place of holding an adjourned meeting need not be given to absent Trustees if the time and place are fixed at the meeting adjourned.  Notice of any meeting need not be given to any Trustee if waived by him/her in writing or by telegraphing.

4.7.5    Quorum.  Unless a greater or lesser number is required by law or by the Articles of Incorporation, a majority (or eight (8)) of the Trustees then in office shall constitute a quorum for the transaction of business at any meeting of the Board.  If a quorum is not present at any meeting, a majority of the Trustees present may adjourn the meeting from time to time without further notice.

Subp 00825

4.7.6  <u>Voting</u>.  Each voting Trustee shall be entitled to one (1) vote on any matter before the Board.  Voting by proxy shall not be permitted.

4.7.7  <u>Manner of Action</u>.  Unless otherwise required by law, the Articles of Incorporation or these Bylaws, the act of a majority of the Trustees present at a meeting at which a quorum is present shall be the act of the Board.  Any action required or permitted to be taken by the Board under any provision of law, the Articles of Incorporation, or these Bylaws may be taken without a meeting by the individual or collective consent, in writing setting forth the action so taken, of all the Trustees.  Such written consent(s) shall be filed with the proceedings of the Board.  Such action by written consent shall have the same force and effect as a unanimous vote of the Trustees.  Any certificate or other document filed under law relating to action so taken shall state that the action was taken by unanimous written consent of the Board without a meeting and that the Bylaws authorize the Trustees to so act.

4.7.8  <u>Conduct of Meetings</u>.  The Chair, or in his/her absence the Vice-Chair, or in the absence of the Vice-Chair a Chair chosen by a majority of the Trustees, shall preside.  The Secretary of the Corporation shall act as Secretary to the Board of Trustees.  In case the Secretary shall be absent from any meeting of the Board, the Chair may appoint any person to act as secretary of the meeting.

**ARTICLE V**

**OFFICERS/CHIEF EXECUTIVE OFFICER**

5.1    OFFICERS

The officers of the Corporation shall be a Chair of the Board, a Vice-Chair, a Secretary and a Vice Chair-Finance and such subordinate officers as the Board of Trustees may designate.

Any two or more officers, except the Chair of the Board and Secretary, may be held by the same person.  In its discretion, the Board of Trustees may leave any subordinate office unfilled for any period.

5.2    ELECTION AND TENURE

Each officer (except the subordinate officers above referred to) shall be elected at the organizational meeting of the Board of Trustees and shall hold office until his/her successor shall have been elected and qualified or until his/her death or until he/she shall resign or be removed in the manner hereinafter provided.  Each officer shall be elected for a term of one (1) year.  The Chair may serve no more than three consecutive one-year terms.  The Board of Trustees may appoint the subordinate officers referred to herein at

Subp 00826

any time and from time to time, and all such subordinate officers shall hold their office during the pleasure of the Board and are subject to removal by the Board at any time.

### 5.3    RESIGNATION AND REMOVAL

Any officer may resign at any time by giving written notice to the Chair or to the Secretary of the Corporation. Any such resignation shall take effect at the time specified therein and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Except as provided in Section 5.6 of these Bylaws regarding removal of the Chief Executive Officer, any elected or appointed officer may be removed at any time by a two-thirds (2/3) vote of the Trustees.

### 5.4    VACANCIES

A vacancy in any office because of death, resignation, removal, disqualification, or any other cause, shall be filled for the unexpired portion of the term by appointment by the Trustees or the Corporate Member, as provided at Section 4.3.3 and Section 5.6 of these Bylaws.

### 5.5    DUTIES OF OFFICERS

5.5.1   Chair of the Board. The Chair of the Board shall be the principal corporate officer of the Corporation and shall preside at all meetings of the Board, of the Executive Committee, the Joint Conference Committee, and of the Community Members of the Corporation. Unless otherwise specified, he/she shall be an *ex officio* member with vote of all Board committees that are associated or affiliated with the Corporation. He/she shall also perform all duties incident to the office of the principal corporate officer and such other duties as may be prescribed by the Board from time to time.

5.5.2   Vice-Chair. The Vice-Chair shall perform such duties as may be assigned by the Board or the Chair of the Board. In the absence of the Chair of the Board or in the event of his/her disability, or refusal to act, the Vice-Chair shall perform the duties of the Chair of the Board with the full powers of, and subject to the restrictions on the Chair of the Board.

5.5.3   Secretary. The Secretary shall provide for the keeping of minutes of all meetings of the Board, Board committees, and the members of the Corporation and shall assure that such minutes are filed with the records of the Corporation. He/She shall give or cause to be given appropriate notices in accordance with these Bylaws or as required by law, and shall act as custodian of all corporate records and reports of the corporate seal, assuring that it is affixed, when required by law, to documents executed on behalf of the Corporation. The Secretary shall also keep or cause to be kept a current roster showing the names of the current members of the Corporation and their addresses.

Subp 00827

All duties incident to the office shall be performed and other duties as may be assigned from time to time by the Board of Trustees.

     5.5.4   Vice Chair-Finance. The Vice Chair-Finance shall keep and maintain, or cause to be kept and maintained, adequate and correct accounts of the properties and business transactions of the Corporation. The books of account shall be at all reasonable times open to inspection by any Trustee.

     The Vice Chair-Finance shall deposit all monies and valuables in the name and credit of the Corporation with such depositories as may be designated by the Board of Trustees; shall disburse the funds of the Corporation as may be ordered by the Board of Trustees; shall render to the Chair of the Board and Trustees, whenever requested, an account of all transactions as Vice Chair-Finance and of the financial condition of the Corporation; and shall have such other powers and perform such other duties as may be prescribed by the Board of Trustees or these Bylaws.

     5.5.5   Subordinate Officers. The Subordinate Officers shall perform such duties as prescribed by the Board of Trustees.

     5.5.6   Authority to Act. No officer, member of the Board of Trustees, committee member, member of the Corporation, member of the Medical Staff, or any other person shall have the authority to contract or incur any debt on behalf of the Corporation, or in any way render this Corporation liable on a contract or debt, unless authorized to do so by these Bylaws or the Board of Trustees; nor shall any such person be authorized to promise moral or financial support of any charitable or other objective without the approval of the Board of Trustees (except for medical care of patients deemed to be charitable patients in the hospital).

     5.6     CHIEF EXECUTIVE OFFICER

     A.     Appointment, Compensation and Removal

     The President and CEO of the General Member shall screen candidates when the chief executive officer is to be hired and shall present finalists to the Board of this Corporation for selection. The chief executive officer shall be an employee of the General Member. The compensation committee of the Board of this Corporation shall meet with and provide an evaluation of the chief executive officer and shall make compensation recommendations, based on an agreed upon salary system and survey process, to the President and CEO of the General Member, or his or her designee, who shall make the final determination. The chief executive officer shall serve at the pleasure of the General Member, acting through its President and CEO, and the Board of this Corporation, each of which, with the approval of the other, may terminate the services of the chief executive officer.

Subp 00828

B.    Responsibilities and Authority

The chief executive officer shall be the general manager and administrator of this Corporation. The chief executive officer shall be given the necessary authority and responsibility to operate this Corporation in all of its activities, including without limitation, quality of services, cost effectiveness and economic performance and implementation of System strategies, subject to the following: with respect to policy development, program planning, and employee and community relations, the chief executive officer shall be subject to such policies as may be adopted and such orders as may be issued by the Board of this Corporation or by any of its committees to which the Board has delegated the power for such action; with respect to program execution and overall management performance, the chief executive officer shall be subject to the authority of and shall report to the Board; with respect to strategies of the local delivery system operated by this Corporation and overall operations of that system, the chief executive officer shall be responsible to the President of the Corporate Member. The chief executive officer shall also periodically report to the President and CEO of the Corporate Member or his/her designee on the affairs of this Corporation. The chief executive officer shall act as the duly authorized representative of the Board of this Corporation in all matters in which the Board has not formally designated some other person to so act. He/she shall, unless otherwise expressly provided, be an ex officio member without vote of all committees of the Board.

The Chief Executive Officer shall exercise fiscal authority on behalf of the Corporation (this authority is limited to one hundred thousand dollars ($100,000.00) for any one transaction without Board approval); he/she shall, unless otherwise expressly provided, be an ex officio member without vote of all committees of the Board

C.    Ex-Officio Board Membership

The chief executive officer shall be an *ex officio* voting member of the Board of this Corporation.

## ARTICLE VI

## BOARD COMMITTEES

### 6.1    STANDING BOARD COMMITTEES

The Corporation shall have the following standing board committees: Executive, Finance, Strategic Planning Committee, Governance, Joint Conference Committee and Medical Policy Committee. Other standing committees may from time to time be created by resolution of the Board of Trustees or amendment to these Bylaws.

Subp 00829

The Chair of the Board of the Corporation shall designate the membership on all committees by appointment, the majority of which shall be composed of members of the Board of Trustees, except as hereinafter otherwise expressly so provided. The Chair of the Board shall also appoint the Chair of each committee from among the members of the Board of Trustees except the Executive, Finance, and Joint Conference Committees. All appointments to membership of standing committees shall be for a term expiring with the annual organizational meeting of the Board. Vacancies which arise from time to time on any of the standing committees may be filled by appointment made by the Chair of the Board of the Corporation.

The Chair shall serve as an *ex officio* member with vote on all standing committees and shall be in addition to the minimum number of committee members authorized by these Bylaws except in the case of the Executive and Joint Conference Committees.

The presence of a majority of all the members of the committee shall be necessary to constitute a quorum of any committee; however, only Board of Trustee members of each committee shall count toward a quorum of each committee except in the case of the Joint Conference Committee. The affirmative vote of a majority of those present shall be necessary for adoption of any recommendation or action except in the case of the Executive Committee, where an affirmative vote of the majority of all of the members of the committee shall be necessary.

Regular minutes of the proceedings of all committees shall be kept in a book provided for that purpose, and all recommendations or proposals adopted by any standing committee which require an action by the Board of Trustees shall be reported to the Board of Trustees at its meeting next succeeding such action. All committees shall meet from time to time on the call of the Chair of the committee or of any two members of the committee.

6.1.1  <u>Executive Committee</u>. The Executive Committee shall consist of the Chair of the Board, the Vice-Chair, the Vice Chair-Finance, the Secretary, the Chief Executive Officer and one other member of the Board of Trustees who shall be elected by a majority vote of the Trustees then in office. Except as otherwise restricted by law or these Bylaws, the Executive Committee shall have the power to transact all regular business of the hospital in the interim between meetings of the Board of Trustees, provided that any action taken shall not conflict with the policies and express wishes of the Board of Trustees. Any action so taken shall be reported at the next regular meeting of the Board of Trustees.

The Executive Committee may fix its own rules and procedures and shall meet where and as provided by such rules or by resolution of the Board of Trustees and shall also meet at the call of the Chair of the Board or of any two (2) members of the Committee. The Chair of the Board shall be the Chair of such Committee.

Subp 00830

6.1.2  Finance Committee. The Finance Committee shall consist of the Vice Chair-Finance and two or more other members. The Finance Committee shall advise the Board of Trustees on all matters relating to the financial and fiscal affairs of the Corporation and shall make such recommendations and suggestions to the Board of Trustees in respect to these matters as the Finance Committee may from time to time deem necessary or appropriate. The Finance Committee shall see that an operating budget covering a one (1)-year period and an annual capital budget covering a three (3)-year period are prepared and submitted to the Board of Trustees in accordance with schedules established in the Systemwide Annual Budget Calendar. Whenever practicable any proposal or resolution involving the expenditure or obligation to spend funds of the Corporation shall be submitted to the Board of Trustees only after first being submitted to the Finance Committee for its review and recommendation. So far as practicable, each member of the Finance Committee shall be a person experienced in matters of finance. All action of the Finance Committee shall be reported to the Board of Trustees at its meeting next succeeding such action. The Finance Committee shall exercise its responsibilities and authority in a manner consistent with any guidelines or policies established by the Corporate Member's Systemwide Finance Committee. The Committee may fix its own rules and procedures and shall meet where and as provided by such rules or by resolution of the Board of Trustees, and shall also meet at the call of the Chair of the Finance Committee or any two members of the Committee. The Vice Chair-Finance of the Corporation shall be Chair of the Finance Committee.

6.1.3  Governance Committee. The Governance Committee shall consist of a minimum of five (5) members. The members shall include the current Chair, Vice Chair, and two other Trustees (one of whom shall be a Physician Trustee). In addition, the Chief Executive Officer of the Corporation shall serve as a voting, *ex officio* member of the committee. The Chair or Vice-Chair shall be the Chair of this committee.

The Governance Committee shall recommend to the Board nominees for membership on the Board of this Corporation subject to the provisions of Section 10.4 of these Bylaws (including nominees to fill vacancies created by expiration of a term as well as by resignation, removal, or death); shall recommend nominees for the officers of this Corporation, and the members and chair of the committees to be elected at the Annual Organizational Meeting, as described at Section 4.2 of these Bylaws. The Committee shall meet at least quarterly and shall arrange for periodic review and evaluation of each Trustee's performance, and of the Board as a whole.

