1  McDONOUGH HOLLAND & ALLEN PC
   Attorneys at Law
2  RICHARD E. BRANDT (44893)
   MARCIA L. AUGSBURGER, (maugsburger@mhalaw.com) (145686)
3  ELIZABETH M. O'NEILL, (eoneill@mhalaw.com) (166882)
   JOHN C.J. BARNES, (jbarnes@mhalaw.com) (216694)
4  555 Capitol Mall, 9th Floor
   Sacramento, CA 95814
5  Phone: 916.444.3900
   Fax:    916.444.8989
6
   Attorneys for Defendant
7  Memorial Hospitals Association

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  MELINDA CAMPBELL, on her own behalf,    )   CASE NO.
    and on behalf of all others similarly situated, )
12                                          )
                      Plaintiff(s),         )   EXHIBIT C TO NOTICE OF
13                                          )   REMOVAL (28 U.S.C. § 1331, 1334,
           v.                               )   1441 AND 1446)
14                                          )
    SUTTER HEALTH, ALTA BATES MEDICAL )         [FEDERAL QUESTION]
15  CENTER, CALIFORNIA PACIFIC MEDICAL )
    CENTER, EDEN MEDICAL CENTER,            )
16  MARIN GENERAL HOSPITAL, MEMORIAL )
    HOSPITAL LOS BANOS, MEMORIAL            )
17  HOSPITALS ASSN., MILLS-PENINSULA        )
    MEDICAL CENTER, NOVATO                  )
18  COMMUNITY HOSPITAL, ST. LUKE'S          )
    HOSPITAL, SUTTER AMADOR HOSPITAL, )
19  SUTTER AUBURN FAITH HOSPITAL,           )
    SUTTER CENTER FOR PSYCHIATRY,           )
20  SUTTER COAST HOSPITAL, SUTTER           )
    DAVIS HOSPITAL, SUTTER DELTA            )
21  MEDICAL CENTER, SUTTER GENERAL          )
    HOSPITAL, SUTTER LAKESIDE HOSPITAL,)
22  SUTTER MATERNITY AND SURGERY            )
    CENTER OF SANTA CRUZ, SUTTER            )
23  MEMORIAL HOSPITAL, SUTTER MEDICAL)
    CENTER OF SANTA ROSA, SUTTER            )
24  ROSEVILLE MEDICAL CENTER, SUTTER )
    SOLANO MEDICAL CENTER, SUTTER           )
25  TRACY COMMUNITY HOSPITAL, and           )
    DOES 24 and 25, inclusive,              )
26                                          )
                      Defendants.           )
27

28                   **VOLUME III**

**71**

1   McDONOUGH HOLLAND & ALLEN PC
    Attorneys at Law
2   RICHARD E. BRANDT (44893)
    MARCIA L. AUGSBURGER (145686)
3   JOHN C.J. BARNES (216694)
    555 Capitol Mall, 9th Floor
4   Sacramento, CA 95814
    Phone: 916.444.3900
5   Fax:  916.444.8989

6   Attorneys for Defendant Sutter Health

7

                    ENDORSED
                     FILED
                ALAMEDA COUNTY

                  MAY 2 9 2007

         CLERK OF THE SUPERIOR COURT
             By Merkel Begum, Deputy

8                     **SUPERIOR COURT OF CALIFORNIA**

9                         **COUNTY OF ALAMEDA**

10  MELINDA CAMPBELL, on her own behalf,   )   Case No. RG05221764
    and on behalf of all others similarly situated,   )
11                                          )   **DECLARATION OF GAYL LOUNSBURY**
                                            )   **IN SUPPORT OF OPPOSITION TO**
                    Plaintiffs,             )   **MOTION FOR LEAVE TO FILE**
12                                          )   **SECOND AMENDED COMPLAINT**
    v.                                      )
13                                          )
    SUTTER HEALTH and DOES 1 through 24,    )   Date:  June 6, 2007
14  inclusive,                              )   Time:  2:00 p.m.
                                            )   Dept:  22
15                  Defendants.             )   Judge: The Hon. Bonnie Lewman Sabraw
                                            )
16

17          I, Gayl Lounsbury, hereby declare the following:

18          1.      This declaration is based on my own personal knowledge and, if called upon, I could

19  and would testify to the matters set forth herein.

20          2.      I am the Collections Coordinator for the Central Business Office (the "Department")

21  that provides billing and collection services for Memorial Medical Center, Memorial Hospital Los

22  Banos, and Sutter Tracy Community Hospital, collectively known as Memorial Hospital

23  Association. I have worked for the Department, which has had several different names, since 1998.

24  In 2002, the department was called Sutter Health Central Valley Service Area Credit and Collections

25  Department. Although the words "Sutter Health" are used in the title, the Department is, and at all

26  times since 1998 has been, a department within MHA, not Sutter Health, a non-profit corporation,

27  defendant in this case. At all times since 1998, I have been employed by MHA, and not by

28  defendant Sutter Health.

**MHA**
McDonough Holland & Allen PC
Attorneys at Law

                                          1

DECL OF LOUNSBURY IN SUPP OF
OPP TO MOTION TO AMEND

                                                                    1016008v3 09504/0502

1  McDONOUGH HOLLAND & ALLEN PC
   Attorneys at Law
2  RICHARD E. BRANDT (44893)
   MARCIA L. AUGSBURGER (145686)
3  JOHN C.J. BARNES (216694)
   555 Capitol Mall, 9th Floor
4  Sacramento, CA  95814
   Phone: 916.444.3900
5  Fax:   916.444.8989

6  Attorneys for Defendant Sutter Health

7

8              SUPERIOR COURT OF CALIFORNIA

9               COUNTY OF ALAMEDA

10 MELINDA CAMPBELL, on her own behalf,      )  Case No. RG05221764
   and on behalf of all others similarly situated, )
11                                            )  DECLARATION OF GAYL LOUNSBURY
                                              )  IN SUPPORT OF OPPOSITION TO
12               Plaintiffs,                   )  MOTION FOR LEAVE TO FILE
                                              )  SECOND AMENDED COMPLAINT
13 v.                                         )
                                              )
14 SUTTER HEALTH and DOES 1 through 24,       )  Date:  June 6, 2007
   inclusive,                                 )  Time:  2:00 p.m.
15                                            )  Dept:  22
                 Defendants.                   )  Judge: The Hon. Bonnie Lewman Sabraw
16 _____ )

17     I, Gayl Lounsbury, hereby declare the following:

18     1.     This declaration is based on my own personal knowledge and, if called upon, I could

19 and would testify to the matters set forth herein.

20     2.     I am the Collections Coordinator for the Central Business Office (the "Department")

21 that provides billing and collection services for Memorial Medical Center, Memorial Hospital Los

22 Banos, and Sutter Tracy Community Hospital, collectively known as Memorial Hospital

23 Association. I have worked for the Department, which has had several different names, since 1998.

24 In 2002, the department was called Sutter Health Central Valley Service Area Credit and Collections

25 Department. Although the words "Sutter Health" are used in the title, the Department is, and at all

26 times since 1998 has been, a department within MHA, not Sutter Health, a non-profit corporation,

27 defendant in this case.  At all times since 1998, I have been employed by MHA, and not by

28 defendant Sutter Health.

**MHA**
McDonough Holland & Allen PC
Attorneys at Law

                                    1

1         3.     Attached hereto as Exhibit A is the Account Summary and Itemized Statement for

2  Melinda Campbell. This document was generated from a data base that recorded, in 2002, patient

3  and account information. The information was transmitted from the hospital to the Department, then

4  called the Credit Collection and Office Manager for MHA. I worked in this department in 2002, as

5  Credit Collection and Office Manager, and have personal knowledge of the data bases and

6  information contained on the Account Summary and Itemized Statement, having generated many of

7  the entries and reviewed the others in the ordinary course of business. The information contained on

8  these documents was prepared contemporaneously with the receipt of information by the

9  Department, or soon thereafter. The data was input and kept in the ordinary course of business. I

10  am personally familiar with the coding and terms used in Memorial's Account Summaries and

11  Itemized Statements, having created and worked with them since August, 1998.

12       4.     Attached hereto as Exhibit B is the admissions agreement Ms. Campbell signed upon

13  her admission to Memorial, which was also kept in the ordinary course of business at the Memorial

14  Hospital Association's Credit & Collections offices. This admissions agreement states that she

15  sought services at Memorial for injuries she sustained in a motor vehicle accident on July 12, 2002.

16  The admissions agreement further states that she indicated she would be financially responsible for

17  the treatment and that she did not have health care insurance. See the box marked "Ins#1 Name, 4SP

18  – Self Pay." The "Patient inquiry" print out, attached hereto as Exhibit C, also a document kept in

19  the ordinary course of business, confirms that she was not enrolled in an HMO.

20       5.     As reflected on page 2 of the Account Summary attached hereto as Exhibit A, neither

21  Memorial Medical Center nor the Credit & Collections office took any action to collect on Ms.

22  Campbell's account until one of her attorneys, Richard Palenchar called. As reflected on page 2 of

23  the Summary, numbers (42 – 47), I spoke with Mr. Palenchar when he called on October 22, 2002 at

24  10:53 a.m. **Mr. Palenchar asked me to send him a lien for the services rendered to Ms.**

25  **Campbell.** This information is reflected on the Account Summary. Based on this telephone call,

26  our office served the lien, as Mr. Palenchar requested. A copy of the lien is attached hereto as

27  Exhibit D.

28       6.     As further reflected in the Account Summary, we followed the progression of Ms.

**MHA**

McDonough Holland & Allen PC
Attorneys at Law

2

DECL OF LOUNSBURY IN SUPP OF
OPP TO MOTION TO AMEND

1016008v3 09504/0502

1 Campbell's personal injury action against the tortfeasor who cause her injury, waiting to be paid

2 from the proceeds of any judgment or settlement. We did not file any collection action or lawsuit

3 against Ms. Campbell at this time or any other time, and she did not file a lawsuit or other action

4 Memorial.

5       7.    As reflected in my entry on page 3, lines 14-38, of the Account Summary, I received

6 a letter from Ms. Campbell's attorney, Ms. Linda Ross, in November, 2004, telling me that Ms.

7 Campbell would be filing bankruptcy and wanted to hold the check in trust until after she did so.

8 She later called, asking whether we would release the lien. We declined. She told me that if we did

9 not release the lien, she would instruct the bankruptcy trustee to have us release it. Thereafter, Ms.

10 Campbell filed a petition in bankruptcy.

11       8.    Ms. Ross wrote to me on May 19, 2005 stating her position that the lien had been

12 discharged in bankruptcy. A copy of this letter is attached hereto as Exhibit E. I referred the letter

13 to legal counsel for handling, namely, Mr. Davil R. Vasquez and Mr. Gregory Hatton of Hatton,

14 Petrie & Stackler APC. .

15       9.    On May 25, 2005, Mr. Vasquez sent a letter to Ms. Ross explaining Memorial's

16 position that the bankruptcy did not discharge the lien, and that the *Parnell* case did not apply. A

17 copy of this letter is attached hereto as Exhibit F.

18      10.    Thereafter, the Hatton firm exchanged letters with Ms. Campbell's attorneys

19 attempting to resolve their legal dispute about whether the lien had been extinguished in the

20 bankruptcy. The correspondence is attached hereto as Exhibits G, H., and I.

21      11.    The last letter from Ms. Ross stated that she was holding the amount of the lien

22 "pending the outcome of the class action lawsuit, which has been filed in this matter" and suggesting

23 that Mr. Vasquez "contact John Barnes of McDonough, Holland and Allen the attorneys of record

24 for Sutter Health in this matter."

25 Executed in ____, California on the 25th day of May, 2007.

26

27

28 

GAYL LOUNSBURY

MHA
McDonough Holland & Allen
Attorneys at Law

3

# Exhibit A

08:40:03  21 Aug 2006   A C C O U N T   S U M M A R Y   Page 1

SUTTER HEALTH, CENTRAL VALLEY SERVICE AR MODESTO CA 209-491-2293

| NAME/ADDRESS | EMP/REF/MISC/SOURCE/STATUS   PAY/DATE   AMOUNT YC |
|---|---|
| 44*PRI111*020302*AU | CLI: MHA CREDIT & COLLECTIO |
| CAMBELL,MELINDA | EMP: 8ALI TOTAL FITNESS |
| 1465 MERRY LANE | REF: CAMBELL,MELINDA |
| SAN JOSE, CA 95128 | MSC: MANAGER/INSTRUCTOR |
| PH: 408-374-1750 (H) | SOU: N013942503 |
| PH2 408-267-1900 | |

AMT.ASGN :  3,850.65    STATUS  CPC 07-10-06
                       FU/STAT ANW 02-04-06

CRT/COSTS :
ATTY/FEES :              DB/SSN: 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
PRINCIPAL :  3,850.65
MISC/CHGS :
                        DESK : AT1
         ----------
BALANCE  =   3,850.65   LACT DT 07/13/02
                        ASGN DT 08/30/02

----------------- A C C O U N T   C O M M E N T S -----------------

1) ADM XFER EDIT INS REORDER:
2) OLD: NEW
3) 1) 4SP
4) 2) 4KVA
5) ADM XFER EDIT BILLER -ADD INS: add SPD*1
6) ADM XFER EDIT COLLECTOR -ADD INS: add
7) ADM XFER EDIT PRIMARY INSURANCE: add 4SP
8) ADM XFER EDIT BILLER -ADD INS: add SPD*1
9) ADM XFER EDIT COLLECTOR -ADD INS: add
11) SPD*1
12) 07/17/02 IS.CC FINAL BILL 1 CUT 3850.65 3850.65
13) 07/17/02 IS.CC FINAL BILL 1 POSTED (3850.65) 3850.65
14) IS.CC C-20 NSD: (None) to 08/16/02 3850.65
15) IS.CC CLAIM 1 4MVA GRP OUT $3850.65 3850.65
16) 07/18/02 IS.CC FINAL BILL 1 PRINTED 3850.65
17) IS.CC CLAIM 1 4MVA GRP OUT $3850.65 3850.65
18) 07/18/02 IS.CC FINAL BILL 1 PRINTED 3850.65
19) BO.NS C-25 *************** 3850.65
20) OUT-PATIENT
21) TO SCANNERS
22) ***************
23) BO.KK C-26 ACCOUNT WORKED 3850.65
24) ***BLD SELF PAY***
25) BO.KK L-27 DD (queued) - printed on 3850.65
26) 07/29/02
27) BO.KK C-28 BILLED ACCT. 3850.65
28) BO.RC L-29 LETTER DD PRINTED 3850.65
29) BO.ADON C-30 ********************** 3850.65
30) MAIL RECEIVED TODAY
31) ****************************
32) 08/16/02 IS.CC STMT MSG #1 SEQ #1 PRINTED 3850.65
33) IS.CC C-32 NSD: 08/16/02 to 09/15/02 3850.65
34) BO.KK C-33 **PER AVES THERE IS NO REC. 3850.65
35    YG FOR THIS MONTH OF

08:40:03  21 Aug 2006    A C C O U N T   S U M M A R Y         Page  2

36) SERVICE ACCT TO MRA*******
    0.KK  L-34 C (queued) 3850.65
3.. J6/30/02 BO.KK BD XFER From FB to MHA, MSG #: 1 3850.65
39) BO.KK C-36 BD Agency not set up for 3850.65
40) stmts
41) NSD: 09/15/02 to (Nono)
42) 10/22/02 10:53AM ATTY RICHARD PALENCHAR CALLED WANTING TO KNOW IF WE WOULD
43)    SEND LIEN...HIS ADDRESS IS 2204 UNION STREET, SAN FRANCISC
44)    0, CA 94123--415-563-2400---THIRD PARTY INS--ANCHOR
45)    GEN EUL INSURANCE, P O BOX 509020, SAN DIEGO, CA 92150-902
46)    0...CLM# 22012537--INSURED IS MARTHA ESPINOZA...SH TO
47)    TON I TO SEND ER LIEN....GL
48) 10-22-02 10:54AM DESK CHANGED FROM 001 to desk LEG port=20
49) 10/22/02 11:27AM LIEN TO PT, ATTY AND INS AS NOTED IN PREV COMMENT. DUMMY
50)    CHART TO GAYL FOR SIGNATURE...TMP
51) 10/22/02 01:26PM LIEN SENT CERT MAIL TO DEBTOR, ATTY AND INS CO. DUMMY CHT
52)    FILED IN CREDIT DRAWER...TMP
55) 01/15/03 03:01PM PHONED ATTYS OFFC-LFT MESSAGE ON VM FOR A RETURN CLL IN
56)    RE TO STATUS...CN
55) 01/27/03 04:03PM PHONED ATTYS OFFC-SPOKE W/SECTY WHO STATED ATTY
56)    PALENCHAR HAS NOT RETURNED FROM COURT. SHE STATED SHE
57)    WOULD LEAVE MESSAGE FOR HIM TO RETURN MY CLL. INFORMED
58)    HER I LFT MESSAGE SEVERAL DAYS AGO AND HAVE NOT HEARD
59)    BACK...CN
60) 02/07/03 09:11AM ATTY NEVER RETURNED CLL. PHONED INFO TO OBTAIN NUMBER
67) 02/07/03 09:12AM FOR 3RD PARTY INS-858-527-3600. PHONED, WAS INFORMED
62)    ADJUSTER HANDLING CLM IS BLANE SMITH AT EXT 3565. LFT
63)    MESSAGE ON VM FOR ADJUSTER TO RETURN MY CLL...CN
64) 02/07/03 09:36AM RECD CLL FROM BLANE W/ANCHOR GENERAL STATING CLM IS
6'     STILL OPEN...C.N
'.     4/08/03 12:23PM PHONED BLANE W/ANCHOR GENERAL-LFT MESSAGE ON VM FOR
67)    A RETURN CLL...CN
68) 04/08/03 12:40PM RECD CLL FROM BLANE STATING CLM IS STILL OPEN AND THEY
69)    DO HAVE NOTICE OF OUR LIEN. HE STATED OUR NAME WILL BE
70)    LISTED ON SETTLEMENT CHK...CN
71) 06/20/03 11:46AM PHONED BLANE W/ANCHOR GENERAL-LFT MESSAGE ON VM FOR A
72)    RETURN CLL IN RE TO STATUS...CN
73) 07/21/03 12:47PM PHONED BLANE W/ANCHOR GENERAL-LFT 2ND MESSAGE ON VM FOR
74)    A RETURN CLL IN RE TO STATUS ON CLM# 22012537...CN
75) 07/21/03 04:04PM RECD CLL FROM BLANE W/ANCHOR GENERAL STATING CLM ISS
76)    STILL OPEN. HE STATED THEY HAVE NOT RECD DEMAND FROM
77)    ATTY...CN
78) 09/15/03 08:38AM PHONED BLANE W/ANCHOR GENERAL-LFT MESSAGE ON VM FOR A
79)    RETURN CLL IN RE TO STATUS...CN
80) 09/22/03 12:35PM PHONED BLANE W/ANCHOR GEN-LFT 2ND MESSAGE ON VM FOR
81)    A RETURN CLL IN RE TO STATUS...CN
82) 09/22/03 12:41PM RECD CLL FROM BLANE W/ANCHOR GENERAL STATING CLM HAS
83)    NOT SETTLED. HE STATED THE ATTY HAS NOT SENT THEM THE
84)    DEMAND YET...CN
85) 01/06/04 04:09PM CHERYL, PLS STATUS....GL
86) 01/12/04 11:26AM PHONED BLANE W/ANCHOR GENERAL AT 858-527-3600-LFT
87)    MESSAGE ON VM FOR STATUS OF CLN# 22012537...CN
88) 01/27/04 03:38PM PHONED BLANE W/ANCHOR GENERAL-LFT 2ND MESSAGE ON VM
89)    FOR A RETURN CLL IN RE TO STATUS...CN
90) 02/03/04 11:01AM PHONED ANCHOR GENERAL-WAS INFORMED ADJUSTER HANDLNG CLM
91)    IS CAROL AT EXT 3559. WAS TRANSFERRED-LFT MESSAGE ON
92)    VM FOR RETURN CLL IN RE TO STATUS OF CLM...CN
93'    13/04 12:32PM PHONED CAROL W/ANCHOR GENER-LFT 2ND MESSAGE ON VM FOR