The Committee shall be responsible to confer with the Trustees nearing the end of an initial one-year term in order to evaluate the Board's and the Trustee's desire to continue the appointment for the remaining two years of the three-year term. Other responsibilities include: nominates individuals for election to Board vacancies, nominates slate of Board Officers, develops Board orientation/education program, ensures Trustee development and governance leadership opportunities, and develops goals and objectives by which the Board will perform self-evaluation. The Governance Committee also monitors the Trustees' involvement in community relations and strengthening the links in

Subp 00831

the community. The Governance Committee is responsible for reviewing the bylaws at least every two years and recommending revisions as necessary to ensure compliance with applicable statues, regulations and accreditation requirements, monitoring legislative/public affairs activities on a local, state and national level, and promoting activities of organization and individual Trustees in public affairs, as appropriate. The Governance Committee shall report to the Board as often as necessary, but at least annually.

6.1.4 <u>Strategic Planning Committee</u>. The Strategic Planning Committee shall be composed of no less than four (4) members, one (1) of whom shall be a physician. The Strategic Planning Committee shall be charged with the responsibility for planning for major items of construction, alteration or improvement made to the physical plant. Any recommendation or proposal adopted by the Strategic Planning Committee for the expenditure of non-budgeted funds shall be submitted to the Board of Trustees for its consideration and action. In addition, the Strategic Planning Committee shall be charged with the responsibility to develop both short- and long-range goals for Sutter Solano Medical Center; to devise and implement a method by which master planning will be accomplished; and, at its option, form an advisory panel from among the leaders and residents in the community to provide:

A.    Direct liaison with all major elements of the community;

B.    Expertise in their specialty area, along with knowledge of the health care needs, attitudes, activities and interest in the community;

C.    Advice on recent trends in the health care field, particularly as such trends may affect the operation of the hospital and its relationship to the community.

It is also the responsibility of the Strategic Planning Committee to familiarize the community with the functions of the hospital and the field of health care.

The Strategic Planning Committee shall exercise its responsibilities and authority in a manner consistent with any guidelines or policies established by the Corporate Member. The Committee may fix its own rules and regulations and shall meet where and as provided by such rules, and shall also meet at the call of the Chair or any two (2) members of the Committee.

6.1.5 <u>Joint Conference Committee</u>. The Joint Conference Committee shall consist of the Executive Committee of the Board, and the elected officers of the Medical Staff. The same shall convene at the call of either the Chair of the Board, who shall preside, or by the Chief of the Medical Staff, or any three (3) members thereof.

The Joint Conference Committee may fix its own rules and procedures. The Committee primarily shall address concerns affecting hospital administration and policy and the Medical Staff jointly. The Committee shall have no power to take independent

DEC/SSMC/Bylaws/Rev 12-01.doc                    -22-
SSMC/Bylaws

Subp 00832

action, but its recommendations shall be reported to both the Board of Trustees and the Medical Staff.

6.1.6 <u>Medical Policy Committee</u>. The Medical Policy Committee shall consist of not more than five (5) members and shall include the Chief of Staff and one additional member of the Medical Staff as voting members. The Chief Executive Officer shall serve as an *ex officio* member of the Committee, without vote. The Medical Policy Committee shall report to and assist the Board in discharging its corporate responsibility for the quality of medical care by establishing, maintaining and improving means of holding the Medical Staff accountable for all its activities within the hospital. This Committee shall have the authority to grant temporary appointments and privileges to Medical Staff applicants and summarily suspend any member of the Medical Staff, after conference with the Chief Executive Officer, the Chief of Staff, and the respective Department Chief, in accordance with the procedure specified in the Medical Staff Bylaws. This Committee shall also have the authority to request such studies, investigative reports or statistics concerning Medical Staff activities and functions it deems essential in discharging its responsibilities. Its responsibilities shall be to:

A. Advise and make recommendations to the Board on all Medical Staff matters.

B. See that appropriate standards for the screening of all applications to the Medical Staff are established, maintained, and improved as necessary, and to ensure compliance with those standards.

C. Review and recommend to the Board on all applications for appointment and reappointment to the Medical Staff, including privileges to be granted.

D. Review and recommend to the Board on all recommendations from the Executive Committee of the Medical Staff.

E. Receive and review specific reports needed to ascertain if Medical Staff functions are being properly discharged.

F. Hold Medical Staff officials accountable for carrying out the Medical Staff functions of reviewing, analyzing and evaluating clinical work, and for making appropriate recommendations in accordance with the findings therefrom.

G. Hold Medical Staff officials accountable for seeing that all members of the Medical Staff comply with Medical Staff bylaws, rules and regulations and all hospital promulgated policies.

H. Determine the extent of compliance with the JCAHO standards and recommendations on medical matters, and make recommendations accordingly.

Subp 00833

I.      Oversee the personnel policies of the hospital that are designed to assure that all individuals who provide patient care services, but who are not subject to the medical staff privilege delineation process, are competent to provide such services.

The Medical Policy Committee shall exercise its responsibilities and authority in a manner consistent with any guidelines or policies established by the Corporate Member's Systemwide Quality Review Committee. The Committee may fix its own rules and regulations and shall meet regularly or at the call of the Chair or any two members of the Committee.

6.2     SPECIAL COMMITTEES

Special committees may be appointed by the Chair with the concurrence of the Board of Trustees for such special tasks as circumstances warrant. Such special committees shall limit their activities to the accomplishment of the task for which they were created and approved, and shall have no power to act except as is specifically conferred by action of the Board of Trustees. Upon completion of the task for which appointed, such special committee shall stand discharged.

## ARTICLE VII

### MEDICAL STAFF

7.1     ORGANIZATION

The Board shall cause to be created a medical staff organization, to be known as the Medical Staff of Sutter Solano Medical Center, whose membership shall be comprised of all physicians, dentists, podiatrists, and psychologists who are privileged to attend and/or consult patients in the hospital. Membership in this Medical Staff organization shall be a prerequisite to the exercise of clinical privileges in the hospital, except as otherwise specifically provided in the Medical Staff bylaws.

7.2     MEDICAL STAFF BYLAWS, RULES AND REGULATIONS

The Medical Staff shall have the initial responsibility to formulate, adopt, and recommend to the Board Medical Staff bylaws, rules and regulations, and amendments thereto. The Medical Staff bylaws and rules and regulations shall be consistent with JCAHO standards and the Articles of Incorporation and Bylaws of this Corporation. The Medical Staff bylaws shall include provisions for the selection of Medical Staff officers, including the Chief of the Medical Staff, and the chiefs of the clinical services or departments. The Medical Staff bylaws and rules and regulations shall be effective when approved by the Board, whose approval shall not be unreasonably withheld.

Subp 00834

### 7.3    MEDICAL STAFF MEMBERSHIP AND CLINICAL PRIVILEGES

7.3.1    Delegation to the Medical Staff. The Board shall delegate to the Medical Staff the responsibility and authority to investigate and evaluate all matters relating to Medical Staff membership status, clinical privileges and corrective action, and shall require that the staff adopt and forward to it specific written recommendation with appropriate supporting documentation that will allow the Board to take informed action.

7.3.2    Action by the Board. Final action on all matters relating to Medical Staff membership status, clinical privileges and corrective action shall be taken by the Board after considering the staff recommendations, provided that the Board act in any event if the staff fails to adopt and submit any such recommendation within the time periods set forth in the Medical Staff bylaws. Such Board action without a staff recommendation shall be based on the same kind of documented investigation and evaluation of current ability, judgment, and character as is required for staff recommendations.

7.3.3    Criteria for Board Action. In acting on matters of Medical Staff membership status, the Board shall consider the staff's recommendations, the hospital's and the community's needs, and such additional criteria as are set forth in the Medical Staff bylaws. In granting and defining the scope of clinical privileges to be exercised by each practitioner, the Board shall consider the staff's recommendations, the supporting information on which they are based, and such criteria as are set forth in the Medical Staff bylaws. No aspect of membership status nor specific clinical privileges shall be limited or denied to a practitioner on the basis of sex, race, creed, color or national origin, or on the basis of any other criterion unrelated to good patient care at the hospital, to professional qualifications, to the hospital's purposes, needs and capabilities, or the community needs.

7.3.4    Terms and Conditions of Staff Membership and Clinical Privileges. The terms and conditions of membership status in the Medical Staff, and of the exercise of clinical privileges, shall be as specified in the Medical Staff bylaws or as more specifically defined in the notice of individual appointment.

7.3.5    Procedure. The procedure to be followed by the Medical Staff and the Board in acting on matters of membership status, clinical privileges, and corrective action shall be specified in the Medical Staff bylaws.

### 7.4    FAIR HEARINGS

The Board shall require that any adverse recommendation made by the executive committee of the Medical Staff or any adverse action taken by the Board with respect to a practitioner's staff appointment, reappointment, service affiliation, staff category, admitting prerogatives or clinical privileges, shall, except under circumstances for which specific provision is made in the Medical Staff bylaws, be accomplished in accordance

Subp 00835

with the Board approved hearing and appeal procedures then in effect. Such procedures shall assure fair treatment and afford an opportunity for the presentation of all pertinent information. For the purposes of this section, an "adverse recommendation" of the Medical Staff executive committee and an "adverse action" of the Board shall be as defined in the Medical Staff bylaws.

### 7.5    ALLIED HEALTH PROFESSIONALS

The Board shall delegate to the Medical Staff the responsibility and authority to investigate and evaluate each application by an allied health professional (AHP) for specified services, service affiliation, and modification in the service such AHP may perform, and shall require that the staff or a designated component thereof make recommendation to it or to its designee thereon.

### ARTICLE VIII

### QUALITY OF PROFESSIONAL SERVICES

### 8.1    BOARD RESPONSIBILITY

The Board shall require, after considering the recommendations of the Medical Staff and the other health care professional staffs providing patient care services, the conduct of specific review and evaluation activities to assess, preserve, and improve the overall quality and efficiency of patient care in the hospital. The Board, through the Chief Executive Officer, shall provide whatever administrative assistance is reasonably necessary to support and facilitate the implementation and the ongoing operation of these review and evaluation activities.

### 8.2    ACCOUNTABILITY TO BOARD

The Medical Staff and the other health care professional staffs providing patient care services shall conduct and be accountable to the Board for conducting activities that contribute to the preservation and improvement of the quality and efficiency of patient care provided in the hospital. These activities shall include:

A.    Review and evaluation of the quality of patient care through a valid and reliable patient care review procedure.

B.    On-going monitoring of patient care practices through the defined functions of the Medical Staff, the other professional services, and the hospital administration.

C.    Definition of the clinical privileges which may be appropriately granted within the hospital and within each service, delineation of clinical privileges for members of the Medical Staff commensurate with individual credentials and demonstrated ability

DEC/SSMC/Bylaws/Rev 12-01.doc                        -26-
SSMC/Bylaws

Subp 00836

and judgment, and assignment of patient care responsibilities to other health care professionals consistent with individual qualification and demonstrated ability.

D.    Provision of continuing professional education, shaped primarily by the needs identified through the review and evaluation activities.

E.    Review of utilization of the hospital's resources to provide for their allocation to patients in need of them.

F.    Such other measures as the Board may, after considering the advice of the Medical Staff, the other professional services and the hospital administration, deem necessary for the preservation and improvement of the quality and efficiency of patient care.

### 8.3    REPORTING

The Board shall require, receive, consider and act upon the findings and recommendations emanating from the activities required by this section.

## ARTICLE IX

## GENERAL PROVISIONS

### 9.1    ANNUAL REPORT

The annual report to the members of the Corporation referred to in Section 6321 of the California Corporations Code shall be sent to the members, not later than one hundred twenty (120) days after the close of the fiscal or calendar year, in such form as may be deemed appropriate by the Board of Trustees.

### 9.2    GUILD

Subject to the provisions of Section 10.1, below, the Board of Trustees shall have the authority to form a guild composed of volunteers; to approve bylaws for this group; and to grant this group the privilege of having an advisory member of the Board of Trustees as selected by the Guild and approved by the Board of Trustees.

The Guild shall not undertake any project in the name of or for the benefit of this Corporation without first securing the approval of the Board of Trustees of the Corporation.

Subp 00837

### 9.3    SEAL AND MEMBERSHIP CERTIFICATES

The Board of Trustees shall provide a suitable seal for the Corporation, and shall cause notification of membership to be issued to the members of the Corporation upon their qualification for membership as provided in these Bylaws.

### 9.4    CONTRACTS, ETC. HOW EXECUTED

The Board of Trustees, except in these Bylaws otherwise provided, may authorize any officer, or officers, agent, or agents, to enter into a contract or execute and deliver any instrument in the name of, and on behalf of, the Corporation, and such authority may be general or confined in specific instances and, unless so authorized, no officer, agent or employee shall have any power or authority to bind the Corporation by any contract or engagement or to pledge its credit or to render it liable pecuniarily for any purpose, or for any amount.