08:40:03  21 Aug 2006   A C C O U N T   S U M M A R Y        Page  3

```
92)    A RETURN CLL...CN
       2/18/04  01:55PM CAROL W/ ANCHOR GENER CLLED AND STATED THAT MATTER HAS NOT
96)    SETTLED AND HAS BEEN PUSHED TO MARCH. SHE STATED THAT IT
97)    WILL PROBABLY BE A COUPLE OF MTHS BEFORE IT SETTLES...JP
98) 04/23/04  11:33AM PHONED CAROL W/ANCHOR GENERAL INS AT 858-527-3600
99)    EXT 3559-LFT MESSAGE ON VM FOR A RETURN CLL IN RE TO
00)    STATUS OF CLM...CN
01) 05/06/04  12:37PM PHONED CAROL W/ANCHR GEN-LFT 2ND MESSAGE ON VN FOR
02)    A RETURN CLL IN RE TO STATUS OF CLM...CN
03) 06/14/04  12:43PM PHONED ANCHOR GENERAL AT 858-527-3600-SPOKE W/MANUEL
04)    WHO STATED.CLM IS IN LITIGATIONS AND CAROL IS STILL
05)    THE ADJUSTER HANDLING CLM...CN
06) 08/13/04  12:46PM PHONED ANCHOR GENERAL AT 858-527-3600 EXT 3559-LFT
07)    MESSAGE ON VM FOR A RETURN CLL IN RE TO STATUS OF CLM...CN
08) 08/13/04  01:40PM RECD CLL FROM CAROL W/ANCHOR GEN INS STATING CLM IS
09)    STILL OPEN AND SHE INQUIRED IF WE HAD LIEN. EXPLAINED
10)    WE DO AND SHE REQUESTED COPY BE FAXED TO HER ATTN AT
11)    858-527-3752. DONE...CN
12) 10/05/04  08:43AM FWD DUMMY CHART TO GAYL, PER HER REQUEST...CN
13) 11/01/04  04:37PM LTR WAS RECD FROM ATTY DATED 10/04/04 ASKING US TO
14)    RELEASE THE THIRD PARTY INSURANCE...HER CLIENT WILL BE
15)    FILING BANKRUPTCY AND SHE IS WANTING TO HOLD TRUST CK
16)    UNTIL BANKRUPTCY IS FILED....REVIEWED W/CRAIG AND WE
17)    WILL NOT RELEASE OUR LIEN....ATTY LINDA ROSS CALLED WANTIN
18)    G TO KNOW IF I WAS GOING TO RELEASE OUR LIEN...TOLD HER THAT
19)    WOULD NOT RELEASE OUR LIEN...SHE SAID THERE IS NO WAY
20)    SHE WILL SIGN THE SETTLEMENT RELEASE FOR $15K UNLESS WE
21)    DO AND IF SHE HAS TO SHE WILL INSTRUCT THE BANKRUPTCY
22)    TRUSTEE TO HAVE US RELEASE OUR LIEN...ASKED HER IF HER
2      CLIENT HAD FILED BANKRUPTCY...SHE STATED NOT AT THIS TIME
       BUT IS IN THE PROCESS AND IT SHOULD HAPPEN NEXT WEEK.
25)    ASKED IF HER CLIENT WAS FILING A CHAPTER 13 OR A 7..SHE
26)    HAD NO IDEA BUT WHATEVER IT WAS IT WAS GOING TO RELEASE
27)    HER FROM ALL DEBTS....ATTY DOESN'T UNDERSTAND WHY WE
28)    WOULDN'T RELEASE OUR LIEN AS CHECK WILL BE IN HER TRUST
29)    AND ONCE BANKRUPTCY IS FINAL SHE WILL RELEASE MONEY.
30)    TOLD HER THAT DOESN'T MEAN WE'LL BE PAID...SHE SAID WELL
31)    NO BECAUSE SHE'S GOING TO HAVE TO DO WHATEVER THE
32)    TRUSTEE SAYS,..TOLD HER WE WOULD NOT RELEASE OUR LIEN.
33)    SHE ALSO HAD MENTIONED THAT SHE HAS TO PAY US UNDER
34)    CIVIL CODE SECTION 3045.1 OR WE CAN SUE HER...TOLD HER
35)    IF DOESN'T STATE THAT AND SHE INSISTED THAT IT DID SO I
36)    TOLD HER TO TELL ME EXACTLY WHERE IT STATES THAT...WELL
37)    AFTER ABOUT 10 MINUTES SHE COULDN'T FIND IT AND THEN
38)    SAID IT WAS A PROFESSIONAL SERVICE....RIGHT....GL
39) 12/15/04  10:57AM PHONED CAROL W/THIRD PARTY INS-LFT MESSAGE ON VM FOR
40)    A RETURN CLL RE STATUS OF CLM...CN
41) 02/03/05  02:50PM CHERYL, PLS FOLLOW UP W/THIRD PARTY FOR STATUS...GL
42) 02/04/05  01:21PM PHONED CAROL W/ANCHOR GENERAL AT 858-527-3600 EXT 3559-
43)    LFT 2ND MESSAGE ON VM FOR A RETURN CLL RE STATUS OF
44)    CLM...CN
45) 02/14/05  11:39AM PHONED CAROL W/ANCHOR GENERAL-SHE STATED CLM HAS NOT
46)    SETTLED. SHE STATED PTS ATTY HAD HER FILE B/K SO THEY
47)    WOULDN'T HAVE TO PAY OUR LIEN. EXPLAINED THIS IS NOT
48)    GOING AGAINST HER BUT IS GOING AGAINST THIRD PARTY
49)    INS FOR PYMT. SHE STATED THEY WILL LIST US ON SETTLEMENT
50)    CHK AND POLICY LIMIT IS $15K. SHE STATED THEIR ATTY
51)    HANDLING CASE IS ERIC BROWN AT 916-379-0431 AND HE
```

08:40:03  21 Aug 2006    A C C O U N T   S U M M A R Y    Page  4

52)    COULD ALSO UPDATE ME ON CASE...CN
       8/03/05  11:46AM RECD NOTICE OF CHAPTER 7 BANKRUPTCY CASE WHICH WAS FILED
54)    ON 02/11/05......CASE# 05-50717....MELINDA CAMPBELL..SCANN
55)    ED...WILL LEAVE ACCT ON "LEG" DESK SINCE WE NEED TO
56)    COLLECT FROM THE THIRD PARTY INS.....GL
57) 04/21/05  09:06AM PHONED CAROL W/ANCHOR GENERAL INS AT 858-527-3600 EXT
58)    3559-LFT MESSAGE ON VM FOR A RETURN CLL RE STATUS OF
59)    CLM...CN
60) 05/17/05  09:20AM PHONED CAROL W/ANCHOR GENERAL INS...858-527-3600
61) 05/17/05  09:21AM LFT MESSAGE ON VM FOR A RETURN CLL RE STATUS OF CLM#
62)    22012537...CN
63) 05/18/05  09:51AM RECD CLL FROM CAROL W/ANCHOR GENERAL INS STATING THEY
64)    JUST RESOLVED CASE BUT NO FUNDS HAVE BEEN DISTRIBUTED.
65)    SHE STATED PT LISTED US ON HER B/K AND EXPLAINED THE
66)    B/K HAS NOTHING TO DO W/THIS AS WE ARE GOING AFTER
67)    THIRD PARTY INS. SHE SUGGESTED WE CONTACT THEIR DEFENSE
68)    COUNSEL AT 619-515-0702 AND REQUEST TO SPEAK W/MIKE PROVAN
69)    ...CN
70) 05/18/05  10:27AM RECD CLL FROM ATTY MICHAEL PROVAN WHO IS THE DEFENSE
71)    COUNSEL FOR THIRD PARTY INS. HE STATED THAT HE WAS
72)    INFORMED BY OUR PTS ATTY, THAT THE $15K FROM THE
73)    SETTLEMENT IS EXEMPT AS THEY ARE ALLOWED TO HAVE UP
74)    TO $18K TO BE EXEMPT FROM B/K. SINCE PT HAS NO ASSETS,
75)    SHE USED THE $15K FROM SETTLEMENT. MR PROVAN STATED
76)    HE IS NOT VERY KNOWLEDGEABLE IN THIS AREA AND WOULD
77)    LIKE OUR ATTYS TO CONTACT HIM AS THEY ARE STATING WE
78)    HAVE TO DISCHARGE DUE TO B/K...CN
79) 05/18/05  10:40AM RECD CLL FROM ATTY LINDA ROSS STATING SHE HAD JUST
80)    SPOKEN W/HR PROVAN. SHE STARTED ARGUING FROM THE BEGINNING
       STATING THIS IS ILLEGAL AND WE HAVE TO DISCHARGE AS
2-     WE WERE LISTED ON B/K. TRIED TO EXPLAIN OUR ATTYS
83)    WILL CONTACT MR. PROVAN AND SHE CONTINUED ARGUING STATING
84)    THEY NEED TO CONTACT HER. INFORMED HER I WAS NOT GOING
85)    TO SIT THERE AND ARGUE AND REQUESTED HER PHONE#. SHE
86)    WOULD NOT GIVE IT AS SHE WAS STILL ARGUING STATING WE
87)    ARE THE HOLD UP AND SHE WOULD LIKE TO GET THIS RESOLVED
88)    AND ITS OUR FAULT WE DID NOT SHOW UP FOR THE B/K HEARING.
89)    INFORMED HER I WAS NOT GOING TO ARGUE BUT WE WERE GOING
90)    AFTER THIRD PARTY NOT HER CLIENT. SHE STATED IF SHE
91)    HAS TO SHE WOULD FILE 17200??? REQUESTED HER NUMBER
92)    WHICH SHE STATED WAS 415-563-2400. SHE STILL TRIED TO
93)    ARGUE AND STATED I WOULD HAVE OUR ATTY CONTACT YOU AND
94)    SAID "THANK YOU" AND HUNG UP...CN
95) 05/18/05  10:44AM MS. ROSS ALSO STATED WE NEED TO HAVE SOMEONE CONTACT
96)    HER WHO IS KNOWLEDGEABLE W/B/K...CN
97) 05/20/05  09:21AM RECD LETTER FROM ATTY LINDA ROSS. PER JOSIE, GAYL
98)    WOULD LIKE ME TO CONTACT DAVILL W/HATTON, PETRIE B
99)    STACKLER...PHONED AT 949-474-4222...WAS INFORMED BOTH
00)    GREG HATTON & DAVILL VASQUEZ WERE OUT OF THE OFFC.
01)    LFT MESSAGE ON VM FOR DAVILL TO RETURN MY CLL. SPOKE
02)    W/CRAIG, WILL WAIT UNTIL MONDAY AS ATTY HAS GIVEN
03)    US UNTIL THE 31ST OF MAY TO WITHDRAW OUR LIEN. LETTER
04)    GIVEN TO JOSIE W/COPY ON MY DESK...CN
05) 05/23/05  11:28AM RCD LTR FROM LINDA ROSS, ATTY FOR PT, RE OUR
06)    LIEN....STATES THAT WE CAN NOT ASSERT OUR LIEN AS THIS DEB
07)    T HAS BEEN DISCHARGED BY THE BK COURT...SCANNED AND GAVE
08)    TO CHERYL...........VR
09    /26/05  01:20PM RCD FAX AND CONF SENT TO DAVIL VASQUEZ, ESQ.....

08:40:03  21 Aug 2006     A C C O U N T   S U M M A R Y        Page  5

10X       SCANNED.............VR
          5/26/05  01:26PM RCD COPY OF LTR FROM HATTON, PETRIE & STACKLER
          IN RESPONSE TO THE LTR FROM PTS ATTY....SCANNED AND GAVE
          TO CHERYL............VR
14) 05/31/05  11:20AM LETTER AS STATED ABOVE FILED IN DUMMY CHART...CN
15) 06/02/05  01:40PM LETTER STATED IN LINES 211-214 STATED GAYL LOUNSBURY HAD
16)        ASKED THEM TO RESPOND TO HER LETTER OF MAY 19TH WHICH
18)        THREATENS SUIT AGAINST MEMORIAL IF IT REFUSES TO WITHDRAW
18)        ITS STATUTORY LIEN CLM UNDER THE HOSPITAL LIEN ACT.
19)        YOUR RELIANCE ON B/K LAW AND THE CALIF SUP COURTS RECENT
20)        PARNELL DECISION IS MISPLACED FOR A NUMBER OF REASONS.
21)        1) MEMORIALS HLA CLM IS NOT SUBJECT TO THE JURISDICTION
22)        OF THE B/K COURT.
23)        2) PLAINTIFF CAMPBELL'S RELAINCE ON PARNELL IS MISPLACED
24) 06/02/05  01:42PM AS PT WAS UNINSURED.
25) 06/02/05  01:43PM LETTER FILED IN DUMMY CHART...CN
26) 06/02/05  03:24PM DISCHARGE OF DEBTOR RECEIVED WHICH WAS DATED 05/09/05.....
27)        ...SCANNED..................GL
28) 07/06/05  10:20AM RECD COPY OF LETTER THAT ATTY DAVIL VASQUEZ HAD FWD
29)        TO ATTY MICHAEL PROVAN W/PROVAN, CLUNE & BOBROFF. LTTR
30)        STATED THIS WS TO CONFIRM THE CONVERSATION THEY HAD
31)        WHERE MR. PROVAN HAD STATED CASE HAD NOT SETTLED. DUE
32)        TO THE SMALL AMOUNT OF MONEY AT ISSUE, MR. VASQUEZ
33)        STATED THEY WOULD HAVE NO OBJECTION TO MS. ROSS EITHER
34)        PROPOSING AN EQUITABLE SETTLEMENT OF THE LIEN, OR
35)        FURNISHING HIS OFFC W/POINTS & AUTHORITIES FOR THE
36)        PROPOSITION THAT THEIR CLIENT'S CLM AGAINS HIS CLIENT
37)        UNDER THE HOSPITAL LIEN ACT HAS BEEN NULLIFIED BY VIRTUE
38)        OF MS. CAMPBELLS B/K. LETTER FILED IN DUMMY CHART...CN
13    M16-05 · 01:57PM DESK CHANGED FROM  LEG  to desk AT1  port=63
.. 2/08/05  10:41AM COPY OF LTR RECD FROM ATTY GREG HATTON THAT WAS FORWARDED
=19)       TO ATTY LINDA ROSS.....SCANNED..GAVE TO CHERYL...GL
42) 12/09/05  10:27AM RECD LETTER AS STATED ABOVE...FILED IN DUMMY CHART...CN

------------------ N O T I C E   H I S T O R Y --------------------

| NBR | DATE | WHO | SCREEN | DESCRIPTION OF NOTICE/DOCUMENT |
|-----|------|-----|--------|-------------------------------|
| 1 | 09/12/02 | Debtor | Auto (CC.RPT) | "V99" FIRST NOTICE |
| 2 | 09/23/02 | Debtor | Auto (CC.RPT) | "P01" SECOND AUTOMATIC NOTICE |
| 3 | 10/02/02 | Debtor | Auto (CC.RPT) | "198" FINAL AUTOMATIC NOTICE |

M013942503  CAMBELL, MELINDA

```
PT: M013942503                      GUAR: 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
AMBELL, MELINDA                     CAMBELL, MELINDA
1465 MERRY LANE                     1465 MERRY LANE
SAN JOSE, CA 95128                  SAN JOSE, CA 95128
408 374 1750/408 267 1900           408 374 1750 (H)


42 P          ADM/SER:   07/12/02   UR CHG:        0 4SP        3850.65 07/12/02
PROMPT        DISCHARGE: 07/13/02   AR CHG:   3850.65 4MVA             0
BD 07/10/06   LST STMT:  08/16/02   BALANCE:  3850.65 SP             0
LIEN
```

| PROCEDURE | DESCRIPTION | COUNT | AMOUNT |
|-----------|-------------|-------|--------|
| 40500432 | S STRL TRAY LACERTN DISP | 1 | 442.30 |
| 40540742 | S ORTHO SLING ARM | 1 | 112.60 |
| 41402215 | XR Spine Cerv 2-3V | 1 | 1029.90 |
| 41406445 | XR Elbow 2V | 1 | 600.10 |
| 41406448 | XR Shoulder 2V Or More | 1 | 535.40 |
| 42504063 | ED LEVEL 2 | 1 | 291.50 |
| 42307205 | INJECTION IM/SQ EA | 2 | 121.00 |
| 44610418 | NA CL 0.9% 1000ML | 1 | 204.05 |
| 75053041 | VX TETANUS DIPHTHERIA TOX | 1 | 157.60 |
| 75062349 | MEPERIDINE 100MG IJ | 1 | 162.45 |
| 75065102 | PROMETHAZINE 50MG INJ | 1 | 193.75 |
|  |  |  | ---------- |
|  |  |  | 3850.65 |

Exhibit B

Exhibit C

08/23/2006   12:32   MHA CREDIT & COLLECTIONS → 19164446969          NO.255      P04

Patient inquiry                                                        UKEP.A

| Patient: CAMPBELL,MELINDA | MRN: 351413442    FSC: |
| | SSN: 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 HB: GLD |
| | DOB: 06/28/1948 |

B-Benefit                    M-MHA Eligibility

CAMPBELL,MELINDA is not enrolled in an HMO, or you are not authorized to
access any such HMOs

CAMBELL,MELINDA
M018942503
PHYSICIAN, OUT
COASTAL MEDICA                         10/24/03        F   38
MRN:     M629203                                       REG ER
                                                       07/12/02
                                                       46P  4MVA

# Exhibit D

## SUTTER HEALTH, CENTRAL VALLEY SERVICE AREA
## CREDIT & COLLECTIONS DEPARTMENT
## 1741 COFFEE RD, SUITE #1F
## MODESTO, CALIFORNIA 95355
### (209) 491-2293         FAX: (209) 491-0783

### NOTICE OF HOSPITAL LIEN - FOR EMERGENCY SERVICES

To:    Melinda Cambell, Anchor General Insurance and Richard Palenchar, her attorney:

Notice is hereby given that the undersigned, MEMORIAL HOSPITALS ASSOCIATION, a California Corporation, has furnished emergency and on-going medical or other services of a reasonable value to Melinda Cambell, who was injured on or about July 12, 2002 as a result of an accident. Memorial Hospitals Association, a California Corporation, claims a lien in accordance with the provisions of Section 3045.1 of the Civil Code of the State of California on any damages, which may be recovered.

The following information is provided you in accordance with the provisions of Section 3045.3 of the Civil Code of the State of California.

1.  Melinda Cambell, 1465 Merry Lane, San Jose, CA 95128.

2.  The accident occurred on or about July 12, 2002.

3.  Memorial Hospitals Association, a California Corporation, 1700 Coffee Rd., Modesto, CA 95355, Provided emergency and on-going or other medical services.

4.  The amount claimed as reasonable and necessary charges for treatment, care, and maintenance of the injured person in the hospital on July 12, 2002 through July 13, 2002 is $3850.35.

5.  To the best of the knowledge of the undersigned, the names and addresses of all persons, firms, and corporations claimed to be liable for damages arising out of the injuries sustained in said accident are as follows:

| NAME | ADDRESS |
|------|---------|
| Anchor General Insurance | P O Box 509020 |
| Claim # 22012537 | San Diego, CA 92150-9020 |

Dated:  October 22, 2002

Gary Lounsbury, Central Valley Region
Credit & Collections Office Manager
1741 Coffee Rd., Suite 1F, Modesto CA 95355
(209) 491-2293

ENCLOSURES

05/25/2005    08:52    MHA CREDIT & COLLECTIONS → 19494741244    NO.444    004

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Melinda Cambell
1465 Merry Lane
San Jose, CA
95128

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
☐ Agent
☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery
Melinda Cambell

D. Is delivery address different from item 1?    ☐ Yes
If YES, enter delivery address below:    ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

---

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Anchor General Ins
PO Box 509020
San Diego, CA
92150-9020

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Art Redman    ☑ Agent
☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery
ART FREDMAN    10/26/02

D. Is delivery address different from item 1?    ☐ Yes
If YES, enter delivery address below:    ☐ No

OCT 26 2002

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

---

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Richard Blencher
2204 Union Street
San Francisco, CA
94123

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Veldc Clk    ☐ Agent
☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery
10/28/02

D. Is delivery address different from item 1?    ☐ Yes
If YES, enter delivery address below:    ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7002 1000 0005 1401 8373

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1035

Exhibit E

05/23/2005    15:09    MHA CREDIT & COLLECTIONS → 19494741244    NO.432    D02
19 05 05:27p    Law Offices    41593:.981    P.1

LINDA ROSS
SEM GHAFOURI

LAW OFFICES OF LINDA ROSS
ATTORNEYS AT LAW
2204 UNION STREET
SAN FRANCISCO, CALIFORNIA 94123
TELEPHONE (415) 563-3400
FACSIMILE (415) 931-9981
linda@lindarosslaw.com

May 19, 2005

Gayl Loundbury
Sutter Health, Central Valley Service Area
Credit & Collections Office Manager
1741 Coffee Road, Suite 1F
Modesto, Ca 95355-2807
VIA FACSIMILE (209)491-0783

Re: *Campbell v. Espinoza*
Account No: M013942503
Dear Ms.Loundbury :

I am writing to advise you that pursuant to the discharge in bankruptcy of Ms.
Campbell's debt to Memorial Medical Center, you no longer have the right to assert a
lien in pursuant to the Hospital Lien Act (HLA) in Ms. Campbell's personal injury action.
I have been advised that in spite of the discharge of the debt by the Bankruptcy Court, the
hospital is now taking the position it will be proceeding against the third party.  Your
position is contrary to law.  Pursuant to the holding in Parnell v. Adventist Health
System/West et al. (2005) 35 Ca. 4th 595, "a lien under the HLA may not attach absent
an underlying debt."  At the moment Ms. Campbell's debt was discharged, so were the
hospital's lien rights against her as well as the derivative rights against the third party.
At this time I request that you to contact your attorneys regarding your position.  If we do
not receive notice that the lien has been withdrawn by May 31, 2005, a lawsuit will be
filed against the hospital for unfair business practices and other related remedies.