### 9.5    DEPOSITS

All funds of the Corporation not otherwise managed through the Systemwide consolidated cash management program shall be deposited from time to time to the credit of the Corporation with such banks, trust companies or other depositories as the Board of Trustees may select.

### 9.6    CHECKS, DRAFTS, ETC.

All checks, drafts, or other orders for the payment of money, notes, acceptances or other evidence of indebtedness issued in the name of the Corporation shall be signed by such officer or officers, agent or agents, of the Corporation and in such manner as shall be determined from time to time by resolution of the Board of Trustees. Endorsements for deposit to the credit of the Corporation in any of its duly authorized depositories may be made by such officers or agents of the Corporation to whom the Board of Trustees by resolution shall have delegated such power or by hand-stamped impression in the name of the Corporation.

### 9.7    COMPENSATION AND DISTRIBUTION ON DISSOLUTION

Elected members of the Board of Trustees shall serve without compensation for their services as Trustees. Officers and *ex officio* members of the Board shall be entitled only to such compensation for services rendered as the Board may establish. Trustees and officers may be reimbursed for all expenses reasonably incurred on behalf of the Corporation. No Community Member of the Corporation, director, officer, or any other private individual shall be entitled to share in the distribution of any of the corporate assets on dissolution of the Corporation. In any event of dissolution of the Corporation, all procedures shall be consistent with Article IV of the Articles of Incorporation.

Subp 00838

# ARTICLE X

## TRANSACTIONS REQUIRING APPROVAL
## OF THE CORPORATE MEMBER

### 10.1   MATTERS REQUIRING APPROVAL

Notwithstanding anything in these Bylaws to the contrary, neither the Board nor any officer or employee of this Corporation may take any of the following actions without the prior approval of the Corporate Member:

A.    Merger, consolidation, reorganization or dissolution of this Corporation or any subsidiary or affiliate entity;

B.    Amendment or restatement of the Articles of Incorporation or the Bylaws of this Corporation or any subsidiary or affiliate entity;

C.    Adoption of operating budgets of this Corporation or any subsidiary or affiliate entity, including consolidated or combined budgets of this Corporation and all subsidiary organizations of the Corporation;

D.    Adoption of capital budgets of this Corporation or any subsidiary or affiliate entity;

E.    Aggregate operating or capital expenditures on an annual basis that exceed approved operating or capital budgets by a specified dollar amount to be determined from time to time by the Corporate Member;

F.    Long-term or material agreements including, but not limited to, borrowings, equity financings, capitalized leases and installment contracts; and purchase, sale, lease, disposition, hypothecation, exchange, gift, pledge, or encumbrance of any asset, real or personal, with a fair market value in excess of a dollar amount to be determined from time to time by the Directors of the Corporate Member, which shall not be less than 10% of the total annual capital budget of this Corporation;

G.    Appointment of an independent auditor and hiring of independent counsel except in conflict situations between the Corporate Member and this Corporation or any subsidiary or affiliate entity;

H.    The creation or acquisition of any subsidiary or affiliate entity;

Subp 00839

I.    Contracting with an unrelated third party for all or substantially all of the management of the assets or operations of this Corporation or any subsidiary or affiliate entity;

J.    Approval of major new programs and clinical services of this Corporation or any subsidiary or affiliate entity. The Corporate Member shall from time to time define the term "major" in this context;

K.    Approval of strategic plans of this Corporation or any subsidiary or affiliate entity;

L.    Adoption of Quality Assessment procedures not in conformity with policies established by the Corporate Member; and

M.    Any transaction between this Corporation, a subsidiary or affiliate and a director of this Corporation or an affiliate of such director.

## 10.2    OTHER MAJOR ACTIVITIES

10.2.1 In addition, the Corporate Member shall have the authority, except as otherwise provided by the Corporate Member and after consultation with this Corporation, to require the prior review and approval of those activities of this Corporation or any subsidiary or affiliate entity which the Corporate Member determines to be major activities.

10.2.2 "Major activities" shall be those which the Corporate Member by a vote of not less than two-thirds (2/3) of its Board of Directors has declared major, by written notice to this Corporation, delivered personally or transmitted by registered or certified mail, return receipt requested. Such notice shall specifically identify the matter or matters requiring approval of the Corporate Member, and shall refer to this bylaw provision granting such approval rights to the Corporate Member. Notices received pursuant to this section shall be recorded in the minutes of this Corporation and shall be filed with the minutes of this Corporation.

## 10.3    APPROVALS

The Corporate Member's approval or disapproval of matters described in Section 10.1 or 10.2, above shall be recorded in the minutes of this Corporation.

## 10.4    OTHER ACTIONS REQUIRING APPROVAL OF THE CORPORATE MEMBER

10.4.1 Vacancy. Any vacancy occurring on the Board of this Corporation with regards to board members elected by the Corporate Member shall be filled by an

Subp 00840

appointee of the Corporate Member from nominees selected in accordance with the nomination provision of these Bylaws.

10.4.2 _Removal_. Any non-*ex-officio* Trustee or Director of this Corporation's Board who was elected to the Board by the Corporate Member may be removed from office by the Corporate Member; provided, however, the Corporate Member shall notify this Corporation's Board, and give it an opportunity to respond in the manner and subject to the terms and conditions described herein, prior to any such proposed removal.

10.5   EXERCISE OF AUTHORITY

Notwithstanding any provision in these Bylaws to the contrary, and except as otherwise provided in subsection 10.2.2 of these Bylaws (regarding definition of "major activities"), this Corporation shall not prescribe the manner by which the Corporate Member exercises its authority under these Bylaws, and no present or future provision of these Bylaws shall have such effect. Without limiting the generality of the foregoing, no present or future provision of these Bylaws or other action of this Corporation shall prescribe the required vote of the Board of Directors of the Corporate Member for the exercise of its authority herein, nor shall the approval of the Corporate Member to be inferred from its failure affirmatively to disapprove of a proposed action of this Corporation within a specified time period.

## ARTICLE XI

## AMENDMENT TO BYLAWS

These Bylaws may be amended or new Bylaws may be adopted by action of the Board at any regular meeting of the Board or at any special meeting called for that purpose. Amendments shall not be effective unless and until approved by the Corporate Member. Alternatively, amendments may be adopted by the Corporate Member, other than amendments which reduce the powers of the Board, at any regular or special meeting of the Board of Directors of the Corporate Member called for that purpose. However, prior to amending unilaterally these Bylaws, the Corporate Member shall notify the Board of the proposed changes, explain the reasons for them, and allow the Board to comment. Following that process the Corporate Member may request that the Board adopt such amendments at its next regularly scheduled meeting. Notwithstanding the foregoing provision of this Article XI, any changes or amendments which would materially and adversely affect the rights of the Community Members as to voting or transfer, the number, manner of selection, filling of vacancies and terms of the office of the Board of Trustees shall be approved by the Corporate Member and a majority of the votes cast at an annual or a special meeting of the Community Members.

Subp 00841

Exhibit 1

**EQUITY CASH TRANSFER POLICY**

DEC/SSMC/Bylaws/Rev 12-01.doc
SSMC/Bylaws

| Sutter Health and Affiliates<br>Finance Policies and Procedures | |
|---|---|
| **EQUITY CASH TRANSFER** | |
| Policy Number  207 | Origination Date:  1/96<br>Last Revised Date:  7/98<br>Next Review Date:  9/99 |
| Approved by: Bob Reed, Chief Financial Officer | |

## POLICY

Sutter Health shall ensure that operating funds are available to affiliated entities sufficient to fund their approved operating and capital budgets.  Transfers from Sutter Health to affiliates may be made where such transfers are determined to be in the best interests of the Sutter Health system, the affiliate has adopted this policy, or otherwise incorporated this policy into its bylaws, and the transfer is not otherwise prohibited by pre-existing contractual obligations. Alternatively, excess operating cash may be transferred from the affiliate to Sutter Health.

Sutter Health shall ensure that each affiliate's Funded Depreciation (including seismic funds) shall be used to fund that affiliate's routine and non-routine capital acquisitions, and will ensure that trusteed funds will be used for their authorized purposes.

Donor-originated funds are specifically excluded from this policy.

## PURPOSE

The purpose of this policy is to enable Sutter Health to optimize the strategic value of available capital resources for the benefit of the system and of individual affiliated entities. Each non-profit Sutter Health affiliated entity shall adopt this policy, thus providing the system with maximum flexibility to redeploy cash resources to meet approved system strategic objectives.

## AUTHORIZATION

The Sutter Health Chief Financial Officer may authorize transactions and establish routine practices in accordance with this policy.  Sutter Health will provide periodic reports to each affiliated entity reflecting transactions executed in accordance with this policy.

## PROCEDURES

### Definitions

Excess Operating Cash

Operating cash generated by each affiliated entity, over and above its target. (See Figure 1 for example of calculation).

Subp 00843

<u>Target</u>

Each affiliated entity's operating cash target shall consist of: Fourteen days of budgeted operating expenses, excluding depreciation expense.

<u>Donor-originated Funds</u>

Cash received by or due to, an affiliated entity or associated charitable foundation, which has not been spent.

**Accounting Treatment**

For transfers to Sutter Health, the following entry would be recorded:

|  | Dr. | Cr. |
|---|---|---|
| Equity Transfer – SH | XXX | |
| Cash – Operating Pool | | XXX |

For transfers received from Sutter Health, the following entry would be recorded:

|  | Dr. | Cr. |
|---|---|---|
| Cash – Operating Pool | XXX | |
| Equity Transfer – SH | | XXX |

Subp 00844

| SUTTER HEALTH | | |
|---|---|---|
| **Equity Cash Transfer Calculation (000)** | | |
| | | |
| **Month:    May 31, 1998** | | Sample Affiliate |
| | | *(Affiliate Name)* |
| | | |
| April 30, 1998  End Operating Pool Balance | + | $        9,000 |
| B of A Balance (& other balances, if any) | + | 500 |
| Outstanding Checks | - | (800) |
| Special Provisions (if any) | - | 0 |
| Adjusted Operating Pool Balance | = | $        8,700 |
| Target Balance (see note 1) | - | (3,260) |
| *Equity Cash Transfer Available* | = | *$        5,440* |
| | | |
| *(Transaction value dated 5/1/98)* | | |
| | | |
| | | |
| | | |
| Note 1: | | |
| **Target Calculation:** | | |
| | | |
| Annual Operating Expense Budget | + | $      100,000 |
| Depreciation/Amortization | - | (15,000) |
| Adjusted Annual Operating Expense Budget | = | $       85,000 |
| 14 day Target Factor | X | 14/365 |
| Target Balance | = | $        3,260 |
| | | |
| | | |

Subp 00845

## CERTIFICATE OF SECRETARY

I certify that I am the duly appointed and acting Secretary of Sutter Solano Medical Center, a California nonprofit public benefit corporation and as such, I am authorized to execute this certificate on its behalf.

The amendments contained in these Amended and Restated Bylaws of Sutter Solano Medical Center were approved by the Board of Trustees on July 23, 2001 and October 22, 2001 and by Sutter Health, the General Member, on October 17, 2001, and December 17, 2001, respectively.

Dated: 1/22/02

_____
Secretary)

DEC/SSMC/Bylaws/Rev 12-01.doc
SSMC/Bylaws

Subp 00846

BYLAW AMENDMENT FORM

CORPORATION:    Sutter Solano Medical Center

ARTICLES OF INC. _____    BYLAWS _____X_____

ARTICLE AND SECTION AFFECTED: _____Article V, Sections 5.1 and 5.5.4;
Article VI, Sections 6.1.1 and 6.1.2

DATE OF APPROVAL BY THE CORPORATION: _____March 28, 2005_____

DATE OF APPROVAL BY SUTTER HEALTH:_____April 14, 2005_____

SUBJECT MATTER OF AMENDMENT:    (i) To amend Article V, Section 5.1
OFFICERS, to include the Chief Executive Officer and Chief Financial Officer, and to
replace references to the "Vice Chair-Finance" with "Finance Committee Chair;"
(ii) to amend Article V, Section 5.5.4 to specify that the duties are those of the Chief
Financial Officer rather than the Vice Chair-Finance; and (iii) to amend Article VI,
Sections 6.1.1 and 6.1.2 to replace references to the "Vice Chair-Finance" with the
correct term "Finance Committee Chair."

The following additions (indicated by underline) and /or deletions (indicated by
strikeover) were adopted on the above dates:

ARTICLE V OFFICERS/CHIEF EXECUTIVE OFFICER

5.1    OFFICERS

      The officers of the Corporation shall be a Chair of the Board, a Vice-Chair, a
Secretary, a Chief Executive Officer, a Chief Financial Officer, a Finance Committee
Chair and a Vice Chair-Finance and such subordinate officers as the Board of Trustees
may designate.

. . .

      5.5.4    Vice Chair-FinanceChief Financial Officer.  The Vice Chair-FinanceChief
Financial Officer shall keep and maintain, or cause to be kept and maintained, adequate
and correct accounts of the properties and business transactions of the Corporation.  The
books of account shall be at all reasonable times open to inspection by any Trustee.