Very truly yours,
Linda Ross
Linda Ross

Cc: Michael Provan (619) 515-0710

Exhibit F

# HATTON, PETRIE & STACKLER APC

Gregory M. Hatton
Arthur R. Petrie, II
Bruce V. Rorty
David R. Vasquez
Michael J. Wright

20311 Birch Street
Suite 100
Newport Beach, California 92660
(949) 474-4222
Fax (949) 474-1244

OF COUNSEL:
Ronald E. Stackler
Pamela J. Anderson

May 25, 2005

## VIA FAX & FIRST CLASS MAIL

Linda Ross, Esq.
LAW OFFICES OF LINDA ROSS
2204 Union Street
San Francisco CA 94123

  RE: *Campbell v. Espinoza*
     Acct. No. M013942503

Dear Ms. Ross:

  Gayl Lounsbury of Memorial Hospitals Association asked us to respond to your letter of May 19th, which threatens suit against Memorial if it refuses to withdraw its statutory lien claim under the Hospital Lien Act [CC §§3045.1 through 3045.6, "HLA".]

  Your reliance on Bankruptcy Law and the California Supreme Court's recent *Parnell* decision is misplaced for a number of reasons. We discuss each below:

  1. <u>Memorial's HLA Claim Is Not Subject To The Jurisdiction Of The Bankruptcy Court.</u>

  *Parnell* and numerous other decisions (including the Supreme Court opinion in *Mercy Hospital v. Farmers*) recognize that Memorial's statutory right of action under the HLA is *against the responsible third party tortfeasor, and/or his/her liability insurer.* Similarly, the injured plaintiff's common law right of action is *against the responsible third party tortfeasor* and, upon entry of judgment in favor of the injured plaintiff, *against the tortfeasor's liability carrier.*

  Upon bankruptcy of the injured plaintiff, the injured plaintiff's claim against the responsible tortfeasor/insurer transfers under Federal Law to the Bankruptcy Trustee (in this case Suzanne Decker of San Leandro, California.)

  In contrast, the hospital's statutory HLA claim against the responsible tortfeasor/insurer stays with the hospital and remains viable. This result neither implicates nor offends Federal

---

108 Wilmot Road, Suite 330
Deerfield, Illinois 60015
(847) 945-2888

6786 Shearwater
Malibu, California 90265
(310) 589-0902

Linda Ross, Esq.
May 25, 2005
Page 2

Bankruptcy Law.  As both *Mercy Hospital* and *Parnell* point out, *the HLA creates no right of action against the injured patient*.  Hence, under the facts and circumstances here, there is nothing relevant to discharge.

When it comes to an injured patient's bankruptcy, *an HLA claim does not satisfy the federal criteria for dischargeability because an HLA claim is not a debt owed by the injured patient*.

Moreover, there are jurisdictional defects here as well.  An injured patient's filing of a Chapter 7 action does not empower the bankruptcy court to discharge the debts owed by non-debtor third parties, such as the tortfeasor and liability insurer who are statutorily obligated to pay Memorial's reasonable and necessary charges in this case.

2.    **Plaintiff Campbell's Reliance On *Parnell* Is Misplaced:**

*Parnell* permits enforcement of hospital lien whenever: 1) the patient has no health insurance; or 2) the patient's health insurer has no contract with the hospital; or 3) the patient's health insurer's contract with the hospital permits statutory lien enforcement.  Here, the patient was uninsured.  Under *Parnell*, Memorial's lien rights are therefore equal to the statutory maximum (a.k.a. "reasonable and necessary" charges).

The fact that plaintiff Campbell's personal debts may have been discharged in bankruptcy does not, in and of itself, trigger the operation of *Parnell*, for several reasons:

1)    In *Parnell*, the Supreme Court found that the contract between the hospital and the patient's health insurer resulted in debt elimination that inures to the benefit of the responsible tortfeasor/liability insurer.  Here, there is no contract between the hospital and the patients' health insurer.  The patient was uninsured.

2)    In *Parnell*, the Supreme Court held that the *hospital's contract with the patient's insurer* was an agreement by the hospital to accept less than billed charges for treating injuries caused by third parties.  The Supreme Court emphasized however, that the hospital was "free to contract" to collect all reasonable and necessary charges for the treatment of injuries caused by third parties.  In Mr. Parnell's *individual case*, the Supreme Court found that there was no such agreement regarding charges for injury treatments.

3)    The patient has no obligation to the hospital under the Hospital Lien Act.  Rather, the third party tortfeasor and his/her liability insurer are obligated to pay the hospital bill.  Unless the third party's *insurer* goes bankrupt, a bankruptcy is irrelevant to a claim under the HLA.  Based on the available information, the third party insurer in this case has not filed for bankruptcy protection, and is therefore not subject to any stay or debt relief which may have been afforded patient Campbell.

Linda Ross, Esq.
May 25, 2005
Page 3


4)  In essence, *Parnell* holds that a hospital that contracts *in advance of treatment* with a
    health insurer to accept a discounted rate for the treatment of injuries caused by third
    parties may not collect more from a third party. *Parnell* does not stand for the bald
    proposition, "No patient debt, no statutory lien."

    By copy of this letter to the Bankruptcy Trustee and to the third party liability insurer
responsible to pay Memorial's statutory lien claim, Memorial respectfully advises the trustee and
the carrier of its intent to pursue *the third party's liability carrier* for full payment of the lien.


                    Very truly yours,

                    HATTON, PETRIE & STACKLER LLP


                    DAVIL R. VASQUEZ, ESQ. for
                    GREGORY M. HATTON, ESQ.


GMH:km

cc:    Suzanne Decker
       1511 Callan Avenue, suite 305
       San Leandro CA 94577

       **USBC Case No. 05-50717ASW7**
       (Melinda Campbell, Chapter 7)

cc:    Anchor General Insurance
       P.O. Box 509020
       San Diego CA 92150-9020

       **Claim No. 22012537**

cc:    Gayl Lounsbury/Sutter Health

Exhibit G

**HATTON, PETRIE & STACKLER** APC

20311 Birch Street
Suite 100
Newport Beach, California 92660
(949) 474-4222
Fax (949) 474-1244

Gregory M. Hatton
Arthur R. Petrie, II
Davil R. Vasquez
Michael J. Wright

OF COUNSEL:
Ronald E. Stackler
Bruce V. Rorty
Pamela J. Anderson

May 31, 2005

Michael Provan, Esq.
PROVAN, CLUNE & Bobroff
600 B Street, suite 1960
San Diego CA 92101

  RE: *Campbell v. Espinoza*
    Acct. No. M013942503

Dear Mr. Provan:

  Thank you for taking time to speak with me this afternoon. This letter will serve to confirm that your client, Espinoza, has *not* yet settled with the plaintiff, Campbell. Thank you for this clarification.

  As we discussed, in light of the relatively small amount of money at issue we would have no objection to Ms. Ross either proposing an equitable settlement of the lien, or furnishing my office with points and authorities for the proposition that our client's claim against your client under the Hospital Lien Act has been nullified by virtue of Ms. Campbell's bankruptcy.

    Very truly yours,

    HATTON, PETRIE & STACKLER LLP

    DAVIL R. VASQUEZ, ESQ.

cc: Suzanne Decker
  1511 Callan Avenue, suite 305
  San Leandro CA 94577

  **USBC Case No. 05-50717ASW7**
  (Melinda Campbell, Chapter 7)

---

108 Wilmot Road, Suite 330
Deerfield, Illinois 60015
(847) 945-2888

6786 Shearwater
Malibu, California 90265
(310) 589-0902

**HATTON, PETRIE & STACKLER APC**

Gregory M. Hatton
Arthur R. Petrie, II
Davil R. Vasquez
Michael J. Wright

20311 Birch Street
Suite 100
Newport Beach, California 92660
(949) 474-4222
Fax (949) 474-1244

OF COUNSEL:
Ronald B. Stackler
Bruce V. Rorty
Pamela J. Anderson

June 7, 2005

Linda Ross, Esq.
LAW OFFICES OF LINDA ROSS
2204 Union Street
San Francisco CA 94123

     RE:   *Campbell v. Espinoza*
           Acct. No. M013942503

Dear Ms. Ross:

     I have not heard from you since our last telephone conversation on June 1st, at which time you offered to send a letter points and authorities outlining legal support for your position. If that letter is forthcoming, I trust it will cover *new* territory, rather than re-hashing the arguments we discussed at length on the 1st. Alternatively, I would respectfully suggest that you, your client and Anchor General propose a *reasonable* affirmative settlement offer you believe my client should be willing to accept from the third party payor. Please do not suggest some nuisance value amount.

     The original lien amount was $3,850.65, dating back to July, 2002. Since then $1,117.97 in interest has accrued, bringing the claim total to **$4,968.62.**

     I look forward to hearing from you and/or the third party carrier, which is the subject of our claim (as opposed to your client). Thank you very much.

     Very truly yours,

     HATTON, PETRIE & STACKLER LLP

     DAVIL R. VASQUEZ, ESQ.

cc:    Suzanne Decker
       1511 Callan Avenue, suite 305
       San Leandro CA 94577

108 Wilmot Road, Suite 330
Deerfield, Illinois 60015
(847) 945-2888

6786 Shearwater
Malibu, California 90265
(310) 589-0902

Linda Ross, Esq.
June 7, 2005
Page 2


        **USBC Case No. 05-50717ASW7**
        (Melinda Campbell, Chapter 7)

cc:     Anchor General Insurance
        P.O. Box 509020
        San Diego CA 92150-9020

        **Claim No. 22012537**

cc:     Michael Provan, Esq.
        PROVAN, CLUNE & Bobroff
        600 B Street, suite 1960
        San Diego CA 92101


cc:     Gayl Lounsbury/Sutter Health

Michael Provan, Esq.
May 31, 2005
Page 2


cc:    Gayl Lounsbury/Sutter Health

cc:    Linda Ross, Esq.
       LAW OFFICES OF LINDA ROSS
       2204 Union Street
       San Francisco CA 94123



# HATTON, PETRIE & STACKLER APC

20281 Birch Street
Suite 100
Newport Beach, California 92660
(949) 474-4222
Fax (949) 474-1244

Gregory M. Hatton
Arthur R. Petrie, II
Davil R. Vasquez
Michael J. Wright

OF COUNSEL:
Ronald E. Stackler

November 30, 2005

Linda Ross, Esq.
LAW OFFICES OF LINDA ROSS
2204 Union Street
San Francisco CA 94123

     RE: *Campbell v. Espinoza*
         Acct. No. M013942503

Dear Ms. Ross:

I have not heard from you, or from any of the other recipients of my June 7, 2005 letter. On May 31, 2005, Mr. Provan confirmed that a settlement check on the underlying personal injury case had *not* been tendered. In fact, he advised me that case had *not* settled. This was an important representation because my client will have one year from the date of its notice of any settlement around the lien within which to file suit.

Accordingly, and at this time, I would ask you and the other recipients of this letter (identified below) to furnish a brief written status of the case. Has a settlement check been paid to, or on behalf of, plaintiff Campbell? If so, when?

Once again, my preference would be that all parties work towards a mutually acceptable resolution of this claim. The amount of money at issue does not justify litigation.

Your timely response and professionalism will be appreciated.

**Please note the change in our mailing address.** Thank you.

       Very truly yours,

       HATTON, PETRIE & STACKLER LLP

       DAVIL R. VASQUEZ, ESQ.

///

108 Wilmot Road, Suite 330
Deerfield, Illinois 60015
(847) 945-2888

6786 Shearwater
Malibu, California 90265
(310) 589-0902

Linda Ross, Esq.
November 30, 2005
Page 2

cc:  Suzanne Decker
     1511 Callan Avenue, suite 305
     San Leandro CA 94577

     USBC Case No. 05-50717ASW7
     (Melinda Campbell, Chapter 7)

     Anchor General Insurance
     P.O. Box 509020
     San Diego CA 92150-9020

     Claim No. 22012537

     Michael Provan, Esq.
     PROVAN, CLUNE, & BOBROFF
     600 B Street, suite 1960
     San Diego CA 92101

cc:  Gayl Lounsbury/Sutter Health



Linda Ross, Esq.
November 30, 2005
Page 2


cc:    Suzanne Decker
       1511 Callan Avenue, suite 305
       San Leandro CA 94577

       **USBC Case No. 05-50717ASW7**
       (Melinda Campbell, Chapter 7)

cc:    Anchor General Insurance
       P.O. Box 509020
       San Diego CA 92150-9020

       **Claim No. 22012537**

cc:    Michael Provan, Esq.
       PROVAN, CLUNE & BOBROFF
       600 B Street, suite 1960
       San Diego CA 92101


cc:    Gayl Lounsbury/Sutter Health

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

. I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 20281 Birch Street, Suite 100, Newport Beach, CA 92660

On the date indicated below, I served the foregoing document described as **LETTER OF November 30, 2005** on interested parties in this action by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

Linda Ross, Esq.
LAW OFFICES OF LINDA ROSS
2204 Union Street
San Francisco, CA 94123

Suzanne Decker
1511 Callan Avenue, Suite 305
San Leandro, CA 94577

Anchor General Insurance
P.O. Box 509020
San Diego, CA 92150/9020

Michael Provan, Esq.
PROVAN, CLUNE & BOBROFF
600 B Street, Suite 1960
San Diego, CA 92101

[X]　(BY MAIL)
[ ] I deposited such envelope in the mail at Newport Beach, California. The envelope was mailed with postage thereon fully prepaid.

[X]　As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Newport Beach, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than on day after date of deposit for mailing in affidavit.

[ ]　(BY PERSONAL SERVICE) I delivered such envelope by hand to the addressee. Executed on _____ , at Newport Beach, California.

[ ]　(BY FACSIMILE TRANSMITTAL) I transmitted the above document via facsimile to the facsimile numbers of the addressees:

[X]　(STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct..

Executed on November 30, 2005, at Newport Beach, California.

Desiree Palmer

-1-
PROOF OF SERVICE

Exhibit H





Michael J. Provan
John O. Clune
Eric R. Brown, of Counsel

December 6, 2005

Davil R. Vasquez, Esquire
HATTON, PETRIE & STACKLER
20281 Birch Street, Suite 100
Newport Beach, CA 92660

     Re:    <u>Campbell v. Espinoza</u>

Dear Mr. Vasquez:

     Please be advised that I have received your letter dated November 30, 2005 regarding the above-entitled matter. In light of the pending trial date, this case was settled for a total payment of the policy limits of $15,000. Settlement checks totaling $15,000 were delivered to Ms. Ross in September, 2005.

     However, the assertion of the lien on behalf of Sutter Health was duly noted and protected. Enclosed please find copies of the settlement checks which were sent to Ms. Ross. As you will note, a settlement check in the amount of $4,968.62 was made payable to Melinda Campbell, Linda Ross, Esquire, and Sutter Health dba Memorial Hospital Association. It is my understanding that Ms. Ross is holding this check pending the resolution of a lawsuit against Sutter Health. In other words, the funds represented by this settlement check have not been dispersed, and will not be dispersed until a resolution of the issue has been achieved. Further, the amount of the settlement check not only protects the initial lien asserted, but also the amount of interest you claim has accrued on the principal. I will not comment herein on the propriety of your claim for interest on the amount of the asserted lien. In any event, the assertion of your lien has been honored and protected.

     Finally, I would suggest that you contact either Ms. Ross or the law firm handling the defense of Sutter Health in the unfair practices lawsuit filed against it. Once I receive information that the lawsuit, or at least this issue, has been resolved, I will gladly make arrangements with Anchor General Insurance Company to reissue the appropriate settlement checks totaling $4,968.62, as necessary.

❑ SAN DIEGO
600 B Street, Suite 1960
San Diego, CA 92101
(619) 234-3908 • FAX (619) 515-0710

❑ LOS ANGELES
8929 S. Sepulveda Blvd., Suite 500
Los Angeles, CA 90045
(310) 645-4411 • FAX (310) 861-5000

❑ SACRAMENTO
8801 Folsom Blvd., Suite 285
Sacramento, CA 95826
(916) 379-0431 • FAX (916) 848-3652

Re: <u>Campbell v. Espinoza</u>
December 6, 2005
Page 2


If you should have any questions or comments, please do not hesitate to contact me.

Very truly yours,

Michael J. Provan
THE PROVAN CLUNE LAW FIRM

MJP/alc
Enclosure
cc: Linda Ross, Esq.

Melinda Campbell,
Linda Ros Esq , Sutterhealth
dba memorial Hospital Assoc

Chec  Number:    55456
  Check Date:    Sep 12, 2005

Check Amount: $4,968.62

| Description | Amount Paid |
|---|---|
| full &f inal bi settlement  (CL) X | 4,968.62 |

Claim Number / Loss Date / Tax ID: 22012537/7/12/02/942982087

---

THIS CHECK IS VOID WITHOUT A COLORED BACKGROUND PLUS A KNIGHT , & FINGERPRINT WATERMARK ON THE BACK - HOLD AT AN ANGLE TO VIEW ARTIFICIAL WATERMARKS

**Anchor General Insurance Company**
**Auto Claims Account**
P.O. Box 509020
San Diego, CA 92150-9020

Bank of America
San Diego Regional Commercial
450 B Street San Diego, CA 92101

**55456**

16-66
1220

|  | DATE | AMOUNT |
|---|---|---|
|  | Sep 12, 2005 | *******$4,968.62 |

Four Thousand Nine Hundred Sixty-Eight and 62/100 Dollars

PAY
TO THE
ORDER
OF

Melinda Campbell,
Linda Ros Esq , Sutterhealth
dba memorial Hospital Assoc

Claim Number / Loss Date / Tax ID: 22012537/7/12/02/942982087

TWO SIGNATURES REQUIRED FOR CHECKS OVER $1,000

SIGNATURE HAS A COLORED BACKGROUND - BORDER CONTAINS MICROPRINTING

⑈055456⑈ ⑆122000661⑆ 14590⑈0387⑈

ABSENCE OF U.S. PATENT NUMBERS IN THE LEFT MARGIN INDICATES THAT THIS CHECK IS FRAUDULENT. THIS AREA IS PRINTED WITH A PINK HEAT SENSITIVE INK THAT WILL DISAPPEAR WHEN BLOWING OR RUBBING

Melinda Campbell
& Linda Ross Esquire

Chk. Number:  55455
Check Date:  Sep 12, 2005

Check Amount:  $10,031.38

| Description | Amount Paid |
|---|---|
| full &f inal bis ettlement (CL) X | 10,031.38 |

Claim Number / Loss Date / Tax ID: 22012537/7/12/02/942982087

THIS CHECK IS VOID WITHOUT A COLORED BACKGROUND PLUS A KNIGHT & FINGERPRINT WATERMARK ON THE BACK - HOLD AT AN ANGLE TO VIEW ARTIFICIAL WATERMARKS

**Anchor General Insurance Company**
**Auto Claims Account**
P.O. Box 509020
San Diego, CA 92150-9020

Bank of America,
San Diego Regional Commercial
450 B Street San Diego, CA 92101

55455

16-66
1220

| DATE | AMOUNT |
|---|---|
| Sep 12, 2005 | ******$10,031.38 |

Ten Thousand Thirty-One and 38/100 Dollars.

PAY
THE
ORDER
OF

Melinda Campbell
& Linda Ross Esquire

Claim Number / Loss Date / Tax ID: 22012537/7/12/02/942982087

TWO SIGNATURES REQUIRED FOR CHECKS OVER $1,000
SIGNATURE HAS A COLORED BACKGROUND - BORDER CONTAINS MICROPRINTING

⑈055455⑈  ⑆122000661⑆  14590⑈03871⑈

BSENCE OF U.S. PATENT NUMBERS IN THE LEFT MARGIN INDICATES THAT THIS CHECK IS FRAUDULENT. THIS AREA IS PRINTED WITH A PINK HEAT SENSITIVE INK THAT WILL DISAPPEAR WHEN BLOWING OR RUBBING

# Exhibit I

Dec 06 05 12:04p    Law Offices            4159319981            p.1

**LINDA ROSS**
**SEP: GRAFOURI**

**LAW OFFICES OF LINDA ROSS**
**ATTORNEYS AT LAW**
2204 Union Street
San Francisco, California 94123

Telephone (415) 563-2400
Facsimile (415) 931-9981

# FAX COVER SHEET

To:      Davil Vasquez
Of:      Hatton, Petrie & Stackler
Fax:     949-474-1244

To:      Michael Provan
Of:      Provan and Associates
Fax:     619-515-0710

From:    Linda Ross
Re:      Campbell v. Espinoza
Date:    December 6, 2005

DOCUMENTS:  Letter, Copy of Check

COMMENTS:

This facsimile transmission totals _3_ page(s) including this cover sheet.  Please contact Jessi at
this office if there should be any problems with this transmission.