      The Vice Chair-FinanceChief Financial Officer shall deposit all monies and
valuables in the name and credit of the Corporation with such depositories as may be
designated by the Board of Trustees; shall disburse the funds of the Corporation as may
be ordered by the Board of Trustees; shall render to the Chair of the Board and Trustees,
whenever requested, an account of all transactions as Vice Chair-FinanceChief Financial
Officer and of the financial condition of the Corporation; and shall have such other
powers and perform such other duties as may be prescribed by the Board of Trustees or
these Bylaws.

Subp 00802

## ARTICLE VI  BOARD COMMITTEES

6.1.1 <u>Executive Committee</u>. The Executive Committee shall consist of the Chair of the Board, the Vice-Chair, the ~~Vice-Chair Finance~~Finance Committee Chair, the Secretary, the Chief Executive Officer and one other member of the Board of Trustees who shall be elected by a majority vote of the Trustees then in office.

6.1.2  <u>Finance Committee</u>. The Finance Committee shall consist of the ~~Vice-Chair-Finance~~Finance Committee Chair and two or more other members. The Finance Committee shall advise the Board of Trustees on all matters relating to the financial and fiscal affairs of the Corporation and shall make such recommendations and suggestions to the Board of Trustees in respect to these matters as the Finance Committee may from time to time deem necessary or appropriate. The Finance Committee shall see that an operating budget covering a one (1)-year period and an annual capital budget covering a three (3)-year period are prepared and submitted to the Board of Trustees in accordance with schedules established in the Systemwide Annual Budget Calendar. Whenever practicable any proposal or resolution involving the expenditure or obligation to spend funds of the Corporation shall be submitted to the Board of Trustees only after first being submitted to the Finance Committee for its review and recommendation. So far as practicable, each member of the Finance Committee shall be a person experienced in matters of finance. All action of the Finance Committee shall be reported to the Board of Trustees at its meeting next succeeding such action. The Finance Committee shall exercise its responsibilities and authority in a manner consistent with any guidelines or policies established by the Corporate Member's Systemwide Finance Committee. The Committee may fix its own rules and procedures and shall meet where and as provided by such rules or by resolution of the Board of Trustees, and shall also meet at the call of the Chair of the Finance Committee or any two members of the Committee. ~~The Vice-Chair-Finance of the Corporation shall be Chair of the Finance Committee.~~

Subp 00803

Exhibit W

# AMENDED AND RESTATED

## BYLAWS

## SUTTER TRACY COMMUNITY HOSPITAL

A nonprofit public benefit corporation
organized under the laws of the State of California

*Includes Revisions through July 7, 2003*

Subp 00852

## TABLE OF CONTENTS

Page

I. NAME .................................................................................................................1

II. PURPOSES ........................................................................................................1

III. MEMBERSHIP ..................................................................................................2

 Section 3-1. General Member ..................................................................2

 Section 3-2. Transfer of Membership...........................................................2

 Section 3-3. Exercise of Membership Rights...............................................2

 Section 3-4. Liabilities and Assessments ....................................................2

IV. SYSTEM AFFILIATION ....................................................................................3

 Section 4-1. Affiliated Status .....................................................................3

 Section 4-2. Participation in Activities of the Member...................................3

 Section 4-3. Cash Concentration ..............................................................3

 Section 4-4. Equity Cash Transfer Policy ...................................................3

 Section 4-5. Payment of Allocation Fee......................................................3

 Section 4-6. Cost of Capital Allocation Policy ...........................................3

 Section 4-7. Representation on the Board of Trustees ..................................3

 Section 4-8. Effect of Policies....................................................................4

 Section 4-9. Policies Required of Affiliated Entities .....................................4

 Section 4-10. Compliance Program ..............................................................4

V. TRUSTEES.........................................................................................................5

 Section 5-1. Number, Qualification, Selection ............................................5

 Section 5-2. Powers and Responsibilities ...................................................6

 Section 5-3. Compensation .......................................................................7

 Section 5-4. Conflict of Interest .................................................................8

 Section 5-5. Nominations...........................................................................8

Subp 00853

Page

VI. MEETINGS .................................................................................................8

    Section 6-1.    Regular Meetings ...............................................................8

    Section 6-2.    Special Meetings ................................................................8

    Section 6-3.    Annual Organizational Meeting.........................................9

    Section 6-4.    Place of Meetings...............................................................9

    Section 6-5.    Notice.................................................................................9

    Section 6-6.    Quorum ..............................................................................9

    Section 6-7.    Manner of Acting...............................................................9

    Section 6-8.    Presiding Officer .............................................................10

    Section 6-9.    Action in Lieu of Meeting................................................10

    Section 6-10.    Telephonic Meetings........................................................10

VII. OFFICERS...............................................................................................10

    Section 7-1.    General ............................................................................10

    Section 7-2.    Qualification, Election and Term of Office .....................10

    Section 7-3.    Chairperson .....................................................................11

    Section 7-4.    Vice Chairperson ............................................................11

    Section 7-5.    Chief Executive Officer ...................................................11

    Section 7-6.    Chief Financial Officer ...................................................12

    Section 7-7.    Secretary,.........................................................................12

VIII. COMMITTEES .......................................................................................12

    Section 8-1.    General ............................................................................12

    Section 8-2.    Executive Committee........................................................13

    Section 8-3.    Corporate Resources Committee .....................................14

    Section 8-4.    Medical Policy Committee................................................15

    Section 8-5.    Nominating Committee.....................................................18

Subp 00854

Section 8-6.    Ad Hoc Committees.................................................................18

IX.  PROVISION OF MEDICAL, DENTAL AND PODIATRIC CARE........................19

Section 9-1.    Responsibility for Medical Care .............................................19

Section 9-2.    Medical Staff Organization.....................................................21

Section 9-3.    Medical Staff Bylaws..............................................................22

Section 9-4.    Hearing and Appeals...............................................................23

Section 9-5.    Professional Liability Insurance..............................................24

X.  RECORDS, REPORTS AND INSPECTION RIGHTS ...................................24

Section 10-1.   Maintenance of Articles and Bylaws ......................................24

Section 10-2.   Maintenance of Other Corporation Records ...........................24

Section 10-3.   Inspection by Trustees or Member..........................................24

XI.  EXECUTION OF DOCUMENTS........................................................................24

XII.  TRANSACTIONS REQUIRING APPROVAL OF THE MEMBER......................25

Section 12-1.   Matters Requiring Approval ...................................................25

Section 12-2.   Other Major Activities ............................................................26

Section 12-3.   Approvals.................................................................................26

Section 12-4.   Other Actions Requiring Approval of the General

                Member....................................................................................26

Section 12-5.   Exercise of Authority..............................................................27

XIII.  AUXILIARIES AND RELATED GROUPS ........................................................27

Section 13-1.   Establishment..........................................................................27

Section 13-2.   Board Involvement...................................................................27

XIV. TRANSACTIONS REQUIRING THE APPROVAL OF THE TRACY
COMMUNITY MEMORIAL HOSPITAL FOUNDATION ................................. 27

Section 14-1.    Matters Requiring Approval ....................................... 27

Section 14-2.    Approvals .......................................................................... 28

Section 14-3.    Amendments ..................................................................... 28

XV. BONDING AND INDEMNIFICATION .............................................. 28

Section 15-1.    Bonding ............................................................................. 28

Section 15-2.    Indemnification ................................................................ 28

XVI. AMENDMENTS .......................................................................... 29

EXHIBIT 1 - SUTTER HEALTH EQUITY CASH TRANSFER POLICY

Subp 00856

AMENDED AND RESTATED

BYLAWS

<u>SUTTER TRACY COMMUNITY HOSPITAL</u>

## I. <u>NAME</u>

The name of the Corporation shall be as listed in the Restated Articles of Incorporation, namely, Sutter Tracy Community Hospital, a nonprofit public benefit corporation organized under the laws of the State of California.

The principal office of the Corporation shall be located in Tracy, California, and the principal place of business shall be located in or near Tracy, California.

## II. <u>PURPOSES</u>

This Corporation was formed for the purposes set forth in its Articles of Incorporation:

A.    To establish, equip and maintain one or more nonprofit hospitals, medical centers, institutions or other places for the reception and care of the sick, injured, and disabled, with permanent facilities that include inpatient beds and medical services; to provide diagnosis and treatment for patients; and to provide associated services, outpatient care and home care in furtherance of this corporation's charitable purposes;

B.    To promote and carry on educational activities related to the care of the sick, injured, and disabled, or to the promotion of health;

C.    To promote and carry out scientific research related to the care of the sick, injured, and disabled;

D.    To promote or carry out such other activities as may be deemed advisable for the betterment of the general health of the community served; and

E.    To contribute to the growth, development and financial strength of Sutter Health.

Subp 00857

## III. MEMBERSHIP

Section 3-1. - General Member.

There shall be one member of this Corporation who shall be Sutter Health, a California nonprofit public benefit corporation ("Member" or "General Member"). The Member may not, except as provided for in Section 5-2.B.x, be expelled or suspended as the Member without its consent. The General Member, and only the General Member, shall be entitled to exercise fully all rights and privileges of members of nonprofit corporations under the California Nonprofit Public Benefit Corporation Law, and all other applicable laws. The rights and powers of the General Member shall also include, without limitation, the following: the limitation on liabilities described in Section 3-4 of these Bylaws; the rights and powers to appoint (and remove) the appointed members of the Board of this Corporation, subject to Section 12-4 of these Bylaws; and the exercise of all of the rights and powers set forth in Article XII of these Bylaws. Any reference in these Bylaws to the "member," "Member," "general member," "General Member," "corporate member," or "Corporate Member" of this Corporation, or any similar such reference, shall mean Sutter Health, a California nonprofit public benefit corporation.

Section 3-2. - Transfer of Membership.

The General Member may not transfer its membership or any rights arising therefrom.

Section 3-3. - Exercise of Membership Rights.

The General Member of this Corporation shall exercise its membership rights through its own Board of Directors. Subject to the provisions of the General Member's bylaws, and except as otherwise provided in these Bylaws where a super-majority vote of the Board of Directors of the General Member is required, the Board of Directors of the General Member may, by resolution, authorize a person or committee of persons to exercise its vote on any matter to come before the membership of this Corporation. In addition, the General Member may exercise its membership rights at any regular or special meeting of the Board of Directors of the General Member. The functions required by law or these Bylaws to be performed at the annual membership meeting or any regular or special meeting of the members of this Corporation may be performed at any regular or special meeting of the Member's Board of Directors.

Section 3-4. - Liabilities and Assessments.

The General Member, as such, shall not be liable for the debts of this Corporation. The Board of Trustees shall have no power to levy and collect assessments on the General Member. The provisions of this paragraph cannot be amended in any manner.

Subp 00858

## IV. SYSTEM AFFILIATION

### Section 4-1. - Affiliated Status.

This Corporation is one of several affiliated corporations that comprise an integrated healthcare system ("System"). The Member supports the affiliates that comprise the System.

### Section 4-2. - Participation in Activities of the Member.

The Board of Trustees shall submit nominees to the General Member in order to enable the General Member to appoint members of this Corporation's Board to serve on the Member's corporate Board of Directors and/or its Board committees as appropriate to ensure the Member's continued qualification as a "supporting organization" under Section 509 of the Internal Revenue Code of 1986, as amended from time to time, or successor provisions.

### Section 4.3. - Cash Concentration.

Subject to the provisions of Section 4-8 of these Bylaws, the Corporation shall participate in the Cash Concentration and Controlled Disbursement Program prescribed by the General Member and in effect from time to time.

### Section 4-4. - Equity Cash Transfer Policy.

Subject to the provisions of Section 4-8 of these Bylaws, the terms of the Equity Cash Transfer Policy contained in Exhibit 1 to these Bylaws to the Bylaws of this Corporation are incorporated into and made part of these Bylaws. Neither donor originated funds nor the earnings therefrom shall be subject to the Equity Cash Transfer Policy.

### Section 4-5. - Payment of Allocation Fee.

Subject to the provisions of Section 4-8 of these Bylaws, this Corporation shall pay the allocation fees necessary to maintain the operation of the General Member.

### Section 4-6. - Cost of Capital Allocation Policy.

Subject to the provisions of Section 4-8 of these Bylaws, the Corporation shall participate in the Cost of Capital Allocation Policy prescribed by the General Member and in effect from time to time.

### Section 4-7. - Representation on the Board of Trustees.

The President and CEO of the General Member may designate, by written notice to the Secretary of this Corporation, up to two (2) voting members of the Board. Any

Subp 00859

residency requirement applicable to trustees shall not apply to the voting trustees described in this Section 4-7. The President and CEO of the General Member may revoke any such designation effective upon delivery of written notice thereof to the Secretary of this Corporation. The President and CEO of the General Member may attend any Board meeting. This Section 4-7 supersedes any other provision in these Bylaws relating to the participation of the President and CEO and/or the Chair of the General Member as voting or non-voting trustees of this Corporation.