*The information contained in this facsimile message is information protected by attorney-client and/or the attorney-work
product privilege. It is intended only for the use of the individual named above and the privileges are not waived by virtue of
this having been sent by facsimile. If the person actually receiving this facsimile or any other reader of the facsimile is not the
named recipient or the employee or agent responsible to deliver it to the named recipient, any use, dissemination, distribution,
or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately
notify us by telephone and return the original message to us at the above address via U.S. Postal Service.*

Dec 06 05 12:05p    Law Offices                4159319981                    p.2

LINDA ROSS
SEPI GHAFOURI

LAW OFFICES OF LINDA ROSS
ATTORNEYS AT LAW
2204 UNION STREET
SAN FRANCISCO, CALIFORNIA 94123
TELEPHONE (415) 563-2400
FACSIMILE (415) 931-9981
linda@lindarosslaw.com

December 6, 2005

Davil Vasquez, Esq.              Via Facsimile and US Mail
Hatton, Petrie, & Stackler APC
20281 Birch Street, Ste. 100
Newport Beach, CA 92660
Fax: 949-474-1244

        Re: *Campbell v. Espinoza*
            Account No: M013942503

Dear Mr. Vasquez:

        I am in receipt of your letter dated November 30, 2005. I have enclosed a copy of
the check that I am holding pending the outcome of the class action lawsuit, which has
been filed in this matter. I suggest you contact John Barnes of McDonough, Holland &
Allen the attorneys of record for Sutter Health in this matter.

                                Very truly yours,

                                Linda Ross
                                Linda Ross

Cc: Michael Provan (619) 515-0710

Dec 06 05 12:05p     Law Offices                4159319981              p.3

Melinda Campbell,                          Check Number:   55456
Linda Ros Esq , Sutterhealth               Check Date:  Sep 12, 2005
dba memorial Hospital Assoc
                                           Check Amount: $4,968.62
                                                            Amount Paid
        Description
        full &f inal bi settlement  (CL) X                  4,968.62

Claim Number / Loss Date / Tax ID: 22012537/7/12/02/942982087

---

**Anchor General Insurance Company**            Bank of America                        **55456**
Auto Claims Account                             San Diego Regional Commercial           16-66
P.O. Box 509020                                 450 B Street San Diego, CA 92101        1220
San Diego, CA 92150-9020

                                                          DATE              AMOUNT
                                                     Sep 12, 2005      *******$4,968.62

    Four Thousand Nine Hundred Sixty-Eight and 62/100 Dollars

PAY
  TO THE      Melinda Campbell,
  ORDER       Linda Ros Esq , Sutterhealth
  OF          dba memorial Hospital Assoc

Claim Number / Loss Date / Tax ID: 22012537/7/12/02/942982087

⑈055456⑈ ⑆122000661⑆ 14590⑈03871⑈

ABSENCE OF U.S. PATENT NUMBERS IN THE LEFT MARGIN INDICATES THAT THIS CHECK IS FRAUDULENT. THIS AREA IS PRINTED WITH A PINK HEAT SENSITIVE INK THAT WILL DISAPPEAR WHEN BLOWING OR RUBBING

**72**

1  McDONOUGH HOLLAND & ALLEN PC
   Attorneys at Law
2  RICHARD E. BRANDT (44893)
   MARCIA L. AUGSBURGER (145686)
3  JOHN C.J. BARNES (216694)
   555 Capitol Mall, 9th Floor
4  Sacramento, CA 95814
   Phone: 916.444.3900
5  Fax:    916.444.8989

6  Attorneys for Defendant Sutter Health

7

8                  SUPERIOR COURT OF CALIFORNIA

9                      COUNTY OF ALAMEDA

10  MELINDA CAMPBELL, on her own behalf,     )  Case No. RG05221764
    and on behalf of all others similarly situated,  )
11                                            )  **SUTTER HEALTH'S SUBMISSION OF**
                    Plaintiff,                )  **NON-CALIFORNIA AUTHORITY IN**
12                                            )  **OPPOSITION TO PLAINTIFF'S MOTION**
         v.                                   )  **FOR LEAVE TO FILE SECOND**
13                                            )  **AMENDED COMPLAINT**
    SUTTER HEALTH, and DOES 1 through 24,     )
14  inclusive,                                )  Date:  June 6, 2007
                                              )  Time:  2:00 p.m.
15                  Defendants..              )  Place: Department 22
                                              )  Judge: The Hon. Bonnie Lewman Sabraw
16                                            )
                                              )
17

18      Pursuant to California Rules of Court 3.1113(j), Sutter Health hereby submits copies of the

19  following non-California authorities for the Court's consideration:

20      **Exhibit A:** 11 U.S.C. § 524(a).

21      **Exhibit B:** *Clarendon Group Ltd. v. Smith Laboratories, Inc.*, 741 F.Supp. 1149 (D. Cal.

22  1990).

23      **Exhibit C:** *In re Dickinson*, 24 B.R. 547 (S.D. Cal. 1982).

24  DATED: May 29, 2007

25                                  McDONOUGH HOLLAND & ALLEN PC
                                    Attorneys at Law
26

27                                  By: *Marcia Augsburger*
                                        MARCIA L. AUGSBURGER
28                                  Attorneys for Defendant Sutter Health

ENDORSED
FILED
ALAMEDA COUNTY

MAY 2 9 2007

CLERK OF THE SUPERIOR COURT
By Mehak Begum, Deputy

MHA
McDonough Holland & Allen PC
Attorneys at Law

                              1

Exhibit A

LEXSTAT 11 USCA 524(A)(2)

UNITED STATES CODE SERVICE
Copyright © 2007 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

*** CURRENT THROUGH P.L. 110-27, APPROVED 5/25/2007 ***

TITLE 11. BANKRUPTCY
CHAPTER 5. CREDITORS, THE DEBTOR, AND THE ESTATE
SUBCHAPTER II. DEBTOR'S DUTIES AND BENEFITS

**Go to Code Archive Directory for this Jurisdiction**

*11 USCS § 524*

Review expert commentary from The National Institute for Trial Advocacy following 11 USCS § 105 (relating to the power of the court).

§ 524. Effect of discharge

(a) A discharge in a case under this *title [11 USCS §§ 101* et seq.]--

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this *title [11 USCS § 727, 944, 1141, 1228,* or *1328]*, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this *title [11 USCS § 541(a)(2)]* that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1) [*11 USCS § 1228(a)(1),* or *1328(a)(1)]*, or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this *title [11 USCS §§ 523(c)* and *523(d)]*, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

(b) Subsection (a)(3) of this section does not apply if--

(1) (A) the debtor's spouse is a debtor in a case under this title, or a bankrupt or a debtor in a case under the Bankruptcy Act, commenced within six years of the date of the filing of the petition in the case concerning the debtor; and

(B) the court does not grant the debtor's spouse a discharge in such case concerning the debtor's spouse; or

(2) (A) the court would not grant the debtor's spouse a discharge in a case under chapter 7 of this *title [11 USCS §§ 701* et seq.] concerning such spouse commenced on the date of the filing of the petition in the case concerning the debtor; and

(B) a determination that the court would not so grant such discharge is made by the bankruptcy court within the time and in the manner provided for a determination under section 727 of this *title [11 USCS § 727]* of whether a debtor is granted a discharge.

Exhibit B

LEXSEE 741 F. SUPP. 1449



Cited
As of: May 28, 2007

CLARENDON GROUP, LTD. and JOEL ROCHA GARZA, Plaintiffs, v. SMITH
LABORATORIES, INC., Defendant

Civil No. 89-1366-G(CM)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
CALIFORNIA

741 F. Supp. 1449; 1990 U.S. Dist. LEXIS 9383; Fed. Sec. L. Rep. (CCH) P95,349

May 23, 1990, Decided
May 23, 1990, Filed

COUNSEL:

[**1] For Plaintiffs: Donald F. Luke, Rogers &
Wells, New York, New York, Jeffrey Isaacs, Procopio,
Cory, Hargreaves and Savitch, San Diego, California.

For Defendants: Mauricio Flores, Pillsbury, Madison
& Sutro, La Jolla, California.

JUDGES:

Earl B. Gilliam, United States District Judge.

OPINION BY:

GILLIAM

OPINION:

[*1450] MEMORANDUM DECISION AND
ORDER EARL B. GILLIAM, UNITED STATES
DISTRICT JUDGE

Plaintiffs' and defendants' cross-motions for
summary judgment came on for hearing before the
Honorable Earl B. Gilliam on December 11, 1989 at
10:30 a.m. in Courtroom 7. Rogers & Wells of New
York, by Procopio, Cory, Hargreaves and Savitch

(Jeffrey Isaacs and Edward I. Silverman of counsel)
represented the plaintiffs. Pillsbury, Madison & Sutro
(Kirke M. Hasson and Mauricio Flores of counsel)
appeared for the defendants. Having considered the
points and authorities and oral argument of counsel, the
court issues this memorandum decision and order
granting defendants' motion for summary judgment and
denying plaintiffs' motion for summary judgment.

FACTS

This is a cause of action by a group of shareholders
for declaratory and injunctive relief regarding the validity
of a "poison pill" plan adopted by the board of directors
of defendant corporation. The plaintiffs allege [**2] that
the poison pill violates the Articles of Incorporation of
defendant corporation, and therefore its adoption by the
Board was an *ultra vires* and invalid act.

The plaintiffs in this case are Clarendon Group, Ltd.,
and its president, Joel Rocha Garza. Clarendon Group is a
Bermuda corporation made up of shareholders who, at
the time of the hearing, collectively owned approximately
1,200,000 shares, or 9.4 percent of the stock in defendant
Smith Laboratories, Incorporated ("Smith Labs"). Smith
Labs is engaged in the manufacture, sale and rental of
medical and surgical products through a wholly-owned
subsidiary corporation. The plaintiffs are citizens of

Page 2

741 F. Supp. 1449, *1450; 1990 U.S. Dist. LEXIS 9383, **2;
Fed. Sec. L. Rep. (CCH) P95,349

Mexico and Bermuda. Defendant Smith Labs is a corporation organized and existing under the laws of Illinois, but with its principal offices in San Diego. Smith Labs is governed by its Articles of Incorporation ("Articles"), dated July 25, 1979, with the latest amendments dated April 23, 1984.

Article V, paragraph 2 of the Articles states:

> No holder or owner of shares of the corporation, as such holder, shall have any preemptive or preferential right to purchase or subscribe for or to have offered to him for subscription any [**3] shares of any class of the corporation, whether now or hereafter authorized, nor shall any holder of any shares of the corporation, as such holder, have any preemptive or preferential right to purchase or subscribe for any obligation or security which the corporation may issue or sell that shall be convertible into, or exchangeable for, any shares of any class of the corporation or to; which shall be [*1451] attached or appended any warrant or warrants or other instrument or instruments that shall confer upon the holder or owner of such obligation or security the right to subscribe for, purchase or otherwise acquire any shares of any class of the corporation.

This single sentence, a classic illustration of the cautious and superfluous construction for which lawyers are famous, is the center of the instant struggle over the poison pill.

On January 30, 1989, Smith Labs' board, allegedly without prior notice or approval, adopted a "Rights Plan," better known in the corporate community as a type of poison pill. n1 Pursuant to the poison pill, Smith Labs declared a dividend of one "right" for each outstanding share of common stock owned by its shareholders of record at the close of business on [**4] February 10, 1989. However, under the so-called "flip-in" provision of the poison pill, once a stockholder becomes either an "adverse person" or "acquiring person," then each holder of a right, *except* the adverse person or acquiring person, immediately becomes entitled to purchase one additional

share for each right at approximately one-half the market price. An "adverse person" is any person who becomes the "beneficial owner" of ten percent or more Smith Labs' outstanding shares and who has been deemed by the Board to be adverse. An "acquiring person" is any person who becomes the "beneficial owner" of more than twenty percent of Smith Labs' outstanding shares, and no further Board determination is necessary. The poison pill defines "beneficial owner" to include any person who owns, directly or indirectly, shares of common stock, has the right to dispose of shares of common stock, or has an agreement with another person for the purpose of acquiring, holding, voting or disposing of shares of common stock. Under this definition, each individual member of the Clarendon Group is a beneficial owner of any and all Smith Labs shares owned by any other member of the group.

n1 Poison pills come in many shapes and sizes, but they are an invention of the 1980s used primarily by corporate boards as a defensive measure to fight off hostile takeover attempts. Poison pills generally work by giving "friendly" shareholders options to purchase the corporation's stock at a bargain price once a "hostile" shareholder has purchased a significant number of shares in the corporation or made a tender offer to purchase a significant number of shares. The hostile shareholder is then frustrated at her attempt to acquire a controlling interest in the corporation, because once she obtains a significant number of shares, many other stockholders will exercise their option to purchase more stock at below market value, subsequently diluting her percentage interest in the corporation. The hostile shareholder is further deterred from her takeover attempt because every new share that is sold at the cheap price devalues all shares, including her own, making the venture less profitable. See generally Balotti & Finkelstein, *Del. Law of Corps. & Bus. Orgs.*, § 6.30 (1989); R. Clark, *Corporate Law* §§ 13.61-13.63 (1986).

[**5]

Neither side disputes the actual provisions of the poison pill. However they each vigorously dispute the good intentions of the other. The plaintiffs allege that the poison pill was adopted specifically to dilute the equity

741 F. Supp. 1449, *1451; 1990 U.S. Dist. LEXIS 9383, **5;
Fed. Sec. L. Rep. (CCH) P95,349

interest of any shareholders who accumulated shares to challenge the proposed merger of July, 28, 1989 between Smith Labs and International Power Machines. (The merger rumors continued after July, but the merger had apparently not taken place at the time of this hearing.) The plaintiffs allege that they had planned to fight the merger because it was "ill-conceived" and "would have [had] a substantial adverse effect on Smith Labs and its shareholders." The plaintiffs filed suit on September 11, 1989, seeking equitable relief, including a declaration that the "Rights Plan" violated Article V, paragraph 2, above and therefore was an invalid act by the Board.

The defendants argue that the poison pill was validly adopted by the Board to protect its shareholders from hostile takeovers by predatory corporate raiders seeking to reorganize and "bust-up" the company to obtain a quick profit. The defendants allege that the plaintiffs are the stereotypical corporate raiders [**6] who plan a hostile takeover and have a history of plundering corporations and filing fraudulent securities disclosures to hide their takeover attempts. The [*1452] defendants have raised a number of equitable defenses, including "unclean hands."

DISCUSSION

Smith Labs is an Illinois corporation. Under Illinois law, a corporation may enact a poison pill except where it violates the corporation's articles of incorporation. The relevant Illinois statute provides:

> Except as otherwise provided in the articles of incorporation, a corporation may create and issue, whether or not in connection with the issue and sale of its shares or bonds, rights or options entitling the holders thereof to purchase from the corporation, upon such consideration, terms and conditions as may be fixed by the board, shares of any class or series . . . . The terms and conditions of such rights or options may include, without limitation, restrictions or conditions that preclude or limit the exercise, transfer or receipt of such rights or options by any person or persons owning or offering to acquire a specified number or percentage of the outstanding common shares or other securities of the corporation, or any

transferee [**7] or transferees of any such person or persons, or that invalidate or void such rights or options held by any such person or persons or any such transferee or transferees . . . .

Ill. Rev. Stat. ch. 32, par. 6.05 (1990) (including amendments by P.A. 86-126, section 1, P.A. 86-464, section 1 and P.A. 86-1028, section 2-15). The statute specifically states that it ratifies poison pill plans enacted before the Act, but that it does not affect the rights and fiduciary obligations of a board of directors creating such a plan. *Id.*

Most of the new take-over defensive measures, including poison pills, have been challenged by shareholders or tender offerors who have argued that the measures violated state or federal securities regulations or that the board of directors violated their common-law fiduciary duties of care or loyalty by enacting such measures. *See, e.g. Dynamics Corp. of America v. CTS Corp., 805 F.2d 705 (7th Cir. 1986); West Point-Pepperell, Inc. v. Farley Inc., 711 F. Supp. 1088 (N.D.Ga. 1988); CRTF Corp. v. Federated Dept. Stores, 683 F. Supp. 422 (S.D.N.Y. 1988).* The plaintiffs here make no such allegations. They have not challenged the validity or constitutionality [**8] of the Illinois poison pill statute. Nor do they contend that the statute does not apply to the poison pill created by Smith Labs. While they mention some allegations of bad faith in their briefs, the plaintiffs have not stated a claim for breach of fiduciary duty against the board members. They have invoked this court's diversity jurisdiction and brought before it only a single, very narrow issue: whether the instant poison pill violates Smith Labs' Articles of Incorporation and is therefore invalid.

Under *Rule 56(c) of the Federal Rules of Civil Procedure,* a moving party is entitled to summary judgment where the non-moving party cannot make a showing that there is a genuine issue of any material fact and the pleadings, affidavits and other papers establish that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).* The Articles of Incorporation are a contract and must be construed the same as any contract: in accordance with the document's clear language. *Stroh v. Blackhawk. Trading Corporation, 48 Ill. 2d 471, 272 N.E.2d 1 (1972);*

741 F. Supp. 1449, *1452; 1990 U.S. Dist. LEXIS 9383, **8;
Fed. Sec. L. Rep. (CCH) P95,349

*Vigilante v. National Bank of Austin, 106 Ill. App. 3d 820, 436 N.E.2d 652, 62 Ill. Dec. 626 (Ill. App. 1982).* Construction of the Articles [**9] is thus a question of law for the court, and it is the plain meaning of the words used in the contract that govern its interpretation. *Vigilante, supra; see also Donaldson v. Gordon, 397 Ill. 488, 74 N.E.2d 816 (1947).*

The plaintiffs contend that the language in the Articles stating that no shareholder "shall have any preemptive or preferential right to purchase or subscribe for or to have offered to him for subscription any shares of any class of the corporation" prohibits the poison pill. Plaintiffs argue that the essence of this poison pill is that it creates preferences and relative rights between shareholders and therefore it clearly [*1453] violates the Articles provision cited above. The defendants contend that this provision was drafted solely to prohibit "preemptive rights," those rights that a shareholder has to purchase newly issued stock in order to maintain his or her percentage ownership of the corporation. *See generally 11 W. Fletcher, Cyclopedia of the Law of Private Corporations § 5135, et seq.* (rev. perm. ed. 1986). Therefore, defendants contend that the Articles provision has no relevance to poison pills, especially since it was drafted in 1979 before poison pills [**10] came into existence.

The plaintiffs concede that a prohibition of preemptive rights does not affect the board's ability to enact a poison pill, since the two issues are unrelated. However, the plaintiffs argue that the Articles intended to prohibit more than just preemptive rights, because the Articles also used language prohibiting any "preferential rights to purchase." Plaintiffs argue that preemptive right is a term of art which stands alone, therefore the additional language must have been included to add something to the prohibition of preemptive rights.

The court is unconvinced by plaintiffs' argument. It is true that "preemptive right" is a term of art commonly used in the corporate law field. *See, e.g. Balotti & Finkelstein, supra § 5.12; R. Clark, supra § 17.1.4; 11 W. Fletcher, supra § 5135.* However, a preemptive right is preferential in nature. A shareholder who has a preemptive right gets a preference to purchase newly issued shares, under certain conditions, over any other potential buyers. Therefore, it is not a coincidence that a leading treatise on corporate law makes several references to a "preemptive right" as a type of "preference" or "preferential [**11] right." n2 Smith Labs, in their Articles, could have used very simple language to prohibit preemptive rights without any reference to "preference" or "preferential," n3 but a leading corporate formbook has one example provision prohibiting preemptive rights that is quite similar to the one at issue. n4

n2 *See, e.g.* 11 W. Fletcher, *supra* § 5135 (defining a preemptive right: "It is the settled general rule . . . that when a corporation issues additional capital stock . . ., stockholders at the time of the issuance have the right, *in preference to any other persons, and as between themselves,* to subscribe for or purchase the new stock in proportion to the number of shares of the original stock held by them respectively . . ."), § 5135.1 ("Apart from any *preemptive or preferential rights* which stockholders may have, they have additional rights with respect to the issuance of authorized but unissued stock and to shares which the corporation has acquired and carries in its treasury . . . ."), § 5138 (describing terms and conditions of exercising a preemptive right: "The *preferential right of existing shareholders* is not dependent upon demanded by them and an offer to subscribe, especially where it would be useless."), § 5140 (A stockholder's *right to a preference in subscribing for or purchasing* the new stock, . . . may be sold or assigned by the shareholder."), § 5141 ("If the *right to a preference* in subscribing for new stock is denied to any shareholder by the corporation, an action may be maintained against it to recover damages.") (emphasis added each occasion).

[**12]

n3 *See, e.g.* Balotti & Finkelstein, *supra* Form 1.12 ("The holders of the Common stock shall have no preemptive rights to subscribe for any shares of any class of stock of the Corporation whether now or hereafter authorized."); Fletcher, *Corporate Forms* § 1130 (4th ed. 1982) (giving several examples).

n4 The first example in Fletcher, *Corporate Forms,* section 1130 provides:

741 F. Supp. 1449, *1453; 1990 U.S. Dist. LEXIS 9383, **12;
Fed. Sec. L. Rep. (CCH) P95,349

No holder of shares of the capital stock of any class of the corporation shall have any preemptive or preferential right of subscription to any shares of any class of stock of the corporation, whether now or hereafter authorized, or to any obligations convertible into stock of the corporation, issued or sold, nor any right of subscription to any other than such, if any, as the board of directors, in its discretion, may from time to time determine and at such price as the board of directors may from time to time set

. . . .