Section 4-8. - Effect of Policies.

This Corporation's obligations under Sections 4-3 through 4-6 and the policies described therein shall be subject to all agreements with and obligations to third parties (including without limitation bond indentures) to which this Corporation is a party or is bound at the time these Bylaws is adopted or which are otherwise approved by the General Member after the adoption of these Bylaws.

Section 4-9. - Policies Required of Affiliated Entities.

Except for tax-exempt entities which are primarily fundraising foundations, this Corporation shall prescribe the policies described in Sections 4-3 through 4-6 to the tax-exempt entities which this Corporation owns or controls or which this Corporation is a member. As to those entities, the policies shall be subject to all agreements with and obligations to third parties, Healthcare Districts and any other member of the affiliated entity (including without limitation bond indentures) to which the entity is a party or is bound at the time these Bylaws is adopted or which are otherwise approved by the General Member after the adoption of these Bylaws.

Section 4-10. - Compliance Program.

Corporation shall adopt a Compliance Program consistent with Sutter Health Compliance Program Plan which shall include the following:

A.     All Board Members shall receive Compliance training consistent with Sutter Health Compliance Program Plan.

B.     The Board shall have oversight of and ultimate responsibility for an effective Compliance Program including adoption of related compliance policies.

C.     The Board or a Committee of the Board shall receive and review routine and special Compliance reports on a regular basis.

D.     The Board shall delegate to Corporation's chief executive officer responsibility to implement Compliance Program in accordance with Sutter Health Compliance Program Plan.

Subp 00860

## V.  TRUSTEES

### Section 5-1. - Number, Qualification, Selection.

A.   The Board of Trustees ("Board") shall consist of 15 Trustees.  All Trustees shall be eligible to vote.

B.   Excluding those persons serving by virtue of their offices pursuant to Paragraph D below, all of the appointed members of the Board shall reside or have their primary place of business within the Tulare Township.  All members shall be appointed as herein set forth.

C.   Not more than 49% of the persons serving as members of the Board at any time may be interested persons.  An interested person is:

    i.   Any person being compensated by the Corporation for services rendered to it within the previous 12 months, whether as a full-time or part-time employee, independent contractor or otherwise, excluding any reasonable compensation paid to a Trustee as Trustee; or

    ii.   Any brother, sister, ancestor, descendant, spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law or father-in-law of any such person.

However, any violation of the provisions of this paragraph shall not affect the validity or enforceability of any transaction entered into by the Corporation.

D.   Two representatives of the General Member as provided in Section 4-7; the Chief Executive Officer (hereinafter known as Administrator of this Corporation, as provided in Section 7-5, the Chief of the Medical Staff, and the Chief of Staff-Elect of the Medical Staff shall each be *ex officio* members, with full voting rights, on the Board.  All other members shall be elected or appointed as herein set forth.

E.   Appointed members of the Board shall be chosen for their willingness and ability to effectively contribute to and support the objectives of the Corporation.  Membership on the Board should reflect a breadth of diversity of community interests that is in keeping with the broad role of the Corporation in the community.

F.   The Member shall appoint replacements for members of the Board of this Corporation whose terms will expire prior to the next annual meeting of the Member.  Trustees shall be selected by the Member from

Subp 00861

a slate of nominees selected as described in Section 5-5 of these Bylaws. Trustees shall serve at the discretion of the Member.

G.    The terms of all appointed Trustees shall be for three years, and appointments shall be staggered. No appointed Trustee may serve for more than nine consecutive years. Notwithstanding the above limitation on time of service, each Trustee shall hold office until his or her successor is appointed. None of these temporal provisions apply to *ex officio* Trustees.

Section 5-2. - Powers and Responsibilities.

A.    Except as otherwise provided by the Articles of Incorporation or these Bylaws, the powers of the Corporation shall be exercised, its property controlled and its affairs conducted by or under the direction of the Board.

B.    Except as to those powers expressly herein reserved to the Member by Article XII, and the power expressly herein reserved to the Tracy Healthcare Foundation by Article XIV, the general powers of the Board shall include, but not be limited to, the power:

    i.    Subject to the provisions of Sections 7-2 and 7-5, below, to select and remove officers, agents and employees of the Corporation; to prescribe powers and duties for them; to fix their compensation; and require from them security for faithful service;

    ii.    To develop annual one-year operating and capital budgets, in accordance with guidelines established by the Member's Resource Planning Committee.

    iii.    To approve capital expenditures outside of approved capital budgets, to a limit specified by the Member's Resource Planning Committee;

    iv.    To develop and recommend corporate objectives;

    v.    To select and appoint a qualified Medical Staff and maintain a liaison therewith;

    vi.    To supervise the Corporation's quality review activities, including all aspects of patient care evaluation, in accordance with guidelines established by the Member's Systemwide Quality Review Committee;

    vii.    To monitor and evaluate performance of the Administrator;

Subp 00862

viii.    To recommend residents of Tulare Township for appointment by
the Member to the Board; and

ix.    To arrange for periodic review of its own performance.

x.    To elect to disaffiliate with the Member in the event that there is
a substantial change of control in the Member. (A substantial
change in control shall mean the conversion of the Member to a
for-profit corporation or the sale of substantially all of its assets
to a for-profit organization, or the consolidation or merger of the
Member into another entity, the result of which would be the loss
of control by the Member into that entity. A substantial change
in control would not include additions to the Member's integrated
healthcare organization, through affiliation, acquisition or
development, of one or more new hospitals, medical groups, or
other healthcare-related organizations. In the event such a
substantial change of control is proposed, the Board will provide
the Member with an opportunity to explain the change. The
Board will evaluate the information presented and decide, in
good faith, whether the Corporation should remain as affiliated
with the Member. If the Board elects to disaffiliate, the Member
shall approve amendments to these Bylaws and the articles of
this Corporation which remove the Member from having any
relationship with this Corporation. The Corporation will
thereafter be a memberless Corporation, the initial Board of
which will consist of the non-Member Board members in office
at the time the amendments to the Bylaws become effective.)
Section 5-2x may not be amended or deleted without the
approval by two-thirds vote of the Board members of this
Corporation in attendance at a duly called regular or special
meeting at which a quorum is present.

Section 5-3. -- Compensation.

Trustees who are not part of the full-time management of the Corporation shall
serve without compensation except for reimbursement for reasonable expenses. In
keeping with the nonprofit status of the Corporation, no Trustee shall benefit financially
from his or her position as a Board member.

Trustees may be reimbursed for all out-of-pocket expenses incurred in attending
meetings and carrying out duties and functions directly related to the Corporation's
business.

Subp 00863

Section 5-4. - Conflict of Interest.

The Board shall promulgate written policies regarding conflict of interest related to its own members, salaried persons and members of the Medical Staff. Such policies shall not be inconsistent with the standards of conduct set forth in Sections 5230 through 5238 of the California Corporations Code or with the Member's conflict of interest policies or guidelines. Such policies shall ensure full disclosure of financial interests and transactions where conflict of interest is a possibility, and shall ensure the avoidance of potential conflict of interest in choosing new Board members, including *ex officio* Directors. Such policies shall impose upon each Board member the responsibility to be alert to possible conflicts of interest of himself or herself or of other Board members, and shall require that each Trustee declare his or her absence of conflict of interest on a declaration form provided for that purpose and disqualify himself or herself from making or influencing a decision where he or she has a conflict of interest.

Section 5-5. - Nominations.

Nominations of Trustees, including but not limited to nominations for full terms, and nominations to fill vacancies created by resignation, removal, or death occurring during a term, shall be proposed by the Nominating Committee of this Corporation. The nominees shall be approved by the Board, upon recommendation of this Corporation's Nominating Committee, as further described in Section 8.5 of these Bylaws. The Member may accept any candidate proposed by the Board, reject any and all candidates with instructions to reconsider, or propose its own candidate. In the event the Member proposes its own candidate, it shall give the Board 30 days to accept or reject the Member's proposed candidate. In the event the Board does not act within 30 days, the Member's selection shall become effective. If the Board rejects the Member's proposed candidate, the disagreement shall be mediated by an independent mediator acceptable to both parties. If the disagreement is not resolved within 60 days after submission to the mediator to the satisfaction of both parties, the Member's appointee shall take office.


## VI. MEETINGS


Section 6-1. - Regular Meetings.

Regular meetings of the Board shall be held at such frequency, time, and place as the Board shall from time to time determine.

Section 6-2. - Special Meetings.

Special meetings of the Board may be called at any time on the order of the Chairperson, on the order of three Trustees, or by the Member.

Subp 00864

Section 6-3. - Annual Organizational Meeting.

Annually, not later than 30 days following each annual meeting of the Member, the Board shall meet for the purpose of electing the officers, and approving two Board members to serve on the Nominating Committee, one representative to serve on the Member's Resource Planning Committee, and the members and chairpersons of Board's committees. Nominees shall be selected by this Corporation's Nominating Committee, as described in Section 8-5 of these Bylaws.

Section 6-4. - Place of Meetings.

All regular meetings of the Board, except as herein otherwise provided, shall be held at the place of business of the Corporation or such other place as the Chairperson or the Trustees requesting such a meeting may designate.

Section 6-5. - Notice.

Special meetings of the Board shall be held upon four days' notice to each Trustee by first-class mail or forty-eight hours' notice to each Trustee delivered personally or by telephone or facsimile transmission. The attendance of a Trustee at any meeting shall constitute a waiver of notice of the meetings, except where a Trustee attends a meeting only for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened.

Section 6-6. - Quorum.

A majority of the number of Trustees presently serving and empowered to vote shall constitute a quorum for the transaction of business. However, a majority of those present at the time and place of any meeting, although less than a quorum, may adjourn the same from time to time or from day to day, without further notice, until a quorum shall attend, and when a quorum shall attend, any business may be transacted which might have been transacted at the meeting had the same been held on the day on which the same was originally appointed or called.

Section 6-7. - Manner of Acting.

The act of a majority of Trustees empowered to vote and present at a meeting at which a quorum is present shall be the act of the Board, unless the act of a greater number is required by law or by these Bylaws.

Subp 00865

Section 6-8. - Presiding Officer.

The Chairperson, or in his/her absence, the Vice Chairperson, or in the absence of both, a chairperson selected by the Trustees present, shall call the meeting to order and shall preside.

Section 6-9. - Action in Lieu of Meeting.

Any action required or permitted to be taken by the Board may be taken without a meeting, if all members of the Board shall individually or collectively consent in writing to such action. Such written consent or consents shall be filed with the minutes of proceedings of the Board. Such action by written consent shall have the same force and effect as the unanimous vote of the Trustees.

Section 6-10. - Telephonic Meetings.

Members of the Board may participate in a meeting through use of a conference telephone or similar communications equipment, so long as all Trustees participating in such meeting can hear one another. Participation in a meeting, pursuant to this paragraph, constitutes presence in person at the meeting.


## VII.  OFFICERS

Section 7-1. - General.

The officers of the Corporation shall be a Chairperson, a Vice Chairperson, an Administrator, a Chief Financial Officer and a Secretary. Offices may be held by the same person except that neither the Chief Financial Officer nor the Secretary may serve concurrently as Chairperson or as Administrator.

Section 7-2. - Qualification, Election and Term of Office.

The Chairperson and Vice Chairperson shall be elected by the Board from among its own membership at the Annual Organizational Meeting. These officers shall serve for one-year terms or until successors have been elected, but must be elected each year. The Chairperson may serve no more than three consecutive one-year terms. The election of the Chairperson is effective upon approval of the Member. Only appointed members who live or who have their primary place of business in Tulare Township shall be eligible to be Chairperson. Officers, other than the Chairperson, serve at the pleasure of the Board and may be removed as an officer without cause by a majority vote of the Trustees. The Chairperson may be removed as an officer without cause by a majority vote of the Trustees and the approval of the Member. Removal under this Section shall not affect the officer's status as a Trustee.

DEC_STCH_Bylaws_7-03.doc                     10
STCH_Bylaws

Subp 00866

Section 7-3. - Chairperson.

The Chairperson shall preside at all meetings of the Board. The Chairperson shall exercise and perform such other powers and duties as may be prescribed by the Board from time to time. The Chairperson shall be an *ex officio* member of all committees. The Chairperson may delegate any of his/her powers to the Vice Chairperson of the Corporation.

Section 7-4. -Vice Chairperson.

The Vice Chairperson, in the absence, inability, or refusal of the Chairperson to act, shall have the same powers and duties as the Chairperson and shall have, in addition, any powers and duties that the Chairperson from time to time delegates to him/her. He/she shall have such other powers and perform such other duties as may be assigned to him/her by the Board.

Section 7-5. - Chief Executive Officer.