In 1979 when Smith Labs was incorporated, shareholders in a corporation were granted preemptive rights by the common law of Illinois. *Elward v. Peabody Coal Co., 9 Ill. App. 2d 234, 132 N.E.2d 549, 552* [**13] *(1956); see also Joyce v. Joyce Beverages, Inc., 571 F.2d 703, 705-06 & n. 1 (2nd. Cir), cert. denied, 437 U.S. 905, 57* [*1454] *L. Ed. 2d 1135, 98 S. Ct. 3092 (1978).* Corporations were granted the power to limit or deny preemptive rights in their articles of incorporation. Ill. Rev. Stat. Ch. 32, par. 6.50. n5 This legal context is important to determining the purpose of the contested Articles provision. Smith Labs had to include a provision such as Article V, section 2 if it wanted to prohibit preemptive rights. Given the context of Illinois law in this area and the language used in the provision, Smith Labs could have drafted the provision only to prohibit preemptive rights, and the court would have to unduly strain the provision to determine that it prohibits more.

n5 Illinois law has subsequently changed to abolish preemptive rights in corporations formed after January 1, 1982, unless the corporation affirmatively grants them in their articles. P.A. 83-1025, article 6 (amending Ill. Rev. Stat. Ch. 32, par. 6.50).

The court therefore [**14] holds as a matter of law that Article V, section 2 prohibits preemptive rights and nothing more. Because the court finds that in this context the provision is not ambiguous, it will not consider factual evidence from either party regarding the intent of the drafters when they wrote the provision. The court holds that the prohibition on preemptive rights prevents Board discrimination between shareholders and non-shareholders regarding the purchase of newly issued shares, and it does not prevent the discrimination between and among shareholders which is at issue here. n6 The court therefore finds that the Smith Labs board of directors did not violate Article V, section 2 when it enacted the poison pill, and therefore the act was not *ultra vires.*

n6 Preemptive rights give shareholders a preference in buying newly issued stock over non-shareholders, thus they discriminate against non-shareholders in favor of shareholders. *See Bank of New York v. Irving Bank Corp., 142 Misc. 2d 145, 536 N.Y.S.2d 923, 925* (Sup.Ct.N.Y.), *aff'd without opinion, 143 A.D.2d 1073, 1075, 533 N.Y.S.2d 412* (1st Dep't 1988) (citing 3 White, *New York Corporations,* § 622.01); Balotti & Finkelstein, *supra* § 5.12. The "flip-in" provisions of poison pills give preferences to certain shareholders and deny them to others, thus they discriminate between certain types of actual shareholders. *See Dynamics Corp. of America, supra 805 F.2d at 718; West Point-Pepperell, supra, 711 F. Supp. at 1095; Minstar Acquiring Corp. v. AMF Inc., 621 F. Supp. 1252, 1258 (S.D.N.Y. 1985).*

[**15]

For the foregoing reasons, the court grants the defendants' motion for summary judgment and denies the plaintiffs' motion for summary judgment. The clerk is hereby ordered to enter judgment for defendant on plaintiffs' complaint.

IT IS SO ORDERED.

Exhibit C

LEXSEE 24 B.R. 547



Caution
As of: May 28, 2007

In re: Gail Aline DICKINSON, Debtor

Case No. 81-01369-M

UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT
OF CALIFORNIA

*24 B.R. 547; 1982 Bankr. LEXIS 2897*

November 19, 1982

SUBSEQUENT HISTORY: [**1]

As amended December 20, 1982.

COUNSEL:

Stephen L. Garman, Esq., Oceanside, California,
Attorney for Debtor.

James S. Graham, Esq., San Diego, California,
Attorney for Respondents.

JUDGES:

James W. Meyers, Judge, United States Bankruptcy
Court.

OPINION BY:

MEYERS

OPINION:

[*548] MEMORANDUM OPINION

I

On May 1, 1981, the debtor, Gail Aline Dickinson,
filed a petition under Chapter 7 of the United States
Bankruptcy Code ("Code").

Listed as unsecured creditors in the debtor's
schedules were two doctors who had provided medical
services to the debtor, Charles A. Stuart and Paul R.
Woody ("doctors").

The debtor obtained a discharge, which was entered
on August 10, 1981.

On June 23, 1982, the doctors, through their
attorney, n1 filed a complaint in the San Diego Municipal
Court, naming the debtor and her attorney as defendants.
The complaint was an attempt to enforce a lien which
they claimed had survived the bankruptcy proceedings.

    n1 Collectively referred to as "respondents."

As a result of the filing of the state [**2] court
complaint, the debtor filed this present action on August
12, 1982, requiring the respondents to show cause why
they should not be found in contempt. The matter came
on for hearing before this Court on October 7, 1982.

II

FACTS

Sometime prior to the filing of her Chapter 7
petition, the debtor was involved in an accident which
resulted in personal injuries requiring the attention of

Case 3:07-cv-03406-MMC    Document 4    Filed 06/28/2007    Page 57 of 106

Page 2

24 B.R. 547, *548; 1982 Bankr. LEXIS 2897, **2

Doctors Stuart and Woody. After rendering substantial care to the debtor, she owed them $2,113.50. Payment from the debtor was not forthcoming, so the doctors agreed to look toward any proceeds resulting from the personal injury action the debtor instituted. In furtherance of this, on February 25, 1981, the debtor signed two documents, one in favor of each doctor, entitled "Medical Reports and Doctor's Lien," purporting to grant liens in any settlement, judgment or verdict, she may receive as a result of her personal injury action.

On May 1, 1982, the debtor filed her petition for relief under Chapter 7 of the Code. Prior to the time of filing, the debtor informed the attorney representing her [*549] in the bankruptcy about the personal injury action, and the possibility of the doctors' [**3] claims against any proceeds resulting therefrom. In the opinion of her attorney, the debtor's chances of recovery were remote and any liens upon the potential recovery were invalid. In light of this, the doctors were listed on the debtor's schedules as unsecured creditors, and no action regarding the liens was taken during the pendency of the bankruptcy proceedings.

On August 10, 1981, the debtor's discharge was entered.

The debtor's personal injury action was eventually settled resulting in a sum of money being paid to the debtor. Upon learning of the settlement, the doctors attempted to enforce their purported liens on the proceeds. This attempt culminated in the filing of a complaint against the debtor in the San Diego Municipal Court. The filing of the state court action resulted in the debtor instituting the present action.

III

DISCUSSION

In determining whether the respondents are in contempt of court, it is first necessary to establish the status of the alleged liens under California law.

California recognizes that liens may be created by contract of the parties. *Cal. Civ. Code § 2881(1).* Such a lien may be upon property not yet acquired by the party agreeing to [**4] give the lien. *Cal. Civ. Code § 2883.* The lien would then attach at the time an interest in the property is acquired. *Kreling v. Kreling, 118 Cal. 413, 50 P. 546 (1897); Garter v. Metzdorf Associates, 217*

*Cal.App.2d 812, 32 Cal. Rptr. 113 (1963).*

This is not an uncommon arrangement with attorneys and their clients, and is indeed often the only way people with meritorious claims can obtain legal representation. *Cetenko v. United California Bank, 30 Cal.3d 528, 536, 179 Cal. Rptr. 902, 638 P.2d 1299 (1982).* An attorney will agree to represent a client in a dispute, and to secure payment, will accept a lien on any proceeds which may thereby be generated.

Most typically, the party being granted an interest in the proceeds is the client's attorney, but this need not be the only scenario. In *Nicoletti v. Lizzoli, 124 Cal.App.3d 361, 177 Cal. Rptr. 685 (1981),* the party receiving the lien was a physician. That physician was allowed to enforce his lien on the proceeds from a settlement, even though his interest was not perfected. The court reasoned that the services provided by medical personnel are so essential to society, that to require perfection to enforce this [**5] lien would eventually result in doctors ceasing to perform their services until they were paid. *Id. at 369-70.*

In the present case, the debtor signed two documents entitled "Medical Reports and Doctor's Lien." The intended purpose of these documents was twofold. First, to authorize the doctors to report to the debtor's attorney on her condition; second, to grant a lien in favor of the doctors upon any proceeds resulting from the personal injury action. Of this, there can be no doubt, for the documents are captioned "Doctor's Lien," and contained the following language, "and I hereby further give a lien on my case to said doctor against any and all proceeds of any settlement, judgment or verdict . . . ." These documents were then signed by the debtor and the attorney representing her in the personal injury action. No clearer language could have been used to create a contractual lien in the proceeds of the personal injury action. Therefore, this Court holds that the doctors had valid, enforceable liens under California law.

Having a pre-petition lien in bankruptcy does not always promise a creditor payment. The Code provides for avoidance of certain liens. n2 This Court need [**6] not, however, address the issue of the propriety of avoiding the liens in this case. This is [*550] because no such action was taken during the bankruptcy proceeding. The debtor's attorney handling the bankruptcy was aware of the existence of the liens, but chose not to take any action since, in his opinion, the

Case 3:07-cv-03406-MMC    Document 4    Filed 06/28/2007    Page 58 of 106

24 B.R. 547, *550; 1982 Bankr. LEXIS 2897, **6

Page 3

debtor would not recover and that they were, in any event, invalid. Upon his advice, the doctors were listed as unsecured creditors only.

n2 The sections which allow certain specified liens to be avoided are 11 U.S.C. §§ 506(d), 544, 545, 547, 548, 549 and 724(a).

The granting of a discharge operates as a permanent injunction against any attempt to collect or recover on a debt as a personal liability of the debtor, or from property of the debtor. n3 11 U.S.C § 524(a); 3 Collier on Bankruptcy, para. 524.01 at 524-4. Any post-discharge attempt to so collect is properly a basis for contempt proceedings. See In re Batla, 12 B.R. 397, 8 B.C.D. 26 (N.Ga. 1981). This is to ensure an effective [**7] discharge and is in keeping with the "fresh start" philosophy which permeates the Code. However, this injunction, while strong and far-reaching, is not without its limits. A creditor is enjoined from attempting to recover on a debt that has been discharged, but is not prevented from enforcement of a valid pre-petition lien.

n3 The injunction in 11 U.S.C. § 524(a) against efforts to collect from "property of the debtor" does not proscribe attempts to enforce valid liens. This language was included to prevent post-discharge harassment of debtors and give "backbone to the discharge of in personam liability and the discharge of avoided in rem liability." (emphasis added). In re Weathers, 15 B.R. 945, 951, 8 B.C.D. 524, 527 (Kan. 1981).

Applying this to the present situation, since the doctors were listed as unsecured creditors, the permanent injunction would act to prevent them from pursuing any unsecured claim against the debtor. But, such is not the case here, for it has already been determined that [**8] they were granted valid liens in any proceeds from the debtor's personal injury action.

It is a long-established principle that unless avoided in the bankruptcy proceeding, valid liens will be preserved notwithstanding the discharge of the debtor. See Long v. Bullard, 117 U.S. 617, 29 L. Ed. 1004, 6 S. Ct. 917 (1886). This rule has not diminished with age. Section 522(c)(2) is the statutory recognition

of this principle and it has been reaffirmed many times. See In re Cornist, 7 B.R. 118 (S.Cal. 1980); In re Weathers, supra, 15 B.R. 945, 8 B.C.D. 524; In re Fitzgerald, 20 B.R. 27 (N.N.Y. 1982); see also, 3 Collier on Bankruptcy, para. 522.27 at 522-65 (15th ed.).

The legislative history of section 522(c) leaves no room for question as to what was intended:

The bankruptcy discharge will not prevent enforcement of valid liens. The rule of Long v. Bullard, 117 U.S. 617, 29 L. Ed. 1004, 6 S. Ct. 917 (1886), is accepted with respect to the enforcement of valid liens on nonexempt property as well as exempt property.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 361 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 76; reprinted in 1978 [**9] U.S. Code Cong. & Admin. News 5862, 6317.

A debtor's personal liability is extinguished upon a discharge, but a creditor's right to proceed against the property is not. It follows then, that when the automatic stay imposed by 11 U.S.C. § 362(a) is terminated, a creditor with a valid lien may proceed against the collateral. In re Cornist, supra, 7 B.R. at 120-21; In re Weathers, supra, 15 B.R. at 951, 8 B.C.D. at 528. The granting of a discharge to a debtor will serve to terminate the automatic stay. 11 U.S.C. § 362(c)(2)(C). The debtor's discharge was entered on August 10, 1981. Consequently, since they commenced their action in state court on June 23, 1982, which is after the petition, the respondents were within the law when they pursued this matter in state court. As such, this Court cannot find that they violated the permanent injunction of 11 U.S.C. § 524(a), and it is held that they are not in contempt of any order issued by this Court.

IV

CONCLUSION

The doctors had valid, enforceable liens under California law which were not avoided during the bankruptcy proceeding. [*551] When the automatic stay of 11 U.S.C. § 362(a) was terminated upon the granting [**10] of the discharge, the doctors' rights to proceed against the property matured and the respondents are not

Case 3:07-cv-03406-MMC    Document 4    Filed 06/28/2007    Page 59 of 106

Page 4

24 B.R. 547, *551; 1982 Bankr. LEXIS 2897, **10

in contempt of this Court for so proceeding.

This opinion will constitute findings of fact and conclusions of law as required by Bankruptcy Rule 752. The attorney for the respondents will prepare and file an appropriate proposed order within ten days of the filing

of this opinion.

JAMES W. MEYERS, Judge, United States Bankruptcy Court

**73**



TODD M. SCHNEIDER (SBN 158253)
JOSHUA KONECKY (SBN 182897)
W.H. "HANK" WILLSON (SBN 233321)
SCHNEIDER & WALLACE
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Tel: (415) 421-7100
Fax: (415) 421-7105
TTY: (415) 421-1665

LINDA ROSS (SBN 85563)
LAW OFFICE OF LINDA ROSS
2204 Union Street
San Francisco, California 94123
Tel: (415) 563-2400

SCOTT KALKIN (SBN 120791)
ROBOOSTOFF & KALKIN, PLC
369 Pine Street, Suite 610
San Francisco, California 94104
Tel: (415) 732-0282
Fax: (415) 732-0287

Attorneys for Plaintiff and the Proposed Class

SUPERIOR COURT OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| MELINDA CAMPBELL, on her own behalf, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SUTTER HEALTH, and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. RG05221764<br><br>**REPLY BRIEF FOR PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>Date: June 6, 2007<br>Time: 2:00 pm<br>Department: 22<br>Judge: The Hon. Bonnie Lewman Sabraw |

REPLY BRIEF FOR PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT
*Campbell v. Sutter Health, et al.*, Case No. RG05221764

SCHNEIDER
WALLACE

## I.    INTRODUCTION

In their Oppositions to both Plaintiff's Motion to Compel and Motion for Leave to Amend, Defendants try vigorously to re-argue their Demurrer, which this Court has already rejected. In its April 18, 2006 Order, this Court held that Plaintiff adequately states a claim for malicious prosecution and a claim unfair business practices under California Business and Professions Code §§17200, *et seq.* ("UCL"). (*Id.* at 3:16-4:5, 5:8-11.) Plaintiff's proposed Second Amended Complaint ("SAC") pleads the same set of facts regarding her claims. Thus, Defendants' argument that the SAC will be futile must fail, especially in light of the policy strongly favoring amendment.

Plaintiff's SAC is an attempt to bring all parties and issues before this Court, and is in response to Defendants' counsel's insistence that the hospital affiliates, and not Sutter Health, are responsible for the liens at issue. Having laid all blame at the feet of the hospitals, Defendants now attempt to argue that the Complaint may not be amended to add them as Defendants. Defendants cannot have it both ways, and their attempts to do so smack of gamesmanship.

As made clear in Plaintiff's opening papers, there is no prejudice here: the case is still at its pleading stages (largely thanks to Defendants' two previous demurrers and subsequent refusal to cooperate in the discovery process), a class certification motion has yet to be filed, and a trial date has not been set. Plaintiffs acted diligently, adding the hospital affiliates as Defendants just two months after taking the deposition of Sutter Health's corporate designee, who insisted that it is the hospital affiliates that assert the liens at issue. Until that time, Plaintiff was "ignorant" of the hospitals' potential liability; as demonstrated by her Complaint and First Amended Complaint ("FAC"), where Plaintiff alleged that Sutter Health asserted the liens.

Plaintiff's aiding and abetting allegations, which must be taken as true at this stage of the case, are sufficiently pled and are not futile. Furthermore, they provide Plaintiff with standing as a class representative on behalf of the class of people who have been subject to the malicious prosecution jointly carried out by all of the Defendants across Sutter Health's California hospital network. In truth, Defendants' "standing" arguments are disputes about adequacy and typicality issues for class certification which, at the complaint stage of the proceedings, Plaintiff has adequately alleged.

REPLY BRIEF FOR PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT
*Campbell v. Sutter Health, et al.*, Case No. RG05221764

1

1   Defendants' attempt to turn this Motion for Leave to Amend into a dispositive motion on the

2   merits of Plaintiff's claims should not be allowed. This amendment furthers judicial economy and

3   serves the ends of justice by bringing all parties and controversies before this Court.

4   II.   **ARGUMENT**

5   California's public policy in favor of amendment is so strong that it is a rare case in which

6   denial of leave to amend can be justified:

7   > If the motion to amend is timely made and the granting of the motion will not prejudice the
   > opposing party, it is error to refuse permission to amend and where the refusal also results in
8   > a party being deprived of the right to assert a meritorious cause of action or a meritorious
   > defense, it is not only error but an abuse of discretion.
9

10  (*Morgan v. Superior Court* (1959) 172 Cal.App.2d 527, 530; *see also Nestle v. Santa Monica*

11  (1972) 6 Cal.3d 920, 939; *Mabie v. Hyatt* (1998) 61 Cal.App.4th 581, 596.) Such is the case here:

12  the SAC seeks to add Defendants whom Defendant Sutter Health and its counsel have averred to

13  be the entities that assert the liens at issue, and adds factual allegations regarding how all of these

14  entities are liable for the causes of action which this Court has already held to state a claim.

15  A.   **DEFENDANTS' MERITS ARGUMENTS ARE MERITLESS**

16  1.   **Defendants' Merits Arguments Are Improper and Premature**

17  Defendants disguise another attempt at a demurrer as an argument regarding the "futility" of

18  Plaintiff's requested amendment. But these arguments are not appropriate here: it is well-settled

19  that "the preferable practice would be to *permit the amendment* and allow the parties to test its

20  legal sufficiency by demurrer, motion for judgment on the pleadings or other appropriate

21  proceedings." (*Kittredge Sports Co. v. Superior Court* (1989) 213 Cal.App.3d 1045, 1048

22  [internal quotations omitted] [emphasis added].) In addition, the Court has already ruled on the

23  heart of Plaintiff's allegations, and found that they withstand a Demurrer. (April 18, 2006 Order at

24  3:16-4:5.) Given that, Plaintiffs' claims cannot possibly be futile.

25  2.   **Plaintiffs' Claim for Malicious Prosecution Is Adequately Pled**

26  a)   **The Elements of Malicious Prosecution**

27  A cause of action for malicious prosecution requires an action that is made without probable

28  cause, with malice, and after the favorable termination of the action in the favor of the malicious

SCHNEIDER
& WALLACE

REPLY BRIEF FOR PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
2

1  prosecution plaintiff. (*See Albertson v. Raboff* (1956) 46 Cal.2d 375, 382; *see also Bertero v.*

2  *National General Corp.* (1974) 13 Cal.3d 43, 50.)[1]

3          **b) Defendants' Assertion of Their Unlawful Liens Constitutes Action Against**

4          **Plaintiff and the Class**

5        In its April 18, 2006 Order, this Court held that "[t]he complaint adequately alleges that the

6  prior action (the notice of a lien) was in the nature of a civil action commenced by or at the

7  direction of the defendant." (*Id.* at 3:22-23.) Defendants clearly disagree with this ruling, but, as

8  shown above, cannot challenge it at this stage of the proceedings. Moreover, the Court's holding

9  was correct: by asserting the liens that are the subject of this suit and using various judicial tools to

10  pursue those liens, Defendants took an "independent, separate, adversarial action, involving the

11  expense and trauma of preparing a response, and having a procedural life of its own[,]" an action

12  that "will support a later tort claim for malicious prosecution[.]" (*Sierra Club Foundation v.*

13  *Graham* (1999) 72 Cal.App.4[th] 1135, 1152.) Plaintiff and the members of the class were served

14  with liens asserting a right to money which the Supreme Court, in *Parnell*, has declared to be

15  "specific property...accruing to" them. (*Parnell, supra,* 35 Cal.4th at 602.)

16        As the Court of Appeal has explained:

17        The tort of malicious prosecution lies for the prosecution of...ancillary civil proceedings,
      such as the filing of a cross-complaint, the institution of a special insanity proceeding, or the

18        filing of a will contest in connection with the probate of an estate.

19  (*Twyford v. Twyford* (1976) 63 Cal.App.3d 916, 921-922.)  A lien is an "ancillary" proceeding

20  which gives rise to a malicious prosecution action, for it is tethered to the outcome of the

21  underlying tort actions by Plaintiff and the class against the tortfeasors who injured them, and not a

22  "subsidiary procedural" action because it is not adjudicable in the suit between Plaintiff and the

23  tortfeasor. In the context of a will contest, "its effect is...to infringe on the interest of the will's

24  proponent in freedom from unjustifiable and unreasonable litigation. For purposes of the law of

25  malicious prosecution, therefore, the contest satisfies the requirement of a prior action...