A.    Appointment, Compensation and Removal

The President and CEO of the General Member shall screen candidates when the chief executive officer is to be hired and shall present finalists to the Board of this Corporation for selection. The chief executive officer shall be an employee of the General Member. The compensation committee of the Board of this Corporation shall meet with and provide an evaluation of the chief executive officer and shall make compensation recommendations, based on an agreed upon salary system and survey process, to the President and CEO of the General Member, or his or her designee, who shall make the final determination. The chief executive officer shall serve at the pleasure of the General Member, acting through its President and CEO, and the Board of this Corporation, each of which, with the approval of the other, may terminate the services of the chief executive officer.

B.    Responsibilities and Authority

The chief executive officer shall be the general manager and administrator of this Corporation. The chief executive officer shall be given the necessary authority and responsibility to operate this Corporation in all of its activities, including without limitation, quality of services, cost effectiveness and economic performance and implementation of System strategies, subject to the following: With respect to policy development, program planning, employee and community relations, the chief executive officer shall be subject to such policies as may be adopted and such orders as may be issued by the Board of this Corporation or by any of its committees to which the Board has delegated the power for such action; with respect to program execution and overall management performance, the chief executive officer shall be subject to the authority of and shall report to the Board; with respect to strategies of the local delivery system operated by this Corporation

Subp 00867

and overall operations of that system, the chief executive officer shall be responsible to the President of the General Member. The chief executive officer shall also periodically report to the President and CEO of the Member or his/her designee on the affairs of this Corporation. The chief executive officer shall act as the duly authorized representative of the Board of this Corporation in all matters in which the Board has not formally designated some other person to so act.

C.    Ex-Officio Board Membership

The chief executive officer shall be an *ex officio* voting member of the Board of this Corporation.

Section 7-6. - Chief Financial Officer.

The Chief Financial Officer, acting with the Executive and Corporate Resources Committees, shall cause a true and accurate accounting of the financial transactions of the Corporation to be made, and shall assure that reports of such transactions are presented to the Executive Committee or the Board and that all accounts payable are presented to such representatives as the Executive Committee or the Board may designate for authorization of payment. The books of account shall at all times be open to inspection by any member of the Board and by the Member.

Section 7-7. - Secretary.

The Secretary shall cause appropriate notices and agendas to be prepared and sent for all meetings of the Board; shall act as custodian of all records and reports; shall be responsible for the keeping and reporting of adequate records of all meetings of the Board; and shall certify to the correctness of any corporate bylaws, minutes or resolutions. The Board may appoint such Assistant Secretaries as deemed appropriate, each of whom shall have authority to sign documents on behalf of and in the absence or unavailability of the Secretary.

VIII.  COMMITTEES

Section 8-1. - General.

Except as otherwise specified in these Bylaws or in any resolution creating an additional committee, the members and chairperson of each committee shall be selected by the Board upon recommendation of the Nominating Committee as provided for in Section 6-3. The chairperson and all other members of each committee shall hold office for one year or until their successors are elected. Except as specified for the Executive Committee, the Chairperson of the Board shall have the power to fill any vacancies that occur on committees for the remainder of the year.

Except for the Executive Committee and Medical Policy Committee or as otherwise noted to the contrary, not more than two (2) persons who are members from the

Subp 00868

community served by Sutter Tracy Community Hospital, but who are not members of the Board or employees of the Corporation ("Non-Trustee Community Members"), may be appointed to any committee. Such persons may not chair a committee. The Chairperson of the Board, or his/her designee, shall be an *ex officio* advisory and consulting member of each committee, and all committees deliberating on issues affecting the discharge of Medical Staff responsibilities shall include, in at least an advisory and consulting capacity, a physician member of the Medical Staff.

The provisions of Sections 6-5, 6-6, 6-7, 6-9 and 6-10 of these Bylaws, regarding notice, quorum, manner of acting, action in lieu of a meeting, and telephone meetings shall apply to committees of the Board.

All committees of the Board shall keep minutes of their meetings, which shall be filed with the Secretary of the Board.

Section 8-2. - Executive Committee.

A.      Composition

The Executive Committee shall consist of the Chairperson of the Board who shall serve as Chairperson of the committee, the Vice Chairperson, the Secretary, the senior Sutter Health representative on the Board or his/her designee, the Chair of the Corporate Resource Committee and the Administrator.

B.      Responsibilities and Authority

The Executive Committee shall have the power to transact all regular business of the Corporation during the period between meetings of the Board, subject to any prior limitations imposed by the Board and subject to the limitations of California Corporations Code Section 5212. The Executive Committee shall only act on matters which are expressly delegated to it by the Board or where the urgency of the matter makes it impractical to call a full Board meeting.

C.      Accountability

The Executive Committee shall report to each regular Board meeting the results of actions that it has taken within the authority delegated to it, so that the Board maintains accountability from the Executive Committee for its actions. Minutes of all meetings of the Executive Committee shall be distributed to all Board of Trustee members for information and any necessary actions.

Subp 00869

Section 8-3. - Corporate Resources Committee.

A.   Composition

The Corporate Resources Committee shall consist of at least three members of the Board, one of whom shall be designated to serve as Chair, the Chief Financial Officer, and one representative from the Medical Staff, and may also include up to two (2) Non-Trustee Community Members.

B.   Responsibilities and Authority

This committee shall be responsible for the following financial and planning matters:

i.   This committee shall be responsible for supervising the management of the pension funds, and for overseeing the management of the Corporation's assets and ensuring that financial records are maintained in accordance with Generally Accepted Accounting Principles. It shall see that an annual operating budget and an annual capital budget are prepared and submitted to the Board in a timely fashion. The Committee shall examine periodic financial reports and receive explanations from the Administrator regarding variations from the budget. The committee shall also supervise and review the results of all outside audits, and recommend action thereon, if any, to the Board.

ii.   The committee shall also:

a.   Consider and recommend plans for securing capital and operating funds for the Corporation;

b.   Assist in the preparation and modification of long-range and short-range development plans to assure that the total health care program is attuned to meeting the health needs of the community served by the Corporation, including periodic reexamination of the Corporation's purposes, goals, policies and current programs for delivery of health services;

c.   Review the financial feasibility of, and availability of resources for, corporate projects, acts, and undertakings referred to it by the Board and make recommendations thereon to the Board; and

Subp 00870

      d.      Perform such other duties related to fiscal and planning matters as may be assigned to it by the Board or its Chair.

The committee shall exercise its responsibilities and authority in a manner consistent with any guidelines or policies established by the Member and which are not inconsistent with the direction of the Board.

C.      Accountability

This committee shall report at regular meetings of the Board or the Executive Committee, its findings on periodic reports of the fiscal operation. It shall present annually to the Board a report reflecting anticipated operating and capital expenditures and receipts for the ensuing year, and such other budgets and planning reports as requested by the Board.

## Section 8-4. – Medical Policy Committee.

A.      Composition. The Medical Policy Committee shall consist of no fewer than seven members, of whom three shall be directors-at-large from the Corporation's Board of Directors, including the Chair of the Board (or his/her designee) and two shall be persons from the community served by Sutter Tracy Community Hospital not currently serving on the Board of Directors. The chief executive officer and the Chief of Staff (or the President of the Medical Staff) shall serve as ex officio members of the Medical Policy Committee with vote. The Medical Policy Committee may also request members of the Corporation's medical staff, management, patient care services, and administrative teams serve on the Medical Policy Committee with vote. Furthermore, at the request of the Medical Policy Committee, a member of the Corporation's management team shall be named by the chief executive officer to serve as administrative staff person to the Medical Policy Committee.

B.      Responsibilities. The Medical Policy Committee shall assist the Board in discharging its corporate responsibility for the quality of the medical care rendered in its facilities. The Medical Policy Committee shall give support, guidance, and counsel to the chief executive officer and to the Chief of Staff (or President of the Medical Staff) in their respective functions and activities. The Medical Policy Committee shall:

(i)      Advise and make recommendations to the Board on all Medical Staff matters, subject to the last paragraph of section (c) hereof;

(ii)      Review the screening standards applied to applications to the Medical Staff;

Subp 00871

(iii)  Review and recommend to the Board on all applications for appointment and reappointment to the Medical Staff, including privileges to be granted (except applications for temporary appointments and privileges which have been granted by the chief executive officer);

(iv)  Review and recommend to the Board on all recommendations from executive committee of the Medical Staff or the Medical Staff committee which performs similar functions;

(v)  Receive and review specific reports needed to ascertain if Medical Staff functions are being properly discharged;

(vi)  Ensure that Medical Staff officials are accountable for carrying out the Medical Staff functions of reviewing, analyzing, evaluating, and trending clinical work, and for making appropriate recommendations in accordance with the findings therefrom;

(vii)  Ensure that Medical Staff officials are accountable for implementing appropriate procedures for ensuring the compliance of all members of the Medical Staff with Medical Staff Bylaws, Rules and Regulations and all Corporation promulgated policies.

(viii)  Review compliance with the JCAHO standards and recommendations on medical matters, and make recommendations accordingly;

(ix)  Meet at regular intervals and maintain a record of its proceedings;

(x)  Cause review of Medical Staff Bylaws and Rules and Regulations;

(xi)  Provide forum for resolving potential disputes between the Professional Staff and Management;

(xii)  Review and monitor hospital programs from a quality of care standpoint, including adequacy of staffing, equipment, facilities and other factors;

(xiii)  Evaluate and monitor performance improvement activities as they relate to the quality of care;

(xiv)  Receive and review reports from the Interdisciplinary Practice Committee, Safety Committee and Medical Executive Committee or Quality Management Committee; and

Subp 00872

(xv)  Review and report to the Board on the integration among multidisciplinary processes as they relate to quality of care.

C.    <u>Authority.</u>  The Medical Policy Committee shall have the authority to:

(i)  Request those studies, reports, statistics, and other information concerning the Medical Staff which the Committee deems appropriate; and

(ii)  Invite any officer of the Medical Staff to meet and confer with the Medical Policy Committee.

The authority delegated to the Medical Policy Committee shall be exercised in a manner consistent with any provisions for fair procedure, if applicable, afforded each member of the Medical Staff as outlined in the Medical Staff bylaws and by California law, and with any guidelines or policies established by the Sutter Health Systemwide Quality Review Committee; provided, however, that nothing in these Bylaws or the guidelines or policies of Sutter Health shall prevent this Corporation from adopting and implementing higher standards than those established by the Sutter Health Quality Review Committee.

D.    <u>Accountability.</u>  The Medical Policy Committee shall at all times be accountable to the Board and shall fulfill that accountability by:

(i)  Submitting periodic written reports, and recommendations where appropriate, to the Board regarding:

a.    Applications to the Medical Staff;

b.    Studies pertaining to medical care appraisal, quality improvement, and patient/customer satisfaction; and

c.    Any matters relating to Medical Staff matters considered in need of Board deliberation.

(ii)  Submitting status report to the Board or to the Executive Committee of the Board describing studies and reports in progress pertaining to the Medical Staff.

(iii)  Establishing a mechanism whereby the Medical Policy Committee's effectiveness shall be evaluated.

Subp 00873

Section 8-5. - Nominating Committee.

    A.    Composition

The Nominating Committee shall consist of the immediate past Chairperson of the Board, the senior Sutter Health representative on the Board (or his/her designee), the Administrator, and two other members of the Board to be selected at each Annual Organizational Meeting of the Board.

    B.    Responsibilities and Authority

The Nominating Committee shall recommend to the Board nominees for membership on the Board of this Corporation (including nominees to fill vacancies created by expiration of a term as well as by resignation, removal, or death); and may recommend nominees for the officers of this Corporation, two members of the Nominating Committee, and the members and chairpersons of the committees to be selected at the Annual Organizational Meeting, as described in Section 5-7 of these Bylaws. The Committee shall arrange for a periodic review and evaluation of the Board members' performance, and of the Board as a whole. The Committee shall meet as often as necessary, and in sufficient time to ensure that this Corporation's nominees are timely submitted to the Member for its action.

    C.    Accountability

The Nominating Committee shall report to the Board as often as necessary, but at least annually.

Section 8-6. - Ad Hoc Committees.

    A.    Composition

Ad hoc committees may be appointed by the Board for such special purposes as circumstances warrant (for example, to convene a Joint Conference Committee in order to resolve conflicts between Board, management and Medical Staff). Individuals not on the Board but having special knowledge or background may be appointed to serve on such committees.

    B.    Responsibilities and Authority

Activities of such a committee shall be limited to the accomplishment of those tasks for which it was appointed. The committee shall have no powers except those specifically conferred by the Board. As with all

Subp 00874

committees, management and staff shall provide the resources for ad hoc committees.

C.    Accountability

Except as otherwise specified by the Board, all ad hoc committees shall report directly to the Board.  Upon completion of the stated purpose for which it was formed, the committee shall be discharged.

## IX.  PROVISION OF MEDICAL, DENTAL AND PODIATRIC CARE

Section 9-1. - Responsibility for Medical Care.