26

27  [1] *Albertson*, authored by Justice Traynor, is the "seminal" case on malicious prosecution, according
   to the California Supreme Court. (*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss &*

28  *Karma, Inc.* (1986) 42 Cal.3d 1157, 1164.)

CHNEIDER
WALLACE

REPLY BRIEF FOR PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
3

commenced by or at the direction of the defendant." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 692.) The Supreme Court's reasoning applies equally to Defendants' liens, which prevent Plaintiff and the class from being free from these unjustifiable and unreasonable judicial actions.

### c) Defendants Acted Without Probable Cause and With Malice in Asserting Its Unlawful Liens Against Plaintiff and the Class

In its Order on Defendants' Second Demurrer, this Court held that "[t]he complaint adequately alleges that the HLA liens were filed or maintained without probable cause and were initiated or continued with malice and/or a conscious disregard for the law." (April 18, 2006 at 4:3-5.) Defendants' attempts to challenge that holding are completely improper here. Furthermore, there can be no dispute that under *Parnell*, Defendants had no probable cause to think that asserting the liens at issue was permissible, and that the *Parnell* decision is retroactive.[2]

"The general rule that judicial decisions are given retroactive effect is basic in our legal tradition." (Order of November 16, 2005 ("Order"), at 2 [quoting *Brennan v. Tremco, Inc.* (2001) 25 Cal.4th 310, 318].) This Court went on to find that "Sutter Health has not demonstrated that the case law interpreting the Hospital Lien Act was settled or that Sutter Health had relied on a judicial interpretation of the Act." (November 16, 2005 Order at 2.) Even in the inapplicable case of appellate court decisions, courts make an exception to the rule of retroactivity only "when the decision changed a settled rule *on which the parties had relied.*" (*Brennan, supra*, 25 Cal.4th at 318 [emphasis added].) Defendants did not rely on *Swanson* when asserting the unlawful liens challenged here. Defendants have been asserting the liens at issue since well before Swanson was published in 2002: as Sutter Health's corporate designee testified in deposition, Defendants' assertion of the liens at issue is "an ongoing practice" which Defendants have engaged in at least since 1995, when he was Chief Financial Officer at Sutter Roseville Medical Center. (Deposition of Brian Hunter ("PMK Depo."), attached as Exhibit A to the Reply Declaration of Hank Willson

---

[2] As this Court held in its April 18, 2006 Order: "The complaint adequately alleges that under *Parnell v. Adventist Health System/West* (2005) 35 Cal. 4th 595, the Court can find that all HLA liens that have been filed in cases where the Hospital has been paid in full are without merit as a matter of law and that the patient/plaintiff is the prevailing party." (*Id.* at 3:25-4:2.)

1  in Support of Motion for Leave to File Second Amended Complaint ("Willson Reply Decl."), at

2  12:17-21; 143:15-19; 159:12-19.)[3]

3        Defendants' claim that they did not act with malice does not withstand scrutiny. First, this

4  Court has already ruled that Plaintiff has adequately alleged Defendants' malice. (April 18, 2006

5  Order at 4:3-5.) Second, the seminal case of *Albertson* states that if "the existence of malice" is

6  "expressly alleged," "the requirement of malice is...sufficiently pleaded." (*Albertson, supra*, 46

7  Cal.2d at 863.) Malice exists "when the proceedings are instituted primarily for an improper

8  purpose." (*Id.*) Here, there can be no dispute that Plaintiff has alleged the existence of malice.

9  Defendants have asserted and pursued their liens against Plaintiff and the class with an improper

10  purpose; that is, to extract money from Plaintiffs and the class despite the fact that they know that

11  they are owed no debts by Plaintiff and the class.

12        Defendant, in disputing that it acted with malice, relies solely on the assertion that Plaintiff's

13  allegations regarding malice arise from the same facts as Plaintiff's allegations regarding

14  Defendant's lack of probable cause. (Defendants' Opposition at 10:8-24.) Of course, Defendant

15  does not dispute that facts which are sufficient to allege malice are by definition more than

16  sufficient to allege a lack of probable cause. (*See Downey Venture v. LMI Ins. Co.* (1998) 66

17  Cal.App.4[th] 478, 498.) Defendant draws the wrong conclusion from the similarity of Plaintiff's

18  probable cause and malice allegations. In fact, Plaintiff has pled facts sufficient to allege both

19  malice and a lack of probable cause. (*Id.*)

20  _____

21  [3] As already discussed during the briefing on Defendants' second Demurrer, a decision overrules a
    settled rule of law "when it disapproves of a long-standing and widespread practice expressly
22  approved by a near-unanimous body of lower court authorities." (*Droeger v. Friedman, Sloan &
    Ross* (1991) 54 Cal.3d 26, 45; *Donaldson v. Superior Court* (1983) 35 Cal.3d 24, 37.) The
23  decision of the Court of Appeal for the Second District in *Swanson* was decidedly not "near-
    unanimous" prior to *Parnell*. Defendants continue to ignore the plain language of *Nishihama v.
24  City and County of San Francisco* (2001) 93 Cal.App.4th 298, in which the First District held that
    a hospital is not entitled to assert a lien against an injured person on a debt that has been
25  extinguished: "We find that CPMC's [the hospital's] lien rights do not extend beyond the amount
    it agreed to receive from Blue Cross as payment in full for services provided to plaintiff. As
26  CPMC has been paid the entire amount ... no lien rights in the damages awarded to plaintiff[.]" (*Id.*
    at 307.) The Court continued: "the debt owed by plaintiff to the Hospital is the foundation for the
27  Hospital's lien right." (*Id.* at 308 [quoting *Grauberger v. St. Francis Hospital* (N.D.Cal. 2001) 149
    F.Supp.2d 1186, 1191].) Thus, in 2001, at least one California Court of Appeal took the same
28  view that the Supreme Court later confirmed in *Parnell*.

SCHNEIDER
& WALLACE

REPLY BRIEF FOR PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
5

**d) Defendants' Liens Were Null and Void at Their Assertion and Are Null and Void Now; Thus, They Have Terminated in Favor of Plaintiff and the Class**

This Court has already ruled in Plaintiff's favor here: "The complaint adequately alleges that under *Parnell v. Adventist Health System/West* (2005) 35 Cal. 4th 595, the Court can find that all HLA liens that have been filed in cases where the Hospital has been paid in full are without merit as a matter of law and that the patient/plaintiff is the prevailing party." (April 18, 2006 Order at 3:25-4:2.) Defendants' attempt to reconsider this ruling is wholly improper. Moreover, because Defendants' improper liens were null and void when they were asserted, and have been declared null and void by the Supreme Court in *Parnell*, there can be no doubt that the liens have been terminated in favor of Plaintiff and the class. (*Parnell, supra*, 35 Cal.4th at 609.) On a class basis, the *Parnell* decision itself constitutes a favorable judgment for Plaintiff and the class. In addition, there will be a favorable judgment for Plaintiff and the class if and when this Court rules on Plaintiff's request for classwide declaratory relief that the liens at issue are null and void.

However the termination comes about, it "must reflect on the merits of the underlying action." (*Lackner v. LaCroix* (1979) 25 Cal.3d 747, 750 [internal citations omitted].) Defendants admit that these liens have no merit under *Parnell* and the reasoning contained therein. Defendants asserted these liens even though they knew or should have known that Plaintiff and the class owed them nothing, or they continued to assert the liens once they became aware that any underlying debts had been extinguished. Thus, these liens have terminated in favor of Plaintiff and the class.[4]

---

[4] Defendants' steadfast assertion that Plaintiff and the class have to have initiated individual judicial proceedings against Defendants regarding Defendants' impermissible liens and pursue those proceedings to their conclusion in order to allege malicious prosecution is just the sort of excessive litigation that the class action procedure, and this class action specifically, are designed to avoid. Requiring a separate adjudication of each and every lien asserted by Defendants would be an utter waste, and would effectively excuse Defendants' unlawful behavior, because the cost in time and resources to dispute each of Defendants' liens would quickly exceed the value of the liens themselves. The very purpose of this case is to aggregate these claims and to prevent Defendants from continuing to assert unlawful liens against persons who owe them no debt. It is unlikely that the Supreme Court, in *Parnell*, intended for hospitals to continue their balance billing policies *exactly* as they had always done. In fact, the Court explicitly held that Defendants' alleged practices are illegal, and that the practice of attempting to collect on non-existent debts must cease. Defendants, blatantly ignoring this edict, have continued to harass Plaintiff and the class with their impermissible liens and their use of judicial tools to enforce those liens.

SCHNEIDER & WALLACE

REPLY BRIEF FOR PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
6

### 3. Defendants Do Not Address Plaintiff's UCL Claim for Unfair and Fraudulent Business Practices

Defendants, in their zeal to attack Plaintiff's malicious prosecution claim, completely ignore the Plaintiff has a separate claim for unfair and fraudulent business practices based on the UCL, which is unaffected by the fate of Plaintiff's malicious prosecution claim. (*See* FAC at ¶¶59-70; SAC at ¶¶39-50.) "The statutory language [of the UCL]...makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.) To determine if a business practice is unfair, "the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." (*State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1104.) As shown above, the vexation and injury caused by Defendants' assertion of the liens at issue greatly outweighs any benefit to Defendants, especially considering that the Supreme Court has declared Defendants' lien practices to be unlawful.

### 4. Plaintiff Has Suffered Injury Here

Defendants argue that Plaintiff was not injured by their assertion of a lien against her, given that the lien has not been paid. (Defendants' Opposition at 11:5-8.) Aside from the fact that this has nothing to do with the proposed amendments at issue, it is simply false: Plaintiff's settlement in her underlying tort action against the person who injured her was reduced by exactly the amount of the lien. She settled her underlying tort case for $15,000, but because of Defendants' lien against her for $4,968.62, the amount of the settlement that went to Plaintiff was only $10,031.38. Defendants' lien amount has "not been dispersed, and will not be dispersed"—a check for $4,968.62 was made out to both Plaintiff and Defendants, so that Plaintiff would not, and cannot, cash the check. (*See* Letter from Michael Provan to Davil Vasquez of December 6, 2005, attached as Exhibit H to the Declaration of Gayl Lounsbury in Support of Opposition to Motion for Leave to File Second Amended Complaint ("Lounsbury Motion to Amend Decl.").) Plaintiff has also been damaged in other ways, because she has had to fight this lien since its assertion. This causes anguish and costs money. This sort of damage is common as a result of Defendants' unlawful liens, and Defendants should not be allowed to inflict such injury.

SCHNEIDER
& WALLACE

**B. DEFENDANTS ARE NOT PREJUDICED BY THE PROPOSED AMENDMENT**

Defendants argue that they will be prejudiced if the SAC is filed, based on the fact that the costs of "handling of this case would increase substantially." (Defendants' Opposition at 2:26-3:1.) But the SAC alleges that, as Defendants put it, "23 defendants that operate hospitals located in 16 counties" have engaged in malicious prosecution and unlawful, unfair and fraudulent business practices (or aiding and abetting this unlawful activity). It is no fault of Plaintiff that the Sutter Health is a large network. Home Depot, for instance, has stores throughout the nation; that does not mean that Home Depot may not be sued on a class basis. Defendants' position is absurd on its face; as Defendants admit, the conduct at issue occurs throughout the Sutter Health network of hospitals. (*See* Declaration of John C.J. Barnes at ¶¶9-22.) Plaintiff further alleges (and the very limited discovery produced shows) that Defendants are a connected entity and/or act in concert with one another to carry out the classwide conduct at issue. If Plaintiff were not allowed to attack all of Defendants' practices, it would make a mockery of the civil justice system.

Furthermore, the time that has elapsed before this Motion is "neither unexplained nor unexcused." (*Dunzweiler v. Superior Court of Alameda County* (1968) 267 Cal.App.2d 569, 579.) The SAC alleges facts that were only discovered at the deposition of Sutter Health's corporate designee on February 28, 2007. The amendment was announced at the next Case Management Conference, on April 24, 2007, and will not cause prejudice because it does not add any new causes of action—it merely adds to the existing factual allegations facts that were recently discovered. No trial or class certification dates have yet been set.

Defendants' only complaint is that the hospital affiliates would now be required to be involved in the litigation—but simply being subject to litigation for unlawful activity cannot be a valid basis for a claim of prejudice. This is especially true in this case, where all Defendants are represented by the same counsel. Defendants' counsel has obviously been aware of this action since its inception; indeed, because of Defendants' counsel's insistence that the hospital affiliates are to blame for the liens at issue, they surely must have expected that the hospital affiliates would become involved in this case. No prejudice would result, and great judicial economy would be gained, by permitting Plaintiff to add these factual allegations here.

SCHNEIDER
& WALLACE

REPLY BRIEF FOR PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
.8

## C. PLAINTIFF WAS IGNORANT OF THE HOSPITAL AFFILIATES' LIABILITY, AND THUS MAY ADD THEM AS DOE DEFENDANTS

Defendants argue that Plaintiff cannot add the hospitals as Doe defendants because she knew that she received services at one of the hospital affiliates, and that that hospital affiliate asserted a lien against her. (Defendants' Opposition at 3:19-4:22.) But this is not the standard, and Defendants do not address Plaintiff's case on this subject. "A plaintiff is 'ignorant of the name' if he knows the identity of the person but is ignorant of the facts giving him a cause of action against such person." (*Wallis v. Southern Pac. Transportation Co.* (1976) 61 Cal.App.3d 782, 786.)

As Plaintiff makes plain in her FAC, and as Defendants unwittingly point out in their opposition, though she knew that she was treated at Memorial Medical Center, she believed that it was Sutter Health that asserted the lien. (*See* FAC at ¶1.) Plaintiff's understanding was that Sutter Health owned its hospital affiliates, and directly controlled the actions of those affiliates. (*Id.* at ¶11.) There can be no other reason for her to have sued Sutter Health in the first place. As such, Plaintiff was "ignorant of the name" of the hospital affiliates, and may add them as Doe defendants here.[5] Again, Defendants attempt to have it both ways: they criticize Plaintiff for not allegedly not suing the correct Defendants, then attempt to block Plaintiff's Motion for Leave to Amend to do exactly what Defendants claimed she should do. Defendants cannot be permitted to prevent the judicial economy that Plaintiff's proposed amendment would bring.

## D. DEFENDANTS' ATTACKS ON PLAINTIFF'S STANDING AND AIDING AND ABETTING ALLEGATIONS ARE IMPROPER AT THIS STAGE

Defendants take pains to assail both Plaintiff's standing to sue the hospital affiliates, and, relatedly, her ability to allege facts aiding and abetting. (Defendants' Opposition at 12:1-15:17.)

---

[5] Defendant also fails to address the fact that Plaintiff had no duty to discover the identities of the hospital affiliates (though she has tried, but been thwarted by Defendants, to obtain discovery to ascertain the responsible party in this case). (*See Streicher v. Tommy's Electric Co.* (1985) 164 Cal.App.3d 876, 883 ["there is *no* requirement under section 474 that plaintiff exercise reasonable diligence in discovering either the true identity of fictitious defendants or the facts giving him a cause of action against such persons after the filing of a complaint and up to the expiration of the applicable limitation period."]; *Munoz v. Purdy* (1979) 91 Cal.App.3d 942, 947-948 ["the interjection of a discovery standard into section 474 would lead to the harmful practice in all litigation of requiring that all persons who might conceivably have some connection with the lawsuit be specifically named in order to avoid the sanctions of the failure to comply with the inquiry requirements of section 474."].)

SCHNEIDER
& WALLACE

1   But they have picked the wrong motion in which to do so. Plaintiff's standing to sue the hospital

2   affiliates rests, of course, on her allegation that each Defendant aided and abetted every other

3   Defendant in the commission of malicious prosecution. At this stage of the case, on a Motion for

4   Leave to Amend, she need merely make the claim.

5          To allege aiding and abetting, one must allege that

6          the person (a) knows the other's conduct constitutes a breach of duty and gives substantial
           assistance or encouragement to the other to so act or (b) gives substantial assistance to the
7          other in accomplishing a tortious result and the person's own conduct, separately
           considered, constitutes a breach of duty to the third person.
8

9   (*Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 846.) Plaintiff's SAC alleges that each

10         Defendant aids and abets the commission of malicious prosecution because: each Defendant
           knows the other's conduct constitutes a breach of duty and gives substantial assistance or
11         encouragement to the others to so act, or, in the alternative, each Defendant gives substantial
           assistance to the other in accomplishing a tortious result and the each Defendant's own
12         conduct constitutes a breach of duty to Plaintiff and the members of the Class.

13  (SAC at ¶5.) This is all that is required at this stage. (*See Kittredge Sports, supra,* 213 Cal.App.3d

14  at 1048 ["As for tortious breach of the implied covenant of good faith and fair dealing, Marker's

15  objections are again off course. This cause of action exists where the 'special relationship'

16  between the parties is 'characterized by elements of public interest, adhesion and fiduciary

17  responsibility.' [Citation.] Kittredge alleges the parties had such a special relationship; therefore,

18  it should be allowed to amend its complaint. *No more is necessary at this stage.*"] [emphasis

19  added] [internal citations omitted].) Because Plaintiff sufficiently alleges aiding and abetting at

20  this stage, she also has standing to pursue those allegations against each of the Defendants.

## III.    CONCLUSION

21         For all the reasons stated above, Plaintiff respectfully requests this Court for leave to file the

22  proposed Second Amended Complaint, attached to the Willson Declaration as Exhibit A.

23  Respectfully submitted,

24  Date: June 4, 2007

                                        SCHNEIDER & WALLACE
25                                      LAW OFFICE OF LINDA ROSS
                                        ROBOOSTOFF & KALKIN, PLC
26
                                        *Hank W*
27                                      _____
                                        Hank Willson
28                                      Counsel for Plaintiff

SCHNEIDER
& WALLACE

**74**

1  TODD M. SCHNEIDER (SBN 158253)
2  JOSHUA KONECKY (SBN 182897)
   W.H. "HANK" WILLSON (SBN 233321)
3  SCHNEIDER & WALLACE
   180 Montgomery Street, Suite 2000
4  San Francisco, California 94104
   Tel: (415) 421-7100
5  Fax: (415) 421-7105
   TTY: (415) 421-1665
6
7  LINDA ROSS (SBN 85563)
   LAW OFFICE OF LINDA ROSS
8  2204 Union Street
   San Francisco, California 94123
9  Tel: (415) 563-2400

10 SCOTT KALKIN (SBN 120791)
11 ROBOOSTOFF & KALKIN, PLC
   369 Pine Street, Suite 610
12 San Francisco, California 94104
   Tel: (415) 732-0282
13 Fax: (415) 732-0287

14 Attorneys for Plaintiff and the Proposed Class

15

16                 SUPERIOR COURT OF CALIFORNIA

17                      COUNTY OF ALAMEDA

18 MELINDA CAMPBELL, on her own behalf,          Case No. RG05221764
   and on behalf of all others similarly situated,
19                                                REPLY DECLARATION OF HANK
              Plaintiffs,                         WILLSON IN SUPPORT OF MOTION
20                                                FOR LEAVE TO FILE SECOND
       vs.                                        AMENDED COMPLAINT
21
   SUTTER HEALTH, and DOES 1 through 25,          Date: June 6, 2007
22 inclusive,                                     Time: 2:00 pm
                                                  Department: 22
23            Defendants.                         Judge: The Hon. Bonnie Lewman Sabraw
24
25
26
27
28

REPLY DECL. OF HANK WILLSON IN SUPPORT OF P'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT
*Campbell v. Sutter Health, et al.*, Case No. RG05221764
i

1    I, Hank Willson, declare as follows:

2    1.    I am counsel of record in the above-captioned case and an attorney duly licensed to

3    practice law in the State of California.

4    2.    Attached as Exhibit A is a true and correct copy of the portions of the Deposition of

5    Brian Hunter cited in Plaintiff's Reply Brief for Motion for Leave to File Second Amended

6    Complaint.

7

8    I declare under penalty of perjury that the foregoing is true and correct and based on my

9    personal knowledge.

10    Executed this 4th day of June, 2007, in San Francisco, California.

11

12    _____

13    Hank Willson

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHNEIDER
& WALLACE

REPLY DECL. OF HANK WILLSON IN SUPPORT OF P'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT
*Campbell v. Sutter Health, et al.*, Case No. RG05221764

1

# EXHIBIT A

1        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2              IN AND FOR THE COUNTY OF ALAMEDA

3                        ---oOo---

4

5    MELINDA CAMPBELL, on her
     own behalf, and on behalf
6    of all others similarly              COPY
     situated,
7
              Plaintiffs,
8    vs.                              No. RG05221764

9    SUTTER HEALTH, and DOES 1
     through 25, inclusive,
10
              Defendants.
11    _____/

12

13

14                    Deposition of

15                   **BRIAN HUNTER**

16           Wednesday, February 28, 2007

17

18

19                **TOKUTOMI & ASSOCIATES**
                CERTIFIED SHORTHAND REPORTERS
20                 114 Quail Point Circle
                 San Bruno, California 94066
21                     (650) 589-5932

22

23

24   Reported by:

25   Kellie M. Summers
     CSR No. 9686, RPR                              1

           BRIAN HUNTER              FEBRUARY 28, 2007

1          (Plaintiff's Exhibit 1 marked for

2          identification.)