A.    The Board is responsible for the quality of medical, dental, and podiatric care rendered in the hospital.  It shall discharge that responsibility by assuring that the organized Medical Staff carries out the specific quality control functions in accordance with guidelines established by the Member's Systemwide Quality Assessment Committee and subject to Section 9-1.I, below, including, without limitation, the following:

   i.    Reviewing, analyzing, and evaluating clinical practice to determine the quality of medical care;

   ii.    Making recommendations to management and the Board for the establishment, maintenance, continuing improvement, and enforcement of professional standards;

   iii.    Reporting regularly as required by the Medical Policy Committee in Section 8-4 of these Bylaws, on the quality of medical care in terms of professional standards;

   iv.    Recommending the appointment and reappointment of physicians, dentists, and podiatrists to the Medical Staff and the delineation of clinical privileges for Medical Staff applicant, members, and allied health professionals;

   v.    Supervising and ensuring:

      a.    Compliance with the bylaws, rules and regulations for the Medical Staff; and

      b.    Carrying out the policies of the hospital concerning the functions outlined in those Medical Staff bylaws;

DEC_STCH_Bylaws_7-03.doc                     19
STCH_Bylaws

Subp 00875

vi.    Disciplining the members of the Medical Staff for violations of policies of the hospital and the Medical Staff bylaws, rules, and regulations, within the limitations of the authority delegated by the Board;

vii.    Assisting in identifying community health needs and setting appropriate institutional goals to meet those needs; and

viii.    Conducting formally structured ongoing programs of continuing medical education designed to meet the highest professional standards of care.

B.    The Chief of Staff shall be responsible for the effective discharge of functions to be carried out by the Medical Staff.

C.    The Chief of Staff shall have the authority necessary to carry out his/her responsibilities and they are defined in the bylaws for the Medical Staff.

D.    The Chief of Staff shall work with the Administrator.

E.    The Board shall be responsible for:

i.    Making all appointments and reappointments to the Medical Staff and alterations of staff status;

ii.    Granting clinical privileges;

iii.    Disciplinary actions; and

iv.    All matters relating to Medical Staff professional competence.

F.    In discharging these responsibilities, the Board shall:

i.    Assure that the safety and interest of the patients takes precedence over all other concerns; and

ii.    Always request, but not be bound by, recommendations from the Medical Staff officials and the Executive Committee of the Medical Staff.

G.    The Board shall, through the Medical Staff organization and the functions assigned to it, maintain systems for:

i.    The establishment of professional standards and criteria by which to evaluate medical care;

DEC_STCH_Bylaws_7-03.doc        20
STCH_Bylaws

Subp 00876

ii.   The continuing surveillance of professional practice and Medical Staff functions in order to determine the degree to which those professional standards and criteria are being met; and

iii.   Gaining compliance with the predetermined standards and criteria when the systems of surveillance indicate they are not being met.

H.   No delegation to the Medical Staff shall preclude the Board from exercising the authority required to meet its responsibilities under these Bylaws.

I.   Nothing in these Bylaws or the Member's guidelines or policies shall prevent this Corporation from adopting and implementing higher standards than those established by the Systemwide Quality Assessment Committee.

## Section 9-2. - Medical Staff Organization.

A.   Purposes

The Board shall organize, or cause to be organized, a Medical Staff, comprised of physicians, dentists, and podiatrists, for the following purposes:

i.   To serve as the primary means for accountability to the Board for the appropriateness of the professional performance and ethical conduct of its members and affiliates;

ii.   To discharge specific quality control functions designed to ensure the continual upgrading of the quality of medical, dental, and podiatric care rendered by the Medical Staff and allied health professionals while at the same time assuring that the safety and interest of the patients shall take precedence over all other concerns; and

iii.   To provide a structure whereby the Medical Staff members can become an integral part of the total hospital organization and participate in the institution's planning, policy setting, and decision making process.

B.   Functions

In fulfilling the purposes of the Medical Staff organization, the functions as stated in Section 9-1.A of these Bylaws shall be carried out.

Subp 00877

C.    Officials

    i.    Medical Staff and Department Officers

        The Medical Staff bylaws shall provide for the selection of Medical Staff and Department Officers.

    ii.    Medico-Administrative Officers

        A medico-administrative officer is a practitioner engaged by the hospital on a full or part-time basis for both administrative and clinical duties. Clinical responsibilities are defined as those involving professional capability as a practitioner, such as to require the exercise of clinical judgment with respect to patient care, and may include supervision of professional activities of other practitioners.

        A practitioner engaged in a purely administrative capacity with no clinical duties or privileges is subject to the regular personnel policies of the hospital and to the specific terms of his/her contract or other conditions of engagement, and need not be a member of the Medical Staff. A medico-administrative officer, however, must be a member of the Medical Staff, with clinical privileges delineated in accordance with the Medical Staff bylaws. His/her Medical Staff membership and clinical privileges shall not depend upon continued occupation as a medico-administrative officer, unless otherwise provided by contract or other agreement.

    iii.    Tenure

        The Chief of Staff shall hold office for a one-year term. Each medico-administrative officer shall serve for such term as provided by contract or other agreement.

## Section 9-3. - Medical Staff Bylaws.

A.    Purpose of Bylaws

    There shall be bylaws for the Medical Staff. The bylaws shall state the purpose and functions of the Medical Staff organization and they shall be in consonance with the purposes and functions of the Medical Staff organization stated herein. The bylaws for the Medical Staff shall provide an organizational framework necessary for the implementation of appropriate quality control programs as dictated by the prescribed

Subp 00878

functions of the Medical Staff organization. The bylaws shall define relationships, responsibilities, authority and methods of accountability for each Medical Staff official, service and committee. The bylaws will specifically assure that only a member of the Medical Staff with admitting privileges shall admit patients to the hospital; that only an appropriately licensed practitioner with clinical privileges shall be directly responsible for a patient's diagnosis and treatment within the area of his/her privileges; that each patient's general medical condition shall be the responsibility of a physician member of the Medical Staff; that each patient admitted to the hospital shall receive a baseline history and physical examination by a physician who is either a member of or approved by the Medical Staff and that other direct medical care of patients provided by allied health professionals, residents, and medical students shall be under the appropriate degree of supervision by a licensed practitioner with clinical privileges.

B.    Writing of Bylaws

The Medical Staff, through its officials and appropriate committees, shall be required to submit bylaws, rules and regulations for the Medical Staff organization in accordance with the requirements as set forth in this Article.

The Medical Staff shall periodically review and, as necessary, submit revisions to its bylaws, rules and regulations.

C.    Approval of Bylaws

All such bylaws, rules and regulations for the Medical Staff must be approved by the Board whose approval shall not be unreasonably withheld before becoming effective.

Section 9-4. - Hearing and Appeals.

The Board shall assure that each member of the Medical Staff shall be afforded fair procedure with respect to all appointment and reappointment procedures and the granting, revocation, rescinding, reduction, removal, or denial of Medical Staff privileges. The steps for affording such fair procedure to each member of the Medical Staff shall be carefully defined in the bylaws for the Medical Staff, and shall provide in detail for hearing and appeal procedures, and for notice to the aggrieved practitioner of his/her access to those procedures.

Subp 00879

Section 9-5. - Professional Liability Insurance.

The Board shall ensure that each practitioner granted clinical privileges in the Corporation's facilities shall maintain professional liability insurance in not less than the minimum amounts as from time to time may be determined by the Board, based upon the recommendation of the Medical Staff Executive Committee or as required by Corporation's professional liability insurance carrier. The minimum amount of required coverage established pursuant to this provision shall not exceed the amount of professional liability insurance carried by the Corporation.

## X.  RECORDS, REPORTS AND INSPECTION RIGHTS

Section 10-1. - Maintenance of Articles and Bylaws.

The Corporation shall keep at its principal office the original or a copy of the Articles of Incorporation and Bylaws as amended to date.

Section 10-2. - Maintenance of Other Corporation Records.

The accounting books, records and minutes of proceedings of the Board and any committee(s) of the Board shall be kept at such place or places designated by the Board, or in the absence of such designation, at the principal executive office of the Corporation. The minutes shall be kept in written or typed form, or in any other form capable of being converted into written, typed or printed form.

Section 10-3. - Inspection by Trustees or Member.

Except as otherwise limited by law, every Trustee and the Member shall have the absolute right at any reasonable time to inspect all books, records, and documents of every kind and the physical properties of the Corporation. This inspection by a Trustee or the Member may be made in person or by an agent or attorney, and the right of inspection includes the right to copy and make extracts of documents.

## XI.  EXECUTION OF DOCUMENTS

The following persons shall be authorized to execute any deeds, mortgages, bonds, contracts, or other instruments which the Board has authorized to be executed:

A.    Any officer or other person duly authorized by resolution of the Board to execute documents; or

B.    In the absence of express authorization by Board resolution, the Chairperson or Vice Chairperson, and the Secretary or any Assistant Secretary (all subject to such limitations as may be imposed by resolution of the Board).

Subp 00880

## XII. TRANSACTIONS REQUIRING APPROVAL OF THE MEMBER

Section 12-1. - Matters Requiring Approval.

Notwithstanding anything in these Bylaws to the contrary, neither the Board nor any officer or employee of the Corporation, which is an affiliated institution of Sutter Health, may take any of the following actions, or approve an affiliate taking any of the following actions, without the prior approval of the General Member:

A.  Merger, consolidation, reorganization, or dissolution of this Corporation or any subsidiary or affiliate entity;

B.  Amendment or restatement of the Articles of Incorporation or the Bylaws of this Corporation or any subsidiary or affiliate entity;

C.  Adoption of operating budgets of this Corporation or any subsidiary or affiliate entity, including consolidated or combined budgets of this Corporation and all subsidiary organizations of the Corporation;

D.  Adoption of capital budgets of this Corporation or any subsidiary or affiliate entity;

E.  Aggregate operating or capital expenditures on an annual basis that exceed approved operating or capital budgets by a specified dollar amount to be determined from time to time by the General Member;

F.  Long-term or material agreements including, but not limited to, borrowings, equity financings, capitalized leases and installment contracts; and purchase, sale, lease, disposition, hypothecation, exchange, gift, pledge, or encumbrance of any asset, real or personal, with a fair market value in excess of a dollar amount to be determined from time to time by the Directors of the General Member, which shall not be less than 10% of the total annual capital budget of this Corporation;

G.  Appointment of an independent auditor and hiring of independent counsel except in conflict situations between the General Member and this Corporation or any subsidiary or affiliate entity;

H.  The creation or acquisition of any subsidiary or affiliate entity;

I.  Contracting with an unrelated third party for all or substantially all of the management of the assets or operations of this Corporation or any subsidiary or affiliate entity;

DEC_STCH_Bylaws_7-03.doc                    25
STCH_Bylaws

Subp 00881

J.  Approval of major new programs and clinical services of this Corporation or any subsidiary or affiliate entity. The General Member shall from time to time define the term "major" in this context;

K.  Approval of strategic plans of this Corporation or any subsidiary or affiliate entity;

L.  Adoption of quality assurance policies not in conformity with policies established by the General Member;

M.  Any transaction between this Corporation, a subsidiary or affiliate and a director of this Corporation or an affiliate of such director.

Section 12-2. - Other Major Activities.

A.  In addition, the General Member shall have the authority, except as otherwise provided by the General Member and after consultation with this Corporation, to require the prior review and approval of those activities of this Corporation or any subsidiary or affiliate entity which the General Member determines to be major activities.

B.  "Major activities" shall be those which the General Member by a vote of not less than two-thirds (2/3) of its Board of Directors has declared major, by written notice to this Corporation, delivered personally or transmitted by registered or certified mail return receipt requested. Such notice shall specifically identify the matter or matters requiring approval of the General Member, and shall refer to this bylaw provision granting such approval rights to the General Member. Notices received pursuant to this section shall be recorded in the minutes of this Corporation and shall be filed with the minutes of this Corporation.

Section 12-3. - Approvals.

The General Member's approval or disapproval of matters described in Section 12-1 or 12-2 above, shall be recorded in or filed with the minutes of this Corporation.

Section 12-4. - Other Actions Requiring Approval of the General Member.

A.  Vacancy. Any vacancy occurring on the Board of this Corporation shall be filled by an appointee of the General Member from nominees selected as described in the nomination provision of these Bylaws.

B.  Removal. Any non-*ex-officio* Trustee or Director of this Corporation's Board may be removed from office by the General Member; provided, however, the General Member shall notify this Corporation's Board, and give it an opportunity to respond in the manner and subject to the terms and conditions described herein, prior to any such proposed removal.

Subp 00882

Section 12-5. - Exercise of Authority.

Notwithstanding any provision in these Bylaws to the contrary, and except as otherwise provided in subsection B of Section 12-2 of these Bylaws to the Bylaws (regarding definition of "major activities"), this Corporation shall not prescribe the manner by which the General Member exercises its authority under these Bylaws, and no present or future provision of these Bylaws shall have such effect. Without limiting the generality of the foregoing, no present or future provision of these Bylaws or other action of this Corporation shall prescribe the required vote of the Board of Directors of the General Member for the exercise of its authority herein, nor shall the approval of the General Member to be inferred from its failure affirmatively to disapprove of a proposed action of this Corporation within a specified time period.

## XIII.  AUXILIARIES AND RELATED GROUPS

Section 13-1. - Establishment.