3          BY MR. WILLSON:  Q.   So it's your

4    understanding that Sutter Health Sacramento Sierra

5    Region is the current name of the organization that used

6    to be called Sutter Community Hospitals?

7       A.   Yes.

8       Q.   And when you moved from general analyst at

9    Sutter Community Hospitals to controller of Sutter Davis

10   Hospital, how did you hear about that job?

11      A.   I think it was word of mouth.

12      Q.   How did you apply for the job?

13      A.   I submitted an application to the Sutter Davis

14   Hospital Human Resources Department.

15      Q.   What did you do after you were the controller

16   of Sutter Davis Hospital?

17      A.   Between 1991 and 199 -- 1999 I was the

18   assistant administrator at Sutter Auburn Faith Hospital.

19           And between 1995 and 1999, I had additional

20   duties as the assistant administrator/chief financial

21   officer of Sutter Roseville Medical Center.

22      Q.   Let me jump back to when you were a controller

23   at Sutter Davis Hospital.

24           What were your duties as the controller?

25      A.   It's a small hospital.  Prepare financial

                                                    12

BRIAN HUNTER                 FEBRUARY 28, 2007

1     A.   Yes.

2     Q.   And so what you're saying is sometimes the

3  hospital's billing department may engage another party

4  to assist with the assertion of a lien?

5     A.   Yes, another party, a collection agency.  You

6  have hospital affiliates with large billing operations,

7  small billing operations.

8     Q.   So is the assertion of liens a fairly regular

9  practice for the affiliate hospitals of Sutter Health?

10    A.   I believe it's an ongoing practice.  I have no

11 information on specific volumes.

12    Q.   Could you give me any sort of estimate as to

13 how often affiliate hospitals assert these liens?

14    A.   I have no idea on the volume.

15    Q.   Do you have any idea as to how long or how far

16 back in time affiliate hospitals of Sutter Health have

17 been asserting these liens?

18    A.   In my understanding, it's been an ongoing

19 practice.  How far back, I'm not aware.

20    Q.   And I take it that Sutter Health as an

21 organization is aware that its hospital affiliates

22 assert liens or third-party liens, as you called it?

23    A.   Yes.

24    Q.   I know you've said that Sutter Health itself

25 doesn't actually assert any liens, but does Sutter

                                          143

BRIAN HUNTER                FEBRUARY 28, 2007

1    come through the door, tens of thousands of outpatients

2    come through the door.  Getting to the level of

3    granularity of which of those patients ultimately fall

4    in a lien situation, and specifics on collectibility of

5    an individual, it's not a level of detail that I got

6    into, which is not to say that the current hospital

7    chief financial officers at the various Sutter Health

8    hospital affiliates of Sutter Health, the processes that

9    they go through, it may be more detailed.  But my

10    historical understanding, when I prepared budgets, was a

11    much higher level.

12        Q.    So when you were the chief financial officer

13    at Auburn Faith and at Roseville --

14        A.    Yes.

15        Q.    -- did those hospitals assert liens against

16    patients who were injured by a third party?

17        A.    To the best of my knowledge, yes, but the

18    specifics of that would have been handled by the billing

19    department at that hospital.

20        Q.    So, I mean, did you ever have to deal with the

21    issue of liens in your role as the chief financial

22    officer at Auburn Faith or Roseville?

23            I mean, did somebody from the billing

24    department ever come to you with questions about a lien

25    or something like that that you can recall?

                                                    159

BRIAN HUNTER            FEBRUARY 28, 2007

```
 1                TOKUTOMI & ASSOCIATES
              CERTIFIED SHORTHAND REPORTERS
 2                 114 Quail Point Circle
                 San Bruno, California 94066
 3                     (650) 589-5932

 4

 5    March 14, 2007

 6    BRIAN HUNTER
      C/O MARCIA L. AUGSBURGER, ATTORNEY AT LAW
 7    LAW OFFICES OF MCDONOUGH, HOLLAND & ALLEN, PC
      555 Capitol Mall, 9th Floor
 8    Sacramento, California 95814-4692

 9    Re:  Melinda Campbell, et al. vs. Sutter Health, et al.

10    Dear Mr. Hunter:

11           Pursuant to the California Code of Civil
      Procedure, we hereby notify you that the transcript of
12    your deposition taken in the above-entitled matter on
      February 28, 2007 has been prepared and is available for
13    reading, correcting and signing at our office, and shall
      remain so available during business hours of business
14    days for a period of 35 calendar days following this
      notification.  If time available for review is less than
15    35 days before trial, your time for review is limited to
      that time remaining.

16

17           You have the right to waive the examination
      and reading of the transcribed testimony, whereupon,
18    following the above-specified time, the deposition
      transcript will be sealed and promptly transmitted to
19    the attorney for the party who noticed the deposition,
      having the same force and effect as though it has been
20    read, corrected and signed.

21

22                              Very truly yours,

23                              KELLIE M. SUMMERS, CSR

24

25    cc:  Original
           all counsel                                178
```

BRIAN HUNTER                     FEBRUARY 28, 2007

**75**

COPY

1   TODD M. SCHNEIDER (SBN 158253)
2   JOSHUA KONECKY (SBN 182897)
    W.H. "HANK" WILLSON (SBN 233321)
3   SCHNEIDER & WALLACE
    180 Montgomery Street, Suite 2000
4   San Francisco, California 94104
    Tel: (415) 421-7100
5   Fax: (415) 421-7105
6   TTY: (415) 421-1665

7   LINDA ROSS (SBN 85563)
    LAW OFFICE OF LINDA ROSS
8   2204 Union Street
9   San Francisco, California 94123
    Tel: (415) 563-2400

10
11  SCOTT KALKIN (SBN 120791)
    ROBOOSTOFF & KALKIN, PLC
12  369 Pine Street, Suite 610
    San Francisco, California 94104
13  Tel: (415) 732-0282
    Fax: (415) 732-0287
14

15  Attorneys for Plaintiff and the Proposed Class

16                  SUPERIOR COURT OF CALIFORNIA

17                      COUNTY OF ALAMEDA

18

19  MELINDA CAMPBELL, on her own behalf,      Case No. RG05221764
    and on behalf of all others similarly situated,
20                                             PROOF OF SERVICE
            Plaintiffs,
21                                             Date: June 6, 2007
            vs.                                Time: 2:00 pm
22                                             Department: 22
    SUTTER HEALTH, and DOES 1 through 25,      Judge: The Hon. Bonnie Lewman Sabraw
23  inclusive,
24          Defendants.

25
26
27
28

SCHNEIDER
& WALLACE

PROOF OF SERVICE
*Campbell v. Sutter Health, et. al., Case No.: RG05221764*

## PROOF OF SERVICE

### Sections 1013(a), 2015.5 C.C.P.

*Campbell et al. v. Sutter Health,*
*Alameda Superior Court Case No.: RG05221764*

I am a citizen of the United States and am employed in the County of San Francisco. I am over the age of eighteen years and not a party to the within entitled action. My business address is 180 Montgomery Street, Suite 2000, San Francisco, CA 94104.

On June 4, 2007, I served the following document(s) described as:

1.  **PLAINTIFFS' REPLY BRIEF FOR MOTION TO COMPEL COMPLIANCE WITH DOCUMENT SUBPOENAS AND MOTION FOR PROTECTIVE ORDER**

2.  **REPLY DECLARATION OF HANK WILLSON IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH DOCUMENT SUBPOENAS AND MOTION FOR PROTECTIVE ORDER**

**BY FAX:** I caused such document to be transmitted by facsimile to the persons and facsimile machine numbers listed below. The fax number of the sending facsimile machine was 415-421-7105. The sending facsimile machine issued a transmission report confirming that the transmission was complete and without error.

**BY ELECTRONIC SERVICE** by electronically mailing a true and correct copy in PDF format through Schneider & Wallace's electronic mail system to the email address set forth below, or as stated on the attached service list per agreement between the parties.

Marcia Augsburger
McDonough Holland & Allen PC
555 Capitol Mall, 9th Floor
Sacramento, CA 94814-4692
Facsimile: (916) 444-8334
Email: maugsburger@mhalaw.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration is executed on June 4, 2007, at San Francisco, California.

Cathy Vittoria

SCHNEIDER
& WALLACE

- 1 -

PROOF OF SERVICE

**76**

1

2

3          SUPERIOR COURT OF THE STATE OF CALIFORNIA

4              IN AND FOR THE COUNTY OF ALAMEDA

5

| | |
|---|---|
| MELINDA CAMPBELL, on her own behalf, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>SUTTER HEALTH, and DOES 1 through 24, inclusive,<br><br>    Defendants. | No. RG05-221764<br><br>ORDER (1) GRANTING MOTION OF PLAINTIFF FOR LEAVE TO FILE SECOND AMENDED COMPLAINT, (2) GRANTING IN PART MOTION OF PLAINTIFF TO COMPEL PRODUCTION, AND (3) GRANTING IN PART MOTION OF PLAINTIFF FOR ENTRY OF PROTECTIVE ORDER.<br><br>Date:   June 6, 2007<br>Time:  2:00 p.m.<br>Dept.:  22 |

The motions of Plaintiff for leave to file a second amended complaint and to compel compliance with document subpoenas and for protective order came on for hearing on June 6, 2007, in Department 22 of this Court, the Honorable Bonnie Sabraw presiding. Counsel appeared on behalf of Plaintiff and on behalf of Defendant. After consideration of the points and authorities and the evidence, as well as the oral argument of counsel, IT IS ORDERED: The motion of Plaintiff for leave to file a second amended complaint is GRANTED. The motion of Plaintiff to compel compliance with document subpoenas is GRANTED IN PART. The motion of Plaintiff for protective order is GRANTED IN PART.

1  MOTION OF PLAINTIFF FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT.

2    The motion of Plaintiff for leave to file a second amended complaint is GRANTED.

3    The Court is guided by the liberal policy of permitting amendments.   The policy is

4  particularly appropriate where, as here, discovery is at its inception and no trial date has been set.

5    Sutter Health argues that the proposed amendment is futile.   The Order of April 18,

6  2006, holds that the claims against Sutter Health are cognizable.

7

8    Sutter Health also argues that the claims against Memorial Hospital and the other

9  affiliated hospitals are futile.   This argument on behalf of the affiliated hospitals is technically

10  not one for Sutter Health to make.   The affiliated hospitals are not yet parties to this case and

11  would ordinarily make arguments on their own behalf only when they appeared in the case as

12  parties.   That said, the Court will address the arguments.

13    First, Plaintiff's use of the DOE procedure in C.C.P. 474 appears valid.   It appears that

14  Plaintiff reasonably limited the case to Sutter Health in the interest of simplicity and seeks to add

15  the affiliated hospitals only because Sutter Health has presented evidence and argued that the

16  affiliated hospitals are separate entities that are not controlled by Sutter Health.

17

18    Second, the claim for malicious prosecution is not futile on its face.   The Court

19  previously overruled a demurrer to the malicious prosecution claim against Sutter Health.   Order

20  of April 18, 2006.

21    Third, the Court will not resolve in this motion for leave to amend whether Plaintiff can

22  pursue a claim against all the affiliated hospitals on behalf of a class or series of sub-classes.

23  Sutter Health argues that Plaintiff is not an adequate class representative and is not typical of the

24  proposed class.   It is possible that the affiliated hospitals are distinct entities or have dissimilar

25  policies and practices, with the result that Plaintiff can represent only a class of persons who

26

2

were subject to liens by Memorial Hospital and that she cannot represent a class on claims against all 23 affiliated hospitals. *Hart v. County of Alameda* (1999) 76 Cal. App. 4th 766, 775-776. It is also possible that there is sufficient unity of control and the policies and practices are sufficiently similar that Plaintiff can represent a class in claims against all 23 affiliated hospitals even though she received services at only one hospital. *Daniels v. Centennial Group* (1993) 16 Cal. App. 4th 467, 472-473. The Court will not resolve this issue on a motion for leave to amend.

Fourth, Sutter Health argues that the affiliated hospitals cannot be liable for aiding and abetting the malicious prosecution of other affiliated hospitals. The Court will not resolve this issue on a motion for leave to amend. *Kittredge Sports Co. v. Superior Court* (1989) 213 Cal. App. 3d 1045, 1048 ("the preferable practice would be to permit the amendment and allow the parties to test its legal sufficiency by demurrer, motion for judgment on the pleadings or other appropriate proceedings").

Fifth, Sutter Health argues that adding the 23 affiliated hospitals will complicate the case. This is certainly true, but it is an unavoidable consequence of Sutter Health's evidence and argument that the 23 affiliated hospitals are separate entities whose policies and practices must be examined individually.

Plaintiff must file and serve the proposed Second Amended Complaint on or before June 22, 2007. Sutter Health and the affiliated hospitals must file responsive pleadings on or before July 13, 2007.

The Court encourages the parties to meet and confer about the possibility of focusing some of the initial discovery on illuminating whether there is sufficient unity of control and the policies and practices are sufficiently similar that Plaintiff can represent a class in claims against

all 23 affiliated hospitals. Early resolution of this issue through a motion for class certification or otherwise would seem to materially advance the case. In future case management conferences, the parties should be prepared to discuss this issue.

MOTION OF PLAINTIFF TO COMPEL COMPLIANCE WITH DOCUMENT SUBPOENAS AND FOR PROTECTIVE ORDER.

The motion of Plaintiff to compel compliance with document subpoenas is GRANTED IN PART.

Procedure. The Court previously held that "Plaintiff has not presented sufficient evidence to establish that Sutter Health has sufficient control over the affiliated hospitals that it has possession, custody, or control of their documents within the meaning of C.C.P. 2031.010(a)." Order of November 3, 2006. As a result Plaintiff served subpoenas directly on the Hospitals. In addition, Plaintiff has sought to add the Hospitals as defendants to this case.

At the time the subpoenas were served, the Hospitals were third parties, so the subpoenas were served under C.C.P. 1987.1 or C.C.P. 2020.410 et seq. (Willson Dec., Exh A.) If the Court grants the motion for leave to amend, the Hospitals will be parties and Plaintiffs can serve document requests under C.C.P. 2031.010 et seq. The Court will, however, address the motion in the context it arose and address the motion under C.C.P. 1987.1 or C.C.P. 2020.410 et seq. The resolution of this motion is distinct from any subsequent document requests under C.C.P. 2031.010 et seq.

Motion to compel directed at Sutter Health. The subpoenas at issue were directed at the affiliate hospitals and not at Sutter Health. The motion to compel, however, can be read as directed at both Sutter Health and the affiliate hospitals. To the extent the motion to compel is

4

directed at Sutter Health, it is DENIED.   It was appropriate to direct the motion as a whole to

Sutter Health because the protective order issues would apply to Plaintiff, Sutter Health, and the

affiliate hospitals.   (Pltf Reply at 3:4-8.)

    Motion to compel directed at the Hospitals - Relevance.   The affiliate hospitals argue that

the discovery sought has no relevance because the claim has no merit.  A discovery motion is not

the place to argue the merits of the case.  In addition, the affiliate hospitals do not address  the

Court's concern that the assertion of a HLA lien should either be in the nature of litigation

activity for all purposes or not litigation activity for all purposes.   As stated in the Order of April

18, 2006, at 5:13-6:5, it cannot be the law that the assertion of a HLA lien is litigation activity for

purposes of the litigation privilege (precluding all causes of action except malicious prosecution

and abuse of process) but is not sufficiently like litigation to support causes of action for

malicious prosecution or abuse of process.   The Court previously noted the conflicting case law

and stated that the issue was appropriate for writ review but no party pursued a writ.   Therefore,

the case will proceed on the theories alleged.

    Motion to compel directed at the Hospitals - Privacy Interests.   Plaintiff seeks four

categories of documents: (1) Policies and procedures regarding the HLA liens, (2) copies of the

HLA liens, (3) affiliation agreements between Sutter Health and the affiliate hospitals, and (4)

contracts between the affiliate hospitals and insurance companies.   Only the HLA liens

potentially implicate the privacy interests of patients.  The HLA liens concern financial matters

primarily but implicate medical matters because they reveal that a patient received medical

services.  (Lounsbury Dec., regarding Filing of 2AC, Exh D.)   Certain of the affiliated hospitals

have filed complaints that reveal the material terms of the HLA liens.  (Willson Reply Dec, Exh

A.)

The HLA liens contain "Individually identifiable health information" within the meaning of 45 C.F.R. 160.103 and are therefore subject to the federal HIPPA protections against disclosure of medial information. The HLA liens also contain consumer information and are subject to the California protections of C.C.P. 1985.3 and 2020.410(d). The information in the HLA liens also implicates the California constitutional right to privacy.

The affiliated hospitals must provide to Plaintiff the names and identifying information of persons whose debt to the hospitals was discharged and who were served with HLA liens. To do so, the affiliated hospitals must first identify those persons. At present it is unclear how difficult it might be to identify such persons and how many such persons there might be. Therefore, each affiliated hospital must undertake an effort to identify (1) persons whose debt to the hospitals was paid in full by insurance or by the patient and (2) persons whose debt was discharged in bankruptcy. The affiliated hospitals must report to Plaintiff on or before July 6, 2007, regarding the status of their searches, including the organization of data, the dates reviewed, the time expended, and the interim results. The Court expects each hospital to spend at least 20 hours of administrative time on the search. At the CMC on July 18, 2007, the parties should be prepared to discuss whether the number of names is sufficiently large and random to constitute a representative sample of the putative class or whether further efforts should be required.

After a representative sample of the putative class members are identified, the Court will implement the following procedure to protect the privacy interests of the putative class members in their names and contact information and in the content of their liens.

Regarding the names and contact information, the Court will use the letter and "opt-out" procedure approved in *Pioneer Electronics (USA), Inc. v. Superior Court* (2007) 40 Cal. 4th 360. The names, addresses and telephone numbers of the putative class members may be private

information, but even if that information were private information, the information is not highly private. C.C.P. 2017(a) ("Discovery may be obtained of the identity and locations of persons having knowledge of any discoverable matter ..."); C.R.C. 1858(a); Judicial Council Form Interrogatories No. 12 and 16 (asking for name, address, and telephone number of persons who were witnesses to the incident). Therefore, Plaintiff may obtain the names, addresses and telephone numbers of the putative class members under an "opt-out" procedure. An "opt-out" procedure is preferable to an "opt in" procedure because (1) the privacy interest to be protected is not substantial and (2) this is a putative class action brought on behalf of the affected persons, in contrast to *Colonial Life & Accident Ins. Co. v. Superior Court* (1982) 31 Cal.3d 785, 789, where the persons to be contacted were strangers to the litigation.

Regarding the content of the HLA liens, the Court will also use a letter and "opt-out" procedure. The HLA liens are qualitatively more private than names and contact information because they reveal the date of an injury, the location of medical care, and the amount of debt incurred as a result of the medical care. (Lounsbury Dec., regarding Filing of 2AC, Exh D.) The HLA liens do not, however, disclose the nature of the accident, the nature of the injury, or the nature of the treatment. Therefore, although the liens might technically fall within the definition of "personal records" under CCP 1985.3(a)(1) and "Individually identifiable health information" under 45 C.F.R. 160.103, they do not contain either sensitive medical information or significant financial information. In addition, *Pioneer* notice with an opt out provision is consistent with C.C.P. 1985.3 and will meet the express requirement of 45 C.F.R. 164.512(e)(1)(ii)(A) and (e)(1)(iii).

Plaintiff and the affiliated hospitals are to meet and confer to develop a letter to persons who received HLA Liens. The letter should address both the disclosure of patient identity and

7

the disclosure of the HLA liens.   For example, the letter might state that a patient could (1) opt out of disclosure of patient identity and disclosure of HLA lien or (2) opt out of the HLA lien only or (3) do nothing and be presumed to permit disclosure of patient identity and disclosure of HLA lien.  The letter must state that objections should be transmitted to an agreed third party administrator by a specific date.  A sample letter from another case is in *Elliot v. Kaplan*, 2002-076512, stipulation filed 5/21/03 and signed 5/23/03.

Motion to compel directed at the Hospitals - Burden.   The affiliated hospitals have not demonstrated that it would be unduly burdensome for them to produce Policies and procedures regarding the HLA liens, affiliation agreements between Sutter Health and the affiliate hospitals, or contracts between the affiliate hospitals and insurance companies.

The affiliated hospitals argue that it would be unduly burdensome for them to produce copies of the HLA liens.  The procedure outlined above for identifying persons whose debt to the hospitals was discharged and who were served with HLA liens defines the nature and scope of the search and limits the burden on the affiliated hospitals.

Schedule of production.

Each affiliated hospital must undertake an effort to identify persons whose debt to the hospitals was paid in full by insurance or by the patient and those persons whose debt was discharged in bankruptcy.

On or before June 29, 2007, the affiliated hospitals must produce policies and procedures regarding the HLA liens, affiliation agreements between Sutter Health and the affiliate hospitals, and contracts between the affiliate hospitals and insurance companies.