Subject to the provisions of Section 12-1 of these Bylaws, the Board may establish, support the establishment of, or continue the existence of, auxiliaries and/or related organizations, including the auxiliary and hospice, wishing to support the objectives of the Corporation or work in complementary ways with the Corporation. Bylaws, other rules and regulations of the auxiliary or related organization and any amendments thereto, and all major projects must be approved by the Board.

Section 13-2 - Board Involvement.

The Board reserves the right to channel any such funds as may be donated by such bodies to uses or objectives consistent with the purposes stated in Article II of these Bylaws. The auxiliary, shall be required to, at a frequency set by the Board, which shall not be less than annually, provide the Board with a report summarizing the operations of the auxiliary.

## XIV.  TRANSACTIONS REQUIRING THE APPROVAL OF THE TRACY COMMUNITY MEMORIAL HOSPITAL FOUNDATION

Section 14-1. - Matters Requiring Approval.

Neither the Board nor any officer or employee of the Corporation may take any of the following actions without the prior approval of the Tracy Community Memorial Hospital Foundation:

A.    Conveying title or ownership of substantially all of the Corporation's assets to a third party, either by an assignment, conveyance of title or through a sublease;

DEC_STCH_Bylaws_7-03.doc                    27
STCH_Bylaws

Subp 00883

    B.      Contracting with a third party to manage the day to day operations of the Corporation's activities;

    C.      Ceasing to use the hospital as an acute-care hospital; and

    D.      Shifting, suspending, or abandoning 50% or more of the hospital's acute-care beds.

## Section 14-2. - Approvals.

The Foundation's approval or disapproval of matters described in Section 14-1, above, shall be recorded in or filed with the minutes of this Corporation.

Approval requires the vote of two-thirds of the Foundation Board members empowered to vote and present at a meeting at which a quorum is present.

Whenever any transaction or action is subject to the approval of the Foundation, this Corporation shall be entitled to infer such approval if written disapproval of the Foundation is not received within 90 days after notice is given of the proposed transaction or action. Approvals inferred pursuant to this Section shall be recorded in the minutes of this Corporation.

## Section 14-3. - Amendments.

Section XIV may not be amended or deleted without the approval by two-thirds vote of the Board members of the Tracy Community Memorial Hospital Foundation members in attendance at a duly called regular or special meeting of the Foundation Board at which a quorum is present.

## XV.  BONDING AND INDEMNIFICATION

## Section 15-1. - Bonding.

All officers and employees handling funds shall be properly bonded.

## Section 15-2. - Indemnification.

The Corporation shall have the right to indemnify any person who was or is a party or is threatened to be made a party to any civil, criminal, administrative, or investigative proceeding by reason of the fact that such person is or was a Trustee, officer, employee, or otherwise an agent of the Corporation, against expenses, judgments, fines, settlements and other amounts actually and reasonably incurred in connection with such proceeding, provided that all of the requirements of California Corporations Code Section 5238 for such indemnification are met.

DEC_STCH_Bylaws_7-03.doc         28
STCH_Bylaws

Subp 00884

XVI. AMENDMENTS

Section 16-1. - Amendments

These Bylaws may be amended or new Bylaws may be adopted by action of the Board at any regular meeting of the Board or at any special meeting called for that purpose. Amendments shall not be effective unless and until approved by the General Member. Alternatively, amendments may be adopted by the General Member, other than amendments which reduce the powers of the Board, amendments which affect the right of the Tracy Healthcare Foundation to approve certain actions of this Corporation, or amendments which affect the right of this Corporation to elect to disaffiliate if certain changes occur to the Member, at any regular or special meeting of the Board of Directors of the Member called for that purpose. Specifically, Section 5-2x may not be amended or deleted without the approval by two-thirds vote of the Board members of this Corporation in attendance at a duly called regular or special meeting at which a quorum is present. Section XIV may not be amended or deleted without the approval by two-thirds vote of the Board members of the Tracy Healthcare Foundation members in attendance at a duly called regular or special meeting of the Foundation Board at which a quorum is present. However, prior to amending unilaterally these Bylaws, the General Member shall notify the Board of the proposed changes, explain the reasons for them, and allow the Board to comment. Following that process the General Member may request that the Board adopt such amendments at its next regularly scheduled meeting.

Subp 00885

## SUTTER TRACY COMMUNITY HOSPITAL

I, _Frances C. Mizuno_ certify as follows:

1.     I am the duly appointed and acting Secretary of Sutter Tracy Community Hospital, and as such I am authorized to execute this Certificate on its behalf.

2.     The foregoing are true and complete copies of the Bylaws of Sutter Tracy Community Hospital, and that said Bylaws have not been amended, modified or rescinded and are now in full force and effect.

DATED:  7-28-03

SUTTER TRACY  COMMUNITY HOSPITAL

By _Frances C. Mizuno_
   Secretary

<u>EXHIBIT 1</u>

SUTTER HEALTH

EQUITY CASH TRANSFER POLICY

Subp 00887

| Sutter Health and Affiliates |
|---|
| **Finance Policies and Procedures** |
| **EQUITY CASH TRANSFER** |

| Policy Number 207 | Origination Date: 1/96 |
| | Last Revised Date: 7/98 |
| | Next Review Date: 9/99 |
| Approved by: Robert D. Reed, Chief Financial Officer | |

## POLICY

Sutter Health shall ensure that operating funds are available to affiliated entities sufficient to fund their approved operating and capital budgets. Transfers from Sutter Health to affiliates may be made where such transfers are determined to be in the best interests of the Sutter Health system, the affiliate has adopted this policy, or otherwise incorporated this policy into its bylaws, and the transfer is not otherwise prohibited by pre-existing contractual obligations. Alternatively, excess operating cash may be transferred from the affiliate to Sutter Health.

Sutter Health shall ensure that each affiliate's Funded Depreciation (including seismic funds) shall be used to fund that affiliate's routine and non-routine capital acquisitions, and will ensure that trusteed funds will be used for their authorized purposes.

Donor-originated funds are specifically excluded from this policy.

## PURPOSE

The purpose of this policy is to enable Sutter Health to optimize the strategic value of available capital resources for the benefit of the system and of individual affiliated entities. Each non-profit Sutter Health affiliated entity shall adopt this policy, thus providing the system with maximum flexibility to redeploy cash resources to meet approved system strategic objectives.

## AUTHORIZATION

The Sutter Health Chief Financial Officer may authorize transactions and establish routine practices in accordance with this policy. Sutter Health will provide periodic reports to each affiliated entity reflecting transactions executed in accordance with this policy.

## PROCEDURES

**Definitions**

Excess Operating Cash

Operating cash generated by each affiliated entity, over and above its target. (See Figure 1 for example of calculation).

Subp 00888

Target

Each affiliated entity's operating cash target shall consist of: Fourteen days of budgeted operating expenses, excluding depreciation expense.

Donor-originated Funds

Cash received by or due to, an affiliated entity or associated charitable foundation, which has not been spent.

**Accounting Treatment**

For transfers to Sutter Health, the following entry would be recorded:

|  | Dr. | Cr. |
|---|---|---|
| Equity Transfer – SH | XXX |  |
| Cash – Operating Pool |  | XXX |

For transfers received from Sutter Health, the following entry would be recorded:

|  | Dr. | Cr. |
|---|---|---|
| Cash – Operating Pool | XXX |  |
| Equity Transfer – SH |  | XXX |

Subp 00889

| SUTTER HEALTH | | |
|---|---|---|
| **Equity Cash Transfer Calculation (000)** | | |

| | | Sample Affiliate |
|---|---|---|
| **Month:**    **May 31, 1998** | | |
| | | *(Affiliate Name)* |
| | | |
| **April 30, 1998  End Operating Pool Balance** | + | $         .9,000 |
| **B of A Balance (& other balances, if any)** | + | 500 |
| **Outstanding Checks** | - | (800) |
| **Special Provisions (if any)** | - | 0 |
| **Adjusted Operating Pool Balance** | = | $·         8,700 |
| **Target Balance (see note 1)** | - | (3,260) |
| ***Equity Cash Transfer Available*** | = | ***$      5,440*** |
| | | |
| *(Transaction value dated 5/1/98)* | | |
| | | |
| | | |
| ***Note 1:*** | | |
| **Target Calculation:** | | |
| | | |
| **Annual Operating Expense Budget** | + | $      100,000 |
| **Depreciation/Amortization** | - | (15,000) |
| **Adjusted Annual Operating Expense Budget** | = | $      85,000 |
| **14 day Target Factor** | X | 14/365 |
| **Target Balance** | = | $      3,260 |

Subp 00890

# SUTTER HEALTH

## EXECUTIVE SEARCH PROGRAM

The procedure outlined on the following pages has been used very successfully over the past several years. Using this methodology, Sutter-affiliated organizations have successfully placed numerous key managerial positions. These positions range from Hospital Administrators and Nursing Executives to highly specialized managerial positions in laboratory and cardiovascular services. Candidates have been successfully recruited from all over the United States (when a national search was deemed appropriate), including Illinois, Minnesota, Kansas, Tennessee, Utah, New Mexico, Arizona and throughout California.

Recruiting is a time-consuming process that requires a working knowledge not only of employment law and practices, but also the health care industry as a whole. As with any discipline, there are effective and ineffective ways to find qualified candidates.

The final decision on any administrator/chief executive officer candidate will be a collaborative effort with both the local hospital and Sutter Health. Sutter will assist the Board leadership in organizing this process to assure a coordinated effort that provides the hospital with the best available candidates from which the selection will be made.

## EXECUTIVE SEARCH PROGRAM - PROCEDURE

Step 1:  Develop Position Specifications and Candidate Profile

The primary purpose is to establish an in-depth understanding of the hospital's goals, challenges, operating environment and the Board's expectations of the position(s) being recruited. This process also includes identification of the purpose, scope and accountabilities of the position. Further review and initial consultation concerning compensation can be achieved at this time.

Step 2:  Assist in Organizing Search Committee

This phase provides assistance to the governing board in structuring itself to complete the process. This will include the development of a proposed timetable and an estimation of the time requirement by each of the Search Committee members. Those best qualified to interview candidates will be identified at this time.

Step 3:  Organize and Direct the Recruitment Process

Based upon the Board's direction, recruitment initiatives can include a variety of sources. Sources can include professional and academic associations and contacts, regional sources, confidential sources of Sutter, and advertisement. In Step 3, the desire to have an "open" versus "closed" recruitment process needs to be decided by the Board. The advantages and disadvantages will be explained to the Search Committee, and an action plan will be developed based upon its decision.

Step 4:  Develop Essential Information Required from All Applicants

Step 4 assures that all candidates are providing the hospital Board with the essential elements of information needed to make this important decision. Much of this information can be provided by the candidate, if so instructed. Other pieces of information may need to be sought out confidentially by Sutter.

Step 5:    Organize and Direct the Screening Process

Here the number of recruited candidates will be screened to an agreed upon
number for the Search Committee to review. Preliminary screening interviews
will be conducted by Sutter to assess experience, education, salary expectations,
career goals and management philosophy and style. References will be checked
to verify experience and professional qualifications. Only those candidates who
most closely match the general and specific position specifications will be
referred for comprehensive interviews with the Search Committee.

Step 6:    Assist Search Committee in Interview Process

There are many details that need to be coordinated in preparing for the visit of
the candidate to the hospital and community. Interviewing schedules and
question guidelines will be developed for this visit. A well-planned interview
process assures maximum effectiveness of the visit and input from those
participating in the decision.

Step 7:    Consultation on Final Selection

Results of all interviews will be tabulated and prepared for use by the Search
Committee. A variety of different techniques can be used in final evaluation.
These techniques will be discussed with the Search Committee.

Step 8:    Consultation on Position Description, Employment Agreement and
Compensation Package

Here the Search Committee will be assisted in making final arrangements so as
to extend a firm offer to the candidate. Final reference checks must be made
and position expectations fully clarified. Normally, the candidate will be called
back for another visit to discuss these matters. This is also a time when issues
concerning relocation and a final compensation package should be agreed upon.
Again, Sutter can provide consultation on such arrangements.

BYLAW AMENDMENT FORM

CORPORATION: _____ Sutter Tracy Community Hospital _____

ARTICLES OF INC.: _____    BYLAWS ____ X _____

ARTICLE AND SECTION AFFECTED: ____ Article V, Section 5-1A _____ (Revised) ____

DATE OF APPROVAL BY THE CORPORATION: ____ April 26, 2004 _____

DATE OF APPROVAL BY SUTTER HEALTH: _____ June 9, 2004 _____

SUBJECT MATTER OF AMENDMENT: To provide for a range in the number of Board
Members from 13 to 15.

The following additions (indicated by underline) and /or deletions (indicated by strikeover) were
adopted on the above dates:

Section 5-1. - Number, Qualification, Selection.

A.    The Board of Trustees ("Board") shall consist of no fewer than 13 and no more
than 15 Trustees. All Trustees shall be eligible to vote.

Subp 00851