On or before July 6, 2007, the affiliated hospitals must report to Plaintiff about the status of their searches regarding persons whose debt to the hospitals was discharged and who were

8

served with HLA liens, including the organization of data, the dates reviewed, the time expended, and the interim results.

On or before July 18, 2007, the parties must submit CMC statements and a proposed *Pioneer* letter to the Court or competing versions of a letter.

The Court will hold a CMC on July 18, 2007, at 2:00 pm. At that time, the parties should be prepared to discuss whether the number of names identified through that date is sufficiently large and random to constitute a representative sample of the putative class or whether further efforts should be required.

If the the number of names is sufficiently large and random, the Court will set dates for (1) the third party administrator to make the *Pioneer* mailing to the randomly selected persons with HLA liens, (2) the expiration of the time to opt out of the disclosure of the names and identifying information, and (3) when the third party administrator must provide to counsel for Plaintiff the names and identifying information of the persons who did not opt out.

THE MOTION OF PLAINTIFF FOR ENTRY OF A PROTECTIVE ORDER.

The motion of Plaintiff for entry of a protective order is GRANTED IN PART.

The Court has a "standard" protective order and has provided a copy to Counsel. The Court directs Counsel to meet and confer regarding whether to adapt that order to this case or to use the Order proposed by Plaintiffs. (Willson Dec., Exh E.) Both orders appear to comply with 45 C.F.R. 164.512(e)(1)(v). On or before June 18, 2007, the parties are to submit an agreed protective order to the Court. Lacking agreement, on or before June 18, 2007, the parties are to submit a proposed protective order to the Court that has for each area of dispute an [Option A]

9

1  and an [Option B].  The Court will review the proposed order, decide which options will be in

2  the final order, and enter the order.

3      Addressing the concerns of the affiliated hospitals, (1) the sealing protocols are

4  determined by C.R.C. 2.550 and 2.551 and are not subject to this Court's discretion, (2) all

5  parties can exercise judgment in designating documents as confidential, but the designations can

6  be challenged, (3) notice must be given to the original owner of a document if a party receives a

7  third party request for the document, and (4) all provisions must treat Plaintiff and Defendants

8  equally.  If a party asserts that a responsive document is subject to a privilege (attorney/client,

9  doctor/patient), then the party may object to production but must provide a privilege log to permit

10 the opposing party and the Court to evaluate the claim of privilege.  Unless otherwise agreed by

11 counsel, production of a document subject to the protective order might be a waiver of a

12 privilege.  The Court will not address the hypothetical question of whether production of a

13 document subject to the protective order would be a waiver of a privilege as to the document

14 only or whether the scope of the waiver might extend to other information.

15

16

17

18 OTHER MATTERS.

19      Plaintiff asserts a cause of action under the UCL.  Although an unlawful UCL claim

20 borrows an underlying statute and some authority holds that an unfair UCL claim must be

21 tethered to an underlying statute, a UCL claim is distinct from a claim on the underlying statute.

22 The UCL has its own statute of limitations.  Bus & Prof 17208; *Cortez v. Purolator Air*

23 *Filtration Prods. Co.* (2000) 23 Cal. 4th 163, 178-179.

24

25      The Court's orders regarding the scope of discovery and the limits of Sutter Health's and

26 the affiliated hospitals' obligation to investigate do not define the scope of the putative class.

10

Plaintiff may alter the proposed class definition based on information obtained in discovery and further evaluation of the case. At class certification, the Plaintiff and the Defendants can suggest and argue for alternate class definitions of the proposed class. Indeed, if the proposed class is not ascertainable, then the Court can redefine the class if the evidence suggests that a redefined class is ascertainable. *Hicks v. Kaufman and Broad Home Corp.* (2001) 89 Cal.App.4th 908, 916, fn18. The Court will generally permit changes in the proposed class definition if they do not prejudice either the defendant or the absent members of the class identified in the current complaint. If discovery suggests that the class is narrower or broader than the one in the Second Amended Complaint, Plaintiff may, and is encouraged to, seek leave to amend the complaint so that the Complaint on file accurately reflects Plaintiff's view of the scope of the case at any given time.

FURTHER COURT DATES.

The Court will hold a CMC on July 18, 2007, at 2:00 pm.

Dated: June ___, 2007

_____
Judge Bonnie Sabraw

11

**77**

ENDORSED
FILED
ALAMEDA COUNTY

JUN 2 5 2007

*Kimberly McCoy*

, Exec. Off./Clerk

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF ALAMEDA

| | |
|---|---|
| MELINDA CAMPBELL, on her own behalf, and on behalf of all others similarly situated, | Case No. RG05-221764 |
| Plaintiffs, | **CONFIDENTIALITY ORDER** |
| vs. | |
| SUTTER HEALTH, and DOES 1 through 25, inclusive, | |
| Defendants. | |

1  On June 6, 2007, Plaintiff's Motion for Protective Order came on for hearing before this

2  Court. The Court issued an Order on June 12, 2007, providing guidance and ordering the parties to

3  meet and confer regarding the final form of a protective order would take.  The parties were

4  unable to come to agreement.  Therefore, the Court enters the following Confidentiality Order:

5  Trials and adjudications on the merits are public proceedings and are not to be kept from

6  public view without good cause. C.C.P. 124; C.R.C. 2.550 and 2.551; *NBC Subsidiary (KNBC-*

7  *TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178. Public access to discovery and disclosure of

8  discovery materials prior to trials and adjudications on the merits is determined in the discretion of

9  the trial judge. *Stadish v. Superior Court* (1999) 71 Cal.App.4th 1130, 1145-1146; *Westinghouse*

10  *Electric Corp. v. Newman & Holtzinger* (1995) 39 Cal.App.4th 1194, 1208; *Raymond Handling*

11  *Concepts Corp. v. Superior Court* (1995) 39 Cal.App.4th 584, 588. The Court has two substantial

12  interests in regulating pretrial discovery. The first is to facilitate the search for truth and promote

13  justice. The second is to protect the legitimate privacy interests of the litigants and third parties.

14  The interest in truth and justice is promoted by allowing liberal discovery of information in the

15  possession of the opposing party.  The interest in privacy is promoted by restricting the

16  procurement or dissemination of information from the opposing party upon a showing of good

17  cause. Protective orders impair the public's access to discovery records as well as the parties' First

18  Amendment right to disseminate information to the public.  *Westinghouse*, 39 Cal.App.4th at 1208.

19  "Because the judicial process is frequently the avenue by which the public and regulatory agencies

20  learn of significant health and safety hazards, blocking this avenue may prove detrimental to the

21  public well-being. For this reason, courts frequently consider the public interest when determining

22  whether good cause exists for a protective order. [Citations.]" *Id.*

23  Based on these considerations, the Court now issues the following order:

24  1.    INFORMATION. As used in this order, "Information" is defined to mean "(1)

25  documents, discovery responses, deposition transcripts, deposition videotapes, and other material

26  produced or exchanged in the course of this case; (2) any copies, notes, abstracts, or summaries of

27  material produced or exchanged in the course of this case; and (3) any pleading, motion, brief,

28  declaration, transcript, or filing containing such information." Nothing in this order concerns the

SCHNEIDER
& WALLACE

1 | disclosure or use of information by any party or non-party to its employees, officers, agents, and
2 | directors if such disclosure or use is made in the ordinary course of business unrelated to this
3 | litigation.

4

2.    THREE CATEGORIES OF CONFIDENTIAL INFORMATION.  There are three
categories of confidential information:

> (a) CONFIDENTIAL.  This Information must meet the standards stated in
> paragraph 3.

> (b) CONFIDENTIAL – TO BE FILED UNDER SEAL.  This Information must
> meet the standards in paragraph 3 and the designating party or non-party must
> consider in good faith that the Information also meets the standards of C.R.C.
> 2.550(d).

> (c) ATTORNEYS' EYES ONLY.  This Information must meet the standards in
> paragraph 3 and the designating party or non-party must also consider in good faith
> that the Information meets the definition of "Trade Secret" in Evidence Code
> 1061(a)(1) and contains highly confidential, proprietary information such as
> marketing, cost, and pricing information.

3.    CONFIDENTIAL INFORMATION.  Any party or non-party may designate as
"CONFIDENTIAL" any Information that the party or non-party considers in good faith to contain
information involving trade secrets, confidential business or financial information, or personal
information subject to protection under California law.  Confidential information includes the
names, addresses, telephone numbers, social security numbers, and other personal identifying
information of persons who are not named parties in this action.  Where a piece of Information
consists of more than one page, the first page and each page on which confidential information
appears must be so designated.

4.    DESIGNATION OF INFORMATION AS CONFIDENTIAL.

> (a) A party or non-party producing Information may designate the Information as
> "CONFIDENTIAL," "CONFIDENTIAL – TO BE FILED UNDER SEAL," and/or
> "ATTORNEYS' EYES ONLY" by so indicating in the relevant discovery responses
> or on the record at the deposition and requesting the preparation of a separate
> transcript of the material.

> (b) A party or non-party receiving Information may designate the Information as
> "CONFIDENTIAL," "CONFIDENTIAL – TO BE FILED UNDER SEAL" and/or
> "ATTORNEYS' EYES ONLY" by stating in writing the specific pages of the
> Information to be designated within twenty (20) days after receipt of the Information
> for which the designation is proposed.

SCHNEIDER
& WALLACE

(c) After any designation made according to the procedure set forth in this paragraph, the designated Information must be treated according to the designation until the matter is resolved according to the procedures described in paragraph 6 below. Until that resolution, counsel for all parties will be responsible for marking all previously unmarked copies of the designated Information in their possession or control with the specified designation.

5.    ALL CONFIDENTIAL INFORMATION TO BE USED ONLY FOR THIS CASE.

All Confidential Information (other than Information that is publicly available) must be used by the party or parties to whom the Information is produced solely for the purpose of this case.

6.    CHALLENGE TO DESIGNATION. If a party contends that any Information is not entitled to confidential treatment, such party may at any time give written notice to the party or non-party who designated the Information as confidential. The party or non-party who designated the Information as confidential has twenty-five (25) days from the receipt of such written notice to apply to the Court for an order designating the Information as confidential pursuant to C.C.P. 2031(f). The party or non-party seeking the order has the burden of establishing good cause for the Information to be treated as confidential pursuant to this order.

7.    TREATMENT OF INFORMATION WHILE CHALLENGE IS PENDING. Notwithstanding any challenge to the designation of Information as Confidential Information, all documents designated as such must be treated as such and are subject to this order unless and until one of the following occurs:

(a) the party or non-party who claims that the Information is Confidential Information withdraws such designation in writing; or

(b) the party or non-party who claims that the Information is Confidential Information fails to apply to the Court for an order designating the Information confidential within the time period specified above after receipt of a written challenge to such designation; or

(c) the Court decides the Information is not Confidential Information.

8.    LIMITATION ON DISCLOSURE OF CONFIDENTIAL INFORMATION. Except with the prior written consent of the other parties, or upon prior order of this Court obtained upon notice to opposing counsel, information designated as "CONFIDENTIAL" or "CONFIDENTIAL – TO BE FILED UNDER SEAL" must not be disclosed to any person other than:

(a) the Court and Court personnel;

---

SCHNEIDER
& WALLACE

(b) the court reporter and videographer (if any) present at any hearing, deposition, or trial;

(c) counsel for the respective parties to this litigation, including in-house counsel, co-counsel retained for this litigation, and the employees and associates of counsel;

(d) persons who authored, prepared, or received the Information in a context outside this litigation;

(e) the named parties to this litigation, including individual defendants, class and representative representatives, and any officer or employee of a party, to the extent deemed necessary by counsel for the prosecution or defense of this litigation;

(f) percipient witnesses (other than expert witnesses and consultants). A witness must sign the Certification before being shown Confidential Information. Confidential Information may be disclosed to a witness who will not sign the Certification only in a deposition at which the party who designated the Confidential Information is represented or has been given notice that Confidential Information produced by the party may be used. At the request of any party, the portion of the deposition transcript involving the Confidential Information must be designated "Confidential" pursuant to paragraph 4 above. Witnesses shown Confidential Information are not allowed to retain copies.

(g) consultants or expert witnesses retained for the prosecution or defense of this litigation, provided that if the party chooses a consultant or expert employed by Sutter Health, a Sutter Health hospital affiliate, or one of their competitors, the party must notify the opposing party, or designating non-party, ten days before disclosing any Confidential Information to that individual and must give the opposing party or non-party an opportunity to move for a protective order preventing or limiting such disclosure.

(h) Counsel representing clients asserting similar claims against the same defendants, provided that before disclosing any Confidential Information to any such counsel, the disclosing party must notify the opposing party, or designating non-party, ten days before disclosing any Confidential Information to that individual and must give the opposing party or non-party an opportunity to move for a protective order preventing or limiting such disclosure.

9.    LIMITATION ON DISCLOSURE OF ATTORNEYS' EYES ONLY INFORMATION.   Except with the prior written consent of the other parties, or upon prior order of this Court obtained upon notice to opposing counsel, information designated as "ATTORNEYS' EYES ONLY" must not be disclosed to any person other than:

(a) the Court and Court personnel;

(b) the court reporter and videographer (if any) present at any hearing, deposition, or trial;

(c) counsel for the respective parties to this litigation, co-counsel retained for this litigation, and the employees and associates of counsel (this does not include in-house counsel);

(d)  persons who authored, prepared, or received the Information in a context outside this litigation;

(e)  consultants or expert witnesses retained for the prosecution or defense of this litigation, provided that if the party chooses a consultant or expert employed by Sutter Health, a Sutter Health hospital affiliate, or one of their competitors, the party must notify the opposing party, or designating non-party, ten days before disclosing any Confidential Information to that individual and must give the opposing party or non-party an opportunity to move for a protective order preventing or limiting such disclosure.

10.    CERTIFICATION FORM.  Except for persons identified in paragraphs 8(a)-(e) each person who is authorized by this order to inspect or have access to Information designated as "CONFIDENTIAL" or "CONFIDENTIAL – TO BE FILED UNDER SEAL" and who in fact inspects any such Information must, before conducting the inspection or having the access, execute the Certification attached to this order and thereby agree to be bound by its provisions.  The Certification forms must be retained by counsel to the party that disclosed the Confidential Information during the pendency of the action and for a period of five years after the conclusion of the action as defined in paragraph 16 below.  The Certification forms need not be disclosed to opposing counsel, but opposing counsel may apply to the Court for an order compelling disclosure on a showing of good cause.

11.    LIMITATION ON USE OF CONFIDENTIAL INFORMATION.  Persons receiving Information designated as "CONFIDENTIAL," "CONFIDENTIAL – TO BE FILED UNDER SEAL," or "ATTORNEYS' EYES ONLY" must not reveal or discuss that information to or with any person who is not entitled to receive the information, except as set forth in this order.

12.    WAIVER OF CONFIDENTIAL DESIGNATION.  Any party or non-party may voluntarily disclose to others without restriction any Information designated by that party or non-party as "CONFIDENTIAL, "CONFIDENTIAL – TO BE FILED UNDER SEAL," or "ATTORNEYS' EYES ONLY," although a document may lose its confidential status if it is made public.

13.    FILING UNDER SEAL – DISCOVERY MOTIONS – C.R.C. 2.550(a)(3).  When filing or opposing a motion for discovery, counsel must file under seal any Information designated as "CONFIDENTIAL – TO BE FILED UNDER SEAL" as well as any materials setting forth the

1    substance of that Information. Counsel must deliver such Information and materials to the Clerk of

2    the Court in a sealed envelope clearly marked as "CONFIDENTIAL – TO BE FILED UNDER

3    SEAL" and meeting the requirements of C.R.C. 2.551(d).

4        14.    FILING UNDER SEAL –MOTIONS OTHER THAN DISCOVERY– C.R.C. 2.550

5    et seq.

6        (a)  When filing or opposing a motion related to matters other than discovery (a
         "Substantive Motion"), counsel must follow the procedures set forth in C.R.C. 2.550
7        and 2.551. Filings must meet the requirements of C.R.C. 2.551(d).

8        (b)  When documents designated as "CONFIDENTIAL – TO BE FILED UNDER
         SEAL" are filed, the filing party is deemed to have provided contemporaneous
9        written notice under C.R.C. 2.551(b)(3)(A)(iii) to all parties in the case. The filing
         of the documents will start the period in which to file a motion to seal. C.R.C.
10       2.551(b)(3)(B).

11       (c)  When documents designated as "CONFIDENTIAL – TO BE FILED UNDER
         SEAL" are filed, the filing party must on the day of filing provide written notice
12       under CRC 2.551(b)(3))(A)(iii) to any affected third party. Because failure to
         provide the required notice interferes with public access to Court records, the Court
13       may sua sponte consider sanctions for failure to provide the required notice.

14       (d)  The Court sets the time period in which to file a motion to seal at 10 Court days
         after notice that a confidential document has been placed in the Court file. C.R.C.
15       2.551(b)(3)(B) (Court may extend 10 day filing period).

16       15.    EFFECT OF SEALING. If Information or materials setting forth the substance of

17   that Information are placed under seal by the Court, then the sealed Information and material is not

18   to be opened or the contents revealed, except by Order of the Court or agreement of the party,

19   person, or entity who designated the Information as "CONFIDENTIAL – TO BE FILED UNDER

20   SEAL."

21       16.    COPIES OF CONFIDENTIAL INFORMATION. This order does not restrict a

22   person who is properly in the possession of Confidential Information from (1) making working

23   copies, abstracts, digests, and analyses of Confidential Information for use in connection with this

24   litigation or (2) converting or translating Confidential Information into machine readable form for

25   incorporation in a data retrieval system used in connection with this litigation. Any such copies,

26   abstracts, digests, analyses, or data compilations have the same level of protection under the terms

27   of this order as the Information from which they are derived.

28

SCHNEIDER
& WALLACE

17.     CONCLUSION OF LITIGATION.  The Conclusion of this action is defined as 30 days after the expiration of the time to appeal or challenge any final judgment, settlement, or consent decree.  All provisions of this Order restricting the communication or use of Confidential Information continue to be binding after the conclusion of this action, unless otherwise agreed or ordered.  Upon conclusion of this action, a party who received Confidential Information in the context of this action, other than that which is contained in pleadings, correspondence, and deposition transcripts, must either (a) return such documents no later than thirty (30) days after conclusion of this action to counsel for the party or non-party who provided such information, or (b) destroy such documents within the time period upon consent of the party who provided the information and certify in writing within thirty (30) days that the documents have been destroyed.

18.     USE OF INFORMATION AT TRIAL.  This Order does not preclude, limit, restrict, or otherwise apply to the use of Information at trial.

19.     APPLICABILITY OF PRIVILEGES AND PROTECTIONS.  Nothing in this order waives any applicable privilege or work product protection, or affects the ability of a party to seek relief for an inadvertent disclosure of material protected by privilege or work product protection.

20.     EXTENSION TO NON-PARTIES.  Any witness or other person, firm or entity from which discovery is sought may be informed of and may obtain the protection of this Order by written advice to the parties' respective counsel or by oral advice at the time of any deposition or similar proceeding.

IT IS SO ORDERED.

DATED: _6/22/07_

_Bonnie Sabraw_
Judge

**Bonnie Sabraw**

**CERTIFICATION**

I hereby certify my understanding that Information designated as CONFIDENTIAL is being provided to me pursuant to the terms and restrictions of the Protective Order in *Campbell v. Sutter Health, et al.*, Alameda County Superior Court Case No. RG05221764. I have been given a copy of that Order and read it. I agree to be bound by the Order. I will not reveal the Information designated as CONFIDENTIAL to anyone, except as allowed by the Order. I will maintain all the Information designated as CONFIDENTIAL – including copies, notes, or other transcriptions made therefrom—in a secure manner to prevent unauthorized access to it. No later than thirty (30) days after the conclusion of this action, I will return the Information designated as CONFIDENTIAL—including copies, notes, or other transcriptions made therefrom—to the counsel who provided me with the Information. I hereby consent to the jurisdiction of the Superior Court of the State of California, Alameda County, for the purpose of enforcing the Protective Order.

DATED:_____    _____

## CLERK'S CERTIFICATE OF MAILING
### (CCP 1013a)

I certify that the following is true and correct:

I am a Deputy Clerk employed by the Alameda County Superior Court. I am over the age of 18 years. My business address is 1221 Oak St. Oakland, California. I served this **Order** by placing copies in envelope(s) addressed as shown below and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at **Oakland**, California, following standard court practices.

Linda Ross
Law Offices of Linda Ross
2204 Union Street
San Francisco, CA 94123

Scott Kalkin
Roboostoff & Kalkin, PLC
369 Pine Street, Suite 610
San Francisco, CA 94104

Todd M. Schneider
Joshua Konecky
W.H. "Hank" Wilson
Schneider & Wallace
180 Montgomery Street, Suite 2000
San Francisco, CA 94104

McDonough Holland & Allen PC
Richard E. Brandt
Marcia L. Augsburger
John C.J. Barnes
555 Capitol Mall 9th Floor
Sacramento, CA 95814

Date: 06/25/2007

Executive Officer/Clerk of the Superior Court

By _____
Kimberly McCoy, Deputy Clerk

Certificate of Mailing (Rev. 6/1/06)